IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARCHERDX, LLC f/k/a ARCHERDX, INC. and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL, <br><br> Plaintiffs, <br><br> v. <br><br> QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC., QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V. and JONATHAN ARNOLD, <br><br> Defendants. | C.A. No. 18-1019 (MN) |

## MEMORANDUM ORDER

At Wilmington, this 30th day of August 2021:

Plaintiffs propose adding the following to jury instruction III(A) titled Damages – Generally: "You should award Plaintiffs damages from the sale of an accused QIAGEN product that is used outside the United States if you find (1) QIAGEN's infringement in the United States was a cause of the sale of that product, and (2) QIAGEN made or sold the product within the United States." At the charge conference, the Court ruled that a modified version of Plaintiffs' proposal would be included in the jury instructions. The Court's reasoning for that ruling is as follows:

> It is well-established (and undisputed) that the manufacture, sale and offer to sell a method is not an act of infringement.[1] And it is also well-established (and

---

[1] This is clear from a number of cases, including the Federal Circuit's *en banc* decision in *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1364 (Fed. Cir. 2009); *see also Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006).

undisputed) that patent law is territorial.² Thus, to infringe a method claim, the method must be performed in the United States.³

The issue here, however, is not whether the foreign uses of the patented methods are infringing – they are not and Plaintiffs concede that. The question is whether the sales of products that use the methods to foreign users can be used to measure damages for acts of infringement in the United States.⁴

United States patent law allows "damages adequate to compensate *for the infringement*."⁵ Here, the infringement is asserted under § 271(a), which, for the method claims at issue, makes it an act of infringement to use the claimed methods in the United States. The claims for induced infringement under § 271(b) and contributory infringement under § 271(c) also require direct infringement under § 271(a). And, as I said, that infringement must be performance of the method claim in the United States.

In *Carnegie Mellon University v. Marvell Technology Group, Ltd.*, 807 F.3d 1283 (Fed. Cir. 2015) [("*CMU*")], the Federal Circuit addressed calculation of damages for infringement of a method claim that relied on the sales of products that perform that method. Recognizing the presumption against extraterritoriality, the *CMU* court nevertheless concluded that:

> Where a physical product is being employed to measure damages for the infringing use of patented methods, . . . territoriality is satisfied when and only when any one of those domestic actions for that unit (*e.g.,* sale) is proved to be present, even if others of the

---

² 35 U.S.C. § 271(a) (referring to acts in the United States); *Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 454-55 (2007) ("The presumption that United States law governs domestically but does not rule the world applies with particular force in patent law."); *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 531 (1972) ("Our patent system makes no claim to extraterritorial effect."); *see also WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2136 (2018) ("Courts presume that federal statutes 'apply only within the territorial jurisdiction of the United States.'").

³ *Meyer Intell. Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1371 (Fed. Cir. 2012).

⁴ *WesternGeco LLC v. ION Geophysical Corp.*, 837 F.3d 1358, 1366 (Fed. Cir. 2016) (Wallach, J., dissenting) ("The issue is not one of infringement, where foreign use generally does not count, but one of damages, where it may.") *rev'd sub nom. WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129 (2018), and *opinion reinstated in part,* 913 F.3d 1067 (Fed. Cir. 2019).

⁵ 35 U.S.C. § 284 (emphasis added); *WesternGeco LLC*, 138 S. Ct. at 2137 ("The portion of § 284 at issue here states that 'the court shall award the claimant damages adequate to compensate for the infringement.' We conclude that 'the infringement' is the focus of this statute.").

2

> listed activities for that unit (*e.g.,* making, using) take place abroad. Significantly, once one extends the extraterritoriality principle to confining how *damages* are calculated, it makes no sense to insist that the action respecting the product being used for measurement itself be an *infringing* action. Thus, here the claim is a method claim, but the damages-measuring product practices the method in its normal intended use.

*Id.* at 1306. In so doing, the *CMU* court required that there be an infringing use of the method (*i.e.*, a use in the United States) that had sufficient causal connection to the sales of the products at issue.[6] But citing *Power Integrations*,[7] the *CMU* court determined that that causal relationship alone was not enough to satisfy territoriality. There must also be some other action (such as the sale of the product) in the United States.

So that is how I read the current state of the law. I understand that Defendants think that *CMU* is a one-off decision and inconsistent with precedent recognizing that overseas use of a method is not infringing. But I am not wholly convinced. *CMU* makes clear that it is addressing damages for infringement – that is, damages for actions in the United States – and is not expanding the statutory requirement for infringement. Thus, I will include in Instruction III.A – titled "Damages – Generally" the language:

> Damages are awarded on the sales of products that you find infringe (i.e., that use the patented methods in the United States). Damages may also be awarded on sales of products that practice the patented methods in their normal intended use outside of the United States if, for those products, you find that (1) QIAGEN's infringement in the United States was a substantial cause of the sale of that product,[8] and (2) QIAGEN made or sold the product within the United States.

---

[6] In *CMU*, the Federal Circuit noted that the products "practice[] the method in its normal intended use" and concluded that causation to domestic infringing uses was established given the design, simulation, and testing of the chips in California involved infringing uses and caused the worldwide sales. *Id.* at 1306-07 ("all of Marvell's sales are strongly enough tied to its domestic infringement as a causation matter").

[7] *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1371 (Fed. Cir. 2013).

[8] Although *CMU* does not refer to a "substantial" causal connection, the Court understands that there must be more than a tangential relationship between the infringement asserted and the volume of sales. *See e.g.*, *WesternGeco LLC*, 837 F.3d at 1368 (Wallach, J., dissenting) (noting that "where the volume of non-infringing sales is independent of the extent of United States infringement, those sales should not be used as a measure of damages flowing from the domestic infringement").

All of this being said, I think it is fair to question whether, as I read this law, it allows a patentee to, in effect, use patent damages to extend the monopoly granted by its United States patent overseas by allowing the patentee to obtain the same damages it would have obtained if the use of the patented method overseas were an infringement, even though that use is not an infringement.

So, we will, as I ruled previously, separate out the damages for US sales and foreign sales with the hope that, should the Federal Circuit disagree with me on my reading of its precedent, we will at least have the damages for acts, should they be deemed infringing, that are unquestionably performed in the U.S.

*Maryellen Noreika*
The Honorable Maryellen Noreika
United States District Judge

4