**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ARCHERDX, LLC f/k/a ARCHERDX, INC. and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL, | ) | |
| *Plaintiffs*, | ) | C.A. No. 18-1019-MN |
| v. | ) | [redacted] |
| QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC., QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V. and JONATHAN ARNOLD, | ) | |
| *Defendants*. | ) | |

**JOINT [PROPOSED] FINAL PRETRIAL ORDER**

The following matters as to trial come before the Court at a final pretrial conference to be held on August 16, 2021 at 4:30 p.m. Eastern, pursuant to Rule 16 of the Federal Rules of Civil Procedure. The plaintiffs in this matter are ArcherDX, LLC f/k/a ArcherDX, Inc. ("Archer") and The General Hospital Corporation d/b/a Massachusetts General Hospital ("MGH") (collectively, "Plaintiffs") and the defendants are QIAGEN Sciences, LLC, QIAGEN LLC, QIAGEN Beverly, LLC, QIAGEN Gaithersburg, LLC, QIAGEN GmbH, QIAGEN N.V. (collectively "QIAGEN" or "Defendants"). Pursuant to Local Rule 16.3, Plaintiffs and Defendants hereby submit for the Court's approval this proposed Final Pretrial Order governing the above-captioned jury trial commencing on August 23, 2021 at 9:00 a.m. Eastern.

**TABLE OF CONTENTS**

**Page**

I. NATURE OF CASE ........ 1
A. Nature of the Action ........ 1
B. Jurisdiction ........ 2
C. Claim Construction ........ 3
D. Pending Motions ........ 3
II. ISSUES OF FACT ........ 4
A. Uncontested Facts ........ 4
B. Contested Facts ........ 4
III. ISSUES OF LAW THAT REMAIN TO BE LITIGATED ........ 4
IV. BRIEF STATEMENT OF INTENDED PROOFS ........ 5
V. WITNESSES ........ 5
A. List of Witnesses the Parties Expect to Call ........ 5
1. Expert Witnesses ........ 5
2. Non-Expert Witnesses ........ 5
3. Agreements Regarding Presentation and Identification of Witnesses ........ 6
B. Testimony by Deposition ........ 7
C. Impeachment with Prior Inconsistent Testimony ........ 9
D. Objections to Expert Testimony ........ 10
VI. EXHIBITS ........ 10
A. Demonstrative Exhibits ........ 14
VII. RELIEF SOUGHT ........ 15
VIII. MOTIONS IN LIMINE ........ 17
IX. DISCOVERY ........ 17

X. NUMBER OF JURORS ....................................................................................... 17

XI. LENGTH OF TRIAL ......................................................................................... 17

XII. MOTIONS FOR JUDGMENT AS A MATTER OF LAW ............................................. 18

XIII. AMENDMENTS OF THE PLEADINGS ........................................................... 18

XIV. SETTLEMENT ..................................................................................................... 18

# INDEX OF EXHIBITS


**STATEMENT OF UNCONTESTED FACTS WHICH REQUIRE NO PROOF**

| | |
|---|---|
| Joint | Exhibit 1 |

**STATEMENT OF FACTS THAT REMAIN TO BE LITIGATED**

| | |
|---|---|
| Plaintiffs | Exhibit 2P |
| Defendants | Exhibit 2D |

**STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED**

| | |
|---|---|
| Plaintiffs | Exhibit 3P |
| Defendants | Exhibit 3D |

**BRIEF STATEMENT OF INTENDED PROOF**

| | |
|---|---|
| Plaintiffs | Exhibit 4P |
| Defendants | Exhibit 4D |

**TRIAL WITNESSES**

| | |
|---|---|
| Plaintiffs | Exhibit 5P |
| Defendants | Exhibit 5D |

**DEPOSITION DESIGNATIONS**

| | |
|---|---|
| Plaintiffs | Exhibit 6P |
| Defendants | Exhibit 6D |

**UNCONTESTED EXHIBITS**

| | |
|---|---|
| Joint | Exhibit 7 |

**CONTESTED EXHIBITS**

| | |
|---|---|
| Plaintiffs | Exhibit 8P |
| Defendant | Exhibit 8D |

**MOTIONS *IN LIMINE***

| | |
|---|---|
| Plaintiffs' MIL 1 | Exhibit 9 |
| Plaintiffs' MIL 2 | Exhibit 10 |
| Defendants' MIL 1 | Exhibit 12 |
| Defendants' MIL 2 | Exhibit 13 |

# I. NATURE OF CASE

## A. Nature of the Action

1. Plaintiffs accuse Qiagen of infringing method claims 16-20 of U.S. Patent No. 10,017,810 (the "'810 patent") through the use, manufacture, offer for sale, and sale of Illumina-platform QIAseq Targeted DNA Panels, QIAseq Targeted RNAscan Panels, QIAseq Immune Repertoire RNA Library Kits, and QIAseq Index Kits; and GeneRead QIAact Kits. Plaintiffs further accused Defendants of infringing claims 1, 3-5, 10, 11, 13, 17-24, 27, and 29 of U.S. Patent No. 10,450,597 (the "'597 patent") through the use, manufacture, offer for sale, and sale of Illumina- and Ion Torrent-platform QIAseq Targeted DNA Panels, QIAseq Targeted RNAscan Panels, QIAseq Immune Repertoire RNA Library Kits, and QIAseq Index Kits; and GeneRead QIAact Kits. Plaintiffs claim damages from Qiagen's infringement as follows: lost profits from Qiagen, amounting to $841,756; if the requested lost profits are awarded, a reasonable royalty from Qiagen, amounting to $2,992,308; and if the requested lost profits are not awarded, a reasonable royalty from Qiagen, amounting to $3,103,858.[1]

[1] [Plaintiffs' Position: Pursuant to Fed. R. Civ. P. 26(e), QIAGEN must supplement its discovery responses relating to damages, including its production of damages-related financial data. To date, Qiagen's supplementation of such discovery and data ends at December 31, 2020. QIAGEN's production is therefore incomplete. QIAGEN refuses to supplement its data past December 31, 2020. As a compromise, Plaintiffs have proposed that the parties supplement damages-related document production and expert damages calculations through the second quarter of 2021 (June 30, 2021) before trial and perform an accounting for additional damages between June 30, 2021 and the verdict. QIAGEN has rejected this proposal. If the Court permits QIAGEN to refuse to supplement its damages-related data before trial, Plaintiffs are entitled to, at minimum, an accounting after trial in order to determine damages incurred during the period from January 1, 2021 to the date of the verdict.] [QIAGEN's Position: Plaintiffs suggested supplemental financial productions and additional damages calculations for the first time when they circulated their proposed sections of the pretrial order. QIAGEN believes that Plaintiffs raised this issue too close to trial for it to be fair or practicable for QIAGEN to produce supplemental financials and for the parties to prepare another round of supplemental damages expert reports prior to trial. QIAGEN proposes that, if infringement is found and damages are

2. Defendants dispute that there can be infringement of the asserted method claims by manufacturing or selling “methods” which is not physically possible. Defendants also dispute that when used, the accused products infringe any claim of the asserted claims which are all method claims, and that even if infringed, Plaintiffs cannot recover damages for the alleged practice of the claimed methods outside the United States. Thus, the maximum total damages Plaintiffs can recover, as discussed in section VII infra, for their patent infringement claims is $1.6 million rather than $3.8 million, because the latter number includes alleged uses of the patented methods outside the United States

3. Defendants also assert that the claims of the ‘810 and ‘597 patents are invalid in light of prior art and under 35 U.S.C. §112.

**B. Jurisdiction**

4. This is an action for patent infringement, damages, and injunction under 35 U.S.C. § 101 *et seq.* The subject matter jurisdiction of this Court is not disputed and is based on 28 U.S.C. §§ 1331 and 1338(a) and 28 U.S.C. § 1367.

5. The parties do not dispute personal jurisdiction or venue for purposes of this action.

6. Plaintiffs Archer and MGH assert they are the owners by assignment of the ‘597 Patent. Plaintiff MGH asserts it is the owner by assignment, and Archer the exclusive licensee, of the ‘810 Patent. Plaintiffs assert they have standing to bring this suit.

---

awarded, the parties perform an accounting for any additional damages from January 1, 2021 to the date of the verdict.]

**C. Claim Construction**

7. On December 12, 2019, the Court issued a Memorandum Order construing seven terms of the '810 Patent claims. (D.I. 146.)

8. On June 18, 2020, the Court issued a Memorandum Order construing eight terms of the '597 Patent claims. (D.I. 254.)

**D. Pending Motions**

9. The parties' motions *in limine*, which are being filed as part of this Pretrial Order, are pending.

10. On March 1, 2021, Plaintiffs filed a motion for partial summary judgment of no invalidity as to the '597 Patent and to strike and preclude certain testimony of QIAGEN's technical expert, Dr. Michael Metzker. (D.I. 320.) QIAGEN filed motions for summary judgment of (1) non-infringement (D.I. 325) of all the asserted claims of the '810 and '537 patents; (2) on counts III (false advertising), VII (breach of fiduciary duty), VIII (aiding and abetting breach of fiduciary duty), IX (deceptive trade practice), and X (tortious interference) (D.I. 324), and (3) no trade secret misappropriation (Counts I, and IV-VI) (D.I. 326). The briefing on all the motions was completed on April 19, 2021.

11. On June 18, 2021, Plaintiffs submitted a letter to the Court dropping its claims for trade secret misappropriation (D.I. 130 Counts I, IV-VI); false advertising (Count III); deceptive trade practices (Count IX); and tortious interference (Count X). The Court then denied as moot Defendants' motion for summary judgment of no trade secret misappropriation (D.I. 414).

12. On July 26, 2021, the Court denied QIAGEN's motion for summary judgment regarding Counts VII and VIII (D.I. 324). D.I. 419. On August 4, 2021, Plaintiffs filed a Notice

of Rule 68 Offer of Judgment and Acceptance, accepting Defendants' Offer of Judgment of $100, under Rule 68 as to Counts VII and VIII. D.I. 423.

13. The Court has scheduled a hearing August 11, 2021 at 2:00 p.m. on the remaining summary judgment motions, Plaintiffs' Motion for Summary Judgment of No Invalidity as to the '597 Patent and to Strike and Preclude Testimony (D.I. 320) and QIAGEN's Motion for Summary Judgment of Noninfringement (D.I. 325).

## II. ISSUES OF FACT

### A. Uncontested Facts

14. Per agreement of the parties, the facts listed in **Exhibit 1** hereto are not contested for purposes of trial. These uncontested facts shall require no proof at trial and will become part of the evidentiary record at trial. Any party may introduce any of the uncontested facts to the jury at any time without prior notice.

### B. Contested Facts

15. Plaintiffs' statement of the issues of fact that remain to be litigated is attached as **Exhibit 2P**.

16. Defendants' statement of the issues of fact that remain to be litigated is attached as **Exhibit 2D**.

17. If the Court determines that any issue identified in the statements of issues of fact is more properly considered an issue of law, it should be so considered.

## III. ISSUES OF LAW THAT REMAIN TO BE LITIGATED

18. Plaintiffs' statement of the issues of law that remain to be litigated is attached as **Exhibit 3P**.

19. Defendants' statement of the issues of law that remain to be litigated is attached as **Exhibit 3D**.

20. If the Court determines that any issue identified in the statement of issues of law is more properly considered an issue of fact, it should be so considered.

## IV. BRIEF STATEMENT OF INTENDED PROOFS

21. Plaintiffs' brief statement of intended proofs is set forth in **Exhibit 4P**.

22. Defendants' brief statement of intended proofs is set forth in **Exhibit 4D**.

## V. WITNESSES

### A. List of Witnesses the Parties Expect to Call

#### 1. Expert Witnesses

23. In **Exhibit 5P,** attached hereto, Plaintiffs identify the expert witnesses they intend to call to testify at trial.

24. In **Exhibit 5D**, attached hereto, Defendants identify the expert witnesses they intend to call to testify at trial.

#### 2. Non-Expert Witnesses

25. In **Exhibit 5P**, attached hereto, Plaintiffs identify the fact witnesses they intend to call to testify and whether the witnesses will testify in person or by deposition. Defendants' objections to any identified witness are included in Exhibit 5P.

26. In **Exhibit 5D**, attached hereto, Defendants identify the fact witnesses they intend to call to testify and whether the witnesses will testify in person or by deposition. Plaintiffs' objections to any identified witness are included in Exhibit 5D.

27. Any witness not listed in Exhibits 5P and 5D will be precluded from testifying, absent good cause shown.

**3. Agreements Regarding Presentation and Identification of Witnesses**

28. The parties agree that fact witnesses will be sequestered. The parties agree that expert witnesses need not be sequestered. Notwithstanding the foregoing, the parties agree that a single corporate representative need not be sequestered even if the corporate representative may also be a fact witness.

29. The parties will identify by email to the opposing parties the most current list of the witnesses they intend to call, the order in which they intend to call them, and whether those witnesses will be called live or by deposition, by 6:00 p.m.[2] two nights before the day on which such witness will be called to testify. (For example, if a party expects to conduct an examination on Thursday, notice is to be given to the opposing party by 6:00 p.m. on Tuesday.) The other parties shall identify any objection to such witness(es) by 7:00 p.m. the following day, *i.e.*, the night before the trial day on which the witnesses will be called to testify, and the parties shall meet and confer to resolve any objections at 10:00 p.m. that same evening. If good faith efforts to resolve the objections fail, the party objecting to the witness shall bring its objections to the Court's attention at the beginning of the day on which the witness will be called to testify. This paragraph applies only to the identification of live witnesses. Witnesses whose testimony will be presented via deposition must be disclosed according to the schedule set forth below.

30. The presentation at the jury trial will occur in the following order:

| | |
|---|---|
| Phase I | Plaintiffs' case-in-chief on infringement and damages |
| Phase II | Defendants' response on infringement and damages<br><br>Defendants' case-in-chief on invalidity |
| Phase III | Plaintiffs' response on invalidity |

[2] All times are Eastern Time.

31. Notwithstanding the foregoing, the parties have agreed that fact witnesses may testify once on all issues.

32. Each side will use best efforts to give the other party at least twenty-four (24) hours' notice before concluding each of the Phases listed above.

**B. Testimony by Deposition**

33. Use of deposition testimony shall be governed by Federal Rule of Civil Procedure 32 and the Federal Rules of Evidence.

34. The deposition testimony that Plaintiffs may offer into evidence is identified in **Exhibit 6P**.

35. The deposition testimony that QIAGEN may offer into evidence is identified in **Exhibit 6D**.

36. This pretrial order contains the universe of deposition designations, counter-designations, counter-counter designations, and objections to admissions of deposition testimony currently contemplated by the parties; except as provided in Paragraph 50 below, none of the foregoing shall be supplemented without approval of all parties or leave of the Court, on good cause shown.

37. Any party may use testimony that is designated by another party, to the same effect as if it had initially designated the testimony as its own, subject to all objections.

38. For any witness whose testimony the parties intend to present at trial by deposition, the parties shall identify a list of deposition designations to be played to the jury and the proposed exhibits used in the designations by 6:00 p.m. four (4) calendar days before the designations are to be played to the jury. The party receiving the designations shall inform the opposing party of any objections by 6:00 p.m. three calendar days prior to the testimony being offered into the record,

and the parties will meet-and-confer by 9:00 p.m. that same day. If there are objections that remain to be resolved, the party calling the witness by deposition shall, no later than two (2) days before the witness is to be called at trial, submit, on behalf of all parties: (i) a copy of the entire deposition testimony of the witness at issue, clearly highlighting the designations, counter-designations, and counter-counter designations, and pending objections; (ii) any exhibits to be introduced with the deposition testimony if there remains a pending objection to that exhibit, and (iii) a cover letter clearly identifying the pending objections as well as a brief indication (i.e., no more than one sentence per objection) of the basis for the objection and the offering party's response to it. Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of the deposition testimony or waiver of objection to the use of the deposition testimony.

39. Colloquy between counsel, requests to have the court reporter read back a question, and objections will be eliminated when the deposition is played at trial.

40. When the witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with two (2) copies of the transcript of the designations, counter-designations, and counter-counter designations that will be played.

41. The designations, counter-designations, and counter-counter-designations will be read or played by video in chronological order at the same time. The parties will be charged for time according to the following proportions: each side shall be charged only with the time needed to play its own designations, counter-designations, or counter-counter-designations, and will not be charged with the time necessary to play the other side's designations, counter-designations, or counter-counter-designations.

42. The party offering the testimony is responsible for preparing video deposition clips of all designated testimony for that witness. A copy of the video deposition clips shall be provided to the opposing party no later than 8:00 p.m. the day before the deposition testimony is expected to be played, or state in writing that the deposition will be read into the record.

43. For those witnesses whose depositions will be played or read, the parties shall be permitted to make brief transition statements to introduce the witnesses by name, position or title, and/or the company with which he or she is associated, the time for which shall be charged to the party offering the witness's testimony, unless otherwise agreed to by the parties. However, counsel shall not be permitted to argue or comment on the evidence during transition statements.

44. If a party intends to use deposition testimony during its opening statement, the party shall disclose the testimony by 12:00 p.m. one (1) day before opening statements. The parties will provide any objections to such testimony by 6:00 p.m. on the day before opening statements so that the Court can resolve those objections before opening statements.

**C. Impeachment with Prior Inconsistent Testimony**

45. The above procedures regarding deposition designations do not apply to portions of deposition transcripts and/or video used for impeachment or cross-examination of a witness. Any deposition testimony may be used at trial for the purpose of impeachment, regardless of whether a party identified that testimony on its list of deposition designations. The parties agree that they may object to the use of deposition and other prior testimony for impeachment purposes, including objections based on lack of completeness and/or lack of inconsistency.

**D. Objections to Expert Testimony**

46. The parties agree that the Court should rule at trial on any objections to expert testimony as beyond the scope of prior expert disclosures, and that a failure to object to expert testimony as beyond the scope of prior expert disclosures waives the objection as to that testimony. The time taken to argue and decide such objections will be charged to the losing party.

## VI. EXHIBITS

47. The joint list of exhibits that the parties intend to offer at trial, with the parties' respective objections, are attached as **Exhibit 7**.

48. Plaintiffs' list of exhibits that they intend to offer at trial, with Defendants' objections, is attached as **Exhibit 8P**. Plaintiffs reserve the right to use any exhibit identified by Defendants, and use exhibits not listed for rebuttal and impeachment.

49. Defendants' list of exhibits that they intend to offer at trial, with Plaintiffs' objections, is attached as **Exhibit 8D**. Defendants reserve the right to use any exhibit identified by Plaintiffs, and use exhibits not listed for rebuttal and impeachment.

50. [Plaintiffs' Proposal: By August 17, 2021, the parties shall supplement their respective productions of damages-related financial data through June 30, 2021. No later than August 20, the parties shall supplement any damages calculations performed by their respective experts using this supplemental data. Upon a jury verdict of infringement, the parties shall perform an accounting for the period from June 30, 2021 through the date of the verdict to determine damages for that period, including reasonable royalty and, if awarded by the jury, lost

profits.][3] [QIAGEN's Proposal: Considering the timing, including that Plaintiffs first raised the issue of a partial-year supplementation for 2021 in their portions of the Joint Pretrial Order, the most fair and efficient approach - in the event of a verdict for Plaintiffs - is that supplemental damages be calculated once for the period from January 1, 2021 through the date of the verdict. It is neither reasonable nor practical to engage in another financial production and supplemental damages calculation this close to trial, particularly when Plaintiffs concede that, should they prevail on infringement, the process will have to be repeated again for the period between the supplemental production and the date of the verdict.] ]

51. This pretrial order contains the maximum universe of exhibits to be used in any party's case-in-chief, as well as all objections to the admission of such exhibits, neither of which shall be supplemented without approval of all parties or leave of the Court, on good cause shown. Exhibits not listed will not be admitted into evidence unless good cause is shown.

---

[3] [Plaintiffs' Position: Pursuant to Fed. R. Civ. P. 26(e), QIAGEN must supplement its discovery responses relating to damages, including its production of damages-related financial data. To date, Qiagen's supplementation of such discovery and data ends at December 31, 2020. QIAGEN's production is therefore incomplete. QIAGEN refuses to supplement its data past December 31, 2020. As a compromise, Plaintiffs have proposed that the parties supplement damages-related document production and expert damages calculations through the second quarter of 2021 (June 30, 2021) before trial and perform an accounting for additional damages between June 30, 2021 and the verdict. QIAGEN has rejected this proposal. If the Court permits QIAGEN to refuse to supplement its damages-related data before trial, Plaintiffs are entitled to, at minimum, an accounting after trial in order to determine damages incurred during the period from January 1, 2021 to the date of the verdict.] [QIAGEN's Position: Had Plaintiffs raised the issue of further supplementation of QIAGEN sales information earlier, the parties could have discussed a reasonable approach to supplementation that would not overlap with the final days of trial preparation. For example, in March of 2021, QIAGEN provided financial information for the full year 2020. QIAGEN has not refused to meet any obligation under the Federal Rules of Civil Procedure. Further, should Plaintiffs prevail on the merits, they will receive the requested supplemental financial information through the date of the verdict, arriving at the same result as their own proposal, without as many stetps].

52. Notwithstanding the foregoing, the parties agree that exhibits to be used solely for cross examination or impeachment need not be included on the lists of trial exhibits or disclosed in advance of being used at trial.

53. The parties agree to provide witness binders for each fact and expert witness for both direct examination and cross-examination.

54. No exhibit will be admitted into evidence unless offered through a witness, who must at least be shown the exhibit. At some point before the completion of the witness's testimony, absent leave of Court, any party that has used an exhibit with the witness and wishes that exhibit to be admitted into evidence must formally move the exhibit into evidence, by exhibit number. Except as provided below with respect to opening statements, exhibits may not be published, displayed, or otherwise shown to the jury until after they have been admitted into evidence. Once admitted, counsel may publish exhibits to the jury without requesting to do so.

55. Any trial exhibit that was produced in discovery by a party and that on its face appears to have been authored by an employee, officer, or agent of the party producing such document, shall be deemed a true and correct copy of a document maintained in that party's files as of the date of the party's document collection under Federal Rule of Evidence 901.

56. Any exhibit listed by a party may be offered as an exhibit by that party or by another party, subject to any evidentiary objections by the opposing party.

57. Any exhibit, once admitted at trial, may be used equally by any party, subject to the Federal Rules of Evidence.

58. The listing of a document on a party's exhibit list or the joint exhibit list is not an admission that such document is relevant or admissible when offered by the opposing party for the purpose that the opposing party wishes to admit the document. Each party reserves the right

to object to the admissibility of any evidence offered by the other party, at the time such evidence is offered, in view of the specific context in which such evidence is offered.

59. The parties agree that any description of a document or other material on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the document or material.

60. The parties agree that if any party removes or otherwise withdraws an exhibit from its Exhibit List, another party may amend its Exhibit List to include that same exhibit. The parties also agree that the parties may make objections to such exhibit, other than an objection based on untimely listing.

61. A party will provide exhibits to be used in connection with direct examination by 7:00 p.m. the day before their intended use, and objections will be provided no later than 9:00 p.m. the night before their intended use. The parties are to meet-and-confer to resolve any objections at 10:00 p.m. the night before the exhibits' intended use. If good faith efforts to resolve the objections fail, the party objecting to the exhibits shall bring its objections to the Court's attention prior to the witness being called to the witness stand. Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.

62. If a party intends to use an exhibit during its opening statement to which the other party has objected, the party shall disclose the exhibit(s) by 12:00 p.m. one (1) calendar day before opening statements. If the opposing party continues to object to any such exhibit(s), it will provide those objections by 6:00 p.m. the day before opening statements so that the Court can resolve those objections before opening statements.

63. The parties will exchange final digital copies of their exhibits, with exhibit numbers, seven (7) days before the first day of trial. The parties shall make available for inspection, at a mutually convenient time, any physical exhibits to be used at trial, labeled with an exhibit number. The final digital copy of each exhibit page will be endorsed with a unique page identifier, including the exhibit prefix, exhibit number, and page numbers of the electronic document. The exhibit prefixes shall be: "JX" for exhibits on the Joint Exhibit List; "PX" for exhibits on Plaintiffs' Exhibit List, and "DX" for exhibits on Defendants' Exhibit List. The page numbering shall begin at 1 for the first page of each exhibit and the numbering on each page should include the trial exhibit number and the physical page number separated by a decimal. For example, page 62 of Joint Exhibit 5 would be endorsed / paginated as either: "JX-005.62" or "JX-5.62".

64. On or before the first day of trial, counsel will deliver to the Courtroom Deputy a completed AO Form 187 exhibit list for each party.

**A. Demonstrative Exhibits**

65. Plaintiffs' demonstratives will be identified with PDX numbers.

66. Defendants' demonstratives will be identified with DDX numbers.

67. The parties will exchange demonstratives for intended use in opening statements by 2:00 p.m. one (1) calendar day before opening statements. The parties will provide any objections to such demonstrative by 6:00 p.m. on the day before opening statements, and the parties will meet and confer by 8:00 p.m. the same day. If good faith efforts to resolve the objections fail, the party objecting to the demonstrative shall bring its objections to the Court's attention at the beginning of the next day.

68. A party will provide demonstrative exhibits to be used in connection with direct examination 7:00 p.m. the night before their intended use, and objections will be provided no later 9:00 p.m. the night before their intended use.

69. The parties are to meet and confer to attempt to resolve any objections at 10:00 p.m. the night before the demonstrative's intended use. If good faith efforts to resolve objections to demonstrative exhibits fail, the objecting party shall bring its objections to the Court's attention prior to the applicable witness being called to the witness stand. Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.

70. The party seeking to use a demonstrative will provide a color representation of the demonstrative to the other side in PDF format. However, for video or animations, the party seeking to use the demonstrative will provide it to the other side electronically via a video or similar file, or on a DVD or CD. For irregularly-sized physical exhibits, the party seeking to use the demonstrative will provide a color representation as a PDF of 8.5 x 11 copies of the exhibits.

71. This provision does not apply to demonstratives created during testimony or demonstratives to be used for cross-examination, neither of which need to be provided to the other side in advance of their use. In addition, blow-ups or highlights of exhibits or parts of exhibits or testimony are not required to be provided to the other side in advance of their use.

## VII. RELIEF SOUGHT

72. Plaintiffs intend to seek the following relief:[4]

---

[4] [Plaintiffs object to QIAGEN's refusal to supplement its damages-related discovery. *See supra* n. 1, 3. Plaintiffs reserve the right to update its damages calculations, and damages claims, based on any supplemental data produced by QIAGEN. Plaintiffs seek an accounting for damages

a. Lost profits from QIAGEN, amounting to $841,756. 35 U.S.C. § 284.

b. If the requested lost profits are awarded, a reasonable royalty from QIAGEN, amounting to $2,992,308. 35 U.S.C. § 284.

c. If the requested lost profits are not awarded, a reasonable royalty from QIAGEN, amounting to $3,103,858. 35 U.S.C. § 284.

d. Enhanced damages for QIAGEN's willful infringement. 35 U.S.C. § 284.

e. Pre-judgment and post-judgment interest, costs, and attorneys' fees. 35 U.S.C. §§ 284-285.

f. A permanent injunction preventing Defendants from future infringement of the '810 Patent and/or '597 Patent.

73. Defendants deny that Plaintiffs are entitled to any relief. Further, because every asserted claim is a method claim, any relief that Plaintiffs seek must be limited to compensation for the practice of such claims that are considered infringement under the patent statute 35 U.S.C. § 271 et seq. In response to Plaintiffs' enumerated damages claims, Defendants submit that:

a. The total lost profits that Plaintiffs can seek under the law sought for products sold and used in the United States are $841,756.

b. For the products for which Plaintiffs are not seeking lost profits, the total royalty amount that Plaintiffs can seek for sales and use of the product occurring within the United States is $752,006. $2.2 million dollars of the royalties that Plaintiffs are seeking are for the use of products outside the United States. Such use is not compensable under the law.

---

incurred between the last date for which QIAGEN has produced damages-related data and the date of the verdict.]

c. If Plaintiffs are not awarded lost profits on any products, the maximum compensable damages that Plaintiffs are seeking for infringement of its method claims is a royalty of $863,555. QIAGEN notes that, using the royalty rate that QIAGEN believes would be appropriate, the royalty would be even less.

## VIII. MOTIONS IN LIMINE

74. Plaintiffs' contested motions *in limine*, Defendants' oppositions, and Plaintiffs' replies are attached as **Exhibits 9 and 10.**

75. Defendants' contested motions *in limine*, Plaintiffs' oppositions, and Defendants' replies are attached as **Exhibits 12 and 13**.

## IX. DISCOVERY

76. Each party has completed discovery.

## X. NUMBER OF JURORS

77. There shall be eight jurors. The Court will conduct jury selection through the "struck juror" method, beginning with the Court reading voir dire to the jury panel in the courtroom, continuing by meeting with jurors individually or at sidebar and there addressing any challenges for cause, and concluding with peremptory strikes.

## XI. LENGTH OF TRIAL

78. The trial will be timed. Unless otherwise noted, time will be charged to a party for it opening statement, direct and redirect examination of witnesses it calls, cross-examination of witnesses called by any other party, closing argument, its argument on any motions for judgment as a matter of law, and all sides' arguments on objections a party raises (outside the presence of the jury) to another party's exhibits and demonstrative exhibits.

79. The Courtroom Deputy will keep a running total of trial time used by counsel. If a party uses all of its allotted trial time, the Court will terminate that party's trial presentation.

80. Plaintiffs request eighteen (18) hours per side for each side's trial presentation. QIAGEN requests fifteen (15) hours per side for each side's trial presentation, and at least equal to the time provided to Plaintiffs.

## XII. MOTIONS FOR JUDGMENT AS A MATTER OF LAW

81. The parties propose that motions for judgment as a matter of law be made and argued during breaks when the jury is out of the courtroom or at the end of the day after the jury has been dismissed. The parties agree that such motions will be raised with the Court at the first break after the appropriate point during trial so that the Court may inform the parties when such motions will be heard and whether the Court wishes to receive briefing.

## XIII. AMENDMENTS OF THE PLEADINGS

82. The parties do not seek to amend the pleadings at present.

## XIV. SETTLEMENT

83. The parties hereby certify that they have engaged in a good faith effort to explore resolution of the controversy by settlement, including through mediation with Chief Magistrate Judge Thynge.

**IT IS HEREBY ORDERED** that this Final Pretrial Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

Dated: August 9, 2021

MCCARTER & ENGLISH, LLP

By: /s/ Daniel M. Silver
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
405 N. King St., 8th Floor
Wilmington, DE 19801
(302) 984-6331
dsilver@mccarter.com
ajoyce@mccarter.com

John W. Shaw (# 3362)
Jeff Castellano (# 4837)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0701
jshaw@shawkeller.com
jcastellano@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Plaintiffs ArcherDX, LLC f/k/a ArcherDX, Inc. and The General Hospital Corporation d/b/a Massachusetts General Hospital*

POTTER ANDERSON & CORROON LLP

By: /s/ Stephanie E. O'Byrne
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendants QIAGEN Sciences, LLC, QIAGEN LLC f/k/a QIAGEN, Inc., QIAGEN Beverly LLC, f/k/a QIAGEN Beverly, Inc., QIAGEN Gaithersburg LLC, f/k/a QIAGEN Gaithersburg, Inc., QIAGEN GmbH, and Jonathan Arnold*

IT IS SO ORDERED this ____ day of ________________, 2021.

________________________________
The Honorable Maryellen Noreika
United States District Judge

# Exhibit 1:

# [PROPOSED] JOINT STATEMENT OF UNCONTESTED FACTS THAT REQUIRE NO PROOF

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ARCHERDX, LLC f/k/a ARCHERDX, INC. and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL, | ) | |
| *Plaintiffs*, | ) | C.A. No. 18-1019-MN |
| v. | ) | |
| QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC., QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V. and JONATHAN ARNOLD, | ) | |
| *Defendants*. | ) | |

**EXHIBIT 1**

**[PROPOSED] JOINT STATEMENT OF UNCONTESTED FACTS**
**THAT REQUIRE NO PROOF**

Exhibit 1
Statement of Uncontested Facts

The following facts are undisputed or have been agreed or stipulated to by the parties.

## I. THE PARTIES

### A. Plaintiffs

1. ArcherDx, LLC ("Archer") is a corporation organized and existing under the laws of Delaware with a principal place of business at 1400 16th Street, San Francisco, CA 94103. Archer is a wholly owned subsidiary of Invitae Corporation ("Invitae"). Archer was formerly called ArcherDX, Inc. Archer was acquired by Enzymatics in or around August 2013. Archer was spun-out into an independent company in or around December 2014 when QIAGEN acquired Enzymatics. On October 2, 2020, Invitae acquired ArcherDx, Inc. and changed the name of the acquired entity to ArcherDx, LLC.

2. The Hospital Corporation, d/b/a Massachusetts General Hospital, ("MGH") is a corporation organized and existing under the laws of Massachusetts and having a principal place of business at 55 Fruit Street, Boston, MA 02114.

### B. Defendants

3. QIAGEN Sciences, LLC is a Delaware limited liability company having a place of business at 19300 Germantown Road, Germantown, MD 20874. QIAGEN Sciences, LLC is a subsidiary of QIAGEN Gaithersburg, LLC.

4. QIAGEN LLC is a California limited liability company having a place of business at 19300 Germantown Road, Germantown, MD 20874. QIAGEN LLC is a subsidiary of QIAGEN North American Holdings, Inc.

5. QIAGEN Beverly, LLC is a Massachusetts limited liability company having a place of business at 100 Cummings Center, Suite 407J, Beverly, MA 01915.

6. QIAGEN Gaithersburg, LLC is a Delaware limited liability company having a place of business at 19300 Germantown Road, Germantown, MD 20874.

7. QIAGEN GmbH is a German corporation having a place of business at QIAGEN Strasse 1 40724, Hilden, Germany. QIAGEN GmbH controls the QIAGEN.com website.

8. QIAGEN N.V. is a Dutch corporation having a place of business at Hulsterweg 82, 5912 PL Venlo, The Netherlands. (Collectively, the QIAGEN defendants are referenced herein as "Qiagen.")

## II. THE ACCUSED PRODUCTS

9. Plaintiffs accuse the following Qiagen products of infringement of claims 16-20 of the '810 Patent: QIAseq Targeted DNA Panels (Illumina platform only); QIAseq Targeted RNAscan Panels (Illumina platform only); QIAseq Immune Repertoire RNA Library Kits (Illumina platform only); QIAseq Index Kits (Illumina platform only); and GeneRead QIAact Kits.

10. Plaintiffs accuse the following Qiagen products of infringing claims 1, 3-5, 10, 11, 13, 17-24, 27, and 29 of the '597 Patent: QIAseq Targeted DNA Panels (Illumina and Ion Torrent platforms); QIAseq Targeted RNAscan Panels (Illumina and Ion Torrent platforms); QIAseq Immune Repertoire RNA Library Kits (Illumina and Ion Torrent platforms); QIAseq Index Kits (Illumina and Ion Torrent platforms); and GeneRead QIAact kits (collectively, "the '597 Accused Products").

## III. THE ASSERTED PATENTS

### A. '810 Patent

11. United States Patent No 10,017,810 (the "'810 Patent"), entitled "Methods for Determining a Nucleotide Sequence Contiguous to a Known Target Nucleotide Sequence," was filed on September 19, 2016, and issued on July 10, 2018.

12. MGH is the owner by assignment of the '810 Patent; Archer is the exclusive licensee of the '810 Patent. The MGH license was assigned to Archer in the spin-out. The effective filing

date of the ‘810 Patent is May 10, 2012 because the ‘810 Patent is entitled to claim the benefit of the filing date of provisional application No. 61/645,364, which was filed on May 10, 2012.

13. The named inventors of the ‘810 Patent are Anthony John Iafrate, Long Phi Le, and Zongli Zheng.

**B. ‘597 Patent**

14. United States Patent No. 10,450,597 (the "’597 Patent"), is entitled "Methods of Preparing Nucleic Acids for Sequencing," was filed on January 26, 2015, and issued on October 22, 2019.

15. MGH and Archer are the owners by assignment of the ‘597 Patent.

16. The named inventors of the ‘597 Patent are Anthony John Iafrate, Long Phi Le, Zongli Zheng, Jason Myers, and Joshua Stahl.

17. The parties have entered into a stipulation that states that "the [’597] Accused Products meet the portion of claim element 1(b) that recites ‘wherein the different hybridization sequences have different 3' ends, and wherein each primer of the plurality of different primers does not anneal to the same sequence of’ what Plaintiffs assert is the double-stranded target nucleic acid ‘as any other primer of the plurality of different primers,’".

# Exhibit 2P:

# Plaintiffs' Statement of Facts that Remain to Be Litigated

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARCHERDX, LLC and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL, | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 18-1019-MN |
| QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC., QIAGEN GAITHERSBURG, LLC f/k/a QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V., and JONATHAN ARNOLD, | ) | |
| Defendants. | ) | |

**EXHIBIT 2P**

**PLAINTIFFS' STATEMENT OF FACTS THAT REMAIN TO BE LITIGATED**

Plaintiffs present the following statement of issues of fact that remain to be litigated. This statement is based on the current status of the case and the Court's rulings to date. Plaintiffs reserve the right to modify or supplement this statement in response to subsequent Court rulings and/or Defendants' attempts to introduce different or additional facts. The following statement of issues of fact are not exhaustive, and Plaintiffs reserve the right to prove any matters identified in the pleadings, interrogatory responses, and/or expert reports. Plaintiffs intend to offer evidence as to the issues of fact and issues of law identified in this Pretrial Order. Plaintiffs further intend to offer evidence to rebut evidence offered by Defendants. Should the Court determine that any issue identified here is more appropriately considered an issue of law, Plaintiffs incorporate such issues by reference into its statement of Issues Of Law that remain to be litigated. To the extent that Plaintiffs' statement of Issues of Law that remain to be litigated contains issues that the Court deems to be issues of fact, those issues are incorporated herein by reference. Plaintiffs do not assume the burden of proof with regard to any of the below-listed issues of fact. Plaintiffs also incorporate by reference their expert reports to identify the issues to be resolved at trial.

**I. INFRINGEMENT**

1. Whether use of QIAseq Targeted DNA Panels (Illumina platform only), QIAseq Targeted RNAscan Panels (Illumina platform only), QIAseq Immune Repertoire RNA Library Kits (Illumina platform only), QIAseq Index Kits (Illumina platform only), and GeneRead QIAact Kits ("the '810 Accused Products") in accordance with the instructions in the relevant Qiagen handbooks performs each step of claims 16-20 (collectively, "the '810 Asserted Claims") of U.S. Patent 10,017,810 ("the '810 Patent").

2. Whether Qiagen Sciences, LLC, Qiagen LLC, Qiagen Beverly, LLC, Qiagen Gaithersburg, LLC, Qiagen GmbH, Qiagen N.V. (collectively, "Qiagen") and their customers

directly infringed the '810 Asserted Claims by using the '810 Accused Products in an infringing manner.

3. Whether Qiagen induced customers to infringe the '810 Asserted Claims by encouraging them to use the '810 Accused Products in an infringing manner.

4. Whether Qiagen contributed to the infringement of the '810 Asserted Claims by selling QIAseq Index Kits (Illumina platform only).

5. Whether use of QIAseq Targeted DNA Panels (Illumina and Ion Torrent platforms), QIAseq Targeted RNAscan Panels (Illumina and Ion Torrent platforms), QIAseq Immune Repertoire RNA Library Kits (Illumina and Ion Torrent platforms), QIAseq Index Kits (Illumina and Ion Torrent platforms), and GeneRead QIAact Kits (collectively, "the '597 Accused Products") in accordance with the instructions in the relevant Qiagen handbooks performs each step of claims 1, 3-5, 10, 11, 13, 17-24, 27, and 29 ("the '597 Asserted Claims") of U.S. Patent 10,450,597 ("the '597 Patent").

6. Whether Qiagen and its customers directly infringed the '597 Asserted Claims by using the '597 Accused Products in an infringing manner.

7. Whether Qiagen induced customers to infringe the '597 Asserted Claims by encouraging them to use the '597 Accused Products in an infringing manner.

8. Whether Qiagen contributed to the infringement of the '597 Asserted Claims by selling QIAseq Index Kits (Illumina platform only).

9. Whether, if found to infringe, Qiagen's infringement of the '810 Asserted Claims and the '597 Asserted Claims (collectively, "the Asserted Claims") has been and/or continues to be willful.

## II. INVALIDITY

10. Whether the Asserted Claims are invalid as anticipated by the prior art.

11. Whether the Asserted Claims are invalid as obvious in view of the prior art.

12. The level of ordinary skill in the fields to which the '810 Patent and the '597 Patent (collectively, "the Asserted Patents") are directed.

13. The scope and content of the prior art to the Asserted Patents.

14. The differences between the prior art and the Asserted Claims.

15. Whether the secondary considerations of non-obviousness demonstrate that the Asserted Claims would not have been obvious.

16. Whether the secondary considerations of non-obviousness have a nexus to the Asserted Claims.

17. Whether the Asserted Claims are invalid for failure to satisfy the written description requirement under 35 U.S.C. § 112.

18. Whether the Asserted Claims are invalid due to indefiniteness under 35 U.S.C. § 112.

## III. REMEDIES

19. Whether Plaintiffs are entitled to lost profits and/or a reasonable royalty.

20. The amount of any damages Qiagen owes Plaintiffs for infringing one or more of the Asserted Claims.[1]

21. Whether Plaintiffs are entitled to a permanent injunction enjoining Defendants and their officers, directors, employees, agents, servants, affiliated entities, and/or all persons in active

[1] Pursuant to Fed. R. Civ. P 26, Defendants should supplement their production of damages-related financial documents. Plaintiffs have requested supplementation of such documents with data through the first half of 2021 (i.e., through June 30, 2021). Plaintiffs reserve the right to update their damages calculations in light of Defendants' supplementation of this production and/or to seek an accounting for damages incurred between the last date for which Defendants have provided adequate financial supplementation and the date of the verdict.

concert or participation with it from continued infringement of the Asserted Patents. Evidence may also be presented in connection with a post-trial injunction motion.

22. Whether Plaintiffs are entitled to enhanced damages and attorneys' fees and costs.

# EXHIBIT 2D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ARCHERDX, LLC f/k/a ARCHERDX, INC. and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL,<br><br>Plaintiffs,<br><br>v.<br><br>QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC., QIAGEN GAITHERSBURG, LLC f/k/a QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V. and JONATHAN ARNOLD,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 18-cv-1019-MN<br><br>**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY** |

**EXHIBIT 2D**

**DEFENDANTS' STATEMENT OF ISSUES OF FACT TO BE LITIGATED**

Pursuant to Delaware Local Rule 16.3(c)(5), Defendants QIAGEN Sciences, LLC, QIAGEN LLC, QIAGEN Beverly, LLC, QIAGEN Gaithersburg, Inc., QIAGEN GmBH, and QIAGEN N.V. (collectively "QIAGEN"), hereby submit the following statement of issues of fact that remain to be litigated.

By setting forth specific information herein, QIAGEN does not intend to waive their right to prove information not specifically set forth herein. This statement is not intended to be exhaustive and, in addition to what is set out herein, QIAGEN may prove any matters identified in their pleadings and discovery taken in this action to date.

The following statement is based on the parties' pleadings, documentary and testimony evidence, expert reports, and on QIAGEN's current understanding of Plaintiffs' claims. QIAGEN reserves the right to revise, amend, supplement, or modify the following statement based on any pretrial rulings by the Court and/or to address any additional issues, arguments, evidence, or other developments in the case, including edits to the draft pretrial order, any meet and confers or other negotiations between the parties, pending motions, and similar developments.

To the extent that Defendants' Statement of Issues of Law to be Litigated set forth in Exhibit 3D contains issues of fact, those issues are incorporated herein by reference. Should the Court determine that any issue identified below is more appropriately considered an issue of law, QIAGEN incorporates such issue by reference in Exhibit 3D.

## I. NON-INFRINGEMENT

### A. No Direct Infringement of the '810 Patent

1. Whether Plaintiffs have proven by a preponderance of the evidence that use of the '810 Accused Products, namely, the QIAseq Targeted DNA Panels (Illumina platform only), QIAseq Targeted RNAscan Panels (Illumina platform only), QIAseq Immune Repertoire RNA

Library Kits (Illumina platform only), QIAseq Index Kits (Illumina platform only), and the GeneRead QIAact Kits (collectively, "the '810 Accused Products") meets every limitation of claims 16-20 (collectively, "the '810 Asserted Claims") of U.S. Patent 10,017,810 ("the '810 Patent") so as to literally, directly infringe. Plaintiffs do not accuse any products compatible with the Ion Torrent platform of infringing any of the '810 Asserted Claims, either literally or under the doctrine of equivalents.

2. Whether Plaintiffs have proven by a preponderance of the evidence that QIAGEN directly infringes the '810 Asserted Claims.

3. Whether Plaintiffs have proven by a preponderance of the evidence that anyone directly infringes the '810 Asserted Claims.

4. Whether Plaintiffs have proven by a preponderance of the evidence that use of the '810 Accused Products directly infringes the '810 Asserted Claims under the doctrine of equivalents.

5. Whether Plaintiffs have proven by a preponderance of the evidence, among other things, that any single entity performs each of the various steps of the '810 Asserted Claims, as is required for direct infringement.

6. Whether Plaintiffs have any evidence, among other things, that two sequences are identical to first and second sequencing primer in the '810 Accused Products.

7. Whether Plaintiffs have proven by a preponderance of the evidence, among other things, that the '810 Accused Products have ligated adaptors with amplification strands that have sequence identical to first and second sequencing primers.

8. Whether Plaintiffs have proven by a preponderance of the evidence, among other things, that the '810 Accused Products include a universal oligo tail adaptor.

9. Whether Plaintiffs have proven by a preponderance of the evidence, among other things, that the "second adaptor primer" Plaintiffs identify in the '810 Accused Products (the UP primer) can be "nested" with respect to the "first adaptor primer" Plaintiffs identify (the FP primer) where the FP primer does not anneal to any sequence the UP primer does not anneal to.

10. Whether Plaintiffs have proven by a preponderance of the evidence, among other things, that the '810 Accused Products include a second adaptor primer.

11. Whether Plaintiffs have proven by a preponderance of the evidence, among other things, that the '810 Accused Products include a second target-specific primer that anneals to the known target nucleotide sequence.

12. Whether Plaintiffs have proven by a preponderance of the evidence, among other things, that the '810 Accused Products include a second target-specific primer.

13. Whether Plaintiffs have proven by a preponderance of the evidence, among other things, that the '810 Accused Products include a second target-specific primer comprising a 5′ portion comprising a nucleic acid sequence that is identical to a second sequencing primer.

**B. No Indirect Infringement of the '810 Patent**

14. Whether Plaintiffs have proven by a preponderance of the evidence that QIAGEN had the specific intent to encourage any alleged direct infringer to infringe the '810 Asserted Claims pursuant to 35 U.S.C. § 271(b).

15. Whether Plaintiffs have proven by a preponderance of the evidence that QIAGEN has contributed to any alleged direct infringer's infringement of the '810 Asserted Claims pursuant to 35 U.S.C. § 271(c).

16. Whether Plaintiffs have proven by a preponderance of the evidence that the '810 Accused Products are not staple articles or commodities of commerce suitable for substantial noninfringing use with regards to the '810 Patent.

17. Whether Plaintiffs have proven by a preponderance of the evidence that QIAGEN had knowledge of alleged infringement of the '810 Asserted Claims.

18. Whether Plaintiffs have proven by a preponderance of the evidence that QIAGEN had intent to encourage another's alleged infringement of the '810 Asserted Claims.

**C. No Direct Infringement of the '597 Patent**

19. Whether Plaintiffs have proven by a preponderance of the evidence that use of the QIAseq Targeted DNA Panels (Illumina and Ion Torrent platforms), QIAseq Targeted RNAscan Panels (Illumina and Ion Torrent platforms), QIAseq Immune Repertoire RNA Library Kits (Illumina and Ion Torrent platforms), QIAseq Index Kits (Illumina and Ion Torrent platforms), and GeneRead QIAact Kits (collectively, "the '597 Accused Products") meet every limitation of claims 1, 3-5, 10, 11, 13, 17-24, 27, and 29 ("the '597 Asserted Claims") of U.S. Patent 10,450,597 ("the '597 Patent"), such that the use of these products directly, literally infringes these claims.

20. Whether Plaintiffs have proven by a preponderance of the evidence that QIAGEN directly infringes the '597 Asserted Claims.

21. Whether Plaintiffs have proven by a preponderance of the evidence that anyone directly infringes the '597 Asserted Claims.

22. Whether Plaintiffs have proven by a preponderance of the evidence that any single entity performs each of the various steps of the '597 Asserted Claims, as is required for direct infringement.

23. Whether Plaintiffs have proven by a preponderance of the evidence, among other things, that the '597 Accused Products include a target-specific primer.

24. Whether Plaintiffs have proven by a preponderance of the evidence, among other things, that the '597 Accused Products include a target-specific hybridization sequence.

25. Whether Plaintiffs have proven by a preponderance of the evidence, among other things, that the '597 Accused Products include a double-stranded target nucleic acid.

26. Whether Plaintiffs have proven by a preponderance of the evidence, among other things, that the '597 Accused Products include a second nucleic acid template.

27. Whether Plaintiffs have proven by a preponderance of the evidence, among other things, that the '597 Accused Products include a plurality of different primers.

28. Whether Plaintiffs have proven by a preponderance of the evidence, among other things, that the '597 Accused Products include an extension product containing a sequence that is characteristic of the target-specific primer.

29. Whether Plaintiffs have proven by a preponderance of the evidence, among other things, that the '597 Accused Products subject the extension product to an amplification reaction comprising multiple rounds of PCR.

30.

**D. No Indirect Infringement of the '597 Patent**

31. Whether Plaintiffs have proven by a preponderance of the evidence that QIAGEN had the specific intent to encourage any alleged direct infringer to infringe the '597 Asserted Claims pursuant to 35 U.S.C. § 271(b).

32. Whether Plaintiffs have proven by a preponderance of the evidence that QIAGEN has contributed to any alleged direct infringer's infringement of the '597 Asserted Claims pursuant to 35 U.S.C. § 271(c).

33. Whether Plaintiffs have proven by a preponderance of the evidence that the '597 Accused Products are not staple articles or commodities of commerce suitable for substantial noninfringing use with regards to the '597 Patent.

34. Whether Plaintiffs have proven by a preponderance of the evidence that QIAGEN had knowledge of alleged infringement of the '597 Asserted Claims.

35. Whether Plaintiffs have proven by a preponderance of the evidence that QIAGEN had intent to encourage another's alleged infringement of the '597 Asserted Claims.

### E. No Willfulness

36. If there is a finding of infringement, whether Plaintiffs have proven by a preponderance of the evidence that infringement of the '810 patent was willful.

37. If there is a finding of infringement, whether Plaintiffs have proven by a preponderance of the evidence that infringement of the '597 patent was willful.

## II. INVALIDITY

38. What is the scope and content of the prior art.

39. What was the level of ordinary skill in the art at the time of the alleged invention claimed in the asserted claims of the '810 and '597 Patents.

### A. '810 Patent

40. Whether the '810 Asserted Claims are invalid as anticipated under 35 U.S.C. § 102.

41. Whether the '810 Asserted Claims are invalid as obvious under 35 U.S.C. § 103.

42. Whether QIAGEN has demonstrated by clear and convincing evidence that all claimed limitations of one or more '810 asserted claims were disclosed or taught in one of the following prior art references, alone or in combination:

Amsterdam *et al.*, Retroviral-mediated insertional mutagenesis in zebrafish, 104: Methods in Cell Biology 59-82 (2011) ("Amsterdam")

Bronner *et al.*, Improved protocols for Illumina sequencing, 18 Current Protocols in Human Genetics 2.1, 2.1-2.27 (2009) ("Bronner")

Chenchik, U.S. Patent No. 5,565,340 ("Chenchik")

Chiarle *et al*., Genome-wide translocation sequencing reveals mechanisms of chromosome breaks and rearrangements in B cells, 147 Cell 107, 107-119 (2011) ("Chiarle")

Craig, Identification of Genetic Variants Using Barcoded Multiplexed Sequencing, Nature methods. 2008 October; 5(10) 887-893 ("Craig")

February 2010 Illumina Multiplexing Sample Preparation Guide

November 1, 2010 Data Sheet: Illumina Sequencing "TruSeq RNA and DNA Sample Preparation Kits"

Iskow *et al*., "Natural Mutagenesis of Human Genomes by Endogenous Retrotransposons," Cell 141, 1253-1261, June 25, 2010 ("Iskow")

Kircher *et al*., "Double indexing overcomes inaccuracies in multiplex sequencing on the Illumina platform." 40 Nucleic acids research e3:1-8 (2011) ("Kircher")

Leoni, Genome Walking in eurkaryotes, FEBS Journal 278 (2011) 3953-3977 ("Leoni")

Markham, European Patent Application Publication No 0 356 021 A2, Application No. 89307672.9, A method for the amplification of nucleotide sequences ("Markham")

Siebert *et al*., An improved PCR method for walking in uncloned genomic DNA, 23 Nucleic Acids Research 1087, 1087-88 (1995) ("Siebert")

Wang *et al*., Efficient genome-wide mutagenesis of zebrafish genes by retroviral insertions, Proc. Natl. Acad. Sci. USA, 2007; 104:12428-12433 ("Wang")

Wu *et al*., Transcription start regions in the human genome are favored targets for MLV integration," Science 2003; 300:1749-51 ("Wu")

43.

44. Whether in view of the prior art as a whole, background knowledge, the nature of the problem to be solved and common sense a person of ordinary skill in the art would have had a reason to modify or combine the teachings of the prior art listed above to obtain the alleged invention claimed in the '810 asserted claims with a reasonable expectation of success.

45. Whether the '810 patent discloses to a person of ordinary skill in the art any of the below, or whether the '810 patent does not contain such disclosure, rendering it invalid for lack of written description under 35 U.S.C. § 112:

a. The second round of PCR in the claimed method is conducted with primers that are not "nested," to the extent that the "second target-specific primer" does not need to be "nested," either literally or under the doctrine of equivalents;

b. The "second target-specific primer" does not anneal to "the known target nucleotide sequence," but instead anneals to sequences never present in "the known target nucleotide sequence";

c. The second target-specific primer does not have to include sequence identical to a second sequencing primer, as opposed to a portion of it, as Plaintiffs allege;

d. The amplification strand of the universal oligonucleotide tail adaptor does not have two nucleic acid sequences identical to a first and second sequencing primers;

e. The "second adaptor primer" does not anneal to different portions of a first sequencing primer sequence in the universal oligonucleotide tail adaptor.

46. Whether the '810 Asserted Claims, read in light of the specification and intrinsic record, fail to inform with reasonable certainty persons of ordinary skill in the art if the "second sequencing primer" sequence in the "second target-specific primer" is the same as the "second sequencing primer" sequence in the "universal oligonucleotide tail adapter," rendering the claims invalid for indefiniteness under 35 U.S.C. § 112;

47. Whether the '810 Asserted Claims, read in light of the specification and intrinsic record, fail to inform with reasonable certainty persons of ordinary skill in the art that the amplification strand of the universal oligonucleotide tail adaptor does not have two nucleic acid sequences identical to a first and second sequencing primers;

48. If the second target-specific primer only needs to have sequence identical to a portion of the second sequencing primer, how one of skill in the art would know what constitutes a portion (e.g. one nucleotide, two nucleotides, three nucleotides) such that the claim would not be indefinite.

**B. The '597 Patent**

49. Whether the '597 Asserted Claims are invalid as anticipated under 35 U.S.C. § 102.

50. Whether the '597 Asserted Claims are invalid as obvious under 35 U.S.C. § 103.

51. Whether the '597 Asserted Claims are entitled to a priority date of January 27, 2014.

52. Whether the '810 Patent and/or any of its parent applications or patents are available as prior art to the '597 Patent.

53. Whether QIAGEN has demonstrated by clear and convincing evidence that all claimed limitations of one or more '597 asserted claims were disclosed or taught in one of the following prior art references, alone or in combination:

Bio S&T Inc., APAgene™ GOLD-RT genome walking kits (Sept. 2010) ("APAgene Manual")

The May 2010 Applied Biosystems DNA Sequencing by Capillary Electrophoresis Chemistry Guide ("Applied Biosystems Manual")

Cornish-Bowden, A. (1985). Nomenclature for incompletely specified bases in nucleic acid sequences: recommendations 1984. Nucleic acids research, 13(9), 3021 ("Cornish-Bowden")

Craig, D. W., et al. (2008). Identification of genetic variants using bar-coded multiplexed sequencing. Nature methods, 5(10), 887 ("Craig")

Fraiture, M. A., Herman, P., Taverniers, I., De Loose, M., Deforce, D., & Roosens, N. H. (2013). An innovative and integrated approach based on DNA walking to identify unauthorised GMOs. Food chemistry, 147, 60-69 ("Fraiture")

The Illumina Application Note: DNA Analysis (2013). High-speed, multiplexed 16S amplicon sequencing on the MiSeq system ("Illumina DNA Analysis")

Illumina 16S Metagenomic Sequencing Library Preparation (2013). Preparing 16S ribosomal RNA gene amplicons for the Illumina MiSeq system ("Illumina Sequencing Library Preparation")

The 2010 Illumina Genomic Sequencing Data Sheet ("Illumina Genomic Sequencing Data Sheet")

The October 11, 2010 Illumina Sequencing Technology – Tech Spotlight ("Illumina Sequencing")

The November 2, 2010 Illumina TruSeq RNA and DNA Sample Preparation Kits Data Sheet ("Illumina TruSeq Data Sheet")

Kircher *et al*., "Double indexing overcomes inaccuracies in multiplex sequencing on the Illumina platform." 40 Nucleic acids research e3:1-8 (2011) ("Kircher")

Liu, L., *et al*., Comparison of next-generation sequencing systems. J. Biomed. Biotechnol. 2012, 251364, 1-11 (2012) ("Liu").

Martin-Harris, M. H., Bartley, P. A., & Morley, A. A. (2010). Gene walking using sequential hybrid primer polymerase chain reaction. Analytical biochemistry, 399(2), 308-310 ("Martin-Harris")

McCarty, D. R., Latshaw, S., Wu, S., Suzuki, M., Hunter, C. T., Avigne, W. T., & Koch, K. E. (2013). Mu-seq: sequence-based mapping and identification of transposon induced mutations. PLoS One, 8(10), e77172 ("McCarty")

Quail, M. A. et al. (2012). A tale of three next generation sequencing platforms: comparison of Ion Torrent, Pacific Biosciences and Illumina MiSeq sequencers. BMC genomics, 13(1), 341 ("Quail")

Skerra, A. (1992). Phosphorothioate primers improve the amplification of DNA sequences by DNA polymerases with proofreading activity. Nucleic Acids Research, 20(14), 3551-3554 ("Skerra")

U.S. Patent Publication No. 2010/0248310 ("Morley")

U.S. Patent No. 9,487,828 ("the '828 patent")

U.S. Patent No. 10,017,810 ("the '810 patent")

U.S. Patent Application Publication No. 2013/0303461 ("the '461 Publication")

54. Whether QIAGEN has demonstrated by clear and convincing evidence that the APAgene Manual was available prior to the priority date of the '597 patent and qualifies as prior art under 35 U.S.C. § 102(a).

55. Whether in view of the prior art as a whole, background knowledge, the nature of the problem to be solved and common sense a person of ordinary skill in the art would have had a reason to modify or combine the teachings of the prior art listed above to obtain the alleged invention claimed in the '597 asserted claims with a reasonable expectation of success.

56. Whether the '597 Asserted Claims are invalid for lack of written description under 35 U.S.C. § 112.

57. Whether the '597 patent discloses to a person of ordinary skill in the art any of the below, or whether the '597 patent does not contain such disclosure, rendering it invalid for lack of written description under 35 U.S.C. § 112:

a. The double stranded target nucleic acid or the target-specific section of it, is a universal adapter sequence that was ligated to DNA fragments;

b. The target specific primer is a universal primer that anneals to all universal oligonucleotide adaptors that have been ligated to fragments;

c. A single stranded portion of a universal adaptor ligated to nucleic acids is also called a double-stranded target nucleic acid; and

d. The target-specific primer anneals to sequence other than the sequence in the double-stranded target nucleic acid.

58. Whether the '597 Asserted Claims, read in light of the specification and intrinsic record, fail to inform with reasonable certainty persons of ordinary skill in the art of the following, rendering the claims invalid for indefiniteness under 35 U.S.C. § 112:

a. Under Plaintiffs' assertion that step b of claim 1 is to be performed before step a, the antecedent basis for: "the first strand of the double stranded target nucleic acid";

b. The antecedent basis for "the first strand of the double-stranded target nucleic acid";

c. The antecedent basis in step b for: "the same sequence of the double stranded target nucleic acid";

d. Which sequences are being referred to by "the same sequence," whether the first nucleic acid sequence is identified in step a, and/or a second nucleic acid sequence is identified in step b; and

e. The meaning of the term "performed sequentially" with reasonable certainty, e.g., whether "sequentially" could or could not encompass performing step (b) before step (a).

## III. PATENT REMEDIES

59. Whether Plaintiffs have proven they are entitled to any monetary damages for QIAGEN's alleged infringement of the '810 and/or the '597 Patents under a theory of literal infringement, infringement under the doctrine of equivalents, induced infringement, or contributory infringement.

60. Whether Plaintiffs have established that they are entitled to receive lost profits due to QIAGEN's alleged infringement of the '810 and/or the '597 Patents.

61. Whether Plaintiffs are entitled to lost profits damages in the event that use of QIAGEN's RNA-related products is found to infringe any valid asserted claim of the '810 and/or the '597 Patents.

62. Whether Plaintiffs have established that they are entitled to an ongoing royalty for QIAGEN's alleged infringement of the '810 and/or the '597 Patents.

63. The amount of a reasonable royalty that should be awarded to Plaintiffs in the event that QIAGEN is found to infringe any valid asserted claim of the '810 and/or the '597 Patents.

64. Whether Plaintiffs are entitled to recover damages for uses of the accused products that occur outside the United States.

65. If Plaintiffs have proven QIAGEN's alleged infringement of the '810 and/or the '597 Patents was willful, whether Plaintiffs have proven that they are entitled to enhanced damages under 35 U.S.C. § 284.

66. If Plaintiffs have proven that they are entitled to enhanced damages under 35 U.S.C. § 284, what the degree of enhancement should be.

67. Whether Plaintiffs have established this is an exceptional case and that they are entitled to an award of attorneys' fees and costs under 35 U.S.C. § 285, and if so, what amount.

68. Whether Plaintiffs have established that they are entitled to permanent injunctive relief enjoining QIAGEN from performing any acts that infringe the '810 and/or the '597 Patents.

69. Whether Plaintiffs have proven they are entitled to damages for acts of alleged infringement not presented at trial or up to the judgment.

70. Whether Plaintiffs have proven they are entitled to pre-judgment and/or post-judgment interest.

# Exhibit 3P:

# Plaintiffs' Statement of Law

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARCHERDX, LLC and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL, | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 18-1019-MN |
| QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC., QIAGEN GAITHERSBURG, LLC f/k/a QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V., and JONATHAN ARNOLD, | ) | |
| Defendants. | ) | |

**EXHIBIT 3P**

**PLAINTIFFS' STATEMENT OF LAW**

Plaintiffs present the following statement of law. This statement is based on the current status of the case and the Court's rulings to date. Plaintiffs reserve the right to modify or supplement this statement in response to subsequent Court rulings and/or Defendants' attempts to introduce different or additional issues or facts. The following statement of law is not exhaustive, and Plaintiffs reserve the right to prove any matters identified in the pleadings, interrogatory responses, and/or expert reports. Plaintiffs intend to offer evidence as to the issues of fact and issues of law identified in the Pretrial Order. Plaintiffs further intend to offer evidence to rebut evidence offered by Defendants. Plaintiffs do not assume the burden of proof with regard to any of the below-listed issues of law.

## I. INFRINGEMENT

### A. Direct Infringement

Direct infringement occurs when the accused infringer "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor." 35 U.S.C. § 271(a). Infringement is a question of fact. *Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*, 731 F.3d 1271, 1275 (Fed. Cir. 2013).

To prove infringement, the patentee must show by a preponderance of the evidence, *i.e.*, that it is more likely than not, that an accused product embodies all limitations of the claim either literally or under the doctrine of equivalents. *Seal-Flex, Inc. v. Athletic Track and Court Const.*, 172 F.3d 836, 842 (Fed. Cir. 1999).

"A patentee may prove infringement by any method of analysis that is probative of the fact of infringement, and circumstantial evidence may be sufficient." *Martek BioSciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1372 (Fed. Cir. 2009) (internal citations and quotations omitted); *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1219 (Fed. Cir. 2006) ("A patentee

may prove direct infringement or inducement of infringement by either direct or circumstantial evidence." (citation omitted)).

Infringement may be found for literal infringement or for infringement under the doctrine of equivalents. Literal infringement is shown where "the accused device contains or performs each limitation of the asserted claim." *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1313 (Fed. Cir. 2003).

Infringement under the doctrine of equivalents is shown where "on an element-by-element basis that 'the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product.'" *Intendis GMBH v. Glenmark Pharm. Inc., USA*, 822 F.3d 1355, 1360 (Fed. Cir. 2016) (quoting *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009)). The "function" includes functions of elements that are not expressly identified in the patent. *Id.* at 1362.

A patentee may also prove infringement under the doctrine of equivalents by showing, on an element-by-element basis, that "there exist only insubstantial differences between the claimed and accused products." *Great N. Corp. v. Henry Molded Prods., Inc.*, 94 F.3d 1569, 1574 (Fed. Cir. 1996). Whether a difference is "insubstantial" is evaluated from the perspective of the POSA and depends on the context of the patent, the prior art, and the particular circumstances of the case. *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347-48 (Fed. Cir. 2013); *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1318 (Fed. Cir. 1998) (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950)).

"Equivalence . . . does not require complete identity for every purpose and in every respect." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 24-25 (1997) (internal

quotation marks omitted). The entire objective of the doctrine is to extend the scope of a patent claim to reach ingredients that are not literally identical—structurally or otherwise—to the claimed ingredient. As the Federal Circuit has underscored, "any analysis of infringement under the doctrine of equivalents necessarily deals with subject matter that is 'beyond,' 'ignored' by, and not included in the literal scope of a claim." *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1317 (Fed. Cir. 1998).

"What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Abraxis Biosci., Inc. v. Mayne Pharma USA Inc.*, 467 F.3d 1370, 1380 (Fed. Cir. 2006) (finding that, in determining equivalence, the district court properly considered both statements in the patent specification and the accused infringers' own statements to the FDA); *Boehringer Ingelheim Vetemedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1351 (Fed. Cir. 2003). "Proof [of equivalence] can be made in any form: through testimony of experts or others versed in the technology; by documents, including texts and treatises; and, of course, by the disclosures of the prior art." *Graver Tank*, 339 U.S. at 609.

## B. Indirect Infringement

### 1. Inducement of Infringement Under 35 U.S.C. § 271(b)

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b).

A party is liable for inducing infringement of a patent if:

1. the party took some action during the time the patents in suit were in force intending to encourage or assist actions by others;

2. the party was aware of the patent and knew that the acts, if taken, would constitute infringement of that patent or the party believed there was a high probability that the acts,

if taken, would constitute infringement of the patent but deliberately avoided confirming that belief; and

3. use by others of the party's product infringes one or more of the asserted claims of the patent.

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1330 (Fed. Cir. 2016).

Induced infringement requires proof of actual direct infringement by a third party. *Novartis Pharm. Corp. v. Eon Labs Mfg.*, 363 F.3d 1306, 1308 (Fed. Cir. 2004). "Method claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use." *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006).

"Section 271(b), on inducement, does not contain the 'substantial noninfringing use' restriction of 271(c), on contributory infringement. Thus, a person can be liable for inducing an infringing use of a product even if the product has substantial noninfringing uses." *Vanda Pharms. Inc. v. West-Ward Pharms. Int'l, Ltd.*, 887 F.3d. 1117, 1133 (internal citations and quotations omitted); *Sanofi v. Glenmark Pharms. Inc., USA*, 204 F. Supp. 3d 665, 681 (D. Del. 2016).

A defendant's "good-faith" belief regarding patent validity is not a defense to a claim of induced infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1928 (2015).

**2. Contributory Infringement Under 35 U.S.C. § 271(c)**

A party is liable for contributory infringement if it sells or imports material or apparatus for use in practicing a patented process where: (1) there is direct infringement; (2) the accused infringer had knowledge of the patent at issue; (3) the component has no substantial non-infringing uses; and (4) the component is a material part of the invention. *Bone Care Int'l, L.L.C. v. Roxane Labs, Inc.*, No. 09-cv-285-GMS, 2012 WL 2126896, at *10 (D. Del. June 11, 2012) (citing *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010)); *Lucent Techs., Inc. v. Gateway, Inc.*,

580 F.3d 1301, 1320 (Fed. Cir. 2009); 35 U.S.C. § 271(c). The Defendant bears the burden of proving substantial non-infringing uses. *Univ. of Cal. v. Hansen*, No. CIV S98-715, 1999 WL 33268423 (E.D. Cal. Nov. 8, 1999).

### C. Willful Infringement

Willful infringement is shown where the patentee "actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent." *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017) (internal quotation marks omitted). Willful infringement must be shown by a preponderance of the evidence. *Halo Elecs., Inc. v. Pulse Elec., Inc.*, 136 S. Ct. 1923, 1927 (2016).

A jury may find willful infringement without a finding of egregious or shocking infringement behavior. *See, e.g.*, *Deere & Co. v. AGCO Corp.*, No. 18-1827-CFC, 2019 WL 668492, at *5 (D. Del. Feb. 19, 2019); *Align Tech., Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435, 448 (D. Del. 2018); *SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 396 F. Supp. 3d 323, 342 (S.D.N.Y. 2019). Knowledge of a patent before litigation and a lack of evidence of a pre-litigation belief in invalidity can be evidence of willfulness. *Arctic Cat Inc.*, 876 F.3d at 1371 (affirming willfulness finding where infringer "knew about the patents before they issued, conducted only a cursory analysis of the patents, [and] waited years before seeking advice of qualified and competent counsel"); *see also Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1245 (Fed. Cir. 2017); *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 609-10 (D. Mass. 2018); *Dentsply Sirona, Inc. v. Edge Endo*, LLC, No. 17-1041 WJ/SCY, 2019 WL 1517584, at *4 (D.N.M. Apr. 8, 2019); *Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, No. CV 07-8108, 2018 WL 6190604, at *23 (C.D. Cal. Nov. 4, 2018).

To sustain a claim of willful infringement, a "patentee need only prove 'subjective willfulness alone.'" *Plastic Omnium Advanced Innovation & Research v. Donghee Am., Inc.*, 387

F. Supp. 3d 404, 421 (D. Del. 2018) (quoting *WesternGeco L.L.C. v. ION. Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016)). "The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Halo Elecs., Inc.*, 136 S. Ct. at 1933. "Proof of an objectively reasonable litigation-inspired defense to infringement is no longer a defense to willful infringement." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016).

Continued sales of an infringing product after litigation begins can support a finding of post-suit willful infringement, even in the absence of evidence of pre-suit willfulness. *See, e.g.*, *Deere*, 2019 WL 668492, at *5; *IOENGINE, LLC v. PayPal Holdings, Inc.*, Nos. 18-452-WCB-18-826, 2019 WL 330515, at *8 (D. Del. Jan. 25, 2019) (Bryson, C.J.) (same).

Determining willfulness is a question for the jury. *Richardson v. Suzuki Motor Co. Ltd.*, 868 F.2d 1226, 1250 (Fed. Cir. 1989) ("Willfulness of behavior is a classical jury question of intent. When trial is had to a jury, the issue should be decided by the jury.").

## II. INVALIDITY

Under § 282 of the Patent Act, patents are presumed valid and a party challenging the validity of a patent must prove invalidity by clear and convincing evidence. 35 U.S.C. § 282(a); *see also Microsoft Corp. v. i4i Ltd. P'Ship*, 131 S. Ct. 2238, 2242 (2011).

### A. Prior Art Under the AIA

The provisions of the America Invents Act ("AIA") govern patents filed after March 16, 2013. Public Law 112–29, § 3(n)(1); 78 Fed. Reg. 11,059 (Feb. 14, 2013) ("The changes . . . take effect on March 16, 2013."). Section 102 defines prior art under the AIA. The law regarding whether the '810 Patent (and its related ancestors) is available as prior art to the '597 Patent is set forth in Plaintiffs' summary judgment papers (D.I. No. 321 at 17-21; D.I. No. 383 at 11-14) and is herein incorporated by reference.

Section 102 (a) defines two categories of prior art under the AIA. In the first category, "the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention." 35 U.S.C. § 102(a)(1).

Section 102(b)(1) provides exceptions to the first category of prior art. "A disclosure made 1 year or less before the effective filing date of a claimed invention shall not be prior art to the claimed invention under subsection (a)(1) if—(A) the disclosure was made by the inventor or joint inventor or by another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint inventor; or (B) the subject matter disclosed had, before such disclosure, been publicly disclosed by the inventor or a joint inventor or another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint inventor." 35 U.S.C. § 102(b)(1).

To be a "printed publication[]" under § 102(a) a reference "must have been sufficiently accessible to the public interested in the art" where a reference is publicly accessible if it was "disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it." *In re Lister*, 583 F.3d 1307, 1311 (Fed. Cir. 2009); *In re Omeprazole Pat. Litig.*, 536 F.3d 1361, 1381 (Fed. Cir. 2008) (patent challenger's burden to show public accessibility).

Section 102(a)(2) defines a second category of prior art: "the claimed invention was described in a patent issued under section 151, or in an application for patent published or deemed published under section 122(b), in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention." 35 U.S.C. § 102(a)(2).

Section 102(b)(2) provides exceptions to the second category of prior art. "A disclosure shall not be prior art to a claimed invention under subsection (a)(2) if—(A) the subject matter disclosed was obtained directly or indirectly from the inventor or a joint inventor; (B) the subject matter disclosed had, before such subject matter was effectively filed under subsection (a)(2), been publicly disclosed by the inventor or a joint inventor or another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint inventor; or (C) the subject matter disclosed and the claimed invention, not later than the effective filing date of the claimed invention, were owned by the same person or subject to an obligation of assignment to the same person."

## B. Anticipation

In order to show a patent is invalid as anticipated, a defendant must demonstrate, by clear and convincing evidence that every element and limitation of the claim was previously described in a single prior art reference, either expressly or inherently, so as to place a person of ordinary skill in possession of the invention. *See Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1082 (Fed. Cir. 2008); *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1371 (Fed. Cir. 2008); *see also Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011); 35 U.S.C. § 102. The anticipating reference must be enabling. *Sanofi-Synthelabo*, 550 F.3d at 1082. "[I]nvalidity by anticipation requires that the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *Advanced Display Sys. Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000). "There must be no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention." *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed. Cir. 1991), *overruled in part by Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282 (Fed. Cir. 2009).

Inherent anticipation can only be found "when the reference discloses prior art that must *necessarily* include the unstated limitation." *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1373 (Fed. Cir. 2002). Inherent anticipation cannot "be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient." *Cont'l Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1268-69 (Fed. Cir. 1991) (internal quotation marks omitted).

**C. Obviousness**

Section 103 of the Patent Act provides:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102, if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. Patentability shall not be negated by the manner in which the invention was made.

35 U.S.C. § 103.

"[O]bviousness is a matter of law based on findings of underlying fact." *Sanofi-Synthelabo*, 550 F.3d at 1085. The underlying factual considerations include:

> the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might

> be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007) (quoting *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966)); *see also ABT Sys., LLC v. Emerson Elec. Co.*, 797 F.3d 1350, 1357 (Fed. Cir. 2015).

A party seeking to invalidate a patent based on obviousness must demonstrate "by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361 (Fed. Cir. 2007). "The inventor's own path itself never leads to a conclusion of obviousness; that is hindsight. What matters is the path that the person of ordinary skill in the art would have followed, as evidenced by the pertinent prior art." *Otsuka Pharm. Co. v. Sandoz, Inc.*, 678 F.3d 1280, 1296 (Fed. Cir. 2012); *see also Life Techs., Inc. v. Clontech Labs., Inc.*, 224 F.3d 1320, 1326 (Fed. Cir. 2000) ("That the inventors were ultimately successful is irrelevant to whether one of ordinary skill in the art, at the time the invention was made, would have reasonably expected success.").

Obviousness is a question of law based on underlying factual inquiries. *See, e.g.*, *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1308 (Fed. Cir. 2010). "Whether a claim is invalid for obviousness is determined from the perspective of one of ordinary skill in the art." *See, e.g.*, *Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*, 725 F.3d 1341, 1352 (Fed. Cir. 2013); *Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1361 (Fed. Cir. 2011) ("A person of ordinary skill at the time of the invention interprets the prior art using common sense and appropriate perspective.").

The underlying factual inquires in an obviousness determination involve (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the prior art and the claimed invention; and (4) the extent of any objective indicia of non-obviousness. *Graham*, 383 U.S. at 17-18; *KSR*, 550 U.S. at 406. Obviousness "requires more than a mere showing that the prior art includes separate references covering each separate limitation in a claim under examination." *Unigene Labs.*, 655 F.3d at 1360. Even when all claim limitations are found in the prior art, the factfinder must determine what the prior art teaches, whether prior art teaches away from the claimed invention, and whether there was motivation to combine teachings from separate references. *See DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick C*o., 464 F.3d 1356, 1360 (Fed. Cir. 2006).

To protect against the "distortion caused by hindsight bias," there must be "a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." *KSR*, 550 U.S. at 418, 421; *see also id*. at 421 ("A factfinder should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon *ex post* reasoning."); *Novartis Pharms. Corp. v. Par Pharm., Inc.*, 48 F. Supp. 3d 733, 752 (D. Del. 2014) (a party seeking to invalidate a patent claim "must show that a PHOSITA would be motivated to combine the claimed combinations with a reasonable expectation of success.").

An obviousness determination requires consideration of the objective indicia of nonobviousness (or secondary considerations) such as unexpected results, commercial success, copying, skepticism, failure of others, and long-felt but unresolved need. *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 839 F.3d 1034, 1048 (Fed. Cir. 2016) (en banc) ("Objective indicia of nonobviousness must be considered in every case where present.").

Secondary considerations include commercial success, licensing, praise, long-felt need, failure of others, unexpected results, teaching away, and copying. *See KSR*, 550 U.S. at 406 (quoting *Graham*, 383 U.S. at 17-18 ("Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.")). In order for these objective indicia of nonobviousness "to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the claimed invention." *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1359 (Fed. Cir. 2000) (*quoting In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995)).

**D. Written Description**

Pursuant to Section 112(a) of the Patent Act, "[t]he specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art . . . to make and use the same." 35 U.S.C. § 112(a). Where a defendant challenges whether a patent meets the written description requirement of 35 U.S.C. § 112(a), "[t]o overcome the presumption of validity of patents, the accused must show that the claims lack a written description by clear and convincing evidence." *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1351 (Fed. Cir. 2011).

"The test under the written description requirement is 'whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.'" *Hynix Semiconductor*, 645 F.3d at 1351 (quoting *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc)). In determining whether a specification contains an adequate written description, "one must make an 'objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art.'" *Boston Sci. Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1366

(Fed. Cir. 2011) (quoting *Ariad*, 598 F.3d at 1351). This analysis is performed in view of: the nature and scope of the patent claims; the complexity, predictability, and maturity of the technology at issue; the existing knowledge in the relevant field; and the scope and content of the prior art. 35 U.S.C. § 112; *Boston Sci. Corp.*, 647 F.3d at 1361-63.

### E. Indefiniteness

Pursuant to Section 112(b) of the Patent Act, the claims must "particularly point[] out and distinctly claim[] the subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C. § 112(b). Where a defendant challenges whether a patent claim meets the definiteness requirement of 35 U.S.C. § 112(b), the defendant "ha[s] the burden of proving indefiniteness by clear and convincing evidence." *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017).

The test for determining whether the claims are sufficiently definite is whether the "patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014). "Indefiniteness is a question of law." *Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, 803 F.3d 620, 625 (Fed. Cir. 2015).

## III. PATENT REMEDIES

Plaintiffs are entitled to damages as a result of Qiagen's infringement of the '810 and '597 Patents. Where a plaintiff meets its burden of proof on damages, the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court. 35 U.S.C. § 284.

**A. Reasonable Royalty**

A plaintiff is entitled to damages equivalent to a reasonable royalty, or the amount that the defendant would have paid for a license to the asserted patents if the parties had negotiated a license at the time of first alleged infringement. 35 U.S.C. § 284 ("damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interests and costs as fixed by the Court"); *see also LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 60 (Fed. Cir. 2012). The district court must award damages in an amount no less than a reasonable royalty. *Dow Chem. Co. v. Mee Indust., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003) (citing 35 U.S.C. § 284).

The reasonable royalty may be based on a determination of "the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began," *i.e.*, the "hypothetical negotiation." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012). If the record does not fully support either party's royalty estimate, then the fact finder must determine what constitutes a reasonable royalty from the record evidence. *See Apple, Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1328 (Fed. Cir. 2014).

To determine a reasonable royalty, courts may apply the fifteen factors established in *Georgia-Pacific v. U.S. Plywood Corp.*:

1. Any royalties received by the licensor for the licensing of the Asserted Patents, proving or tending to prove an established royalty.

2. The rates paid by Qiagen to license other patents comparable to the Asserted Patents.

3. The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5. The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6. The effect of selling the patented product in promoting other sales of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

7. The duration of the Asserted Patents and the term of the license.

8. The established profitability of the product made under the Asserted Patents; its commercial success; and its popularity.

9. The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by or for the licensor; and the benefits to those who have used the invention.

11. The extent to which Qiagen has made use of the invention; and any evidence that shows the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor and a licensee (such as Qiagen would have agreed upon at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16. Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

*Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *mod. and aff'd*, 446 F.2d 295 (2d Cir. 1971), cert. *denied*, 404 U.S. 870 (1971).

"[I]n conducting the hypothetical negotiation, the Court is permitted to look to events and facts that occurred after the infringement began." *Mobil Oil Corp. v. Amoco Chems. Corp.*, 915 F. Supp. 1333, 1354 (D. Del. 1994) (citing *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1575-76 (Fed. Cir. 1988); *see also St. Clair Intellectual Prop. Consultants, Inc. v. Canon, Inc.*, 2004 WL 2213562, at *2 (D. Del. Sept. 28, 2004).

If the infringer identifies a non-infringing alternative, said alternative "must be available or on the market at the time of infringement." *Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999). For an alternative to be considered available, "there must be evidence that it can be implemented." *Evolved Wireless, LLC v. Apple Inc.*, 2019 WL 1178517, at *6 (D. Del. March 13, 2019). Substitutes that are only "theoretically possible" are not sufficient alternatives. *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 2011 WL 197869, at *2 (E. D. Tex. Jan. 20, 2011).

"[I]f avoiding the patent would be difficult, expensive, and time-consuming, the amount the infringer would be willing to pay for a license is likely to be greater." *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1334-35 (Fed. Cir. 2015) The court may also consider whether avoiding the patent allowed the defendant to save on costs. *See Prism Techs. LLC v. Sprint Spectrum, L.P.*, 849 F.3d 1360, 1376 (Fed. Cir. 2017).

The combination of the royalty base and royalty rate must reflect the value attributable to the infringing features of the product. *Ericsson, Inc. v. D-Link Sys. Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014).

**B. Lost Profits**

Plaintiffs are also entitled to lost profits. "A patentee may seek to recover actual damages, usually, the amount of profits actually lost . . . ." *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991) (citations omitted). "[T]he amount of a prevailing party's damages is a finding of fact on which the plaintiff bears the burden of proof by a preponderance of the evidence." *Id.*

A plaintiff may prove the amount of its lost sales by the factors set forth in the *Panduit* test, whereby the plaintiff bears the burden of proving "(1) demand for the patented product, (2) absence of acceptable noninfringing substitutes, (3) manufacturing and marketing capability to exploit the

demand, and (4) the amount of profit that would have been." *DePuy Spine, Inc. v. Medtronic Sofamore Danek, Inc.* 567 F.3d 1314, 1329 (Fed. Cir. 2009) (citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978)).

### C. Damages on Accused Products Used Outside the United States

Plaintiffs can recover damages on Accused Products made and/or sold within the United States and used by customers outside the United States. Where "a physical product is being employed to measure damages for the infringing use of patented methods," the patentee can recover damages on that physical product, even when the product is used outside of the United States. *Carnegie Mellon University v. Marvell Technology Group*, 807 F.3d 1283, 1305-06 (Fed. Cir. 2015). In *Carnegie*, the Federal Circuit applied a two-step analysis. As a threshold matter, the patentee must establish infringement of the method claims in the United States under § 271(a) with a causal relationship to the accused infringers' sales. *See id.* at 1294-97; 1307. Next, the patentee must establish that at least one Section 271(a) act—making, using, or selling—occurred within the United States:

> What constitutes a territorial connection that brings an action within the reach of a United States statute must ultimately be determined by examining the "'focus' of congressional concern" in the particular statute. …
>
> [W]e think that § 271(a) provides the basis for drawing the needed line. It states a clear definition of what conduct Congress intended to reach—making or using or selling in the United States or importing into the United States, even if one or more of those activities also occur abroad. Where a physical product is being employed to measure damages for the infringing use of patented methods, we conclude, territoriality is satisfied when and only when any one of those domestic actions for that unit (e.g., sale) is proved to be present, even if others of the listed activities for that unit (e.g., making, using) take place abroad. Significantly, once one extends the extraterritoriality principle to confining how damages are calculated, it makes no sense to insist that the action respecting the product being used for measurement itself be an infringing action.

*Id.* at 1306 (internal citations omitted).

**D. Injunction**

Plaintiffs are entitled to permanent injunctive relief prohibiting Qiagen from further infringement of the '810 and '575 Patents. *See* 35 U.S.C. § 283. Upon the request of a patentee, the Court may permanently enjoin the infringer, during the life of the patent, from continuing with the activity found to have infringed the patent. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006).

To grant a permanent injunction, a patent holder must demonstrate (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the patentee and infringer, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *See eBay Inc.*, 547 U.S. at 391.

# EXHIBIT 3D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ARCHERDX, INC. and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL,<br><br>Plaintiffs,<br><br>v.<br><br>QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC., QIAGEN GAITHERSBURG, LLC f/k/a QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V. and JONATHAN ARNOLD,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 18-cv-01019-MN<br><br>**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY** |

**EXHIBIT 3D**

**DEFENDANTS' STATEMENT OF ISSUES OF LAW**

Pursuant to Delaware Local Rule 16.3(c)(5), Defendants QIAGEN Sciences, LLC, QIAGEN LLC, QIAGEN Beverly, LLC, QIAGEN Gaithersburg, Inc., QIAGEN GmBH, and QIAGEN N.V. (collectively "QIAGEN") hereby submit the following statement of issues of law that remain to be litigated with citations to authorities relied upon.

By setting forth specific information herein, QIAGEN does not intend to waive its right to prove information not specifically set forth herein. This statement is not intended to be exhaustive and, in addition to what is set out herein, QIAGEN may prove any matters identified in their pleadings and discovery taken in this action to date.

The following statement is based on the parties' pleadings, documentary and testimony evidence, expert reports, and on QIAGEN's current understanding of Plaintiffs' claims. QIAGEN reserves the right to revise, amend, supplement, or modify the following statement based on any pretrial rulings by the Court and/or to address any additional issues, arguments, evidence, or other developments in the case, including edits to the draft pretrial order, any meet and confers or other negotiations between the parties, pending motions, and similar developments.

To the extent that Defendants' Statement of Issues of Fact to be Litigated set forth in Exhibit 2D contains issues of law, those issues are incorporated herein by reference. Should the Court determine that any issue identified below is more appropriately considered an issue of fact, QIAGEN incorporates such issue by reference in Exhibit 2D.

# I. NON-INFRINGEMENT

## A. No Direct Infringement

1. Whether Plaintiffs can prove infringement under any theory for any claims of the asserted patents, which are all method claims, for products manufactured in the United States but

are shipped outside the country where they are used. "Method claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use." *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006). "Section 271(f) does not encompass devices that may be used to practice a patented method," and a defendant is not liable for infringement for such devices that are exported abroad. *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1366 (Fed. Cir. 2009). Failure to extend the law to cover such extra territorial activity will reduce the maximum amount of damages that Plaintiffs seek from $3.8 million to $1.6 million.

2. Whether Plaintiffs have proven by a preponderance of the evidence that QIAGEN has directly, literally infringed claims 16-20 of the '810 patent under 35 U.S.C. 271(a). *Vanda Pharm. Inc. v. W.-Ward Pharm. Int'l Ltd.*, 887 F.3d 1117, 1125 (Fed. Cir. 2018) ("The patentee bears the burden of proving infringement by a preponderance of the evidence."). Where the asserted claims are method claims, the sale of products, without more, does not infringe the patent. *See Meyer Intellectual Properties, Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1366 (Fed. Cir. 2012). "[D]irect infringement of a method claim requires a showing that every step of the claimed method has been practiced." *Id.*; *Lincoln Nat. Life Ins. Co. v. Transamerica Life Ins. Co.*, 609 F.3d 1364, 1370 (Fed. Cir. 2010) ("The law of this circuit is axiomatic that a method claim is directly infringed only if each step of the claimed method *is performed*.")' *See also Glaxo Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1566 (Fed. Cir. 1997) ("It is elementary patent law that all limitations are material," and plaintiffs are "required to establish the presence of each limitation of the asserted claims.").

3. Whether Plaintiffs may assert infringement of the '810 patent under the doctrine of equivalents. *Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1362 (Fed. Cir.

2019) (where theory of equivalence would vitiate the claim element); *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1320 (Fed. Cir. 2015) (where theory of equivalents would vitiate the structural limitation as it did not operate in the same way); *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002) ("[A] patentee cannot narrowly claim an invention to avoid prosecution scrutiny by the PTO, and then, after patent issuance, use the doctrine of equivalents to establish infringement because the specification discloses equivalents."); *Eagle Pharm., Inc. v. Slayback Pharma LLC*, 382 F. Supp. 3d 341, 347-48 (D Del. 2019), aff'd, 958 F.3d 1171 (Fed. Cir. 2020) (granting judgment of noninfringement on the pleadings even where the specification did not disclose the exact formula that was used in the accused products where it is clear to a POSA that the patents disclose this as an alternative and it was unclaimed).

4. Whether Plaintiffs have proven by a preponderance of the evidence that QIAGEN has directly infringed claims 16-20 of the '810 patent under the doctrine of equivalents. An accused product or process that does not literally meet every limitation of a claim may nonetheless infringe if "the accused product or process contain[s] elements identical or equivalent to each claimed element of the patented invention." *Warner–Jenkinson Co., Inc. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 40 (1997). "Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Id.* To prove infringement under the doctrine of equivalents, the patentee must prove by a preponderance of evidence "the accused device contains an equivalent for each limitation not literally satisfied." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002). To prove equivalence, a patentee generally must "show[] that the difference between

the claimed invention and the accused product [is] insubstantial." *Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1364 (Fed. Cir. 2007). One way of showing that the difference is insubstantial is "by showing on a limitation by limitation basis that the accused product performs substantially the same function in substantially the same way with substantially the same result as each limitation of the patented product." *Id.* "What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case. Equivalence, in the patent law, is not the prisoner of a formula and is not an absolute to be considered in a vacuum." *Graver Tank & Mfg. Co. v. Linde Air Prod. Co.*, 339 U.S. 605, 609 (1950).

5. Whether Plaintiffs have proven by a preponderance of the evidence that QIAGEN has directly, literally infringed claims 1, 3-5, 10, 11, 13, 17-24, 27, and 29 of the '597 patent pursuant to 35 U.S.C. 271(a). The issues of law relating to direct, literal infringement of the '597 patent are the same as described above for direct, literal infringement of the '810 patent and are hereby incorporated by reference.

**B. No Indirect Infringement**

6. Whether Plaintiffs have proven by a preponderance of the evidence that QIAGEN has indirectly infringed the asserted claims of the '810 patent by inducing direct infringement of the '810 patent under 35 U.S.C. 271 (b) or (c). As a threshold matter, a claim for induced infringement requires proof that a third party has directly infringed. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006); *Novartis Pharm. Corp. v. Eon Labs Mfg.*, 363 F.3d 1306, 1308 (Fed. Cir. 2004). An accused infringer "induces infringement under § 271(b) by actively and knowingly aiding and abetting another's direct infringement" of asserted claims. C.*R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990); *see also Alloc, Inc. v.*

*Int'l Trade Comm'n*, 342 F.3d 1361, 1374 (Fed. Cir. 2003). To prove inducement, Plaintiffs must show by a preponderance of the evidence that (1) a third party engaged in the acts that resulted in direct infringement in the United States, and (2) the accused infringer acted with specific intent to induce the direct infringement by the third party. *See, e.g.*, *DSU Med.*, 471 F.3d at 1304-06. Mere "'knowledge of the acts alleged to constitute infringement' is not enough." *DSU Med.,* 471 F.3d at 1305 (*quoting Warner-Lambert Co. v. Apotex Corp.,* 316 F.3d 1348, 1363 (Fed. Cir. 2003)). In addition, "'mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven.'" *Id.*; *see also Takeda Pharm. U.S.A., Inc. v. W.-Ward Pharm. Corp.*, 785 F.3d 625, 631 (Fed. Cir. 2015). To support a claim for inducement based on instructions and training provided to customers, patentee must show that such instructions and training evidence "intent to encourage infringement." *Takeda* 785 F.3d at 631.

7. Whether Plaintiffs have proven by a preponderance of the evidence that QIAGEN has indirectly infringed the asserted claims of the '810 patent by contributing to direct infringement of the '810 patent. As with induced infringement, a claim for contributory infringement (35 U.S.C. § 271(c)) also requires proof of direct infringement. *See In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012). To prove contributory infringement, Plaintiffs must show by a preponderance of the evidence that (1) an accused infringer sold, offered to sell, or imported in the United States a material component for use in an infringing process ; (2) that material component is not a staple article of commerce capable of substantial noninfringing use; (3) a third party used the component in an infringing manner; and (4) the accused infringer knew that the component was especially made or adapted for use in the infringing manner or was at least willfully blind to this fact. *See* 35

U.S.C. § 271(c); *DSU Med.*, 471 F.3d at 1303. The knowledge element "requires knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015). A component is not a staple article of commerce capable of substantial noninfringing use only if it has "no use except through practice of the patented method." *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1374 (Fed. Cir. 2003); *see also Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 441 (1984) ("Unless a commodity has no use except through practice of the patented method, the patentee has no right to claim that its distribution constitutes contributory infringement." (citation and internal quotation marks omitted)).

8. Whether Plaintiffs have proven by a preponderance of the evidence that QIAGEN has indirectly infringed the asserted claims of the '597 patent by inducing direct infringement of the '597 patent. The issues of law relating to induced infringement of the '597 patent are the same as described above in connection with induced infringement of the '810 patent and are hereby incorporated by reference.

9. Whether Plaintiffs have proven by a preponderance of the evidence that QIAGEN has indirectly infringed the asserted claims of the '597 patent by contributing to direct infringement of the '597 patent, either literally or under the doctrine of equivalents. The issues of law relating to induced infringement of the '597 patent are the same as described above in connection with contributory infringement of the '810 patent and are hereby incorporated by reference.

**C. No Willfulness**

10. If there is a finding of infringement, whether Plaintiffs have proven by a preponderance of the evidence that infringement of the '810 patent was willful. *Ansell Healthcare Prod. LLC v. Reckitt Benckiser LLC*, No. 15-CV-915-RGA, 2018 WL 620968, at *6

(D. Del. Jan. 30, 2018) (citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1934 (2016)). Knowledge of the patents is required for willfulness. *Evonik Degussa GmbH v. Materia, Inc.*, 305 F. Supp. 3d 563, 577 (D. Del. 2018). "Proving willfulness requires a showing that an infringer has engaged in conduct that is 'willful, wanton, malicious, bad faith, deliberate, consciously wrong, flagrant … characteristic of a pirate.'" *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC.*, 503 F.Supp.3d 156, 172 (D. Del. 2020) (*quoting Halo*, 136 S. Ct. at 1932). To prevail on a claim of willful infringement, patentee must prove that the infringer acted despite a risk of infringement that was "either known or so obvious that it should have been known to the accused infringer." *Halo*, 136 S. Ct. at 1930. There must be proof of "misconduct beyond typical infringement." *Id.* at 1935. "The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Id*. at 1933.

11. If any claims are found both valid and infringed and there is a finding of willful infringement, whether enhanced damages are warranted. The decision whether to award enhanced damages is in the discretion of the Court. *Juicy Whip, Inc. v. Orange Bang, Inc.*, 382 F.3d 1367, 1370 (Fed. Cir. 2004). A finding of willful infringement is a prerequisite to, but does not require, an award of enhanced damages. *See Halo*, 136 S. Ct. at 1933 ("[N]one of this is to say that enhanced damages must follow a finding of egregious misconduct."); *WBIP, LLC v. Kohler Co*., 829 F.3d 1317, 1341 n.13 (Fed. Cir. 2016) ("[T]his is not to say that a jury verdict of willful infringement ought to result in enhanced damages."). Enhanced damages should be limited to egregious cases. Enhanced damages "are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior." *See Halo*, 136 S. Ct. at 1933. "The sort of conduct warranting enhanced damages has

been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.*

12. If there is a finding of infringement, whether Plaintiffs have proven by a preponderance of the evidence that infringement of the '597 patent was willful. The issues of law relating to willfulness with respect to the '597 patent are the same as described above in connection with the '810 patent and are hereby incorporated by reference.

## II. INVALIDITY

13. The jury must decide whether QIAGEN has proven by clear and convincing evidence that each of the asserted claims of the '810 and/or '597 Patents is invalid. 35 U.S.C. § 282.

### A. Priority

14. In order to claim the benefit of an earlier-filed provisional application, the claims of the patent application must be fully supported under 35 U.S.C. § 112 by the provisional application.. *See Cordance Corp. v. Amazon.com, Inc.*, 658 F.3d 1330, 1334 (Fed. Cir. 2011). Under AIA 35 U.S.C. § 102(b)(1), the effective filing date of a claimed invention is determined on a claim-by-claim basis and not an application-by-application basis.

### B. Anticipation

15. QIAGEN bears the burden of proving by clear and convincing evidence that any of the asserted claims of the '810 and/or '597 Patents are anticipated. 35 U.S.C. §§ 102, 282.[1]

[1] Plaintiffs assert that the '597 Patent is subject to the provisions of the America Invents Act ("AIA") as the effective filing date is on or after March 16, 2013. *See* D.I. 321 at 17. The application that resulted in the '810 Patent was filed prior to the March 16, 2013 Effective Date of AIA § 102 and is therefore not subject to AIA § 102.

16. A patent is invalid for anticipation under 35 U.S.C. § 102 if a single prior art reference discloses all limitations of the claimed invention and is established when "one skilled in the art would reasonably understand or infer from the prior art reference's teaching that every claim [limitation] was disclosed in that single reference." *CRFD Rsch., Inc. v. Matal*, 876 F.3d 1330, 1338 (Fed. Cir. 2017) (quoting *Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*, 344 F.3d 1186, 1192-93 (Fed. Cir. 2003)). However, "the reference need not satisfy an *ipsissimis verbis* test." *In re Gleave*, 560 F.3d 1331, 1334 (Fed. Cir. 2009). Thus, "[a]s long as the reference discloses all of the claim limitations and enables the 'subject matter that falls within the scope of the claims at issue,' the reference anticipates—no 'actual creation or reduction to practice' is required." *Id.* (quoting *Schering Corp. v. Geneva Pharm., Inc.*, 339 F.3d 1373, 1380-81 (Fed. Cir. 2003).

17. "[A] prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference." *Schering*, 339 F.3d at 1377; *see also In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1352 (Fed. Cir. 2002). "In general, a limitation or the entire invention is inherent and in the public domain if it is the 'natural result flowing from' the explicit disclosure of the prior art." *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1377 (Fed. Cir. 2005) (quoting *Schering*, 339 F.3d at 1379).

### C. Obviousness

18. QIAGEN bears the burden of proving by clear and convincing evidence that any of the asserted claims of the '810 and/or '597 Patents are obvious. 35 U.S.C. §§ 103, 282.

19. Patent claims are invalid as obvious under 35 U.S.C. § 103 "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person

having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103; *see also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007).

20. "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *Id.* at 416. A critical issue is whether the "improvement is more than the predictable use of prior art elements according to their established functions." *Id.* at 417. "Common sense teaches . . . that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.* at 420; *see also Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1161-62 (Fed. Cir. 2007).

21. The question of obviousness requires consideration of objective indicia of nonobviousness. *See KSR*, 550 U.S. at 415-16 (discussing *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 18 (1966)). "Objective evidence of nonobviousness can include copying, long felt but unsolved need, failure of others, commercial success, unexpected results created by the claimed invention, unexpected properties of the claimed invention, licenses showing industry respect for the invention, and skepticism of skilled artisans before the invention." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1368 (Fed. Cir. 2013). Objective evidence of non-obviousness requires proof of a "nexus" with the claims and must be commensurate in scope with the claims. *Wyers v. Master Lock*, 616 F.3d 1231, 1246 (Fed. Cir. 2010); *Asyst Techs., Inc. v. Emtrak, Inc.*, 544 F.3d 1310, 1316 (Fed. Cir. 2008). The patentee has the burden of production to show the required nexus between the objective indicia and the claimed invention. *Prometheus Labs, Inc. v. Roxane Labs, Inc.*, 805 F.3d 1092, 1101-02 (Fed. Cir. 2015). For commercial success, the patentee must offer proof that "sales were a direct result of the unique characteristics of the claimed invention." *In re Huang*, 100 F.3d 135, 140 (Fed.

Cir. 1996). Where "the inventions represented no more than 'the predictable use of prior art elements according to their established functions,' . . . the secondary considerations are inadequate to establish nonobviousness as a matter of law." *Wyers*, 616 F.3d at 1246 (quoting *KSR*, 550 U.S. at 417). "[S]econdary considerations of non-obviousness . . . simply cannot overcome a strong prima facie case of obviousness." *Id.*; *see also Leapfrog*, 485 F.3d at 1162.

**D. Lack of Written Description**

22. QIAGEN bears the burden of proving by clear and convincing evidence that any of the asserted claims of the '810 and/or '597 Patents are invalid for lack of written description. 35 U.S.C. §§ 112, 282.

23. "To fulfill the written description requirement, a patent owner must convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention, and demonstrate that by disclosure in the specification of the patent." *Idenix Pharm. LLC v. Gilead Scis. Inc.*, 941 F.3d 1149, 1163 (Fed. Cir. 2019) (internal quotation marks and citations omitted). Compliance with the written description requirement is a question of fact judged from the perspective of one of ordinary skill in the art as of the claimed priority date. *Quake v. Lo*, 928 F.3d 1365, 1373 (Fed. Cir. 2019). If a patent's claims are broader than the supporting disclosure in the specification, the claims are invalid. *See LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1344-45 (Fed. Cir. 2005).

**E. Indefiniteness**

24. QIAGEN bears the burden of proving by clear and convincing evidence that any of the asserted claims of the '810 and/or '597 Patents are invalid for lack of written description. 35 U.S.C. §§ 112, 282. Indefiniteness is decided by the Court as a matter of law. *See Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1371 (Fed. Cir. 2010).

25. Under 35 U.S.C. § 112, patent claims must "particularly point[] out and distinctly claim[ ] the subject matter" regarded as the invention. 35 U.S.C. § 112. A lack of definiteness renders the claims invalid. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1363 (Fed. Cir. 2018).

26. "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

## III. PATENT REMEDIES

27. Whether Archer is entitled to lost profits damages in the event that use of QIAGEN's RNA related products is found to infringe any valid asserted claim of the '810 and/or '597 patents. "To recover lost profits, the patent owner must show 'causation in fact,' establishing that 'but for' the infringement, he would have made additional profits." *Grain Processing Corp. v. Am. Maize–Prods. Co.*, 185 F.3d 1341, 1349 (Fed.Cir.1999). The *Panduit* test is one recognized method of establishing "but for" causation." *See Micro Chemical, Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003). Establishing lost profits using the Panduit test requires that the patent owner prove: (1) demand for the patented product; (2) absence of acceptable, non-infringing alternatives; (3) manufacturing and marketing capability to exploit demand; and (4) the amount of the profit it would have made. *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978). "Damages under *Panduit* are not easy to prove." *Mentor Graphics Corp. v. Eve-USA, Inc.*, 851 F.3d 1275, 1285 (Fed. Cir. 2017). "To recover lost profits, the patent owner must show 'causation in fact,' establishing that 'but for' the infringement, he would have made additional profits." *Grain Processing Corp. v. Am. Maize–Prods. Co.*, 185 F.3d 1341, 1349 (Fed.Cir.1999). The *Panduit* test is one recognized method of establishing "but for" causation." *See Micro Chemical, Inc. v. Lextron, Inc.*, 318 F.3d 1119,

1122 (Fed. Cir. 2003). Establishing lost profits using the Panduit test requires that the patent owner prove: (1) demand for the patented product; (2) absence of acceptable, non-infringing alternatives; (3) manufacturing and marketing capability to exploit demand; and (4) the amount of the profit it would have made. *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc*., 575 F.2d 1152, 1156 (6th Cir. 1978). "Damages under *Panduit* are not easy to prove." *Mentor Graphics Corp. v. Eve-USA, Inc*., 851 F.3d 1275, 1285 (Fed. Cir. 2017).

28. The amount of reasonable royalty that should be awarded to Plaintiffs in the event that QIAGEN is found to infringe any valid asserted claim of the '810 and/or '597 patents. *See Georgia-Pacific Corp. v. United States Plywood Corp.,* 318 F. Supp. 1116 (S.D.N.Y. 1970), *mod. and aff'd*, 446 F.2d 295 (2d Cir. 1971), *cert. denied*, 404 U.S. 870 (1971). It is not necessary "that witnesses use any or all of the Georgia–Pacific factors when testifying about damages in patent cases." *Whitserve, LLC v. Computer Packages, Inc*., 694 F.3d 10, 31 (Fed. Cir. 2012). However, when one or more factors are used, "some explanation of both why and generally to what extent the particular factor impacts the royalty calculation is needed." *Id.*

29. The hypothetical negotiation analysis "requires the court to envision the terms of a licensing agreement reached between the patentee and the infringer at the time infringement began." *Odetics, Inc. v. Storage Tech. Corp*., 185 F.3d 1259, 1276–77 (Fed. Cir. 1999). A court may, but is not required to, consider post-infringement evidence. *Id.* The relevance of post-negotiation evidence is limited. *See Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770 (Fed. Cir. 2014) (actual profits earned during the period of infringement "may be relevant, but only in an indirect and limited way—as some evidence bearing on a directly relevant inquiry into anticipated profits.")

30. Whether Plaintiffs have proven that they are entitled to attorney's fees and costs under 35 U.S.C. § 285. "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "An "'exceptional' case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 134 S. Ct. 1749, 1756 (2014). "District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.*

31. Whether QIAGEN has proven that it is entitled to attorney's fees and costs under 35 U.S.C. § 285. "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "An "'exceptional' case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 134 S. Ct. 1749, 1756 (2014). "District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.*

32. Whether Archer is entitled to a permanent injunction in the event that QIAGEN is found to infringe the '810 and/or '597 patent. A "plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the

public interest would not be disserved by a permanent injunction." *eBay, Inc. v.MercExchange L.L.C.*, 547 U.S. 388 (2006).

## IV. OTHER ISSUES OF LAW

### A. Damages Are Not Available for Methods Practiced Outside the United States

33. Whether Plaintiffs may present evidence of alleged damages for sales of products to customers located outside of the United States when all of the asserted claims are method claims. Pursuant to 35 U.S.C. § 284, patent damages are to compensate for infringement. 35 U.S.C. § 284. "Method claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use." *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006).

34. Whether patentee may seek damages for practice of method claims outside the United States. A patentee cannot recover "damages (or injunctive relief) based on harm in another country independent of the theory of infringement liability at issue." *Abbott Cardiovascular Sys., Inc. v. Edwards Lifesciences Corp.*, No. CV 19-149 (MN), 2019 WL 2521305, at *18 (D. Del. June 6, 2019). For example, a remedy is not available for "harm caused by infringement occur[ing] in another country [when] the patentee asserts infringement only under Section 271(a)" and not Section 271(f). *Id.* "Section 271(f) does not encompass devices that may be used to practice a patented method," and defendant is not liable for infringement for such devices that are exported abroad. *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1366 (Fed. Cir. 2009); *see also Ormco Corp.*, 463 F.3d at 1311 ("Method claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use."). A method claim is not infringed merely by the sale or manufacture of a product that is capable of performing the method. *See, e.g., Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1313 (Fed. Cir. 2003) ("The sale or manufacture of

equipment to perform a claimed method is not direct infringement within the meaning of 35 U.S.C. § 271(a)."). "The law is unequivocal that the sale of equipment to perform a process is not a sale of the process within the meaning of 271(a)." *Joy Techs. Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993); *Cf. Cardiac Pacemakers, Inc. v. St Jude Med., Inc.* 576 F.3d 1348, 1364 (Fed. Cir. 2009) (*en banc*) (the "components of the process are the steps of the process," and "supplying an intangible step is a physical impossibility.") "[T]he law is clear that direct infringement of a method claim requires performance of every single step – not merely the manufacture or sale of a device capable of performing those steps." *Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, No. CV 18-098 (MN), 2018 WL 6629709, at *2 (D. Del. Dec. 19, 2018); *see also Standard Havens Products, Inc. v. Gencor Indus. Inc.*, 953 F.2d 1360 (Fed. Cir. 1991) (vacating damages award because, *inter alia*, one of the sales on which damages were based was to a foreign customer, but the patent claimed only a method, not the apparatus for implementing the method); *id.* at 1374; *Power Integrations, Inc. v. Fairchild Semiconductor Int'l*, 711 F.3d 1348, 1371 (Fed, Cir. 2013) (determining that patentee is not entitled to compensatory damages for injury caused by infringing activity that occurred outside the United States); *Meyer Intellectual Properties Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1371 (Fed. Cir. 2012) (infringement of a method requires performance of each step within the United States."); *France Telecom SA v. Marvell Semiconductor Inc.*, 39 F.Supp.3d 1080, 1099 (N.D. Cal. 2014) ("[T]he patent laws do not prohibit infringement abroad and therefore do not provide 'damages adequate to compensate' for such infringement."); *Microsoft Corp. v. AT &T Corp.*, 550 U.S. 437, 455 (2007).

# Exhibit 4P:

# Plaintiffs' Brief Statement of Intended Proof

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARCHERDX, LLC and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL, | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 18-1019-MN |
| QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC., QIAGEN GAITHERSBURG, LLC f/k/a QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V., and JONATHAN ARNOLD, | ) | **HIGHLY CONFIDENTIAL – FILED UNDER SEAL** |
| Defendants. | ) | |

**EXHIBIT 4P**

**PLAINTIFFS' BRIEF STATEMENT OF INTENDED PROOF**

Pursuant to Local Rule 16.3(c)(8), ArcherDX, LLC ("Archer") and The General Hospital Corporation ("MGH") (collectively, "Plaintiffs") submit the following brief statement of what Plaintiffs intend to prove in support of their claims at trial, including the details of the damages claimed or of other relief sought. Plaintiffs also reserve the right to provide additional proof to rebut any proof offered by Qiagen Sciences, LLC, Qiagen LLC, Qiagen Beverly, LLC, Qiagen Gaithersburg, LLC, Qiagen GmbH, Qiagen N.V. (collectively, "Qiagen," and Jonathan Arnold ("Arnold") (Qiagen and Arnold collectively, "Defendants") before or during trial, in response to rulings by the Court, or for any other good cause. By including an issue herein, Plaintiffs do not assume the burden of proof or production with respect to that issue. Plaintiffs incorporate by reference their expert reports in support of any proof to be presented by expert testimony.

## I. ISSUES ON WHICH PLAINTIFFS BEAR THE BURDEN OF PROOF

### A. Infringement of the '810 Patent

1. Plaintiffs will prove that use of QIAseq Targeted DNA Panels (Illumina platform only), QIAseq Targeted RNAscan Panels (Illumina platform only), QIAseq Immune Repertoire RNA Library Kits (Illumina platform only), QIAseq Index Kits (Illumina platform only), and GeneRead QIAact Kits ("the '810 Accused Products") in accordance with the instructions in the relevant Qiagen handbooks perform each step of claims 16-20 (collectively, "the '810 Asserted Claims") of U.S. Patent 10,017,810 ("the '810 Patent").

2. Plaintiffs will prove that Qiagen and their customers directly infringed the '810 Asserted Claims by using the '810 Accused Products according to the instructions in the relevant Qiagen handbooks.

3. Plaintiffs will prove that Qiagen induced infringement of the '810 Asserted Claims by selling the '810 Accused Products along with handbooks on Qiagen's website that encouraged customers to use the '810 Accused Products in an infringing manner. Plaintiffs will

further prove that Qiagen was aware of the '810 Patent and knew or should have known that use of the '810 Accused Products by Qiagen's customers, according to the provided instructions, would infringe that patent.

4. Plaintiffs will prove that Qiagen contributed to the infringement of the '810 Asserted Claims by selling QIAseq Index Kits (Illumina platform only), which constitute a material part of the patented invention and are not staple articles or commodities of commerce and for which there is no substantial noninfringing use. Plaintiffs will prove that Qiagen sold the QIAseq Index Kits (Illumina platform only) with knowledge of the '810 Patent and knowledge that the QIAseq Index Kits (Illumina platform only) were made or adapted for use in an infringing manner.

5. Plaintiffs will prove that Qiagen's infringement of the '810 Asserted Claims was willful.

**B. Infringement of the '597 Patent**

6. Plaintiffs will prove that use of QIAseq Targeted DNA Panels (Illumina and Ion Torrent platforms), QIAseq Targeted RNAscan Panels (Illumina and Ion Torrent platforms), QIAseq Immune Repertoire RNA Library Kits (Illumina and Ion Torrent platforms), QIAseq Index Kits (Illumina and Ion Torrent platforms), and GeneRead QIAact Kits (collectively, "the '597 Accused Products") in accordance with the instructions in the relevant Qiagen handbooks perform each step of claims 1, 3-5, 10, 11, 13, 17-2427, and 29 ("the '597 Asserted Claims") of U.S. Patent 10,450,597 ("the '597 Patent").

7. Plaintiffs will prove that Qiagen and its customers directly infringed the '597 Asserted Claims by using the '597 Accused Products according to the instructions in the relevant Qiagen handbooks.

8. Plaintiffs will prove that Qiagen induced infringement of the '597 Asserted Claims by selling the '597 Accused Products along with handbooks on Qiagen's website that encouraged customers to use the '597 Accused Products in an infringing manner. Plaintiffs will further prove that Qiagen was aware of the '597 Patent and knew or should have known that use of the '597 Accused Products by Qiagen's customers, according to the provided instructions, would infringe that patent.

9. Plaintiffs will prove that Qiagen contributed to the infringement of the '597 Asserted Claims by selling QIAseq Index Kits (Illumina platform only), which constitute a material part of the patented invention and are not staple articles or commodities of commerce and for which there is no substantial noninfringing use. Plaintiffs will prove that Qiagen sold the QIAseq Index Kits (Illumina platform only) with knowledge of the '597 Patent and knowledge that the QIAseq Index Kits (Illumina platform only) were made or adapted for use in an infringing manner.

10. Plaintiffs will prove that Qiagen's infringement of the '810 Asserted Claims was willful.

## II. ISSUES ON WHICH DEFENDANTS BEAR THE BURDEN OF PROOF

11. Plaintiffs will, to the extent necessary, introduce evidence to rebut each of Defendants' affirmative defenses.

### A. Invalidity of the Asserted Claims of the '810 and '597 Patents

#### 1. Anticipation

12. Defendants contend that the '810 Asserted Claims and the '597 Asserted Claims (collectively, "the Asserted Claims") are invalid as anticipated by various purported prior art references. Defendants bear the burden of proof on anticipation by clear and convincing

evidence. Plaintiffs will introduce, to the extent necessary, evidence to rebut Defendants' assertions.

**2. Obviousness**

13. Defendants contend that the Asserted Claims are invalid as obvious in view of various purported prior art references, either alone or in combination with each other. Defendants bear the burden of proof on obviousness by clear and convincing evidence. Plaintiffs will introduce, to the extent necessary, evidence to rebut Defendants' assertions. Among other things, Plaintiffs will show that no reference, alone or in combination with one or more other references, discloses each limitation of any claim of the Asserted Claims. Plaintiffs will further show that a person of ordinary skill in the art would not have been motivated to combine the references relied upon by Defendants to arrive at the claimed inventions, and would not have had a reasonable expectation of successfully doing so.

14. Plaintiffs will further show that objective indicia, including commercial success, industry praise, copying, skepticism and/or long-felt but unmet need demonstrate that the claimed inventions of the Asserted Claims would not have been obvious. Plaintiffs will also show that Archer's AMP technology practices the Asserted Claims and that there is nexus between the secondary considerations and the claimed invention.

**3. Written Description**

15. Defendants contend that the Asserted Claims are invalid for lack of written description. Defendants bear the burden of proof on written description by clear and convincing evidence. Plaintiffs will introduce, to the extent necessary, evidence to rebut Defendants' assertions.

#### 4. Indefiniteness

16. Defendants contend that the Asserted Claims are invalid due to indefiniteness. Defendants bear the burden of proof on indefiniteness by clear and convincing evidence. Plaintiffs will introduce, to the extent necessary, evidence to rebut Defendants' assertions.

## III. DAMAGES CLAIMED OR OTHER RELIEF SOUGHT

17. Plaintiffs will prove that they are entitled to lost profits of $841,756 and should receive reasonable royalties of $752,006 related to products sold, or products given away, to customers in the U.S. and Puerto Rico ("U.S.") and $2,240,303 for products sold, or products given away, to customers outside the U.S., for total patent infringement damages of $1,593,761 relating to sales to customers in the U.S., $2,240,303 relating to accused products sold to customers outside the U.S., and $3,834,064 in total. At a minimum, in the event that Plaintiffs are not awarded lost profits, Plaintiffs will prove that they are entitled to reasonable royalty damages of $863,555 for accused products sold, or products given away, to customers within the U.S., and $2,240,303 for accused products sold, or products given away, to customers outside the U.S., for total reasonable royalty damages of $3,103,858.[1]

18. Plaintiffs will further prove that they are entitled to enhanced damages under 35 U.S.C. § 284 for Qiagen's willful infringement.

19. Plaintiffs will prove they are entitled to, and request the Court impose, a permanent injunction restraining and enjoining Qiagen and its officers, agents, attorneys, and employees, and those acting in privity or concert therewith, from engaging in the commercial

---

[1] Pursuant to Fed. R. Civ. P 26, Defendants should supplement their production of damages-related financial documents. Plaintiffs have requested supplementation of such documents with data through the first half of 2021 (i.e., through June 30, 2021). Plaintiffs reserve the right to update their damages calculations in light of Defendants' supplementation of this production and/or to seek an accounting for damages incurred between the last date for which Defendants have provided adequate financial supplementation and the date of the verdict.

manufacture, use, offer for sale, sale and/or import, of the '810 Accused Products, and products not colorably different from the '810 Accused Products, until the expiration of the '810 Patent.

20. Plaintiffs will prove they are entitled to, and request the Court impose, a permanent injunction restraining and enjoining Qiagen and its officers, agents, attorneys, and employees, and those acting in privity or concert therewith, from engaging in the commercial manufacture, use, offer for sale, sale and/or import of the '597 Accused Products, and products not colorably different from the '597 Accused Products, until the expiration of the '597 Patent.

21. Plaintiffs will prove, and request the Court finds, that this case is exceptional under 35 U.S.C. § 285 and grant Plaintiffs their attorneys' fees.

# EXHIBIT 4D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ARCHERDX, LLC f/k/a ARCHERDX, INC. and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL, | ) | |
| *Plaintiffs*, | ) | C.A. No. 18-1019-MN |
| v. | ) | **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY** |
| QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC., QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V. and JONATHAN ARNOLD, | ) | |
| *Defendants*. | ) | |

**EXHIBIT 4D**

**DEFENDANTS' BRIEF STATEMENT OF INTENDED PROOF**

EXHIBIT 4D: Defendants' Brief Statement of Intended Proof

Pursuant to Local Rule 16.3(c)(9), QIAGEN Sciences, LLC, QIAGEN LLC, QIAGEN Beverly, LLC, QIAGEN Gaithersburg, LLC, QIAGEN GmbH, and QIAGEN N.V. (collectively, "QIAGEN" or "Defendants") respectfully submit the following brief statement of what they intend to prove at trial with respect to their defenses. This statement is not intended to be exhaustive, and QIAGEN reserves the right to prove any matters identified in the pleadings, fact and expert discovery, and any of the accompanying statements of facts and legal issues to be litigated at trial. With respect to proof to be presented by expert testimony, QIAGEN incorporates by reference the reports and depositions of QIAGEN's expert witnesses addressing the issues identified below.

To the extent QIAGEN asserts that ArcherDX, LLC ("Archer") and The General Hospital Corporation ("MGH") (collectively, "Plaintiffs") have failed to meet their burden of proof on any issue, such statement does not constitute an admission that QIAGEN has any obligation to prove or disprove any element or any part of any claim or defense on which Plaintiffs bear the burden of proof or production. QIAGEN does not assume the burden of proof or production as to any matter set forth below unless required to do so by law. QIAGEN reserves the right to modify or supplement its pretrial order materials, including this statement of intended proof, in response to any additional disclosures by Plaintiffs.

QIAGEN further reserves the right to amend and/or supplement this statement to the extent necessary to respond to issues raised by Plaintiffs, and to rebut any alleged proof(s) offered by Plaintiffs before and during trial, in response to rulings by the Court, or for any other reason.

# I. ISSUES ON WHICH PLAINTIFFS BEAR THE BURDEN OF PROOF

## A. INFRINGEMENT

1. Plaintiffs bear the burden of proving infringement by QIAGEN and their respective accused products. For the reasons set forth in QIAGEN's expert reports, its responses to Plaintiffs' infringement contention interrogatories, and the pending motions including the Motions for Summary Judgment, QIAGEN will show that Plaintiffs have failed to carry their burden of proof with respect to alleged infringement of claims 16-20 (collectively, "the '810 Patent Asserted Claims") of U.S. Patent 10,017,810 ("the '810 Patent"). In particular the motions for summary judgement and supporting papers identify the specific elements as to which QIAGEN believes there are not factual issues and that prevent Plaintiffs from establishing infringement: A lack of a universal oligo tail adaptor, no second adaptor primer and no second target specific primer.

2. Plaintiffs bear the burden of proving QIAGEN's accused products infringe the asserted claims. . For the reasons set forth in QIAGEN's expert reports, its responses to Plaintiffs' infringement contention interrogatories, and the pending motions including the Motions for Summary Judgment, QIAGEN will show that Plaintiffs have failed to carry their burden of proof with respect to alleged infringement of claims 1, 3-5, 10, 11, 13, 17-24, 27, and 29 ("the '597 Patent Asserted Claims") of U.S. Patent 10,450,597 ("the '597 Patent"). In particular the motions for summary judgement and supporting papers identify the specific elements as to which QIAGEN believes there are not factual issues and prevent Plaintiffs from establishing infringement: A lack of a target specific primer and a lack of a target-specific hybridization sequence.

3. Plaintiffs bear the burden of establishing that they are entitled to lost profits damages if infringement is found. QIAGEN will show that Plaintiffs have failed to carry their burden of proof with respect to the alleged $841,756 in lost profits that they claim.

4. Plaintiffs cannot show that they are entitled to any damages for the practice of the accused methods that take place outside the United States. More than half of the damages ($2.2 million of a maximum alleged damages claim of $3.8 million) Plaintiffs seek on their patent infringement claims fall under this category

5. Plaintiffs bear the burden of establishing that they are entitled to an injunction if infringement is found. QIAGEN will show that Plaintiffs have failed to carry their burden of proof with respect to this allegation because there are more than two players in the market, Plaintiffs will not be irreparably harmed and the public interest would not be served, among other things, by enjoining QIAGEN. Further, Plaintiffs actions throughout this case are not consistent with granting them equitable relief.

## II. ISSUES ON WHICH DEFENDANTS BEAR THE BURDEN OF PROOF

### A. INVALIDITY

6. QIAGEN will prove that each of the '810 Patent Asserted Claims and the '597 Patent Asserted Claims are invalid.

#### 1. Anticipation of the '810 Patent Asserted Claims

7. QIAGEN will prove by clear and convincing evidence that asserted claims 16-20 of the '810 patent are invalid under 35 U.S.C. § 102 because they are anticipated as of the earliest effective filing date in view of the prior art, including Chenchik[1], Markham[2], Amsterdam[3], and Siebert[4].

[1] Chenchik, U.S. Patent No. 5,565,340 ("Chenchik").

[2] Markham, European Patent Application Publication No 0 356 021 A2, Application No. 89307672.9, A method for the amplification of nucleotide sequences ("Markham").

[3] Amsterdam et al., Retroviral-mediated insertional mutagenesis in zebrafish, 104: Methods in Cell Biology 59-82 (2011) ("Amsterdam").

[4] Siebert et al., An improved PCR method for walking in uncloned genomic DNA, 23 Nucleic Acids Research 1087, 1087-88 (1995) ("Siebert").

**2. Obviousness of the '810 Patent Asserted Claims**

8. QIAGEN will prove by clear and convincing evidence that asserted claims 16-20 of the '810 patent are invalid under 35 U.S.C. § 103 because they would have been obvious as of the earliest effective filing date in view of the scope and content of the prior art, including, but not limited to, primary references Chenchik, Markham, Amsterdam, and/or Siebert, combined with for example, the February 2010 Illumina Multiplexing Sample Preparation Guide and the November 1, 2010 Data Sheet: Illumina Sequencing "TruSeq RNA and DNA Sample Preparation Kits", the differences between the asserted claims and the prior art, and the level of ordinary skill at the time.

9. QIAGEN will establish that a person of ordinary skill in the art would have been motivated to combine the asserted prior art references so as to render obvious asserted claims 16-20 of the '810 patent.

10. QIAGEN will establish that a person of ordinary skill in the art possessed a reasonable expectation of success in obtaining the subject matter encompassed by asserted claims 16-20 of the '810 patent from the disclosures of the prior art references and their knowledge of the art.

11. QIAGEN will establish that Plaintiffs' alleged secondary considerations do not weigh in favor of non-obviousness of any of asserted claims 16-20 of the '810 patent.

12. Plaintiffs bear the burden of production to show that there is a nexus between any alleged objective indicia of non- obviousness and the asserted claims of the '810 patent against QIAGEN. QIAGEN will introduce evidence to rebut Plaintiffs' evidence regarding any alleged nexus between any asserted objective indicia of non-obviousness and the claimed subject matter of the '810 patent.

### 3. Written Description of the '810 Patent Asserted Claims

13. QIAGEN will prove by clear and convincing evidence that asserted claims 16-20 of the '810 patent are invalid under 35 U.S.C. § 112 for a lack of written description. The claims are invalid as lacking written description in several respects. First, to the extent that the "second target-specific primer" does not need to be "nested," either literally or under the doctrine of equivalents, the '810 patent lacks written description. A person of ordinary skill in the art ("POSA") would not understand from the disclosures in the '810 patent that the second round of PCR in the claimed method is conducted with primers that are not "nested." Second, a POSA would not understand from the disclosures in the '810 patent that the "second target-specific primer" does not anneal to "the known target nucleotide sequence," but instead anneals to sequences never present in "the known target nucleotide sequence." Third, a POSA would not have understood from the disclosures in the '810 patent that the second target-specific primer does not have to include sequence identical to a second sequencing primer, as opposed to a portion of it as Plaintiffs allege. Fourth, a POSA would not have understood from reading the disclosures in the '810 patent that the inventors had invented a methodology where the amplification strand of the universal oligonucleotide tail adaptor did not have two nucleic acid sequences identical to a first and second sequencing primers. Fifth, a POSA would not have understood from reading the '810 patent disclosure that the inventors had invented a methodology where the adaptor primers did not anneal to different portions of a first sequencing primer sequence in the universal tail adaptor.

### 4. Indefiniteness of the '810 Patent Asserted Claims

14. QIAGEN will prove by clear and convincing evidence that asserted claims 16-20 of the '810 patent are invalid under 35 U.S.C. § 112 as indefinite. The definition for the "universal oligonucleotide tail adaptor" calls for that adaptor to contain nucleotide sequences "identical to a first and second sequencing primers." '810 patent at 11:39-40. The definition of "second target-

specific primer" calls for it to have a 5′ portion that comprises a nucleic acid sequence that is "identical to a second sequencing primer." *Id.* at 16:38-39. A person of ordinary skill in the art cannot tell if the "second sequencing primer" sequence in the "second target-specific primer" is the same as the "second sequencing primer" sequence in the "universal oligonucleotide tail adaptor." Moreover, one of ordinary skill in the art would not know how much of the second target specific primer needs to be "identical" to the second sequencing primer if it is not required to actually be identical. For example, is one or two or three nucleotides that are identical enough?

**5. Anticipation of the '597 Patent Asserted Claims**

15. QIAGEN will prove by clear and convincing evidence that asserted claims 1, 3-5, 10, 11, 13, 17-24, 27, and 29 of the '597 patent are invalid under 35 U.S.C. § 102 because they are anticipated as of the earliest effective filing date in view of the prior art, including Martin-Harris[5], Fraiture[6], Morley[7], McCarty[8], APAgene Manual and System[9], the '828 patent[10], the '810 patent[11], and the '461 application[12].

**6. Obviousness of the '597 Patent Asserted Claims**

16. QIAGEN will prove by clear and convincing evidence that asserted claims 1, 3-5, 10, 11, 13, 17-24, 27, and 29 of the '597 patent are invalid under 35 U.S.C. § 103 because they

---

[5] Martin-Harris, M. H., Bartley, P. A., & Morley, A. A. (2010). Gene walking using sequential hybrid primer polymerase chain reaction. Analytical biochemistry, 399(2), 308-310 ("Martin-Harris").

[6] Fraiture, M. A., Herman, P., Taverniers, I., De Loose, M., Deforce, D., & Roosens, N. H. (2013). An innovative and integrated approach based on DNA walking to identify unauthorised GMOs. Food chemistry, 147, 60-69 ("Fraiture").

[7] U.S. Patent Publication No. 2010/0248310 ("Morley").

[8] McCarty, D. R., Latshaw, S., Wu, S., Suzuki, M., Hunter, C. T., Avigne, W. T., & Koch, K. E. (2013). Mu-seq: sequence-based mapping and identification of transposon induced mutations. PLoS One, 8(10), e77172 ("McCarty").

[9] The September 2010 APAgene Gold-RT Genome Walking Kit Manual ("APAgene Manual and System").

[10] U.S. Patent No. 9,487,828.

[11] U.S. Patent No. 10,017,810.

[12] U.S. Patent Application No. 2013/0303461.

would have been obvious as of the earliest effective filing date in view of the scope and content of the prior art, including, but not limited to, Martin-Harris, Fraiture, Morley, McCarty, APAgene Manual and System, the '828 patent, the '810 patent, and/or the '461 application, the differences between the asserted claims and the prior art, and the level of ordinary skill at the time.

17. QIAGEN will establish that a person of ordinary skill in the art would have been motivated to combine the asserted prior art references so as to render obvious asserted claims 1, 3-5, 10, 11, 13, 17-24, 27, and 29 of the '597 patent.

18. QIAGEN will establish that the person of ordinary skill in the art possessed a reasonable expectation of success in obtaining the subject matter encompassed by asserted claims 1, 3-5, 10, 11, 13, 17-24, 27, and 29 of the '597 patent from the disclosures of the prior art references and their knowledge of the art.

19. QIAGEN will establish that Plaintiffs' alleged secondary considerations do not weigh in favor of non-obviousness of any of asserted claims 1, 3-5, 10, 11, 13, 17-24, 27, and 29 of the '597 patent.

20. Plaintiffs bear the burden of production to show that there is a nexus between any alleged objective indicia of non-obviousness and the asserted claims of the '597 patent against QIAGEN. QIAGEN will introduce evidence to rebut Plaintiffs' evidence regarding any alleged nexus between any asserted objective indicia of non-obviousness and the claimed subject matter of the '597 patent.

**7. Written Description of the '597 Patent Asserted Claims**

21. QIAGEN will prove by clear and convincing evidence that asserted claims 1, 3-5, 10, 11, 13, 17-24, 27, and 29 of the '597 patent are invalid under 35 U.S.C. § 112 for a lack of written description. The claims are invalid as lacking written description in several respects. First, there is no written description for a nucleic acid template, or the target specific section of it, being

a universal adaptor sequence that was ligated to DNA fragments. There is no written description for the target specific primer being a universal primer that anneals to all universal oligonucleotide adaptors that have been ligated to fragments. There is no written description for calling a single stranded portion of a universal adaptor ligated to nucleic acids a double stranded target nucleic acid. Additionally, each of these constructions are inconsistent with the Court's Memorandum Order Regarding Claim Construction ('597 Patent) (D.I. 254). *See* D.I. 254 at 1-2. There is no written description for the target specific primer that does not anneal to sequence in the double stranded target nucleic acid

**8. Indefiniteness of the '597 Patent Asserted Claims**

22. QIAGEN will prove by clear and convincing evidence that asserted claims 1, 3-5, 10, 11, 13, 17-24, 27, and 29 of the '597 patent are invalid under 35 U.S.C. § 112 as indefinite. The claims are indefinite if step b of claim 1 is to be performed before step a, as Plaintiffs are asserting. There would be no antecedent basis for: "the first strand of the double stranded target nucleic acid". There would be no antecedent basis for "the first strand of the double-stranded target nucleic acid." There is also no clear antecedent basis in step b for: "the same sequence of the double stranded target nucleic acid." A first nucleic acid sequence is identified in step a, and a second nucleic acid sequence is identified in step b, but "the same sequence" does not identify which of those sequences it is referring to. To the extent that Plaintiffs are interpreting Claim 4 to permit or require that step (b) be carried out before step (a), the claim is also indefinite for these reasons. Furthermore, Claim 4 is indefinite in that it does not apprise a person of ordinary skill in the art at the relevant date of the meaning of the term "performed sequentially" with reasonable certainty. A person of ordinary skill in the art would not understand that "sequentially" could encompass performing step (b) before step (a).

## III. REMEDIES IN FAVOR OF QIAGEN

23. QIAGEN will prove that this case exceptional under 35 U.S.C. § 285 and that QIAGEN is entitled to attorneys' fees and costs.

# Exhibit 5P:

# Plaintiffs' Trial Witness List

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ARCHERDX, LLC f/k/a ARCHERDX, INC. and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL,<br><br>*Plaintiffs*,<br><br>v.<br><br>QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC., QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V. and JONATHAN ARNOLD,<br><br>*Defendants*. | ) | C.A. No. 18-1019-MN |

**EXHIBIT 5P**

**PLAINTIFFS' TRIAL WITNESS LIST**

Pursuant to Local Rule 16.3, Plaintiffs hereby respectfully submit the list of witnesses they will or may call to testify at trial live or by deposition. The inclusion of a witness on this list does not require Plaintiffs to call that witness to testify, and does not imply or establish that Plaintiff has the power to compel the live testimony of that witness or make that witness available to the opposing party. Plaintiffs expressly reserve the right to call any witness identified by Defendants, whether or not listed on Plaintiffs' list below. Plaintiffs also expressly reserve the right to call any witness for purposes of rebuttal, impeachment, or authentication of a document.

Subject to, and without waiving the foregoing rights and objections, Plaintiffs identify the following list of trial witnesses it may call to testify before the jury:

## I. WILL-CALL WITNESSES

### A. Fact Witnesses

Plaintiffs expect to call the following fact witnesses at trial as designated below:

1. Anthony John Iafrate, M.D., Ph.D. (Live)
2. Long Le, M.D., Ph.D. (Live)
3. Jason Myers, Ph.D. (Live)
4. Jill Stefanelli, Ph.D. (Live)

### B. Expert Witnesses

1. Niall Lennon, Ph.D. (Live)
2. Maria Fe Paz, Ph.D. (Live) (Remote, if necessary)
3. Raymond Sims (Live)

## II. MAY-CALL WITNESSES

### A. Fact Witnesses

Plaintiffs may call the following fact witnesses at trial as designated below:

1. Jonathan Arnold (Live or by deposition)
2. Chris Corless of Oregon Health & Science University (Live or by deposition)
3. Lawrence Eck of Genomic Testing Cooperative (Live or by deposition)
4. Darius Fugere (By deposition)
5. Michael Hadjisavas (Live or by deposition)
6. Liang Huang (Live or by deposition)
7. Simon Hughes (Live or by deposition)
8. Mathew Johnson of Mayo Clinic (Live or by deposition)
9. Eric Lader (Live or by deposition)
10. Christian LaPointe (By deposition)
11. Gary Nealey (Live or by deposition)
12. Britton Russell (By deposition)
13. Angela Ryan (Live or by deposition)
14. Raed Samara (Live or by deposition)
15. Joshua Stahl (Live)
16. Song Tian (Live or by deposition)
17. Lesley Tomlin (Live or by deposition)
18. Jean Pascal Viola (Live or by deposition)
19. Yexun Wang (Live or by deposition)
20. Zhong Wu (Live or by deposition)

**B. Expert Witnesses**

1. James McSwiggen (Live)

## III. EXPERTISE

Plaintiffs provide the following indications about the subject matter on which it will ask the Court to recognize each expert's expertise.

| | |
|---|---|
| Niall Lennon, Ph.D. | Background information on nucleic acid sequencing, including next-generation sequencing ("NGS"), polymerase chain reaction ("PCR") technology, and target enrichment and library preparation techniques related to NGS; the development and operation of the Accused Products; infringement of the Asserted Patents by Qiagen and its customers; the validity of the Asserted Patents; the value of the patented technology; the absence of commercially acceptable noninfringing alternatives; Archer's commercial embodiments of the Asserted Patents; the level of ordinary skill in the art and the state of the art at the time of the inventions claimed in the Asserted Patents; the opinions of Qiagen's technical expert, Dr. Michael Metzker; and any other issues relating to Dr. Lennon's opening, rebuttal, and reply expert reports, and Markman declarations, as set forth in his expert reports and pre-trial testimony. |
| James McSwiggen, Ph.D. | That Qiagen and Dr. Metzker have failed to establish that certain prior art discloses the limitation of step (b) of '597 claim 1 that requires "wherein each primer of the plurality of different primers does not anneal to the same sequence of the double-stranded target nucleic acid as any other primer of the plurality of different primers." |
| Maria Fe Paz, Ph.D. | The market and market segments in which the Accused Products and Archer's patented products compete; competition between the Accused Products and Archer's patented products; and any other issues relating to Dr. Paz's expert report. |
| Raymond Sims | Relief for patent infringement, including lost profits, reasonable royalty, and injunctive relief; commercial success of products embodying the asserted patents; the opinions of Qiagen's expert, Christopher Martinez; and any other issues relating to Mr. Sims' opening, rebuttal, and reply expert reports, |

# EXHIBIT 5D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ARCHERDX, LLC f/k/a ARCHERDX, INC. and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL,<br><br>Plaintiffs,<br><br>v.<br><br>QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC., QIAGEN GAITHERSBURG, LLC f/k/a QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V. and JONATHAN ARNOLD,<br><br>Defendants. | ) | C.A. No. 18-cv-01019-MN |

**EXHIBIT 5D**

**DEFENDANTS' FINAL TRIAL WITNESS LIST**

Pursuant to Local Rule 16.3, Defendants hereby respectfully submit the list of witnesses they will or may call to testify at trial live or by deposition. The inclusion of a witness on this list does not require Defendants to call that witness to testify, and does not imply or establish that Defendant has the power to compel the live testimony of that witness or make that witness available to the opposing party. Defendants expressly reserve the right to call any witness identified by Plaintiffs, whether or not listed on Defendants' list below. Defendants also expressly reserve the right to call any witness for purposes of rebuttal, impeachment, or authentication of a document.

Subject to, and without waiving the foregoing rights and objections, Defendants identify the following list of trial witnesses they may call to testify before the jury:

## I. DEFENDANTS' WILL CALL WITNESSES

### A. Fact Witnesses

Defendants expect to call the following fact witnesses at trial:

1. Jonathan Arnold (Live)
2. Eric Lader (Live)
3. Jean-Pascal Viola (Live, remotely if necessary)

### B. Expert Witnesses

Defendants expect to call the following expert witnesses at trial:

1. Christopher A. Martinez (Live)
2. Michael Metzker, Ph.D. (Live)

## II. DEFENDANTS' MAY CALL WITNESSES

Defendants may call the following fact witnesses at trial:

1. Chris Corless of Oregon Health & Science University (By deposition)
2. Lawrence Eck of Genomic Testing Cooperative (By deposition)

3. Darius Fugere (By deposition)
4. Michael Hadjisavas (Live)
5. Liang Huang (Live)
6. Dietrich Lueerssen (Live, remotely if necessary)
7. Simon Hughes (Live, remotely if necessary)
8. Anthony John Iafrate (Live or by deposition)
9. Christian LaPointe (Live or by deposition)
10. Long Le (Live or by deposition)
11. Jason Myers (Live or by deposition)
12. Gary Nealey (Live)
13. Britton Russell (By deposition)
14. Angela Ryan (Live)
15. Raed Samara (Live)
16. Joshua Stahl (Live or by deposition
17. Jill Stefanelli (Live or by deposition)
18. Song Tian (Live)
19. Lesley Tomlin (By deposition)
20. Yexun Wang (By deposition)
21. Zhong Wu (Live)

## III. EXPERTISE

Defendants provide the following indications about the subject matter on which it will ask the Court to recognize each expert's expertise:

| | |
|---|---|
| Michael Metzker, Ph.D. | Background information on nucleic acid sequencing, including next-generation sequencing ("NGS"), polymerase chain reaction ("PCR") technology, and target enrichment |

| | |
|---|---|
| | and library preparation techniques related to NGS; the development and operation of the QIAGEN Products; invalidity of the Asserted Patents; non-infringement of the Asserted Patents by Qiagen and its customers; the limited value of the claimed subject matter; the existence of commercially acceptable noninfringing alternatives; the level of ordinary skill in the art and the state of the art at the time of the purported inventions claimed in the Asserted Patents; the opinions of Plaintiffs' technical experts, in particular Dr. Niall Lennon, but including any other technical expert who testifies on behalf of Plaintiffs; and any other issues relating to Dr. Metzker's opening, rebuttal, and reply expert reports, and Markman declarations. |
| Christopher A. Martinez | Assuming patent infringement for purposes of analysis, relief to which Plaintiffs are entitled, including reasonable royalty and lack of basis for injunctive relief; lack of commercial success of products embodying the Asserted Patents; the opinions of Plaintiffs' experts, in particular Raymond Sims, and any other issues relating to Mr. Martinez's rebuttal and reply expert reports. |

# Exhibit 6P:

# Plaintiffs' Deposition Designations, Defendants' Counter-Designations, and Plaintiffs' Counter-Counter-Designations

**Plaintiffs' Affirmative Designations**

| **OHSU – Dr. Christopher Corless _** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 4:22 | 5:6 | | | | | | | |
| 6:4 | 7:2 | | | | | | | |
| 9:16 | 10:8 | R | | | | | | |
| 11:8 | 11:10 | | 11:11 | 11:20 | | | | |
| 11:24 | 12:20 | | 12:21<br>21:19<br>22:3 | 12:23<br>22:1<br>22:7 | R; PK; Spec | | | |
| 12:24 | 13:4 | | | 22:1<br>22:7 | IC; In; C; R; AT; NT | | | |
| 13:9 | 13:11 | FN | 13:13 | 13:15 | P; V; NR; R | | | |
| 13:22 | 16:2 | NT, FN | | | | | | |
| 16:5 | 16:16 | | | | | | | |
| 16:22 | 17:8 | FN, FRE 602 | | | | | | |

**Plaintiffs' Affirmative Designations**

| **OHSU – Dr. Christopher Corless _** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 17:10 | 17:18 | FN, FRE 602 | | | | | | |
| 17:20 | 18:4 | FN, S, FRE 602 | | | | | | |
| 18:6 | 18:6 | | | | | | | |
| 19:20 | 19:23 | | | | | | | |
| 19:25 | 20:5 | | | | | | | |
| 20:8 | 21:5 | | 40:6 | 41:4 | Cmpd; PK; Spec; R; P; LD; M; V | 41:5<br>42:1<br>42:12 | 41:24<br>42:3<br>42:15 | R, FRE 403 |
| 21:7 | 21:11 | FN, I, S, FRE 602 | 21:13 | 21:13 | PK; Spec; R; P; NR | | | |
| 21:14 | 21:18 | I | 21:19<br>22:3 | 22:1<br>22:7 | M; PK; Spec; R; P | 22:9<br>22:13 | 22:11<br>22:13 | |
| 22:17 | 22:23 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| OHSU – Dr. Christopher Corless _ | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 23:3 | 23:19 | | | | | | | |
| 23:21 | 23:23 | | 37:4<br>38:11 | 38:9<br>38:12 | IC; BS; PK; Spec; R; P; V | | | |
| 23:25 | 24:1 | | 37:4<br>38:11 | 38:9<br>38:12 | IC; BS; PK; Spec; R; P; V | | | |
| 24:3 | 24:6 | | 37:4<br>38:11 | 38:9<br>38:12 | IC; BS; PK; Spec; R; P; V | | | |
| 27:12 | 27:19 | | | | | | | |
| 27:21 | 28:15 | | 28:16<br>28:20<br>38:14<br>39:11 | 28:18<br>29:3<br>39:9<br>39:11 | R; P; C; V; NT; Spec; PK | 41:5<br>42:1<br>42:12 | 41:24<br>42:3<br>42:15 | R, FRE 403 |
| 29:5 | 29:10 | | 40:6 | 41:4 | Cmpd; PK; Spec; R; P; M; LD | 41:5<br>42:1<br>42:12 | 41:24<br>42:3<br>42:15 | R, FRE 403 |
| 33:6 | 33:7 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| **OHSU – Dr. Christopher Corless _** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 33:9 | 33:17 | | | | | | | |
| 34:9 | 34:13 | | | | | | | |
| 35:7 | 35:13 | | | | | | | |
| 35:17 | 35:22 | | | | | | | |
| 35:24 | 36:2 | | | | | | | |
| 36:5 | 36:8 | | | | | | | |
| 36:10 | 36:14 | | | | | | | |
| 36:17 | 36:21 | NT, R | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Genomic Testing Cooperative – Dr. Lawrence Eck** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 6:22 | 7:2 | | | | | | | |
| 8:20 | 8:24 | | | | | | | |
| 9:1 | 10:10 | NT | 13:12 | 13:15 | R; P; V; PK | 9:13 | 9:15 | |
| 10:22 | 11:9 | | 11:10 | 11:11 | R; P; NR; V | | | |
| 11:12 | 11:17 | | 11:18<br>12:9<br>12:20<br>13:3 | 12:2<br>12:15<br>12:22<br>13:10 | R; P; V; PK; F | | | |
| 17:4 | 17:25 | R | | | | | | |
| 18:5 | 19:20 | R | | | | | | |
| 20:5 | 20:12 | | | | | | | |
| 21:2 | 22:14 | | 22:16 | 23:13 | R; P; V | | | |
| 23:14 | 23:18 | | 23:19 | 23:23 | R; P; V | | | |

**Plaintiffs' Affirmative Designations**

| **Michael Hadjisavas** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 5:11 | 5:13 | | | | | | | |
| 6:6 | 6:10 | | | | | | | |
| 7:22 | 8:13 | | 8:14<br>8:18 | 8:16<br>8:18 | C | | | |
| 8:19 | 9:10 | R, FRE 403 | | | | | | |
| 9:16 | 9:16 | R, FRE 403 | | | | | | |
| 10:18 | 11:2 | R, FRE 403 | | | | | | |
| 12:8 | 13:7 | R, FRE 403 | | | | | | |
| 23:16 | 25:2 | R, FRE 403 | | | | | | |
| 26:3 | 26:11 | R, FRE 403 | | | | | | |
| 44:22 | 45:4 | NT | | | | | | |
| 45:14 | 48:5 | NT, R, FRE 403 | | | | | | |

*ArcherDX, LLC et al v. Qiagen Sciences, LLC, et al*
Case No. 18-cv-1019-MN (USDC-DE)

**Plaintiffs' Affirmative Designations**

| Michael Hadjisavas | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 48:12 | 49:10 | | | | | | | |
| 49:14 | 51:14 | F, NT, R, FRE 403 | 51:15<br>51:17 | 51:15<br>51:18 | R; P; IC; PK | | | |
| 51:19 | 52:1 | | 51:15<br>51:17 | 51:15<br>51:18 | R; P; IC; PK | | | |
| 55:19 | 55:24 | | | | | | | |
| 56:7 | 56:22 | Sc, R, FRE 403 | | | | | | |
| 57:5 | 58:16 | F, Sc, R, FRE 403, NT | | | | | | |
| 60:3 | 60:17 | F, Sc, NT | | | | | | |
| 62:2 | 62:4 | Sc | | | | | | |
| 62:11 | 66:17 | F, R, FRE 403, FRE 602, S. Sc | | | | | | |
| 67:10 | 68:11 | F, NT, R, FRE 403, Sc | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Michael Hadjisavas** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 68:15 | 68:21 | Sc | | | | | | |
| 69:5 | 69:8 | Sc, R, FRE 403 | | | | | | |
| 69:14 | 70:18 | Sc, F, NT, R, FRE 403 | 71:5<br>71:9<br>71:17 | 71:7<br>71:15<br>71:23 | R; P; IC; F | | | |
| 71:24 | 72:14 | Sc, R, FRE 403 | 71:5<br>71:9<br>71:17 | 71:7<br>71:15<br>71:23 | R; P; F | | | |
| 72:19 | 73:11 | Sc, R, FRE 403 | | | | | | |
| 74:20 | 76:13 | Sc, F, NT, R, FRE 403 | 76:23<br>77:4 | 77:2<br>77:6 | R; P; C; IC; F; V | | | |
| 77:7 | 80:8 | Sc, F, NT, R, FRE 403 | 76:23<br>77:4 | 77:2<br>77:6 | R; P; C; IC; F; V | | | |
| 80:16 | 81:20 | Sc, R, FRE 403, F, NT | | | | | | |
| 82:1 | 82:6 | Sc, R, FRE 403, F, NT | | | | | | |

**Plaintiffs' Affirmative Designations**

| Michael Hadjisavas | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 83:1 | 84:8 | R, FRE 403, F, NT | | | | | | |
| 86:8 | 87:11 | R, FRE 403, F, NT | | | | | | |
| 87:18 | 88:7 | R, FRE 403, F, NT | | | | | | |
| 89:13 | 89:17 | R, FRE 403 | | | | | | |
| 89:20 | 89:24 | | | | | | | |
| 90:6 | 91:15 | R, FRE 403, F, NT | | | | | | |
| 92:17 | 92:23 | | | | | | | |
| 93:19 | 94:14 | Sc,. R, FRE 403, F, NT, S, FRE 602 | 94:15 | 94:16 | R; P; C | | | |
| 94:17 | 94:19 | Sc | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Liang Huang** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 6:12 | 6:16 | | | | | | | |
| 63:1 | 63:1 | I, R, FRE 403 | 62:20 | 63:1 | | 63:2<br>64:11 | 63:6<br>64:22 | R, FRE 403, I |
| 67:14 | 67:20 | NT | | | | | | |
| 68:6 | 68:14 | R, FRE 403, FRE 611(a) | | | | | | |
| 69:10 | 69:21 | R, FRE 403, NON | | | | | | |
| 71:19 | 72:15 | R, FRE 403 | | | | | | |
| 73:1 | 73:4 | I, R, FRE 403 | 72:17 | 72:24 | AT | | | |
| 80:12 | 80:14 | NT, R, FRE 403 | | | | | | |
| 80:20 | 81:12 | R, FRE 403, FRE 611(a) | | | | | | |
| 81:14 | 82:3 | R, FRE 403 | | | | | | |

**Plaintiffs' Affirmative Designations**

| Liang Huang | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 83:24 | 84:3 | R, FRE 403 | 82:4 | 83:12 | FRE 403; R; NR | | | |
| 84:6 | 84:7 | NT | 89:16 | 90:6 | AT; FRE 403; NR | | | |
| 156:16 | 156:17 | R, FRE 403 | | | | | | |
| 157:1 | 157:9 | R, FRE 403 | | | | | | |
| 157:21 | 158:3 | R, FRE 403 | | | | | | |
| 160:4 | 160:6 | MC, R, FRE 403 | | | | | | |
| 160:8 | 160:9 | I, R, FRE 403 | 160:10 | 160:15 | | | | |
| 160:18 | 161:3 | R, FRE 403 | 146:16 | 147:9 | AT; FRE 403; NR; Spec; R | | | |
| 161:17 | 161:21 | R, FRE 403 | | | | | | |
| 161:23 | 162:12 | R, FRE 403, FRE 611(a) | | | | | | |

**Plaintiffs' Affirmative Designations**

| Liang Huang | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 162:14 | 162:22 | LD, MC, R, FRE 403, FRE 611(a) | | | | | | |
| 162:24 | 163:7 | R, FRE 403, FRE 611(a) | | | | | | |
| 163:19 | 163:23 | | | | | | | |
| 164:13 | 164:18 | MC, R, FRE 403, FRE 611(a) | | | | | | |
| 164:22 | 165:4 | | | | | | | |
| 165:6 | 165:7 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Simon Hughes** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Countesr Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 7:23 | 8:2 | | 8:3 | 8:6 | | | | |
| 10:2 | 10:3 | | | | | | | |
| 10:8 | 11:16 | FRE 403, R | | | | | | |
| 11:17 | 12:3 | | | | | | | |
| 13:23 | 14:12 | | 14:18 | 15:7 | R | 14:13 | 14:14 | |
| 15:19 | 15:20 | | | | | | | |
| 15:22 | 15:22 | | | | | | | |
| 16:17 | 16:19 | | | | | | | |
| 16:21 | 16:24 | | | | | | | |
| 17:5 | 18:7 | | | | | | | |
| 18:9 | 18:17 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Simon Hughes** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Countesr Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 18:20 | 19:6 | | | | | | | |
| 19:8 | 19:9 | | | | | | | |
| 19:13 | 19:16 | | | | | | | |
| 19:18 | 19:24 | | | | | | | |
| 20:10 | 20:14 | | | | | | | |
| 21:2 | 21:7 | | | | | | | |
| 21:10 | 22:4 | | | | | | | |
| 22:7 | 22:11 | | | | | | | |
| 22:12 | 22:15 | | | | | | | |
| 22:22 | 23:16 | | | | | | | |
| 23:19 | 24:5 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Simon Hughes** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Countesr Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 24:7 | 24:13 | | | | | | | |
| 24:15 | 25:6 | | | | | | | |
| 25:8 | 25:19 | | | | | | | |
| 26:14 | 27:24 | | | | | | | |
| 28:2 | 28:2 | | | | | | | |
| 28:11 | 29:3 | | | | | | | |
| 29:11 | 29:12 | | | | | | | |
| 29:14 | 29:17 | | | | | | | |
| 29:19 | 30:4 | | | | | | | |
| 34:2 | 34:10 | FRE 403, FRE 608, FRE 611(a), R, S, Sc | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Simon Hughes** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Countesr Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 34:13 | 34:24 | FRE 403, FRE 608, FRE 611(a), R, S, Sc | | | | | | |
| 35:4 | 35:9 | | | | | | | |
| 35:17 | 35:21 | | | | | | | |
| 35:23 | 36:4 | | | | | | | |
| 36:6 | 37:13 | | | | | | | |
| 37:15 | 37:16 | | | | | | | |
| 40:7 | 40:15 | | 41:2 | 41:10 | | | | |
| 40:17 | 40:21 | | 41:2 | 41:10 | | | | |
| 40:23 | 40:25 | | 41:2 | 41:10 | | | | |
| 41:11 | 41:12 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| Simon Hughes | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Countesr Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 41:14 | 41:19 | | | | | | | |
| 41:21 | 42:5 | | | | | | | |
| 42:13 | 43:7 | FN, MC | 43:8 | 43:11 | | | | |
| 43:19 | 43:22 | FN, MC | | | | | | |
| 43:24 | 44:12 | | | | | | | |
| 44:14 | 44:20 | | | | | | | |
| 44:22 | 45:3 | | | | | | | |
| 45:5 | 45:8 | | | | | | | |
| 45:10 | 46:2 | | | | | | | |
| 48:14 | 49:10 | | 47:19 | 48:14 | AT | | | |
| 49:12 | 49:14 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Simon Hughes** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Countesr Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 49:16 | 49:18 | | | | | | | |
| 49:20 | 49:25 | | | | | | | |
| 50:3 | 50:9 | | | | | | | |
| 50:11 | 51:3 | | | | | | | |
| 51:5 | 51:7 | | | | | | | |
| 51:9 | 51:9 | | | | | | | |
| 51:15 | 51:20 | | | | | | | |
| 51:22 | 52:13 | FRE 403, R | | | | | | |
| 52:15 | 52:21 | | | | | | | |
| 52:23 | 53:6 | | | | | | | |
| 53:8 | 53:13 | | | | | | | |

*ArcherDX, LLC et al v. Qiagen Sciences, LLC, et al*
Case No. 18-cv-1019-MN (USDC-DE)

**Plaintiffs' Affirmative Designations**

| **Simon Hughes** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Countesr Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 53:15 | 54:2 | | | | | | | |
| 54:4 | 54:12 | | | | | | | |
| 54:14 | 54:18 | | | | | | | |
| 54:20 | 54:23 | | | | | | | |
| 54:25 | 55:8 | | | | | | | |
| 55:10 | 55:14 | | | | | | | |
| 55:16 | 55:19 | | | | | | | |
| 55:21 | 55:24 | | | | | | | |
| 56:2 | 56:2 | | | | | | | |
| 56:6 | 56:7 | | | | | | | |
| 56:9 | 56:15 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| Simon Hughes | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Countesr Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 57:14 | 57:19 | | | | | | | |
| 57:21 | 58:8 | | 62:11 | 62:19 | R | 60:10<br>61:16<br>63:2 | 60:14<br>61:18<br>63:5 | FN, FRE 403, R |
| 58:10 | 58:21 | | 62:11 | 62:19 | R | 60:10<br>61:16<br>63:2 | 60:14<br>61:18<br>63:5 | FN, FRE 403, R |
| 58:23 | 58:23 | | | | | | | |
| 59:2 | 59:3 | | | | | | | |
| 59:5 | 59:11 | | | | | | | |
| 59:13 | 59:13 | | | | | | | |
| 59:24 | 59:25 | | | | | | | |
| 60:2 | 60:7 | | | | | | | |
| 60:9 | 60:9 | | | | | | | |

*ArcherDX, LLC et al v. Qiagen Sciences, LLC, et al*
Case No. 18-cv-1019-MN (USDC-DE)

**Plaintiffs' Affirmative Designations**

| **Simon Hughes** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Countesr Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 63:12 | 63:14 | S, FRE 611(a), Sc | | | | | | |
| 63:16 | 63:21 | S, FRE 611(a), Sc | | | | | | |
| 65:2 | 65:6 | | | | | | | |
| 65:7 | 65:10 | | | | | | | |
| 65:16 | 65:22 | | | | | | | |
| 66:5 | 67:13 | | | | | | | |
| 68:2 | 69:5 | | | | | | | |
| 69:11 | 70:22 | | | | | | | |
| 70:25 | 71:5 | | | | | | | |
| 71:13 | 72:5 | | | | | | | |
| 72:7 | 72:15 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Simon Hughes** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Countesr Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 72:17 | 72:17 | | | | | | | |
| 72:21 | 72:24 | | | | | | | |
| 73:3 | 73:6 | | | | | | | |
| 73:14 | 74:2 | | | | | | | |
| 74:4 | 74:9 | | | | | | | |
| 74:11 | 74:11 | | | | | | | |
| 74:25 | 75:5 | | | | | | | |
| 75:8 | 75:17 | | | | | | | |
| 75:24 | 76:2 | | | | | | | |
| 77:6 | 77:11 | | | | | | | |
| 78:12 | 78:14 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Simon Hughes** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Countesr Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 78:22 | 78:23 | | | | | | | |
| 79:3 | 79:5 | | | | | | | |
| 79:7 | 79:7 | | | | | | | |
| 80:21 | 80:25 | | | | | | | |
| 81:3 | 81:21 | | | | | | | |
| 82:2 | 82:13 | | | | | | | |
| 82:15 | 83:4 | | 84:13<br>85:2 | 84:20<br>85:5 | AT | | | |
| 85:13 | 85:15 | | | | | | | |
| 85:23 | 86:16 | | | | | | | |
| 86:18 | 87:4 | | | | | | | |
| 87:7 | 87:24 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| Simon Hughes | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Countesr Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 88:3 | 88:5 | | | | | | | |
| 88:13 | 88:17 | | | | | | | |
| 89:18 | 89:21 | | | | | | | |
| 89:24 | 90:17 | | | | | | | |
| 94:18 | 95:3 | | | | | | | |
| 95:5 | 95:12 | | | | | | | |
| 95:14 | 95:25 | | | | | | | |
| 96:3 | 96:9 | | | | | | | |
| 96:23 | 97:6 | | | | | | | |
| 98:7 | 98:19 | | | | | | | |
| 100:15 | 100:23 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Simon Hughes** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Countesr Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 101:18 | 101:23 | | | | | | | |
| 102:6 | 106:20 | | | | | | | |
| 106:22 | 103:3 | | | | | | | |
| 103:6 | 103:14 | | | | | | | |
| 103:16 | 103:21 | | | | | | | |
| 103:23 | 104:7 | | | | | | | |
| 105:15 | 105:17 | | | | | | | |
| 105:19 | 106:11 | | | | | | | |
| 106:13 | 106:18 | | | | | | | |
| 106:24 | 106:19 | | | | | | | |
| 106:21 | 106:23 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Simon Hughes** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Countesr Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 108:7 | 108:21 | | | | | | | |
| 108:23 | 109:12 | | | | | | | |
| 109:14 | 110:4 | | | | | | | |
| 110:8 | 110:14 | | | | | | | |
| 110:19 | 111:5 | | | | | | | |
| 111:7 | 111:9 | | | | | | | |
| 111:10 | 111:14 | | | | | | | |
| 111:16 | 111:23 | | | | | | | |
| 111:25 | 112:2 | | | | | | | |
| 112:5 | 112:10 | | | | | | | |
| 112:17 | 112:23 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| Simon Hughes | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Countesr Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 112:25 | 113:20 | | | | | | | |
| 113:22 | 115:3 | | | | | | | |
| 115:5 | 116:22 | | | | | | | |
| 116:25 | 117:7 | | | | | | | |
| 122:19 | 123:6 | | | | | | | |
| 123:8 | 128:21 | LC | | | | | | |
| 128:23 | 124:10 | | | | | | | |
| 140:11 | 140:12 | | | | | | | |
| 140:19 | 141:6 | | | | | | | |
| 144:18 | 144:19 | | | | | | | |
| 144:21 | 145:8 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Simon Hughes** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Countesr Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 145:19 | 146:8 | | | | | | | |
| 146:10 | 146:12 | | | | | | | |
| 147:18 | 148:9 | | | | | | | |
| 148:11 | 148:16 | | | | | | | |
| 148:18 | 148:21 | | | | | | | |
| 148:23 | 149:3 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Mayo Clinic – Matthew Johnson** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 6:17 | 6:24 | | | | | | | |
| 7:21 | 8:7 | | | | | | | |
| 8:22 | 9:3 | | | | | | | |
| 9:14 | 9:24 | | | | | | | |
| 12:17 | 13:6 | R, F, FN, FRE 602 | 13:13 | 14:10 | R; C | | | |
| 13:8 | 13:11 | R, FN, FRE 602 | 13:13 | 14:10 | R; C | | | |
| 14:11 | 14:14 | | 13:13 | 14:10 | R; C | | | |
| 14:17 | 14:21 | | 14:22 | 14:24 | R; C; PK | | | |
| 19:5 | 19:8 | | | | | | | |
| 20:9 | 20:11 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Mayo Clinic – Matthew Johnson** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 20:15 | 20:17 | | | | | | | |
| 22:22 | 23:4 | | | | | | | |
| 23:13 | 23:18 | R | 23:21 | 23:25 | R; P; PK | | | |
| 24:19 | 25:5 | R | | | | | | |
| 26:11 | 26:13 | | | | | | | |
| 26:16 | 26:17 | | 26:19 | 26:22 | R; P; PK; IC | 26:23 | 26:25 | |
| 27:1 | 27:2 | | | | | | | |
| 27:7 | 28:3 | | 28:4<br>28:24 | 28:8<br>29:5 | M; R; P; I | 29:6<br>29:8 | 29:6<br>29:12 | |
| 30:2 | 30:3 | | | | | | | |
| 30:5 | 30:5 | | | | | | | |
| 30:12 | 30:13 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Mayo Clinic – Matthew Johnson** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 30:19 | 30:21 | | | | | | | |
| 30:24 | 31:9 | | | | | | | |
| 31:11 | 33:2 | | | | | | | |
| 34:17 | 35:11 | | | | | | | |
| 35:14 | 37:1 | | 37:2<br>67:11<br>67:25 | 37:17<br>67:23<br>68:1 | PK; Spec; R; P; LD; V; NT; M; C | | | |
| 37:18 | 37:24 | | | | | | | |
| 38:2 | 38:10 | | 38:11<br>38:24<br>39:4<br>67:11<br>67:25 | 38:13<br>39:2<br>39:5<br>67:23<br>68:1 | PK; Spec; C; R; P; LD; V; NT; M | | | |
| 39:6 | 39:7 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Mayo Clinic – Matthew Johnson** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 39:10 | 39:23 | I, MC, NT | | | | | | |
| 40:17 | 40:20 | | | | | | | |
| 40:22 | 40:25 | | | | | | | |
| 41:3 | 41:3 | | | | | | | |
| 54:9 | 55:11 | | | | | | | |
| 56:16 | 56:23 | | | | | | | |
| 56:25 | 57:5 | LC, NT | | | | | | |
| 57:12 | 58:4 | | | | | | | |
| 58:21 | 59:13 | NT | | | | | | |
| 59:15 | 60:16 | NT | | | | | | |
| 60:18 | 61:7 | NT | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Mayo Clinic – Matthew Johnson** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 61:11 | 61:19 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Christian LaPointe** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 5:9 | 5:22 | | 5:3 | 5:5 | | | | |
| 15:10 | 15:19 | I, R, FRE 403 | 15:20 | 15:21 | | | | |
| 15:25 | 16:12 | R, FRE 403 | | | | | | |
| 16:22 | 17:12 | R, FRE 403 | | | | | | |
| 21:17 | 21:20 | | | | | | | |
| 23:13 | 24:7 | R, FRE 403 | | | | | | |
| 24:10 | 24:21 | R, FRE 403 | | | | | | |
| 31:18 | 32:22 | R, FRE 403 | | | | | | |
| 34:10 | 34:23 | | 34:2 | 34:9 | P; R | | | |
| 35:1 | 36:2 | R, FRE 403 | | | | | | |
| 36:8 | 37:4 | R, FRE 403 | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Christian LaPointe** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 42:12 | 42:18 | R, FRE 403 | | | | | | |
| 42:21 | 44:9 | R, FRE 403 | | | | | | |
| 44:11 | 44:17 | I, R, FRE 403 | | | | | | |
| 44:20 | 45:15 | R, FRE 403 | | | | | | |
| 45:18 | 46:3 | R, FRE 403 | | | | | | |
| 46:6 | 46:10 | R, FRE 403 | | | | | | |
| 47:3 | 48:5 | R, FRE 403 | | | | | | |
| 63:21 | 64:5 | | | | | | | |
| 74:10 | 75:22 | | | | | | | |
| 77:13 | 78:10 | R, FRE 403 | | | | | | |
| 78:13 | 79:10 | R, FRE 403 | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Christian LaPointe** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 79:25 | 80:7 | R, FRE 403 | | | | | | |
| 80:13 | 80:19 | R, FRE 403 | | | | | | |
| 80:21 | 81:23 | R, FRE 403 | | | | | | |
| 90:12 | 90:21 | | 87:19 | 87:23 | R; P | 87:24 | 88:6 | R, FRE 403, FN, LC, NON |
| 90:25 | 91:13 | | | | | | | |
| 91:14 | 91:20 | R, FRE 403, FRE 404 | | | | | | |
| 91:23 | 92:12 | | 92:13 | 92:23 | R; P | | | |
| 93:6 | 94:8 | R, FRE 403, FRE 404 | | | | | | |
| 106:2 | 107:2 | | | | | | | |
| 107:15 | 108:18 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| Christian LaPointe | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 108:21 | 108:21 | | | | | | | |
| 112:22 | 113:2 | | | | | | | |
| 113:5 | 113:8 | | | | | | | |
| 113:11 | 114:8 | | | | | | | |
| 114:11 | 115:5 | R, FRE 403 | | | | | | |
| 115:8 | 116:21 | R, FRE 403 | | | | | | |
| 121:15 | 122:12 | | | | | | | |
| 126:20 | 127:1 | R, FRE 403 | | | | | | |
| 127:21 | 128:1 | R, FRE 403 | | | | | | |
| 128:4 | 128:9 | R, FRE 403 | | | | | | |
| 128:12 | 128:24 | R, FRE 403 | | | | | | |

*ArcherDX, LLC et al v. Qiagen Sciences, LLC, et al*
Case No. 18-cv-1019-MN (USDC-DE)

**Plaintiffs' Affirmative Designations**

| **Christian LaPointe** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 129:2 | 129:11 | R, FRE 403 | | | | | | |
| 130:3 | 130:6 | R, FRE 403 | | | | | | |
| 130:9 | 130:25 | R, FRE 403 | 131:1 | 131:15 | L; FRE 403, R; M | | | |
| 154:25 | 154:25 | I, R, FRE 403 | | | | | | |
| 195:4 | 195:8 | I, R, FRE 403 | 194:2 | 194:17 | | | | |
| 195:11 | 196:2 | R, FRE 403 | 194:2 | 194:17 | | | | |
| 196:5 | 196:7 | R, FRE 403 | | | | | | |
| 196:10 | 196:19 | R, FRE 403 | | | | | | |
| 197:13 | 197:22 | R, FRE 403 | | | | | | |
| 197:25 | 198:18 | R, FRE 403 | | | | | | |
| 198:21 | 198:25 | R, FRE 403 | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Christian LaPointe** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 199:3 | 199:17 | R, FRE 403 | | | | | | |
| 246:5 | 246:12 | R, FRE 403 | | | | | | |

**Plaintiffs' Affirmative Designations**

| Gary Nealey | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 6:11 | 6:15 | | | | | | | |
| 8:4 | 8:7 | | | | | | | |
| 13:16 | 13:22 | | | | | | | |
| 13:25 | 14:6 | | | | | | | |
| 14:9 | 14:10 | | | | | | | |
| 16:10 | 16:12 | | | | | | | |
| 16:15 | 16:21 | | | | | | | |
| 16:24 | 16:25 | | | | | | | |
| 17:21 | 18:4 | R | | | | | | |
| 18:14 | 18:15 | R | | | | | | |
| 18:18 | 18:25 | R | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Gary Nealey** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 19:4 | 19:8 | R | | | | | | |
| 19:11 | 19:19 | R | | | | | | |
| 19:22 | 19:25 | R | | | | | | |
| 22:22 | 22:25 | R, LC | | | | | | |
| 23:2 | 23:2 | R, LC | | | | | | |
| 23:5 | 23:6 | R | | | | | | |
| 23:9 | 29:13 | R | | | | | | |
| 23:20 | 23:25 | R | | | | | | |
| 24:14 | 24:16 | R, LC | | | | | | |
| 24:22 | 24:24 | R, LC | | | | | | |
| 34:2 | 34:5 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Gary Nealey** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 34:9 | 34:12 | | | | | | | |
| 36:22 | 37:3 | FN, LC, R, FRE 602 | | | | | | |
| 37:6 | 37:15 | FN, LC, R, S, FRE 602 | | | | | | |
| 37:18 | 38:6 | FN, LC, R, S, FRE 602 | | | | | | |
| 38:9 | 38:23 | FN, LC, R, S, FRE 602 | | | | | | |
| 39:5 | 39:9 | FN, LC, R, FRE 602 | | | | | | |
| 39:12 | 39:25 | | | | | | | |
| 40:4 | 40:11 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Gary Nealey** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 40:17 | 41:2 | R | | | | | | |
| 41:5 | 41:22 | | | | | | | |
| 42:2 | 42:24 | R, FRE 403 | | | | | | |
| 43:3 | 43:25 | R, FRE 403 | | | | | | |
| 44:2 | 44:15 | R, FRE 403 | | | | | | |
| 44:21 | 45:8 | R, FRE 403 | | | | | | |
| 45:11 | 45:17 | R, FRE 403 | | | | | | |
| 45:21 | 45:25 | R, FRE 403 | | | | | | |
| 46:6 | 46:12 | R, FRE 403 | | | | | | |
| 48:2 | 48:6 | R, FRE 403, FRE 602 | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Gary Nealey** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 48:9 | 48:12 | R, FRE 403, FRE 602 | | | | | | |
| 48:16 | 48:24 | R, FRE 403, FRE 602 | | | | | | |
| 49:6 | 49:16 | MC, R | | | | | | |
| 49:22 | 49:23 | R, FRE 403 | | | | | | |
| 50:2 | 50:6 | R, FRE 403 | 50:9 | 51:2 | AT; NT | | | |
| 51:3 | 51:21 | R, FRE 403 | | | | | | |
| 53:11 | 53:17 | R, FRE 403 | 52:25 | 53:10 | AT; NT; R | | | |
| 54:5 | 54:6 | | | | | | | |
| 54:9 | 54:14 | | | | | | | |
| 56:14 | 56:16 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Gary Nealey** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 57:20 | 58:8 | R, FRE 403 | 60:25 | 61:9 | AT; NT; R | | | |
| 58:14 | 58:24 | R, FRE 403 | | | | | | |
| 59:3 | 59:17 | R, FRE 403 | | | | | | |
| 60:2 | 60:6 | R, FRE 403 | | | | | | |
| 60:8 | 60:11 | R, FRE 403 | | | | | | |
| 60:15 | 60:21 | R, FRE 403 | | | | | | |
| 65:14 | 65:15 | R, FRE 403 | | | | | | |
| 65:18 | 65:22 | R, FRE 403 | | | | | | |
| 66:5 | 66:8 | R, FRE 403 | | | | | | |
| 66:11 | 66:16 | R, FRE 403 | | | | | | |
| 66:22 | 66:25 | R, FRE 403 | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Gary Nealey** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 67:9 | 67:10 | R, FRE 403 | | | | | | |
| 67:17 | 67:19 | R, FRE 403 | | | | | | |
| 68:10 | 69:4 | MC, R, FRE 403 | | | | | | |
| 69:15 | 69:16 | R, FRE 403 | | | | | | |
| 69:18 | 70:6 | R, FRE 403 | | | | | | |
| 70:12 | 70:14 | R, FRE 403 | | | | | | |
| 70:17 | 70:20 | R, FRE 403 | | | | | | |
| 70:22 | 71:2 | R, FRE 403 | | | | | | |
| 71:5 | 71:6 | R, FRE 403 | | | | | | |
| 71:9 | 71:14 | R, FRE 403 | | | | | | |
| 71:23 | 71:24 | R, FRE 403 | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Gary Nealey** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 72:3 | 72:5 | R, FRE 403 | | | | | | |
| 72:9 | 72:10 | R, FRE 403 | | | | | | |
| 73:9 | 73:14 | R, FRE 403 | | | | | | |
| 79:22 | 79:24 | | | | | | | |
| 80:3 | 80:4 | | 80:5 | 80:17 | | | | |
| 80:18 | 80:21 | R, FRE 403 | | | | | | |
| 80:24 | 81:2 | R, FRE 403 | | | | | | |
| 81:5 | 81:5 | R, FRE 403 | | | | | | |
| 81:12 | 81:15 | | | | | | | |
| 81:18 | 81:20 | | | | | | | |
| 82:2 | 82:6 | R, S, FRE 403 | | | | | | |

**Plaintiffs' Affirmative Designations**

| Gary Nealey | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 82:11 | 82:15 | R, S, FRE 403 | | | | | | |
| 82:18 | 83:6 | MC, R, S, FRE 403 | | | | | | |
| 83:10 | 83:13 | R, S, FRE 403 | | | | | | |
| 83:16 | 83:22 | R, S, FRE 403 | | | | | | |
| 84:7 | 84:10 | | | | | | | |
| 84:13 | 84:20 | R, FRE 403 | | | | | | |
| 85:2 | 85:4 | R, S, FRE 403 | | | | | | |
| 85:7 | 85:8 | R, S, FRE 403 | | | | | | |
| 86:24 | 86:25 | | | | | | | |
| 87:4 | 87:9 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| Gary Nealey | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 91:23 | 92:3 | LC, MC, R, FRE 403 | | | | | | |
| 92:6 | 92:7 | LC, MC, R, FRE 403 | | | | | | |
| 92:19 | 92:20 | LC, R, FRE 403 | | | | | | |
| 92:23 | 93:6 | LC, R, FRE 403 | | | | | | |
| 94:10 | 94:19 | | | | | | | |
| 97:25 | 98:10 | | 97:18 | 97:24 | R; NT | | | |
| 99:14 | 99:15 | | | | | | | |
| 99:18 | 99:23 | | | | | | | |
| 100:2 | 100:6 | | | | | | | |
| 100:9 | 100:12 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Gary Nealey** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 101:12 | 101:14 | R, FRE 403 | | | | | | |
| 102:6 | 102:9 | R, FRE 403, Priv | | | | | | |
| 102:15 | 102:17 | R, FRE 403, Priv | | | | | | |
| 102:25 | 103:5 | R, FRE 403 | | | | | | |
| 103:8 | 103:9 | R, FRE 403 | | | | | | |
| 106:13 | 106:18 | R, FRE 403 | 106:19 | 107:5 | AT; NT; R | | | |
| 109:23 | 110:3 | R, FRE 403 | | | | | | |
| 110:6 | 110:8 | R, FRE 403 | | | | | | |
| 111:15 | 111:21 | | | | | | | |
| 111:24 | 111:24 | | | | | | | |
| 112:2 | 112:4 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| Gary Nealey | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 112:7 | 112:12 | MC, R, FRE 403 | | | | | | |
| 112:15 | 112:18 | MC, R, FRE 403 | | | | | | |
| 112:22 | 112:3 | R, FRE 403, FRE 611(a) | | | | | | |
| 113:6 | 113:9 | R, FRE 403 | | | | | | |
| 113:12 | 113:25 | R, FRE 403, FRE 611(a) | | | | | | |
| 114:4 | 114:12 | R, FRE 403, FRE 611(a) | | | | | | |
| 114:16 | 114:20 | R, FRE 403, FRE 611(a) | | | | | | |
| 114:23 | 115:4 | R, FRE 403, FRE 611(a) | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Gary Nealey** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 115:7 | 115:11 | R, FRE 403, FRE 611(a) | | | | | | |
| 115:14 | 115:18 | R, FRE 403 | | | | | | |
| 115:22 | 116:11 | MC, R, FRE 403 | | | | | | |
| 116:14 | 116:19 | MC, R, FRE 403 | | | | | | |
| 116:22 | 116:22 | MC, R, FRE 403 | | | | | | |
| 117:4 | 117:11 | | | | | | | |
| 117:24 | 118:5 | | | | | | | |
| 122:3 | 123:6 | R, FRE 403 | | | | | | |
| 123:10 | 123:23 | R, FRE 403 | | | | | | |
| 125:15 | 125:25 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| Gary Nealey | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 128:18 | 128:18 | R, FRE 403 | | | | | | |
| 121:21 | 129:7 | R, FRE 403 | | | | | | |
| 131:2 | 131:8 | R, FRE 403 | | | | | | |
| 131:15 | 131:19 | R, FRE 403 | 131:9 | 131:14 | AT; NT | | | |
| 131:22 | 131:24 | R, FRE 403 | | | | | | |
| 132:23 | 132:25 | R, FRE 403 | | | | | | |
| 133:4 | 133:6 | R, FRE 403 | | | | | | |
| 133:8 | 133:12 | R, FRE 403 | | | | | | |
| 133:15 | 133:20 | R, FRE 403 | | | | | | |
| 133:23 | 134:10 | R, FRE 403 | | | | | | |
| 134:13 | 134:25 | MC, R, FRE 403 | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Gary Nealey** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 135:4 | 135:4 | R, FRE 403 | | | | | | |
| 135:6 | 135:8 | R, FRE 403 | | | | | | |
| 136:3 | 137:8 | R, FRE 403 | | | | | | |
| 138:4 | 138:7 | | | | | | | |
| 138:10 | 138:19 | LC, R, FRE 403 | | | | | | |
| 138:22 | 138:23 | LC, R, FRE 403 | | | | | | |
| 139:12 | 139:15 | R, FRE 403 | 140:3 | 140:10 | AT; NT | | | |
| 140:17 | 140:21 | | | | | | | |
| 141:21 | 141:23 | | | | | | | |
| 142:3 | 142:5 | R, FRE 403, FRE 611(a) | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Gary Nealey** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 142:8 | 142:8 | R, FRE 403, FRE 611(a) | | | | | | |
| 143:11 | 143:15 | R, FRE 403, FRE 611(a) | | | | | | |
| 143:18 | 143:24 | R, FRE 403, FRE 611(a) | | | | | | |
| 143:3 | 143:11 | | | | | | | |
| 143:17 | 144:2 | | | | | | | |
| 144:5 | 144:11 | MC, R, FRE 403 | | | | | | |
| 144:14 | 144:21 | R, FRE 403 | | | | | | |
| 144:24 | 145:3 | R, FRE 403 | | | | | | |
| 145:14 | 145:17 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Gary Nealey** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 145:20 | 145:21 | | | | | | | |
| 146:8 | 146:13 | | | | | | | |
| 146:24 | 147:16 | | | | | | | |
| 147:19 | 148:14 | | | | | | | |
| 148:17 | 148:23 | | | | | | | |
| 149:2 | 149:3 | | | | | | | |
| 149:5 | 149:8 | | | | | | | |
| 150:17 | 150:22 | R, FRE 403 | | | | | | |
| 151:8 | 152:13 | NT, R, FRE 403, FRE 602 | | | | | | |
| 152:18 | 153:6 | R, FRE 403, FRE 602 | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Gary Nealey** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 153:23 | 154:3 | R, FRE 403, FRE 602 | 154:4 | 154:6 | | | | |
| 154:7 | 154:13 | R, FRE 403, FRE 602 | | | | | | |
| 154:19 | 154:21 | R, FRE 403, FRE 602 | | | | | | |
| 154:24 | 155:8 | | | | | | | |
| 155:11 | 155:12 | | | | | | | |
| 155:25 | 156:4 | R, FRE 403 | | | | | | |
| 158:7 | 158:10 | | 157:15 | 158:6 | AT; NT | | | |
| 162:5 | 162:7 | | | | | | | |
| 162:10 | 162:11 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Gary Nealey** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 163:10 | 163:20 | R, FRE 403 | | | | | | |
| 163:25 | 164:4 | NT, R, FRE 403, FRE 602 | | | | | | |
| 164:13 | 165:2 | R, FRE 403, FRE 602 | | | | | | |
| 166:3 | 167:4 | R, S, FRE 403, FRE 602 | | | | | | |
| 167:7 | 167:9 | R, S, FRE 403, FRE 602 | | | | | | |
| 167:12 | 167:19 | R, S, FRE 403, FRE 602 | | | | | | |
| 168:8 | 168:13 | | | | | | | |
| 169:9 | 169:11 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Gary Nealey** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 169:15 | 169:20 | | | | | | | |
| 170:17 | 170:20 | MC, R, FRE 403 | | | | | | |
| 172:24 | 173:2 | R, FRE 403 | | | | | | |
| 173:5 | 173:8 | LC, R, FRE 403, FRE 611(a) | | | | | | |
| 173:11 | 173:16 | LC, R, FRE 403, FRE 602, FRE 611(a) | | | | | | |
| 175:15 | 175:19 | LC, R, FRE 403, FRE 602, FRE 611(a) | | | | | | |
| 177:24 | 178:2 | R, FRE 403 | | | | | | |
| 178:5 | 178:10 | R, FRE 403 | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Gary Nealey** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 178:13 | 178:14 | R, FRE 403 | | | | | | |
| 181:15 | 181:16 | R, FRE 403 | | | | | | |
| 181:19 | 181:23 | R, FRE 403 | | | | | | |
| 182:2 | 182:18 | R, FRE 403 | | | | | | |
| 183:11 | 183:16 | R, FRE 403 | | | | | | |
| 184:21 | 184:25 | R, FRE 403, FRE 602 | | | | | | |
| 185:12 | 186:4 | R, FRE 403, FRE 602 | | | | | | |
| 187:17 | 187:20 | R, FRE 403, FRE 602 | | | | | | |
| 191:4 | 191:8 | R, FRE 403 | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Gary Nealey** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 192:12 | 193:2 | R, FRE 403, FRE 602 | | | | | | |
| 193:5 | 193:11 | R, FRE 403, FRE 602 | | | | | | |
| 194:11 | 194:13 | R, FRE 403 | | | | | | |
| 194:16 | 194:22 | R, FRE 403 | | | | | | |
| 194:25 | 195:14 | R, FRE 403 | | | | | | |
| 195:16 | 195:16 | R, FRE 403 | | | | | | |
| 195:19 | 196:7 | R, FRE 403 | | | | | | |
| 196:10 | 196:18 | R, FRE 403 | | | | | | |
| 196:25 | 197:3 | R, FRE 403 | | | | | | |
| 197:6 | 197:9 | R, FRE 403 | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Gary Nealey** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 197:12 | 198:17 | R, FRE 403 | | | | | | |
| 199:3 | 199:23 | LD, MC, R, FRE 403 | | | | | | |
| 201:11 | 201:14 | LD, MC, R, FRE 403 | | | | | | |
| 201:17 | 201:17 | LD, MC, R, FRE 403 | | | | | | |
| 204:3 | 204:4 | | | | | | | |
| 204:7 | 204:18 | | | | | | | |
| 204:21 | 204:24 | | | | | | | |
| 205:3 | 205:6 | | | | | | | |
| 205:9 | 205:18 | FRE 602 | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Gary Nealey** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 210:8 | 210:23 | R, FRE 403, FRE 602 | | | | | | |
| 215:11 | 215:18 | R, FRE 403, FRE 602 | | | | | | |
| 218:2 | 218:6 | NT, R, FRE 403, FRE 602 | | | | | | |
| 218:17 | 219:14 | R, FRE 403, FRE 602 | | | | | | |
| 219:17 | 220:10 | R, FRE 403, FRE 602 | | | | | | |
| 221:16 | 221:19 | R, FRE 403 | | | | | | |
| 225:22 | 226:10 | R, FRE 403, FRE 602 | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Gary Nealey** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 226:16 | 226:22 | R, FRE 403, FRE 602 | | | | | | |
| 229:4 | 229:7 | R, FRE 403, FRE 611(a) | | | | | | |
| 229:10 | 229:14 | R, FRE 403, FRE 611(a) | | | | | | |
| 229:18 | 229:21 | R, FRE 403, FRE 611(a) | | | | | | |
| 229:24 | 230:3 | R, FRE 403, FRE 611(a) | | | | | | |
| 230:6 | 230:10 | R, FRE 403, FRE 611(a) | | | | | | |
| 230:14 | 230:20 | R, FRE 403, FRE 611(a) | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Gary Nealey** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 231:25 | 232:3 | R, FRE 403 | | | | | | |
| 232:6 | 232:9 | R, FRE 403, FRE 611(a) | | | | | | |
| 232:12 | 232:16 | R, FRE 403, FRE 611(a) | | | | | | |
| 232:19 | 232:23 | R, FRE 403, FRE 611(a) | | | | | | |
| 233:2 | 233:2 | R, FRE 403, FRE 611(a) | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Britton Russell** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 9:15 | 9:17 | | | | | | | |
| 11:22 | 11:25 | | | | | | | |
| 12:1 | 12:2 | | | | | | | |
| 13:2 | 13:16 | | | | | | | |
| 14:10 | 14:25 | | | | | | | |
| 46:14 | 46:17 | | 46:10 | 46:13 | | | | |
| 91:4 | 92:1 | NT | | | | | | |
| 92:4 | 92:7 | | | | | | | |
| 93:8 | 93:19 | R, FRE 403 | | | | | | |
| 93:22 | 93:25 | R, FRE 403 | | | | | | |
| 94:1 | 94:22 | R, FRE 403 | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Britton Russell** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 94:24 | 94:25 | R, FRE 403 | | | | | | |
| 95:1 | 96:3 | R, FRE 403 | | | | | | |
| 96:5 | 96:9 | R, FRE 403 | | | | | | |
| 97:15 | 99:13 | R, FRE 403 | | | | | | |
| 99:15 | 99:17 | R, FRE 403 | | | | | | |
| 99:25 | 100:14 | NT, R, FRE 403 | | | | | | |
| 101:15 | 102:4 | R, FRE 403 | | | | | | |
| 104:17 | 104:24 | | | | | | | |
| 105:4 | 106:7 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Angela Ryan** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 5:14 | 6:2 | | | | | | | |
| 6:21 | 7:8 | | | | | | | |
| 7:12 | 7:20 | | | | | | | |
| 8:5 | 8:6 | | | | | | | |
| 8:9 | 8:18 | R, FRE 403 | | | | | | |
| 8:22 | 8:25 | | | | | | | |
| 13:3 | 14:11 | F, R, FRE 403 | | | | | | |
| 14:13 | 14:17 | F | | | | | | |
| 14:23 | 15:1 | | | | | | | |
| 17:20 | 18:3 | | | | | | | |
| 18:12 | 18:13 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| Angela Ryan | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 18:23 | 19:10 | Sc | | | | | | |
| 19:13 | 19:16 | | | | | | | |
| 20:10 | 20:22 | | | | | | | |
| 20:25 | 20:25 | | | | | | | |
| 21:2 | 21:16 | | | | | | | |
| 21:19 | 21:24 | | | | | | | |
| 22:2 | 22:16 | | | | | | | |
| 27:4 | 27:8 | R, FRE 403 | | | | | | |
| 27:24 | 28:8 | R, FRE 403 | | | | | | |
| 28:12 | 30:2 | R, FRE 403 | | | | | | |
| 30:4 | 30:4 | R, FRE 403 | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Angela Ryan** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 30:6 | 30:25 | R, FRE 403 | | | | | | |
| 31:13 | 31:14 | FN, R, FRE 403 | | | | | | |
| 31:16 | 31:17 | FN, R, FRE 403 | | | | | | |
| 35:22 | 35:24 | | | | | | | |
| 36:1 | 36:6 | | | | | | | |
| 36:13 | 36:17 | | | | | | | |
| 38:3 | 38:16 | | | | | | | |
| 40:3 | 40:4 | | | | | | | |
| 40:6 | 40:6 | | | | | | | |
| 40:8 | 40:10 | | | | | | | |
| 40:25 | 41:7 | | | | | | | |

*ArcherDX, LLC et al v. Qiagen Sciences, LLC, et al*
Case No. 18-cv-1019-MN (USDC-DE)

**Plaintiffs' Affirmative Designations**

| **Angela Ryan** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 42:4 | 42:8 | | | | | | | |
| 42:11 | 42:20 | | | | | | | |
| 43:8 | 43:11 | | | | | | | |
| 45:7 | 45:10 | | | | | | | |
| 45:12 | 45:18 | | | | | | | |
| 45:20 | 45:23 | | | | | | | |
| 46:5 | 47:5 | | | | | | | |
| 47:20 | 47:25 | R, FRE 403 | | | | | | |
| 48:2 | 48:19 | R, FRE 403 | | | | | | |
| 48:23 | 49:10 | R, FRE 403 | | | | | | |
| 49:15 | 49:17 | R, FRE 403 | | | | | | |

*ArcherDX, LLC et al v. Qiagen Sciences, LLC, et al*
Case No. 18-cv-1019-MN (USDC-DE)

**Plaintiffs' Affirmative Designations**

| **Angela Ryan** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 50:11 | 50:18 | R, FRE 403 | | | | | | |
| 51:1 | 51:3 | | | | | | | |
| 51:7 | 51:9 | | | | | | | |
| 51:11 | 51:25 | | 52:16 | 52:20 | | | | |
| 52:21 | 53:1 | | 52:16 | 52:20 | | | | |
| 53:3 | 53:9 | | | | | | | |
| 53:11 | 53:16 | | | | | | | |
| 53:18 | 53:24 | | | | | | | |
| 54:6 | 54:16 | F, I | 54:1 | 54:2 | | | | |
| 55:3 | 55:4 | | | | | | | |
| 55:22 | 56:11 | | | | | | | |

*ArcherDX, LLC et al v. Qiagen Sciences, LLC, et al*
Case No. 18-cv-1019-MN (USDC-DE)

**Plaintiffs' Affirmative Designations**

| **Angela Ryan** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 57:8 | 58:4 | | | | | | | |
| 58:7 | 58:8 | | | | | | | |
| 58:12 | 58:23 | | | | | | | |
| 59:11 | 59:15 | R, FRE 403 | | | | | | |
| 59:17 | 59:23 | R, FRE 403 | | | | | | |
| 61:13 | 61:18 | R, FRE 403 | | | | | | |
| 61:20 | 62:8 | R, FRE 403 | | | | | | |
| 63:10 | 63:21 | | | | | | | |
| 64:7 | 64:9 | R, FRE 403 | | | | | | |
| 64:11 | 64:22 | R, FRE 403 | | | | | | |
| 65:6 | 65:19 | | | | | | | |

*ArcherDX, LLC et al v. Qiagen Sciences, LLC, et al*
Case No. 18-cv-1019-MN (USDC-DE)

**Plaintiffs' Affirmative Designations**

| **Angela Ryan** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 65:21 | 65:22 | | | | | | | |
| 66:13 | 66:14 | | | | | | | |
| 66:17 | 66:20 | | | | | | | |
| 66:23 | 66:25 | | | | | | | |
| 67:9 | 67:10 | | | | | | | |
| 67:21 | 69:17 | | | | | | | |
| 70:9 | 74:3 | R, FRE 403, Sc | | | | | | |
| 74:6 | 74:7 | R, FRE 403 | | | | | | |
| 74:9 | 74:18 | R, FRE 403 | | | | | | |
| 75:16 | 76:16 | | | | | | | |
| 79:10 | 79:15 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| Angela Ryan | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 79:17 | 79:18 | | | | | | | |
| 81:22 | 82:13 | | | | | | | |
| 83:25 | 84:6 | | | | | | | |
| 84:24 | 85:2 | | | | | | | |
| 85:10 | 85:12 | | | | | | | |
| 86:8 | 86:11 | F, R, FRE 403 | | | | | | |
| 88:23 | 89:3 | | | | | | | |
| 90:18 | 91:5 | F, R, FRE 403 | 90:13 | 90:17 | | | | |
| 91:7 | 91:10 | F, R, FRE 403 | | | | | | |
| 91:18 | 92:4 | | | | | | | |
| 92:20 | 94:5 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| Angela Ryan | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 94:10 | 94:10 | | | | | | | |
| 94:15 | 94:25 | | | | | | | |
| 95:5 | 95:9 | | | | | | | |
| 95:12 | 95:23 | | | | | | | |
| 96:1 | 98:8 | R, FRE 403 | | | | | | |
| 98:17 | 98:21 | | | | | | | |
| 98:23 | 99:7 | | | | | | | |
| 99:9 | 99:18 | | | | | | | |
| 99:20 | 99:23 | | | | | | | |
| 99:25 | 100:1 | | | | | | | |
| 100:3 | 100:4 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| Angela Ryan | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 100:6 | 100:25 | R, FRE 403 | | | | | | |
| 101:2 | 101:6 | | | | | | | |
| 101:23 | 105:10 | | 105:12 | 105:20 | | | | |
| 105:25 | 106:3 | | | | | | | |
| 106:5 | 106:8 | | | | | | | |
| 108:6 | 108:8 | | | | | | | |
| 108:17 | 108:24 | | | | | | | |
| 109:10 | 109:12 | | | | | | | |
| 109:15 | 109:17 | | | | | | | |
| 109:23 | 110:1 | | | | | | | |
| 110:3 | 111:18 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| Angela Ryan | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 111:21 | 112:22 | R, FRE 403 | | | | | | |
| 112:24 | 113:3 | R, FRE 403 | | | | | | |
| 113:17 | 113:19 | R, FRE 403 | | | | | | |
| 113:22 | 114:2 | R, FRE 403 | | | | | | |
| 114:3 | 114:8 | R, FRE 403 | | | | | | |
| 114:11 | 114:13 | R, FRE 403 | | | | | | |
| 115:12 | 115:14 | Sc, R, FRE 403 | | | | | | |
| 115:17 | 115:19 | Sc, R, FRE 403 | | | | | | |
| 115:21 | 115:22 | Sc, R, FRE 403 | | | | | | |
| 118:6 | 119:10 | | | | | | | |
| 120:20 | 121:5 | NT, R, FRE 403 | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Angela Ryan** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 121:24 | 122:1 | | | | | | | |
| 122:11 | 122:18 | | | | | | | |
| 123:14 | 123:22 | Sc, NT, FRE 602 | | | | | | |
| 128:4 | 128:8 | | | | | | | |
| 128:12 | 130:13 | NT, R, FRE 408 | | | | | | |
| 131:3 | 131:14 | Sc, NT, R, FRE 408 | | | | | | |
| 132:13 | 133:17 | | | | | | | |
| 134:13 | 135:11 | | | | | | | |
| 137:2 | 137:23 | R, FRE 403 | | | | | | |
| 138:21 | 138:25 | R, FRE 403 | | | | | | |
| 140:1 | 140:4 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| Angela Ryan | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 140:8 | 140:19 | | | | | | | |
| 140:23 | 140:25 | | | | | | | |
| 141:1 | 141:4 | | | | | | | |
| 141:9 | 141:12 | R, FRE 403 | | | | | | |
| 141:18 | 142:2 | R, FRE 403 | | | | | | |
| 142:7 | 142:23 | R, FRE 403 | | | | | | |
| 145:11 | 146:9 | | | | | | | |
| 146:17 | 147:18 | F, NT | | | | | | |
| 149:16 | 150:6 | | | | | | | |
| 153:11 | 154:14 | F, Sc, NT, R, FRE 403, FRE 602 | | | | | | |

**Plaintiffs' Affirmative Designations**

| Angela Ryan | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 158:11 | 160:25 | F, FN, Sc, R, FRE 403, FRE 602 | | | | | | |
| 164:23 | 165:5 | | 163:13<br>163:17<br>164:15 | 163:14<br>163:24<br>164:22 | | | | |
| 166:3 | 167:12 | F, Sc, LC, | 163:13<br>163:17<br>164:15 | 163:14<br>163:24<br>164:22 | | | | |
| 168:21 | 169:10 | NT, R, FRE 403 | | | | | | |
| 169:19 | 169:25 | | | | | | | |
| 170:13 | 170:24 | NT, F, S, Sc | | | | | | |
| 171:1 | 172:10 | F, Sc | | | | | | |
| 172:23 | 173:13 | | | | | | | |
| 173:16 | 173:23 | Sc | | | | | | |
| 173:25 | 175:10 | NT, F, | | | | | | |

**Plaintiffs' Affirmative Designations**

| Angela Ryan | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 180:2 | 181:14 | R, FRE 403 | 182:6<br>182:13 | 182:7<br>182:16 | | | | |
| 181:18 | 182:5 | Sc, R, FRE 403, | | | | | | |
| 183:21 | 184:2 | NT, F | | | | | | |
| 184:9 | 185:22 | R, FRE 403, FRE 602 | | | | | | |
| 185:25 | 186:8 | | 188:10<br>188:15<br>188:21<br>188:24 | 188:11<br>188:19<br>188:22<br>189:1 | | | | |
| 186:12 | 187:3 | | 187:4 | 187:7 | | | | |
| 187:12 | 187:18 | | | | | | | |
| 188:4 | 188:9 | | 188:10<br>188:15<br>188:21<br>188:24 | 188:11<br>188:19<br>188:22<br>189:1 | | | | |
| 190:14 | 191:5 | R, FRE 403 | 191:6<br>191:10 | 191:7<br>191:19 | NR; PK; R | | | |

*ArcherDX, LLC et al v. Qiagen Sciences, LLC, et al*
Case No. 18-cv-1019-MN (USDC-DE)

**Plaintiffs' Affirmative Designations**

| **Angela Ryan** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 191:23 | 191:25 | | 191:6<br>191:10 | 191:7<br>191:19 | NR; PK; R | | | |
| 192:10 | 192:18 | | | | | | | |
| 193:4 | 193:6 | | | | | | | |
| 193:12 | 193:21 | | | | | | | |
| 194:9 | 194:18 | | | | | | | |
| 196:1 | 196:9 | Sc | | | | | | |
| 196:17 | 196:24 | Sc | | | | | | |
| 197:11 | 198:18 | F, Sc, FRE 403 | | | | | | |
| 198:23 | 199:3 | F, Sc, R, FRE 403 | | | | | | |
| 199:14 | 200:2 | | | | | | | |
| 200:6 | 200:20 | F, R, FRE 403 | | | | | | |

*ArcherDX, LLC et al v. Qiagen Sciences, LLC, et al*
Case No. 18-cv-1019-MN (USDC-DE)

**Plaintiffs' Affirmative Designations**

| **Angela Ryan** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 201:4 | 201:5 | | | | | | | |
| 201:12 | 201:18 | NT, R, FRE 403 | | | | | | |
| 202:5 | 202:20 | | | | | | | |
| 203:4 | 203:20 | F, Sc | 202:21 | 203:3 | | | | |
| 203:23 | 204:4 | I | 203:21 | 203:22 | | | | |
| 204:13 | 205:5 | F, NT | | | | | | |
| 207:24 | 210:9 | F, NT, R, FRE 403 | | | | | | |
| 210:11 | 211:18 | | | | | | | |
| 212:3 | 212:8 | | | | | | | |
| 212:3 | 214:13 | F, R, FRE 403 | | | | | | |
| 216:1 | 216:6 | R, FRE 403 | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Angela Ryan** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 217:8 | 219:15 | | | | | | | |
| 220:8 | 220:18 | | | | | | | |
| 220:25 | 221:12 | F, NT, I | | | | | | |
| 221:18 | 221:24 | | | | | | | |
| 222:9 | 222:12 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Raed Samara** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 9:25 | 10:3 | | | | | | | |
| 10:18 | 11:4 | | | | | | | |
| 12:9 | 13:3 | | | | | | | |
| 13:7 | 13:23 | R | | | | | | |
| 14:21 | 15:3 | R | | | | | | |
| 15:10 | 15:17 | | | | | | | |
| 16:8 | 16:10 | R. LC | | | | | | |
| 16:25 | 17:4 | | | | | | | |
| 17:25 | 18:11 | | | | | | | |
| 19:21 | 20:6 | | | | | | | |
| 20:19 | 21:4 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Raed Samara** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 28:5 | 28:9 | | | | | | | |
| 29:11 | 29:22 | | | | | | | |
| 30:13 | 31:7 | NT, I | | | | | | |
| 32:16 | 32:18 | | | | | | | |
| 32:25 | 33:21 | R | | | | | | |
| 34:21 | 35:2 | R | | | | | | |
| 35:10 | 36:6 | | | | | | | |
| 38:5 | 38:7 | R | 38:8<br>39:5 | 38:16<br>39:12 | | | | |
| 39:22 | 39:24 | | | | | | | |
| 40:5 | 41:4 | | | | | | | |
| 41:16 | 42:6 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| Raed Samara | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 43:11 | 43:20 | NT, R | | | | | | |
| 44:3 | 45:6 | FN, R, FRE 602 | | | | | | |
| 46:5 | 46:16 | FN, R, FRE 602 | | | | | | |
| 47:7 | 48:11 | FN, R, FRE 602 | | | | | | |
| 48:15 | 49:10 | FN, R, FRE 602 | | | | | | |
| 49:16 | 49:18 | | | | | | | |
| 51:4 | 51:5 | F | | | | | | |
| 51:8 | 51:16 | F, MC | | | | | | |
| 51:24 | 52:7 | | | | | | | |
| 54:14 | 55:14 | | | | | | | |
| 57:15 | 57:23 | R, FRE 602 | 57:12 | 57:14 | | | | |

**Plaintiffs' Affirmative Designations**

| **Raed Samara** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 59:11 | 59:14 | | | | | | | |
| 59:21 | 60:24 | | | | | | | |
| 61:21 | 64:9 | NT | 64:10 | 64:16 | | | | |
| 65:25 | 67:11 | R, FRE 403, FRE 602 | | | | | | |
| 67:20 | 68:13 | R, FRE 403, FRE 602 | | | | | | |
| 68:15 | 69:18 | R, FRE 403, FRE 602 | | | | | | |
| 69:24 | 70:10 | R, FRE 403, FRE 602 | | | | | | |
| 70:20 | 71:10 | R, FRE 403 | | | | | | |
| 72:11 | 72:23 | R, FRE 403 | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Raed Samara** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 73:9 | 74:14 | R, FRE 403, FRE 602, H | | | | | | |
| 75:25 | 76:9 | R, FRE 403 | | | | | | |
| 78:11 | 78:13 | F, R, FRE 403 | | | | | | |
| 78:15 | 79:7 | F, R, FRE 403 | | | | | | |
| 79:9 | 79:16 | R, FRE 403 | | | | | | |
| 82:13 | 83:22 | F, R, FRE 403 | | | | | | |
| 83:24 | 84:6 | F, R, FRE 403 | | | | | | |
| 84:8 | 84:20 | F, R, FRE 403 | | | | | | |
| 85:2 | 85:7 | F, R, FRE 403 | | | | | | |
| 85:9 | 87:22 | R, FRE 403 | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Raed Samara** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 88:6 | 88:16 | F | | | | | | |
| 88:18 | 89:6 | F, R, FRE 403 | | | | | | |
| 90:9 | 91:6 | R, FRE 403 | | | | | | |
| 92:17 | 92:24 | | 92:25 | 93:6 | | | | |
| 94:5 | 95:17 | R, FRE 403, FRE 602 | 95:18 | 95:20 | | | | |
| 96:6 | 96:9 | R, FRE 403 | | | | | | |
| 97:16 | 98:12 | FRE 403, FRE 602 | 97:8 | 97:14 | | | | |
| 98:20 | 99:3 | FN, R, FRE 403, FRE 602 | | | | | | |
| 99:24 | 101:24 | F, NT, R, FRE 403, FRE 602 | | | | | | |

*ArcherDX, LLC et al v. Qiagen Sciences, LLC, et al*
Case No. 18-cv-1019-MN (USDC-DE)

**Plaintiffs' Affirmative Designations**

| **Raed Samara** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 102:1 | 102:15 | F, NT | | | | | | |
| 103:5 | 103:11 | R, FRE 403 | 103:12 | 103:13 | | 103:14 | 103:16 | |
| 103:17 | 105:2 | FRE 403, FRE 602 | | | | | | |
| 106:5 | 107:4 | R, FRE 403 | | | | | | |
| 113:15 | 114:3 | R, FRE 403 | | | | | | |
| 115:22 | 117:19 | R, FRE 403, FRE 602 | | | | | | |
| 118:12 | 118:25 | R, FRE 403 | | | | | | |
| 120:15 | 120:18 | F | | | | | | |
| 120:20 | 121:14 | F, R, FRE 403 | | | | | | |
| 124:18 | 124:23 | R, FRE 403 | 121:22<br>122:18 | 122:7<br>122:23 | | | | |

**Plaintiffs' Affirmative Designations**

| **Raed Samara** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 125:4 | 125:18 | | | | | | | |
| 127:5 | 127:16 | F, R, FRE 403 | | | | | | |
| 127:18 | 128:7 | F, R, FRE 403 | | | | | | |
| 128:9 | 128:14 | F, R, FRE 403 | | | | | | |
| 128:16 | 129:2 | | | | | | | |
| 129:16 | 129:20 | R, FRE 403 | | | | | | |
| 130:7 | 130:8 | F, R, FRE 403 | | | | | | |
| 130:10 | 131:12 | R, FRE 403 | | | | | | |
| 131:21 | 132:10 | R, FRE 403 | 132:12 | 132:19 | | | | |
| 133:9 | 133:16 | R, FRE 403 | | | | | | |
| 139:15 | 141:2 | R, FRE 403 | | | | | | |

**Plaintiffs' Affirmative Designations**

| Raed Samara | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 142:15 | 142:21 | R, FRE 403 | 142:22 | 142:24 | | | | |
| 144:12 | 144:15 | F, R, FRE 403, FRE 602, S | 143:25 | 144:11 | F; L; Spec | | | |
| 144:17 | 144:17 | F, R, FRE 403, FRE 602, S | | | | | | |
| 150:20 | 152:19 | R, FRE 403 | | | | | | |
| 152:24 | 153:7 | R, FRE 403 | 152:20 | 152:23 | | | | |
| 154:24 | 157:11 | | 153:16 | 154:23 | P; R | | | |
| 157:13 | 158:18 | F, S | | | | | | |
| 159:16 | 159:20 | S, FRE 602 | 159:11<br>159:14 | 159:12<br>159:15 | | | | |
| 159:22 | 159:25 | S, FRE 602 | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Raed Samara** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 160:11 | 164:14 | NT, R, FRE 403, FRE 602 | | | | | | |
| 164:17 | 164:24 | R, FRE 403, FRE 602 | 164:25 | 165:7 | | | | |
| 165:8 | 167:8 | FRE 602 | 167:9 | 167:10 | | | | |
| 167:23 | 167:24 | F, FN | | | | | | |
| 168:1 | 168:6 | | | | | | | |
| 168:21 | 169:19 | R, FRE 403 | 169:20 | 169:23 | | | | |
| 169:24 | 170:7 | | 169:20 | 169:23 | | | | |
| 170:9 | 172:13 | F, R, FRE 403 | | | | | | |
| 172:16 | 174:10 | R, FRE 403 | | | | | | |
| 174:12 | 175:8 | F, | 175:9 | 175:11 | R | | | |

**Plaintiffs' Affirmative Designations**

| Raed Samara | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 175:16 | 175:16 | | | | | | | |
| 176:3 | 178:5 | R, FRE 403 | | | | | | |
| 178:7 | 178:7 | | | | | | | |
| 178:22 | 180:5 | R, FRE 403 | | | | | | |
| 181:16 | 182:24 | FRE 403 | | | | | | |
| 183:23 | 185:24 | NT | | | | | | |
| 186:9 | 188:3 | R, FRE 403 | | | | | | |
| 189:3 | 189:8 | | | | | | | |
| 189:14 | 190:3 | | | | | | | |
| 190:24 | 191:23 | | | | | | | |
| 192:4 | 192:6 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| Raed Samara | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 192:8 | 192:8 | | | | | | | |
| 192:12 | 193:2 | | | | | | | |
| 193:4 | 193:13 | | | | | | | |
| 194:9 | 194:19 | R, FRE 403 | | | | | | |
| 195:10 | 195:19 | | | | | | | |
| 195:25 | 196:5 | | | | | | | |
| 196:10 | 196:19 | FN | | | | | | |
| 196:21 | 196:21 | FN | | | | | | |
| 197:5 | 198:9 | I, NT | 198:11 | 198:14 | | | | |
| 198:15 | 199:10 | | 198:11 | 198:14 | | | | |
| 200:9 | 200:25 | I, NT | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Raed Samara** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 201:3 | 201:12 | FRE 403 | | | | | | |
| 201:19 | 202:4 | R, FRE 403 | | | | | | |
| 202:6 | 203:9 | FN, R, FRE 403 | | | | | | |
| 203:11 | 204:3 | FN, R, FRE 403 | | | | | | |
| 204:12 | 205:2 | FN | | | | | | |
| 205:4 | 205:4 | FN | | | | | | |
| 206:7 | 207:4 | R, FRE 403 | | | | | | |
| 208:20 | 210:12 | FN, H, FRE 602 | | | | | | |
| 210:20 | 211:9 | | | | | | | |
| 211:22 | 212:2 | F, FN | | | | | | |
| 212:10 | 214:17 | | 214:18 | 214:25 | | | | |

**Plaintiffs' Affirmative Designations**

| **Raed Samara** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 215:9 | 215:11 | FN, S | | | | | | |
| 215:13 | 215:19 | FN, S | | | | | | |
| 216:2 | 216:8 | | 216:9 | 216:14 | | | | |
| 216:15 | 216:19 | | 217:5 | 217:10 | PK | 217:11 | 218:7 | R, FRE 403 |
| 218:9 | 218:12 | | | | | | | |
| 218:18 | 218:21 | | | | | | | |
| 219:13 | 220:2 | | 220:4 | 220:5 | | | | |
| 222:8 | 223:7 | FN, NT, R, FRE 403, FRE 602 | 224:24 | 225:5 | PK | | | |
| 223:9 | 223:14 | R, FRE 403 | 224:4 | 225:5 | PK | | | |
| 223:18 | 223:22 | R, FRE 403 | 224:4 | 225:5 | PK | | | |
| 224:4 | 224:7 | R, FRE 403 | 224:4 | 225:5 | PK | | | |

*ArcherDX, LLC et al v. Qiagen Sciences, LLC, et al*
Case No. 18-cv-1019-MN (USDC-DE)

**Plaintiffs' Affirmative Designations**

| Raed Samara | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 225:22 | 226:13 | | 226:14 | 227:7 | PK | 227:8 | 227:13 | R, FRE 403, FRE 602 |
| 227:14 | 228:6 | | | | | | | |
| 228:12 | 228:14 | | | | | | | |
| 228:18 | 230:10 | R, FRE 403 | 231:11 | 231:13 | | 231:6<br>231:25 | 231:10<br>232:5 | R, FRE 403 |
| 232:21 | 235:20 | NT, R, FRE 403 | 235:21 | 236:3 | | | | |
| 236:4 | 236:9 | R, FRE 403 | 235:21 | 236:3 | | | | |
| 236:24 | 237:5 | I, R, FRE 403 | 235:12<br>237:6 | 235:23<br>237:9 | | | | |
| 237:10 | 237:22 | | | | | | | |
| 238:9 | 238:23 | R, FRE 403 | | | | | | |

**Plaintiffs' Affirmative Designations**

| Raed Samara | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 239:11 | 240:5 | R, FRE 403 | | | | | | |
| 240:25 | 241:9 | R, FRE 403 | | | | | | |
| 241:23 | 242:23 | R, FRE 403 | | | | | | |
| 243:4 | 243:9 | R, FRE 403 | | | | | | |
| 243:13 | 246:12 | H, NT, R, FRE 403; FRE 602 | 246:13 | 246:16 | | | | |
| 243:13 | 246:12 | H, NT, R, FRE 403; FRE 602 (duplicate) | 246:13 | 246:16 | | | | |
| 246:19 | 246:23 | H, R, FRE 403 | | | | | | |
| 247:4 | 248:2 | FN, H, R, FRE 403 | | | | | | |
| 248:9 | 248:17 | FN, R, FRE 403 | | | | | | |
| 248:25 | 249:10 | FN, R, FRE 403 | | | | | | |

**Plaintiffs' Affirmative Designations**

| Raed Samara | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 249:16 | 250:14 | FN, R, FRE 403, S, FRE 602 | | | | | | |
| 250:16 | 250:17 | FN, R, FRE 403, S, FRE 602 | | | | | | |
| 251:3 | 251:24 | R, FRE 403 | | | | | | |
| 252:6 | 252:19 | | | | | | | |
| 253:18 | 254:16 | H, R, FRE 403 | | | | | | |
| 254:23 | 255:8 | H, R, FRE 403 | | | | | | |
| 255:14 | 256:6 | | | | | | | |
| 256:12 | 257:17 | R, FRE 403 | 257:19 | 257:20 | | | | |
| 257:21 | 258:6 | | | | | | | |
| 259:11 | 259:12 | R, FRE 403 | | | | | | |

**Plaintiffs' Affirmative Designations**

| Raed Samara | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 259:14 | 260:2 | R, FRE 403 | | | | | | |
| 260:5 | 260:7 | | | | | | | |
| 260:17 | 261:15 | R, FRE 403 | | | | | | |
| 261:17 | 261:18 | R, FRE 403 | | | | | | |
| 261:20 | 263:2 | R, FRE 403 | | | | | | |
| 263:4 | 263:11 | | | | | | | |
| 263:13 | 265:24 | | | | | | | |
| 266:1 | 266:5 | FN, R, FRE 403, O | | | | | | |
| 266:7 | 266:21 | FN, R, FRE 403, O | | | | | | |
| 266:25 | 268:9 | | | | | | | |
| 268:24 | 269:6 | | 268:10 | 268:23 | | | | |

**Plaintiffs' Affirmative Designations**

| Raed Samara | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 269:25 | 270:21 | | | | | | | |
| 272:5 | 272:16 | R, FRE 403 | | | | | | |
| 272:22 | 273:6 | R, FRE 403 | | | | | | |
| 273:12 | 274:6 | R, FRE 403 | | | | | | |
| 274:13 | 276:21 | R, FRE 403 | | | | | | |
| 277:13 | 277:24 | R, FRE 403 | | | | | | |
| 278:3 | 278:12 | NT, R, FRE 403 | | | | | | |
| 279:7 | 280:2 | R, FRE 403 | | | | | | |
| 280:6 | 280:21 | R, FRE 403 | | | | | | |
| 281:25 | 282:5 | | | | | | | |
| 282:12 | 283:19 | R, FRE 403 | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Raed Samara** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 283:23 | 284:9 | R, FRE 403 | | | | | | |
| 284:17 | 285:24 | | | | | | | |
| 286:6 | 286:18 | R, FRE 403 | | | | | | |
| 286:24 | 287:11 | R, FRE 403 | | | | | | |
| 287:14 | 288:10 | FN, R, FRE 403 | | | | | | |
| 288:15 | 288:25 | R, FRE 403 | | | | | | |
| 289:8 | 289:22 | FN, R, FRE 403, FRE 602 | | | | | | |
| 290:4 | 290:6 | | | | | | | |
| 290:13 | 290:18 | | 290:19 | 290:22 | | | | |
| 290:23 | 291:12 | | 291:13 | 291:18 | O; P; PK | | | |

**Plaintiffs' Affirmative Designations**

| **Raed Samara** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 291:24 | 292:4 | R, FRE 403 | | | | | | |
| 292:12 | 293:13 | R, FRE 403 | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Song Tian** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 9:11 | 9:17 | | 10:11<br>12:16 | 10:12<br>12:18 | | | | |
| 9:21 | 10:4 | | | | | | | |
| 13:18 | 14:15 | | | | | | | |
| 15:3 | 15:7 | | 14:24 | 15:2 | | | | |
| 17:11 | 17:20 | Sc | 16:21 | 16:25 | AT; NT; I | | | |
| 18:2 | 18:8 | | 18:9 | 19:18 | | | | |
| 19:19 | 19:21 | | 19:22 | 19:24 | | | | |
| 20:18 | 20:22 | | 20:23 | 21:15 | | | | |
| 21:16 | 21:20 | | 21:21 | 22:9 | | | | |
| 22:11 | 23:20 | AF | | | | | | |
| 24:3 | 24:13 | | 24:25 | 25:25 | | | | |

**Plaintiffs' Affirmative Designations**

| Song Tian | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 26:2 | 27:14 | | | | | | | |
| 31:20 | 33:21 | | | | | | | |
| 34:23 | 34:24 | | | | | | | |
| 36:15 | 37:4 | | 35:24 | 36:8 | | 36:9 | 36:14 | AF, LD, MC |
| 37:15 | 38:3 | | 37:4 | 37:14 | | | | |
| 38:5 | 38:10 | | 38:12 | 39:12 | | | | |
| 39:13 | 40:2 | | 40:3 | 40:20 | | | | |
| 46:12 | 46:20 | | 45:21 | 46:11 | | | | |
| 50:8 | 50:15 | | | | | | | |
| 51:3 | 51:5 | AF, MC | | | | | | |
| 51:7 | 51:13 | FRE 403, R | | | | | | |

**Plaintiffs' Affirmative Designations**

| Song Tian | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 52:13 | 52:14 | | | | | | | |
| 52:22 | 54:20 | | | | | | | |
| 55:2 | 55:25 | | | | | | | |
| 69:7 | 69:17 | | | | | | | |
| 72:7 | 72:12 | | | | | | | |
| 77:18 | 79:17 | | | | | | | |
| 80:4 | 80:25 | | 81:2 | 81:19 | | | | |
| 86:10 | 87:6 | | | | | | | |
| 93:20 | 98:14 | | | | | | | |
| 98:22 | 101:14 | | | | | | | |
| 101:19 | 102:15 | | | | | | | |

*ArcherDX, LLC et al v. Qiagen Sciences, LLC, et al*
Case No. 18-cv-1019-MN (USDC-DE)

**Plaintiffs' Affirmative Designations**

| **Song Tian** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 103:18 | 108:17 | | | | | | | |
| 109:17 | 110:8 | | | | | | | |
| 110:15 | 111:14 | | 111:15 | 112:2 | | | | |
| 112:7 | 115:2 | | | | | | | |
| 115:9 | 116:9 | | 116:14 | 116:19 | | | | |
| 117:7 | 117:15 | | | | | | | |
| 117:19 | 118:7 | | 118:8 | 118:16 | | | | |
| 118:17 | 119:15 | | 119:16 | 120:4 | | | | |
| 120:5 | 123:25 | | 124:2<br>124:7<br>124:16 | 124:2<br>124:14<br>125:5 | | | | |
| 125:13 | 125:21 | | | | | | | |
| 125:24 | 126:15 | FRE 403 | 126:19 | 126:25 | | | | |

**Plaintiffs' Affirmative Designations**

| Song Tian | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 132:18 | 133:2 | FRE 403, R | | | | | | |
| 143:5 | 143:6 | | | | | | | |
| 143:15 | 143:23 | FRE 403(a) 611 | | | | | | |
| 144:5 | 144:7 | 403(a) 611 | | | | | | |
| 144:9 | 144:13 | | | | | | | |
| 144:19 | 145:7 | F, FN | | | | | | |
| 148:16 | 148:18 | | | | | | | |
| 149:3 | 149:5 | | 149:16 | 149:18 | | | | |
| 149:23 | 149:25 | Priv | 149:16 | 149:18 | | | | |
| 150:3 | 151:25 | | | | | | | |
| 152:8 | 153:3 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| Song Tian | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 154:21 | 156:4 | | 156:5 | 156:5 | | | | |
| 156:6 (1) | 158:14 | FRE 403(a), FRE 611(a) | | | | | | |
| 158:16 | 158:17 | | | | | | | |
| 160:9 | 161:16 | | | | | | | |
| 161:18 | 161:21 | | | | | | | |
| 162:21 | 163:11 | | | | | | | |
| 163:13 | 163:20 | | | | | | | |
| 163:25 | 164:6 | | | | | | | |
| 164:8 | 164:14 | | | | | | | |
| 164:16 | 164:22 | Priv | 164:23 | 165:2 | | | | |
| 165:10 | 165:17 | | | | | | | |

*ArcherDX, LLC et al v. Qiagen Sciences, LLC, et al*
Case No. 18-cv-1019-MN (USDC-DE)

**Plaintiffs' Affirmative Designations**

| **Song Tian** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 165:24 | 166:19 | | 166:20 | 167:12 | | | | |
| 167:13 | 168:20 | | 168:21 | 169:3 | | | | |
| 169:4 | 169:19 | | | | | | | |
| 176:6 | 176:22 | | | | | | | |
| 177:2 | 177:16 | | 176:23 | 176:25 | | | | |
| 184:15 | 184:18 | | | | | | | |
| 185:24 | 186:2 | | | | | | | |
| 188:2 | 188:14 | | 188:15 | 189:12 | | | | |
| 190:19 | 190:23 | | | | | | | |
| 211:14 | 212:17 | | | | | | | |
| 215:16 | 217:12 | FRE 403, R | | | | | | |

**Plaintiffs' Affirmative Designations**

| Song Tian | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 218:6 | 218:21 | FRE 403, R | | | | | | |
| 218:23 | 219:4 | FRE 403, R | | | | | | |
| 220:12 | 221:17 | | | | | | | |
| 224:2 | 224:15 | | | | | | | |
| 224:20 | 225:10 | | | | | | | |
| 225:11 | 226:12 | | | | | | | |
| 226:16 | 227:24 | | 229:11 | 229:25 | | | | |
| 230:3 | 230:24 | | | | | | | |
| 231:4 | 231:14 | | | | | | | |
| 232:2 | 234:18 | FRE 403, R | | | | | | |
| 235:6 | 235:8 | FRE 602, S | | | | | | |

**Plaintiffs' Affirmative Designations**

| Song Tian | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 235:10 | 235:13 | | | | | | | |
| 237:12 | 240:10 | | | | | | | |
| 240:15 | 241:24 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Lesley Tomlin** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 4:20 | 5:2 | | 4:9 | 4:11 | | | | |
| 7:1 | 7:4 | | | | | | | |
| 8:3 | 8:9 | | | | | | | |
| 10:20 | 10:24 | R, FRE 403 | | | | | | |
| 16:4 | 16:16 | R, FRE 403 | | | | | | |
| 19:18 | 19:22 | R, FRE 403 | | | | | | |
| 20:8 | 20:10 | F | | | | | | |
| 27:7 | 27:15 | | | | | | | |
| 28:2 | 28:5 | | | | | | | |
| 28:14 | 28:19 | | | | | | | |
| 28:23 | 29:16 | R, FRE 403 | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Lesley Tomlin** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 29:20 | 29:25 | | | | | | | |
| 30:1 | 30:11 | | | | | | | |
| 30:15 | 32:2 | R, FRE 403 | | | | | | |
| 32:17 | 32:22 | | | | | | | |
| 33:3 | 35:9 | R, FRE 403 | 35:22<br>36:2 | 35:25<br>36:2 | | | | |
| 36:3 | 36:5 | | | | | | | |
| 36:24 | 37:2 | | | | | | | |
| 37:12 | 37:17 | | | | | | | |
| 37:23 | 38:4 | F, NT | | | | | | |
| 38:17 | 39:7 | NT | | | | | | |
| 40:9 | 40:21 | NT | | | | | | |

*ArcherDX, LLC et al v. Qiagen Sciences, LLC, et al*
Case No. 18-cv-1019-MN (USDC-DE)

**Plaintiffs' Affirmative Designations**

| **Lesley Tomlin** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 41:4 | 41:9 | | 41:13 | 42:4 | | 28:2<br>28:14 | 28:5<br>28:19 | |
| 46:15 | 46:21 | | | | | | | |
| 47:16 | 48:18 | NT | | | | | | |
| 51:20 | 52:10 | R, FRE 403 | | | | | | |
| 53:3 | 53:8 | R, FRE 403 | | | | | | |
| 53:19 | 53:25 | R, FRE 403 | | | | | | |
| 55:1 | 55:13 | R, FRE 403 | | | | | | |
| 58:10 | 59:6 | NT, | 59:1 | 59:2 | | | | |
| 59:18 | 59:22 | F, NT | 60:16<br>60:20 | 60:18<br>60:23 | | | | |
| 60:2 | 60:8 | F, NT, R, FRE 403 | 60:16<br>60:20 | 60:18<br>60:23 | | | | |

**Plaintiffs' Affirmative Designations**

| **Lesley Tomlin** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 61:7 | 62:8 | F, NT | 62:9 | 62:12 | | | | |
| 63:12 | 63:20 | | 63:21 | 64:3 | | | | |
| 65:2 | 65:12 | NT, R, FRE 403 | | | | | | |
| 68:14 | 68:18 | | 68:12<br>68:19 | 68:13<br>68:22 | | | | |
| 69:17 | 69:25 | | | | | | | |
| 70:1 | 71:4 | FN, I, R, FRE 403, FRE 602 | 71:6 | 71:8 | | | | |
| 71:14 | 72:3 | NT | | | | | | |
| 72:8 | 72:13 | | | | | | | |
| 72:22 | 73:8 | F, FN | | | | | | |
| 73:13 | 73:22 | NT | | | | | | |
| 74:15 | 74:19 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Lesley Tomlin** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 75:6 | 75:23 | R, FRE 403 | | | | | | |
| 76:2 | 76:7 | R, FRE 403 | | | | | | |
| 76:8 | 76:22 | | | | | | | |
| 77:12 | 79:15 | F, NT | 79:16 | 80:9 | | | | |
| 80:10 | 80:14 | | 79:16 | 80:9 | | | | |
| 80:17 | 80:23 | NT | | | | | | |
| 81:3 | 81:21 | NT | | | | | | |
| 84:5 | 84:21 | | | | | | | |
| 85:5 | 85:16 | I | 85:17 | 85:25 | | | | |
| 87:2 | 87:23 | | 87:24 | 88:2 | | | | |
| 88:13 | 88:21 | | 88:3<br>88:8 | 88:4<br>88:12 | I; R; P | | | |

**Plaintiffs' Affirmative Designations**

| **Lesley Tomlin** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 89:3 | 89:10 | NT | | | | | | |
| 89:21 | 89:25 | AF, F | 90:1 | 90:8 | R | 87:19<br><br>87:23 | 87:21<br><br>87:23 | |
| 90:14 | 90:17 | R | | | | | | |
| 93:19 | 94:24 | F, NT | | | | | | |
| 96:9 | 96:21 | FN, R, FRE 403, S, FRE 602 | 96:22 | 96:24 | C | | | |
| 97:1 | 97:3 | | | | | | | |
| 97:10 | 97:14 | | 97:15<br>97:17 | 97:15<br>97:22 | | | | |
| 97:23 | 99:16 | F, NT, | 99:17<br>99:20 | 99:18<br>99:23 | R | | | |
| 100:9 | 100:13 | | 100:14<br>100:18 | 100:16<br>100:18 | | | | |
| 100:19 | 103:13 | NT, R, FRE 403 | 103:14 | 103:16 | | | | |

**Plaintiffs' Affirmative Designations**

| Lesley Tomlin | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 104:23 | 105:3 | | 103:14 | 103:16 | | | | |
| 107:19 | 109:13 | | 110:10 | 110:14 | | | | |
| 110:15 | 112:17 | | | | | | | |
| 113:2 | 113:11 | | | | | | | |
| 113:16 | 114:9 | | | | | | | |
| 115:12 | 115:17 | | 114:17<br>115:18 | 115:11<br>115:23 | H; P | | | |
| 117:5 | 118:13 | R, FRE 403 | | | | | | |
| 118:20 | 118:22 | | | | | | | |
| 119:20 | 120:4 | | | | | | | |
| 120:25 | 125:14 | F, NT, R, FRE 403, FRE 602 | | | | | | |
| 125:19 | 126:16 | NT, FRE 403 | | | | | | |

*ArcherDX, LLC et al v. Qiagen Sciences, LLC, et al*
Case No. 18-cv-1019-MN (USDC-DE)

**Plaintiffs' Affirmative Designations**

| **Lesley Tomlin** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 129:23 | 130:4 | | | | | | | |
| 131:4 | 131:22 | F, FN, NT, FRE 403 | | | | | | |
| 132:2 | 132:14 | | | | | | | |
| 132:18 | 132:24 | | | | | | | |
| 133:9 | 133:12 | F, FN | 133:14 | 133:16 | | 133:17 | 133:22 | |
| 133:23 | 134:4 | F, FN | | | | | | |
| 135:15 | 136:7 | | | | | | | |
| 136:10 | 136:16 | R, FRE 403 | | | | | | |
| 137:3 | 137:16 | FN, R, FRE 403, FRE 602 | 137:17 | 137:21 | | | | |
| 137:22 | 138:12 | | 137:17 | 137:21 | | | | |

**Plaintiffs' Affirmative Designations**

| **Lesley Tomlin** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 140:13 | 141:24 | R, FRE 403 | 141:25 | 142:3 | | | | |
| 142:4 | 143:11 | NT, R, FRE 403 | | | | | | |
| 145:5 | 147:16 | FN, R, FRE 403, FRE 602 | 147:17 | 147:22 | | | | |
| 147:23 | 148:6 | R, FRE 403, FRE 602 | 147:17 | 147:22 | | | | |
| 148:12 | 149:1 | R, FRE 403, FRE 602 | 148:8 | 148:11 | | | | |
| 149:20 | 150:3 | NT | 150:4 | 150:16 | | | | |
| 151:2 | 154:19 | F, H, R, FRE 403, FRE 602, NT | | | | | | |

**Defendants' Objections & Counter-Designations**

| **Yexun Wang** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 5:24 | 6:5 | | 5:3<br>5:17<br>6:6<br>7:2 | 5:4<br>5:21<br>6:8<br>7:4 | NT<br>NT<br><br>R | | | |
| 6:23 | 6:25 | | | | | | | |
| 7:21 | 7:25 | | | | | | | |
| 8:12 | 9:3 | F, AF, Sc | | | | | | |
| 9:12 | 10:4 | F, AF, Sc | | | | | | |
| 10:12 | 10:16 | F, AF, Sc | | | | | | |
| 11:23 | 12:2 | | | | | | | |
| 12:16 | 15:15 | | | | | | | |
| 15:17 | 16:9 | | | | | | | |
| 16:15 | 17:24 | | | | | | | |

**Defendants' Objections & Counter-Designations**

| Yexun Wang | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 18:4 | 22:14 | | | | | | | |
| 22:22 | 29:13 | | | | | | | |
| 29:16 | 29:19 | | | | | | | |
| 30:2 | 30:4 | | | | | | | |
| 30:6 | 31:5 | | | | | | | |
| 31:16 | 32:2 | | | | | | | |
| 32:4 | 32:16 | | | | | | | |
| 32:18 | 32:23 | | | | | | | |
| 32:25 | 33:13 | | | | | | | |
| 33:15 | 33:17 | | | | | | | |
| 33:19 | 33:21 | FRE 611(a); | | | | | | |

**Defendants' Objections & Counter-Designations**

| Yexun Wang | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 33:23 | 33:25 | LC, FRE 611(a) | 34:2 | 34:7 | In; R | | | |
| 34:8 | 34:12 | | | | | | | |
| 34:15 | 34:17 | | | | | | | |
| 34:19 | 34:25 | | | | | | | |
| 35:23 | 37:5 | FRE 611(a) R 403 | | | | | | |
| 37:8 | 38:3 | | | | | | | |
| 38:5 | 40:2 | | | | | | | |
| 40:7 | 40:9 | | | | | | | |
| 40:11 | 40:15 | | | | | | | |
| 40:17 | 40:22 | CP, FRE 611(a) | | | | | | |
| 40:24 | 41:5 | | | | | | | |

**Defendants' Objections & Counter-Designations**

| **Yexun Wang** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 41:7 | 42:3 | | 42:6 | 43:21 | R; P; AT; L; Spec; NR | | | |
| 43:22 | 45:25 | | | | | | | |
| 46:3 | 46:16 | | 46:17 | 46:18 | R | | | |
| 46:21 | 47:4 | | 47:5 | 47:5 | NT; R | | | |
| 47:6 | 47:7 | | | | | | | |
| 47:9 | 47:14 | | | | | | | |
| 47:16 | 47:22 | | 47:23<br>48:23 | 48:15<br>49:2 | L; R; Spec; P<br>L; R; P; IC | 48:16<br>48:21 | 48:19<br>48:22 | R |
| 49:3 | 50:14 | Sc | | | | | | |
| 50:16 | 50:22 | | | | | | | |
| 50:24 | 51:23 | | | | | | | |
| 51:25 | 52:8 | | | | | | | |

**Defendants' Objections & Counter-Designations**

| Yexun Wang | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 52:10 | 52:25 | | | | | | | |
| 53:3 | 53:10 | LC | 53:11 | 53:13 | AT; NT; R; P | | | |
| 53:14 | 55:16 | | | | | | | |
| 55:18 | 56:3 | | | | | | | |
| 56:5 | 56:5 | | | | | | | |
| 56:10 | 56:17 | FRE 602, S | | | | | | |
| 56:19 | 57:7 | | | | | | | |
| 57:9 | 57:21 | FRE 602, S | | | | | | |
| 57:23 | 58:2 | | | | | | | |
| 58:4 | 59:16 | | | | | | | |
| 59:18 | 60:11 | | | | | | | |

**Defendants' Objections & Counter-Designations**

| **Yexun Wang** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 60:14 | 61:7 | | | | | | | |
| 61:22 | 62:18 | | | | | | | |
| 62:20 | 63:2 | | | | | | | |
| 63:4 | 63:12 | | | | | | | |
| 63:14 | 63:20 | | | | | | | |
| 63:22 | 64:3 | | 64:4<br>64:25 | 64:13<br>65:10 | AT; L; Spec; R; P<br>AT; R; IC | 64:14<br>64:17 | 64:15<br>64:19 | R, S, Sc, FRE 403 |
| 66:6 | 67:2 | | | | | | | |
| 67:4 | 67:9 | | | | | | | |
| 67:11 | 67:12 | | 67:13<br>67:18 | 67:16<br>68:5 | L; R; P<br>L; R; P | | | |
| 68:6 | 68:16 | | 68:17 | 68:22 | L; R | | | |
| 69:14 | 70:3 | | | | | | | |

**Defendants' Objections & Counter-Designations**

| **Yexun Wang** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 70:5 | 71:5 | LC, O | | | | | | |
| 71:18 | 71:24 | S, FRE 602 | | | | | | |
| 72:2 | 72:10 | | | | | | | |
| 72:12 | 72:16 | | | | | | | |
| 73:2 | 73:18 | | | | | | | |
| 73:22 | 74:12 | | | | | | | |
| 74:14 | 74:22 | S, FRE 602 | | | | | | |
| 74:24 | 74:25 | | | | | | | |
| 75:11 | 75:21 | | | | | | | |
| 75:23 | 76:7 | S, FRE 602 | | | | | | |
| 76:17 | 77:14 | | | | | | | |

**Defendants' Objections & Counter-Designations**

| Yexun Wang | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 77:16 | 78:3 | S, FRE 602 | | | | | | |
| 78:5 | 79:4 | S, FRE 602 | | | | | | |
| 82:19 | 83:25 | | | | | | | |
| 85:8 | 85:15 | | 85:15 | 85:24 | AT; Spec; R | | | |
| 86:20 | 87:2 | | 87:3 | 87:5 | L | | | |
| 87:16 | 88:6 | | | | | | | |
| 88:19 | 88:22 | | | | | | | |
| 89:7 | 89:12 | | | | | | | |
| 93:25 | 94:15 | | | | | | | |
| 94:24 | 95:10 | | | | | | | |
| 96:14 | 97:20 | | | | | | | |

**Defendants' Objections & Counter-Designations**

| **Yexun Wang** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 97:22 | 98:16 | | | | | | | |
| 116:6 | 116:11 | | | | | | | |
| 116:21 | 117:2 | | | | | | | |
| 117:5 | 117:23 | | | | | | | |
| 117:25 | 120:10 | | | | | | | |
| 120:12 | 120:19 | | | | | | | |
| 120:22 | 120:25 | | | | | | | |
| 121:21 | 121:22 | | | | | | | |
| 121:24 | 121:25 | | 122:2 | 122:6 | L; NR; IC | 122:7<br>122:12 | 122:10<br>122:24 | MC, S, R, FRE 403 |
| 124:3 | 125:10 | R, 403 | | | | | | |
| 125:12 | 126:23 | | | | | | | |

**Defendants' Objections & Counter-Designations**

| **Yexun Wang** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 126:25 | 127:4 | | 127:5 | 127:12 | AT; L; Spec; R; P; IC | 127:13 | 127:21 | R, FRE 403 |
| 128:3 | 128:20 | | | | | | | |
| 128:22 | 132:16 | | | | | | | |
| 133:24 | 134:11 | | | | | | | |
| 134:13 | 135:2 | | 135:3<br>136:21 | 136:19<br>137:5 | Spec; AT; L; P; R<br>L; R; P; Spec; NR | | | |
| 137:6 | 137:9 | | 137:10 | 137:14 | R; P | 137:16<br>137:19<br>138:13 | 137:17<br>137:22<br>138:15 | R, FRE 403, S, I |
| 138:18 | 139:3 | | 139:9<br>139:18 | 139:16<br>139:19 | L; Spec; P; R<br>L; Spec; P; R | 139:17 | 139:17 | |
| 142:6 | 142:13 | | | | | | | |
| 149:19 | 150:2 | | 150:3 | 150:3 | R | | | |
| 150:5 | 150:21 | | | | | | | |

**Defendants' Objections & Counter-Designations**

| **Yexun Wang** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 151:5 | 152:18 | | | | | | | |
| 153:11 | 151:16 | | | | | | | |
| 151:18 | 152:18 | | | | | | | |
| 153:11 | 153:17 | Arg, R, 403 | | | | | | |
| 153:19 | 154:6 | Arg, R, 403 | | | | | | |
| 154:25 | 156:18 | | | | | | | |
| 156:20 | 157:2 | | | | | | | |
| 157:8 | 157:16 | | 159:12<br>159:17 | 159:15<br>160:7 | L; Spec; R<br>AT; L; Spec; R | 160:21 | 160:24 | R, FRE 403, S, I |
| 162:25 | 164:9 | | 164:10 | 164:12 | R | | | |
| 165:6 | 165:24 | | 166:5 | 166:8 | R; IC | 165:25 | 166:4 | |
| 166:9 | 167:3 | | 167:4 | 167:9 | R; NR | | | |

**Defendants' Objections & Counter-Designations**

| Yexun Wang | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 167:14 | 167:17 | | | | | | | |
| 167:19 | 167:19 | FRE 611(a) | | | | | | |
| 168:21 | 169:9 | | | | | | | |
| 170:10 | 170:12 | | | | | | | |
| 170:14 | 170:21 | | | | | | | |
| 173:18 | 175:17 | | | | | | | |
| 175:19 | 175:24 | | | | | | | |
| 176:2 | 176:11 | | | | | | | |
| 176:13 | 176:24 | | | | | | | |
| 179:20 | 179:23 | | | | | | | |
| 179:25 | 180:3 | | | | | | | |

**Defendants' Objections & Counter-Designations**

| Yexun Wang | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 180:5 | 181:4 | | | | | | | |
| 181:17 | 181:22 | | | | | | | |
| 181:25 | 182:5 | | 182:6 | 182:18 | R; P | | | |
| 183:15 | 184:18 | | | | | | | |
| | | | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Zhong Wu** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 5:8 | 5:10 | | | | | | | |
| 6:9 | 7:2 | | 7:3<br>8:19<br>11:20<br>12:13 | 7:5<br>9:11<br>12:8<br>13:11 | | 13:12 | 14:5 | R |
| 14:6 | 14:15 | | 14:16 | 14:21 | | | | |
| 15:21 | 16:5 | | 16:13 | 16:23 | | 16:24 | 17:3 | R |
| 25:5 | 25:6 | | | | | | | |
| 25:10 | 25:20 | | | | | | | |
| 26:24 | 27:12 | | 27:12 | 27:17 | | | | |
| 27:18 | 29:4 | | 29:5<br>29:15 | 29:9<br>29:19 | | | | |
| 30:3 | 30:10 | | | | | | | |
| 30:17 | 30:18 | FRE 602, R, FRE 403 | 30:19 | 30:19 | AT | | | |

*ArcherDX, LLC et al v. Qiagen Sciences, LLC, et al*
Case No. 18-cv-1019-MN (USDC-DE)

**Plaintiffs' Affirmative Designations**

| **Zhong Wu** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 30:20 | 30:24 | FRE 602, R, FRE 403 | | | | | | |
| 31:5 | 31:15 | | | | | | | |
| 36:20 | 37:19 | | 37:20 | 38:19 | L | | | |
| 40:12 | 40:17 | FRE 602 | 40:17 | 40:17 | | | | |
| 44:21 | 45:5 | | 45:6 | 45:14 | | | | |
| 45:17 | 45:25 | | | | | | | |
| 49:6 | 49:8 | | | | | | | |
| 49:12 | 49:25 | | | | | | | |
| 50:17 | 51:15 | | | | | | | |
| 54:6 | 56:6 | | | | | | | |
| 56:21 | 57:9 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| Zhong Wu | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 59:20 | 59:25 | | | | | | | |
| 60:12 | 60:13 | | | | | | | |
| 60:19 | 64:25 | FRE 403, R | | | | | | |
| 69:23 | 70:12 | | | | | | | |
| 70:18 | 70:21 | | | | | | | |
| 71:2 | 71:13 | | | | | | | |
| 71:15 | 72:12 | FRE 602, AF, FN, S | 72:13 | 72:13 | | | | |
| 72:14 | 72:17 | | | | | | | |
| 75:3 | 75:16 | | | | | | | |
| 75:19 | 76:14 | | | | | | | |
| 88:10 | 89:8 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| **Zhong Wu** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 90:5 | 90:16 | | | | | | | |
| 103:3 | 103:11 | | | | | | | |
| 105:10 | 105:18 | | | | | | | |
| 106:5 | 107:3 | FRE 403, R | | | | | | |
| 120:7 | 121:11 | | | | | | | |
| 121:13 | 121:19 | FRE 403, R | | | | | | |
| 122:4 | 122:6 | | | | | | | |
| 122:8 | 123:3 | | | | | | | |
| 123:5 | 123:16 | | | | | | | |
| 123:23 | 124:14 | | | | | | | |
| 125:21 | 126:17 | | | | | | | |
| 126:19 | 127:11 | | 227:4 | 227:11 | | | | |

**Plaintiffs' Affirmative Designations**

| Zhong Wu | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 128:15 | 128:24 | | | | | | | |
| 129:2 | 129:21 | | 129:22<br>227:4 | 129:22<br>227:11 | | | | |
| 129:23 | 130:14 | AF, MC | 227:4 | 227:11 | | | | |
| 130:16 | 131:6 | | | | | | | |
| 131:8 | 131:17 | | | | | | | |
| 131:19 | 131:23 | | | | | | | |
| 131:25 | 133:16 | | | | | | | |
| 133:25 | 134:4 | | | | | | | |
| 134:6 | 134:17 | AF, FRE 608, FRE 611 | | | | | | |
| 134:19 | 135:11 | | | | | | | |
| 135:13 | 135:17 | LC | | | | | | |

*ArcherDX, LLC et al v. Qiagen Sciences, LLC, et al*
Case No. 18-cv-1019-MN (USDC-DE)

**Plaintiffs' Affirmative Designations**

| **Zhong Wu** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 135:19 | 136:3 | | 136:4<br>136:12 | 136:8<br>136:20 | | | | |
| 136:25 | 137:6 | | | | | | | |
| 137:9 | 137:10 | | | | | | | |
| 137:14 | 138:4 | | | | | | | |
| 138:17 | 138:19 | | | | | | | |
| 138:21 | 140:22 | FRE 403, R | | | | | | |
| 140:24 | 141:3 | | 141:6 | 141:16 | | | | |
| 141:5 | 141:5 | | 141:6 | 141:16 | | | | |
| 141:20 | 142:9 | AF, F, FRE 602, MC | | | | | | |
| 142:11 | 142:12 | | | | | | | |
| 142:17 | 142:25 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| Zhong Wu | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 144:17 | 145:8 | | | | | | | |
| 172:10 | 173:25 | | 172:4 | 172:9 | | | | |
| 176:12 | 177:4 | | | | | | | |
| 177:6 | 177:10 | FRE 602, F | | | | | | |
| 177:14 | 177:18 | | | | | | | |
| 179:14 | 180:3 | | | | | | | |
| 181:23 | 182:5 | | | | | | | |
| 185:22 | 186:11 | | | | | | | |
| 186:21 | 187:11 | | | | | | | |
| 187:18 | 187:19 | | | | | | | |
| 187:23 | 188:4 | | | | | | | |
| 191:2 | 192:4 | | | | | | | |

**Plaintiffs' Affirmative Designations**

| Zhong Wu | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Plaintiffs Designations | | Defendants Objections | Defendant's Counter-Designations | | Plaintiffs Objections to Defendants Counter-Designations | Plaintiffs Counter-Counter Designations | | Defendants Objections to Plaintiff's Counter-Counter Designations |
| Line Start | Line End | | Line Start | Line End | | Line Start | Line End | |
| 192:21 | 193:4 | | | | | | | |
| 193:6 | 193:18 | | | | | | | |
| 193:19 | 194:9 | FRE 403, R | | | | | | |
| 215:22 | 215:24 | | | | | | | |
| 216:14 | 217:8 | | | | | | | |
| 217:10 | 217:18 | Arg | | | | | | |
| 217:20 | 219:21 | | | | | | | |
| 219:23 | 219:24 | | | | | | | |
| 220:6 | 221:17 | AF, MC, FN | | | | | | |
| 221:19 | 222:3 | | | | | | | |
| 222:5 | 223:7 | | | | | | | |

*ArcherDx, LLC et al. V. QIAGEN Sciences, LLC, et al.*, C.A. No. 18-1019-MN

**QIAGEN's Exhibit/Deposition Designation Objection Key**

| Code | Objection |
|---|---|
| A | Authenticity (FRE 901 & 902) |
| AF | Assumes facts that are incorrect and/or not supported by any evidence |
| AL | Document has been altered, including, for example, with highlighting |
| Arg | Argumentative |
| BRPL | Brief, Pleading, or Order |
| BSD | Counter-designation is beyond the scope of the designation(s). |
| CP | Compound |
| Dep | Improper Inclusion of Deposition or Hearing Transcript |
| DES | Exhibit description and/or bates number on the exhibit list does not correspond to the trial exhibit; the description is incorrect or inadequate to identify the exhibit |
| Dupe | Duplicative of another exhibit(s) |
| E | Errata: Designated testimony was modified by an errata sheet submitted by the witness |
| ENP | Trial exhibit was not provided |
| Expert | Improper Use of Expert Report |
| F | Form |
| FN | Foundation |
| FL | Foreign Language Without Translation |
| FRE 106 | Incomplete: The exhibit, as submitted, does not contain the complete document |
| FRE 403 | Unfair Prejudice: Probative value is substantially outweighed by unfair prejudice and/or confusion of the issues, waste of time, and/or cumulative (FRE 403) |
| FRE | Character Evidence: Seeks to prove behavior in accordance with a person's character |

| Code | Objection |
|---|---|
| 404 | or character trait |
| FRE 408 | Compromise/Offers to Compromise |
| FRE 602 | Lack of any witness with personal knowledge (for exhibits)<br><br>Lack of personal knowledge (for testimony) |
| FRE 608 | Improper impeachment |
| FRE 611(a) | Confusing, misleading, ambiguous, vague, unintelligible |
| FRE 1002 | Original Document |
| FRE 1004 | Other Content Evidence: It is not an original writing, and an exception does not apply |
| FRE 1006 | Improper use of summaries to prove content. |
| H | Hearsay (FRE 801 & 802) |
| I | Incomplete designation |
| LC | Conclusion of Law |
| LD | Leading |
| M | Multiple Documents: Contains more than one document |
| MC | Mischaracterization: mischaracterizes prior testimony, exhibits, facts, and/or applicable law |
| NNP | Native trial exhibit not provided |
| NON | Answer non-responsive to question or non-responsive designation |
| NR | Not relied on: Exhibit was not relied on by any expert in support of opinion |
| NT | Designation is not testimony – includes attorney objections and/or discussion between attorneys. |

| Code | Objection |
|---|---|
| O | Opinion Testimony By Lay Witness: Constitutes or contains improper opinion by a lay witness (FRE 701 & 702) |
| Priv | Privileged: Protected from disclosure by the attorney-client privilege and/or work product doctrine |
| Privacy | Contains private personal information protected from disclosure under relevant law |
| Q | Quality: Exhibit, as submitted, is illegible or otherwise of low quality |
| R | Relevance: Not relevant to any issue to be decided in this case (FRE 401 & 402) |
| S | Speculative: Includes statements that are speculative as to matters of fact or law |
| Sc | Beyond the scope of 30(b)(6) topic |
| U | Untimely: Exhibit was not disclosed at the proper time |

# EXHIBIT 6D

***DANIEL CASTRO***
***September 1, 2020***

| DEFENDANTS' DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | | PLAINTIFFS' COUNTER-DESIGNATIONS AND DEFENDANTS' OBJECTIONS | | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | |
|---|---|---|---|---|---|
| **Designation Pages: Line #s** | **Plaintiffs' Objections** | **Designation Pages: Line #s** | **Defendants' Objections** | **Designation Pages: Line #s** | **Plaintiffs' Objections** |
| 5:23-6:2 | | | | | |
| 6:9-11 | | | | | |
| 9:11-18 | 30(b)(6); In | 9:19-10:8 | | | |
| 10:9-11:4 | 30(b)(6); In | 9:19-10:8; 11: 5-18 | | | |
| 17:13-17 | | | | | |
| 17:20-25 | In; L | 18:2-7 | | | |
| 18:8-25 | | | | | |
| 19:2-8; 16 | In; L; LA | | | | |
| 36:3-10 | In; LA | | | | |
| 36:24-25; 37:4 | In; LA | | | | |
| 41:12-21 | In; LA | | | | |
| 42:11-12; 14 | In; LA | | | | |
| 44:10-11; 16 | In; LA | | | | |
| 54:13-18; 55:10-16 | 30(b)(6) | | | | |
| 55:18-21; 56:4-11 | 30(b)(6) | | | | |
| 56:22-23; 57:4-17 | 30(b)(6) | | | | |
| 63:24-64:3, 5 | In | 64:6-10; 64:17-65:4, 65:7 | BSD | | |
| 65:8-11 | V; 30(b)(6) | | | | |
| 65:13-23 | V; 30(b)(6) | | | | |
| 66:2-6, 8 | 30(b)(6); Cmpd | | | | |
| 67:6-9; 11-14 | V; 30(b)(6); Cmpd; In | 67:20-23 | I | 67:15-16 | BS, 30(b)(6) |

| DEFENDANTS' DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | | PLAINTIFFS' COUNTER-DESIGNATIONS AND DEFENDANTS' OBJECTIONS | | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | |
|---|---|---|---|---|---|
| **Designation Pages: Line #s** | **Plaintiffs' Objections** | **Designation Pages: Line #s** | **Defendants' Objections** | **Designation Pages: Line #s** | **Plaintiffs' Objections** |
| 76:19-21 | | | | | |
| 79:10-80:16 | Spec | | | | |
| 81:6-9; 12-16 | Spec; In | 81:17-82:7; 82:14-24 | BSD, R, FRE 403 | | |
| 83:6-8 | | | | | |
| 85:18-21 | F; In | 89:9-13-89:16 | | | |
| 86:9-13 | F; In | 86:15-87:6; 87:9-10; 87:20-25; 88:17-21; 89:9-13; 89:16 | | | |
| 91:10-12; 22-25 | | | | | |
| 92:6-8; 10-13 | Cmpd | | | | |
| 93:10-18 | | | | | |
| 94:9-12; 14-17; 20 | 30(b)(6) | | | | |
| 96:6-13; 15-21 | Cmpd | | | | |
| 100:19-101:9 | | | | | |
| 103:7-9 | In | 106:8-11; 106:15-18 | BSD, R, FRE 403, I | 107:7-13 107:16-108:13 108:15 | BS, 30(b)(6), R, M, PK, P |
| 109:2-4 | | | | | |
| 109:13-25 | Spec | | | | |
| 110:3 | Spec | | | | |
| 110:5-9; 11 | Spec; L; LC | | | | |
| 110:18-20 | LC; Cmpd | | | | |
| 110:22-111:22; 24 | LC; Cmpd | | | | |
| 120:14-15 | | | | | |
| 120:17-22 | | | | | |

| **DEFENDANTS' DESIGNATIONS AND PLAINTIFFS' OBJECTIONS** | | **PLAINTIFFS' COUNTER-DESIGNATIONS AND DEFENDANTS' OBJECTIONS** | | **DEFENDANTS' COUNTER-COUNTER DESIGNATIONS AND PLAINTIFFS' OBJECTIONS** | |
|---|---|---|---|---|---|
| **Designation Pages: Line #s** | **Plaintiffs' Objections** | **Designation Pages: Line #s** | **Defendants' Objections** | **Designation Pages: Line #s** | **Plaintiffs' Objections** |
| 121:6-11 | | | | | |
| 121:13-122:5 | | | | | |
| 122:18-123:5 | | | | | |
| 123:7-13 | F; Spec. | | | | |
| 124:5-7 | | | | | |
| 124:9-22 | In | 124:23-25; 125:2 | R, FRE 403 | | |
| 128:6-9 | | | | | |
| 128:11-23 | 30(b)(6); F | | | | |
| 129:2-4 | 30(b)(6); Spec; F; L; In | 129:5-7, 9:11 | R, FRE 403 | | |

## *CHRISTOPHER CORLESS, M.D., Ph.D.*
## *September 15, 2020*

| DEFENDANTS' DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | | PLAINTIFFS' COUNTER-DESIGNATIONS AND DEFENDANTS' OBJECTIONS | | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | |
|---|---|---|---|---|---|
| **Designation Pages: Line #s** | **Plaintiffs' Objections** | **Designation Pages: Line #s** | **Defendants' Objections** | **Designation Pages: Line #s** | **Plaintiffs' Objections** |
| 4:15-18 | | | | | |
| 4:22-5:2 | | | | | |
| 6:13-20 | | | | | |
| 19:20-20:5 | AT; F; In | 11:8-10; 11:24-12:20; 12:24-13:4; 13:9-13:11; 13:22-14:23; 14:25-16:2; 16:7-16; 16:22-17:8; 17:10-18; 17:20-18:4; 18:6 | BSD, R, FN, FRE 403, FRE 602, S, I | 11:11-20<br>12:21-23<br>13:13-15 | R, NR, NE, MD |
| 20:8-21:2 | In | 21:3-5; 21:7-11; 21:13-17 | | | |
| 21:18-22:7 | AT; PK; Spec; In | 22:9-11; 22:13; 22:21-23; 23:3-19; 23:21-23 | BSD | | |
| 22:17-20 | In | 33:6-7; 33:9-17; 34:9-13 | BSD, R, FRE 403 | | |
| 24:11-18 | R; P | | | | |
| 25:8-14 | C; R; P; In | 24:19-21; 24:23-25:6; 25:15-18; 25:20-26:1 | BSD, R, FRE 403 | | |

| DEFENDANTS' DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | | PLAINTIFFS' COUNTER-DESIGNATIONS AND DEFENDANTS' OBJECTIONS | | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | |
|---|---|---|---|---|---|
| **Designation Pages: Line #s** | **Plaintiffs' Objections** | **Designation Pages: Line #s** | **Defendants' Objections** | **Designation Pages: Line #s** | **Plaintiffs' Objections** |
| 27:15-19 | In | 27:12-14 | | | |
| 27:21-28:18 | H | | | | |
| 28:20-29:3 | H; In | 29:5-10; 30:1-3; 30:5 | BSD, R, FRE 403, FN, S, FRE 602, I | 30:8 | R; NR; P; PK |
| 36:13-18 | AT; In | 35:7-13; 35:17-22; 35:24-36:2; 36:5-8; 36:10-11 | BSD | | |
| 37:4-38:12 | V; H | | | | |
| 38:14-39:11 | V; H | | | | |
| 39:22-24 | V | | | | |
| 40:1-2 | V | | | | |
| 40:6-41:4 | Cmpd; PK; Spec; P; In | 41:5-24; 42:1-3; 42:12-15 | F | 42:5-7<br>42:9-10 | Cmpd; Arg; P; R |

***LAWRENCE ECK***
***September 11, 2020***

| DEFENDANTS' DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | | PLAINTIFFS' COUNTER-DESIGNATIONS AND DEFENDANTS' OBJECTIONS | | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | |
|---|---|---|---|---|---|
| **Designation Pages: Line #s** | **Plaintiffs' Objections** | **Designation Pages: Line #s** | **Defendants' Objections** | **Designation Pages: Line #s** | **Plaintiffs' Objections** |
| 6:14-17 | | | | | |
| 6:20-24 | | | | | |
| 8:20-24 | | | | | |
| 9:1-5 | | | | | |
| 9:20-10:3 | | | | | |
| 10:6-10 | | | | | |
| 10:22-11:11 | In | 11:12-17 | | 11:18-24 | PK; F; R; P; L; Spec |
| 13:12-19 | R; P; V | | | | |
| 13:25-14:16 | R; P; V | | | | |
| 14:24-15:8 | R; P | | | | |
| 22:16-23:13 | V; In | 18:5-19:20; 20:5-12; 21:2-22:14; 23:14-18 | BSD, R, FRE 403 | | |
| 23:19-24:6 | R; P | | | | |

## *DARIUS FUGERE*
## *August 18, 2020*

| DEFENDANTS' DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | | PLAINTIFFS' COUNTER-DESIGNATIONS AND DEFENDANTS' OBJECTIONS | | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | |
|---|---|---|---|---|---|
| **Designation Pages: Line #s** | **Plaintiffs' Objections** | **Designation Pages: Line #s** | **Defendants' Objections** | **Designation Pages: Line #s** | **Plaintiffs' Objections** |
| 7:18-21 | | | | | |
| 8:5-9 | | | | | |
| 11:16-20 | | | | | |
| 13:13-19 | | | | | |
| 14:11-22 | In | 14:23-15:5 | | | |
| 50:7-51:1 | F;L;Spec.; M | | | | |
| 78:14-18 | In; F; L; Spec. | 78:25-79:1 | | | |
| 79:3-10 | F;L;Spec | | | | |
| 79:15-18 | F;L;Spec | | | | |
| 80:5-10 | F;L;Spec | | | | |
| 80:21-81:1 | AT; F;L;Spec | | | | |
| 81:3-11; 13-14 | F;L;Spec | | | | |
| 83:4-5; 7-13 | F;L;Spec | | | | |
| 85:24-86:11 | F;L;Spec | | | | |
| 86:14 | F;L;Spec | | | | |
| 88:8-11; 13-19 | F;L;Spec | | | | |
| 88:21-23 | F;L;Spec | | | | |
| 89:1-7 | | | | | |
| 97:13-15; 17-19 | In; F; L; Spec. | 98:3-15; 105:17-20; 105:22-25 | BSD, R, FRE 403 | 106:2-7, 9-10, 12-14, 17-19<br>106:21-107:2<br>107:5-10 | M; R; IC; Arg; P; LC; Spec; V |
| 97:21-23 | In; F; L; Spec. | | | | |
| 97:25-98:1 | In; F; L; Spec. | | | | |
| 104:10-11 | In, F, L, Spec. | | | | |
| 104:17-25 | In; F; L; Spec.; R | | | | |
| 107:11-15 | In; F; L; Spec. | 107:22-23 | | | |

| DEFENDANTS' DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | | PLAINTIFFS' COUNTER-DESIGNATIONS AND DEFENDANTS' OBJECTIONS | | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | |
|---|---|---|---|---|---|
| **Designation Pages: Line #s** | **Plaintiffs' Objections** | **Designation Pages: Line #s** | **Defendants' Objections** | **Designation Pages: Line #s** | **Plaintiffs' Objections** |
| 107:25-108:17 | NT; In; F; L; Spec. | 110:11-15 | | | |
| 108:19-22 | In; F; L; Spec. | | | | |
| 110:17-22; 24 | In; F; L; Spec. | | | | |
| 111:20-113:3 | In; F; L; Spec.; M | 110:11-15; 113:4, 6-7 | | | |
| 120:3-6 | In | 120:7-9, 11-25; 121:1-17, 19-21 | BSD, R, FRE 403, NT | | |
| 121:22-23 | In | | | | |
| 121:25-122:2 | In | | | | |
| 124:9-16; 18-21 | F; L; Spec. | | | | |
| 126:18-20; 22 | F; L; Spec. | | | | |
| 126:24-127:22 | F; L; Spec. | | | | |
| 129:3-8; 10-17 | F; L; Spec. | | | | |
| 132:4-11 | F; L; Spec. | | | | |
| 132:20-133:24 | F; L; Spec. | | | | |
| 134:9-10 | F; L; Spec. | | | | |
| 134:15-18; 21-22 | F; L; Spec. | | | | |
| 134:24-135:6 | F; L; Spec. | | | | |
| 137:14-17 | Cmpd; I; F; L; Spec. | 136:21-137:3; 137:7; 137:9-13 | R, FRE 403 | | |
| 138:15-17 | In; F; L; Spec. | | | | |
| 139:11-16; 18-21 | In; M; F; L; Spec. | | | | |
| 146:2-147:6 | In; F; L; Spec.; R | 147:12-16; 147:18-20; 148:19-20; 148:22-149:5 | R, FRE 403 | | |
| 147:9-10 | In; F; L; Spec.; R | | | | |
| 149:6-8 | In; F; L; Spec.; R | | | | |
| 150:2-5 | In; F; L; Spec.; R | | | | |
| 160:2-16 | In | 161:2-5; 7-8; 10-13; 15-16 | BSD, R, FRE 403 | | |
| 169:25-171:7 | | | | | |

| **DEFENDANTS' DESIGNATIONS AND PLAINTIFFS' OBJECTIONS** | | **PLAINTIFFS' COUNTER-DESIGNATIONS AND DEFENDANTS' OBJECTIONS** | | **DEFENDANTS' COUNTER-COUNTER DESIGNATIONS AND PLAINTIFFS' OBJECTIONS** | |
|---|---|---|---|---|---|
| **Designation Pages: Line #s** | **Plaintiffs' Objections** | **Designation Pages: Line #s** | **Defendants' Objections** | **Designation Pages: Line #s** | **Plaintiffs' Objections** |
| 171:10-17 | | | | | |
| 181:11-183:13 | In; R, M | 183:17-184:6 | R, FRE 403 | | |
| 183:15-16 | In; R, M | | | | |
| 191:16 | In; F; L; Spec. | 194:10-17; 194:23-195:17 | R, FRE 403 | | |
| 191:18-192:15 | In; F; L; Spec. | | | | |
| 193:3-19 | In; F; L; Spec. | | | | |
| 194:18-22 | In; F; L; Spec. | | | | |
| 195:20 | In; F; L; Spec. | 196:16-25 | | | |
| 195:24-196:15 | In; F; L; Spec. | | | | |
| 197:6-15 | In; F; L; Spec. | | | | |
| 200:16-201:9 | In; F; L; Spec. | 202:4-5; 7-9 | | | |
| 201:11-15 | In; F; L; Spec. | | | | |
| 201:24-202:3 | In; F; L; Spec. | | | | |
| 208:24-209:10 | R | | | | |

# *CHRISTIAN LaPOINTE, Ph.D.*
## *September 14, 2020*

| **DEFENDANTS' DESIGNATIONS AND PLAINTIFFS' OBJECTIONS** | | **PLAINTIFFS' COUNTER-DESIGNATIONS AND DEFENDANTS' OBJECTIONS** | | **DEFENDANTS' COUNTER-COUNTER DESIGNATIONS AND PLAINTIFFS' OBJECTIONS** | |
|---|---|---|---|---|---|
| **Designation Pages: Line #s** | **Plaintiffs' Objections** | **Designation Pages: Line #s** | **Defendants' Objections** | **Designation Pages: Line #s** | **Plaintiffs' Objections** |
| 5:3-5 | | | | | |
| 5:13-15 | | | | | |
| 5:20-22 | | | | | |
| 6:14-20 | | | | | |
| 21:17-20 | | | | | |
| 31:23-32:1 | In | 13:17-15:15; 32:2-21 | R, FRE 403 | | |
| 34:2-9 | In; R | 32:2-21 | R, FRE 403 | | |
| 74:10-16 | In; R | 74:18-75:13; 77:13-78:4 | BSD, R, FRE 403 | | |
| 84:1-9; 12-13 | Spec; P; In; R | 84:14-85:25 | | | |
| 113:7-8; 11-21 | P; R | | | | |
| 121:15-122:12 | Spec; L; R | | | | |
| 230:23-231:14 | Spec.; NE; PK; V; In | 231:15-18; 231:21-232:1 | BSD, R, FRE 403, S, FRE 602 | | |
| 267:11-18 | R | | | | |
| 271:5-11 | In; R | 270:11-20 | R, FRE 403 | | |
| 277:15-22 | L; R | | | | |
| 277:25-278:19 | L; R | | | | |
| 278:22-279:13 | L; LD; PK; Spec; R | | | | |

| DEFENDANTS' DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | | PLAINTIFFS' COUNTER-DESIGNATIONS AND DEFENDANTS' OBJECTIONS | | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | |
|---|---|---|---|---|---|
| **Designation Pages: Line #s** | **Plaintiffs' Objections** | **Designation Pages: Line #s** | **Defendants' Objections** | **Designation Pages: Line #s** | **Plaintiffs' Objections** |
| 300:10-301:18 | In; R; P | 304:4-11; 304:14-305:6; 305:16-21; 305:23-25; 306:2-8 | BSD, R, FRE 403, I | 228:17-25 302:17-303:9 303:12-19 303:22-303:3 | R, P, ML, M, MD, IC, Arg, Cmpd, NE, NT, V, In |
| 302:6-13; 16 | L; Cmpd; In; R; P | 301:19-302:5; 304:4-11; 304:14-305:6; 405:16-21; 305:23-25; 306:2-8 | BSD, R, FRE 403, I | 228:17-25 302:17-303:9 303:12-19 303:22-303:3 | R, P, ML, M, MD, IC, Arg, Cmpd, NE, NT, V, In |

## *JOSHUA STAHL*
## *September 18, 2020*

| DEFENDANTS' DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | | PLAINTIFFS' COUNTER-DESIGNATIONS AND DEFENDANTS' OBJECTIONS | | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | |
|---|---|---|---|---|---|
| **Designation Pages: Line #s** | **Plaintiffs' Objections** | **Designation Pages: Line #s** | **Defendants' Objections** | **Designation Pages: Line #s** | **Plaintiffs' Objections** |
| 5:13-22 | | | | | |
| 5:24-6:3 | | | | | |
| 6:13-17 | | | | | |
| 6:25-8:7 | | | | | |
| 8:9-19 | | | | | |
| 9:6-19 | | | | | |
| 11:19-12:5 | IC; In | 12:21-23 | | | |
| 12:10-16 | IC; In | 12:21-23 | | | |
| 15:5-20 | | | | | |
| 15:25-16:7 | LC; V | | | | |
| 16:9-11 | LC; V; Spec | | | | |
| 16:13-19 | LC; F; M; V; Spec | | | | |
| 16:21-25 | LC | | | | |
| 17:2-5 | LC; V | | | | |
| 17:7-15 | LC; V | | | | |
| 17:17-19 | | | | | |
| 18:11-14 | P; Arg | | | | |
| 18:24-25 | LC; V; Spec | | | | |
| 19:2-20:3 | LC; M; P; Arg; V | | | | |
| 20:5-9 | LC; V | | | | |
| 20:11-21:7 | LC; P | | | | |
| 21:9-10 | IC; In; Spec | 23:16-17 | | | |
| 22:18-21 | LC; IC; In; P; Spec | 23:16-17 | | | |
| 23:18-19 | LC; IC; In; P; V | 23:16-17 | | | |

| DEFENDANTS' DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | | PLAINTIFFS' COUNTER-DESIGNATIONS AND DEFENDANTS' OBJECTIONS | | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | |
|---|---|---|---|---|---|
| **Designation Pages: Line #s** | **Plaintiffs' Objections** | **Designation Pages: Line #s** | **Defendants' Objections** | **Designation Pages: Line #s** | **Plaintiffs' Objections** |
| 23:21-23 | IC; In | 23:16-17 | | | |
| 24:8-10 | LC; IC; In; Spec | 23:16-17 | | | |
| 24:12-14 | LC; IC; In; Spec | 23:16-17 | | | |
| 24:16-19 | LC; IC; In; Spec | 23:16-17 | | | |
| 24:21-24 | LC; IC; In; Spec | 23:16-17 | | | |
| 25:1 | IC; In | 23:16-17 | | | |
| 25:4-18 | LC; V; L; LF; Spec | | | | |
| 25:20-26:21 | V | | | | |
| 26:23 | IC; In | 26:24-25; 27:2-4; 27:24-28:6 | | | |
| 28:21-23 | | | | | |
| 28:25 | IC; In | 26:24-25; 27:24-28:6 | | | |
| 35:3-14 | IC; In; P; M; Arg; V | 29:1-16; 29:18-30:1; 33:24-34:11; 34:13-17; 36:9-11; 36:13-18; 36:25-37:1; 37:3-5; 71:16-21 | Arg; I; S; FRE 611(a) | 38:11-13 | C, M |
| 35:24-36:8 | IC; In | 29:1-16; 29:18-30:1; 33:24-34:11; 34:13-17; 36:9-11; 36:13-18; 36:25-37:1; 37:3-5; 71:16-21 | Arg; I; S; FRE 611(a) | 38:11-13 | C, M |

| DEFENDANTS' DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | | PLAINTIFFS' COUNTER-DESIGNATIONS AND DEFENDANTS' OBJECTIONS | | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | |
|---|---|---|---|---|---|
| **Designation Pages: Line #s** | **Plaintiffs' Objections** | **Designation Pages: Line #s** | **Defendants' Objections** | **Designation Pages: Line #s** | **Plaintiffs' Objections** |
| 36:19-22 | IC; In; P; M; Arg; V | 29:1-16; 29:18-30:1; 33:24-34:11; 34:13-17; 36:9-11; 36:13-18; 36:25-37:1; 37:3-5; 71:16-21 | Arg; I; S; FRE 611(a) | 38:11-13 | C, M |
| 36:24 | IC; In | 29:1-16; 29:18-30:1; 33:24-34:11; 34:13-17; 36:9-11; 36:13-18; 36:25-37:1; 37:3-5; 71:16-21 | Arg; I; S; FRE 611(a) | 38:11-13 | C, M |
| 37:12-20 | IC; In; P; M; Arg; V | 29:1-16; 29:18-30:1; 33:24-34:11; 34:13-17; 36:9-11; 36:13-18; 36:25-37:1; 37:3-5; 71:16-21 | | | |
| 37:22-38:10 | IC; In | 29:1-16; 29:18-30:1; 33:24-34:11; 34:13-17; 36:9-11; 36:13-18; 36:25-37:1; 37:3-5; 71:16-21 | | | |
| 38:14-16 | IC; In; L; LF | 38:17-22; 38:24; 39:6-9 | | | |
| 39:10-18 | | | | | |
| 39:23-40:1 | IC; In; V | 40:5-20 | | | |

| **DEFENDANTS' DESIGNATIONS AND PLAINTIFFS' OBJECTIONS** | | **PLAINTIFFS' COUNTER-DESIGNATIONS AND DEFENDANTS' OBJECTIONS** | | **DEFENDANTS' COUNTER-COUNTER DESIGNATIONS AND PLAINTIFFS' OBJECTIONS** | |
|---|---|---|---|---|---|
| **Designation Pages: Line #s** | **Plaintiffs' Objections** | **Designation Pages: Line #s** | **Defendants' Objections** | **Designation Pages: Line #s** | **Plaintiffs' Objections** |
| 40:3-4 | IC; In | 40:5-20 | | | |
| 42:7-17 | IC; In; V | 41:18-20; 41:22-25; 42:25-43:7; 45:9-13; 43:15-19; 43:21-23; 46:6-8; 46:10-17; 51:6-9; 51:11-13; 57:24-58:12; 65:23-66:4; 66:6-15; 69:20-70:3; 70:5-16; 71:12-14; 71:16-21 | Arg; I; S; FRE 611(a), NON | 71:22-72:3; 72:5-8; 72:10-14; 72:16-25; 73:2-3; 73:5-8; 73:10-15; 73:17-22; 73:24-74:6; 74:8-12; 74:14-21 | AT [71:22-71:3]; NT; Arg; P; M; C; V; Cmpd; IC; LC; L; NE; Spec; I; PK; LD |
| 42:19 | IC; In | 41:18-20; 41:22-25; 42:25-43:7; 45:9-13; 43:15-19; 43:21-23; 46:6-8; 46:10-17; 51:6-9; 51:11-13; 57:24-58:12; 65:23-66:4; 66:6-15; 69:20-70:3; 70:5-16; 71:12-14; 71:16-21 | Arg; I; S; FRE 611(a), NON | 71:22-72:3; 72:5-8; 72:10-14; 72:16-25; 73:2-3; 73:5-8; 73:10-15; 73:17-22; 73:24-74:6; 74:8-12; 74:14-21 | AT [71:22-71:3]; NT; Arg; P; M; C; V; Cmpd; IC; LC; L; NE; Spec; I; PK; LD |

| DEFENDANTS' DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | | PLAINTIFFS' COUNTER-DESIGNATIONS AND DEFENDANTS' OBJECTIONS | | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | |
|---|---|---|---|---|---|
| **Designation Pages: Line #s** | **Plaintiffs' Objections** | **Designation Pages: Line #s** | **Defendants' Objections** | **Designation Pages: Line #s** | **Plaintiffs' Objections** |
| 43:24-44:10 | IC; In | 41:18-20; 41:22-25; 42:25-43:7; 45:9-13; 43:15-19; 43:21-23; 46:6-8; 46:10-17; 51:6-9; 51:11-13; 57:24-58:12; 65:23-66:4; 66:6-15; 69:20-70:3; 70:5-16; 71:12-14; 71:16-21 | Arg; I; S; FRE 611(a), NON | 71:22-72:3; 72:5-8; 72:10-14; 72:16-25; 73:2-3; 73:5-8; 73:10-15; 73:17-22; 73:24-74:6; 74:8-12; 74:14-21 | AT [71:22-71:3]; NT; Arg; P; M; C; V; Cmpd; IC; LC; L; NE; Spec; I; PK; LD |
| 44:12-17 | IC; In | 41:18-20; 41:22-25; 42:25-43:7; 45:9-13; 43:15-19; 43:21-23; 46:6-8; 46:10-17; 51:6-9; 51:11-13; 57:24-58:12; 65:23-66:4; 66:6-15; 69:20-70:3; 70:5-16; 71:12-14; 71:16-21 | Arg; I; S; FRE 611(a), NON | 71:22-72:3; 72:5-8; 72:10-14; 72:16-25; 73:2-3; 73:5-8; 73:10-15; 73:17-22; 73:24-74:6; 74:8-12; 74:14-21 | AT [71:22-71:3]; NT; Arg; P; M; C; V; Cmpd; IC; LC; L; NE; Spec; I; PK; LD |
| 45:16-18 | IC; In; V; L; LF; Spec | | | | |
| 45:20-22 | IC; In; V; L; LF; Spec | | | | |
| 45:24-46:5 | IC; In | 46:6-8; 46:10-17 | | | |

| DEFENDANTS' DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | | PLAINTIFFS' COUNTER-DESIGNATIONS AND DEFENDANTS' OBJECTIONS | | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | |
|---|---|---|---|---|---|
| **Designation Pages: Line #s** | **Plaintiffs' Objections** | **Designation Pages: Line #s** | **Defendants' Objections** | **Designation Pages: Line #s** | **Plaintiffs' Objections** |
| 48:25-49:6 | IC; In; V; L; LF | 41:18-20; 41:22-25; 42:25-43:7; 45:9-13; 43:15-19; 43:21-23; 46:6-8; 46:10-17; 51:6-9; 51:11-13; 57:24-58:12; 65:23-66:4; 66:6-15; 69:20-70:3; 70:5-16; 71:12-14; 71:16-21 | Arg; I; S; FRE 611(a), NON | 71:22-72:3; 72:5-8; 72:10-14; 72:16-25; 73:2-3; 73:5-8; 73:10-15; 73:17-22; 73:24-74:6; 74:8-12; 74:14-21 | AT [71:22-71:3]; NT; Arg; P; M; C; V; Cmpd; IC; LC; L; NE; Spec; I; PK; LD |
| 49:8-12 | IC; In; V; L; LF | 41:18-20; 41:22-25; 42:25-43:7; 45:9-13; 43:15-19; 43:21-23; 46:6-8; 46:10-17; 51:6-9; 51:11-13; 57:24-58:12; 65:23-66:4; 66:6-15; 69:20-70:3; 70:5-16; 71:12-14; 71:16-21 | Arg; I; S; FRE 611(a), NON | 71:22-72:3; 72:5-8; 72:10-14; 72:16-25; 73:2-3; 73:5-8; 73:10-15; 73:17-22; 73:24-74:6; 74:8-12; 74:14-21 | AT [71:22-71:3]; NT; Arg; P; M; C; V; Cmpd; IC; LC; L; NE; Spec; I; PK; LD |

| **DEFENDANTS' DESIGNATIONS AND PLAINTIFFS' OBJECTIONS** | | **PLAINTIFFS' COUNTER-DESIGNATIONS AND DEFENDANTS' OBJECTIONS** | | **DEFENDANTS' COUNTER-COUNTER DESIGNATIONS AND PLAINTIFFS' OBJECTIONS** | |
|---|---|---|---|---|---|
| **Designation Pages: Line #s** | **Plaintiffs' Objections** | **Designation Pages: Line #s** | **Defendants' Objections** | **Designation Pages: Line #s** | **Plaintiffs' Objections** |
| 49:14-15 | IC; In; V; L; LF | 41:18-20; 41:22-25; 42:25-43:7; 45:9-13; 43:15-19; 43:21-23; 46:6-8; 46:10-17; 51:6-9; 51:11-13; 57:24-58:12; 65:23-66:4; 66:6-15; 69:20-70:3; 70:5-16; 71:12-14; 71:16-21 | Arg; I; S; FRE 611(a), NON | 71:22-72:3; 72:5-8; 72:10-14; 72:16-25; 73:2-3; 73:5-8; 73:10-15; 73:17-22; 73:24-74:6; 74:8-12; 74:14-21 | AT [71:22-71:3]; NT; Arg; P; M; C; V; Cmpd; IC; LC; L; NE; Spec; I; PK; LD |
| 49:17-50:1 | IC; In; V; L; LF | 41:18-20; 41:22-25; 42:25-43:7; 45:9-13; 43:15-19; 43:21-23; 46:6-8; 46:10-17; 51:6-9; 51:11-13; 57:24-58:12; 65:23-66:4; 66:6-15; 69:20-70:3; 70:5-16; 71:12-14; 71:16-21 | Arg; I; S; FRE 611(a), NON | 71:22-72:3; 72:5-8; 72:10-14; 72:16-25; 73:2-3; 73:5-8; 73:10-15; 73:17-22; 73:24-74:6; 74:8-12; 74:14-21 | AT [71:22-71:3]; NT; Arg; P; M; C; V; Cmpd; IC; LC; L; NE; Spec; I; PK; LD |

| DEFENDANTS' DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | | PLAINTIFFS' COUNTER-DESIGNATIONS AND DEFENDANTS' OBJECTIONS | | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | |
|---|---|---|---|---|---|
| **Designation Pages: Line #s** | **Plaintiffs' Objections** | **Designation Pages: Line #s** | **Defendants' Objections** | **Designation Pages: Line #s** | **Plaintiffs' Objections** |
| 50:3-9 | IC; In; V; L; LF | 41:18-20; 41:22-25; 42:25-43:7; 45:9-13; 43:15-19; 43:21-23; 46:6-8; 46:10-17; 51:6-9; 51:11-13; 57:24-58:12; 65:23-66:4; 66:6-15; 69:20-70:3; 70:5-16; 71:12-14; 71:16-21 | Arg; I; S; FRE 611(a), NON | 71:22-72:3; 72:5-8; 72:10-14; 72:16-25; 73:2-3; 73:5-8; 73:10-15; 73:17-22; 73:24-74:6; 74:8-12; 74:14-21 | AT [71:22-71:3]; NT; Arg; P; M; C; V; Cmpd; IC; LC; L; NE; Spec; I; PK; LD |
| 50:11-12 | IC; In; V; L; LF | 41:18-20; 41:22-25; 42:25-43:7; 45:9-13; 43:15-19; 43:21-23; 46:6-8; 46:10-17; 51:6-9; 51:11-13; 57:24-58:12; 65:23-66:4; 66:6-15; 69:20-70:3; 70:5-16; 71:12-14; 71:16-21 | Arg; I; S; FRE 611(a), NON | 71:22-72:3; 72:5-8; 72:10-14; 72:16-25; 73:2-3; 73:5-8; 73:10-15; 73:17-22; 73:24-74:6; 74:8-12; 74:14-21 | AT [71:22-71:3]; NT; Arg; P; M; C; V; Cmpd; IC; LC; L; NE; Spec; I; PK; LD |

| DEFENDANTS' DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | | PLAINTIFFS' COUNTER-DESIGNATIONS AND DEFENDANTS' OBJECTIONS | | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS AND PLAINTIFFS' OBJECTIONS | |
|---|---|---|---|---|---|
| **Designation Pages: Line #s** | **Plaintiffs' Objections** | **Designation Pages: Line #s** | **Defendants' Objections** | **Designation Pages: Line #s** | **Plaintiffs' Objections** |
| 50:14-19 | IC; In | 41:18-20; 41:22-25; 42:25-43:7; 45:9-13; 43:15-19; 43:21-23; 46:6-8; 46:10-17; 51:6-9; 51:11-13; 57:24-58:12; 65:23-66:4; 66:6-15; 69:20-70:3; 70:5-16; 71:12-14; 71:16-21 | Arg; I; S; FRE 611(a), NON | 71:22-72:3; 72:5-8; 72:10-14; 72:16-25; 73:2-3; 73:5-8; 73:10-15; 73:17-22; 73:24-74:6; 74:8-12; 74:14-21 | AT [71:22-71:3]; NT; Arg; P; M; C; V; Cmpd; IC; LC; L; NE; Spec; I; PK; LD |
| 51:14-16 | IC; In | 41:18-20; 41:22-25; 42:25-43:7; 45:9-13; 43:15-19; 43:21-23; 46:6-8; 46:10-17; 51:6-9; 51:11-13; 57:24-58:12; 65:23-66:4; 66:6-15; 69:20-70:3; 70:5-16; 71:12-14; 71:16-21 | Arg; I; S; FRE 611(a), NON | 71:22-72:3; 72:5-8; 72:10-14; 72:16-25; 73:2-3; 73:5-8; 73:10-15; 73:17-22; 73:24-74:6; 74:8-12; 74:14-21 | AT [71:22-71:3]; NT; Arg; P; M; C; V; Cmpd; IC; LC; L; NE; Spec; I; PK; LD |
| 94:18-20 | | | | | |

***LESLEY TOMLIN***
***September 16, 2020***

| **DEFENDANTS' DESIGNATIONS AND PLAINTIFFS' OBJECTIONS** | | **PLAINTIFFS' COUNTER-DESIGNATIONS AND DEFENDANTS' OBJECTIONS** | | **DEFENDANTS' COUNTER-COUNTER DESIGNATIONS AND PLAINTIFFS' OBJECTIONS** | |
|---|---|---|---|---|---|
| **Designation Pages: Line #s** | **Plaintiffs' Objections** | **Designation Pages: Line #s** | **Defendants' Objections** | **Designation Pages: Line #s** | **Plaintiffs' Objections** |
| 4:9-11 | | | | | |
| 5:7-9 | R | | | | |
| 28:17-19 | | | | | |
| 29:7-14 | In | 29:15-16; 29:20-30:11; 30:15-31:25; 32:2 | BSD, R, FRE 403 | | |
| 87:8-13 | In | 87:2-5; 87:7 | | | |
| 87:15-21 | In | | | | |
| 87:23-88:4 | In | 88:13-19; 88:21 | | | |
| 88:7-12 | In | | | | |

# Plaintiffs' Objections Key

*ArcherDX, LLC, et al. v. Qiagen Science, LLC, et al.*, 18-1019

| ABBREV. | OBJECTION |
|---|---|
| A | Authentication or Identification (FRE 901)<br><br>The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. |
| Arg | Argumentative |
| AT | Attorney Objections Not Removed |
| BS | Beyond the Scope of Direct / Cross / Redirect Examination |
| 30(b)(6) | Beyond the Scope of the Rule 30(b)(6) Deposition Topic |
| C | Cumulative, Duplicative, Wasteful or Undue Delay (FRE 403)<br><br>Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, waste of time, or needless presentation of duplicative and/or cumulative evidence. |
| Char | Improper Character Evidence (FRE 404) |
| Cmpd | Compound |
| Dem Only | Demonstrative / Should Not Be Admitted Into Evidence |
| D | Not Produced During Discovery |
| F | Lack of Foundation (FRE 602)<br><br>Objectionable because a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. |
| H | Hearsay Rule (FRE 802)<br><br>Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress. |

| ABBREV. | OBJECTION |
|---|---|
| I | Incomplete Document (FRE 106)<br><br>Objectionable because document is incomplete and the introduction of the remaining portions or related documents ought, in fairness, to be considered contemporaneously with it. |
| IC | Improper Designation / Counter Designation (FRE 106: FRCP 32(a)(6)) |
| ID | Incomplete Document<br>(FRE 106) |
| In | Incomplete Testimony<br>(FRE 106; FRCP 32(a)(6)) |
| L | Lack of Personal Knowledge or Competency (FRE 602) |
| LA | Limited Admissibility (Admissible for Some Purposes but Not Others) (FRE 105) |
| LC | Legal Conclusion |
| LD | Leading (FRE 611) |
| LF | Lack of Foundation<br>(FRE 103, 104 and/or 105) |
| M | Misleading/Mischaracterizes Prior Testimony<br>(FRE 401-403, 611) |
| MD | Mischaracterizes Underlying. Document (FRE 401-403, 611) |
| ML | Subject to Motion In Limine |
| NE | Assumes Facts Not In Evidence |
| NR | Nonresponsive |
| NT | Not Testimony |
| O | Improper Lay or Expert Opinion (FRE 701-703) |
| OC | Offer to Compromise, Settlement (FRE 408) |

| ABBREV. | OBJECTION |
|---|---|
| P | Prejudicial, Confusing, Vague and/or Misleading (FRE 403)<br><br>Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. |
| PD | Post Dated Filing Date (FRE 105)<br><br>If post-dated evidence is admitted as to one purpose but not admissible as for another purpose (e.g., for obviousness analysis), the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly. |
| PK | Lack of Personal Knowledge (FRE 602)<br><br>Objectionable because lack of personal knowledge makes the witness incompetent to testify about particular facts. |
| R | Relevance (FRE 401, 402)<br><br>All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible. |
| Spec | Calls for Speculation (FRE 602) |
| S | Summaries (FRE 1006)<br><br>The party relying on the summary must establish its accuracy to the court’s satisfaction.<br><br>*See* Graham, Handbook of Federal Evidence § 1006.1 (5th ed. 2001). *United States v. Pelullo*, 964 F.2d 193, 204 (3d Cir. 1992) (“It is well established that summary evidence is admissible under Rule 1006 only if the underlying materials upon which the summary is based are admissible.”). |
| U | Untimely / Never Produced (FRCP 26, 37) |
| V | Vague / Ambiguous/Overbroad (FRE 611) |
| W | Privileged / Work Product (FRE 501/502) |
| X | Exhibit has not been provided, the copy provided is illegible, and/or the entry includes multiple documents. |

| ABBREV. | OBJECTION |
|---|---|
| Y | Wrong Document Identified or Incorrectly Described |
| 105 | Limited Admissibility (FRE 105)<br><br>When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly. |
| 701 | Improper Lay Opinion Testimony (FRE 701)<br><br>If a witness is not testifying as an expert, testimony in the form of an opinion is limited as provided by this rule. |
| 1002 | Best Evidence (FRE 1002, 1003, 1004)<br><br>An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise. |

# Exhibit 7:
# Joint Uncontested Exhibits

ArcherDX, LLC, et al. v. Qiagen Sciences, LLC, et al.
C.A. No. 18-1019-MN
**Joint Trial Exhibit List**

| JTX# | IPX# | DTX# | Date | Bates Beg. | Bates End | Description | Depo. Ex. No. |
|---|---|---|---|---|---|---|---|
| JTX-001 | IPX - 00001 | DTX-001 | 7/10/2018 | QIA-00689213 | QIA-00689263 | U.S. Patent No. 10,017,810 | Iafrate Ex. 4<br>Le Ex. 3<br>Stahl Ex. 4 |
| JTX-002 | IPX - 00003 | DTX-002 | 8/9/2018 | ADX-000052 | ADX-000764 | Certified File History for U.S. Patent No. 10,017,810 | |
| JTX-003 | IPX - 00002 | DTX-003 | 10/22/2019 | | | U.S. Patent No. 10,450,597 | Iafrate Ex. 5<br>Stahl Ex. 2 |
| JTX-004 | IPX - 00004 | DTX-004 | 11/8/2019 | ADX-000485453 | ADX-000491012 | Certified File History for U.S. Patent No. 10,450,597 | |
| JTX-005 | IPX - 00993 | DTX-018 | 7/23/2013 | ADX-002354 | ADX-002383 | Exclusive Patent License Agreement between Archer Dx, Inc. and The General Hospital Corporation | |
| JTX-006 | | DTX-019 | 8/15/2016 | ADX-002350 | ADX-002353 | First Amendment to Exclusive Patent License Agreement between The General Hospital Corporation and ArcherDx, Inc. | Castro Ex. 12 |
| JTX-007 | IPX - 00940 | DTX-020 | 6/23/2017 | ADX-002386 | ADX-002390 | Second Amendment to Exclusive Patent License Agreement between The General Hospital Corporation and ArcherDx, Inc. | Castro Ex. 13 |

# Exhibit 8P:

# Plaintiffs' Contested Exhibits

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0001 | US Patent 10,017,810 | n/a | n/a | Lader 44; Metzker 12; Le 3; Iafrate 4; Castro 3; Stahl 4 | |
| PX-0002 | US Patent 10,450,597 | n/a | n/a | Metzker 2; Iafrate 5; Castro 4; Stahl 2 | |
| PX-0003 | '810 Patent File History | ADX - 000355491 | ADX - 000356203 | | |
| PX-0004 | '597 Patent File History | ADX - 00485453 | ADX - 000491012 | | |
| PX-0005 | 2020 Sales.xlsm | QIA-01073956 | QIA-01073956 | | |
| PX-0006 | Net sales and Gross margin 2020.xlsx | QIA-01073957 | QIA-01073957 | | |
| PX-0007 | Angela Ryan Depo Exhibit 1 -Plaintiff's Supplemental NOD 30(b)(6) Deposition of Qiagen | n/a | n/a | Ryan 1 | R, FRE 403, BRPL |
| PX-0008 | Angela Ryan Depo Exhibit 2- Plaintiff's Amended Notice of 30(b)(6) Deposition of Qiagen | n/a | n/a | Ryan 2; Hughes 1; Wang 2; Samara 2; Huang 2; Arnold 2; Dayal 2 | R, FRE 403, BRPL |
| PX-0009 | Angela Ryan Depo Exhibit 3 - Notice of Deposition of Angela Ryan | n/a | n/a | Ryan 3 | R, FRE 403, BRPL |
| PX-0010 | Angela Ryan Depo Exhibit 4 - Angela Ryan LinkedIn | n/a | n/a | Ryan 4 | R, FRE 403, H |
| PX-0011 | Angela Ryan Depo Exhibit 5 - Net Sales and Gross Margin Spreadsheet 2016-2019 | QIA-01070435 | QIA-01070435 | Ryan 5 | |
| PX-0012 | Angela Ryan Depo Exhibit 6 - Net Sales and Gross Sales Spreadsheet | QIA-01070161 | QIA-01070161 | Ryan 6 | |
| PX-0013 | Angela Ryan Depo Exhibit 7 - Net Sales by Customer 2019 Spreadsheet | QIA-01043792 | QIA-01043792 | Ryan 7 | |
| PX-0014 | Email chain dated 7/21/2015; F. Hall to E. Lader "FW: Qiagen follow-up" | QIA-00144256 | QIA-00144261 | Ryan 8; Samara 4 | R, FRE 403, H, FN, FRE 602 |
| PX-0015 | QIAseq Multimodal Panels Competitive Landscape PowerPoint | QIA-01070461 | QIA-01070461 | Ryan 9 | R, FRE 403 |
| PX-0016 | Genomics Market Model (Master).xlsx | QIA-00102032 | QIA-00102032 | Ryan 10 | R, FRE 403, H, FN, FRE 602 |
| PX-0017 | Microsoft Excel-Arbeitsblatt.xlsx | QIA-00347818 | QIA-00347818 | Ryan 11 | R, FRE 403, H, FN, FRE 602 |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0018 | Email chain dated 4/27/2018; M. Langsdorff to M. Napier "AW: Agenda - Genomics Business Team recurring meeting" | QIA-00262232 | QIA-00262235 | Ryan 12 | R, FRE 403, H, FN, FRE 602 |
| PX-0019 | Email dated 11/30/2016; J. Gammack to A. Ryan "Competitive assessment and mitigation plan to combact ArcherDx" | QIA-00098073 | QIA-00098073 | Ryan 13 | H, FRE 403 |
| PX-0020 | Email dated 11/16/2016; S. Tian to KJ Banuk "RE: Archer - AMP Corporate Workshop" | QIA-00070304 | QIA-00070305 | Ryan 14 | R, FRE 403, H, FN, FRE 602 |
| PX-0021 | Email chain dated 2/12/2019; exchange labs administrative group to A. Ryan "RE: Genoptix on Monday" | QIA-00098219 | QIA-00098220 | Ryan 15 | R, FRE 403, H |
| PX-0022 | Email dated 3/28/2018; M. Baird to S. Tian "Meeting Minutes from first project planning meeting for 17-1035-1 QIAseq RNAscan Version 2" | QIA-00144467 | QIA-00144468 | Ryan 16; Samara 9 | R, FRE 403, H |
| PX-0023 | Revenue Projections Millions of Dollars Life Science Plus MDx Spreadsheet | QIA-00139787 | QIA-00139787 | Ryan 17 | FN, FRE 602, FRE 403, DES |
| PX-0024 | Eric Lader Dep Exhibit 1 -NOD - Eric Lader | | | Lader 1 | R, FRE 403, BRPL |
| PX-0025 | Eric Lader Dep Exhibit 2 - Email dated 8/27/20 from Quinn Counsel to Archer Counsel, Regarding: Designation of 30(b)(6) topics | | | Lader 2 | R, FRE 403, H |
| PX-0026 | Meeting Request dated 4/16/15 Organized by E. Lader "Prioritization of resources in NGS" | QIA-00147369 | QIA-00147369 | Lader 3; Huang 8 | H |
| PX-0027 | 14-1013-1 QiaSeq targeted DNA kit (formerly DNAseq V3) Milestone 1: Kick Off | QIA-00305367 | QIA-00305367_0027 | Lader 4 | |
| PX-0028 | QiaSeq targeted DNA Kit - Operations Document (Consumables) GLO-SOP-32-02-201 Rev. 04 (3/7/2016) | QIA-00022108 | QIA-00022114 | Lader 5; Dayal 11 | |
| PX-0029 | BOM-333502.xlsx | QIA-00681873 | | Lader 6 | R, FRE 403 |
| PX-0030 | Email chain dated 1/20/15; E. Lader to C. Benoit "RE: To put you both in contact" | QIA-00878235 | QIA-00878238 | Lader 7; Liu 10 | R, FRE 403, H |
| PX-0031 | Email chain dated 6/5/15; H. Liu to E. Lader "Re: enzymatic fragmentation of gDNA for NGS" | QIA-00881064 | QIA-00881067 | Lader 8 | R, FRE 403, H |
| PX-0032 | 14-1012-1 FusionScan NGS - Milestone 1: Kick Off | QIA-00149040 | QIA-00149040_27 | Lader 9 | |
| PX-0033 | Operations Document (Consumables) GLO-SOP-32-02-201-A01 Rev. 04 (7/13/2016) | QIA-00001635 | QIA-00001646 | Lader 10; Huang 4; Dayal 12 | DES |
| PX-0034 | Bill of materials for the RNAscan | QIA-00681880 | QIA-00681880 | Lader 11; Huang 5 | DES, FN, FRE 602 |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0035 | QIASeq Targeted RNAscan - R&D Document (Chemistry and Assays) (7/12/2016) | QIA-00001652 | QIA-00001670 | Lader 12; Samara 30; Tian 18 | FN, FRE 602, FRE 403 |
| PX-0036 | Qiagen Lab Notebook - Song Tian; Notebook # 165 | QIA-00680871 | QIA-00681046 | Lader 13 | DES |
| PX-0037 | Email chain dated 9/9/15; E. Lader to Y. Wang "RE: fusion transcript databases" | QIA-00148376 | QIA-00148378 | Lader 14 | R, FRE 403, H |
| PX-0038 | Qiagen 3.2 Operations_Form - 14-1012-2 Targeted qRNA Seq (1/19/16) | QIA-00022922 | QIA-0022941 | Lader 15 | R, FRE 403 |
| PX-0039 | QIAseq 96-Index I Set A, B, C, or D Kit (348) | QIA-00023594 | QIA-00023597 | Lader 16 | |
| PX-0040 | Project Planning Form: Overview - Project 14-1013-1/Targeted DNASeq V3 | QIA-01044270 | QIA-01044270 | Lader 17 | R, FRE 403, FN, FRE 602, A |
| PX-0041 | LS BRC PD Update 20141124.xlsx | QIA-00144453 | QIA-00144453 | Lader 18 | R, FRE 403 |
| PX-0042 | Email dated 12/10/14; E. Lader to V. Devgan "RE: RNAseq developments" | QIA-00148346 | QIA-00148346 | Lader 19 | R, FRE 403, H |
| PX-0043 | Email dated 1/19/15; E. Lader to V. Devgan "prediscuss?" | QIA-00147523 | QIA-00147523 | Lader 21 | R, FRE 403, H |
| PX-0044 | Email dated 1/19/15; Y. Wang to E. Lader "RE: enzymatics" | QIA-00147488 | QIA-00147488 | Lader 22 Wang 17 | R, FRE 403, H |
| PX-0045 | Email dated 1/12/15; J. DiCarlo to E. Lader "RE: Announcement: Welcome Enzymatics!" | QIA-00147545 | QIA-00147545 | Lader 23 | R, FRE 403, H |
| PX-0046 | Email dated 1/27/15; V. Devgan to J. Viola "RE: When should we setup a call with ArcherDX" | QIA-00147493 | QIA-00147493 | Lader 24 | R, FRE 403, H |
| PX-0047 | Email dated 2/6/2015; E. Lader to J. DiCarlo "RE: Ion Results" | QIA-00147512 | QIA-00147512 | Lader 25 | R, FRE 403, H |
| PX-0048 | Meeting Request dated 2/10/15; Organized by E. Lader "Archer Dx field app presentation" | QIA-00147482 | QIA-00147482 | Lader 26 | R, FRE 403, H |
| PX-0049 | Email dated 3/18/2015; E. Lader to Q. Jiang "archer training - please include Liang" | QIA-00147449 | QIA-00147449 | Lader 27 | R, FRE 403, H |
| PX-0050 | Email dated 2/9/15; E. Lader to R. Samara "RE: available Friday 9-10:30 for archer training?" | QIA-00147513 | QIA-00147513 | Lader 28 | R, FRE 403, H |
| PX-0051 | Email dated 4/23/15; E. Lader to J. Viola "Archer Dx" | QIA-00147385 | QIA-00147385 | Lader 29 | R, FRE 403, H |
| PX-0052 | Email chain dated 5/8/15; K. te Kaat to J. Arnold "FW: Assessment Archer panesl" | QIA-00062268 | QIA-00062269 | Lader 30 | R, FRE 403, H |
| PX-0053 | Email chain daed 5/12/15; K. te Kaat to T. Rothmann "FW: Assessment Archer panesl" | QIA-00689469 | QIA-00689472 | Lader 31 | R, FRE 403, H |
| PX-0054 | Email dated 6/25/15; E. Lader to V. Devgan "archer" | QIA-00158249 | QIA-00158249 | Lader 32 | R, FRE 403, H, DES |
| PX-0055 | Email dated 6/25/15; E. Lader to V. Devgan "archer" | QIA-00147303 | QIA-00147303 | Lader 33 | R, FRE 403, H, DES |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0056 | Email dated 9/10/15; E. Lader to S. Tian "RE: about MCF7 test" | QIA-00148408 | QIA-00148408 | Lader 34; Tian 32 | R, FRE 403, H |
| PX-0057 | Email dated 5/3/16; E. Lader to S. Tian "FW: RNAscan panel vs Archer" | QIA-00146808 | QIA-00146808 | Lader 35 | R, FRE 403, H |
| PX-0058 | Email chain dated 5/3/16; E. Lader V. Devgan "RE: about Archer new panel" | QIA-00146647 | QIA-00146648 | Lader 36 | R, FRE 403, H |
| PX-0059 | Email chain dated 8/22/16; E. Lader to S. Tian "RE: Caris update" | QIA-00157424 | QIA-00157428 | Lader 37 | R, FRE 403, H |
| PX-0060 | Email chain dated 12/18/17; E. Lader to B. Haedrich "RE: how to increase market share through acquisitions?" | QIA-00153161 | QIA-00153162 | Lader 38 | R, FRE 403, H |
| PX-0061 | Email chain dated 9/11/17; Z. Wu to R. Samara "RE: cfDNA 0.1 VAF" | QIA-00316465 | QIA-00316467 | Lader 39; Wu 67 | R, FRE 403, H |
| PX-0062 | Email dated 11/9/16; D. Shuster to H. Liu "FW: WGS and ERA update" | QIA-01028707 | QIA-01028707 | Lader 40 | R, FRE 403, H, FN, FRE 602 |
| PX-0063 | Email chain dated 9/29/15; Z. Wu to E. Lader "RE: V3 kick off slides" | QIA-00148706 | QIA-00148708 | Lader 41 | R, FRE 403, H |
| PX-0064 | Email dated 6/3/16; E. Lader to D. Schuster "Some Questions" | QIA-00987611 | QIA-00987612 | Lader 42 | R, FRE 403, H |
| PX-0065 | Email chain dated 11/16/16; E. Lader to K. Banuk "RE: RNAscan Panels - IP" | QIA-01063501 | QIA-01063504 | Lader 43 | R, FRE 403, H |
| PX-0066 | Email chain dated 7/13/18; S. Rulli to E. Lader "Re: RapidClear :(" | QIA-00526404 | QIA-00526406 | Lader 45 | R, FRE 403, H |
| PX-0067 | Amended Notice of Deposition - Song Tian | n/a | n/a | Tian 1 | R, FRE 403, BRPL |
| PX-0068 | Plaintiff's Notice of 30(b)(6) Deposition of Qiagen | n/a | n/a | Tian 2 | R, FRE 403, BRPL |
| PX-0069 | QIAseq targeted RNAscan panels | n/a | n/a | Tian 3 | DES |
| PX-0070 | QC protocol (QIAseq Targeted RNAscan Panel QC) | QIA-00677105 | QIA-00677124 | Tian 5 | R, FRE 403 |
| PX-0071 | QIAseq target RNAscan data analysis handbook (November 2017) | QIA-00042436 | QIA-00042464 | Tian 6 | |
| PX-0072 | Attachment Global Project Management SOP - Project Assignment (PA)- GLO-SOP-33-01-001-A02 Rev. 01 | QIA-00022615 | QIA-00022617 | Tian 7 | |
| PX-0073 | QIASeq RNAfusion -R&D Document (Chemistry and Assays) | QIA-00022659 | QIA-00022667 | Tian 8 | FRE 403 |
| PX-0074 | QIAseq Targeted RNA Chemistry and Content - PD/R&D Document (Chemistry and Assays) (1/8/2016) | QIA-00024072 | QIA-00024081 | Tian 9 | FRE 403 |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0075 | QIAseq RNAscan - Operation Document (Consumables) (4/20/1026) | QIA-00023134 | QIA-00023140 | Tian 10 | |
| PX-0076 | QIAsecTarget RNAscan- Project Management Document (4/21/2016) | QIA-00001647 | QIA-00001651 | Tian 11 | |
| PX-0077 | QiaSeq Fusion RNA kit - Operation Document (Consumables) (5/10/2015) | QIA-00020029 | QIA-00020033 | Tian 12 | |
| PX-0078 | Song Tian Dep Exhibit 13- Qiagen - 14-1012-1 - QIAseq Fusion RNA NGS - Milestone 2: Product Concept | n/a | n/a | Tian 13 | DES |
| PX-0079 | QIASeq RNAflex - R&D Document (Chemistry and Assays) (3/3/2016) | QIA-00227180 | QIA-00227193 | Tian 14 | FRE 403 |
| PX-0080 | Song Tian Dep Exhibit 15- Qiagen- 14-1012-1- QIAseq Targeted RNAscan - Milestone 3: Design Freeze | QIA-00226789 | QIA-00226789 | Tian 15 | DES |
| PX-0081 | Qiagen- Standard Operating Procedure Confidential | QIA-00026953 | QIA-00026961 | Tian 16 | |
| PX-0082 | Song Tian Dep Exhibit 19- Qiagen - QIAseq Targeted RNAScan - 14-1012-1 - Milestone 5: Launch Readiness | QIA-00225446 | QIA-00225446 | Tian 19 | DES, FN, FRE 602, R, FRE 403 |
| PX-0083 | Song Tian Dep Exhibit 20- Qiagen- QIAseq RNAscan V2 - Marketing Document (GLO-SOP-32-02-004-A01 Rev. 06)(8/18/2018) | QIA-00045311 | QIA-00045311 | Tian 20; Samara 5 | DES, FN, FRE 602, R, FRE 403 |
| PX-0084 | QIAseq Targeted RNAsca V2 - PD/RD Document (Chemistry and Assays) GLO-SOP-32-02-101-A01 Rev. 05 (9/8/2018) | QIA-00045366 | QIA-00045373 | Tian 21 | FRE 403 |
| PX-0085 | Email chain dated 9/22/15; S. Tian to J. DiCarlo "RE: new targets for RNA fusions via SPE" | QIA-00547349 | QIA-00547354 | Tian 22 | R, FRE 403, H |
| PX-0086 | Email chain dated 8/29/18; Exchange administrative group to J. Zhou "RE: RNAscan panel design and data analysis enquiry" | QIA-00217824 | QIA-00217826 | Tian 23 | R, FRE 403, H |
| PX-0087 | Qiagen Beverly - Product Requirements Document- P7390 Rev 01 | QIA-00569160 | QIA-00569165 | Tian 24 | R, FRE 403, FN, FRE 602 |
| PX-0088 | Qiagen Beverly - Product Requirements Document Template - FMSOP-0011.2 Rev 03 (Doc L6030) | QIA-00569166 | QIA-00569169 | Tian 25 | R, FRE 403, FN, FRE 602 |
| PX-0089 | Qiagen Beverly - Product Requirements Document Template - FMSOP-0011.2 Rev 03 (Doc P7600) | QIA-00569170 | QIA-00569173 | Tian 26 | R, FRE 403, FN, FRE 602 |
| PX-0090 | Enzymatics Quote - Number 12064 (11/4/2015) | QIA-00539809 | QIA-00539809 | Tian 27 | R, FRE 403 |
| PX-0091 | Song Tian Dep Exhibit 28- CAPEX/OPEZ Approval/Purchase Requisition (1/14/2016) | QIA-00597932 | QIA-00597932 | Tian 28 | R, FRE 403, FN, FRE 602, DES |
| PX-0092 | Song Tian Dep Exhibit 29- CAPEX/OPEZ Approval/Purchase Requisition (5/6/2016) | QIA-00595483 | QIA-00595483 | Tian 29 | R, FRE 403, FN, FRE 602, DES |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0093 | Email Dated 8/25/16; S. Tian to L. Huang "RE: lyophilization for NGS lib prep" | QIA-00217914 | QIA-00217914 | Huang 15;<br>Tian 30 | R, FRE 403, H |
| PX-0094 | Email chain dated 9/28/16; J. Kern to S. Tian "RE: lyophilization" | QIA-00216884 | QIA00216886 | Tian 31;<br>Liu 20 | R, FRE 403, H |
| PX-0095 | Song Tian Dep Exhibit 33-Qiagen- Archer Custom Fusion Panel PowerPoint | QIA-00148530 | QIA-00148530 | Tian 33;<br>Huang 9 | R, FRE 403, FN, FRE 602, DES |
| PX-0096 | Email dated 1/21/16; S. Tian to F. Reinecke "RE: Fusion Controls from Archer" | QIA-00145230 | QIA-00145230 | Tian 34 | R, FRE 403, H |
| PX-0097 | Email dated 3/24/16; S. Tian to E. Lader "Archer Custom Panel Generation.pptx" | QIA-00145838 | QIA-00145838 | Tian 35 | R, FRE 403, H |
| PX-0098 | Email chain dated 4/19/16; S. Tian to C. Bergmann "RE: User interface questions for RNA fusion" with "Archer Custom Panel Generation.pptx" attached | QIA-00226631 (Email) | QIA-00226632 (Email)<br>QIA-00226633 (PP) | Tian 36 | R, FRE 403, H, M |
| PX-0099 | Email chain dated 4/25/16; S. Tian to R. Samara "about competitor" | QIA-00226607 | QIA-00226610 | Tian 37 | R, FRE 403, H |
| PX-0100 | Email chain dated 5/20/16; E. Lader to S. Tian "RE: about Archer new panel" | QIA-00146687 | QIA-00146687 | Tian 38 | R, FRE 403, H |
| PX-0101 | Email date 5/18/16; S. Tian to E. Lader "RE: not news, but a press release" | QIA-00226166 | QIA-00226167 | Tian 39 | R, FRE 403, H |
| PX-0102 | Email chain dated 6/27/15; S. Tian to J. Deng "RE: Archer Analysis 4.1 VM" | QIA-00226058 | QIA-00226060 | Tian 40 | R, FRE 403, H |
| PX-0103 | Email chain dated 10/6/16; S. Tian to K. Banuk "RE: In 2 days! Targeted therapy response reporting by the Jackson Lab using Archer FusionPlex" | QIA-00214860 | QIA-00214861 | Tian 41 | R, FRE 403, H |
| PX-0104 | Email chain dated 5/12/16; S. Tian to V. Devgan "RE: difference between Qiagen's RNA Fusion workflow and Archer's workflow" | QIA-00226771 | QIA-00226773 | Tian 42 | R, FRE 403, H |
| PX-0105 | Zhong Wu Dep Exhibit 44- Amended Notice of Deposition of Zhong Wu | n/a | n/a | Wu 44 | R, FRE 403, BRPL |
| PX-0106 | Zhong Wu Dep Exhibit 45 -Plaintiffs' Amended Notice of Rule 30(b)(6) Deposition of Qiagen [Dkt. 176] | n/a | n/a | Wu 45 | R, FRE 403, BRPL |
| PX-0107 | Qiagen QIAseq FX DNA Library Kit (96) Handbook (October 2015) | QIA-00774440 | QIA-00774471 | Wu 46 | |
| PX-0108 | Zhong Wu Dep Exhibit 47 - Research and Foundation Group - Excel - QIAseq DNA panel development | n/a | n/a | Wu 47 | DES |
| PX-0109 | Zhong Wu Dep Exhibit 48- Pages from Qiagen Website | n/a | n/a | Wu 48 | DES, R, FRE 403 |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0110 | Zhong Wu Dep Exhibit 49- Bill of Materials for QIAseq targeted DNA panel | QIA-00681873 | QIA-00681873 | Wu 49 | FN, FRE 602 |
| PX-0111 | PD FDK Project IDs.xlsx | QIA-00139651 | QIA-00139651 | Wu 50 | R, FRE 403, FN, FRE 602 |
| PX-0112 | Zhong Wu Dep Exhibit 51- Qiagen- Product Development Projects Overview & Planning Status BCCOE January 31, Eric Lader | n/a | n/a | Wu 51 | R, FRE 403 |
| PX-0113 | Zhong Wu Dep Exhibit 52- Qiagen- 14-1013-1 - QiaSeq targeted DNA kit (formerly targeted DNAseq V3) Milestrone 1: Kick Off (September 29, 2015) | n/a | n/a | Wu 52 | DES |
| PX-0114 | Zhong Wu Dep Exhibit 53- QIAseq Targeted DNAseq Kit Concept - Zhong Wu, BRC Product Development | n/a | n/a | Wu 53 | DES |
| PX-0115 | QiaSeq targeted DNA kit - Operations Document (Consumables) GLO-SOP-32-02-201-A01 Rev. 04 (5/10/2015) | QIA-00020397 | QIA-000201401 | Wu 54 | R, FRE 403 |
| PX-0116 | QIASeq targeted DNAseq (formerly targeted DNAseq V3) R&D Document (Chemistry and Assays) (10/8/2015) | QIA-00023987 | QIA-00023996 | Wu 55 | |
| PX-0117 | Zhong Wu Dep Exhibit 56- Qiagen- Sample & Assay Technologies - Product Development- Workflow (1st Draft) | n/a | n/a | Wu 56 | FRE 403; AL |
| PX-0118 | T-cell Receptor Immuno-Profiling for Immume-Repertoire Diversity- PD/R&D Document (Chemistry and Assays) GLO-SOP-32-02-101-A01 Rev. 04 (5/30/2017) | QIA-00026989 | QIA-00026996 | Wu 57 | |
| PX-0119 | QIASeq DNA- Project Management Document - GLO-SOP-32-02-002-A01 Rev. 03 (10/15/2015) | QIA-00025152 | QIA-00025155 | Wu 58 | |
| PX-0120 | Zhong Wu Dep Exhibit 59- R&D Group Meeting, Zhong Wu, NGS Product Development | QIA-00026832 | QIA-00026832 | Wu 59 | R, FRE 403 |
| PX-0121 | Zhong Wu Dep Exhibit 61- Zhong Wu Monthly Report, Eric's group | QIA-0014467 | QIA-0014467 | Wu 61 | R, FRE 403 |
| PX-0122 | Email dated 10/3/2016; S. Tian to Z.Wu and Y. Wang "about archer" | QIA-00214910 | QIA-00214910 | Wu 62 | R, FRE 403, H |
| PX-0123 | Calendar invite dated 2/10/2015 "Archer Dx field app presentation" | QIA-0014782 | QIA-0014782 | Wu 63 | R, FRE 403 |
| PX-0124 | Email dated 1/5/2017; J. Kern to E. Lader et al "RE: follow up" | QIA-00140510 | QIA-00140516 | Wu 64 | R, FRE 403, H |
| PX-0125 | Email dated 1/24/2017l; S. Tian to Z. Wu "archer reads" | QIA-00217975 | QIA-00217975 | Wu 65 | R, FRE 403 |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0126 | Email chain dated 3/31/17; E. Lader to Z. Wu "RE: and another thing - TCR NGS" | QIA-00154222 | QIA-00154223 | Wu 66 | R, FRE 403, H |
| PX-0127 | Email chain dated 9/19/17; Z. Wu to E. Lader "RE: Cheat sheets" | QIA-00149699 | QIA-00149700 | Samara 26; Wu 68 | |
| PX-0128 | Lesley Tomlin Dep Exhibit 1- Notice of Deposition of Lesley Tomlin | n/a | n/a | Tomlin 1 | R, FRE 403, BRPL |
| PX-0129 | Tomlin Dep. Ex. 2 | n/a | n/a | Tomlin 2 | R, FRE 403, BRPL |
| PX-0130 | Lesley Tomlin Dep Exhibit 3- Lesley Tomlin LinkedIn | n/a | n/a | Tomlin 3 | R, FRE 403, H |
| PX-0131 | Qiagen - QIAseq Targeted DNA and RNAscan Panels: Wholly Book | QIA-00200691 | QIA-00200691 | Tomlin 4; Samara 22 | |
| PX-0132 | Qiagen - Explore the RNA Universe, Providing a Customer Journey Power Point | QIA-00251228 | QIA-00251228 | Tomlin 5 | |
| PX-0133 | Meeting Request Dated 1/18/2017; Organizer- L. Tomlin "FW: OHSU" | QIA-00253827 | QIA-00253828 | Tomlin 6 | FRE 403, H |
| PX-0134 | Email Dated 11/2/2016; L. Tomlin to T. Oberbroeckling "Re: Archer at AMP" | QIA-00265208 | QIA-00265209 | Tomlin 7 | R, FRE 403, H |
| PX-0135 | Email Dated 9/6/2018; F. Hall to L, Zinetti "RE: Myeloid Neoplasm marketing idea :)" | QIA-00080116 | QIA-00080119 | Tomlin 8 | R, FRE 403, H |
| PX-0136 | Email Dated 3/22/2017; B. Banks to L. Tomlin "FW: Great News !" | QIA-00263201 | QIA-00263201 | Tomlin 9 | R, FRE 403, H, FN, FRE 602 |
| PX-0137 | Jean Pascal Viola Dep Exhibit 1 - Notice of Deposition of Jean Pascal Viola | n/a | n/a | Viola 1 | R, FRE 403, BRPL |
| PX-0138 | Jean Pascal Viola Dep Exhibit 2- Email Dated 9/8/2020; Qiagen Counsel to Archer Counsel, Regarding Deposition Topics | n/a | n/a | Viola 2 | R, FRE 403, H |
| PX-0139 | Email Dated 2/16/2014; K. te Kaat to P. Shatz "FW: Presentations" | QIA-00271146 | QIA-00271146 | Viola 3 | R, FRE, 403, FN, FRE 602 |
| PX-0140 | Enzymatics - Qiagen Meeting, May 14 &15, 2014 Agenda | QIA-00270688 | QIA-00270691 | Viola 4 | R, FRE 403 |
| PX-0141 | Email Dated 4/7/2014; K. te Kaat to S. Picone "Re: Archer Kit evaluation Qiagen" | QIA-00271147 | QIA-00271147 | Viola 5 | R, FRE 403 |
| PX-0142 | EC Update Report Project Vault - 6/27/2014 Power Point | QIA-00270686 | QIA-00270686 | Viola 6 | R, FRE 403 |
| PX-0143 | Email Dated 8/22/2014; J. Viola to U. Schriek "Notes from call with JPM on Vault" | QIA-00273748 | QIA-00273749 | Viola 7 | R, FRE 403 |
| PX-0144 | Email chain dated 11/24/2014; J. Viola to K. te Kaat "Re: My notes for your edits and comments for ArcherDX discussions" | QIA-00271737 | QIA-00271739 | Viola 9 | R, FRE 403 |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0145 | Email dated 12/8/2014; C. LaPointe to J. Loprenz "Re: ATA IP question / still open IP issues" | ADX - 000365753 | ADX - 000365753 | Viola 16 | R, FRE 403 |
| PX-0146 | Email dated 1/16/2015; J. Viola to P. Schatz "Re: Who would be the best person to discuss RUO saless for ArcherDX outside of US?" | QIA-00273602 | QIA-00273603 | Viola 18 | R, FRE 403 |
| PX-0147 | Meeting Invitation dated 1/16/15; Organizer - J. Viola "Update ArcherDx deal - Opportunity for selling RUO outside of US" | QIA-00163184 | QIA-00163185 | Viola 19 | R, FRE 403 |
| PX-0148 | Email dated 8/3/2015; D. Liu to P. Schatz "Archer board" | QIA-00272058; QIA-002272056; QIA-00272266 | QIA-00272058; QIA-002272056; QIA-00272266 | Viola 20 | R, FRE 403 |
| PX-0149 | Email date 8/5/2015; T. Bernard to Viola "Archer Board" | QIA-00064010 | QIA-00064012 | Viola 21 | R, FRE 403, H |
| PX-0150 | Michael Hadjisavas Dep Exhibit 1- Plaintiff's Amended Notice of 30(b)(6) Deposition of Qiagen | n/a | n/a | Hadjisavas 1 | R, FRE 403, BRPL |
| PX-0151 | Michael Hadjisavas Dep Exhibit 2- Notice of Deposition of Michael Hadjisavas | n/a | n/a | Hadjisavas 2 | R, FRE 403, BRPL |
| PX-0152 | Hadjisavas Dep Ex. 3 | n/a | n/a | Hadjisavas 3 | R, FRE 403, BRPL, H |
| PX-0153 | Michael Hadjisavas Dep Exhibit 4- Hadjisavas LinkedIn Profile | n/a | n/a | Hadjisavas 4 | R, FRE 403, H |
| PX-0154 | Email Universal NGS Deck | QIA-00075708 | QIA-00075710 | Hadjisavas 5 | R, FRE 403 |
| PX-0155 | Universal NGS: Opportunity and Recommendations Power Point Feb. 2017 | QIA-00075711 | QIA-00075726 | Hadjisavas 6 | R, FRE 403 |
| PX-0156 | [redacted] | QIA-00098248 | QIA-00098250 | Hadjisavas 7 | DES, R, FRE 403, H |
| PX-0157 | [redacted] | QIA-00098398 | QIA-00098398 | Hadjisavas 8 | DES, R, FRE 403 |
| PX-0158 | Primer File | QIA-00097961 | QIA-00097965 | Hadjisavas 9 | DES, R, FRE 403 |
| PX-0159 | Primer3.txt Attachment | QIA-00097966 | QIA-00097978 | Hadjisavas 10 | DES, R, FRE 403 |
| PX-0160 | Standard Operating Protocols | QIA-00030288 | QIA-00030311 | Huang 7 | DES, FN, FRE 602, R, FRE 403 |
| PX-0161 | Gary Nealey Depo Exhibit 1- Notice of Deposition of Gary Nealey | n/a | n/a | Nealey 1 | R, FRE 403, BRPL |
| PX-0162 | Gary Nealey Depo Exhibit 2- Gary Nealey LinkedIn | n/a | n/a | Nealey 2 | R, FRE 403, H |
| PX-0163 | Qiagen 2019 North America Power Point | QIA-00170792 | QIA-00170792 | Nealey 3 | R, FRE 403 |
| PX-0164 | Email Dated 1/4/2019; G. Nealey to L. Tomlin "Fwd: [redacted]" | QIA-00553930 | QIA-00553932 | Nealey 4 | R, FRE 403, H |
| PX-0165 | Email Dated 12/27/2018; G. Nealey to M. Hadjisavas "Fwd: PO order help" | QIA-00170407 | QIA-00170409 | Nealey 5 | R, FRE 403, H |
| PX-0166 | Email Chain Dated 4/23/2018; K. Banuk to A. Montano "RE: ASCO landing page for review" | QIA-00072719 | QIA-00072722 | Nealey 6 | R, FRE 403, H |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0167 | Email Dated 1/25/2018; G. Nealey to Email Approval "Re: Quote Approval Required" | QIA-00170485 | QIA-00170486 | Nealey 7 | R, FRE 403, H |
| PX-0168 | Email Dated 4/25/2018; G. Nealey to L. Tomlin "Fwd: [redacted]" | QIA-00168350 | QIA-00168350 | Nealey 8 | R, FRE 403, H |
| PX-0169 | Email Dated 2/15/2018; G. Nealey to N. Tipton "RE: Agenda for AMP training next week" | QIA-00168440 | QIA-00168445 | Nealey 9 | R, FRE 403, H |
| PX-0170 | Email dated 11/26/14; T. Rothmann to S. Hughes "WG: Draft Objectives NGS IVD as discussed today" | QIA-00453311 | QIA-00453315 | Hughes 2 | R, FRE 403 |
| PX-0171 | Qiagen - GeneReader workflow: Overview Powerpoint | QIA-00008338 | QIA-00008338 | Hughes 3 | R, FRE 403 |
| PX-0172 | GeneReader portfolio.xlsx | QIA-00083956 | QIA-00083956 | Hughes 4 | R, FRE 403 |
| PX-0173 | GeneRead QIAact Lung All-in-One UMI Assay Handbook (July 2019) | QIA-00001730 | QIA-00001756 | Hughes 5 | |
| PX-0174 | Development Strategy for Appendix A - 21st of June 2015 | QIA-00063107 | QIA-00063112 | Hughes 6 | R, FRE 403, H |
| PX-0175 | Email dated 8/5/15; T. Rothmann to J. Leamon "WG: NGS Application Task Force" | QIA-00003349 | QIA-00003350 | Hughes 7 | R, FRE 403, H |
| PX-0176 | Qiagen- NGS Application Taskforce PowerPoint | QIA-00003351 | QIA-00003351 | Hughes 8 | R, FRE 403 |
| PX-0177 | Email chain dated 3/1/16; E. Lader to S. Hughers "RE: dammit" | QIA-00105227 | QIA-00105228 | Hughes 9 | R, FRE 403 |
| PX-0178 | Qiagen - V3.0 Assay - Product Description; A01 GLO-SOP-32-002 | QIA-00105249 | QIA-00105257 | Hughes 10 | R, FRE 403 |
| PX-0179 | V3.0 Assay - Technical Feasibility Plan | QIA-00105237 | QIA-00105248 | Hughes 11 | R, FRE 403 |
| PX-0180 | V3.0 Assay - Technical Assessment Sheet | QIA-00022869 | QIA-00022876 | Hughes 12 | R, FRE 403 |
| PX-0181 | GeneRead QIAact MLP RUO kit - Design and Development Plan | QIA-00033228 | QIA-00033254 | Hughes 15 | R, FRE 403 |
| PX-0182 | Jonathan Arnold Depo Exhibit 1 - Notice of Depostion of Jonathan Arnold [Dkt. 109] | n/a | n/a | Arnold 1 | R, FRE 403, BRPL |
| PX-0183 | Jonathan Arnold CV | QIA-00070050 | QIA-00070052 | Arnold 3 | R, FRE 403, H |
| PX-0184 | Email chain dated 4/6/15; M. Collasius to T. Bernard "AW: Our call" | QIA-00061511 | QIA-00061514 | Arnold 4 | R, FRE 403, H |
| PX-0185 | Email chain dated 3/23/15; J. Winter to R. Henfrey "RE: Fusion Gene Detection" | QIA-00061505 | QIA-00061508 | Arnold 5 | R, FRE 403, H |
| PX-0186 | Email dated 3/27/15; N. Thomson to B. Macy "Fusion Gene Detection - from the smarter perspective of today" | QIA-00058806 | QIA-00058807 | Arnold 6 | R, FRE 403, H |
| PX-0187 | Email dated 3/3/15; J. Arnold to J. Arnold "Kai 1:1 03/23/15" | QIA-00061352 | QIA-00061353 | Arnold 7 | R, FRE 403, H |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0188 | Email chain dated 4/17/15; J. Arnold to J. Myers "RE: Evaluation" | QIA-00061080 | QIA-00061081 | Arnold 8 | R, FRE 403, H |
| PX-0189 | Email dated 4/19/15; J. Arnold to T. Bernard "Slides and Bullets" | QIA-00061158 | QIA-00061158 | Arnold 9 | R, FRE 403, H |
| PX-0190 | Email chain dated 4/10/15; K. te Kaat to T. Bernard "RE: Archer Dx" | QIA-00061470 | QIA-00061471 | Arnold 10 | R, FRE 403, H |
| PX-0191 | Email chain dated 5/6/2015; J. Arnold to F. Ong "Re: fusion genes" | QIA-00061880 | QIA-00061880 | Arnold 11 | R, FRE 403, H |
| PX-0192 | Email chain dated 5/8/15; K. te Kaat to J. Arnold "FW: Assessment Archer panels" | QIA-00061967 | QIA-00061968 | Arnold 12 | R, FRE 403, H, I |
| PX-0193 | Qiagen - Archer Dx evaluation - BRC Product Development 2015 | QIA-00689470 | QIA-00689472 | Arnold 14 | R, FRE 403, H |
| PX-0194 | Email dated 5/13/2015; K te Kaat to T. Bernard "Gap in program setup" | QIA-00062370 | QIA-00062371 | Arnold 15 | R, FRE 403, H |
| PX-0195 | Email chain dated 7/13/2015; J. Arnold to P. Schatz "Re: Jonathan - how does this compare to ArcherDX?" | QIA-00063382 | QIA-00063384 | Arnold 16 | R, FRE 403, H |
| PX-0196 | Email dated 11/4/15; J. Arnold to S. Scott "RE: Gene Fusion in VCF export / Archer Dx" | QIA-00065324 | QIA-00065325 | Arnold 19 | R, FRE 403, H |
| PX-0197 | Email chain dated 2/3/16; J. Arnold to H. Mamuszka "RE: fusion in plasma on GR" | QIA-01050329 | QIA-01050332 | Arnold 20 | R, FRE 403, H |
| PX-0198 | Email dated 4/10/17; J. Arnold to P. Schlatz "RE: ArcherDX" | QIA-00073921 | QIA-00073921 | Arnold 21 | R, FRE 403, H |
| PX-0199 | Email chain dated 5/1/16; J. Arnold to P. Schatz "RE: Archerdx" | QIA-00066911 | QIA-00066912 | Arnold 22 | R, FRE 403, H |
| PX-0200 | Email chain dated 5/31/16; J. Arnold to K. te Kaat "RE: Archer moves closer to ILMN" | QIA-00066725 | QIA-00066725 | Arnold 23 | R, FRE 403, H |
| PX-0201 | Email chain dated 5/31/16; J. Arnold to P. Schatz "RE: Jonathan - any view?" | QIA-00066657 | QIA-00066658 | Arnold 24 | R, FRE 403, H |
| PX-0202 | Email dated 8/12/16; J. Arnold to K. te Kaat "RE: Investment review sone-pager.pptx" | QIA-00066174 | QIA-00066174 | Arnold 25 | R, FRE 403, H |
| PX-0203 | 2016 05 24 Strategy Planning.pptx | QIA-00062998 | QIA-00062998 | Arnold 26 | R, FRE 403, H |
| PX-0204 | Email dated 11/16/16; KJ Banuk to P. Schatz "FW: RNAscan Panels - IP" | QIA-01048651 | QIA-01048652 | Arnold 27 | R, FRE 403, H |
| PX-0205 | Yexun Wang Depo Exhibit 1- Notice of Deposition of Yexun Wang [Dkt 160] | n/a | n/a | Wang 1 | R, FRE 403, BRPL |
| PX-0206 | Yexun Wang Depo Exhibit 3- Yexun Wang LinkedIn | n/a | n/a | Wang 3 | R, FRE 403, H |
| PX-0207 | Qiagen - LS Research&Foundation Project Document - 13-1006-17 (1/12/2015) | QIA-00276982 | QIA-00276990 | Wang 4 | |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0208 | QIAseq Targeted DNA Panel Handbook (May 2017) | QIA-00001078 | QIA-00001153 | Wang 5 | FRE 403 |
| PX-0209 | QIAseq Targeted DNA adapters and primers.xls | QIA-00001671 | QIA-00001671 | Wang 6 | |
| PX-0210 | QIAseq adaptor and primer sequence-IOon.xls | QIA-00001673 | QIA-00001673 | Wang 7 | |
| PX-0211 | Email Chain dated 3/3/17; Y. Wang to Z. Wu "RE: Total Mutational Burder (TMB) Cancer Panel" | QIA-00154382 | QIA-00154384 | Wang 8 | R, FRE 403, H |
| PX-0212 | Yexun Wang Depo Exhibit 9- Qiagen - GeneGlobe - QIAsec Targeted DNA Panels | n/a | n/a | Wang 9 | R, FRE 403 |
| PX-0213 | Yexun Wang Depo Exhibit 10- QIAseq Targeted DNA Panel Handbook (February 2020) | n/a | n/a | Wang 10 | FRE 403 |
| PX-0214 | QIAseq Targeted Panel Analysis Plugin User Manual | QIA-00305267 | QIA-00305338 | Wang 11 | R, FRE 403 |
| PX-0215 | Email dated 8/1/17; R. Samara to X. Wang " RE: Help: Primer information" | QIA-00309859 | QIA-00309860 | Wang 12 | R, FRE 403, H |
| PX-0216 | DHS-103Z.primer5.txt | QIA-00310203 | QIA-00310209 | Wang 13 | R, FRE 403, NR |
| PX-0217 | QIAseq Targeted RNAscan Panel Handbook (August 2016) | QIA-00001156 | QIA-00001216 | Wang 14 | FRE 403 |
| PX-0218 | QIAseq Immune Repertoire RNA Library Handbook (November 2017) | QIA-00000963 | QIA-00001010 | Wang 15 | FRE 403 |
| PX-0219 | Yexun Wang Depo Exhibit 16- Scientific Reports - Targeted Single Primer Enrichment Sequencing with Single End Duplex-UMI (March 18, 2019) | n/a | n/a | Wang 16 | R, FRE 403, NR |
| PX-0220 | Yexun Wang Depo Exhibit 18- US Patent No. 10,760,120 | n/a | n/a | Wang 18 | R, FRE 403, NR |
| PX-0221 | Yexun Wang Depo Exhibit 19- Email dated 9/20/20 regarding Deposition Designation Topics | n/a | n/a | Wang 19 | R, FRE 403, H |
| PX-0222 | Raed Samara Depo Exhibit 1- Amended Notice of Deposition of Raed Samara [Dkt. 189] | n/a | n/a | Samara 1 | R, FRE 403, BRPL |
| PX-0223 | Raed Samara Depo Exhibit 3- Raed Samara LinkedIn | n/a | n/a | Samara 3 | R, FRE 403, H |
| PX-0224 | Qiagen - GLO-SOP-32-004-A01 Rev. 06 | QIA-00045311 | QIA-00045311 | Samara 5 | R, FRE 403, NR |
| PX-0225 | Email chain dated 5/10/17; R. Samara to S. Rulli "RE: Illumina Oncology research offerings expland with ArcherDX partnership" | QIA-00099119 | QIA-00099121 | Samara 6 | FN, FRE 602, R, FRE 403, H |
| PX-0226 | Email dated 9/6/17; R. Samara to J. Kang "RE:CNV" | QIA-00026402 | QIA-00026402 | Samara 7 | FN, FRE 602, R, FRE 403, H |
| PX-0227 | Email chain dated 5/19/16; R. Samara to S. Tian "RE: is this a thing we need to be prepared to address" | QIA-00146100 | QIA-00146102 | Samara 8 | FN, FRE 602, R, FRE 403, H |
| PX-0228 | Email chain dated 5/19/16; R. Samara to S. Tian "RE: is this a thing we need to be prepared to address" | QIA-00146103 | QIA-00146103 | | FN, FRE 602, R, FRE 403, H |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0229 | Email dated 12/19/17; M. Baird to E. Lader "Post Launch Meeting Notes: QIAseq Targeted RNAscan 14-1012-1" | QIA-01056826 | QIA-01056828 | Samara 10 | FN, FRE 602, R, FRE 403, H |
| PX-0230 | Email dated 4/25/17; S. Tian to R. Samara "about competitor" | QIA-00145676 | QIA-00145679 | Samara 11 | FN, FRE 602, R, FRE 403, H |
| PX-0231 | Email dated 12/6/18; K. Gonsoulin to D. Heard "RE: Neo Genomics - Multimodal Panel" | QIA-00058743 | QIA-00058745 | Samara 12 | FN, FRE 602, R, FRE 403, H |
| PX-0232 | Email chain dated 8/22/17; W. Lin to S. Tian "RE: Gene and target Exon for QIAseq RNAscan and DNA panels" | QIA-00150273 | QIA-00150277 | Samara 13 | FN, FRE 602, R, FRE 403, H |
| PX-0233 | Email chain dated 6/22/16; E. Lader to Y. Wang "RE:DNA/RNA panel inquiry" | QIA-00147085 | QIA-00147087 | Samara 14 | R, FRE 403, H |
| PX-0234 | ArcherDx FusionPlex Custom Panel Design | QIA-00145839 | QIA-00145839 | Samara 15 | ENP |
| PX-0235 | Email dated 5/19/16; R. Samara to E. Lader "RE: about ArcherDx kit" | QIA-00163189 | QIA-00163189 | Samara 16 | R, FRE 403, H |
| PX-0236 | Email dated 7/26/17; R. Samara to S. Rulli "RE: Archer - Custom design" | QIA-00095972 | QIA-00095973 | Samara 17 | FN, FRE 602, R, FRE 403, H |
| PX-0237 | Email dated 11/16/16; KJ Banuk to E. Lader "RE: RNAscan Panels - IP" | QIA-01063060 | QIA-01063061 | Samara 18 | FN, FRE 602, R, FRE 403, H |
| PX-0238 | Email chain dated 11/16/16; KJ Banuk to V. Simonsen "RE: RNAscan Panels - IP" | QIA-01063463 | QIA-01063464 | Samara 19 | FN, FRE 602, R, FRE 403, H |
| PX-0239 | Email Invitation dated 12/3/16; Subject: Internal Call - [redacted] | QIA-00149290 | QIA-00149291 | Samara 20 | FN, FRE 602, R, FRE 403, H |
| PX-0240 | Email chain dated 6/30/16; V. Simonsen to S. Tian "FW: [redacted]" | QIA-01062845 | QIA-01062852 | Samara 21 | FN, FRE 602, R, FRE 403, H |
| PX-0241 | Email dated 9/11/2017; R. Samara to E. Lader "Re: cfDNA 0.1% VAF" | QIA-00150025 | QIA-00150026 | Samara 23 | R, FRE 403, H |
| PX-0242 | Email chain dated 9/14/2017; E. Lader to R. Samara "RE: Archer poster - cfDNA and 0.1% VAF detection" | QIA-00095861 | QIA-00095862 | Samara 24 | R, FRE 403, H |
| PX-0243 | Email chain dated 9/12/17; R. Samara to E. Lader "RE: cfDNA 0.1% VAF" | QIA-00149728 | QIA-00149729 | Samara 25 | R, FRE 403, H |
| PX-0244 | QIAseq vs VarientPlex (Archer) | QIA-00149701 | QIA-00149701 | Samara 27 | AL, FN, FRE 602, R, FRE 403 |
| PX-0245 | Email dated 5/3/2016; R. Samara to S. Tian "RNAscan panel vs. Archer" | QIA-00146089 | QIA-00146089 | Samara 28 | FN, FRE 602, R, FRE 403, H |
| PX-0246 | Email chain dated 8/10/2016; R. Samara to S. Tian "RE: Sharing raw data from fusion comparison" | QIA-00218986 | QIA-00218987 | Samara 29 | FN, FRE 602, R, FRE 403, H |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0247 | QIASeq targeted DNA panel (formerly targeted DNAseq V3) - R&D Document (Chemistry and Assays) (7/13/2016) | QIA-00001619 | QIA-00001634 | Samara 31 | FRE 403 |
| PX-0248 | Email chain- 9/6/2018; L. Zinetti to R. Samara "RE: Myeloid Neoplasm marketing idea :)" | QIA-00080054 | QIA-00080058 | Samara 32 | FN, FRE 602, R, FRE 403, H |
| PX-0249 | Christopher Martinez StoneTurn Bio, Schedule 1 | n/a | n/a | Martinez 1 | ENP |
| PX-0250 | Materials Considered, Schedule 3 | n/a | n/a | Martinez 2 | ENP |
| PX-0251 | Form S-4 for Invitae Corporation | QIA-01072936 | QIA-01073303 | Martinez 6 | |
| PX-0252 | Christopher Martinez Depo Exhibit 7- Article from Nature, "Outlook Precision on Oncology" dated 9/24/20 | n/a | n/a | Martinez 7 | |
| PX-0253 | Michael Metzker Depo Exhibit 3- Fraiture et al., An innovative and integrated approach based on DNA walking to identify unauthorized GMOs, FOODCHEMISTRY 147:60-69 (2014) | n/a | n/a | Martinez 3; Metzker 3 | |
| PX-0254 | Michael Metzker Depo Exhibit 4- McCarty Article, Mu-Seq: Sequence-Based Mapping and Identification of Transposon Induced Mutations | n/a | n/a | Metzker 4 | |
| PX-0255 | Michael Metzker Depo Exhibit 6- Martin-Harris Article, Gene Walking Using Sequential Hybrid Primer Polymerase Chain Reaction | n/a | n/a | Metzker 6; McSwiggen 7 | |
| PX-0256 | Michael Metzker Depo Exhibit 7- Kircher Article, Double Indexing Overcomes Inaccurate in Multiplex Sequencing on the Illumina Platform | n/a | n/a | Metzker 7 | |
| PX-0257 | Michael Metzker Depo Exhibit 10- Newton Article, Exhibits LLL, Analysis of Any Point Mutation in DNA. The Amplification Refractory Mutation Systems (ARMS) | n/a | n/a | Metzker 10 | |
| PX-0258 | Michael Metzker Depo Exhibit 11- Amsterdam Article, Retroviral-Mediated Insertional Mutagenesis in Zebrafish | n/a | n/a | Metzker 11 | |
| PX-0259 | Michael Metzker Depo Exhibit 13- Kircher Paper, Double Indexing Overcomes Innacuracies in Multiplex Sequencing on the Illumina Platform | n/a | n/a | Metzker 13 | |
| PX-0260 | Christopher Corless (OHSU) Deposition Exhibit 1- Subpoena to Testify - Oregon Health & Science University | n/a | n/a | Corless (OHSU) 1 | R, FRE 403, BRPL |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0261 | Christopher Corless (OHSU) Deposition Exhibit 2- Subpoena to Produce Documents - Oregon Health & Science University | n/a | n/a | Corless (OHSU) 2 | R, FRE 403, BRPL |
| PX-0262 | Email dated 11/28/2018 | OHSU-001222 | OHSU-001299 | Corless (OHSU) 3 | FN, FRE 602, R, FRE 403, H |
| PX-0263 | QIAseq Targeted RNAscan Panel Handbook - February 2020 | | | Corless (OHSU) 4 | ENP |
| PX-0264 | Email dated 2/2/2018 | OHSU-001134 | OHSU-001182 | Corless (OHSU) 5 | FN, FRE 602, R, FRE 403, H |
| PX-0265 | Email dated 7/27/2016 | OHSU-002960 | OHSU-002962 | Corless (OHSU) 6 | FN, FRE 602, R, FRE 403, H |
| PX-0266 | Email dated 10/7/2016 | OHSU-003230 | OHSU-003236 | Corless (OHSU) 7 | FN, FRE 602, R, FRE 403, H |
| PX-0267 | Lawrence Eck (Genomic Testing) Depostion Exhibit 1- Subpoena to Testify - Genomic Testing Cooperative, LCA | n/a | n/a | Eck 1 | R, FRE 403, BRPL |
| PX-0268 | Lawrence Eck (Genomic Testing) Depostion Exhibit 2- Subpoena to Produce Documents - Genomic Testing Cooperative LCA | n/a | n/a | Eck 2 | R, FRE 403, BRPL |
| PX-0269 | Lawrence Eck (Genomic Testing) Depostion Exhibit 3- Email dated 8/27/2018; Qiagen Shipping Notification to L. Eck | GTC00000001 | GTC00000048 | Eck 3 | FN, FRE 602, R, FRE 403, H |
| PX-0270 | Matthew Johnson (Mayo Clinic) Deposition Exhibit 1 - Matthew Johnson Bio | n/a | n/a | Johnson 1 | R, FRE 403, H |
| PX-0271 | Matthew Johnson (Mayo Clinic) Deposition Exhibit 2- Subpoena to Testify - Mayo Clinic | n/a | n/a | Johnson 2 | R, FRE 403, BRPL |
| PX-0272 | Matthew Johnson (Mayo Clinic) Deposition Exhibit 3- Subpoena to Produce Documents - Mayo Clinic | n/a | n/a | Johnson 3 | R, FRE 403, BRPL |
| PX-0273 | Master Purchase Agreement | Mayo000004_0001 | Mayo000004_0011 | Johnson 4 | ENP |
| PX-0274 | Mayo Clinic - Supply Chain Mangement - New Document Signature Form | Mayo000014_0001 | Mayo000014_0007 | Johnson 5 | FN, FRE 602, R, FRE 403, H |
| PX-0275 | Mayo Clinic - Situation, Target, Proposal (STP) 3/23/16 | Mayo000015_0001 | Mayo000015_0001 | Johnson 6 | FN, FRE 602, R, FRE 403, H |
| PX-0276 | Mayo Clinic - Situation, Target, Proposal (STP) 11/26/19 | Mayo000017_0001 | Mayo000017_0002 | Johnson 7 | FN, FRE 602, R, FRE 403, H |
| PX-0277 | PO Line Listing - To Schedule 2016 | Mayo000009_0001 | Mayo000009_0086 | Johnson 8 | FN, FRE 602, R, FRE 403, H |
| PX-0278 | PO Line Listing - To Schedule 2017 | Mayo000010_0001 | Mayo000010_0087 | Johnson 9 | FN, FRE 602, R, FRE 403, H |
| PX-0279 | PO Line Listing - To Schedule 2018 | Mayo000011_0001 | Mayo000011_0085 | Johnson 10 | FN, FRE 602, R, FRE 403, H |
| PX-0280 | PO Line Listing - To Schedule 2019 | Mayo000012_0001 | Mayo000012_0075 | Johnson 11 | FN, FRE 602, R, FRE 403, H |
| PX-0281 | PO Line Listing - To Schedule 2020 | Mayo000013_0001 | Mayo000013_0033 | Johnson 12 | FN, FRE 602, R, FRE 403, H |
| PX-0282 | [redacted].xlsx | QIA-01071774 | QIA-01071774 | | R, FRE 403, H |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0283 | [redacted].pdf | QIA-01071775 | QIA-01071776 | | R, FRE 403, H |
| PX-0284 | [redacted].pptx | QIA-01071777 | QIA-01071777 | | FN, FRE 602, R, FRE 403, H |
| PX-0285 | Microsoft_Excel_Worksheet.xlsx | QIA-01071778 | QIA-01071778 | | FN, FRE 602, R, FRE 403, H |
| PX-0286 | Microsoft_Excel_Worksheet1.xlsx | QIA-01071779 | QIA-01071779 | | FN, FRE 602, R, FRE 403, H |
| PX-0287 | Microsoft_Excel_Worksheet2.xlsx | QIA-01071780 | QIA-01071780 | | FN, FRE 602, R, FRE 403, H |
| PX-0288 | Microsoft_Excel_Worksheet3.xlsx | QIA-01071781 | QIA-01071781 | | FN, FRE 602, R, FRE 403, H |
| PX-0289 | Microsoft_Excel_Worksheet4.xlsx | QIA-01071782 | QIA-01071782 | | FN, FRE 602, R, FRE 403, H |
| PX-0290 | Microsoft_Excel_Worksheet5.xlsx | QIA-01071783 | QIA-01071783 | | FN, FRE 602, R, FRE 403, H |
| PX-0291 | [redacted].pdf | QIA-01071784 | QIA-01071788 | | FN, FRE 602, R, FRE 403, H |
| PX-0292 | [redacted].doc.docx | QIA-01071789 | QIA-01071804 | | FN, FRE 602, R, FRE 403, H |
| PX-0293 | [redacted]xls | QIA-01071805 | QIA-01071805 | | FN, FRE 602, R, FRE 403, H |
| PX-0294 | [redacted]xls | QIA-01071806 | QIA-01071806 | | FN, FRE 602, R, FRE 403, H |
| PX-0295 | [redacted]. pdf | QIA-01071807 | QIA-01071823 | | FN, FRE 602, R, FRE 403, H |
| PX-0296 | Archer Balance Sheet - February 2016 | QIA-00067444 | QIA-00067447 | | FN, FRE 602, R, FRE 403 |
| PX-0297 | Archer Cash Flow Forecasts from February 2016 | QIA-00067575 | QIA-00067575 | | FN, FRE 602, R, FRE 403 |
| PX-0298 | Archer Cash Flow Forecasts from February 2017 | QIA-00067576 | QIA-00067576 | | FN, FRE 602, R, FRE 403 |
| PX-0299 | Archer Cash Flow Forecase from April 2016 | QIA-00066781 | QIA-00066785 | | R, FRE 403, H |
| PX-0300 | Archer Projections concerning Fusion Panels | QIA-00063722 | QIA-00063723 | | R, FRE 403, H |
| PX-0301 | Archer Product Slide Deck | QIA-00067932 | QIA-00067933 | | R, FRE 403, H |
| PX-0302 | Arnold's note from Update call with Archer | QIA-00065904 | QIA-00065906 | | R, FRE 403, H |
| PX-0303 | Archer technical information concerning Crossbow | QIA-00063382 | QIA-00063384 | | R, FRE 403, H |
| PX-0304 | Proposed board resolutions | QIA-00061361 | QIA-00061365 | | R, FRE 403, H |
| PX-0305 | DX-013_Hoskins.pdf | ADX - 000448578 | ADX - 000448834 | | FN, FRE 602, R, FRE 403, H |
| PX-0306 | DX-012_Haimes.pdf | ADX - 000448835 | ADX - 000449044 | | FN, FRE 602, R, FRE 403, H |
| PX-0307 | DX-008_Niederjohn.pdf | ADX - 000449388 | ADX - 000449597 | | FN, FRE 602, R, FRE 403, H |
| PX-0308 | DX-029_Johnson.pdf | ADX - 000450401 | ADX - 000450655 | | FN, FRE 602, R, FRE 403, H |
| PX-0309 | DX-030_Wemmer.pdf | ADX - 000451018 | ADX - 000451227 | | FN, FRE 602, R, FRE 403, H |
| PX-0310 | DX-031_LaBonte.pdf | ADX - 000451228 | ADX - 000451442 | | FN, FRE 602, R, FRE 403, H |
| PX-0311 | Lab Notebook 1.pdf | ADX - 000451684 | ADX - 000451898 | | FN, FRE 602, R, FRE 403, H |
| PX-0312 | DX-033_Walters.pdf | ADX - 000452126 | ADX - 000452336 | | FN, FRE 602, R, FRE 403, H |
| PX-0313 | DX-035_Moore.pdf | ADX - 000452337 | ADX - 000452558 | | FN, FRE 602, R, FRE 403, H |
| PX-0314 | Lab Notebook DX-006.pdf | ADX - 000452559 | ADX - 000452678 | | FN, FRE 602, R, FRE 403, H |
| PX-0315 | Lab Notebook RD-173.pdf | ADX - 000452679 | ADX - 000452904 | | FN, FRE 602, R, FRE 403, H |
| PX-0316 | Lab Notebook DX-016.pdf | ADX - 000452905 | ADX - 000453120 | | FN, FRE 602, R, FRE 403, H |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0317 | Lab Notebook DX-010.pdf | ADX - 000453121 | ADX - 000453336 | | FN, FRE 602, R, FRE 403, H |
| PX-0318 | Lab Notebook DX-014.pdf | ADX - 000453337 | ADX - 000453553 | | FN, FRE 602, R, FRE 403, H |
| PX-0319 | Lab Notebook DX-009.pdf | ADX - 000453554 | ADX - 000453769 | | FN, FRE 602, R, FRE 403, H |
| PX-0320 | Lab Notebook DX-021.pdf | ADX - 000453890 | ADX - 000454105 | | FN, FRE 602, R, FRE 403, H |
| PX-0321 | Lab Notebook DX-011_1.pdf | ADX - 000454106 | ADX - 000454324 | | FN, FRE 602, R, FRE 403, H |
| PX-0322 | USPTO Confirmation and Filing Receipt for Provisional Patent Application No. 61/645,364 (Filed 5/10/2012) | ADX - 000491305 | ADX - 000491341 | | R, FRE 403, H, NR |
| PX-0323 | WIPO Transmittal of US Application Number 61/679,302 (Filing Date 8/3/2012) | ADX - 000491342 | ADX - 000491422 | | R, FRE 403, H, NR, Dupe |
| PX-0324 | Transmittal of Provisional Patent Application 61/931,959 | ADX - 000365412 | ADX - 000365490 | | R, FRE 403, H, NR |
| PX-0325 | Lab Notebook DX-05 - Jenny Neiderjohn | ADX - 000447728 | ADX - 000447840 | | FN, FRE 602, R, FRE 403, H |
| PX-0326 | Lab Notebook DX-04 - Stahl | ADX - 000448354 | ADX - 000448465 | | FN, FRE 602, R, FRE 403, H |
| PX-0327 | Lab Notebook DX-02 - Violet Roskens | ADX - 000448466 | ADX - 000448577 | | FN, FRE 602, R, FRE 403, H |
| PX-0328 | Lab Notebook DX-07 - Kaylee Dollerschell | ADX - 000449274 | ADX - 000449387 | | FN, FRE 602, R, FRE 403, H |
| PX-0329 | Lab Notebook DX-01 - Kaylee Dollerschell | ADX - 000449598 | ADX - 000449711 | | FN, FRE 602, R, FRE 403, H |
| PX-0330 | Lab Notebook DX-03 | ADX - 000453770 | ADX - 000453889 | | FN, FRE 602, R, FRE 403, H |
| PX-0331 | Lab Notebook DX-11 | ADX - 000454325 | ADX - 000454444 | | FN, FRE 602, R, FRE 403, H |
| PX-0332 | Lab Notebook DX-22 - Danielle Fuller | ADX - 000468388 | ADX - 000468527 | | FN, FRE 602, R, FRE 403, H |
| PX-0333 | Partners Healthcare Invention Disclosure Form MGH_22318 | MGH - 0029827 | MGH - 0029834 | | R, FRE 403, H, NR |
| PX-0334 | Partners Healthcare Invention Disclosure Form | MGH - 0000003 | MGH - 0000030 | | R, FRE 403, H, NR |
| PX-0335 | Partners Healthcare Invention Disclosure Form | MGH - 0000201 | MGH - 0000204 | Castro 6 | R, FRE 403, H, NR |
| PX-0336 | Kristin Berhethon Lab Notebook | MGH - 0033105 | MGH - 0033213 | | FN, FRE 602, R, FRE 403, H, NR |
| PX-0337 | Bibi's Notebook | MGH - 0033214 | MGH - 0033368 | | FN, FRE 602, R, FRE 403, H, NR |
| PX-0338 | Bibi's Notebook # 2 | MGH - 0033369 | MGH - 0033415 | | FN, FRE 602, R, FRE 403, H, NR |
| PX-0339 | Bibi's Research Binder | MGH - 0033416 | MGH - 0033727 | | FN, FRE 602, R, FRE 403, H, NR |
| PX-0340 | Dan Mordes Lab Notebook | MGH - 0033728 | MGH - 0033867 | | FN, FRE 602, R, FRE 403, H, NR |
| PX-0341 | Zongli Zheng Lab Notebook - ROSI Mapping | MGH - 0033868 | MGH - 0033905 | | FN, FRE 602, R, FRE 403, H, NR |
| PX-0342 | Zongli Zheng Lab Notebook | MGH - 0033906 | MGH - 0034064 | | FN, FRE 602, R, FRE 403, H, NR |
| PX-0343 | Filing Receipt and Provisional Patent Application 61/645,364 (Filing Date 5/10/2012) | ADX - 000491305 | ADX - 000491341 | | R, FRE 403, H, NR |
| PX-0344 | WIPO Transmittal of US Application Number 61/679,302 (Filing Date 8/3/2012) | ADX - 000491342 | ADX - 000491422 | | R, FRE 403, H, NR, Dupe |
| PX-0345 | Lab Notebook DX-05 - Jenny Neiderjohn | ADX - 000447728 | ADX - 000447840 | | FN, FRE 602, R, FRE 403, H |
| PX-0346 | Lab Notebook DX-04 - Stahl | ADX - 000448354 | ADX - 000448365 | | FN, FRE 602, R, FRE 403, H |
| PX-0347 | Lab Notebook DX-02 - Violet Roskens | ADX - 000448466 | ADX - 000448577 | | FN, FRE 602, R, FRE 403, H |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0348 | Lab Notebook DX-13 - Ian Hoskins | ADX - 000448578 | ADX - 000448834 | | FN, FRE 602, R, FRE 403, H |
| PX-0349 | Lab Notebook DX-12 - Haimes | ADX - 000448835 | ADX - 000449044 | | FN, FRE 602, R, FRE 403, H |
| PX-0350 | Lab Notebook DX-08 - Niederjohn | ADX - 000449388 | ADX - 000449597 | | FN, FRE 602, R, FRE 403, H |
| PX-0351 | Lab Notebook DX-01 - Kaylee Dollerschell | ADX - 000449598 | ADX - 000449711 | | FN, FRE 602, R, FRE 403, H |
| PX-0352 | Lab Notebook DX-34 - Roberts | ADX - 000451899 | ADX - 000452125 | | FN, FRE 602, R, FRE 403, H |
| PX-0353 | Lab Notebook DX-33 - Walters | ADX - 000452126 | ADX - 000452336 | | FN, FRE 602, R, FRE 403, H |
| PX-0354 | LA377.B Protocol, Archer® VariantPlex® Reagents for [redacted]_KRB_06JUN18.docx | ADX - 000225156 | ADX - 000225178 | Stahl 11 | R, FRE 403, H |
| PX-0355 | PowerPoint - Archer Investor Presentation_ExactVisit_15APR2019 JM(1).pptx | ADX - 000173593 | ADX - 000173593 | | R, FRE 403, H |
| PX-0356 | PowerPoint - ArcherDX Differentiation - December 2018 | ADX - 000174055 | ADX - 000174055 | | R, FRE 403, H |
| PX-0357 | PowerPoint - ArcherDX Overview for Investors - March 2019 | ADX - 000174056 | ADX - 000174056 | | R, FRE 403, H |
| PX-0358 | PowerPoint - [redacted] - Archer - May 2019 | ADX - 000174366 | ADX - 000174366 | | R, FRE 403, H |
| PX-0359 | PowerPoint - Archer Oncology Market Overview - August 2018 | ADX - 000186029 | ADX - 000186029 | | R, FRE 403, H |
| PX-0360 | PowerPoint - Archer National Accounts Business Review 2019 | ADX - 000108161 | ADX - 000108161 | | R, FRE 403, H |
| PX-0361 | PowerPoint - ArcherDX Investor Presentation - October 2018 | ADX - 000108995 | ADX - 000108995 | | R, FRE 403, H |
| PX-0362 | PowerPoint - Archer - Immunoverse - Immune Repertoire Sequencing Assays | ADX - 000109064 | ADX - 000109064 | | R, FRE 403, H |
| PX-0363 | PowerPoint - Archer Orbimed Diligence Requests - February 2019 | ADX - 000111049 | ADX - 000111049 | | R, FRE 403, H |
| PX-0364 | PowerPoint - ArcherDX Investor Presentation - October 2018 | ADX - 000111285 | ADX - 000111285 | | R, FRE 403, H |
| PX-0365 | PowerPoint - Archer Account Update, 2014 2H Projections, NGS Product Roadmap | ADX - 000113021 | ADX - 000113021 | | R, FRE 403, H |
| PX-0366 | CdX Revenue by Customer 1Q 2019 | ADX - 000014016 | ADX - 000014016 | Russell 18 | R, FRE 403 |
| PX-0367 | Spreadsheet - Archer_sales_2014_final.xls | ADX - 000014351 | ADX - 000014351 | | R, FRE 403, FN, FRE 602, NR |
| PX-0368 | Spreadsheet - 2.8.1.29 Sales&Use Tax Payable_9302014.xlsx | ADX - 000015532 | ADX - 000015532 | | R, FRE 403, FN, FRE 602, NR |
| PX-0369 | Spreadsheet - New Sales Report.xlsx | ADX - 000021261 | ADX - 000021261 | | R, FRE 403, FN, FRE 602, NR |
| PX-0370 | Spreadshseet - Service Pricing_Final.xlsx | ADX - 000022525 | ADX - 000022525 | | R, FRE 403, FN, FRE 602, NR |
| PX-0371 | Spreadsheet - Customer Accountability | ADX - 000022529 | ADX - 000022529 | | R, FRE 403, FN, FRE 602, NR |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0372 | Removed | | | | |
| PX-0373 | Removed | | | | |
| PX-0374 | Removed | | | | |
| PX-0375 | Spreadsheet - Service Pricing Final | ADX - 000022553 | ADX - 000022553 | | R, FRE 403, FN, FRE 602, NR |
| PX-0376 | Pivot Spreadsheet | ADX - 000022558 | ADX - 000022558 | | R, FRE 403, FN, FRE 602, NR |
| PX-0377 | Spreadsheet - Service Pricing Final | ADX - 000022566 | ADX - 000022566 | | R, FRE 403, FN, FRE 602, NR |
| PX-0378 | Removed | | | | |
| PX-0379 | Spreadsheet - Service Pricing Final | ADX - 000022578 | ADX - 000022578 | | R, FRE 403, FN, FRE 602, NR |
| PX-0380 | Spreadsheet - 2015 Sales and R&D Usage.xls | ADX - 000024667 | ADX - 000024667 | | R, FRE 403, FN, FRE 602, NR |
| PX-0381 | Spreadsheet - New Sales Kits.xlsx | ADX - 000025124 | ADX - 000025124 | | R, FRE 403, FN, FRE 602, NR |
| PX-0382 | Spreadsheet - New Sales Kits.xlsx | ADX - 000025246 | ADX - 000025246 | | R, FRE 403, FN, FRE 602, NR |
| PX-0383 | Spreadsheet - 2017 ArcherDX Catalog Pricelist-Sales_2.xlsx | ADX - 000025385 | ADX - 000025385 | | R, FRE 403, FN, FRE 602, NR |
| PX-0384 | Spreadsheet - Archer Sales data for Roadshow - 2018 updated- 05FEB2019.xlsx | ADX - 000027741 | ADX - 000027741 | | R, FRE 403, FN, FRE 602, NR |
| PX-0385 | Spreadsheet - New Sales Kits.xlsx | ADX - 000028711 | ADX - 000028711 | | R, FRE 403, FN, FRE 602, NR |
| PX-0386 | Spreadsheet - sales tax codes by product type.xlsx | ADX - 000028830 | ADX - 000028830 | | R, FRE 403, FN, FRE 602, NR |
| PX-0387 | Spreadsheet - Q12019 Sales Report 12APR2019- FINAL.xlsx | ADX - 000028847 | ADX - 000028847 | | R, FRE 403, FN, FRE 602, NR |
| PX-0388 | Sales Spreadsheet | ADX - 000028864 | ADX - 000028864 | | R, FRE 403, FN, FRE 602, NR |
| PX-0389 | Spreadsheet - 2015 Sales _by account.xlsx | ADX - 000030859 | ADX - 000030859 | | R, FRE 403, FN, FRE 602, NR |
| PX-0390 | Spreadsheet - 2015 Sales and R&D Usage (version 1).xls | ADX - 000032389 | ADX - 000032389 | | R, FRE 403, FN, FRE 602, NR |
| PX-0391 | Spreadsheet - 1July17-18Dec17 Sales Data.xlsx | ADX - 000033388 | ADX - 000033388 | | R, FRE 403, FN, FRE 602, NR |
| PX-0392 | Spreadsheet - Archer Pricing_Sales_02Feb2015_3.xlsx | ADX - 000035002 | ADX - 000035002 | | R, FRE 403, FN, FRE 602, NR |
| PX-0393 | Spreadsheet - Archer Sales data for Roadshow - 2018 updated- 05FEB2019.xlsx | ADX - 000035636 | ADX - 000035636 | | R, FRE 403, FN, FRE 602, NR |
| PX-0394 | Spreadsheet - NewSalesKits_Draft.xlsx | ADX - 000037374 | ADX - 000037374 | | R, FRE 403, FN, FRE 602, NR |
| PX-0395 | Spreadsheet - New Sales Kits.xlsx | ADX - 000037476 | ADX - 000037476 | | R, FRE 403, FN, FRE 602, NR |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0396 | Spreadsheet - Odoo Rolling 12 Sales Analysis.xls | ADX - 000037552 | ADX - 000037552 | | R, FRE 403, FN, FRE 602, NR |
| PX-0397 | Spreadsheet - 2018 sales update_D.xlsx | ADX - 000037558 | ADX - 000037558 | | |
| PX-0398 | Spreadsheet - Archer-Sales-2014.xlsx | ADX - 000038304 | ADX - 000038304 | | R, FRE 403, FN, FRE 602, NR |
| PX-0399 | Spreadsheet - Sales By Customer and Product_050416.xlsx | ADX - 000039102 | ADX - 000039102 | | R, FRE 403, FN, FRE 602, NR |
| PX-0400 | Spreadsheet - Sales data 2015- Q3 2018.xlsx | ADX - 000042419 | ADX - 000042419 | Russell 3 | |
| PX-0401 | Spreadsheet - Copy of All Sales 2017 from TP.xlsx | ADX - 000042420 | ADX - 000042420 | | R, FRE 403, FN, FRE 602, NR |
| PX-0402 | Spreadsheet - Sales data 2015- Q3 2018.xlsx | ADX - 000042422 | ADX - 000042422 | | R, FRE 403, FN, FRE 602, NR |
| PX-0403 | Spreadsheet - Sales data 2015- Q3 2018.xlsx | ADX - 000042438 | ADX - 000042438 | | R, FRE 403, FN, FRE 602, NR |
| PX-0404 | Spreadsheet - July 2018 sales analytics v2 (version 1).xlsb | ADX - 000043845 | ADX - 000043845 | | R, FRE 403, FN, FRE 602, NR |
| PX-0405 | Spreadsheet - Archer global sales.xlsx | ADX - 000044234 | ADX - 000044234 | | R, FRE 403, FN, FRE 602, NR |
| PX-0406 | Spreadsheet - July 2018 sales analytics v2 (version 1).xlsb | ADX - 000044819 | ADX - 000044819 | | R, FRE 403, FN, FRE 602, NR |
| PX-0407 | Spreadsheet - Archer Pricing_Sales_03Feb2015.xlsx | ADX - 000045860 | ADX - 000045860 | | R, FRE 403, FN, FRE 602, NR |
| PX-0408 | Spreadsheet - Global Sales with Q3.xlsx | ADX - 000046999 | ADX - 000046999 | | R, FRE 403, FN, FRE 602, NR |
| PX-0409 | Spreadsheet - Service Pricing.xlsx | ADX - 000048214 | ADX - 000048214 | | R, FRE 403, FN, FRE 602, NR |
| PX-0410 | Spreadsheet - Service Pricing.xlsx | ADX - 000048364 | ADX - 000048364 | | R, FRE 403, FN, FRE 602, NR |
| PX-0411 | Spreadsheet - Global Sales with Q3 (fixed).xlsx | ADX - 000048832 | ADX - 000048832 | Russell 4 | |
| PX-0412 | Spreadsheet - Archer Pricing_Sales_7Nov2014.xlsx | ADX - 000052500 | ADX - 000052500 | | R, FRE 403, FN, FRE 602, NR |
| PX-0413 | Spreadsheet - Service Pricing_Final.xlsx | ADX - 000053376 | ADX - 000053376 | | R, FRE 403, FN, FRE 602, NR |
| PX-0414 | Spreadsheet - Global Sales with Q3 (fixed) copy 2.xlsx | ADX - 000053557 | ADX - 000053557 | | R, FRE 403, FN, FRE 602, NR |
| PX-0415 | Sales Spreadsheet | ADX - 000053662 | ADX - 000053662 | | R, FRE 403, FN, FRE 602, NR |
| PX-0416 | Spreadsheet - July 2018 sales analytics v2 copy.xlsx | ADX - 000053679 | ADX - 000053679 | | R, FRE 403, FN, FRE 602, NR |
| PX-0417 | Spreadsheet - Archer Sales data for Roadshow - 2018 updated-05FEB2019.xlsx | ADX - 000054662 | ADX - 000054662 | | |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0418 | Spreadsheet - Archer Sales data for Roadshow - 2018 updated-05FEB2019.xlsx | ADX - 000054664 | ADX - 000054664 | Russell 7 | |
| PX-0419 | Spreadsheet - 2018 sales update_D.xls | ADX - 000054715 | ADX - 000054715 | | R, FRE 403, FN, FRE 602, NR |
| PX-0420 | Spreadsheet - Archer Sales data for Roadshow 26NOV2018.xlsx | ADX - 000054931 | ADX - 000054931 | | R, FRE 403, FN, FRE 602, NR |
| PX-0421 | Spreadsheet - Copy of Sales data 2015- Q3 2018 v2.xlsx | ADX - 000055198 | ADX - 000055198 | | R, FRE 403, FN, FRE 602, NR |
| PX-0422 | Spreadsheet - Sales data 2015- Q3 2018.xlsx | ADX - 000055216 | ADX - 000055216 | | R, FRE 403, FN, FRE 602, NR |
| PX-0423 | Spreadsheet - Sales data 2015- Q3 2018.xlsx | ADX - 000055224 | ADX - 000055224 | | R, FRE 403, FN, FRE 602, NR |
| PX-0424 | Spreadsheet - Sales data 2015- Q3 2018.xlsx | ADX - 000055226 | ADX - 000055226 | | R, FRE 403, FN, FRE 602, NR |
| PX-0425 | Spreadsheet - Copy of Sales data 2015- Q3 2018 JR.xlsx | ADX - 000055228 | ADX - 000055228 | | R, FRE 403, FN, FRE 602, NR |
| PX-0426 | Spreadsheet - Sales data 2015- Q3 2018.xlsx | ADX - 000055230 | ADX - 000055230 | | R, FRE 403, FN, FRE 602, NR |
| PX-0427 | Spreadsheet - 1July17-18Dec17 Sales Data.xlsx | ADX - 000057018 | ADX - 000057018 | | R, FRE 403, FN, FRE 602, NR |
| PX-0428 | Spreadsheet - New Sales Kits.xlsx | ADX - 000070845 | ADX - 000070845 | | R, FRE 403, FN, FRE 602, NR |
| PX-0429 | Spreadsheet - Archer-Sales-2014.xlsx | ADX - 000072462 | ADX - 000072462 | | R, FRE 403, FN, FRE 602, NR |
| PX-0430 | Spreadsheet - Global Sales with Q3 (fixed).xlsx | ADX - 000073482 | ADX - 000073482 | Russell 11 | |
| PX-0431 | Spreadsheet - Global Sales with Q3 (fixed).xlsx | ADX - 000073486 | ADX - 000073486 | | R, FRE 403, FN, FRE 602, NR |
| PX-0432 | Spreadsheet - Global Sales with Q3.xlsx | ADX - 000073493 | ADX - 000073493 | | R, FRE 403, FN, FRE 602, NR |
| PX-0433 | Spreadsheet - Archer global sales.xlsx | ADX - 000073532 | ADX - 000073532 | | R, FRE 403, FN, FRE 602, NR |
| PX-0434 | Spreadsheet - 18AUG2018 Sales Report rt.xlsx | ADX - 000073558 | ADX - 000073558 | | R, FRE 403, FN, FRE 602, NR |
| PX-0435 | Spreadsheet - July 2018 sales analytics v2 (version 1).xlsb | ADX - 000073623 | ADX - 000073623 | | R, FRE 403, FN, FRE 602, NR |
| PX-0436 | Spreadsheet - 2015 Sales _by account.xlsx | ADX - 000077747 | ADX - 000077747 | | R, FRE 403, FN, FRE 602, NR |
| PX-0437 | Spreadsheet - 2015 Sales and R&D Usage (version 1).xls | ADX - 000079137 | ADX - 000079137 | | R, FRE 403, FN, FRE 602, NR |
| PX-0438 | Spreadsheet - 2015 Sales _by account.xlsx | ADX - 000080783 | ADX - 000080783 | | R, FRE 403, FN, FRE 602, NR |
| PX-0439 | Spreadsheet - Archer Sales data for Roadshow 26NOV2018.xlsx | ADX - 000083383 | ADX - 000083383 | | R, FRE 403, FN, FRE 602, NR |
| PX-0440 | Spreadsheet - 2018 sales update_D.xlsx | ADX - 000084033 | ADX - 000084033 | | R, FRE 403, FN, FRE 602, NR |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0441 | Spreadsheet - 2015 Sales and R&D Usage.xls | ADX - 000084078 | ADX - 000084078 | | R, FRE 403, FN, FRE 602, NR |
| PX-0442 | Spreadsheet - 2017 Sales Data.xlsx | ADX - 000084393 | ADX - 000084393 | | R, FRE 403, FN, FRE 602, NR |
| PX-0443 | Spreadsheet - Global Sales with Q3 (fixed).xlsx | ADX - 000088721 | ADX - 000088721 | | R, FRE 403, FN, FRE 602, NR |
| PX-0444 | Spreadsheet - Global Sales with Q3 (fixed).xlsx | ADX - 000090516 | ADX - 000090516 | | R, FRE 403, FN, FRE 602, NR |
| PX-0445 | Spreadsheet - Archer global sales.xlsx | ADX - 000090747 | ADX - 000090747 | | R, FRE 403, FN, FRE 602, NR |
| PX-0446 | Spreadsheet - 18AUG2018 Sales Report rt.xlsx | ADX - 000091485 | ADX - 000091485 | | R, FRE 403, FN, FRE 602, NR |
| PX-0447 | Spreadsheet - Copy of Sales data 2015- Q3 2018 JR.xlsx | ADX - 000097505 | ADX - 000097505 | | R, FRE 403, FN, FRE 602, NR |
| PX-0448 | Spreadsheet - Sales data 2015- Q3 2018.xlsx | ADX - 000097810 | ADX - 000097810 | | R, FRE 403, FN, FRE 602, NR |
| PX-0449 | Spreadsheet - Archer_sales_by_state_Q115.xlsx | ADX - 000099456 | ADX - 000099456 | | R, FRE 403, FN, FRE 602, NR |
| PX-0450 | Spreadsheet - jansales.xls | ADX - 000099658 | ADX - 000099658 | | R, FRE 403, FN, FRE 602, NR |
| PX-0451 | Spreadsheet - Portfolio Sales Dashboard Data.xlsx | ADX - 000099951 | ADX - 000099951 | | R, FRE 403, FN, FRE 602, NR |
| PX-0452 | Spreadsheet - Product Launches and Sales.xlsx | ADX - 000100039 | ADX - 000100039 | | R, FRE 403, FN, FRE 602, NR |
| PX-0453 | Spreadsheet - Family Sales by Institute.xlsx | ADX - 000100045 | ADX - 000100045 | | R, FRE 403, FN, FRE 602, NR |
| PX-0454 | Spreadsheet - Sales Forecast 2016-2017 October RunRate 101116.xlsx | ADX - 000101501 | ADX - 000101501 | | R, FRE 403, FN, FRE 602, NR |
| PX-0455 | Spreadsheet - Sales by Account and Product Q3 09.28.16.xlsx | ADX - 000101592 | ADX - 000101592 | | R, FRE 403, FN, FRE 602, NR |
| PX-0456 | Spreadsheet - Sales Data July 30,2017.xlsx | ADX - 000103689 | ADX - 000103689 | | R, FRE 403, FN, FRE 602, NR |
| PX-0457 | Spreadsheet - Sales Data July 30,2017.xlsx | ADX - 000103695 | ADX - 000103695 | | R, FRE 403, FN, FRE 602, NR |
| PX-0458 | Spreadsheet - Sales Data July 30,2017.xlsx | ADX - 000103729 | ADX - 000103729 | | R, FRE 403, FN, FRE 602, NR |
| PX-0459 | Spreadsheet - Sales Data.xlsx | ADX - 000103741 | ADX - 000103741 | | R, FRE 403, FN, FRE 602, NR |
| PX-0460 | Spreadsheet - Sales Data.xlsx | ADX - 000103744 | ADX - 000103744 | | R, FRE 403, FN, FRE 602, NR |
| PX-0461 | Spreadsheet - Sales Data.xlsx | ADX - 000103747 | ADX - 000103747 | | R, FRE 403, FN, FRE 602, NR |
| PX-0462 | Spreadsheet - 2015 2016 Sales 01.19.17_annotated vJPM 02 13 2017 2335.xlsx | ADX - 000104760 | ADX - 000104760 | | R, FRE 403, FN, FRE 602, NR |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0463 | Spreadsheet - 2015 & 2016 Sales 01.19.17.xls | ADX - 000104837 | ADX - 000104837 | | R, FRE 403, FN, FRE 602, NR |
| PX-0464 | Spreadsheet - 2016 Sales Worksheet.xlsx | ADX - 000104880 | ADX - 000104880 | | R, FRE 403, FN, FRE 602, NR |
| PX-0465 | Removed | | | | |
| PX-0466 | Spreadsheet - Archer Sales targets.xlsx | ADX - 000107672 | ADX - 000107672 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0467 | Spreadsheet - Archer Sales Targets Oct 30.xlsx | ADX - 000107710 | ADX - 000107710 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0468 | Spreadsheet - Archer Sales Targets Plan Oct 25.xlsx | ADX - 000107715 | ADX - 000107715 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0469 | Spreadsheet - 2.9.1.2 Sales by Customer Jan-Feb 2019.xlsx | ADX - 000108003 | ADX - 000108003 | | R, FRE 403, FN, FRE 602, NR |
| PX-0470 | Spreadsheet - Archer Sales data for Roadshow - 2018 updated-05FEB2019.xlsx | ADX - 000108623 | ADX - 000108623 | | R, FRE 403, FN, FRE 602, NR |
| PX-0471 | Spreadsheet - Archer Sales data for Roadshow 26NOV2018.xlsx | ADX - 000109242 | ADX - 000109242 | | R, FRE 403, FN, FRE 602, NR |
| PX-0472 | Spreadsheet - Global Sales with Q3.xlsx | ADX - 000109559 | ADX - 000109559 | | R, FRE 403, FN, FRE 602, NR |
| PX-0473 | Spreadsheet - Sales Data July 30,2017.xlsx | ADX - 000111684 | ADX - 000111684 | | R, FRE 403, FN, FRE 602, NR |
| PX-0474 | Spreadsheet - Sales Data July 30,2017.xlsx | ADX - 000111689 | ADX - 000111689 | | R, FRE 403, FN, FRE 602, NR |
| PX-0475 | Spreadsheet - Archer Monthly Sales Data 2015-YTD.xlsx | ADX - 000111694 | ADX - 000111694 | | R, FRE 403, FN, FRE 602, NR |
| PX-0476 | Spreadsheet - 2015 & 2016 Sales 01.19.17_annotated.xls | ADX - 000111970 | ADX - 000111970 | | R, FRE 403, FN, FRE 602, NR |
| PX-0477 | Spreadsheet - Family Sales by Institute.xlsx | ADX - 000112041 | ADX - 000112041 | | R, FRE 403, FN, FRE 602, NR |
| PX-0478 | Spreadsheet - Archer Sales data for Roadshow - 2018 updated- 05FEB2019.xlsx | ADX - 000113662 | ADX - 000113662 | | R, FRE 403, FN, FRE 602, NR |
| PX-0479 | Spreadsheet - 2015 2016 Sales 01.19.17_annotated vJPM 02 13 2017 2335.xlsx | ADX - 000116912 | ADX - 000116912 | | R, FRE 403, FN, FRE 602, NR |
| PX-0480 | Spreadsheet - Family Sales by Institute.xlsx | ADX - 000117535 | ADX - 000117535 | | R, FRE 403, FN, FRE 602, NR |
| PX-0481 | Spreadsheet - Archer_sales_by_state_Q115.xlsx | ADX - 000119928 | ADX - 000119928 | | R, FRE 403, FN, FRE 602, NR |
| PX-0482 | Spreadsheet - Archer Sales Targets Oct 30.xlsx | ADX - 000120706 | ADX - 000120706 | | R, FRE 403, FN, FRE 602, NR |
| PX-0483 | Removed | | | | |
| PX-0484 | Spreadsheet - Archer Sales Targets Plan Oct 25.xlsx | ADX - 000121908 | ADX - 000121908 | | R, FRE 403, FN, FRE 602, NR |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0485 | Spreadsheet - Sales Forecast_Q1_week3.xlsx | ADX - 000122147 | ADX - 000122147 | | R, FRE 403, FN, FRE 602, NR |
| PX-0486 | Spreadsheet - Portfolio Sales Dashboard Data.xlsx | ADX - 000124617 | ADX - 000124617 | | R, FRE 403, FN, FRE 602, NR |
| PX-0487 | Spreadsheet - Family Sales by Institute.xlsx | ADX - 000124690 | ADX - 000124690 | | R, FRE 403, FN, FRE 602, NR |
| PX-0488 | Spreadsheet - Sales by Account and Product Q3 09.28.16.xlsx | ADX - 000125370 | ADX - 000125370 | | R, FRE 403, FN, FRE 602, NR |
| PX-0489 | Spreadsheet - Product Launches and Sales.xlsx | ADX - 000125728 | ADX - 000125728 | | R, FRE 403, FN, FRE 602, NR |
| PX-0490 | Spreadsheet - Sales Forecast 2016-2017 October RunRate 101116.xlsx | ADX - 000126257 | ADX - 000126257 | | R, FRE 403, FN, FRE 602, NR |
| PX-0491 | Spreadsheet - Sales Data.xlsx | ADX - 000126366 | ADX - 000126366 | | R, FRE 403, FN, FRE 602, NR |
| PX-0492 | Spreadsheet - Sales Data.xlsx | ADX - 000159157 | ADX - 000159157 | | R, FRE 403, FN, FRE 602, NR |
| PX-0493 | Spreadsheet - Sales Data July 30,2017.xlsx | ADX - 000159239 | ADX - 000159239 | | R, FRE 403, FN, FRE 602, NR |
| PX-0494 | Spreadsheet - 2015 & 2016 Sales 01.19.17.xls | ADX - 000159509 | ADX - 000159509 | | R, FRE 403, FN, FRE 602, NR |
| PX-0495 | Spreadsheet - 2016 Sales Worksheet.xlsx | ADX - 000159635 | ADX - 000159635 | | R, FRE 403, FN, FRE 602, NR |
| PX-0496 | Spreadsheet - Sales Data July 30,2017.xlsx | ADX - 000159640 | ADX - 000159640 | | R, FRE 403, FN, FRE 602, NR |
| PX-0497 | Spreadsheet - 2.9.1.2 Sales by Customer Jan-Feb 2019.xlsx | ADX - 000160416 | ADX - 000160416 | | R, FRE 403, FN, FRE 602, NR |
| PX-0498 | Spreadsheet - Archer Sales data for Roadshow 26NOV2018.xlsx | ADX - 000160566 | ADX - 000160566 | | R, FRE 403, FN, FRE 602, NR |
| PX-0499 | Spreadsheet - Sales by Account and Product 08.23.16.xlsx | ADX - 000162153 | ADX - 000162153 | | R, FRE 403, FN, FRE 602, NR |
| PX-0500 | Spreadsheet - Q12016 Sales Report_JM.xlsx | ADX - 000162303 | ADX - 000162303 | | R, FRE 403, FN, FRE 602, NR |
| PX-0501 | Spreadsheet - Sales Data July 30,2017.xlsx | ADX - 000162639 | ADX - 000162639 | | R, FRE 403, FN, FRE 602, NR |
| PX-0502 | Spreadsheet - Sales Data July 30,2017.xlsx | ADX - 000165452 | ADX - 000165452 | | R, FRE 403, FN, FRE 602, NR |
| PX-0503 | Spreadsheet - Sales Data July 30,2017.xlsx | ADX - 000165499 | ADX - 000165499 | | R, FRE 403, FN, FRE 602, NR |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0504 | Spreadsheet - Archer Sales Targets Oct 30.xlsx | ADX - 000166638 | ADX - 000166638 | | R, FRE 403, FN, FRE 602, NR |
| PX-0505 | Spreadsheet - Archer Sales Targets Oct 30.xlsx | ADX - 000166748 | ADX - 000166748 | | R, FRE 403, FN, FRE 602, NR |
| PX-0506 | Spreadsheet - Archer Sales Updates_03Oct2014.xlsx | ADX - 000167597 | ADX - 000167598 | | R, FRE 403, FN, FRE 602, NR |
| PX-0507 | Spreadsheet - 2.9.1.2 Sales by Customer Jan-Feb 2019.xlsx | ADX - 000169018 | ADX - 000169018 | | R, FRE 403, FN, FRE 602, NR |
| PX-0508 | Spreadsheet - Archer Sales data for Roadshow - 2018 updated-05FEB2019.xlsx | ADX - 000170335 | ADX - 000170335 | Russell 9 | R, FRE 403, FN, FRE 602, NR |
| PX-0509 | Spreadsheet - Global Sales with Q3.xlsx | ADX - 000170545 | ADX - 000170545 | | R, FRE 403, FN, FRE 602, NR |
| PX-0510 | Spreadsheet - Sales by Account and Product 08.23.16.xlsx | ADX - 000171429 | ADX - 000171429 | | R, FRE 403, FN, FRE 602, NR |
| PX-0511 | Spreadsheet - Sales Data July 30,2017.xlsx | ADX - 000172247 | ADX - 000172247 | | R, FRE 403, FN, FRE 602, NR |
| PX-0512 | Spreadsheet - Archer Monthly Sales Data 2015-YTD.xlsx | ADX - 000172809 | ADX - 000172809 | | R, FRE 403, FN, FRE 602, NR |
| PX-0513 | Spreadsheet - Family Sales by Institute.xlsx | ADX - 000172880 | ADX - 000172880 | | R, FRE 403, FN, FRE 602, NR |
| PX-0514 | Spreadsheet - Sales Data July 30,2017.xlsx | ADX - 000173106 | ADX - 000173106 | | R, FRE 403, FN, FRE 602, NR |
| PX-0515 | Spreadsheet - 2015 Sales and R&D Usage.xls | ADX - 000232379 | ADX - 000232379 | | R, FRE 403, FN, FRE 602, NR |
| PX-0516 | Spreadsheet - Family Sales by institue.xlsx | ADX - 000234364 | ADX - 000234364 | | R, FRE 403, FN, FRE 602, NR |
| PX-0517 | Spreadsheet - Family Sales by institue.xlsx | ADX - 000234375 | ADX - 000234375 | | R, FRE 403, FN, FRE 602, NR |
| PX-0518 | Spreadsheet - 2016 Sales Worksheet.xlsx | ADX - 000235840 | ADX - 000235840 | | R, FRE 403, FN, FRE 602, NR |
| PX-0519 | Spreadsheet - Cumulative 2016 Sales by Account FINAL.xlsx | ADX - 000235883 | ADX - 000235883 | | R, FRE 403, FN, FRE 602, NR |
| PX-0520 | Spreadsheet - Sales by Product 2016 FINAL.xlsx | ADX - 000235884 | ADX - 000235884 | | R, FRE 403, FN, FRE 602, NR |
| PX-0521 | Spreadsheet - 2016 Sales from Epicor 11.11.16.xls | ADX - 000236661 | ADX - 000236661 | | R, FRE 403, FN, FRE 602, NR |
| PX-0522 | Spreadsheet - Sales Forecast 2016-2017 October RunRate 101116.xlsx | ADX - 000237429 | ADX - 000237429 | | R, FRE 403, FN, FRE 602, NR |
| PX-0523 | Spreadsheet - Sales Projections 08.16.16.xlsx | ADX - 000237929 | ADX - 000237929 | | R, FRE 403, FN, FRE 602, NR |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0524 | Spreadsheet - All Sales 2017.xlsx | ADX - 000242902 | ADX - 000242902 | | R, FRE 403, FN, FRE 602, NR |
| PX-0525 | Spreadsheet - All Sales 2017.xlsx | ADX - 000243059 | ADX - 000243059 | | R, FRE 403, FN, FRE 602, NR |
| PX-0526 | Spreadsheet - October 2017 sales.xlsx | ADX - 000243214 | ADX - 000243214 | | R, FRE 403, FN, FRE 602, NR |
| PX-0527 | Spreadsheet - October 2017 sales.xlsx | ADX - 000243216 | ADX - 000243216 | | R, FRE 403, FN, FRE 602, NR |
| PX-0528 | Spreadsheet - October 2017 sales.xlsx | ADX - 000243218 | ADX - 000243218 | | R, FRE 403, FN, FRE 602, NR |
| PX-0529 | Spreadsheet - Q2 2017 Orders Sales teams.xls | ADX - 000243601 | ADX - 000243601 | | R, FRE 403, FN, FRE 602, NR |
| PX-0530 | Spreadsheet - Archer_sales_0215.xls | ADX - 000245864 | ADX - 000245864 | | R, FRE 403, FN, FRE 602, NR |
| PX-0531 | Spreadsheet - 2017 Sales Data.xlsx | ADX - 000250248 | ADX - 000250248 | | R, FRE 403, FN, FRE 602, NR |
| PX-0532 | Spreadsheet - October 2017 sales.xlsx | ADX - 000251912 | ADX - 000251912 | | R, FRE 403, FN, FRE 602, NR |
| PX-0533 | Spreadsheet - October 2017 sales.xlsx | ADX - 000252102 | ADX - 000252102 | | R, FRE 403, FN, FRE 602, NR |
| PX-0534 | Spreadsheet - Cumulative 2016 Sales by Account FINAL.xlsx | ADX - 000252144 | ADX - 000252144 | | R, FRE 403, FN, FRE 602, NR |
| PX-0535 | Spreadsheet - Cerney August Sales.xlsx | ADX - 000252237 | ADX - 000252144 | | R, FRE 403, FN, FRE 602, NR |
| PX-0536 | Spreadsheet - October 2017 sales.xlsx | ADX - 000252690 | ADX - 000252690 | | R, FRE 403, FN, FRE 602, NR |
| PX-0537 | Spreadsheet - Sales Forecast.xlsx | ADX - 000253759 | ADX - 000253759 | | R, FRE 403, FN, FRE 602, NR |
| PX-0538 | Spreadsheet - All Sales 2017.xlsx | ADX - 000255161 | ADX - 000255161 | | R, FRE 403, FN, FRE 602, NR |
| PX-0539 | Spreadsheet - Sales Forecast 2016-2017 July 2016[1].xlsx | ADX - 000256813 | ADX - 000256813 | | R, FRE 403, FN, FRE 602, NR |
| PX-0540 | Spreadsheet - Sales Forecast 2016-2017 July2016 RunRate Edits.xlsx | ADX - 000257218 | ADX - 000257218 | | R, FRE 403, FN, FRE 602, NR |
| PX-0541 | Spreadsheet - Sales Forecast 2016-2017 July 2016 IZ.xlsx | ADX - 000257237 | ADX - 000257237 | | R, FRE 403, FN, FRE 602, NR |
| PX-0542 | Spreadsheet - Sales Forecast 2016-2017 October RunRate 101116.xlsx | ADX - 000257564 | ADX - 000257564 | | R, FRE 403, FN, FRE 602, NR |
| PX-0543 | Spreadsheet - Sales Forecast 2016-2017 July 2016(3).xlsx | ADX - 000258006 | ADX - 000258006 | | R, FRE 403, FN, FRE 602, NR |
| PX-0544 | Spreadsheet - Sales Forecast 2016-2017 July 2016.xlsx | ADX - 000258020 | ADX - 000258020 | | R, FRE 403, FN, FRE 602, NR |
| PX-0545 | Spreadsheet - Sales Forecast Sun Lim.xlsx | ADX - 000258133 | ADX - 000258133 | | R, FRE 403, FN, FRE 602, NR |
| PX-0546 | Spreadsheet - Cerney Sales Forecast 2016-2017 July 2016 v1.xlsx | ADX - 000258135 | ADX - 000258133 | | R, FRE 403, FN, FRE 602, NR |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0547 | Spreadsheet - Archer_sales_0215.xls | ADX - 000259303 | ADX - 000259303 | | R, FRE 403, FN, FRE 602, NR |
| PX-0548 | Spreadsheet - Q2 2017 Orders Sales teams.xls | ADX - 000260456 | ADX - 000260456 | | R, FRE 403, FN, FRE 602, NR |
| PX-0549 | Spreadsheet - Q2 2017 Orders Sales team_JMS.xls | ADX - 000260497 | ADX - 000260497 | | R, FRE 403, FN, FRE 602, NR |
| PX-0550 | Spreadsheet - Family Sales by institue.xlsx | ADX - 000260624 | ADX - 000260624 | | R, FRE 403, FN, FRE 602, NR |
| PX-0551 | Spreadsheet - Service Pricing_Final.xlsx | ADX - 000262647 | ADX - 000262647 | | R, FRE 403, FN, FRE 602, NR |
| PX-0552 | Spreadsheet - sales tax codes by product type.xlsx | ADX - 000262753 | ADX - 000262753 | | R, FRE 403, FN, FRE 602, NR |
| PX-0553 | Spreadsheet - Odoo Rolling 12 Sales Analysis.xls | ADX - 000262811 | ADX - 000262811 | | R, FRE 403, FN, FRE 602, NR |
| PX-0554 | Spreadsheet - Copy of All Sales 2017 from TP.xlsx | ADX - 000262815 | ADX - 000262815 | | R, FRE 403, FN, FRE 602, NR |
| PX-0555 | Spreadsheet - NewSalesKits_Draft.xlsx | ADX - 000266787 | ADX - 000266787 | | R, FRE 403, FN, FRE 602, NR |
| PX-0556 | Spreadsheet - New Sales Kits.xlsx | ADX - 000266924 | ADX - 000266924 | | R, FRE 403, FN, FRE 602, NR |
| PX-0557 | Spreadsheet - Commercial Sales Kit Draft.xlsx | ADX - 000266998 | ADX - 000266998 | | R, FRE 403, FN, FRE 602, NR |
| PX-0558 | Spreadsheet - New Sales Kits_For Illumina.xlsx | ADX - 000267135 | ADX - 000267135 | | R, FRE 403, FN, FRE 602, NR |
| PX-0559 | Spreadsheet - New Sales Kits.xlsx | ADX - 000267159 | ADX - 000267159 | | R, FRE 403, FN, FRE 602, NR |
| PX-0560 | Removed - Duplicate | | | | |
| PX-0561 | Removed - Duplicate | | | | |
| PX-0562 | Removed - Duplicate | | | | |
| PX-0563 | Removed - Duplicate | | | | |
| PX-0564 | Removed - Duplicate | | | | |
| PX-0565 | Removed - Duplicate | | | | |
| PX-0566 | Removed - Duplicate | | | | |
| PX-0567 | Removed - Duplicate | | | | |
| PX-0568 | Removed - Duplicate | | | | |
| PX-0569 | Removed - Duplicate | | | | |
| PX-0570 | Removed - Duplicate | | | | |
| PX-0571 | Removed - Duplicate | | | | |
| PX-0572 | Removed - Duplicate | | | | |
| PX-0573 | Removed - Duplicate | | | | |
| PX-0574 | Removed - Duplicate | | | | |
| PX-0575 | Removed - Duplicate | | | | |
| PX-0576 | Removed - Duplicate | | | | |
| PX-0577 | Removed - Duplicate | | | | |
| PX-0578 | Removed - Duplicate | | | | |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0579 | Removed - Duplicate | | | | |
| PX-0580 | Removed - Duplicate | | | | |
| PX-0581 | Removed - Duplicate | | | | |
| PX-0582 | Removed - Duplicate | | | | |
| PX-0583 | Removed - Duplicate | | | | |
| PX-0584 | Removed - Duplicate | | | | |
| PX-0585 | Removed - Duplicate | | | | |
| PX-0586 | Removed - Duplicate | | | | |
| PX-0587 | Removed - Duplicate | | | | |
| PX-0588 | Removed - Duplicate | | | | |
| PX-0589 | Removed - Duplicate | | | | |
| PX-0590 | Removed - Duplicate | | | | |
| PX-0591 | Removed - Duplicate | | | | |
| PX-0592 | Removed - Duplicate | | | | |
| PX-0593 | Removed - Duplicate | | | | |
| PX-0594 | Removed - Duplicate | | | | |
| PX-0595 | Removed - Duplicate | | | | |
| PX-0596 | Removed - Duplicate | | | | |
| PX-0597 | Removed - Duplicate | | | | |
| PX-0598 | Removed - Duplicate | | | | |
| PX-0599 | Removed - Duplicate | | | | |
| PX-0600 | Removed - Duplicate | | | | |
| PX-0601 | Removed - Duplicate | | | | |
| PX-0602 | Removed - Duplicate | | | | |
| PX-0603 | Removed - Duplicate | | | | |
| PX-0604 | Removed - Duplicate | | | | |
| PX-0605 | Removed - Duplicate | | | | |
| PX-0606 | Removed - Duplicate | | | | |
| PX-0607 | Removed - Duplicate | | | | |
| PX-0608 | Removed - Duplicate | | | | |
| PX-0609 | Removed - Duplicate | | | | |
| PX-0610 | Removed - Duplicate | | | | |
| PX-0611 | Removed - Duplicate | | | | |
| PX-0612 | Removed - Duplicate | | | | |
| PX-0613 | Removed - Duplicate | | | | |
| PX-0614 | Removed - Duplicate | | | | |
| PX-0615 | Removed - Duplicate | | | | |
| PX-0616 | Removed - Duplicate | | | | |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0617 | Removed - Duplicate | | | | |
| PX-0618 | Removed - Duplicate | | | | |
| PX-0619 | Removed - Duplicate | | | | |
| PX-0620 | Removed - Duplicate | | | | |
| PX-0621 | Removed - Duplicate | | | | |
| PX-0622 | Removed - Duplicate | | | | |
| PX-0623 | Removed - Duplicate | | | | |
| PX-0624 | Removed - Duplicate | | | | |
| PX-0625 | Removed - Duplicate | | | | |
| PX-0626 | Removed - Duplicate | | | | |
| PX-0627 | Removed - Duplicate | | | | |
| PX-0628 | Removed - Duplicate | | | | |
| PX-0629 | Removed - Duplicate | | | | |
| PX-0630 | Removed - Duplicate | | | | |
| PX-0631 | Removed - Duplicate | | | | |
| PX-0632 | Removed - Duplicate | | | | |
| PX-0633 | Removed - Duplicate | | | | |
| PX-0634 | Removed - Duplicate | | | | |
| PX-0635 | Removed - Duplicate | | | | |
| PX-0636 | Removed - Duplicate | | | | |
| PX-0637 | Removed - Duplicate | | | | |
| PX-0638 | Removed - Duplicate | | | | |
| PX-0639 | Removed - Duplicate | | | | |
| PX-0640 | Spreadsheet - Archer Pricing_Sales_02Feb2015_3.xlsx | ADX - 000267372 | ADX - 000267372 | | R, FRE 403, FN, FRE 602, NR |
| PX-0641 | Spreadsheet - Service Pricing_Final.xlsx | ADX - 000267919 | ADX - 000267919 | | R, FRE 403, FN, FRE 602, NR |
| PX-0642 | Spreadsheet - Service Pricing_Final.xlsx | ADX - 000268064 | ADX - 000268064 | | R, FRE 403, FN, FRE 602, NR |
| PX-0643 | Spreadsheet - Correction-New Sales Kits for Illumina.xlsx | ADX - 000269285 | ADX - 000269285 | | R, FRE 403, FN, FRE 602, NR |
| PX-0644 | Spreadsheet - New Sales Kits_For Illumina_DUF.xlsx | ADX - 000269287 | ADX - 000269287 | | R, FRE 403, FN, FRE 602, NR |
| PX-0645 | Spreadsheet - Archer Pricing_Sales_03Feb2015.xlsx | ADX - 000269363 | ADX - 000269363 | | R, FRE 403, FN, FRE 602, NR |
| PX-0646 | Spreadsheet - Open Sales Orders by Sales Rep (07JUL15-07AUG15).xlsx | ADX - 000273367 | ADX - 000273367 | | R, FRE 403, FN, FRE 602, NR, Dupe |
| PX-0647 | Spreadsheet - Q12019 Sales Report 12APR2019- FINAL.xlsx | ADX - 000273374 | ADX - 000273374 | | R, FRE 403, FN, FRE 602, NR |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0648 | Spreadsheet - Commercial Sales Kit Draft.xlsx | ADX - 000273950 | ADX - 000273950 | | R, FRE 403, FN, FRE 602, NR |
| PX-0649 | Spreadsheet - New Sales Kits_For Illumina_DUF.xlsx | ADX - 000273960 | ADX - 000273960 | | R, FRE 403, FN, FRE 602, NR |
| PX-0650 | Spreadsheet - Service Pricing_Final.xlsx | ADX - 000273962 | ADX - 000273962 | | R, FRE 403, FN, FRE 602, NR |
| PX-0651 | Spreadsheet - Service Pricing.xlsx | ADX - 000275047 | ADX - 000275047 | | R, FRE 403, FN, FRE 602, NR |
| PX-0652 | Spreadsheet - New Sales Kits_For Illumina.xlsx | ADX - 000277000 | ADX - 000277000 | | R, FRE 403, FN, FRE 602, NR |
| PX-0653 | Spreadsheet - Sales Kit breakout.xlsx | ADX - 000277035 | ADX - 000277035 | | R, FRE 403, FN, FRE 602, NR |
| PX-0654 | Spreadsheet - Copy of All Sales 2017 from TP.xlsx | ADX - 000277223 | ADX - 000277223 | | R, FRE 403, FN, FRE 602, NR |
| PX-0655 | Spreadsheet - New Sales Kits_For Illumina.xlsx | ADX - 000278598 | ADX - 000278598 | | R, FRE 403, FN, FRE 602, NR |
| PX-0656 | Removed | | | | |
| PX-0657 | Spreadsheet - Service Pricing.xlsx | ADX - 000281149 | ADX - 000281149 | | R, FRE 403, FN, FRE 602, NR |
| PX-0658 | Spreadsheet - Service Pricing.xlsx | ADX - 000281151 | ADX - 000281151 | | R, FRE 403, FN, FRE 602, NR |
| PX-0659 | Spreadsheet - [redacted] Sales Reports .xlsx | ADX - 000281159 | ADX - 000281159 | | R, FRE 403, FN, FRE 602, NR |
| PX-0660 | Spreadsheet - 2019 Sales Commission Worksheet - Q1-12APR2019 - FINAL.xlsx | ADX - 000281996 | ADX - 000281996 | | R, FRE 403, FN, FRE 602, NR |
| PX-0661 | Removed | | | | |
| PX-0662 | Removed - Duplicate | | | | |
| PX-0663 | Spreadsheet - Sales Commission report vs P&L Recon YTD Aug 2018.xls | ADX - 000282352 | ADX - 000282352 | | R, FRE 403, FN, FRE 602, NR |
| PX-0664 | Spreadsheet - Service Pricing.xlsx | ADX - 000282843 | ADX - 000282843 | | R, FRE 403, FN, FRE 602, NR |
| PX-0665 | Spreadsheet - [redacted] Sales Reports .xlsx | ADX - 000282870 | ADX - 000282870 | | R, FRE 403, FN, FRE 602, NR |
| PX-0666 | Spreadsheet - Service Pricing.xlsx | ADX - 000284894 | ADX - 000284894 | | R, FRE 403, FN, FRE 602, NR |
| PX-0667 | Spreadsheet - 2019 Recurring Sales Forecast 21FEB2019.xls | ADX - 000286932 | ADX - 000286932 | | R, FRE 403, FN, FRE 602, NR |
| PX-0668 | Removed | | | | |
| PX-0669 | Spreadsheet - Sales Commission report vs PL Recon Q3 2018.xls | ADX - 000321433 | ADX - 000321433 | | R, FRE 403, FN, FRE 602, NR |
| PX-0670 | Spreadsheet - Cerney Edits Q2 Final Sales Revenue (version 1).xls | ADX - 000322202 | ADX - 000322202 | | R, FRE 403, FN, FRE 602, NR |
| PX-0671 | Spreadsheet - Cerney Oct 2017 sales.xlsx | ADX - 000323017 | ADX - 000323017 | | R, FRE 403, FN, FRE 602, NR |
| PX-0672 | Spreadsheet - Archer sales.inventory 8.30.xlsx | ADX - 000324121 | ADX - 000324121 | | R, FRE 403, FN, FRE 602, NR |
| PX-0673 | Spreadsheet - Archer sales. 5.26 revised.xlsx | ADX - 000324663 | ADX - 000324663 | | R, FRE 403, FN, FRE 602, NR |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0674 | Spreadsheet - Sales Kit Tiered Pricing .xlsx | ADX - 000327020 | ADX - 000327020 | | R, FRE 403, FN, FRE 602, NR |
| PX-0675 | Spreadsheet - Archer Pricing_Sales_7Nov2014.xlsx | ADX - 000328495 | ADX - 000328495 | | R, FRE 403, FN, FRE 602, NR |
| PX-0676 | Spreadsheet - Cerney Edits Q2 Final Sales Revenue (version 1).xls | ADX - 000333705 | ADX - 000333705 | | R, FRE 403, FN, FRE 602, NR |
| PX-0677 | Spreadsheet - Archer sales.inventory 8.30.xlsx | ADX - 000335727 | ADX - 000335727 | | R, FRE 403, FN, FRE 602, NR |
| PX-0678 | Spreadsheet - Open Sales Orders by Sales Rep (07JUL15-07AUG15).xlsx | ADX - 000340216 | ADX - 000340216 | | R, FRE 403, FN, FRE 602, NR |
| PX-0679 | Spreadsheet - Archer Pricing_Sales_7Nov2014.xlsx | ADX - 000340613 | ADX - 000340613 | | R, FRE 403, FN, FRE 602, NR |
| PX-0680 | Spreadsheet - Family Sales by institue.xlsx | ADX - 000340878 | ADX - 000340878 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0681 | Spreadsheet - 2019 Recurring Sales Forecast 21FEB2019.xls | ADX - 000342714 | ADX - 000342714 | | R, FRE 403, FN, FRE 602, NR, S |
| PX-0682 | Email dated 8/2/2016 from J. Fitzgerald to P. Ellis and E. Rivera RE: Caris/Archer Follow Up | ADX - 000356466 | ADX - 000356466 | | R, FRE 403, H |
| PX-0683 | Spreadsheet - Immunoverse Reactions Sales Apr 2017 - Apr 2018.xlsx | ADX - 000357316 | ADX - 000357316 | | R, FRE 403, FN, FRE 602, NR |
| PX-0684 | Spreadsheet - Immunoverse Reactions Sales Apr 2017 - Apr 2018.xlsx | ADX - 000357503 | ADX - 000357503 | | R, FRE 403, FN, FRE 602, NR |
| PX-0685 | Spreadsheet - AK0070-8 FusionPlex CTL Panel - NPD_unlocked.xlsm | ADX - 000387583 | ADX - 000387583 | | R, FRE 403, FN, FRE 602, NR |
| PX-0686 | Spreadsheet - Sales Kit BOMs .xlsx | ADX - 000389985 | ADX - 000389985 | | R, FRE 403, FN, FRE 602, NR |
| PX-0687 | Spreadsheet - Sales by Account and Product 08.23.16.xlsx | ADX - 000396403 | ADX - 000396403 | | R, FRE 403, FN, FRE 602, NR |
| PX-0688 | Spreadsheet - Archer Sales data for Roadshow 26NOV2018.xlsx | ADX - 000406662 | ADX - 000406662 | | R, FRE 403, FN, FRE 602, NR |
| PX-0689 | Spreadsheet - Archer Sales data for Roadshow 26NOV2018.xlsx | ADX - 000406955 | ADX - 000406955 | | R, FRE 403, FN, FRE 602, NR |
| PX-0690 | Spreadsheet - Sales Information.xlsx | ADX - 000412562 | ADX - 000412562 | | R, FRE 403, FN, FRE 602, NR |
| PX-0691 | Spreadsheet - Sales Information.xlsx | ADX - 000412951 | ADX - 000412951 | | R, FRE 403, FN, FRE 602, NR |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0692 | Spreadsheet - Archer_sales_2014_final.xls | ADX - 000418257 | ADX - 000418257 | | R, FRE 403, FN, FRE 602, NR |
| PX-0693 | Spreadsheet - Sales by Account and Product 08.23.16.xlsx | ADX - 000419247 | ADX - 000419247 | | R, FRE 403, FN, FRE 602, NR |
| PX-0694 | Spreadsheet - Sales Data July 30,2017.xlsx | ADX - 000420809 | ADX - 000420809 | | R, FRE 403, FN, FRE 602, NR |
| PX-0695 | Spreadsheet - Sales Information.xlsx | ADX - 000423725 | ADX - 000423725 | | R, FRE 403, FN, FRE 602, NR |
| PX-0696 | Spreadsheet - Archer Sales data for Roadshow 26NOV2018.xlsx | ADX - 000424494 | ADX - 000424494 | | R, FRE 403, FN, FRE 602, NR |
| PX-0697 | Spreadsheet - Sales Information.xlsx | ADX - 000436713 | ADX - 000436713 | | R, FRE 403, FN, FRE 602, NR |
| PX-0698 | Spreadsheet - Archer Sales data for Roadshow 26NOV2018.xlsx | ADX - 000438379 | ADX - 000438379 | | R, FRE 403, FN, FRE 602, NR |
| PX-0699 | Spreadsheet - report.archer_report_sales_commission.sales_commission-9.xls | ADX - 000472155 | ADX - 000472155 | | R, FRE 403, FN, FRE 602, NR |
| PX-0700 | Spreadsheet - report.archer_report_sales_commission.sales_commission-9.xls | ADX - 000472568 | ADX - 000472155 | | R, FRE 403, FN, FRE 602, NR |
| PX-0701 | Spreadsheet - Sales Feb 2016 03.10.16.xlsx | ADX - 000473315 | ADX - 000473315 | | R, FRE 403, FN, FRE 602, NR |
| PX-0702 | Spreadsheet - Sales | QIA-00001011 | QIA-00001011 | | R, FRE 403, FN, FRE 602, NR |
| PX-0703 | Spreadsheet - Global S&M Standard 2.0 GSM 7.0(UB3E6PEQQFJXZ5V0C5KCPQTG7).xls | QIA-00065915 | QIA-00065915 | | R, FRE 403, FN, FRE 602, NR |
| PX-0704 | Spreadsheet - Goal Tracking File Update_August.xls | QIA-00065919 | QIA-00065919 | | R, FRE 403, FN, FRE 602, NR |
| PX-0705 | Spreadsheet - Goal Tracking File Update V1.xls | QIA-00066777 | QIA-00066777 | | R, FRE 403, FN, FRE 602, NR |
| PX-0706 | Spreadsheet - COWEN_ILMN.xlsx | QIA-00074250 | QIA-00074250 | | R, FRE 403, FN, FRE 602, NR |
| PX-0707 | Jointly increasing QIAGWN growth with NGS - Market segments update - January 7, 2014 (NGS Market Workshop_summary_06 Jan 2014_vo5_core team.pptx) | QIA-00075762 | QIA-00075762 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0708 | Removed | | | | |
| PX-0709 | Spreadsheet - Dashboard Central 20180501.xlsm | QIA-00077032 | QIA-00077032 | | R, FRE 403, FN, FRE 602, NR |
| PX-0710 | Removed | | | | |
| PX-0711 | Spreadsheet - Dashboard South 20180501.xlsm | QIA-00077079 | QIA-00077079 | | R, FRE 403, FN, FRE 602, NR |
| PX-0712 | Spreadsheet - Dashboard NorthEast 20180618.xlsm | QIA-00077115 | QIA-00077115 | | R, FRE 403, FN, FRE 602, NR |
| PX-0713 | Spreadsheet - Dashboard NorthEast 20180625.xlsm | QIA-00077117 | QIA-00077117 | | R, FRE 403, FN, FRE 602, NR |
| PX-0714 | Spreadsheet - 2018 AMP Dashboard.xlsm | QIA-00077118 | QIA-00077118 | | R, FRE 403, FN, FRE 602, NR |
| PX-0715 | Removed | | | | |
| PX-0716 | Spreadsheet - Dashboard South 20180323.xlsm | QIA-00077128 | QIA-00077128 | | R, FRE 403, FN, FRE 602, NR |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0717 | Spreadsheet 2017-2018 Budget Actuals | QIA-00077129 | QIA-00077129 | | R, FRE 403, FN, FRE 602, NR |
| PX-0718 | Spreadsheet - Dashboard South 20180718.xlsm | QIA-00077206 | QIA-00077206 | | R, FRE 403, FN, FRE 602, NR |
| PX-0719 | Spreadsheet - Dashboard South 20180817.xlsm | QIA-00077213 | QIA-00077213 | | R, FRE 403, FN, FRE 602, NR |
| PX-0720 | Spreadsheet - 181003 JAK2 and CALR NA Sales 2017-2018 and Opps 2018.xlsx | QIA-00079330 | QIA-00079330 | | R, FRE 403, FN, FRE 602, NR |
| PX-0721 | Spreadsheet - NGS_salesSum_201710.xlsx | QIA-00114840 | QIA-00114840 | | R, FRE 403, FN, FRE 602, NR |
| PX-0722 | Spreadsheet - NGS_sales_201608.xlsx | QIA-00118584 | QIA-00118584 | | R, FRE 403, FN, FRE 602, NR |
| PX-0723 | Spreadsheet - Forecast Sheet_2018.xlsx | QIA-00129851 | QIA-00129851 | | R, FRE 403, FN, FRE 602, NR, S |
| PX-0724 | Spreadsheet - 2017 RnD External purchasing summary.xlsx | QIA-00140439 | QIA-00140439 | | R, FRE 403, FN, FRE 602, NR |
| PX-0725 | Spreadsheet - Copy of 2015 RnD purchasing summary 201510.xlsx | QIA-00143256 | QIA-00143256 | | R, FRE 403, FN, FRE 602, NR |
| PX-0726 | Spreadsheet - 2017 revenue.xlsx | QIA-00154672 | QIA-00154672 | | R, FRE 403, FN, FRE 602, NR |
| PX-0727 | Spreadsheet - 2017 revenue.xlsx | QIA-00154711 | QIA-00154711 | | R, FRE 403, FN, FRE 602, NR |
| PX-0728 | Email dated 8/19/16; L. Arteaga to R. Samara et all "Re: [redacted]" | QIA-00219149 | QIA-00219150 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0729 | Spreadsheet -Service_Funnel.xlsx | QIA-00251036 | QIA-00251036 | | R, FRE 403, FN, FRE 602, NR |
| PX-0730 | Spreadsheet - Service_Funnel.xlsx | QIA-00261840 | QIA-00261840 | | R, FRE 403, FN, FRE 602, NR |
| PX-0731 | Spreadsheet - POS Service Agreements 072017.xlsx | QIA-00269934 | QIA-00269934 | | R, FRE 403, FN, FRE 602, NR |
| PX-0732 | Spreadsheet - Copy of Copy of NGS_salesSum_201710.xlsx | QIA-00302845 | QIA-00302845 | | R, FRE 403, FN, FRE 602, NR |
| PX-0733 | Spreadsheet - Profit Split Calculation BMS.XLSX | QIA-00343186 | QIA-00343186 | | R, FRE 403, FN, FRE 602, NR |
| PX-0734 | Spreadsheet - Profit Split Calculation BMS.XLSX | QIA-00388564 | QIA-00388564 | | R, FRE 403, FN, FRE 602, NR |
| PX-0735 | Spreadsheet - GR1.8 Transfer Price Scenarios.xlsx | QIA-00390720 | QIA-00390720 | | R, FRE 403, FN, FRE 602, NR |
| PX-0736 | Spreadsheet - TMB-CellLineDatabase W MatchedInfo.xlsx | QIA-00456436 | QIA-00390720 | | R, FRE 403, FN, FRE 602, NR |
| PX-0737 | Spreadsheet - TMB-CellLineDatabase W MatchedInfo.xlsx | QIA-00457170 | QIA-00457170 | | R, FRE 403, FN, FRE 602, NR |
| PX-0738 | Spreadsheet - Microsoft_Excel_Worksheet2.xlsx | QIA-00481635 | QIA-00481635 | | R, FRE 403, FN, FRE 602, NR |
| PX-0739 | Spreadsheet - Microsoft_Excel_Worksheet2.xlsx | QIA-00482248 | QIA-00482248 | | R, FRE 403, FN, FRE 602, NR |
| PX-0740 | Spreadsheet - TMB-CellLineDatabase W MatchedInfo.xlsx | QIA-00581784 | QIA-00581784 | | R, FRE 403, FN, FRE 602, NR |
| PX-0741 | Removed | | | | |
| PX-0742 | Removed | | | | |
| PX-0743 | Removed | | | | |
| PX-0744 | Removed - Duplicate | | | | |
| PX-0745 | Removed - Duplicate | | | | |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0746 | Removed - Duplicate | | | | |
| PX-0747 | Removed - Duplicate | | | | |
| PX-0748 | Removed - Duplicate | | | | |
| PX-0749 | Removed - Duplicate | | | | |
| PX-0750 | Spreadsheet - Open Sales Orders by Sales Rep (07JUL15-07AUG15).xlsx | ADX - 000340216 | ADX - 000340216 | | R, FRE 403, FN, FRE 602, NR |
| PX-0751 | Removed - Duplicate | | | | |
| PX-0752 | Removed - Duplicate | | | | |
| PX-0753 | Spreadsheet - Archer_sales_2014_final.xls | ADX - 000395801 | ADX - 000395801 | | R, FRE 403, FN, FRE 602, NR |
| PX-0754 | Removed - Duplicate | | | | |
| PX-0755 | Removed - Duplicate | | | | |
| PX-0756 | Removed - Duplicate | | | | |
| PX-0757 | Removed - Duplicate | | | | |
| PX-0758 | Spreadsheet - Goal Tracking File Update.xls | QIA-00067279 | QIA-00067279 | | R, FRE 403, FN, FRE 602, NR |
| PX-0759 | Spreadsheet - 2017 Budget PlanningFritzClairmont8.1.2016.xlsx | QIA-00074853 | QIA-00074853 | | R, FRE 403, FN, FRE 602, NR |
| PX-0760 | Removed - Duplicate | | | | |
| PX-0761 | Removed - Duplicate | | | | |
| PX-0762 | Research & Development Document - TQM-32-C-10-GLO-E_3_2 | QIA-00016313 | QIA-00016321 | | R, FRE 403, FN, FRE 602, NR |
| PX-0763 | PRO-15-1061-70-TEC-001 Guiding document feasibility plan.doc | QIA-00018261 | QIA-00018265 | | R, FRE 403, FN, FRE 602, NR |
| PX-0764 | PRO-15-1061-70-TEC-003-01_TAS_AssayPreanalytics.doc | QIA-00018283 | QIA-00018293 | | R, FRE 403, FN, FRE 602, NR |
| PX-0765 | PRO-15-1061-70-TEC-002_Assay_Technical Assessment Sheet.doc | QIA-00018333 | QIA-00018340 | | R, FRE 403, FN, FRE 602, NR |
| PX-0766 | NGS_GR1.1_Seq_Platform_Tec_Assess_Sheet_V1.doc | QIA-00018366 | QIA-00018370 | | R, FRE 403, FN, FRE 602, NR |
| PX-0767 | 11-1044-15_R&D.doc | QIA-00018985 | QIA-00018990 | | R, FRE 403, FN, FRE 602, NR |
| PX-0768 | 14-1012-2 GLO-SOP-32-02-101 A01_PD_RD Document Chemistry and Assays_Rev 2_QIAseqTargetedRNA_LaunchReadiness.docx | QIA-00020889 | QIA-00020898 | | R, FRE 403, FN, FRE 602, NR |
| PX-0769 | 11-1071-1_GLO-SOP-32-02-101_A01.doc | QIA-00021450 | QIA-00021456 | | R, FRE 403, FN, FRE 602, NR |
| PX-0770 | 11-1071-6_GLO-SOP-32-02-101_A01.doc | QIA-00021519 | QIA-00021527 | | R, FRE 403, FN, FRE 602, NR |
| PX-0771 | V2 chemistry and validation_11_1071_6_GLO-SOP-32-02-101_A01.doc | QIA-00022208 | QIA-00022217 | | R, FRE 403, FN, FRE 602, NR |
| PX-0772 | V2 new content_11-1071-1_GLO-SOP-32-02-101_A01.doc | QIA-00022312 | QIA-00022318 | | R, FRE 403, FN, FRE 602, NR |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0773 | GLO-SOP-32-02-101 A01_PD_RD Document Chemistry and Assays_Rev 2_QIAseqTargetedRNA_LaunchReadiness.docx | QIA-00022511 | QIA-00022520 | | R, FRE 403, FN, FRE 602, NR |
| PX-0774 | 14-1012-1_FusionScan - product concept.pptx | QIA-00022620 | QIA-00022628 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0775 | GLO-SOP-32-02-101 A01_PD_RD Document Chemistry and Assays_Rev 2_QIAseqTargetedRNA_LaunchReadiness.docx | QIA-00022764 | QIA-00022773 | | R, FRE 403, FN, FRE 602, NR |
| PX-0776 | 14-012-2 GLO-SOP-32-02-101 A01_PD_RD Document Chemistry and Assays_Rev 2_QIAseqTargetedRNA_LaunchReadiness.docx | QIA-00023015 | QIA-00023024 | | R, FRE 403, FN, FRE 602, NR |
| PX-0777 | 14-1012-1 LSRD Document.doc | QIA-00024171 | QIA-00024179 | | R, FRE 403, FN, FRE 602, NR |
| PX-0778 | PRO-xx-xxxx-xx-TEC-001 Technical Assessment Sheet el.doc | QIA-00024188 | QIA-00024195 | | R, FRE 403, FN, FRE 602, NR |
| PX-0779 | 14-1012-1_RnD document.doc | QIA-00024736 | QIA-00024744 | | R, FRE 403, FN, FRE 602, NR |
| PX-0780 | 14-1013-1_GLO-SOP-32-02-101_A01_R&D.doc | QIA-00024893 | QIA-00024902 | | R, FRE 403, FN, FRE 602, NR |
| PX-0781 | 14-1013-1_GLO-SOP-32-02-101_A01_RnD.doc | QIA-00024990 | QIA-00024999 | | R, FRE 403, FN, FRE 602, NR |
| PX-0782 | 14-1013-1_GLO-SOP-32-02-101_A01_kickoff.pptx | QIA-00025018 | QIA-00025027 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0783 | 14-1013-1_GLO-SOP-32-02-101_A01_R&D.doc | QIA-00025034 | QIA-00025043 | | R, FRE 403, FN, FRE 602, NR |
| PX-0784 | 14-1012-1_RnD document.doc | QIA-00025075 | QIA-00025083 | | R, FRE 403, FN, FRE 602, NR |
| PX-0785 | 14-1013-1_GLO-SOP-32-02-101_A01_R&D.doc | QIA-00025098 | QIA-00025107 | | R, FRE 403, FN, FRE 602, NR |
| PX-0786 | 14-1013-1_GLO-SOP-32-02-101_A01_kickoff.pptx | QIA-00025115 | QIA-00025124 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0787 | 14-1013-1_GLO-SOP-32-02-101_A01_R&D.doc | QIA-00025131 | QIA-00025140 | | R, FRE 403, FN, FRE 602, NR |
| PX-0788 | 14-1013-1_GLO-SOP-32-02-101_A01_kickoff.pptx | QIA-00025201 | QIA-00025210 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0789 | 1 - Kick Off_14-1013-1_20151027.pptx | QIA-00025591 | QIA-00025600 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0790 | 11-1044-18 GLO-SOP-32-02-101-A01 Rev.03_PD_RD Document Chemistry and Assays.doc | QIA-00028088 | QIA-00028091 | | R, FRE 403, FN, FRE 602, NR |
| PX-0791 | 14-1012-1 M4-5 LSRD Document v1.doc | QIA-00029140 | QIA-00029159 | | R, FRE 403, FN, FRE 602, NR |
| PX-0792 | PRO-15-1061-06-TEC-001-01 technical Assessment.pdf | QIA-00036152 | QIA-00036155 | | R, FRE 403, FN, FRE 602, NR |
| PX-0793 | LSRD-18-1009-1-2 Rev.01.doc | QIA-00042634 | QIA-00042642 | | R, FRE 403, FN, FRE 602, NR |
| PX-0794 | 14-1012-1 M4-5 LSRD Document v1.doc | QIA-00044102 | QIA-00044121 | | R, FRE 403, FN, FRE 602, NR |
| PX-0795 | 14-1012-1 M6 LSRD Document v1.doc | QIA-00044924 | QIA-00044943 | | R, FRE 403, FN, FRE 602, NR |
| PX-0796 | LSRD-18-1009-1-4 Rev.01.doc | QIA-00045847 | QIA-00045867 | | R, FRE 403, FN, FRE 602, NR |
| PX-0797 | 17-1014-1_GLO-SOP-32-02-101-A01 Rev.04 PD RD Document Chemistry and Assays.doc | QIA-00052034 | QIA-00052043 | | R, FRE 403, FN, FRE 602, NR |
| PX-0798 | LSRD-17-1014-1-6 Rev.01.doc | QIA-00053039 | QIA-00053049 | | R, FRE 403, FN, FRE 602, NR |
| PX-0799 | 17-1014-1_GLO-SOP-32-02-101-A01 Rev.04 PD RD Document Chemistry and Assays.doc | QIA-00053774 | QIA-00053783 | | R, FRE 403, FN, FRE 602, NR |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0800 | LSRD-17-1023-1-2 Rev.01.doc | QIA-00056743 | QIA-00056751 | | R, FRE 403, FN, FRE 602, NR |
| PX-0801 | 17-1014-1_GLO-SOP-32-02-101-A01 Rev.04 PD RD Document Chemistry and Assays.doc | QIA-00057067 | QIA-00057076 | | R, FRE 403, FN, FRE 602, NR |
| PX-0802 | T-cell Receptor Immumo-Profiling for Immune-Repertoire - Project # 17-1014-1 | QIA-00057163 | QIA-00057172 | | R, FRE 403, FN, FRE 602, NR |
| PX-0803 | V3.0 Assay - Technical Assessment Sheet - PRO-15-1061-70 | QIA-00001500 | QIA-00001507 | | R, FRE 403, FN, FRE 602, NR |
| PX-0804 | Clonal Amplification Consumables - Operations Feasibility Sheet - A06 Rev. 02 GLO-SOP-32-01-011 - PRO 14-1014-14 | QIA-00019334 | QIA-00019346 | | R, FRE 403, FN, FRE 602, NR |
| PX-0805 | ATP 3.0 Assay System - Technical Assessment Sheet - A02 GLO-SOP-32-01-011 PRO 158-1061-09 | QIA-00001340 | QIA-00001348 | | R, FRE 403, FN, FRE 602, NR |
| PX-0806 | NGS BRCA 1-2 Ovarian Tumour GeneReader Technical Assessment Sheet BRCA1-2 GeneReader -A02 GLO-SOP-32-01-011 | QIA-00001368 | QIA-00001371 | | R, FRE 403, FN, FRE 602, NR |
| PX-0807 | BRCA Advanced - Technical Assessment Sheet - A02 GLO-SOP-32-01-011 PRO 15-1061-07 | QIA-00001428 | QIA-00001432 | | R, FRE 403, FN, FRE 602, NR |
| PX-0808 | GeneRead QIAct MLP RUO kit - Technical Assessment Sheet - A02-GLO-SOP-32-01-011 PRO 15-1061-06 | QIA-00001578 | QIA-00001581 | | R, FRE 403, FN, FRE 602, NR |
| PX-0809 | T-cell Receptor Immumo-Profiling for Immune-Repertoire Diversity- PD/R&D Document (Chemistry and Assays) GLO-SOP-32-02-101-A01 Rev. 04 | QIA-00001582 | QIA-00001591 | | R, FRE 403, FN, FRE 602, NR |
| PX-0810 | T-cell Receptor Immumo-Profiling for Immune Diversity - Project Management Document - GLO-SOP-32-02-002-A01 Rev. 04 | QIA-00001601 | QIA-00001605 | | R, FRE 403, FN, FRE 602, NR |
| PX-0811 | QIAseq Targeted DNA - Project Management Document - GLO-SOP-32-02-002-A01 Rev. 03 | QIA-00001614 | QIA-00001618 | | R, FRE 403, FN, FRE 602, NR |
| PX-0812 | Email dated 3/23/2015 from E. Soderback to R. Henfrey, J. Gammack and Kai te Kaat RE: Fusion Gene Detection | QIA-00061272 | QIA-00061275 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0813 | Press Release - "Enzymatics unveils its most advanced NGS data analysis, interpretation and reporting platform to date" - 10/7/2014 | ADX - 000018520 | ADX - 000018521 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0814 | Press Release - "ArcherDX's Companion DiagnosticAssay for both Liquid Biopsy andTissue Specimens GrantedBreakthrough Device Designation by U.S. Food and Drug Administration" - 1/8/2019 | ADX - 000491287 | ADX - 000491289 | | R, FRE 403, FN, FRE 602, NR, H |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0815 | Press Release - "ArcherDX Personalized Cancer Monitoring (PCM) Technology Designated by FDA as Breakthrough" - 1/14/2020 | ADX - 000491294 | ADX - 000491301 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0816 | Press Release - "ArcherDX and Ayala Pharmaceuticals Announce Strategic Companion Diagnostic Collaboration" - 7/8/2019 | ADX - 000491290 | ADX - 000491292 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0817 | Press Release - "SeraCare Life Sciences collaborates with ArcherDX on RNA Fusion Reference Standards" - 11/9/2016 | ADX - 000491302 | ADX - 000491304 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0818 | Press Release - "ArcherDX Launches SureShot Triple Fusion-Positive NGS Control" - 1/12/2016 | ADX - 000491293 | ADX - 000491293 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0819 | Press Release - "ArcherDX announces collaboration with University College London to Investigate the Novel Use of Cell-FreeCirculating Tumor DNA to DetectDisease Recurrence in Lung CancerPatients" - 3/28/2019 | ADX - 000491283 | ADX - 000491286 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0820 | Removed | | | | |
| PX-0821 | Exclusive Patent License Agreement Between ArcherDX and The General Hospital Corporaton (MGH) - Dated 7/23/2013 | ADX - 000110288 | ADX - 000110317 | | |
| PX-0822 | Removed | | | | |
| PX-0823 | Removed | | | | |
| PX-0824 | Removed | | | | |
| PX-0825 | Removed | | | | |
| PX-0826 | Removed | | | | |
| PX-0827 | Removed | | | | |
| PX-0828 | Removed | | | | |
| PX-0829 | Removed | | | | |
| PX-0830 | Removed | | | | |
| PX-0831 | Removed | | | | |
| PX-0832 | Removed | | | | |
| PX-0833 | Removed | | | | |
| PX-0834 | Removed | | | | |
| PX-0835 | Archer FusionPlex Lung Thyroid Kit for [redacted] | ADX - 000380597 | ADX - 000380614 | | ENP |
| PX-0836 | List of Qiagen accused panels | QIA-01048135 | QIA-01048135 | | |
| PX-0837 | Email dated 9/15/2016 from J Fostel to Z Wu re: [redacted] | QIA-01063971 | QIA-01063977 | | R, FRE 403, FN, FRE 602, NR, H |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0838 | Email dated 9/15/2016 from J Fostel to J DiCarlo et al. Re: [redacted] | QIA-01063951 | QIA-01063955 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0839 | 2018 Illumina Adapter Sequences | QIA-00895683 | QIA-00895723 | | |
| PX-0840 | QIAseq RNAscan Introduction v5 20180629.pptx | QIA-01067295 | QIA-01067295 | | R, FRE 403, FN, FRE 602 |
| PX-0841 | Analyzing Fusion Genes with Next-Generation Sequencing Technology, Raed Samara | QIA-00263032 | QIA-00263032 | | R, FRE 403, FN, FRE 602, NR |
| PX-0842 | GAMP NA training 20160715_Wholly book DNA and RNAscan panels_FINAL.pptx | QIA-00250860 | QIA-00250860 | | R, FRE 403, FN, FRE 602, NR |
| PX-0843 | Immune Repertoire seq_for Sam-20170419.pptx | QIA-00143488 | QIA-00143488 | | R, FRE 403, FN, FRE 602, NR |
| PX-0844 | QIAseq Immune Repertoire_T_Cell_Receptor Customer Preview.pptx | QIA-00251276 | QIA-00251276 | | R, FRE 403, FN, FRE 602, NR |
| PX-0845 | V2 and V3 detailed information.pptx | QIA-00006745 | QIA-00006745 | | R, FRE 403, FN, FRE 602, NR |
| PX-0846 | Feb2013 Sequencing Symposium.pptx | QIA-00696796 | QIA-00696796 | | R, FRE 403, FN, FRE 602, NR |
| PX-0847 | GeneRead Primer Sequences.xlsx | QIA-00001672 | QIA-00001672 | | |
| PX-0848 | labcorp 2.pptx | QIA-00143257 | QIA-00143257 | | R, FRE 403, FN, FRE 602, NR |
| PX-0849 | Email dated 10/11/2017 from Z Wu to E Lader; re: task for the next few days | QIA-00149451 | QIA-00149452 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0850 | DHS-103Z.primer3-order.xlsx | QIA-00149453 | QIA-00149453 | | R, FRE 403, FN, FRE 602, NR |
| PX-0851 | Email dated 6/24/2016 from S Tian to Y Kim; Re: 20160621 Four RNAscan panel list.xlsx | QIA-00225809 | QIA-00225813 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0852 | QIAseqTargetedDNA_AdapterDesign_[redacted].xls | QIA-01063978 | QIA-01063978 | | R, FRE 403, FN, FRE 602, NR |
| PX-0853 | QIAseq Targeted DNA Panels | QIA-00001154 | QIA-00001155 | | |
| PX-0854 | Oregon Health & Science University Purchase Order Number 2122288 | QIA-00078219 | QIA-00078219 | | R, FRE 403, FN, FRE 602 |
| PX-0855 | Email dated 11/16/2018 from AIS Oracle Production; Re: For Your Review - Standard Purchase Order 2118826, 0 | QIA-00259070 | QIA-00259071 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0856 | Email dated 5/16/2018 from S Tian to J Ramnath; Re: USA; QIAseq; Targeted RNAscan Custom Panel - 201-200; QIAseq Beads issue? | QIA-00232974 | QIA-00232976 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0857 | [redacted].pptx | QIA-00077028 | QIA-00077028 | | R, FRE 403, FN, FRE 602, NR |
| PX-0858 | Email dated 9/5/2018; E. Lader to J. Yang et all "RE: [redacted]" | QIA-00159618 | QIA-00159621 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0859 | Email dated 5/14/2018; E. Lader to S. Tian et al "RE: unique dual index" | QIA-00164383 | QIA-00164385 | | R, FRE 403, FN, FRE 602, NR, H |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0860 | xgen-dual-index-umi-adapters-resolve-index-hopping-and-enable-low-frequency-variant-detection.pdf | QIA-00891912 | QIA-00891915 | | R, FRE 403, FN, FRE 602, NR |
| PX-0861 | Targeted RNA Panels - Handbook January 2016.pdf | QIA-00001217 | QIA-00001266 | | |
| PX-0862 | SPE Evaluation.pptx | QIA-00276993 | QIA-00276993 | | R, FRE 403, FN, FRE 602, NR |
| PX-0863 | MiSeqReporter_v2.2_TheoryofOperation_15038604_C.pdf | QIA-00717651 | QIA-00717696 | | R, FRE 403, FN, FRE 602, NR |
| PX-0864 | [redacted]_Oct 2016_QIAseq DNA and RNAscan panels_RS_v2.pptx | QIA-00156645 | QIA-00156645 | | R, FRE 403, FN, FRE 602, NR |
| PX-0865 | RNAscan catalog panel primer lists.xlsx | QIA-00230073 | QIA-00230073 | | R, FRE 403, FN, FRE 602, NR |
| PX-0866 | Benefits of single primer extension (SPE)-driven QIAseq over 2-primer amplicon-driven AmpliSeq, Raed Samara | QIA-00083045 | QIA-00083045 | | R, FRE 403, FN, FRE 602, NR |
| PX-0867 | LA135.G-Archer-FusionPlex-Protocol-[redacted].pdf | ADX - 000054502 | ADX - 000054525 | | |
| PX-0868 | LA135.B Protocol, Archer® FusionPlex®, [redacted].pdf | ADX - 000018480 | ADX - 000018502 | | |
| PX-0869 | LSO-14-1013-1-3 Rev. 01.docx | QIA-00022108 | QIA-00022114 | Lader 5 | R, FRE 403, FN, FRE 602, NR |
| PX-0870 | AK0002-8 Archer CUSTOM Fusion Detection v1 [redacted] Platform Product Requirements Document 15Jan14 JASON MYERS SIGNED.doc | QIA-00797342 | QIA-00797349 | | R, FRE 403, FN, FRE 602, NR |
| PX-0871 | 000000003DEAA8D297F74A4DB6EF20332ADC8DAD64962300.MSG | ADX - 000099625 | ADX - 000099626 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0872 | Press Release QIAGEN launches “Digital NGS” solutions with unique Molecular Index Technology to reliably detect all genetic variation | QIA-00072005 | QIA-00072007 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0873 | 14-1012-1-3_CPC_QIAseq_Targeted RNAscan_05252016-2.xlsx | QIA-00225992 | QIA-00225992 | Tian 17; Dayal 14 | R, FRE 403, FN, FRE 602, NR |
| PX-0874 | CMB0287 FMWI-027 1 Rev B Custom Buffer and Diluent Form EFF 08JUL2015.doc | QIA-00810114 | QIA-00810115 | | R, FRE 403, FN, FRE 602, NR |
| PX-0875 | IFU-AK0024-8 Rev B Archer Universal RNA Reagent Kit [redacted] Platform.pdf | ADX - 000025942 | ADX - 000025955 | Lennon 519 | R, FRE 403, FN, FRE 602, NR |
| PX-0876 | Niall Lennon CV | n/a | n/a | | |
| PX-0877 | Removed - Duplicate | | | | |
| PX-0878 | Targeted DNA Panel - Operations Doc.pdf | QIA-00001606 | QIA-00001613 | | R, FRE 403, FN, FRE 602, NR |
| PX-0879 | QIAseq TMB training 20181012.pptx | QIA-00087496 | QIA-00087496 | | R, FRE 403, FN, FRE 602, NR |
| PX-0880 | LSO-18-1009-1-4 Rev.01.doc | QIA-00045797 | QIA-00045805 | | R, FRE 403, FN, FRE 602, NR |
| PX-0881 | Wu Dep. Ex. 56 | n/a | n/a | Wu 56 | R, FRE 403 |
| PX-0882 | Plasmid_DNA__Ligation_of_DNA.pdf | QIA-00734852 | QIA-00734853 | | R, FRE 403, FN, FRE 602, NR |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0883 | Archer OverviewvAdGx.pdf | QIA-00061653 | QIA-00061674 | | |
| PX-0884 | Interest for testing Archer FusionPlex.msg | QIA-00058801 | QIA-00058801 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0885 | LSDR-17-1023-1-2.pptx | QIA-00056689 | QIA-00056710 | | R, FRE 403, FN, FRE 602, NR |
| PX-0886 | Re QiaSeq NGS data, BxWB plug in Reads per UMI | QIA-01069459 | QIA-01069467 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0887 | Email dated 4/23/2012 from D. Dias-Santagata to L. Long Re: Capture slides | MGH - 0035582 | MGH - 0035591 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0888 | Email dated 12/2/2011 from John Iafrate to Long Le, Zongli Zheng RE: Single adaptor | MGH - 0034065 | MGH - 0034065 | Le 18; Iafrate 8 | R, FRE 403, FN, FRE 602, NR, H |
| PX-0889 | http://rebase.neb.com/rebase/rebase.html | ADX - 000500209 | ADX - 000500210 | | R, FRE 403, FN, FRE 602, NR |
| PX-0890 | Ex. F to Lennon Rebuttal Report- Newton et al, Diagnosis of α1-antitrypsin deficiency by enzymatic amplification of human genomic DNA and direct sequencing of polymerase chain reaction products, Nucleic Acids Research, Vol. 16, No. 17, pp. 8233-8243 (1988) | n/a | n/a | | |
| PX-0891 | Ex. G to Lennon Rebuttal Report- Meyer, M. et al, Illumina sequencing library preparation for highly multiplexed target capture and sequencing, Cold Spring Harb Protoc; 2010; doi:10.1101/pdb.prot5448 | n/a | n/a | | |
| PX-0892 | Re cfDNA 0.1% VAF | QIA-00153405 | QIA-00153406 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0893 | Le Depo. Ex. 18, Email from L. Le to J. Iafrate dated 12/2/2011 | MGH- 0034065 | MGH- 0034065 | Le 18 | R, FRE 403, FN, FRE 602, NR, H |
| PX-0894 | Le Depo. Ex. 22A | ADX - 000493593 | ADX - 000493593 | Le 22A | ENP |
| PX-0895 | Email from V. Fox to L. Zinetti et al dated April 23, 2018 (attaching QIA-00417483) | QIA-00417480 | QIA-00417482 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0896 | Slides entitled "NGS workflow from research to diagnosis. The settings of ISO accreditation of a complete NGS workflow for BRCA1/2 analysis" | QIA-00417483 | QIA-00417483 | | R, FRE 403, FN, FRE 602, NR |
| PX-0897 | Z. Daniel et al, Performance comparison of reverse transcriptases for single-cell studies | QIA-00930799 | QIA-00930818 | | |
| PX-0898 | Raed Samara, slides entitled "Enabling digital, quantitative sequencing for biomarker evaluation with Unique Molecular Indices (UMIs) | QIA-00156645 | QIA-00156645 | | R, FRE 403, FN, FRE 602, HR |
| PX-0899 | Le Dep. Ex. 15 (Gchat between Z. Zheng and Le) | MGH - 0035596 | MGH - 0035606 | Le 15 | R, FRE 403, FN, FRE 602, NR, H |
| PX-0900 | Le Dep. Ex. 14 (Gchat between Z. Zheng and Le) | MGH - 0035592 | MGH - 0035595 | Le 14 | R, FRE 403, FN, FRE 602, NR, H |
| PX-0901 | Foundation One CDx Technical Information - Last visited November 20, 2020.pdf | QIA-01073865 | QIA-01073900 | | R, FRE 403, FN, FRE 602, NR, H |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0902 | 1 - Kick Off_14-1013-1_20150928.pptx | QIA-00163869 | QIA-00163869_0027 | | R, FRE 403, FN, FRE 602, NR |
| PX-0903 | https://www.foundationmedicine.com/press-releases/445c1f9e-6cbb-488b-84ad-5f133612b721 | ADX - 000500211 | ADX - 000500215 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0904 | Maria Fe Paz CV | n/a | n/a | | |
| PX-0905 | Paz Opening Report 10/7/20 - Ex C- Distribution of In Vitro Diagnostic Products Labeled for Research Use Only or Investigational Use Only: Guidance for Industry and Food and Drug Administrative Staff, issued Nov. 25, 2013 (“FDA RUO and IUO Guidance”) | n/a | n/a | | |
| PX-0906 | FDA “Clinical Laboratory Improvement Amendments,” available at: https://www.fda.gov/medical-devices/ivd-regulatory-assistance/clinical-laboratory-improvement-amendments-clia, | ADX - 000500216 | ADX - 000500217 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0907 | FDA “Laboratory Developed Tests,” available at: https://www.fda.gov/medical-devices/vitro-diagnostics/laboratory-developed-tests, | ADX - 000500218 | ADX - 000500220 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0908 | College of American Pathologists Public Comments, available at: https://documents.cap.org/documents/2015-fda-ldt-workshop-cap.pdf; | ADX - 000500221 | ADX - 000500229 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0909 | “Draft Guidance for Industry, Food and Drug Administration Staff, and Clinical Laboratories; Framework for Regulatory Oversight of Laboratory Developed Tests(LTDs),” https://www.fda.gov/media/89841/download. | ADX - 000500230 | ADX - 000500270 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0910 | “In Vitro Companion Diagnostic Devices: Guidance for Industry and Food and Drug Administration Staff,” Aug. 6, 2014, at 5, available at: https://www.fda.gov/media/81309/download. | ADX - 000500271 | ADX - 000500283 | | R, FRE 403, FN, FRE 602, NR, H |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0911 | Developing and Labeling In vitro Companion Diagnostic Devices for a Specific Group of Oncology Therapeutic Products: Guidance for Industry," April 2020, at 2, available at: https://www.fda.gov/media/120340/download. | ADX - 000500284 | ADX - 000500295 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0912 | FDA, "Principles for Codevelopment of an In Vitro Companion Diagnostic Device with a Therapeutic Product: Draft Guidance for Industry and Food and Drug Administration Staff," Jul. 15, 2016, at 8, available at: fda.gov/media/99030/download | ADX - 000500296 | ADX - 000500343 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0913 | FDA, "Investigational Device Exemption (IDE)," at 1, available at https://www.fda.gov/medical-devices/how-study-and-market-your-device/investigational-device-exemption-ide. | ADX - 000500344 | ADX - 000500346 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0914 | CMS Press Release, dated, Mar. 16, 2018, "CMS finalizes coverage of Next Generation Sequencing tests, ensuring enhanced access for cancer patients," available at: https://www.cms.gov/newsroom/press-releases/cms-finalizes-coverage-next-generation-sequencing-tests-ensuring-enhanced-access-cancer-patients | ADX - 000500347 | ADX - 000500349 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0915 | Yun-Fu Hu, Ph.D., Deputy Director Division of Molecular Genetics and Pathology Office of In Vitro Diagnostics and Radiological Health Center for Devices and Radiological Health, "Development of Companion Diagnostics – And FDA Perspective," available at: http://www.asq509.org/ht/a/GetDocumentAction/i/121784 | ADX - 000500350 | ADX - 000500394 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0916 | Paz Opening Report 10/7/20 - Ex. N- Meijuan Li, "Statistical Methods for Clinical Validation of Follow-On Companion Diagnostic Devices via External Concordance Study," Statistics in Biopharmaceutical Research, Vol. 8, Issue 3, 2016 | | | | R, FRE 403, FN, FRE 602, NR, H |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0917 | G. Tachon, et al., "Targeted RNA-sequencing assays: a step forward compared to FISH and IHC techniques?" CANCER MEDICINE, Oct. 25, 2019, available at: https://onlinelibrary.wiley.com/doi/full/10.1002/cam4.2599. | ADX - 000500395 | ADX - 000500405 | | |
| PX-0918 | Qiagen website page entitled "Partnering for Precision Diagnostics," available at: https://www.qiagen.com/us/clp/partnering-for-precision-diagnostics. | ADX - 000500406 | ADX - 000500410 | | R, FRE 403 |
| PX-0919 | ArcherDX Partners with Illumina to Bring Leading Fusion Oncology Assays to Global Markets, available at: https://www.businesswire.com/news/home/20160606005034/e rcherDX-Partners-with-Illumina-to-Bring-Leading-Fusion-Oncology-Assays-to-Global-Markets; | ADX - 000500411 | ADX - 000500412 | | R, FRE 403 |
| PX-0920 | ArcherDX Announces Partnership with Illumina to Develop In-Vitro Diagnostic Tests, available at: https://www.prnewswire.com/news-releases/archerdx-announces-partnership-with-illumina-to-develop-in-vitro-diagnostic-tests-300967838.html. | ADX - 000500413 | ADX - 000500415 | | R, FRE 403 |
| PX-0921 | Qiagen Press Release, "QIAGEN introduces GeneReader NGS System," available at: https://corporate.qiagen.com/newsroom/press-releases/press-release-details/2015/QIAGEN-introduces-GeneReader-NGS-System/default.aspx | ADX - 000500416 | ADX - 000500419 | | R, FRE 403 |
| PX-0922 | Qiagen Press Release, "QIAGEN and Illumina Partner to Delivery Sequencing-Based In-Vitro Diagnostic (IVD) Tests," Oct. 7, 2019, available at: https://corporate.qiagen.com/newsroom/press-releases/press-release-details/2019/ QIAGEN-and-Illumina-Partner-to-Deliver-Sequencing-Based-In-Vitro-Diagnostic-IVD-Tests/default.aspx | ADX - 000500420 | ADX - 000500422 | | R, FRE 403 |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0923 | Paz Opening Report 10/7/20 - Ex. W- Connor Hale, "Qiagen to reorganize around 15-year NGS partnership with Illumina as CEO quits," FIERCE BIOTECH, Oct. 8, 2019 | | | | R, FRE 403, FN, FRE 602 |
| PX-0924 | Qiagen Press Release, "Thermo Fisher Scientific to Acquire QIAGEN N.V.," Mar. 3, 2020, available at: https://corporate.qiagen.com/newsroom/press-releases/press-release-details/2020/ Thermo-Fisher-Scientific-to-Acquire-QIAGEN-NV/default.aspx | ADX - 000500423 | ADX - 000500427 | | R, FRE 403 |
| PX-0925 | Thermo Fisher Press Release, "Thermo Fisher Scientific Announces Results of Offer to Acquire QIAGEN, Lapse of Offer and Termination of Acquisition Agreement," dated Aug. 13, 2020, avialble at: https://thermofisher.mediaroom.com/2020-08-13-Thermo-Fisher-Scientific-Announces-Results-of-Offer-to-Acquire-QIAGEN-Lapse-of-Offer-and-Termination-of-Acquisition-Agreement | ADX - 000500428 | ADX - 000500429 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0926 | "ArcherDx to Develop CDx for Celgene's Lymphoma Drug Candidate," available at: https://www.genomeweb.com/companion-diagnostics/archerdx-develop-cdx-celgenes-lymphoma-drug-candidate#.YOX4ivWzOHs | ADX - 000500430 | ADX - 000500432 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0927 | "Merck Partnering with ArcherDX on Cancer Companion Diagnostics", available at: https://www.clinicalomics.com/topics/precision-medicine-topic/companies/merck-partnering-with-archerdx-on-cancer-companion-diagnostics/ | ADX - 000500433 | ADX - 000500435 | | R, FRE 403, FN, FRE 602, NR, H |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0928 | "Bayer and ArcherDX Announce Global Collaboration to Develop Next-Generation Sequencing (NGS)-based Companion Diagnostic (CDx) for VITRAKVI® (larotrectinib)", available at: https://www.businesswire.com/news/home/20200514005222/en/Bayer-and-ArcherDX-Announce-Global-Collaboration-to-Develop-Next-Generation-Sequencing-NGS--based-Companion-Diagnostic-CDx-for-VITRAKVI%C2%AE-larotrectinib | ADX - 000500436 | ADX - 000500439 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0929 | Paz Opening Report 10/7/20 - Ex. P- September 24, 2020, screenshot of Qiagen LinkedIn Marketing Message, provided by Jill Stefanelli, PhD. | n/a | n/a | | R, FRE 403, FN, FRE 602 |
| PX-0930 | Mostafa Nazamian CV | n/a | n/a | Zamanian 2 | R, H, FRE 403, FN, FRE 602 |
| PX-0931 | Archer FusionPlex Protocol for Illumina, June 6, 2018 | ADX-000054502 | ADX-000054525 | | |
| PX-0932 | Zamanian 10/7/20 - Ex. B- GSP2 and p7.xlsx | n/a | n/a | | R, H, FRE 403, FN, FRE 602 |
| PX-0933 | Zamanain 10/7/20 Table 1 | n/a | n/a | | R, H, FRE 403, FN, FRE 602 |
| PX-0934 | Zamanain 10/7/20 Table 2 | n/a | n/a | | R, H, FRE 403, FN, FRE 602 |
| PX-0935 | Archer Comp Intel_v07.pdf | ADX - 000170496 | ADX - 000170503 | Fugere 10 | R, FRE 403, FN, FRE 602, NR, H |
| PX-0936 | ArcherDX 2018 Financial Statement Draft 05.01.2019.docx | ADX - 000286828 | ADX - 000286849 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0937 | Email dated 2/21/2018; J. Stefanelli to T. Pollard "Re: TPT" | ADX - 000476191 | ADX - 000476192 | Stefanelli 7 | R, FRE 403, FN, FRE 602, NR, H |
| PX-0938 | BD_ArcherDX_License Agreement_2019_executed.pdf | ADX - 000476210 | ADX - 000476231 | | R, FRE 403, FN, FRE 602, NR |
| PX-0939 | ArcherDX_SEC Filing.pdf | ADX - 000499791 | ADX - 000500067 | Sims 5 | |
| PX-0940 | MGH ArcherDX - 2nd Amendment to License 6-30-17 MGH.pdf | ADX - 002386 | ADX - 002390 | | |
| PX-0941 | Email dated 4/20/2017 from J. Stefanelli to A. Iafrate re: [redacted] | MGH - 0004460 | MGH - 0004460 | Stefanelli 11 | R, FRE 403, FN, FRE 602, NR, H |
| PX-0942 | [redacted].pdf | QIA-01070194 | QIA-01070210 | | R, FRE 403, FN, FRE 602, NR |
| PX-0943 | [redacted]xlsx | QIA-01070436 | QIA-01070436 | | R, FRE 403, FN, FRE 602, NR |
| PX-0944 | [redacted].xlsx | QIA-01070437 | QIA-01070437 | | R, FRE 403, FN, FRE 602, NR |
| PX-0945 | [redacted].xlsx | QIA-01070439 | QIA-01070439 | | R, FRE 403, FN, FRE 602, NR |
| PX-0946 | [redacted].xlsx | QIA-01070440 | QIA-01070440 | | R, FRE 403, FN, FRE 602, NR |
| PX-0947 | [redacted]xlsx | QIA-01070441 | QIA-01070441 | | R, FRE 403, FN, FRE 602, NR |
| PX-0948 | [redacted].xlsx | QIA-01070442 | QIA-01070442 | | R, FRE 403, FN, FRE 602, NR |
| PX-0949 | [redacted].xlsx | QIA-01070443 | QIA-01070443 | | R, FRE 403, FN, FRE 602, NR |
| PX-0950 | [redacted].xlsx | QIA-01070444 | QIA-01070444 | | R, FRE 403, FN, FRE 602, NR |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0951 | [redacted].xlsx | QIA-01070445 | QIA-01070445 | | R, FRE 403, FN, FRE 602, NR |
| PX-0952 | [redacted].xlsx | QIA-01070446 | QIA-01070446 | | R, FRE 403, FN, FRE 602, NR |
| PX-0953 | [redacted]xlsx | QIA-01070447 | QIA-01070447 | | R, FRE 403, FN, FRE 602, NR |
| PX-0954 | [redacted]xlsx | QIA-01070448 | QIA-01070448 | | R, FRE 403, FN, FRE 602, NR |
| PX-0955 | [redacted].xlsx | QIA-01070453 | QIA-01070453 | | R, FRE 403, FN, FRE 602, NR |
| PX-0956 | [redacted].xlsx | QIA-01070454 | QIA-01070454 | | R, FRE 403, FN, FRE 602, NR |
| PX-0957 | [redacted]xlsx | QIA-01070458 | QIA-01070458 | | R, FRE 403, FN, FRE 602, NR |
| PX-0958 | [redacted]xlsx | QIA-01070459 | QIA-01070459 | | R, FRE 403, FN, FRE 602, NR |
| PX-0959 | [redacted].xlsx | QIA-01070460 | QIA-01070460 | | R, FRE 403, FN, FRE 602, NR |
| PX-0960 | Global 2016-2019.xlsm | QIA-01071700 | QIA-01071700 | | R, FRE 403 |
| PX-0961 | Net sales and Gross margin worldwide.xlsx | QIA-01071701 | QIA-01071701 | | R, FRE 403, FN, FRE 602, NR |
| PX-0962 | https://www.idtdna.com/pages/technology/next-generation-sequencing | ADX - 000500440 | ADX - 000500442 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0963 | https://www.illumina.com/science/technology/next-generation-sequencing/beginners.html | ADX - 000500443 | ADX - 000500447 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0964 | https://www.genome.gov/about-genomics/fact-sheets/Polymerase-Chain-Reaction-Fact-Sheet | ADX - 000500448 | ADX - 000500450 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0965 | https://www.idtdna.com/pages/technology/next-generation-sequencing/librarypreparation. | ADX - 000500451 | ADX - 000500453 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0966 | https://www.illumina.com/science/technology/next-generation-sequencing/beginners/glossary.html | ADX - 000500454 | ADX - 000500537 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0967 | https://www.idtdna.com/pages/technology/next-generation-sequencing/dna-sequencing/targeted-sequencing | ADX - 000500538 | ADX - 000500541 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0968 | https://www.illumina.com/techniques/sequencing/dna-sequencing/targeted-resequencing/targeted-panels.html | ADX - 000500542 | ADX - 000500546 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0969 | https://www.prnewswire.com/news-releases/invitae-and-archerdx-to-create-a-global-leader-in-comprehensive-cancer-genetics-and-precision-oncology-301080846.html | ADX - 000500547 | ADX - 000500552 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0970 | https://ir.invitae.com/news-and-events/press-releases/press-release-details/2020/Invitae-Completes-Transaction-with-ArcherDX-to-Bring-Comprehensive-Cancer-Genetics-and-Precision-Oncology-to-Patients-Worldwide/default.aspx | ADX - 000500553 | ADX - 000500555 | | R, FRE 403, FN, FRE 602, NR, H |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0971 | https://www.massgeneralbrigham.org/who-we-are/members-affiliations | ADX - 000500556 | ADX - 000500560 | | |
| PX-0972 | https://www.massgeneralbrigham.org/who-we-are/our-story | ADX - 000500561 | ADX - 000500563 | | |
| PX-0973 | https://www.massgeneral.org | ADX - 000500564 | ADX - 000500567 | | |
| PX-0974 | https://www.qiagen.com/us/%20products/ | ADX - 000500568 | ADX - 000500569 | | |
| PX-0975 | https://thermofisher.mediaroom.com/2020-08-13-Thermo-Fisher-Scientific-Announces-Results-of-Offer-to-Acquire-QIAGEN-Lapse-of-Offer-and-Termination-of-Acquisition-Agreement | ADX - 000500570 | ADX - 000500571 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0976 | https://archerdx.com/technology-platform/technology/. | ADX - 000500572 | ADX - 000500574 | | |
| PX-0977 | The Ion Torrent is Thermo Fisher's NGS system (https://www.thermofisher.com/us/en/home/brands/iontorrent.html) | ADX - 000500575 | ADX - 000500577 | | |
| PX-0978 | (https://www.genomeweb.com/clinical-sequencing/life-technologies-acquire-ion-torrent-725m#.X2zoyWhKhPY) | ADX - 000500578 | ADX - 000500580 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0979 | (https://www.thermofisher.com/us/en/home/brands/life-technologies.html). | ADX - 000500581 | ADX - 000500582 | | |
| PX-0980 | https://www.qiagen.com/us/products/discovery-and-translational-research/next-generation-sequencing/dna-sequencing/targeted-dna-panels/qiaseq-targeted-dna-panels/#orderinginformation | ADX - 000500583 | ADX - 000500587 | | R, FRE 403 |
| PX-0981 | https://www.qiagen.com/us/products/discovery-and-translational-research/next-generation-sequencing/rnasequencing/t-cell-receptor-sequencing/qiaseq-immune-repertoire-rna-library-kits/?clear=true#orderinginformation | ADX - 000500588 | ADX - 000500591 | | R, FRE 403 |
| PX-0982 | https://www.qiagen.com/us/products/discovery-and-translational-research/next-generation-sequencing/dnasequencing/germline-panels/qiaseq-indexes/?clear=true#orderinginformation | ADX - 000500592 | ADX - 000500595 | | R, FRE 403 |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0983 | https://www.qiagen.com/us/products/instruments-and-automation/genereader-system/generead-qiaact-lung-panels-ww/?clear=true#orderinginformation | ADX - 000500596 | ADX - 000500599 | | R, FRE 403 |
| PX-0984 | https://www.qiagen.com/us/products/discovery-and-translational-research/next-generation-sequencing/dnasequencing/whole-genome-sequencing/qiaseq-targeted-dna-custom-panels/#orderinginformation | ADX - 000500600 | ADX - 000500603 | | R, FRE 403 |
| PX-0985 | https://www.qiagen.com/us/products/discovery-and-translational-research/next-generation-sequencing/rnasequencing/custom-rna-panels/qiaseq-targeted-rnascan-custom-panel/#orderinginformation | ADX - 000500604 | ADX - 000500606 | | R, FRE 403 |
| PX-0986 | https://www.qiagen.com/us/products/next-generation-sequencing/custom-ngs-panels/generead-qiaact-custom-panels-ww/#orderinginformation | ADX - 000500607 | ADX - 000500610 | | R, FRE 407 |
| PX-0987 | https://www.fda.gov/medical-devices/vitro-diagnostics/companion-diagnostics. | ADX - 000500611 | ADX - 000500613 | | |
| PX-0988 | Email from J. Stefanelli to J. Simon dated 11/3/2017 "Re: Archer/Qiagen Agreement" | ADX - 000360245 | ADX - 000360245 | Stefanelli 8 | R, FRE 403, FN, FRE 602, NR, H |
| PX-0989 | https://www.prnewswire.com/news-releases/invitae-and-archerdx-to-create-a-global-leader-in-comprehensive-cancer-genetics-and-precision-oncology-301080846.html | ADX - 000500614 | ADX - 000500619 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-0990 | Stefanelli Deposition, Exhibit 14 | ADX - 000093518 | ADX - 000093518 | Stefanelli 14; Fugere 8 | |
| PX-0991 | ArcherDX 2017 Financial Statements - Final.pdf | ADX - 000406237 | ADX - 000406258 | | R, FRE 403 |
| PX-0992 | https://www.qiagen.com/us/products/next-generation-sequencing/dna-sequencing/somatic-panels/qiaseq-targeted-dna-panels/#orderinginformation | ADX - 000500620 | ADX - 000500624 | | R, FRE 403, NR, H |
| PX-0993 | ArcherDx MGH License Agreement_(PALIB2_6403295_1)(EXECUTED)_(palib2_6409184_1).PDF | ADX - 002354 | ADX - 002383 | Sims 10 | R, FRE 403, FN, FRE 602, NR |
| PX-0994 | [redacted].pdf | QIA-01070180 | QIA-01070193 | | R, FRE 403, FN, FRE 602, NR |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-0995 | [redacted]....pdf | QIA-01070211 | QIA-01070232 | | R, FRE 403, FN, FRE 602, NR |
| PX-0996 | [redacted].pdf | QIA-01070233 | QIA-01070244 | | R, FRE 403, FN, FRE 602, NR |
| PX-0997 | [redacted].pdf | QIA-01070245 | QIA-01070261 | | R, FRE 403, FN, FRE 602, NR |
| PX-0998 | [redacted].pdf | QIA-01070262 | QIA-01070281 | | R, FRE 403, FN, FRE 602, NR |
| PX-0999 | [redacted].pdf | QIA-01070331 | QIA-01070346 | | R, FRE 403, FN, FRE 602, NR |
| PX-1000 | [redacted].xlsx | QIA-01070438 | QIA-01070438 | | R, FRE 403, FN, FRE 602, NR |
| PX-1001 | [redacted].pdf | QIA-01070462 | QIA-01070478 | | R, FRE 403, FN, FRE 602, NR |
| PX-1002 | (https://www.uspto.gov/web/offices/pac/mpep/s2701.html) | ADX - 000500625 | ADX - 000500626 | | |
| PX-1003 | https://www.activecampaign.com/blog/key-opinion-leaders. | ADX - 000500627 | ADX - 000500634 | | R, FRE 403, FN, FRE 602, NR |
| PX-1004 | Email dated 7/12/18; J. Stefanelli to T. Pollard "Re: Custom Proposal" | ADX - 000238163 | ADX - 000238164 | Stefanelli 6 | R, FRE 403, FN, FRE 602, NR |
| PX-1005 | Raymond Sims CV | n/a | n/a | Sims 1 | H, FRE 403 |
| PX-1006 | Sims 10/7/20 Tab 2 - Ray Sims Depostion Testimony & Trial Testimony | n/a | n/a | | H, FRE 403 |
| PX-1007 | Sims 10/7/20- Tab 3- Schedule 3 | n/a | n/a | Sims 2 | R, H, FRE 403 |
| PX-1008 | Sims 10/7/20 Tab 4 - Schedule 4 | n/a | n/a | | H, Expert |
| PX-1009 | Sims 10/7/20 Tab 5 - Schedule 5 | n/a | n/a | | H, Expert, M |
| PX-1010 | Sims 10/7/20 Tab 6 - Schedule 6 | n/a | n/a | | H, Expert, M |
| PX-1011 | Sims 10/7/20 Tab 7 - Schedule 7 | n/a | n/a | | H, Expert, M, FRE 403 |
| PX-1012 | Sims 10/7/20 Tab 8 - Schedule 8 | n/a | n/a | Sims 6 | H, Expert, M, R, FRE 403 |
| PX-1013 | Sims 10/7/20 Tabs 9 - Schedule 9 | n/a | n/a | Sims 7 | H, Expert, M, FRE 403 |
| PX-1014 | Sims 10/7/20 Tabs 10 - Schedule 10 | n/a | n/a | | H, Expert, R, FRE 403, FRE 1006 |
| PX-1015 | Sims 10/7/20 Tabs 11 - Schedule 11 | n/a | n/a | | H, Expert, FRE 403 |
| PX-1016 | Sims 11/20/20 Tab 3 - Schedule 3.0CS | n/a | n/a | | H, FRE 403 |
| PX-1017 | Sims t 11/20/20 Tab 4 - Schedule 4.0CS | n/a | n/a | | H, Expert, R, FRE 403 |
| PX-1018 | Sims t 11/20/20 TAB 3 - Schedule 3.0 R | n/a | n/a | | H, FRE 403 |
| PX-1019 | James McSwiggen CV | n/a | n/a | McSwiggen 2 | H, FRE 403 |
| PX-1020 | James McSwiggin Materials Reviewed | n/a | n/a | | R, H, FRE 403 |
| PX-1021 | APAgene Manual, Bio S&T Inc., APAgene™ GOLD-RT genome walking kits | QIA-00689102 | QIA-00689115 | Lennon 512 | |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-1022 | https://www.neb.com/protocols/0001/01/01/taq-dna-polymerase-with-standard-taq-buffer-m0273 | ADX - 000500635 | ADX - 000500637 | | R, H, FRE 403 |
| PX-1023 | https://www.sigmaaldrich.com/catalog/product/SIGMA/P2192?lang=en&region=US. | ADX - 000500638 | ADX - 000500641 | | R, H, FRE 403 |
| PX-1024 | James McSwiggen 11/20/20 Exhibit C Spreadsheet (Fraiture) | n/a | n/a | | R, H, FRE 403, FN, FRE 602, Expert |
| PX-1025 | James McSwiggen 11/20/20 Exhibit D - Spreadsheet (McCarty) | n/a | n/a | | R, H, FRE 403, FN, FRE 602, Expert |
| PX-1026 | James McSwiggen 11/20/20 Report - Ex. E - Spreadsheet (Martin-Harris & Morley) | n/a | n/a | | R, H, FRE 403, FN, FRE 602, Expert |
| PX-1027 | Metzker RR - Morley, U.S. Pat. App. No. US 2010/0248310 | QIA-00689264 | QIA-00689363 | Lennon 514 | |
| PX-1028 | QIAseq Targeted DNA Panels website | ADX - 000500110 | ADX - 000500116 | | R, FRE 403, FN, FRE 602, NR |
| PX-1029 | QIAseq Targeted DNA Panel Handbook website | ADX - 000500642 | ADX - 000500723 | | |
| PX-1030 | Qiagen NGS Custom Builders \| Design Targeted Sequencing \| GeneGlobe website | ADX - 000500724 | ADX - 000500725 | | |
| PX-1031 | GeneGlobe video, https://geneglobe.qiagen.com/us/customize/ngs-builders/; https://www.youtube.com/watch?v=1pZzeHhDDHI GeneGlobe video embedded in website at ADX - 000500092. | ADX - 000500726 | ADX - 000500726 | | |
| PX-1032 | QIAseq Targeted RNAscan Panels website | ADX - 000500117 | ADX - 000500122 | | |
| PX-1033 | QIAseq Immune Repertoire RNA Library Kits website | ADX - 000500095 | ADX - 000500100 | | |
| PX-1034 | Email dated 8/17/2018 from B. Whitt to C. Corless et al re: QIAGEN Follow up – KDL Priorities for QIAGEN | OHSU-000945 | OHSU-000946 | | |
| PX-1035 | Removed | | | | |
| PX-1036 | Removed | | | | |
| PX-1037 | Long Phi Le Dep Exhibit 19 - Myllykangas article | n/a | n/a | Le 19 | |
| PX-1038 | Email dated 10/28/2011 from Long Le to Zongli Zheng Re: meeting | MGH - 0035692 | MGH - 0035692 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-1039 | Email dated 12/6/2011 from Zongli Zheng to Long Le Re: [Targeted RNA-Seq] Re: Ros positive FFPE samples | MGH - 0035688 | MGH - 0035689 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-1040 | Email dated 12/18/2011 from Zongli Zheng to Long Le, John Iafrate Re: Single adapter | MGH - 0035682 | MGH - 0035682 | | R, FRE 403, FN, FRE 602, NR, H |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-1041 | Email dated 12/18/2011 from Long Le to John Iafrate, Zongli Zheng, Uma Saxena, Hayley Robinson, Divya Panditi, dborger1@partners.org, Dora Dias-Santagata Re: ROS FFPE data | MGH - 0035678 | MGH - 0035680 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-1042 | Email dated 1/7/2012 from Zongli Zheng to John Iafrate, Long Le Re: ROS FFPE data | MGH - 0035675 | MGH - 0035677 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-1043 | Email dated 1/11/2012 from Zongli Zheng to Long Le, John Iafrate Re: [redacted] | MGH - 0035658 | MGH - 0035658 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-1044 | Email dated 1/31/2012 from Long Le to John Iafrate, Zongli Zheng Re: EZR-ROS1!!! | MGH - 0035638 | MGH - 0035638 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-1045 | Email dated 1/31/2012 from Zongli Zheng to lloonngg@gmail.com re: Chat with Zongli Zheng | MGH - 0035634 | MGH - 0035637 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-1046 | Email dated 5/3/2012 from Zongli Zheng to Dora Dias-Santagata, Long Le, Divya Panditi, Hayley Robinson, John Iafrate RE: TP53 and PTEN | MGH - 0035565 | MGH - 0035565 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-1047 | Protocol for Targeted DNA sequencing [redacted] | MGH - 0035567 | MGH - 0035568 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-1048 | Email dated 1/30/2012 from Long Le to Zongli Zheng Re: sheared dna | MGH - 0035640 | MGH - 0035640 | Le 12 | |
| PX-1049 | Email dated 3/28/2012 from Zongli Zheng to lloonngg@gmail.com Re: Chat with Zongli Zheng | MGH – 0035592 | MGH – 0035595 | Le 14 | |
| PX-1050 | Removed | | | | |
| PX-1051 | MSJ Opening Report - Ex. 11- '828 Patent | n/a | n/a | | |
| PX-1052 | MSJ Opening Report - Ex. 12- excerpts of U.S. Patent App. Pub. No. 2013/0303461 ("the '461 Publication") | n/a | n/a | | |
| PX-1053 | Manual of Patent Examining Procedure, Ninth Edition, June 2020 Publication of Revision 10.2019, which was accessed at https://www.uspto.gov/web/offices/pac/mpep/index.html on February 28, 2021. | n/a | n/a | | |
| PX-1054 | Removed - Duplicate | | | | |
| PX-1055 | U.S. Provisional Patent Application No. 61/931,943 ("the '943 Provisional"), | ADX - 000365342 | ADX - 000365411 | | |
| PX-1056 | Removed - Duplicate | | | | |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-1057 | Oppositon to MSJ - Non-Infringement Ex. H- IA-00417480 to QIA-00417482 and excerpts of a deck of slides attached thereto, which was produced natively as QIA-00417483, which is entitled "NGS Workflow from Research to Diagnosis. The Settings of ISO Accreditation of a Complete NGS Workflow for BRCA1/2 Analysis." | QIA-00417480 | QIA-00417483 | | R, FRE 403, FN, FRE 602 |
| PX-1058 | Oppositon to MSJ - Non-Infringement Ex. O- spreadsheet entitled "GeneRead Primer Sequences.xlsx," | QIA-00001672 | QIA-00001672 | | |
| PX-1059 | Oppositon to MSJ - Non-Infringement Ex. P- deck of slides entitled "GeneRead workflow: Overview," | QIA-00008338 | QIA-00008338 | Hughes 3 | |
| PX-1060 | Oppositon to MSJ - Non-Infringement Ex. Q- "QIAseq Targeted DNA Panel Handbook, February 2020," | n/a | n/a | Wang 10 | |
| PX-1061 | Budget Spreadsheet | QIA-00077120 | QIA-00077120 | | R, FRE 403, FN, FRE 602, NR |
| PX-1062 | Budget Spreadsheet | QIA-00077121 | QIA-00077121 | | R, FRE 403, FN, FRE 602, NR |
| PX-1063 | Budget Spreadsheet | QIA-00077122 | QIA-00077122 | | R, FRE 403, FN, FRE 602, NR |
| PX-1064 | Budget Spreadsheet | QIA-00077123 | QIA-00077123 | | R, FRE 403, FN, FRE 602, NR |
| PX-1065 | Budget Spreadsheet | QIA-00077124 | QIA-00077124 | | R, FRE 403, FN, FRE 602, NR |
| PX-1066 | Budget Spreadsheet | QIA-00077125 | QIA-00077125 | | R, FRE 403, FN, FRE 602, NR |
| PX-1067 | Budget Spreadsheet | QIA-00077126 | QIA-00077126 | | R, FRE 403, FN, FRE 602, NR |
| PX-1068 | Budget Spreadsheet | QIA-00077130 | QIA-00077130 | | R, FRE 403, FN, FRE 602, NR |
| PX-1069 | Budget Spreadsheet | QIA-00077131 | QIA-00077131 | | R, FRE 403, FN, FRE 602, NR |
| PX-1070 | Budget Spreadsheet | QIA-00077132 | QIA-00077132 | | R, FRE 403, FN, FRE 602, NR |
| PX-1071 | Budget Spreadsheet | QIA-00077133 | QIA-00077133 | | R, FRE 403, FN, FRE 602, NR |
| PX-1072 | Budget Spreadsheet | QIA-00077134 | QIA-00077134 | | R, FRE 403, FN, FRE 602, NR |
| PX-1073 | Long Phi Le CV | MGH - 0034080 | MGH - 0034082 | Le 2 | |
| PX-1074 | Dashboard NorthEast 20180803.xlsm | QIA-00077127 | QIA-00077127 | | R, FRE 403, FN, FRE 602, NR |
| PX-1075 | ADX FY 2019 & 2020 Sales Data Excel | ADX - 000505254 | ADX - 000505254 | | R, FRE 403, FN, FRE 602, NR |
| PX-1076 | Clinical Commissions 2020.xlsx | ADX - 000505255 | ADX - 000505254 | | R, FRE 403, FN, FRE 602, NR |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-1077 | GeneRead QIAact AIT DNA UMI Panel - QIAGEN Online Shop - Captured July 2020: https://www.qiagen.com/us/products/discovery-and-translational-research/next-generation-sequencing/genereader-system/generead-qiaact-ait-dna-umi-panel/ #productdetails | ADX - 000500727 | ADX - 000500770 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-1078 | GeneRead QIAact BRCA Advanced DNA UMI Panel - QIAGEN Online Shop - Captured July 2020: https://www.qiagen.com/us/products/instruments-and-automation/genereader-system/generead-qiaact-brca-advanced-dna-umi-panel-ww/#orderinginformation | ADX - 000500771 | ADX - 000500818 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-1079 | GeneRead QIAact Lung UMI Panels - QIAGEN Online Shop - Captured July 2020: https://www.qiagen.com/us/products/instruments-and-automation/genereader-system/generead-qiaact-lung-panels-ww/#orderinginformation | ADX - 000500819 | ADX - 000500952 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-1080 | QIAseq Targeted DNA Booster Panels - QIAGEN Online Shop - Captured July 2020: https://www.qiagen.com/us/products/next-generation-sequencing/dna-sequencing/ somatic-panels/qiaseq-targeted-dna-booster-panels/#orderinginformation | ADX - 000500953 | ADX - 000501100 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-1081 | QIAseq Targeted DNA Custom Panels - QIAGEN Online Shop - Captured July 2020: https://www.qiagen.com/us/products/discovery-and-translational-research/next-generation-sequencing/dna-sequencing/somatic-panels/qiaseq-targeted-dna-custom-panels/#resources | ADX - 000501101 | ADX - 000501346 | | R, FRE 403, FN, FRE 602, NR, H |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-1082 | QIAseq Targeted DNA Extended Panels - QIAGEN Online Shop - Captured July 2020: https://www.qiagen.com/us/products/discovery-and-translational-research/next-generation-sequencing/dna-sequencing/somatic-panels/qiaseq-targeted-dna-extended-panels/#productdetails | ADX - 000501347 | ADX - 000501604 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-1083 | QIAseq Targeted DNA Panels - QIAGEN Online Shop - Captured July 2020: https://www.qiagen.com/us/products/next-generation-sequencing/dna-sequencing/ somatic-panels/qiaseq-targeted-dna-panels/#resources | ADX - 000501605 | ADX - 000502468 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-1084 | QIAseq Targeted RNAscan Custom Panel - QIAGEN Online Shop - Captured July 2020: https://www.qiagen.com/us/products/discovery-and-translational-research/next-generation-sequencing/genomic-services/nextgenerationsequencing/custom-ngs-panels/qiaseq-targeted-rnascan-custom-panel/#orderinginformation | ADX - 000502469 | ADX - 000502682 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-1085 | QIAseq Immune Repertoire RNA Library Kits - QIAGEN Online Shop - Captured July 2020: https://www.qiagen.com/us/products/discovery-and-translational-research/next-generation-sequencing/library-preparation/qiaseq-immune-repertoire-rna-library-kits/#productdetails | ADX - 000502683 | ADX - 000502787 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-1086 | QIAseq Targeted RNAscan Panels - QIAGEN Online Shop - Captured July 2020: https://www.qiagen.com/us/products/discovery-and-translational-research/next-generation-sequencing/rna-sequencing/rna-fusions/qiaseq-targeted-rnascan-panel/ #productdetails | ADX - 000502788 | ADX - 000503447 | | R, FRE 403, FN, FRE 602, NR, H |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-1087 | QIAseq Index Kits - QIAGEN Online Shop - Captured July 2020: https://www.qiagen.com/us/products/discovery-and-translational-research/next-generation-sequencing/dna-sequencing/germline-panels/qiaseq-indexes/ #orderinginformation | ADX - 000504566 | ADX - 000504994 | | R, FRE 403, FN, FRE 602, NR, H |
| PX-1088 | "Transforming medical genetics worldwide," dated June 22, 2020 | ADX - 000505256 | ADX - 00505282 | | R, FRE 403, FN, FRE 602, H |
| PX-1089 | ArcherDX: All sales by Customer by Month for 2019 (unaudited) | ADX - 000494363 | ADX - 000494363 | Russell 17 | R, FRE 403, FN, FRE 602 |
| PX-1090 | Scientific Reports "Detection of known and novel ALK fusion | ADX - 000159056 | ADX - 000159066 | | R, FRE 403, FN, FRE 602, H, NR |
| PX-1091 | Single adapter.png | MGH – 0035683 | MGH – 0035683 | | R, FRE 403, FN, FRE 602, H, NR |
| PX-1092 | ros1_10612.png | MGH – 0035679 | MGH – 0035679 | | R, FRE 403, FN, FRE 602, H, NR |
| PX-1093 | Email dated 3/16/2012 from Long Le to Zongli Zheng, Valentina Nardi Re: targeted DNA sequencing | MGH – 0035616 | MGH – 0035616 | | R, FRE 403, H |
| PX-1094 | Targeted TNA-Seq | MGH – 0035566 | MGH – 0035566 | | R, FRE 403, FN, FRE 602, H, NR |
| PX-1095 | Email dated 11/29/2018 from Zongli Zheng to John Iafrate, L | MGH – 0006591 | MGH – 0006592 | | R, FRE 403, H, FN, FRE 602, NR |
| PX-1096 | ROS1 rearrangement sequencing | MGH – 0006593 | MGH – 0006593 | | R, FRE 403, H, FN, FRE 602 |
| PX-1097 | ROS1 rearrangement sequencing using FFPE samples by [redacted] | MGH – 0006594 | MGH – 0006594 | Iafrate 15 | R, FRE 403, H, FN, FRE 602, NR |
| PX-1098 | Powerpoint Re: Ion Run | MGH – 0006595 | MGH – 0006595 | | R, FRE 403, H, FN, FRE 602, NR |
| PX-1099 | [redacted] sequencing and TNA bank sample selection | MGH – 0006596 | MGH – 0006596 | | R, FRE 403, H, FN, FRE 602, NR |
| PX-1100 | Targeted RNA & DNA sequencing | MGH – 0006597 | MGH – 0006597 | | R, FRE 403, H, FN, FRE 602, NR |
| PX-1101 | Next-Generation Sequencing Assay Development for Detection of Gene Fusions in Lung Cancer | MGH – 0006598 | MGH – 0006598 | | R, FRE 403, H, FN, FRE 602, NR |
| PX-1102 | Excel Spreadsheet Sequence for Illumina; Sequence for Ion torrent | QIA-01063956 | QIA-01063956 | | R, FRE 403, H, FN, FRE 602, NR |
| PX-1103 | Adapter trimming | QIA-01077169 | QIA-01077170 | | R, FRE 403, H, FN, FRE 602, NR |
| PX-1104 | Email dated 11/28/2018 [redacted] | OHSU-001222 | OHSU-001299 | | R, FRE 403, H, FN, FRE 602 |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-1105 | Email dated 9/17/2018 from Richard Press to Brian Whitt, Tomb Oberbroeckling, Christopher Corless, Fei Yang, Tanaya Neff, Arpita Kulkarni, Sarah McCabe, Julie Partain, Amy Schilling, Richard Press, RE: Index Kit Ai5 Index plate contamination?!/ | OHSU-001390 | OHSU-001393 | | R, FRE 403, H, FN, FRE 602 |
| PX-1106 | Eli Rothenberg, Michael A. Trakselis, Stephen D. Bell, & Taekjip Ha, MCM Fork Substrate Specificity Involves Dynamic Interaction with the 5' Tail, JBC Papers in Press, Sept. 20, 2007 | n/a | n/a | | R, FRE 403, H |
| PX-1107 | Himasha M Perera, Michael A Trakselis, Amidst multiple binding orientations on fork DNA, Saccharolobus MCM helicase proceeds N-first for unwinding, eLIFE, Oct. 29, 2019 | n/a | n/a | | R, FRE 403, H |
| PX-1108 | Index and unique dual index for NGS, 10/25/2018, Song Tian | QIA-0144109 | QIA-0144109 | | R, FRE 403, H, FN, FRE 602, NR |
| PX-1109 | Removed - Duplicate | | | | R, FRE 403, H, FN, FRE 602, NR |
| PX-1110 | Samuel Myllykangas, Jason D. Buenrostro, Georges Natsoulis, John M. Bell, Hanlee P. Ji, Supplementary Information for A streamlined and High-throughput targeting approach for human germline and cancer genomes using Oligonucleotide-Seelctive Sequencing | n/a | n/a | Le 20 | R, FRE 403, H |
| PX-1111 | Rapid and Simple Method for Custom Targeted Resequencing – Single Primer Target Enrichment Technology | ADX-00493593 | ADX-00493593 | | R, FRE 403, H |
| PX-1112 | Removed - Duplicate | | | | R, FRE 403, H |
| PX-1113 | Lader Deposition Ex. 31 | QIA-00689469 | QIA-00689472 | Lader 31 | R, FRE 403, H |
| PX-1114 | Email dated 2/14/2014 from G. Gagnon to J. Myers et al re: Enzymatics Launches Archer Targeted Sequencing Technology | ADX-000417969 | ADX-000417970 | | R, FRE 403, H |
| PX-1115 | Enzymatics Launches Archer Targeted Sequencing Technology press release | ADX-000417972 | ADX-000417973 | | R, FRE 403, H |
| PX-1116 | Jean-Pascal Viola, "Project Catalyst Kick Off Presentation" slides dated 9/8/2014 | QIA-01069344 | QIA-01069344 | | R, FRE 403, H |
| PX-1117 | Email dated 11/19/2014 from D. Hauffe to J. Kang re: Products from Catalyst | QIA-00115748 | QIA-00115749 | | R, FRE 403, H, FN, FRE 602 |
| PX-1118 | "2015 Strategic Plan (PCR, NGS)" slides | QIA-00115750 | QIA-00115750 | | R, FRE 403, H, FN, FRE 602 |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-1119 | Email dated 3/16/2015 from K. te Kaat to J. Myers re: Boston visit | QIA-00061261 | QIA-00061261 | | R, FRE 403, H |
| PX-1120 | Email dated 3/21/2015 from Y. Wang to J. Kang re: TC 32015.pptx | QIA-00115689 | QIA-00115690 | | R, FRE 403, H, FN, FRE 602 |
| PX-1121 | Email dated 3/23/2015 from K. te Kaat to J. Arnold re: Fusion Gene Detection | QIA-00068619 | QIA-00068620 | | R, FRE 403, H |
| PX-1122 | Email dated 4/9/2015 from J. Arnold to K. Soerensen re: Please share your Archer slide deck | QIA-00061652 | QIA-00061652 | | R, FRE 403, H |
| PX-1123 | Outlook invitation dated 4/22/2015 to E. Lader and J. Kang re: Chat while Jie is in town – Eric/Jie | QIA-00116935 | QIA-00116935 | | R, FRE 403, H |
| PX-1124 | Email dated 5/21/15; K. te Kaat to T. Bernard et al "Archer technical feasibility" | QIA-00058945 | QIA-00058945 | | R, FRE 403, H |
| PX-1125 | Email dated 6/29/15; J. Myers to L. Rothwell, J. Stahl, T. Rothman, S. Picone "Re: NOTES & ACTIONS: Fusion Panel - Project Introductions & Scope Discussions" | QIA-01048165 | QIA-01048167 | | R, FRE 403, H |
| PX-1126 | Email from Zhong Wu to Eric Lader dated 10/14/2015, subject: RE: V2, V3, and thee | QIA-00148767 | QIA-00148767 | | R, FRE 403, H |
| PX-1127 | Meeting invitation, organizer Jonathan Arnold, sent 11/16/2015, subject: Archer/BioX Collaboration | QIA-01049028 | QIA-01049029 | | R, FRE 403, H |
| PX-1128 | Email from Robyn Selva to Eric Lader dated 1/29/2016, subject: RE: QIAGEN Follow up | QIA-00145080 | QIA-00145084 | | R, FRE 403, H |
| PX-1129 | Email from Song Tian to Eric Lader dated 2/01/2016, subject: RE: Convance Request: MEDI4736-NHL-001 – qPCR t14;18 for evaluating MRD in Follicular lymphoma (#2435_3649) | QIA-01063901 | QIA-01063903 | | R, FRE 403, H |
| PX-1130 | Email from Thierry Bernard to Simone Guenther dated 2/03/2016, subject: RE: fusions in plasma on GR | QIA-01043849 | QIA-01043852 | | R, FRE 403, H, FN, FRE 602 |
| PX-1131 | Removed - Duplicate | | | | R, FRE 403, H, FN, FRE 602, NR |
| PX-1132 | ArcherDx FusionPlex Custom Panel Design | QIA-00226633 | QIA-00226633 | | R, FRE 403, H, FN, FRE 602, NR |
| PX-1133 | Email dated 5/10/2016 from Thomas Perroud to Konstantin Lutze, et al. RE: ArcherDx: Next-gen platforms for the automation of sample preparation and library preparation | QIA-01050577 | QIA-01050578 | | R, FRE 403, H |
| PX-1134 | Email dated 5/2/2016 from Eric Lader to Vikram Devgan RE: FW: about Archer new panel | QIA-00146719 | QIA-00146719 | | R, FRE 403, H |
| PX-1135 | QIAseq Targeted RNAscan - Superior Performance compared with Archer FusionPlex PowerPoint | QIA-00226773 | QIA-00226773 | | R, FRE 403, H, FN, FRE 602, NR |

| PX Number | Description | Bates Begin | Bates End | Deposition Exhibit | Objections |
|---|---|---|---|---|---|
| PX-1136 | Email dated 5/31/2016 from KJ Banuk to Jonathan Arnold RE: ArcherDX and Illumina to collaborate on NGS-based IVDs | QIA-00066673 | QIA-00066674 | | R, FRE 403, H |
| PX-1137 | Email dated 5/31/2016 from Jonathan Arnold to Simone Guenther RE: [redacted] | QIA-00066663 | QIA-00066664 | | R, FRE 403, H |
| PX-1138 | Email dated 6/02/2016 from Song Tian to Christian Bergmann RE: aboutRNAscan web portal and custom panel builder | QIA-00226114 | QIA-00226115 | | R, FRE 403, H |
| PX-1139 | ArcherDx FusionPlex Custom Panel Design Powerpoint | QIA-00226116 | QIA-00226116 | | R, FRE 403, H, FN, FRE 602, NR |
| PX-1140 | Email dated 6/22/2016from Raed Samara to Eric Lader, Yexun Wang, John DiCarlo RE: DNA/RNA panely inquriy | QIA-00146132 | QIA-00146135 | | R, FRE 403, H |
| PX-1141 | Email dated 8/20/2016 from Raed Samara to Lesley Tomlin, Christine Davis RE: Qiagen RNAscan Human Leukemia Panel Questions | QIA-01068003 | QIA-01068005 | | R, FRE 403, H |
| PX-1142 | Email dated 11/16/2016 from Eric Lader re: [redacted] | QIA-00155719 | QIA-00155719 | | R, FRE 403, H |
| PX-1143 | Email dated 11/16/2016 from Eric Lader re: [redacted] | QIA-00155984 | QIA-00155984 | | R, FRE 403, H |
| PX-1144 | Email dated 11/16/21 from KJ Banuk to Valerie Simonsen, Eric Lader RE: RNAscan Panels - IP | QIA-01063481 | QIA-01063484 | | R, FRE 403, H |
| PX-1145 | Excel spreadsheet re: patents and research | QIA-00303738 | QIA-00303738 | | R, FRE 403, H, FN, FRE 602, NR |

*ArcherDx, LLC et al. V. QIAGEN Sciences, LLC, et al.*, C.A. No. 18-1019-MN

**QIAGEN's Exhibit/Deposition Designation Objection Key**

| Code | Objection |
|---|---|
| A | Authenticity (FRE 901 & 902) |
| AF | Assumes facts that are incorrect and/or not supported by any evidence |
| AL | Document has been altered, including, for example, with highlighting |
| Arg | Argumentative |
| BRPL | Brief, Pleading, or Order |
| BSD | Counter-designation is beyond the scope of the designation(s). |
| CP | Compound |
| Dep | Improper Inclusion of Deposition or Hearing Transcript |
| DES | Exhibit description and/or bates number on the exhibit list does not correspond to the trial exhibit; the description is incorrect or inadequate to identify the exhibit |
| Dupe | Duplicative of another exhibit(s) |
| E | Errata: Designated testimony was modified by an errata sheet submitted by the witness |
| ENP | Trial exhibit was not provided |
| Expert | Improper Use of Expert Report |
| F | Form |
| FN | Foundation |
| FL | Foreign Language Without Translation |
| FRE 106 | Incomplete: The exhibit, as submitted, does not contain the complete document |
| FRE 403 | Unfair Prejudice: Probative value is substantially outweighed by unfair prejudice and/or confusion of the issues, waste of time, and/or cumulative (FRE 403) |
| FRE | Character Evidence: Seeks to prove behavior in accordance with a person's character |

| Code | Objection |
|---|---|
| 404 | or character trait |
| FRE 408 | Compromise/Offers to Compromise |
| FRE 602 | Lack of any witness with personal knowledge (for exhibits)<br><br>Lack of personal knowledge (for testimony) |
| FRE 608 | Improper impeachment |
| FRE 611(a) | Confusing, misleading, ambiguous, vague, unintelligible |
| FRE 1002 | Original Document |
| FRE 1004 | Other Content Evidence: It is not an original writing, and an exception does not apply |
| FRE 1006 | Improper use of summaries to prove content. |
| H | Hearsay (FRE 801 & 802) |
| I | Incomplete designation |
| LC | Conclusion of Law |
| LD | Leading |
| M | Multiple Documents: Contains more than one document |
| MC | Mischaracterization: mischaracterizes prior testimony, exhibits, facts, and/or applicable law |
| NNP | Native trial exhibit not provided |
| NON | Answer non-responsive to question or non-responsive designation |
| NR | Not relied on: Exhibit was not relied on by any expert in support of opinion |
| NT | Designation is not testimony – includes attorney objections and/or discussion between attorneys. |

| Code | Objection |
|---|---|
| O | Opinion Testimony By Lay Witness: Constitutes or contains improper opinion by a lay witness (FRE 701 & 702) |
| Priv | Privileged: Protected from disclosure by the attorney-client privilege and/or work product doctrine |
| Privacy | Contains private personal information protected from disclosure under relevant law |
| Q | Quality: Exhibit, as submitted, is illegible or otherwise of low quality |
| R | Relevance: Not relevant to any issue to be decided in this case (FRE 401 & 402) |
| S | Speculative: Includes statements that are speculative as to matters of fact or law |
| Sc | Beyond the scope of 30(b)(6) topic |
| U | Untimely: Exhibit was not disclosed at the proper time |

# Exhibit 8D:

# Defendants' Trial Exhibit List

ArcherDX, LLC, et al. v. Qiagen Sciences, LLC, et al.
C.A. No. 18-1019-MN
Defendants' Trial Exhibit List

Exhibit 8D

| DX | Date | Bates Beg. | Bates End | Description | Depo. Ex. No. | Plaintiffs' Objections |
|---|---|---|---|---|---|---|
| DX-001 | 7/10/2018 | QIA-00689213 | QIA-00689263 | U.S. Patent No. 10,017,810 | Iafrate Ex. 4<br>Le Ex. 3<br>Stahl Ex. 4 | |
| DX-002 | 8/9/2018 | ADX-000052 | ADX-000764 | Certified File History for U.S. Patent No. 10,017,810 | | |
| DX-003 | 10/22/2019 | | | U.S. Patent No. 10,450,597 | Iafrate Ex. 5<br>Stahl Ex. 2 | |
| DX-004 | 11/8/2019 | ADX-000485453 | ADX-000491012 | Certified File History for U.S. Patent No. 10,450,597 | | |
| DX-005 | 12/16/2014 | ADX-002197 | ADX-002256 | Asset Transfer Agreement between ArcherDX and Enzymatics, Inc. | LaPointe Ex. 1<br>Myers Ex. 5 | A; R; P; H |
| DX-006 | 12/16/2014 | ADX-002329 | ADX-002349 | Supply and Manufacturing Agreement Between QIAGEN and ArcherDX | | A; R; P; H |
| DX-007 | 3/22/2019 | ADX-000476210 | ADX-000476231 | License Agreement [redacted] | | H; LA |
| DX-008 | Aug-16 | QIA-00001156 | QIA-00001216 | QIAseq™ Targeted RNAscan Panel Handbook | | H; LA |
| DX-009 | 12/1/2013 | QIA-01070180 | QIA-01070193 | License Agreement [redacted] | | H; LA |
| DX-010 | 7/2/2014 | QIA-01070194 | QIA-01070210 | License Agreement [redacted] | | H; LA |
| DX-011 | 1/7/2014 | QIA-01070211 | QIA-01070232 | Patent License Agreement [redacted] | | H; LA |
| DX-012 | 6/29/2016 | QIA-01070245 | QIA-01070261 | License Agreement between [redacted] | | H; LA |
| DX-013 | 1/17/2017 | QIA-01070262 | QIA-01070281 | Non-Exclusive License Agreement [redacted] | | H; LA |
| DX-014 | 1/31/2019 | QIA-01070331 | QIA-01070346 | Patent License Agreement [redacted] | | H; LA |
| DX-015 | 1/1/2018 | QIA-01070462 | QIA-01070478 | License Agreement [redacted] | | H; LA |
| DX-016 | 12/8/2014 | ADX-002062 | ADX-002196 | Agreement and Plan of Merger by and Among Qiagen North American Holdings, Inc. Tsylatac Merger Sub, Inc., Enzymatics, Inc. and John A. Stalfort III | LaPointe Ex. 3<br>Myers Ex. 2 | A; R; P; H |
| DX-017 | 7/23/2013 | MGH-0030239 | MGH–0030268 | Exclusive Patent License Agreement between Archer Dx, Inc. and The General Hospital Corporation | Castro Ex. 11 | A; R; P; H |
| DX-018 | 7/23/2013 | ADX-002354 | ADX-002383 | Exclusive Patent License Agreement between Archer Dx, Inc. and The General Hospital Corporation | | H; LA |
| DX-019 | 8/15/2016 | MGH_0030070 | MGH_0030073 | First Amendment to Exclusive Patent License Agreement between The General Hospital Corporation and ArcherDx, Inc. | Castro Ex. 12 | A; R; P; H |
| DX-020 | 6/23/2017 | MGH_0030074 | MGH_0030078 | Second Amendment to Exclusive Patent License Agreement between The General Hospital Corporation and ArcherDx, Inc. | Castro Ex. 13 | A; R; P; H |
| DX-021 | Feb-20 | | | QIAseq® Targeted DNA Panel Handbook | Wang Ex. 10 | H; LA |
| DX-022 | Sep-15 | QIA-01073907 | QIA-01073944 | QIAGEN GeneRead Library Prep (I) Handbook | | H; LA |
| DX-023 | 2005 | QIA-01077256 | QIA-01077266 | Metzker, *Emerging technologies in DNA sequencing* , GENOME RESEARCH, 15:1767-76 (2005) | | A; R; P; H |

| DX | Date | Bates Beg. | Bates End | Description | Depo. Ex. No. | Plaintiffs' Objections |
|---|---|---|---|---|---|---|
| DX-024 | 2001 | QIA-01077283 | QIA-01077291 | Metzker and Caskey, *Polymerase chain reaction (PCR)* , ENCYCLOPEDIA OF MEDICAL DEVICES AND INSTRUMENTATION, SECOND EDITION, Volume 5, Ed. J.G. Webster (2006) | | A; R; P; H |
| DX-025 | 12/8/2009 | QIA-01077267 | QIA-01077282 | Metzker, *Sequencing technologies — the next generation* , NATURE REVIEWS GENETICS, 11: 31-46 (2010) | | A; R; P; H |
| DX-026 | 1985 | QIA-01077311 | QIA-01077341 | Saiki et al., *Enzymatic Amplification of β-globin Genomic Sequences and Restriction Site Analysis for Diagnosis of Sickle Cell Anemia* , SCIENCE, 230:1350-1354 (1985) | | A; R; P; H; F |
| DX-027 | 1/29/1988 | QIA-01077342 | QIA-01077346 | Saiki et al., *Primer-Directed Enzymatic Amplification of DNA with a Thermostable DNA Polymerase* , SCIENCE, 239:487-491 (1988) | | A; R; P; H; F; LA |
| DX-028 | 7/21/2011 | QIA-01077306 | QIA-01077310 | Rothberg et al., *An integrated semiconductor device enabling non-optical genome sequencing* , NATURE 475:348–352 (2011) | | A; R; P; H; F |
| DX-029 | 2/16/2015 | QIA-01077171 | QIA-01077219 | Jain et al., *Improved data analysis for the MinION nanopore sequence* r, NATURE METHODS 12:351–356 (2015). | | A; R; P; H; F |
| DX-030 | Jul-06 | QIA-01077347 | QIA-01077351 | Thomas et al., *Sensitive mutation detection in heterogeneous specimens by massively parallel picoliter reactor sequencing* , NATURE MEDICINE, 12:852-855 (2006) | | A; R; P; H; F |
| DX-031 | 3/8/2018 | MGH-0002276 | MGH-0002276 | Email from A. Iafrate to Z. Zheng, L. Le re: Qiagen Anchored library | Iafrate Ex. 13 | R; P; H |
| DX-032 | 3/8/2018 | MGH-0003400 | MGH-0003401 | Email from Z. Zheng to A. Iafrate, L. Le re: Qiagen Achored library | Iafrate Ex. 21<br>Le Ex. 21 | R; P; H |
| DX-033 | 5/17/2012 | QIA-01077352 | QIA-01077393 | U.S. Patent Application Publication No. US 2012/0122701 AI (Ryan et al.) | | A; R; P; H; F; LA |
| DX-034 | 6/13/2013 | QIA-01077408 | QIA-01077410 | Wu et al., *Transcription Start Regions in the Human Genome are Favored Targets for MLV Integration* , SCIENCE 300:1749-1751 (2003) | | A; R; P; H; F |
| DX-035 | 2013 | QIA-01077401 | QIA-01077407 | Wu et al., *Transcription Start Regions in the Human Genome are Favored Targets for MLV Integration* - Supplemental Methods | | A; R; P; H; F |
| DX-036 | 7/24/2007 | QIA-01077395 | QIA-01077400 | Wang et al., *Efficient genome-wide mutagenesis of zebrafish genes by retroviral insertions* , PROCEEDINGS OF THE NATIONAL. ACADEMY OF SCIENCES USA, 104:12428-12433 (2007) | | A; R; P; H; F; LA |
| DX-037 | 5/11/2020 | | | Plaintiffs' Third Amended Disclosures Pursuant to Paragraph 7 of the Scheduling Order (D.I. 28) | Stahl Ex. 12 | R; P; H; ML |
| DX-038 | 6/24/2013 | MGH-0000255 | MGH-0000256 | Letter from A. Iafrate and L. Le to Nature Biotechnology re: transcript submission | Iafrate Ex. 6 | R; P; H |
| DX-039 | 11/10/2014 | QIA-00288888 | QIA-00288916 | Zheng, et al., *Anchored multiplex PCR for targeted next-generation sequencing* , NATURE MEDICINE, 1-6 (2014) | Iafrate Ex. 7 | A; R; P; H |

| DX | Date | Bates Beg. | Bates End | Description | Depo. Ex. No. | Plaintiffs' Objections |
|---|---|---|---|---|---|---|
| DX-040 | 7/7/2013 | MGH-0000223 | MGH-0000230 | Invention Disclosure Form by A. Iafrate, L. Le and Z. Zheng | Iafrate Ex. 11<br>Castro Ex. 7 | R; P; H |
| DX-041 | 11/17/2014 | ADX-000045861 | ADX-000045864 | Heger, "MGH Details Method for Targeted RNA-seq Fusion and Snapshot NGS Assays," *GenomeWeb* | Le Ex. 4 | A; R; P; H; F |
| DX-042 | 8/6/2020 | MGH-0035525 | MGH-0035527 | Email from Z. Zheng to lloonngg@gmail.com re: Chat with Zongli Zheng | Le Ex. 13 | R; P; H |
| DX-043 | 8/6/2020 | MGH-0035592 | MGH-0035595 | Email from Z. Zheng to lloonngg@gmail.com re: Chat with Zongli Zheng | Le Ex. 14 | H; LA |
| DX-044 | 8/6/2020 | MGH-0035596 | MGH-0035606 | Email from Z. Zheng to lloonngg@gmail.com re: Chat with Zongli Zheng | Le Ex. 15 | H; LA |
| DX-045 | Feb-10 | QIA-00002778 | QIA-00002812 | Illumina Manual, Multiplexing, Sample Preparation Guide | | A; R; P; H; F |
| DX-046 | Nov-10 | QIA-00689098 | QIA-00689101 | Illumina Data Sheet, TruSeq™ RNA and DNA Sample Preparation Kits | | A; R; P; H; F |
| DX-047 | Oct-08 | QIA-00689126 | QIA-00689149 | Craig et al., *Identification of Genetic Variants Using Barcoded Multiplexed Sequencing* , NATURE METHODS 5:887-893 (2008) | | A; R; P; H; F |
| DX-048 | 7/27/1989 | QIA-00002935 | QIA-00003040 | European Patent Application No. 0 356 021 to Markham | | A; R; P; H; F; LA |
| DX-049 | 1995 | QIA-00003078 | QIA-00003079 | Siebert et al., *An improved PCR method for walking in uncloned genomic DNA* , NUCLEIC ACIDS RESEARCH 23:1087-1088 (1995) | | A; R; P; H; F; LA |
| DX-050 | 10/15/1996 | QIA-00003080 | QIA-00003108 | U.S. Patent No. 5,565,340 to Chenchik et al. | | A; R; P; H; F; LA |
| DX-051 | 2011 | QIA-00002817 | QIA-00002840 | Amsterdam et al., *Retroviral-mediated insertional mutagenesis in zebrafish* , Chapter 4, METHODS IN CELL BIOLOGY 104:59-82 (2011) | | A; R; P; H; F; LA |
| DX-052 | 6/25/2010 | QIA-00003041 | QIA-00003052 | Iskow et al., *Natural Mutagenesis of Human Genomes by Endogenous Retrotransposons* , CELL, 141:1253-1261 (2010) | | A; R; P; H; F |
| DX-053 | Jul-09 | QIA-00002841 | QIA-00002886 | Bronner et al., *Improved protocols for Illumina sequencing,* CURRENT PROTOCOLS IN HUMAN GENETICS 62: 18.2.1-18.2.27 (2009) | | A; R; P; H; F |
| DX-054 | 9/30/2011 | QIA-00002887 | QIA-00002910 | Chiarle et al., *Genome-wide Translocation Sequencing Reveals Mechanisms of Chromosome Breaks and Rearrangements in B cells* , CELL, 147:107-119 (2011) | | A; R; P; H; F |
| DX-055 | 2011 | ADX-000486075 | ADX-000486090 | Myllykangas et al., *Efficient targeted resequencing of human germline and cancer genomes by oligonucleotide-selective sequencing* , NATURE BIOTECHNOLOGY 29:1024-1027 (2011) | Iafrate Ex. 9<br>Le Ex. 19 | A; R; P; H; F |
| DX-056 | 10/21/2011 | QIA-00689160 | QIA-00689167 | Kircher et al., *Double indexing overcomes inaccuracies in multiplex sequencing on the Illumina platform* , NUCLEIC ACIDS RESEARCH 40:e3, pp. 1-8 (2012) | | A; R; P; H; F; LA |
| DX-057 | 2011 | QIA-00003053 | QIA-00003077 | Leoni et al., *Genome walking in eukaryotes* , THE FEBS JOURNAL 278:3953-3977 (2011) | | A; R; P; H; F |
| DX-058 | 2010 | QIA-00689179 | QIA-00689181 | Martin-Harris et al., *Gene walking using sequential hybrid primer polymerase chain reaction* , ANALYTICAL BIOCHEMISTRY 399:308-310 (2010) | | A; R; P; H; F; LA |

| DX | Date | Bates Beg. | Bates End | Description | Depo. Ex. No. | Plaintiffs' Objections |
|---|---|---|---|---|---|---|
| DX-059 | 9/29/2013 | QIA-00689150 | QIA-00689159 | Fraiture et al., *An innovative and integrated approach based on DNA walking to identify unauthorized GMOs* , FOOD CHEMISTRY 147:60-69 (2014) | Lennon Ex. 511 | A; R; P; H; F; LA |
| DX-060 | 9/30/2010 | QIA-00689264 | QIA-00689363 | U.S. Patent Application Publication No. US 2010/0248310 AI (Morley) | Lennon Ex. 514 | A; R; P; H; F; LA |
| DX-061 | Oct-13 | QIA-00689182 | QIA-00689192 | McCarty et al., *Mu-seq: Sequence-based mapping and identification of transposon induced mutations* , PLOS ONE 8:e77172 pp. 1-11 (2013) | Lennon Ex. 513 | A; R; P; H; F; LA |
| DX-062 | Sep-10 | QIA-00689102 | QIA-00689115 | Bio S&T Inc., *APAgene™ GOLD-RT Genome Walking Kits* | Lennon Ex. 512 | A; R; P; H; F; LA |
| DX-063 | 1/30/2009 | QIA-00689087 | QIA-00689092 | Illumina Data Sheet, Genomic Sequencing | | A; R; P; H; F |
| DX-064 | 10/11/2010 | QIA-00689093 | QIA-00689097 | Illumina Technology Spotlight, Illumina Sequencing Technology | | A; R; P; H; F |
| DX-065 | 2012 | QIA-00689196 | QIA-00689208 | Quail, M. A. et al., *A tale of three next generation sequencing platforms: comparison of Ion Torrent, Pacific Biosciences and Illumina MiSeq sequencers* , BMC GENOMICS, 13(1), 341 (2012) | | A; R; P; H; F |
| DX-066 | 1992 | QIA-00689209 | QIA-00689212 | Skerra, A., *Phosphorothioate primers improve the amplification of DNA sequences by DNA polymerases with proofreading activity* , NUCLEIC ACIDS RESEARCH, 20(14), 3551-3554 (1992) | | A; R; P; H; F |
| DX-067 | 2004 | QIA-00688891 | QIA-00689086 | Applied Biosystems DNA Sequencing by Capillary Electrophoresis Chemistry Guide | | A; R; P; H; F |
| DX-068 | 1985 | QIA-00689116 | QIA-00689125 | Cornish-Bowden, A., *Nomenclature for incompletely specified bases in nucleic acid sequences: recommendations 1984* , NUCLEIC ACIDS RESEARCH, 13(9), 3021 (1985) | | A; R; P; H; F |
| DX-069 | 5/28/2013 | QIA-01048131 | QIA-01048134 | Illumina Application Note: DNA Analysis, High-Speed, Multiplexed 16S Amplicon Sequencing on the MiSeq® System | | A; R; P; H; F |
| DX-070 | 2020 | QIA-01048101 | QIA-01048130 | Illumina 16S Metagenomic Sequencing Library Preparation, *Preparing 16S Ribosomal RNA Gene Amplicons for the Illumina MiSeq System* | | A; R; P; H; F |
| DX-071 | 11/8/2016 | QIA-00689416 | QIA-00689468 | U.S. Patent No. 9,487,828 B2 to Iafrate et al. | | H; LA |
| DX-072 | 11/14/2013 | QIA-00689364 | QIA-00689415 | U.S. Patent Application Publication No. US 2013/0303461 A1 (Iafrate et al.) | | H; LA |
| DX-073 | May-17 | QIA-00001078 | QIA-00001153 | QIAseq™ Targeted DNA Panel Handbook | Wang Ex. 5 | H; LA |
| DX-074 | Undated | | | Archer® FusionPlex® NGS Assays and Bioinformatic Analysis informational sheet | Stahl Ex. 5 | A; R; P; H |
| DX-075 | 7/10/2017 | ADX-000360566 | ADX-000360613 | Archer Presentation, Archer AMP™ Technology Platform | Iafrate Ex. 16<br>Stahl Ex. 6 | A; R; P; H; F |
| DX-076 | 9/15/2016 | QIA-01063951 | QIA-01063956 | Email from J. Fostel to J. DiCarlo, E. Lader, W. Zhong, cc: R. Samara, C. Moskowitz re: [redacted] (with attachment QIAseq adaptor and primer sequence-1.xls) | | H; LA |
| DX-077 | 1/30/2012 | MGH-0035640 | MGH-0035640 | Email from L. Le to Z. Zheng re: sheared DNA | Le Ex. 12 | H; LA |

| DX | Date | Bates Beg. | Bates End | Description | Depo. Ex. No. | Plaintiffs' Objections |
|---|---|---|---|---|---|---|
| DX-078 | 2/23/2013 | ADX-000493592 | ADX-000493592 | Email from L. Le to A. Iafrate, J. Myers, Z. Zheng re: AGBT update | Le Ex. 17 | R; P; H |
| DX-079 | 11/24/2016 | ADX-000347180 | ADX-000347182 | Email from J. Stahl to B. Kudlow, cc: J. Myers, C. LaPointe, A. Iafrate re: Novel fusion genes identified | | R; P; H |
| DX-080 | 9/15/2016 | QIA-01063971 | QIA-01063978 | Email from J. Fostel to Z. Wu, cc: E. Lader, R. Samara re: [redacted] (with Excel attachment) | | H; LA |
| DX-081 | 11/11/2020 | QIA-01077169 | QIA-01077170 | Illumina Adapter trimming: Why are adapter sequences trimmed from only the 3' ends of reads? (https://support.illumina.com/bulletins/2016/04/adapter-trimming-why-are-adapter-sequences-trimmed-from-only-the--ends-of-reads.html) | | A; R; P; H |
| DX-082 | 3/21/2019 | QIA-00001671 | QIA-00001671 | Spreadsheet, QIAseq Targeted DNA adapters and primers | | H; LA |
| DX-083 | 7/30/2020 | | | QIAGEN 5th Supplemental Response to Plaintiffs' Second Set of Interrogatories | | A; R; P; H |
| DX-084 | 3/8/2018 | MGH-0003323 | MGH-0003323 | Email from Z. Zheng to A. Iafrate, L. Le re: Qiagen Achored library | Iafrate Ex. 12 | A; R; P; H |
| DX-085 | 11/20/2020 | QIA-01073860 | QIA-01073864 | Foundation Medicine Webpage, located at: https://www.foundationmedicine.com/ (Last visited November 20, 2020) | | A; R; P; H |
| DX-086 | 11/20/2020 | QIA-01073865 | QIA-01073900 | FoundationOne CDx Technical Information at https://www.rochefoundationmedicine.com/f1cdxtech (Lasted visited November 20, 2020) | | A; R; P; H; F; LA |
| DX-087 | 1/21/2014 | ADX-000178147 | ADX-000178151 | Email from P. Finn to J. Myers, M. Callan, J. Stahl, J. Amsbaugh re: MGH Update 16Jan2014 | Stahl Ex. 25 | R; P; H |
| DX-088 | 3/22/2010 | QIA-01077237 | QIA-01077255 | LeProust et al., *Synthesis of high-quality libraries of long (150mer) oligonucleotides by a novel depurination controlled process* , NUCLEIC ACIDS RESEARCH 38:2522-2540 (2010) | | A; R; P; H; F |
| DX-089 | 8/7/2008 | QIA-01076985 | QIA-01077095 | PCT International Publication No. WO 2008/093098 A2 (Bignall) | | A; R; P; H; F |
| DX-090 | 1990 | QIA-01077394 | QIA-01077394 | Voss et al., *Automated fluorescent sequencing of lambda DNA* , NUCLEIC ACID RESEARCH 18:5314 (1990) | | A; R; P; H; F |
| DX-091 | 2/15/2001 | QIA-01077103 | QIA-01077164 | International Human Genome Sequencing Consortium, *Initial sequencing and analysis of the human genome* , NATURE 409:860-921 (2001) | | A; R; P; H; F |
| DX-092 | 1996 | QIA-01077096 | QIA-01077102 | Hardin et al., *Octamer-primed cycle sequencing: Design of an optimized primer library* , GENOME RESEARCH 6:545-550 (1996) | | A; R; P; H; F |
| DX-093 | Undated | QIA-01077220 | QIA-01077236 | Kircher, et al., *Double indexing overcomes inaccuracies in multiplex sequencing on the Illumina platform* (Supplementary) | | A; R; P; H; F; LA |
| DX-094 | 1989 | QIA-01077292 | QIA-01077305 | Newton et al., *Analysis of any point mutation in DNA. The amplification refractory mutation system (ARMS),* NUCLEIC ACIDS RESEARCH 17:2503-2516 (1989) | | A; R; P; H; F; LA |

ArcherDX, LLC, et al. v. Qiagen Sciences, LLC, et al.
C.A. No. 18-1019-MN
Defendants' Trial Exhibit List

Exhibit 8D

| DX | Date | Bates Beg. | Bates End | Description | Depo. Ex. No. | Plaintiffs' Objections |
|---|---|---|---|---|---|---|
| DX-095 | 4/5/2002 | QIA-01077411 | QIA-01077424 | Yu et al., *Draft sequence of the rice genome (* Oryza sativa *L. ssp. Indica)* , SCIENCE 296:79-92 (2002) | | A; R; P; H; F; LA |
| DX-096 | 8/18/2011 | QIA-01071756 | QIA-01071765 | Zheng et al., *Titration-free 454 sequencing using Y adapters* , NATURE PROTOCOLS 6:1367-1376 (2011) | | A; R; P; H; F; LA |
| DX-097 | 2008 | QIA-01076978 | QIA-01076984 | Bentley et al., *Accurate whole human genome sequencing using reversible terminator chemistry* , NATURE, 456:53-59 (2008) | | A; R; P; H; F; LA |
| DX-098 | 7/9/2020 | | | Curriculum Vitae of Dr. Michael Metzker | | A; R; P; H |
| DX-099 | 10/7/2020 | | | Materials Considered by Dr. Michael Metzker in his opening Expert Report Regarding the Invalidity of U.S. Patent Nos. 10,017,810 and 10,450,597 | | A; R; P; H |
| DX-100 | 1/6/2015 | QIA-00819657 | QIA-00819692 | Note Purchase Agreement | | A; R; P; H |
| DX-101 | 1/6/2015 | QIA-00819693 | QIA-00819792 | Voting Rights Agreement | | A; R; P; H |
| DX-102 | 12/29/2012 | ADX-000382338 | ADX-000382341 | Certificate of Incorporation of ArcherDX, Inc. (2012) | | A; R; P; H |
| DX-103 | 3/5/2018 | ADX-000359118 | ADX-000359137 | Amended and Restated Certificate of Incorporation of ArcherDX, Inc. (2018) | | A; R; P; H |
| DX-104 | 3/5/2018 | ADX-000421659 | ADX-000421731 | ArcherDx, Inc. Secretary's Certificate | | A; R; P; H |
| DX-105 | 2020 | | | Massachusetts Rules and Order of the Supreme Judicial Court, including amendments effective June 1, 2020 | LaPointe Ex. 2 | A; R; P; H; ML |
| DX-106 | 9/21/2015 | ADX-000363693 | ADX-000363693 | Email from J. Percoskie to C. Benoit, C. LaPointe re: earnouts | LaPointe Ex. 4 | A; R; P; H; F; ML |
| DX-107 | 12/8/2014 | ADX-000363788 | ADX-000363793 | GT Draft of Schedule A - Earn-out Payments | LaPointe Ex. 5 | A; R; P; H; F; ML |
| DX-108 | 3/9/2017 | ADX-000494621 | ADX-000494623 | Email from C. LaPointe to C. Benoit re: qiagen earn out letter | LaPointe Ex. 6 | A; R; P; H; F; ML |
| DX-109 | 5/5/2016 | ADX-000495966 | ADX-000495968 | Email from C. LaPointe to C. Benoit , cc: P. Manning, S. Stalfort re: Archer Update | LaPointe Ex. 7 | A; R; P; H; F; ML |
| DX-110 | 2/4/2015 | ADX-000492262 | ADX-000492262 | Email from C. Benoit to C. LaPointe, cc: N. Moreno re: Twist Agreement | LaPointe Ex. 8 | A; R; P; H; F; ML |
| DX-111 | 12/2/2014 | ADX-000492263 | ADX-000492280 | [redacted] | LaPointe Ex. 9 | A; R; P; H; F; ML |
| DX-112 | 5/10/2017 | QIA-01070170 | QIA-01070179 | Email from H. Skoll to C. Benoit, J.P. Viola, S. Stalfort, P. von Hugo, M. Waters, J. Baskin, R. Ishi re: [redacted] (with attached Spreadsheet re Qiagen Beverly) | LaPointe Ex. 11<br>LaPointe Ex. 12<br>Myers Ex. 11<br>Myers Ex. 12 | A; R; P; H; F; ML |
| DX-113 | 8/4/2020 | | | Dr. Iafrate Biography | Iafrate Ex. 1 | A; R; P; H |
| DX-114 | 8/1/2020 | | | John Iafrate LinkedIn profile | Iafrate Ex. 2 | A; R; P; H |
| DX-115 | 8/14/2019 | | | Notice of Deposition of Anthony John Iafrate | Iafrate Ex. 3 | A; R; P; H |
| DX-116 | 12/2/2011 | MGH-0034065 | MGH-0034065 | Email from A. Iafrate to L. Le re: single adaptor | Iafrate Ex. 8<br>Le Ex. 18 | H; LA |
| DX-117 | 9/6/2013 | ADX-000367110 | ADX-000367122 | ArcherDX Overview | Iafrate Ex. 10<br>Le Ex. 5<br>Myers Ex. 1<br>Stahl Ex. 7 | H; F |
| DX-118 | 11/29/2018 | MGH-0006591 | MGH-0006598 | Email from Z. Zheng to A. Iafrate, L. Le re: Notebooks (attaching Powerpoint presentations) | Iafrate Ex. 14<br>Iafrate Ex. 15 | H |

| DX | Date | Bates Beg. | Bates End | Description | Depo. Ex. No. | Plaintiffs' Objections |
|---|---|---|---|---|---|---|
| DX-119 | 8/7/2009 | MGH-000000656 | MGH-000000764 | Computation Notebook Issued to Kristin Bergethon | Iafrate Ex. 17 | H; LA |
| DX-120 | 10/31/2011 | MGH-000000765 | MGH-000000802 | Pathology/TRL Computation Notebook Issued to Zongli Zheng | Iafrate Ex. 18 | H; LA; P; R; F |
| DX-121 | 12/17/2018 | MGH-000000803 | MGH-000000961 | Computation Notebook Issued to Zongli Zheng | Iafrate Ex. 19 | H; LA; P; R; F |
| DX-122 | 6/30/2017 | MGH-0028017 | MGH-0028017 | Email from A. Iafrate to J. Myers, L. Le re: 2016 Qiagen/Enzymatics earnout | Myers Ex. 3 | H; 105; R |
| DX-123 | 9/25/2015 | PIC-0013232 | PIC-0013232 | Email from J. Myers to C. Benoit re: Qiagen - Update | Myers Ex. 4 | H; P; R; ML |
| DX-124 | 1/13/2015 | ADX-000187268 | ADX-000187269 | Email from J. Stahl to B. Kudlow re: fragmentation mix | Myers Ex. 6 | H; R |
| DX-125 | Jun-14 | QIA-00019945 | QIA-00019988 | Qiagen GeneRead™ DNAseq Targeted Panels V2 Handbook | Myers Ex. 14 | H; R |
| DX-126 | 2/17/2016 | ADX-000412870 | ADX-000412872 | Email from J. Myers to P. Manning, cc: S. Stalford, C. LaPointe re: Call summary (with attachment: Funding Decision Tree) | Myers Ex. 15 | H; R; S; P |
| DX-127 | 7/31/2020 | | | Email from J. Thomson to Counsel re: Designation of 30(b)(6) Topics | Le Ex. 1<br>Castro Ex. 2 | H; R |
| DX-128 | 10/29/2018 | MGH-0034080 | MGH-0034082 | Curriculum Vitae of Long Phi Le | Le Ex. 2 | H; S; R |
| DX-129 | 12/3/2012 | MGH-0035189 | MGH-0035198 | Email from J. Myers to L. Le, cc: J. Iafrate re: Schedule for Next week (with attached ArcherDX Overview) | Le Ex. 6<br>Le Ex. 7 | X; I; H; R |
| DX-130 | 5/2/2012 | MGH-0035571 | MGH-0035577 | Email from L. Le to A. Iafrate re: invention disclosure edits (with attachment Redline of "Description of the invention") | Le Ex. 8<br>Le Ex. 9 | X; I; H; R |
| DX-131 | 1/14/2013 | MGH-0035414 | MGH-0035414 | Email from Z. Zheng to L. Le re: draft | Le Ex. 10 | I; R; H; F |
| DX-132 | 1/14/2013 | MGH-0035415 | MGH-0035431 | Draft of Zheng, et al., *Anchored multiplex PCR for targeted next-generation sequencing* | Le Ex. 11 | I; R; F |
| DX-133 | 3/16/2012 | MGH-0035610 | MGH-0035610 | Email from Z. Zheng to L. Le re: targeted DNA sequencing | Le Ex. 16 | I; H; P |
| DX-134 | 1996 | | | Supplementary Information for Myllykangas et al., *A streamlined and high-throughput targeting approach for human germline and cancer genomes using Oligonucleotide-Selective Sequencing* | Le Ex. 20 | H; A; R; F; LA |
| DX-135 | 10/18/2012 | MGH-0035463 | MGH-0035466 | Email from L. Le to J. Myers, cc: A. Iafrate, L. Le re: Revenue Details | Le Ex. 22 | H; R; 105 |
| DX-136 | Feb-15 | | | Tsai, et al., *GUIDE-seq enables genome-wide profiling of off-target cleavage by CRISPR-Cas nuclease* , NATURE BIOTECHNOLOGY, 33:187-198 (2015) | Le Ex. 23 | H; A; R |
| DX-137 | Undated | | | Joshua Stahl LinkedIn Profile | Stahl Ex. 1 | H; A; R; F |
| DX-138 | 7/16/2020 | | | Plaintiffs' Supplemental Objections and Responses to Defendant' Third Set of Interrogatories | Stahl Ex. 3 | 105; H; S |
| DX-139 | 2/17/2017 | ADX-000196008 | ADX-000196008 | Email from J. Stahl to J. Stefanelli, cc: J. Amsbaugh, T. Pollard re: use this version please | Stahl Ex. 8 | H; I; R; F; P |
| DX-140 | 2/17/2017 | ADX-000196009 | ADX-000196040 | Draft Proposed Product Design, Technology and Clinical Interpretation for the ArcherDX RevealDX Lung Diagnostic System (attachment to Stahl Ex. 8) | Stahl Ex. 9 | H; I; R; F; P |
| DX-141 | Undated | | | Archer presentation, "Detecting meaningful mutations from liquid biopsies by Anchored Multiplex PCR" | Stahl Ex. 10 | H; I; R; F; P |
| DX-142 | 8/11/2020 | QIA-01073956 | QIA-01073958 | Illumina Adaptor Portfolio | Lennon Ex. 503 | A; R; P; H; S; LA; F |

| DX | Date | Bates Beg. | Bates End | Description | Depo. Ex. No. | Plaintiffs' Objections |
|---|---|---|---|---|---|---|
| DX-143 | 8/28/2016 | MGH - 0035714 | MGH - 0035862 | Partners Healthcare Licensing Manager Handbook | Castro Ex. 5 | H; R; A; P |
| DX-144 | 5/2/2012 | MGH - 0000201 | MGH - 0000204 | Partners Healthcare Invention Disclosure Form for A next-generation sequencing assay for targeted sequencing | Castro Ex. 6 | H; LC; R; A; P |
| DX-145 | 7/16/2012 | MGH - 0000179 | MGH - 0000195 | ITM Checklist - Invention Triage Recommendation Form for Targeted next gen sequencing assay for simultaneous detection of ALK, ROS1, and RET gene rearrangements | Castro Ex. 8 | H; R; A; P |
| DX-146 | Undated | MGH - 0000196 | MGH - 0000200 | Description of the Invention | Castro Ex. 9 | H; R; A; P |
| DX-147 | 5/10/2012 | MGH - 0035863 | MGH - 0035864 | ITM Checklist - Invention Triage Recommendation Form for NGS Assay and Lung Cancer Panel Companion Diagnostic | Castro Ex. 10 | H; I; R; P |
| DX-148 | 7/27/2016 | OHSU-002960 | OHSU-002962 | Email from J. Partain to R. Press, X. Wang, F. Yang, cc: S. McCabe re RE: Can we discuss ampli-hack? | Corless Ex. 6 | A |
| DX-149 | 10/7/2016 | OHSU-003230 | OHSU-003236 | Email from K. Krantz to J. Partain, cc: E. Petrilli, R. Press, S. McCabe, S. Clairmont, B. Whitt re Re: KDL @ OHSU/eval new v3 molecular barcode chemistry /set v3 myeloid panel & library pre Oct 1 | Corless Ex. 7 | A |
| DX-150 | 1/22/2018 | ADX - 000220509 | ADX - 000220509 | Zoom Meeting Invite from D. Fugere to T. Pollard, J. Stahl, B. Kudlow, J. Stefanelli, B. Wright, R. Walters re Competitor Intel Review | Fugere Ex. 4<br>Stefanelli Ex. 1 | H; R |
| DX-151 | 4/7/2015 | ADX - 000089475 | ADX - 000089476 | Email from D. Fugere to J. Amsbaugh re competitive pricing error (attaching VariantPlex Pricing spreadsheet) | Fugere Ex. 5<br>Fugere Ex. 6 | X; I; A; H; R |
| DX-152 | 12/12/2018 | ADX - 000093516 | ADX - 000093518 | Email from M. Franklin to D. Fugere, J. Stefanelli re Re: CDx Help (attaching ArcherDX Company Overview - December 2018 powerpoint) | Fugere Ex. 7<br>Fugere Ex. 8<br>Stefanelli Ex. 13<br>Stefanelli Ex. 14 | X; I; A; R |
| DX-153 | 12/5/2018 | ADX - 00170493 | ADX - 000170503 | Email from T. Abell to J. Myers, cc: M. Franklin, J. Seimiya re RE: [EXT] FW: Immunoverse (attaching ArcherDX Competitive Information - December 2018 powerpoint) | Fugere Ex. 9<br>Fugere Ex. 10 | X; H; A; I;R |
| DX-154 | 5/14/2015 | ADX - 000044524 | ADX - 000044527 | Email from J. Amsbaugh to J. Arnold, cc: J. Myers, T. deBoer, J. Mitchell, D. Fugere, J. Bon re Re: ArcherDX training on May 20 | Fugere Ex. 13 | H; I; R |
| DX-155 | 5/28/2015 | ADX - 000047737 | ADX - 000047737 | Email from D. Fugere to J. Arnold, cc: J. Amsbaugh re Presentation Slides | Fugere Ex. 14 | H; R |
| DX-156 | Undated | ADX - 000052338 | ADX - 000052338 | Powerpoint, ArcherDX Sales Training powerpoint | Fugere Ex. 15 | H; A; R |
| DX-157 | 6/29/2016 | ADX - 000238265 | ADX - 000238266 | Email from J. Fitzgerald to S. Lim, T. Pollard, J. Stefanelli, J. Amsbaugh re Re: [redacted] update | Stefanelli Ex. 5 | H; S; R |
| DX-158 | 7/12/2016 | ADX - 000238163 | ADX - 000238164 | Email from J. Stefanelli to T. Pollard, cc: J. Fitzgerald re Re: Custom Proposal | Stefanelli Ex. 6 | H; LA |
| DX-159 | 4/20/2017 | MGH - 0004460 | MGH - 0004460 | Email from J. Stefanelli to A. Iafrate re [redacted] | Stefanelli Ex. 11 | H; LA |
| DX-160 | 10/16/2007 | | | U.S. Patent No. 7,282,337 B1 to Harris | | H; R; P |
| DX-161 | 9/6/2019 | ADX-000490985 | ADX-000491005 | Notice of Allowability for Patent Application No. 14/605,363 ('597 patent file history excerpt) | | I; H; A |

| DX | Date | Bates Beg. | Bates End | Description | Depo. Ex. No. | Plaintiffs' Objections |
|---|---|---|---|---|---|---|
| DX-162 | 10/30/2017 | ADX-000490584 | ADX-000490594 | Response to Non-Final Office Action - Amendment to Patent Application No. 14/605,363 ('597 patent file history excerpt) | | I; H; A |
| DX-163 | 2/17/2020 | QIA-01048136 | QIA-01048138 | M. Baird lab notebook entry re: test results for the targeted DNA standard protocol | | I; A; H; F; O; R; P; S; X |
| DX-164 | 2010 | | | Lennon, N., et al., *A scalable fully automated process for construction of sequence-ready barcoded libraries for 454* , GENOME BIOLOGY, 11:R15 (2010) | Lennon Ex. 509 | H; R; A; P |
| DX-165 | 2011 | | | Erlich, R., et al., *Next-generation sequencing for HLA typing of class I loci* , BMC GENOMICS, 12:42 (2011) | Lennon Ex. 510 | H; R; A; P |
| DX-166 | 2/10/2003 | | | Invitrogen Nick Translation System, Cat. No. 18160-010 | Lennon Ex. 516 | H; R; A; P |
| DX-167 | Nov-12 | | | Neiman, M., et al., *Library Preparation and Multiplex Capture for Massive Parallel Sequencing Applications Made Efficient and Easy* , PLOS ONE, 7:1-6 (2012) | Lennon Ex. 517 | H; R; A; P |
| DX-168 | 4/30/2020 | | | Zheng, Z., et al., *Titration-free massively parallel pyrosequencing using trace amounts of starting material* , NUCLEIC ACIDS RESEARCH, 38:1-9 (2020) | Lennon Ex. 518 | H; R; A; P |
| DX-169 | 4/18/2021 | QIA-01077428 | QIA-01077429 | MGH NextGen Sequencing Core - Overview of Illumina Chemistry | | H; R; A; F; P |
| DX-170 | 4/18/2021 | QIA-01077425 | QIA-01077427 | MGH NextGen Sequencing Core - Custom Primer Design: Things to Consider | | H; R; A; F; P |
| DX-171 | 1/26/2015 | ADX-000052695 | ADX-000052695 | Native file, Archer slide deck, "Competitive Analysis" | Fugere Ex. 1 | H; A; F; R; P |
| DX-172 | 3/10/2017 | ADX-000062108 | ADX-000062109 | Email from J. Bon to T. Pollard, J. Amsbaugh, J. Doose, M. Callan. B. Lutz, D. Fugere re: Archer Support Meeting link and other (attaching Weekly Support Agenda) | Fugere Ex. 2<br>Fugere Ex. 3 | H; S; X; R; P; F |
| DX-173 | 11/19/2014 | ADX-000078759 | ADX-000078762 | Email from D. Fugere to B. Culver, J. Amsbaugh, R. Kulesus. J. Snider, K. Doebler, J. Mitchell re: Qiagen Webinar screenshots | Fugere Ex. 11 | H; R; F; P |
| DX-174 | 4/20/2016 | ADX-000039413 | ADX-000039413 | Email from J. Doose to B. Lutz, D. Fugere re: QIAseq | Fugere Ex. 12 | H; R; F; P |
| DX-175 | 2018 | | | Archer slide deck, "Competitive intel - 2018 sales meeting" | Stefanelli Ex. 2 | H; I; A; R; P; D |
| DX-176 | 7/31/2015 | ADX-000337494 | ADX-000337495 | Email from J. Fitzgerald to T. Pollard, cc: T. Pollard re: Follow up (Internal Only) | Stefanelli Ex. 3 | H; I; S; R; P; X |
| DX-177 | 7/8/2016 | ADX-00028180 | ADX-00028181 | Email from J. Stefanelli to J. Amsbaugh, J. Fitzgerald, cc: T. Pollard re: [redacted] Competitor pricing | Stefanelli Ex. 4 | S; H; R; P |
| DX-178 | 2/21/2018 | ADX-00047691 | ADX-00047692 | Email from J. Stefanelli to T. Pollard re: TPT | Stefanelli Ex. 7 | H; R; P |
| DX-179 | 11/3/2017 | ADX-000360245 | ADX-000360245 | Email from J. Stefanelli to J. Simon, cc: C. LaPointe re: Archer/Qiagen agreement? | Stefanelli Ex. 8 | H; R; P; LA |
| DX-180 | 3/24/2017 | ADX-000126600 | ADX-000126600 | Email from J. Bon to FAS, cc: T. Pollard re: Archer Support Meeting Recording Mar. 24, 2017 | Stefanelli Ex. 10 | I; A; H; R; P |
| DX-181 | 6/3/2018 | ADX-000021826 | ADX-000021868 | Archer presentation, "ArcherDX CDx Capabilities" | Stefanelli Ex. 12 | H; R; P |
| DX-182 | 6/21/2015 | QIA-00063107 | QIA-00063112 | Development Strategy for Appendix A - 21st of June 2015 | Hughes Ex. 6 | A; H; LA; R; P |

| DX | Date | Bates Beg. | Bates End | Description | Depo. Ex. No. | Plaintiffs' Objections |
|---|---|---|---|---|---|---|
| DX-183 | 11/24/2014 | QIA-00271737 | QIA-00271739 | Email from J.P. Viola to K. te Kaat, cc: J. Arnold, D. Zimmerman re: My notes for your edits and comments for ArcherDX discussions | Viola Ex. 9 | A; S; I; H; LA; R; P |
| DX-184 | 12/7/2016 | QIA-00059256 | QIA-00059262 | Email from J. Myers to J. Arnold, C. LaPointe re Re: calling the note | | A; S; H; R; P |
| DX-185 | 4/14/2016 | QIA-00059263 | QIA-00059281 | Email from C. LaPointe to J. Arnold, cc: C. LaPointe, J. Myers re: Updates (with attachments: Convertible Promissory Note, Call Notice, Wire Instructions) | | A; S; I; R; P |
| DX-186 | 11/27/2016 | QIA-00060829 | QIA-00060829 | Email from C. LaPointe to J. Arnold, cc: C. LaPointe, J. Myers re: calling the note | | A; H; S; R; P |
| DX-187 | 11/20/2015 | QIA-00065438 | QIA-00065439 | Email from J. Arnold to M. Pozek, cc: J. Myers, C. LaPointe re: Line of Credit | | A; I; H; R; P |
| DX-188 | 11/20/2015 | QIA-00065452 | QIA-00065454 | Email from J. Arnold to J. Myers, M. Pozek, cc: C. LaPointe re: Line of Credit | | A; I; H; R; P |
| DX-189 | 11/7/2016 | QIA-00065672 | QIA-00065673 | Email from J. Arnold to J. Myers, cc: C. LaPointe re: Line of credit | | A; I; H; R; P |
| DX-190 | 12/8/2016 | QIA-00066009 | QIA-00066022 | Email from C. LaPointe to J. Arnold, cc: J. Myers, C. LaPointe re: Note Call Notice (with attachments: Convertible Promissory Note, Wire Instructions, Call Notice) | | A; I; H; R; P |
| DX-191 | 12/7/2016 | QIA-00066023 | QIA-00066028 | Email from C. LaPointe to J. Arnold, cc: C. LaPointe, J. Myers re Re: calling the note | | A; H; R; P |
| DX-192 | 12/3/2016 | QIA-00066200 | QIA-00066204 | Email from J. Myers to J. Arnold, C. LaPointe re Re: calling the note | | A; H; R; P |
| DX-193 | 12/1/2016 | QIA-00066339 | QIA-00066343 | Email from C. LaPointe to J. Myers, J. Arnold, cc: C. LaPointe re Re: calling the note (with attachment Excel re: Cap Table 12.01.16) | | A; I; S; H; R; P |
| DX-194 | 7/5/2016 | QIA-00066491 | QIA-00066506 | Email from C. LaPointe to B. Johnson, cc: J. Arnold, J. Myers, C. LaPointe re Re: QIAGEN inquiry regarding Note Purchase Agreement Amendment (with attachment: Amendment to Note Purchase Agreement) | | A; I; H; Y; R; P |
| DX-195 | 4/22/2016 | QIA-00066941 | QIA-00066949 | Email from J. Arnold to J. Myers, C. LaPointe, cc: M. Pozek re: Updates | | A; Y; R; H; P |
| DX-196 | 4/22/2016 | QIA-00066950 | QIA-00066956 | Email from J. Arnold to J. Myers, C. LaPointe, cc: M. Pozek re: Updates | | A; H; S; R; P |
| DX-197 | 4/22/2016 | QIA-00067015 | QIA-00067023 | Email from J. Myers to J. Arnold, C. LaPointe, cc: M. Pozek re: Updates | | A; H; S; R; P |
| DX-198 | 4/19/2016 | QIA-00067027 | QIA-00067034 | Email from J. Myers to J. Arnold, C. LaPointe, cc: M. Pozek re Re: Updates | | A; H; S; I; R; P |
| DX-199 | 4/14/2016 | QIA-00067121 | QIA-00067125 | Email from J. Arnold to J. Myers, C. LaPointe re: Updates | | A; H; S; R; P |
| DX-200 | 4/19/2016 | QIA-00067168 | QIA-00067174 | Email from J. Arnold to J. Myers, C. LaPointe, cc: M. Pozek re: Updates | | A; H; S; R; P |
| DX-201 | 2/19/2016 | QIA-00067423 | QIA-00067429 | Email from J. Arnold to A. Backheuer, cc: J. Arnold re Fwd: Balance Sheet (with attached balance sheet) | | A; X; S; H; R; P |

| DX | Date | Bates Beg. | Bates End | Description | Depo. Ex. No. | Plaintiffs' Objections |
|---|---|---|---|---|---|---|
| DX-202 | 2/18/2016 | QIA-00067433 | QIA-00067437 | Email from M. Pozek to J. Myers, J. Arnold re: Balance Sheet (with attached balance sheet) | | A; X; S; H; R; P |
| DX-203 | 2/19/2016 | QIA-00072021 | QIA-00072021 | Email from A. Backheuer to J. Arnold re AW: Balance Sheet | | A; H; I; R; P |
| DX-204 | 2/18/2016 | QIA-00072229 | QIA-00072229 | Email from J. Myers to J. Arnold, cc: M. Pozek re: Balance Sheet | | A; H; I; R; P |
| DX-205 | 4/14/2016 | ADX-000112265 | ADX-000112265 | Email from J. Myers to J. Arnold, cc: M. Pozek re Re: CFO | | H; R; P |
| DX-206 | 3/29/2016 | ADX-000112267 | ADX-000112267 | Email from J. Myers to J. Arnold re Re: Updates | | H; R; P |
| DX-207 | 2/18/2016 | ADX-000112305 | ADX-000112305 | Email from J. Myers to J. Arnold, cc: M. Pozek re Re: Balance Sheet | | I; H; R; P |
| DX-208 | 2/18/2016 | ADX-000118220 | ADX-000118224 | Email from M. Pozek to J. Myers, J. Arnold re Re: Balance Sheet (with attachment: Balance Sheet 2.18.16) | | S; H; R; P |
| DX-209 | 1/29/2016 | ADX-000362478 | ADX-000362478 | Email from C. LaPointe to J. Arnold, cc: M. Pozek, C. LaPointe, rschundler@pbmcap.com re Re: Items | | I ; H; R; P |
| DX-210 | 12/1/2016 | ADX-000410906 | ADX-000410908 | Email from J. Myers to J. Arnold, C. LaPointe re Re: calling the note (with attachment: 2016 IS-BS-CF 21NOV16) | | X; H; I; R; P |
| DX-211 | 11/7/2016 | ADX-000410943 | ADX-000410945 | Email from J. Myers to J. Arnold, C. LaPointe re Re: Line of credit (with attachment: 2016 IS-BS-CF 11.02.16) | | X; H; I; S; R; P |
| DX-212 | 2/23/2016 | ADX-000492042 | ADX-000492137 | Email from C. LaPointe to J. Arnold, cc: C. LaPointe re subordination agreement (with attachment: Subordination Signatures and Affirmations) | | X; H; I; R; P |
| DX-213 | 12/9/2015 | ADX-000492147 | ADX-000492148 | Email from C. LaPointe to J. Arnold, cc: C. LaPointe re Re: Board Consent for review and signature | | H; I; R; P |
| DX-214 | 4/14/2016 | ADX-000492667 | ADX-000492668 | Email from C. LaPointe to J. Arnold, J. Myers, cc: C. LaPointe re RE: Updates | | H; R; P |
| DX-215 | 12/9/2015 | ADX-000492814 | ADX-000492815 | Email from J. Arnold to C. LaPointe re RE: Board Consent for review and signature | | H; I; R; P |
| DX-216 | 4/19/2016 | ADX-000493356 | ADX-000493359 | Email from M. Pozek to J. Myers, J. Arnold, C. LaPointe re Re: Updates | | H; S; R; P |
| DX-217 | 2/16/2016 | ADX-000493426 | ADX-000493427 | Email from J. Myers to P. Manning, J. Arnold, cc: S. Stalfort, C. LaPointe re Re: Call Summary | | H; S; R; P |
| DX-218 | 4/22/2016 | ADX-000494171 | ADX-000494174 | Email from J. Arnold to M. Pozek, J. Myers, C. LaPointe re RE: Updates | | H; S; R; P |
| DX-219 | 11/20/2020 | | | Schedule 1 to Expert Report of Christopher A. Martinez with Respect to Damages: Curriculum Vitae of Christopher A. Martinez | | H; 105 |
| DX-220 | 11/20/2020 | | | Schedule 2 to Expert Report of Christopher A. Martinez with Respect to Damages: Testimony of Christopher A. Martinez | | H; 105 |
| DX-221 | 11/20/2020 | | | Schedule 3 to Expert Report of Christopher A. Martinez with Respect to Damages: Documents considered | | H; 105 |

| DX | Date | Bates Beg. | Bates End | Description | Depo. Ex. No. | Plaintiffs' Objections |
|---|---|---|---|---|---|---|
| DX-222 | 11/20/2020 | | | Schedule 4 to Expert Report of Christopher A. Martinez with Respect to Damages: Summary of Reasonable Royalty Damages for the Accused Products (July 10, 2018 to December 31, 2019) | | H; 105; MD; P |
| DX-223 | 11/20/2020 | | | Schedule 4A to Expert Report of Christopher A. Martinez with Respect to Damages: Reasonable Royalty Damages for the Accused Products (July 10, 2018 to December 31, 2019) | | H; 105; MD; P |
| DX-224 | 11/20/2020 | | | Schedule 4B to Expert Report of Christopher A. Martinez with Respect to Damages: Adjusted Royalty Base for the Accused Products (July 10, 2018 to December 31, 2019) | | H; 105; MD; P |
| DX-225 | 11/20/2020 | | | Schedule 4C to Expert Report of Christopher A. Martinez with Respect to Damages: Estimated Additional Net Revenue for the Accused Products Given Away (July 10, 2018 to December 31, 2019) | | H; 105; MD; P |
| DX-226 | 11/20/2020 | | | Schedule 4D to Expert Report of Christopher A. Martinez with Respect to Damages: Percentage of Net Revenue to Gross Revenue for the Accused Products Sold (July 10, 2018 to December 31, 2019) | | H; 105; MD; P |
| DX-227 | 11/20/2020 | | | Schedule 5 to Expert Report of Christopher A. Martinez with Respect to Damages: Disgorgement of Profits for the Accused Products Sold (February 2016 to December 2019) | | H; 105; MD; P; R |
| DX-228 | 11/20/2020 | | | Schedule 5A to Expert Report of Christopher A. Martinez with Respect to Damages: Operating Income for the Accused Products Sold by Product Category (February 2016 to December 2019) | | H; 105; MD; P; R |
| DX-229 | 11/20/2020 | | | Schedule 5B to Expert Report of Christopher A. Martinez with Respect to Damages: Operating Income Margin for the Accused Products Sold by Product Category (February 2016 to December 2019) | | H; 105; MD; P; R |
| DX-230 | 11/20/2020 | | | Schedule 5C to Expert Report of Christopher A. Martinez with Respect to Damages: Gross Profit Margin for the Accused Products Sold by Product Category (February 2016 to December 2019) | | H; 105; MD; P; R |
| DX-231 | 11/20/2020 | | | Schedule 5D to Expert Report of Christopher A. Martinez with Respect to Damages: Common Size QIAGEN N.V. Consolidated Statements of Income (2016 - 2019) | | H; 105; MD; P; R |
| DX-232 | 11/20/2020 | | | Schedule 5E to Expert Report of Christopher A. Martinez with Respect to Damages: QIAGEN N.V. Consolidated Statements of Income (2016 - 2019) | | H; 105; MD; P; R |

| DX | Date | Bates Beg. | Bates End | Description | Depo. Ex. No. | Plaintiffs' Objections |
|---|---|---|---|---|---|---|
| DX-233 | 11/20/2020 | | | Schedule 6 to Expert Report of Christopher A. Martinez with Respect to Damages: Disgorgement of Profits Attributable to Archer's Alleged Trade Secrets for the Accused Products Sold (February 2016 to December 2019) | | H; 105; MD; P; R |
| DX-234 | 11/20/2020 | | | Schedule 6A to Expert Report of Christopher A. Martinez with Respect to Damages: Operating Income Attributable to Archer's Alleged Trade Secrets for the Accused Products Sold by Product Category (February 2016 to December 2019) | | H; 105; MD; P; R |
| DX-235 | 11/20/2020 | | | Schedule 6B to Expert Report of Christopher A. Martinez with Respect to Damages: Revenue Attributable to Archer's Alleged Trade Secrets for the Accused Products Sold by Product Category (February 2016 to December 2019) | | H; 105; MD; P; R |
| DX-236 | 11/20/2020 | | | Schedule 6C to Expert Report of Christopher A. Martinez with Respect to Damages: Net Revenue per Reaction for the Accused Products Sold - QIAGEN Beverly (February 2016 to December 2019) | | H; 105; MD; P; R |
| DX-237 | 11/20/2020 | | | Schedule 6D to Expert Report of Christopher A. Martinez with Respect to Damages: Percentage of Net Revenue to Gross Revenue for the Accused Products Sold (February 2016 to December 2019) | | H; 105; MD; P; R |
| DX-238 | 11/20/2020 | | | Schedule 6E to Expert Report of Christopher A. Martinez with Respect to Damages: QIAGEN Beverly List Prices per Reaction | | H; 105; MD; P; R |
| DX-239 | 11/20/2020 | | | Schedule 7A to Expert Report of Christopher A. Martinez with Respect to Damages: Potential Cost Savings Attributable to Archer's Alleged Trade Secrets for the Accused Products Sold by Product Category (February 2016 to December 2019) | | H; 105; MD; P; R |
| DX-240 | 11/20/2020 | | | Schedule 7B to Expert Report of Christopher A. Martinez with Respect to Damages: Potential Cost Savings per Reaction | | H; 105; MD; P; R |
| DX-241 | 11/20/2020 | | | Schedule 7C to Expert Report of Christopher A. Martinez with Respect to Damages: New England BioLabs, Inc. Bulk Price per Reaction | | H; 105; MD; P; R |
| DX-242 | 11/20/2020 | | | Schedule 7D to Expert Report of Christopher A. Martinez with Respect to Damages: QIAGEN Beverly Bulk Price per Reaction | | H; 105; MD; P; R |
| DX-243 | 11/20/2020 | | | Schedule 8A to Expert Report of Christopher A. Martinez with Respect to Damages: Net Revenue for the Accused Products Sold by Product Category (July 10, 2018 to December 31, 2019) | | H; 105; MD; P; R |

| DX | Date | Bates Beg. | Bates End | Description | Depo. Ex. No. | Plaintiffs' Objections |
|---|---|---|---|---|---|---|
| DX-244 | 11/20/2020 | | | Schedule 8B to Expert Report of Christopher A. Martinez with Respect to Damages: Net Revenue for the Accused Products Sold by Product Line (July 10, 2018 to December 31, 2019) | | H; 105; MD; P; R |
| DX-245 | 11/20/2020 | | | Schedule 8C to Expert Report of Christopher A. Martinez with Respect to Damages: Net Revenue for the Accused Products Sold (July 10, 2018 to December 31, 2019) | | H; 105; MD; P; R |
| DX-246 | 11/20/2020 | | | Schedule 9A to Expert Report of Christopher A. Martinez with Respect to Damages: Net Revenue for the Accused Products Sold by Product Category (February 2016 to December 2019) | | H; 105; MD; P; R |
| DX-247 | 11/20/2020 | | | Schedule 9B to Expert Report of Christopher A. Martinez with Respect to Damages: Net Revenue for the Accused Products Sold by Product Line (February 2016 to December 2019) | | H; 105; MD; P; R |
| DX-248 | 11/20/2020 | | | Schedule 9C to Expert Report of Christopher A. Martinez with Respect to Damages: Net Revenue for the Accused Products Sold (February 2016 to December 2019) | | H; 105; MD; P; R |
| DX-249 | 11/20/2020 | | | Schedule 10 to Expert Report of Christopher A. Martinez with Respect to Damages: Number of Reactions for the Accused Products Sold by Product Category (February 2016 to December 2019) | | H; 105; MD; P; R |
| DX-250 | Undated | QIA-01076026 | QIA-01076030 | Integrated DNA Technologies, Next Generation Sequencing Workflow - Overview (https://www.idtdna.com/pages/technology/next-generation-sequencing/workflow) | | H; R; A; P; C; 701 |
| DX-251 | 9/7/2018 | QIA-01076010 | QIA-01076014 | Genetics vs. Genomics Fact Sheet, NIH National Human Genome Research Institute. (https://www.genome.gov/about-genomics/fact-sheets/Genetics-vs-Genomics) | | H; R; A; P; C; 701 |
| DX-252 | Undated | QIA-01075933 | QIA-01075936 | Deoxyribonucleic Acid (DNA) Fact Sheet, NIH National Human Genome Research Institute (https://www.genome.gov/about-genomics/fact-sheets/Deoxyribonucleic-Acid-Fact-Sheet) | | H; R; A; P; C; 701; ID |
| DX-253 | Undated | QIA-01076974 | QIA-01076976 | Your Genome fact sheet, "What is DNA?" (https://www.yourgenome.org/facts/what-is-dna) | | H; R; A; P; C; 701 |
| DX-254 | Undated | QIA-01075979 | QIA-01075981 | MedlinePlus fact sheet, "What is DNA?" (https://medlineplus.gov/genetics/understanding/basics/dna/) | | H; R; A; P; C; 701 |
| DX-255 | Undated | QIA-01076019 | QIA-01076022 | NIH National Human Genome Research Institute fact sheet, "Ribonucleic Acid (RNA)" (https://www.genome.gov/genetics-glossary/RNA-Ribonucleic-Acid) | | H; R; A; P; C; 701 |

| DX | Date | Bates Beg. | Bates End | Description | Depo. Ex. No. | Plaintiffs' Objections |
|---|---|---|---|---|---|---|
| DX-256 | 10/15/2020 | QIA-01076031 | QIA-01076042 | Live Science fact sheet, "What is RNA?" (https://www.livescience.com/what-is-RNA.html) | | H; R; A; P; C; 701 |
| DX-257 | 2/6/2020 | QIA-01076045 | QIA-01076048 | Cuffari, B., News-Medical fact sheet, "What is RNA?" (https://www.news-medical.net/life-sciences/What-is-RNA.aspx) | | H; R; A; P; C; 701 |
| DX-258 | 11/6/2020 | QIA-01075922 | QIA-01075923 | Exploring Life's Origins fact sheet, "What is RNA?" (http://exploringorigins.org/rna.html) | | H; R; A; P; C; 701 |
| DX-259 | Undated | QIA-01075972 | QIA-01075978 | Lab Tests Online fact sheet, "DNA Sequencing" (https://labtestsonline.org/dna-sequencing) | | H; R; A; P; C; 701 |
| DX-260 | 2/21/2020 | QIA-01075937 | QIA-01075939 | CD Genomics Blog, Sanger Sequencing: Introduction, Principle, and Protocol (https://www.cd-genomics.com/blog/sanger-sequencing-introduction-principle-and-protocol/) | | H; R; A; P; C; 701 |
| DX-261 | Undated | QIA-01075982 | QIA-01075983 | Human Genome Project Information Archive 1990-2003 (Information sheet) (https://web.ornl.gov/sci/techresources/Human_Genome/index.shtml) | | H; R; A; P; C; 701 |
| DX-262 | Undated | QIA-01076023 | QIA-01076025 | NIH National Human Genome Research Institute fact sheet, "What is the Human Genome Project?" (https://www.genome.gov/human-genome-project/What) | | H; R; A; P; C; 701 |
| DX-263 | Undated | QIA-01075859 | QIA-01075875 | Khan Academy information sheet, "DNA Sequencing" (https://www.khanacademy.org/science/high-school-biology/hs-molecular-genetics/hs-biotechnology/a/dna-sequencing) | | H; R; A; P; C; 701 |
| DX-264 | Undated | QIA-01076064 | QIA-01076066 | Thermo Fisher Scientific fact sheet, "What is Next-Generation Sequencing (NGS)?" (https://www.thermofisher.com/us/en/home/life-science/sequencing/sequencing-learning-center/next-generation-sequencing-information/ngs-basics/what-is-next-generation-sequencing.html) | | H; R; A; P; C; 701 |
| DX-265 | 8/25/2020 | QIA-01072936 | QIA-01073303 | Invitae Corporation Amendment No. 1 to Form S-4 | | H; LA |
| DX-266 | Undated | QIA-01075940 | QIA-01075951 | Ranking and Rating of Massachusetts General Hospital, *U.S. News & World Report* | | H; R; A; P; C |
| DX-267 | 9/6/2013 | QIA-01076070 | QIA-01076071 | Enzymatics press release, "Enzymatics Acquires ArcherDxand Next-Generation Diagnostic Technology" | | H; R; A |
| DX-268 | 6/22/2020 | QIA-01076052 | QIA-01076062 | Invitae press release, "Invitae and ArcherDX to create a global leader in comprehensive cancer genetics and precision oncology" | | H; A; C |
| DX-269 | 10/5/2020 | QIA-01075927 | QIA-01075929 | Werley, Jensen, *Invitae completes its $1.4B acquisition of Boulder-based ArcherDX*, DENVER BUSINESS JOURNAL | | H; A; C |
| DX-270 | 11/8/2020 | QIA-01075779 | QIA-01075780 | Qiagen website page, "At a glance" (https://corporate.qiagen.com/about-us/What-we-do/at-a-glance/) | | H; R; A; C |

| DX | Date | Bates Beg. | Bates End | Description | Depo. Ex. No. | Plaintiffs' Objections |
|---|---|---|---|---|---|---|
| DX-271 | 2/28/2020 | QIA-01073627 | QIA-01073815 | QIAGEN N.V. Form 20-F (for the fiscal year ended December 31, 2019) | | H; A; LA |
| DX-272 | Apr-20 | QIA-01072898 | QIA-01072935 | Insights: The QIAGEN Magazine 2020 | | H; R; A; C |
| DX-273 | 10/17/2020 | QIA-01075924 | QIA-01075925 | Qiagen website page, "Global presence" https://corporate.qiagen.com/careers/why-qiagen/global-presence | | H; R; A; C |
| DX-274 | 11/2/2020 | QIA-01075856 | QIA-01075858 | Qiagen website page, "Customers & products" https://corporate.qiagen.com/about-us/What-we-do/customers-and-products | | H; R; A; C |
| DX-275 | 2/10/2020 | QIA-01072777 | QIA-01072897 | Illumina, Inc. Form 10-K (for fiscal year ended December 29, 2019) | | H; R; A; C |
| DX-276 | 1/11/2015 | QIA-01076539 | QIA-01076543 | Press release, "QIAGEN acquires Enzymatics enzyme solutions unit, a leading enabler of NGS applications" | | H; R; A; C |
| DX-277 | 6/23/2020 | QIA-01076747 | QIA-01076748 | Press release, "QIAGEN provides information on potential capital gain from its minority investment in ArcherDX" | | H; R; A; C |
| DX-278 | 3/3/2020 | QIA-01076942 | QIA-01076948 | Press release, "Thermo Fisher Scientific to Acquire QIAGEN N.V." | | H; R; A; C |
| DX-279 | 8/13/2020 | | | Thermo Fisher press release, "Thermo Fisher Scientific Announces Results of Offer to Acquire QIAGEN, Lapse of Offer and Termination of Acquisition Agreement" (https://thermofisher.mediaroom.com/2020-08-13-Thermo-Fisher-Scientific-Announces-Results-of-Offer-to-Acquire-QIAGEN-Lapse-of-Offer-and-Termination-of-Acquisition-Agreement) | | H; R; A; C; X |
| DX-280 | 2/28/2020 | QIA-01073411 | QIA-01073626 | 2019 QIAGEN N.V. Financial Report | | H; A; C; LA |
| DX-281 | 11/6/2017 | QIA-01076069 | QIA-01076069 | *ArcherDx to Develop CDx for Celgene's Lymphoma Drug Candidate* , GENOMEWEB (https://www.genomeweb.com/companion-diagnostics/archerdx-develop-cdx-celgenes-lymphoma-drug-candidate#.YNy8ZnkpCUl) | | H; C; A |
| DX-282 | 10/3/2018 | QIA-01075930 | QIA-01075932 | *Merck Partnering with ArcherDX on Cancer Companion Diagnostics* , CLINICALOMICS (https://www.clinicalomics.com/topics/precision-medicine-topic/companies/merck-partnering-with-archerdx-on-cancer-companion-diagnostics/) | | H; C; A |
| DX-283 | 5/14/2020 | QIA-01076005 | QIA-01076009 | *Bayer and ArcherDX Announce Global Collaboration to Develop Next-Generation Sequencing (NGS)-based Companion Diagnostic (CDx) for VITRAKVI® (larotrectinib)* BUSINESS WIRE (https://www.businesswire.com/news/home/20200514005222/en/Bayer-ArcherDX-Announce-Global-Collaboration-Develop-Next-Generation) | | H; C; A |
| DX-284 | 9/29/2020 | QIA-01071700 | QIA-01071700 | Spreadsheet, Net Sales by Customer (2016-2019) and Gross Sales by Customer (2016-2019) | | H ; LA |

| DX | Date | Bates Beg. | Bates End | Description | Depo. Ex. No. | Plaintiffs' Objections |
|---|---|---|---|---|---|---|
| DX-285 | 11/14/2016 | QIA-01076049 | QIA-01076051 | ArcherDX press release, "Anchored Multiplex PCR Patent Is Issued To Inventors At Massachusetts General Hospital" | Sims Ex. 4 | H; C; A |
| DX-286 | Jun-12 | QIA-01076949 | QIA-01076961 | Axanova, L., *U.S. Academic Technology Transfer Models: Traditional, Experimental And Hypothetical* , LES NOUVELLES, 125-137 (2012) | | H; R; A; C; P; 701 |
| DX-287 | 3/30/2012 | QIA-01073959 | QIA-01074010 | Licensing Executives Society (U.S.A. and Canada), Inc., "2011 High Technology Sector Deal Term and Royalty Rate Survey Report" | | H; R; A; C; P; 701 |
| DX-288 | Dec-04 | QIA-01076962 | QIA-01076973 | Gordon, M. L., *University Controlled Or Owned Technology: The State of Commercialization And Recommendations* , LES NOUVELLES (2004) | | H; R; A; C; P; 701 |
| DX-289 | Mar-12 | QIA-01074245 | QIA-01074253 | Varner, T. R., *An Economic Perspective On Patent Licensing Structure and Provisions* , LES NOUVELLES (2002) | | H; R; A; C; P; 701 |
| DX-290 | Jan-02 | QIA-01075904 | QIA-01075921 | Feldman, M., et al., *Equity and the Technology Transfer Strategies of AmericanResearch Universities* , MANAGEMENT SCIENCE, 48:105-121 (2002) | | H; R; A; C; P; 701 |
| DX-291 | 3/3/2015 | QIA-01076072 | QIA-01076538 | QIAGEN N.V. Form 20-F (for the fiscal year ended December 31, 2014) | | A; P; R; H; LA |
| DX-292 | 2/26/2016 | QIA-01070479 | QIA-01070619 | QIAGEN N.V. Form 20-F (for the fiscal year ended December 31, 2015) | | A; P; R; H; LA |
| DX-293 | 3/3/2017 | QIA-01070620 | QIA-01070789 | QIAGEN N.V. Form 20-F (for the fiscal year ended December 31, 2016) | | A; P; R; H; LA |
| DX-294 | 1/31/2012 | | | U.S. Patent No. 8,105,782 to Guldberg | | A; P; R; H; D |
| DX-295 | May-09 | QIA-01075876 | QIA-01075903 | EpiTect® HRM™ PCR Handbook | | A; R; P; H; 701; C |
| DX-296 | Undated | QIA-01076002 | QIA-01076004 | Cancer Research Technology Ltd. Company Profile and News, BLOOMBERG (https://www.bloomberg.com/profile/company/1103890Z:LN) | | H; R; A; C; P; 701 |
| DX-297 | Undated | QIA-01075961 | QIA-01075962 | Cancer Research UK fact sheet, "Commercialisation" (http://commercial.cancerresearchuk.org/commercialisation) | | H; R; A; C; P; 701 |
| DX-298 | 8/10/2015 | QIA-01070233 | QIA-01070244 | License Agreement [redacted] | | H; LA |
| DX-299 | 3/12/2020 | QIA-01075970 | QIA-01075971 | Johns Hopkins University case, "Microsatellite Instability as a Pharmacogenomic Marker of Therapeutic Response to Immune Checkpoint Inhibition" (http://jhu.technologypublisher.com/techcase/C13241) | | H; R; A; C; P; 701 |
| DX-300 | 7/28/2015 | | | U.S. Patent No. 9,090,946 to Green et al. | | A; R; P; H; D |
| DX-301 | Undated | | | Breslin, C., *What is a WO Patent?,* CHRON (https://smallbusiness.chron.com/wo-patent-64013.html) | | H; R; A; C; P; 701; D |

ArcherDX, LLC, et al. v. Qiagen Sciences, LLC, et al.
C.A. No. 18-1019-MN
Defendants' Trial Exhibit List

Exhibit 8D

| DX | Date | Bates Beg. | Bates End | Description | Depo. Ex. No. | Plaintiffs' Objections |
|---|---|---|---|---|---|---|
| DX-302 | 2/3/2014 | QIA-01076067 | QIA-01076068 | Thermo Fisher Scientific press release, "Thermo Fisher Scientific Completes Acquisition of Life Technologies Corporation" | | A; R; P; H |
| DX-303 | 2/26/2020 | | | Thermo-Fisher Scientific, Inc. Form 10-K for the fiscal year ended December 31, 2019 | | A; R; P; H; C; D |
| DX-304 | 5/2/2017 | QIA-01076744 | QIA-01076746 | QIAGEN press release, "QIAGEN partners with Maccura to localize and commercialize GeneReader NGS System in China" | | A; R; P; H; C |
| DX-305 | 1/27/2020 | QIA-01076749 | QIA-01076933 | Roche 2019 Finance Report | | A; R; P; H; C |
| DX-306 | Undated | QIA-01075999 | QIA-01076001 | Astellas Pharma Inc. website list of Main Products (https://www.astellas.com/en/about/main-products) | | A; R; P; H; C |
| DX-307 | Undated | QIA-01076063 | QIA-01076063 | QIAGEN list of Global Contacts Divisions (https://www.qiagen.com/us/contact-us/global-contacts/divisions) | | A; R; P; H; C |
| DX-308 | 9/11/2020 | QIA-01070436 | QIA-01070436 | Spreadsheet, [redacted] | | H; LA |
| DX-309 | 5/14/2020 | QIA-01070437 | QIA-01070437 | Spreadsheet, [redacted] | | H; LA |
| DX-310 | 11/6/2019 | QIA-01070440 | QIA-01070440 | Spreadsheet, [redacted] | | H; LA |
| DX-311 | 3/3/2020 | QIA-01070443 | QIA-01070443 | Spreadsheet, [redacted] | | H; LA |
| DX-312 | 11/6/2019 | QIA-01070445 | QIA-01070445 | Spreadsheet, [redacted] | | H; LA |
| DX-313 | 5/12/2020 | QIA-01070449 | QIA-01070449 | Spreadsheet, [redacted] | | A; R; P; H; LA |
| DX-314 | 5/12/2020 | QIA-01070450 | QIA-01070450 | Spreadsheet, [redacted] | | A; R; P; H; LA |
| DX-315 | 9/11/2020 | QIA-01070451 | QIA-01070451 | Spreadsheet, [redacted] | | A; R; P; H; LA |
| DX-316 | 5/12/2020 | QIA-01070452 | QIA-01070452 | Spreadsheet, [redacted] | | A; R; P; H; LA |
| DX-317 | 5/14/2020 | QIA-01070453 | QIA-01070453 | Spreadsheet, [redacted] | | H; LA |
| DX-318 | 6/10/2020 | QIA-01070454 | QIA-01070454 | Spreadsheet, [redacted] | | H; LA |
| DX-319 | 7/14/2020 | QIA-01070455 | QIA-01070455 | Spreadsheet, [redacted] | | A; R; P; H; LA |
| DX-320 | 9/11/2020 | QIA-01070456 | QIA-01070456 | Spreadsheet, [redacted] | | A; R; P; H; LA |
| DX-321 | 7/14/2020 | QIA-01070457 | QIA-01070457 | Spreadsheet, [redacted] | | A; R; P; H; LA |
| DX-322 | 8/13/2020 | QIA-01070458 | QIA-01070458 | Spreadsheet, [redacted] | | H; LA |
| DX-323 | 8/31/2020 | QIA-01070459 | QIA-01070459 | Spreadsheet, [redacted] | | H; LA |
| DX-324 | 8/31/2020 | QIA-01070460 | QIA-01070460 | Spreadsheet, [redacted] | | H; LA |
| DX-325 | Undated | QIA-01075984 | QIA-01075991 | Wellcome website page, "Who We Are" (https://wellcome.org/about-us#who-we-are-ae7f) | | A; R; P; H; C |
| DX-326 | Undated | QIA-01075957 | QIA-01075960 | Cardiff Oncology website page, "Product Pipeline" (https://cardiffoncology.com/pipeline/) | | A; R; P; H; C |
| DX-327 | 6/5/2020 | | | ArcherDX, Inc. Form S-1 | Sims Ex. 5 | A; R; P; H; C |

ArcherDX, LLC, et al. v. Qiagen Sciences, LLC, et al.
C.A. No. 18-1019-MN
Defendants' Trial Exhibit List

Exhibit 8D

| DX | Date | Bates Beg. | Bates End | Description | Depo. Ex. No. | Plaintiffs' Objections |
|---|---|---|---|---|---|---|
| DX-328 | 1/30/2017 | QIA-00304242 | QIA-00304242 | PowerPoint, "QIAseq DNA & RNAscan panels outperform competition" | | A; R; P; H |
| DX-329 | 1/5/2016 | QIA-00306524 | QIA-00306524 | PowerPoint, "QIAseq Fact Sheet" (part of Marketing Document)" | | A; R; P; H |
| DX-330 | 9/23/2020 | QIA-01076043 | QIA-01076044 | Hodson, R, *Precision Oncology* , NATURE 585:S1 (2020) | | A; R; P; H; C; 701 |
| DX-331 | Undated | QIA-01076015 | QIA-01076018 | NIH National Human Genome Research Institute Glossary, "Primer" (https://www.genome.gov/genetics-glossary/Primer) | | A; R; P; H; C; 701; X |
| DX-332 | Undated | QIA-01075926 | QIA-01075926 | NIH Nation Cancer Institute Dictionary of Cancer Terms, "Fusion Gene" | | A; R; P; H; C; 701 |
| DX-333 | 5/3/2017 | QIA-01075992 | QIA-01075998 | De Witte, A., et al., *Molecular Barcodes - FAQ: Detect low allele frequency variants with HaloPlex $^{HS}$,* AGILENT TECHNOLOGIES | | A; R; P; H; C; 701 |
| DX-334 | 2006 | QIA-01075781 | QIA-01075855 | AICPA Practice Aid 6-4, Calculating Lost Profits | | A; R; P; H; C; 701 |
| DX-335 | 2010 | QIA-01074153 | QIA-01074244 | AICPA Practice Aid 10-1, Serving as an Expert Eitness or Consultant | | A; R; P; H; C; 701 |
| DX-336 | 3/5/2020 | QIA-00819316 | QIA-00819316 | Spreadsheet, Base Products and Descriptions | | A; R; P; H |
| DX-337 | 9/29/2020 | QIA-01071701 | QIA-01071701 | Spreadsheet: Net Sales (adj.) Bud FX and Gross Margin (January 2016 - December 2019) | | H; LA |
| DX-338 | 3/5/2019 | QIA-01072482 | QIA-01072681 | 2018 QIAGEN N.V. Financial Report | | A; R; P; H; LA |
| DX-339 | Undated | | | Personal Genomes website page, "PGDx Products Overview" (https://www.personalgenome.com/products) | | A; R; P; H; D; 701; C |
| DX-340 | Undated | | | Personal Genome Diagnostics website page, "CAP/CLIA Services" (https://www.personalgenome.com/cap-clia) | | A; R; P; H; D; 701; C |
| DX-341 | Undated | | | Sanofi U.S. website page, "Prescription Products" https://www.sanofigenzyme.com/en/products-research/product-portfolio | | A; R; P; H; D; 701; C |
| DX-342 | Undated | | | CeMM website page, "About CeMM" (https://cemm.at/about/) | | A; R; P; H; D; 701; C |
| DX-343 | Undated | | | Gustave Roussy website page," About Us - The Institute" (https://www.gustaveroussy.fr/en/institute) | | A; R; P; H; D; 701; C |
| DX-344 | Undated | | | Roche fact sheet, "Next-Generation Sequencing (NGS) Solutions" (https://sequencing.roche.com/en-us.html) | | A; R; P; H; D; 701; C |
| DX-345 | Undated | | | Roche inventory of All Products (https://sequencing.roche.com/en-us/products-solutions/all-products.html) | | A; R; P; H; D |
| DX-346 | | | | Litigation Services Handbook, 6th Edition - Causation | | A; R; P; H; D; 701; C |
| DX-347 | 2/20/2018 | | | FindLaw website page, "Patents: Make Sure Your Idea is Useful, Novel, and Non-Obvious" https://www.findlaw.com/smallbusiness/intellectual-property/idea-must-be-useful-novel-or-non-obvious.html | | A; R; P; H; D; 701; C |
| DX-348 | 6/21/2020 | | | Invitae Corporation Form 8-K | | A; R; P; H; D |

| DX | Date | Bates Beg. | Bates End | Description | Depo. Ex. No. | Plaintiffs' Objections |
|---|---|---|---|---|---|---|
| DX-349 | 9/4/2015 | ADX-000119052 | ADX-000119052 | Email from C. Benoit to J. Myers, S. Picone, P. Manning, S. Stalfort, I. Ratcliffe re: Qiagen - Update | | A; R; P; H; F; LF |
| DX-350 | 3/5/2015 | ADX-000120191 | ADX-000120191 | Email from P. Schatz to J. Myers, cc: T. Bernard re: Qiagen-Archer Collaboration | | A; R; P; H; F; LF |
| DX-351 | 1/6/2015 | ADX-000349503 | ADX-000349513 | ArcherDX, Inc. Convertible Promissory Note in the amount of $5,000.000.00 | | A; R; P; H |
| DX-352 | 9/29/2015 | ADX-000413393 | ADX-000413399 | Email from J. Myers to P. Manning, L. Bauk, cc: C. LaPointe, S. Stalfort re: FW: JT Retention agreement, and Board consent (attaching draft Retention agreement and draft Board consent) | | A; R; P; H; I; F; X |
| DX-353 | 4/14/2016 | ADX-000493370 | ADX-000493385 | Email from C. LaPointe to J. Arnold re: Update (attaching April 13, 2016 Convertible Promissory Note, April 13, 2016 Call Notice and Wiring Instructions) | | A; R; P; H |
| DX-354 | 2/16/2016 | ADX-000493388 | ADX-000493389 | Email from C. LaPointe to J. Myers, P. Manning, J. Arnold, cc: S. Stalfort re: Call Summary | | A; R; P; H |
| DX-355 | 3/25/2015 | QIA-00058802 | QIA-00058805 | Email from J. Amsbaugh to J. Arnold, cc: J. Myers re: Data Sheet | | A; R; P; H; I |
| DX-356 | 4/13/2016 | QIA-00059341 | QIA-00059350 | ArcherDX, Inc. Convertible Promissory Note in the amount of $1,250,000.00 | | A; R; P; H |
| DX-357 | 3/9/2015 | QIA-00060888 | QIA-00060891 | Email from T. Bernard to K. te Kaat, J. Arnold, D. Zimmerman re: FW: Qiagen-Archer Collaboration | | A; R; P; H |
| DX-358 | 3/1/2016 | QIA-00067346 | QIA-00067348 | Email from C. LaPointe to J. Arnold, cc: J. Myers re: Funding | | A; R; P; H |
| DX-359 | 1/28/2016 | QIA-00067615 | QIA-00067617 | Email from J. Arnold to C. LaPointe, cc: M. Pozek re: can you give me a call? | | A; R; P; H |
| DX-360 | 4/10/2017 | QIA-00073922 | QIA-00073922 | Email from J. Arnold to J. Myers, P. Manning re: Updates | | A; R; P; H |
| DX-361 | 11/25/2014 | QIA-01077430 | QIA-01077435 | Certified Copy of ArcherDX, Inc. Certificate of Incorporation from the Secretary of State of Delaware | | A; R; P |
| DX-362 | Undated | QIA-01077436 | QIA-01077441 | Foundation Medicine information portfolio re: FoundationOne® CDX | | A; R; P; H; F; LF |
| DX-363 | Undated | QIA-01077442 | QIA-01077453 | Guardant Health information sheet re: Biopharma Solutions | | A; R; P; H;F; LF |
| DX-364 | 11/1/2016 | QIA-01077454 | QIA-01077458 | Illumina news article, "TruSight® RNA Fusion: Cancer Panel for Gene Fusion Detection" | | A; R; P; H; F; LF |
| DX-365 | Undated | QIA-01077459 | QIA-01077469 | Paragon Genomics information sheet re: AccuFusion™ and OmniFusion™ RNA Gene Fusion Detection and Discovery | | A; R; P; H; F; LF |
| DX-366 | Undated | QIA-01077470 | QIA-01077476 | Asuragen information portfolio re: QuantideX® NGS RNA Lung Cancer Kit | | A; R; P; H; F; LF |
| DX-367 | 8/5/2021 | | | Supplemental Schedule 3 to Supplemental Expert Report of Christopher A. Martinez with Respect to Damages: Additional Documents considered | | H; S; A; P; Dem Only; LC |

| DX | Date | Bates Beg. | Bates End | Description | Depo. Ex. No. | Plaintiffs' Objections |
|---|---|---|---|---|---|---|
| DX-368 | 8/5/2021 | | | Supplemental Schedule 4 to Supplemental Expert Report of Christopher A. Martinez with Respect to Damages: Summary of Reasonable Royalty Damages for the Accused Products (July 10, 2018 to December 31, 2020) | | H; S; A; P; Dem Only; LC |
| DX-369 | 8/5/2021 | | | Supplemental Schedule 5D to Supplemental Expert Report of Christopher A. Martinez with Respect to Damages: Common Size QIAGEN N.V. Consolidated Statements of Income (2016 - 2020) | | H; S; A; P; Dem Only; LC |
| DX-370 | 8/5/2021 | | | Supplemental Schedule 5E to Supplemental Expert Report of Christopher A. Martinez with Respect to Damages: QIAGEN N.V. Consolidated Statements of Income (2016 - 2020) | | H; S; A; P; Dem Only; LC |
| DX-371 | 2020 | QIA-01073956 | QIA-01073956 | 2020 sales information | | LA |
| DX-372 | Apr-21 | QIA-01077477 | QIA-01077678 | 2020 QIAGEN N.V. Financial Report | | A; H; LA; D; P; R; S |

# Plaintiffs' Objections Key

*ArcherDX, LLC, et al. v. Qiagen Science, LLC, et al.*, 18-1019

| ABBREV. | OBJECTION |
|---|---|
| A | Authentication or Identification (FRE 901)<br><br>The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. |
| Arg | Argumentative |
| AT | Attorney Objections Not Removed |
| BS | Beyond the Scope of Direct / Cross / Redirect Examination |
| 30(b)(6) | Beyond the Scope of the Rule 30(b)(6) Deposition Topic |
| C | Cumulative, Duplicative, Wasteful or Undue Delay (FRE 403)<br><br>Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, waste of time, or needless presentation of duplicative and/or cumulative evidence. |
| Char | Improper Character Evidence (FRE 404) |
| Cmpd | Compound |
| Dem Only | Demonstrative / Should Not Be Admitted Into Evidence |
| D | Not Produced During Discovery |
| F | Lack of Foundation (FRE 602)<br><br>Objectionable because a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. |
| H | Hearsay Rule (FRE 802)<br><br>Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress. |

| ABBREV. | OBJECTION |
|---|---|
| I | Incomplete Document (FRE 106)<br><br>Objectionable because document is incomplete and the introduction of the remaining portions or related documents ought, in fairness, to be considered contemporaneously with it. |
| IC | Improper Designation / Counter Designation (FRE 106: FRCP 32(a)(6)) |
| ID | Incomplete Document<br>(FRE 106) |
| In | Incomplete Testimony<br>(FRE 106; FRCP 32(a)(6)) |
| L | Lack of Personal Knowledge or Competency (FRE 602) |
| LA | Limited Admissibility (Admissible for Some Purposes but Not Others) (FRE 105) |
| LC | Legal Conclusion |
| LD | Leading (FRE 611) |
| LF | Lack of Foundation<br>(FRE 103, 104 and/or 105) |
| M | Misleading/Mischaracterizes Prior Testimony<br>(FRE 401-403, 611) |
| MD | Mischaracterizes Underlying. Document (FRE 401-403, 611) |
| ML | Subject to Motion In Limine |
| NE | Assumes Facts Not In Evidence |
| NR | Nonresponsive |
| NT | Not Testimony |
| O | Improper Lay or Expert Opinion (FRE 701-703) |
| OC | Offer to Compromise, Settlement (FRE 408) |

| ABBREV. | OBJECTION |
|---|---|
| P | Prejudicial, Confusing, Vague and/or Misleading (FRE 403)<br><br>Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. |
| PD | Post Dated Filing Date (FRE 105)<br><br>If post-dated evidence is admitted as to one purpose but not admissible as for another purpose (e.g., for obviousness analysis), the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly. |
| PK | Lack of Personal Knowledge (FRE 602)<br><br>Objectionable because lack of personal knowledge makes the witness incompetent to testify about particular facts. |
| R | Relevance (FRE 401, 402)<br><br>All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible. |
| Spec | Calls for Speculation (FRE 602) |
| S | Summaries (FRE 1006)<br><br>The party relying on the summary must establish its accuracy to the court's satisfaction.<br><br>*See* Graham, Handbook of Federal Evidence § 1006.1 (5th ed. 2001). *United States v. Pelullo*, 964 F.2d 193, 204 (3d Cir. 1992) ("It is well established that summary evidence is admissible under Rule 1006 only if the underlying materials upon which the summary is based are admissible."). |
| U | Untimely / Never Produced (FRCP 26, 37) |
| V | Vague / Ambiguous/Overbroad (FRE 611) |
| W | Privileged / Work Product (FRE 501/502) |
| X | Exhibit has not been provided, the copy provided is illegible, and/or the entry includes multiple documents. |

| ABBREV. | OBJECTION |
|---|---|
| Y | Wrong Document Identified or Incorrectly Described |
| 105 | Limited Admissibility (FRE 105)<br><br>When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly. |
| 701 | Improper Lay Opinion Testimony (FRE 701)<br><br>If a witness is not testifying as an expert, testimony in the form of an opinion is limited as provided by this rule. |
| 1002 | Best Evidence (FRE 1002, 1003, 1004)<br><br>An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise. |

# Exhibit 9:

# Plaintiffs' Motion in Limine 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARCHERDX, LLC and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL, | ) |
| Plaintiffs, | ) |
| v. | ) C.A. No. 18-1019-MN |
| QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC., QIAGEN GAITHERSBURG, LLC f/k/a QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V., and JONATHAN ARNOLD, | ) **CONFIDENTIAL – FILED UNDER SEAL** |
| Defendants. | ) |

**PLAINTIFFS' MOTION IN LIMINE NO. 1 TO PRECLUDE QIAGEN FROM OFFERING CERTAIN TESTIMONY AND/OR EVIDENCE THROUGH ITS EXPERTS**

Plaintiffs move for an order precluding Qiagen from (1) offering evidence or arguments that contradict the Court's claim construction orders or (2) eliciting testimony beyond the scope of Qiagen's experts' reports. Specifically, Qiagen should be precluded from reading into the construed terms the "second target-specific primer" and "nested" limitations that the Court previously rejected. Qiagen should also be precluded from offering the "APAgene Manual" as a "printed publication" because Qiagen lacks any evidence of its public accessibility.

**A. Preclude "Nesting" Requirement Previously Rejected by the Court.**

Qiagen contends that the "second target-specific primer" of claim 16 of the '810 patent must be nested relative to the "first target-specific primer." D.I. 15 [Qiagen Mot. to Dismiss] at 12-15; D.I. 123 [Joint Cl. Constr. Br.] at 34-37. The Court rejected Qiagen's argument in its claim construction order. D.I. 146 at 11 ("I will not read into the claim a term that the patentee chose not to include."). Disregarding the Court's construction, Qiagen's expert, Dr. Metzker, opined that "the Court's construction of the term 'second target-specific primer' ***requires*** the second target-specific primer to be nested with respect to the first target-specific primer." D.I. 323, Ex. 17 [Metzker Rebuttal Report] at 70, ¶ 255 (emphasis Qiagen's).

At summary judgment, Plaintiffs asked the Court to strike this portion of Dr. Metzker's opinion. D.I. 321 at 31-32. In response, Qiagen doubled down on its effort to import a "nested" requirement into the claim term, arguing that "there is not a single example in the specification where the second target specific primer is not nested with respect to the first." D.I. 365 at 35. Qiagen's attempt to limit claim language to certain embodiments disclosed in the specification violates the Court's claim construction order and also contradicts black-letter Federal Circuit law, which the Court quoted in its claim construction order: "Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or

expressions of manifest exclusion or restriction." D.I. 146 at 3 (quoting *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014)). Plaintiffs request that the Court preclude Qiagen from yet again raising this improper "nesting" requirement before the jury.

**B. Preclude Qiagen's "Offset" Theory that it Waived during Markman.**

At claim construction, Qiagen initially proposed that "nested" be construed to require both that (1) a second primer "anneals to a nucleic acid sequence 3′ downstream and in the same direction as the first primer" and that (2) "the first primer comprises sequence towards its 5′ end that anneals to the nucleic acid sequence and is not comprised by the second primer." D.I. 76 at 11. In other words, "nested" would mean that a second primer must be offset downstream from a first primer at both the 3′ end and the 5′ end. But Qiagen dropped the second requirement (i.e., offset at the 5′ end) during claim construction (D.I. 93 at 12), and secured a less restrictive construction of "nested" that includes only the first requirement, i.e., "annealed to a nucleic acid sequence 3′ downstream and in the same direction as another molecule" (D.I. 146 at 13).

At summary judgment, Qiagen sought to resurrect the narrower definition of "nested" that it had abandoned during claim construction, i.e., that both 3′ and 5′ ends be offset.

> To satisfy the nesting language in the specification, the second adaptor primer must be offset at the 5′ end by at least one nucleotide 3′ downstream from the first adaptor primer (as shown below), not merely have exactly the same sequence as the first adaptor primer with one additional nucleotide appended at the 3′ end.

D.I. 330 [Qiagen Opening Br. re: Summ. J. of Noninfringement] at 8.

As Plaintiffs explained in their summary judgment opposition, Qiagen's attempt to undo concessions it made during claim construction is procedurally improper. D.I. 356 at 19-20. Qiagen's effort to narrow the construction of "nested" is also substantively improper because it seeks to limit "nested" to embodiments described at 17:15-26 of the '810 patent. Id. at 19-20.

Plaintiffs ask that the Court preclude Qiagen from suggesting to the jury that there is any requirement that the "second adaptor primer" be offset at the 5′ end from the first adaptor primer.

**C. Preclude the So-Called "APAgene Manual" as it is Not a Printed Publication.**

Qiagen relies on a document it calls "APAgene Manual" (Ex. 2), which it contends anticipates or, in combination with Fraiture, renders obvious the asserted claims of the '597 patent. D.I. 323, Ex. 18 (excerpts of Qiagen's '597 Invalidity Contentions); D.I. 367, Ex. 20 (Metzker Opening Rep.), § VI.B.1 (Fraiture) and § VI.B.5 (APAgene Manual). But Qiagen has no evidence that APAgene Manual was publicly accessible before January 27, 2014, the effective filing date of the '597 patent. Qiagen's expert, Dr. Metzker, failed to identify any evidence that this document was accessible, as Dr. Lennon pointed out:

> Dr. Metzker fails to cite any evidence that the APAgeneTM Gold-RT Genome Walking Kits described in the APAgene Manual were available at the time Fraiture et al performed their research (which information is not disclosed in Fraiture). Dr. Metzker provides no evidence regarding the provenance of the APAgene Manual, provides no explanation of the Japanese characters on the title page, and provides no evidence that the APAgene Manual was obtained from the same company (BIO S&T) that Fraiture identifies in connection with the product.

Ex. A, Lennon Rebuttal Report, ¶ 333. Dr. Metzker offered no contrary evidence. D.I. 323, Ex. 6, ¶ 142. The document includes the words "September 2010" in a footer, but a naked date, without more, is insufficient to meet Qiagen's burden. *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 865 (Fed. Cir. 2010) (affirming finding that user manual dated six years before critical date was not a printed publication: "[N]o witness testified, nor was any evidence presented, that either of these documents was ever published or disseminated to the public").

Having failed to produce evidence that APAgene Manual was publicly accessible, Qiagen cannot show that it is a "printed publication" as a matter of law. Accordingly, its use at trial would be highly prejudicial and misleading as it cannot be relied upon to support invalidity. Plaintiffs thus request that the Court preclude Qiagen from introducing this document at trial.

DATED: July 29, 2021

MCCARTER & ENGLISH, LLP

*/s/ Daniel M. Silver*

Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
405 N. King St., 8th Floor
Wilmington, DE 19801
(302) 984-6331
dsilver@mccarter.com
ajoyce@mccarter.com

John W. Shaw (#3362)
Jeff Castellano (#4837)
Nathan R. Hoeschen (#6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0701
jshaw@shawkeller.com
jcastellano@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Leigh J. Martinson
Keith Toms
Jill Mello, Ph.D.
Wyley S. Proctor
James J. Thomson
Quincy L. Kayton
MCCARTER & ENGLISH, LLP
265 Franklin Street
Boston, MA 02110
(617) 449-6500
lmartinson@mccarter.com
ktoms@mccarter.com
jmello@mccarter.com
wproctor@mccarter.com
jthomson@mccarter.com
qkayton@mccarter.com

Michael A. Albert
Eric J. Rutt
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210-2206
617.646.8240
malbert@wolfgreenfield.com
erutt@wolfgreenfield.com

*Attorneys for Plaintiffs*

Edward R. Reines
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000
edward.reines@weil.com

*Attorney for Plaintiff ArcherDX, LLC*

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARCHERDX, LLC and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL, | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 18-1019-MN |
| QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC., QIAGEN GAITHERSBURG, LLC f/k/a QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V., and JONATHAN ARNOLD, | ) | |
| Defendants. | ) | |

**REBUTTAL EXPERT REPORT OF NIALL LENNON, PhD**

and the APAgene Manual would or would not anneal to the same sequence on another polynucleotide.

329. Given the low-temperature PCR conditions of Qiagen's prior art references, the significant degree of similarity of the degenerate primers disclosed in the prior art references, the broad sweep of the negative limitation in step b of '597 claim 1, and Dr. Metzker's failure to even attempt to estimate whether any of the degenerate primers would anneal to the same sequence of target DNA, Dr. Metzker fails to establish by clear and convincing evidence that any of the degenerate primers in Fraiture, McCarty, Morley, Martin-Harris and the APAgene Manual ***do not anneal*** to the same sequence. Further supporting this conclusion is the analysis in the Expert Report of Dr. James McSwiggen affirmatively demonstrating that each of the prior art degenerate primers fails to disclose step (b) of '597 claim 1. Accordingly, Fraiture, McCarty, Morley, Martin-Harris and the APAgene Manual, alone or in combination, fail to anticipate or render obvious the '597 claims.

**2. Fraiture**

330. Dr. Metzker contends that '597 claims 1, 3, 4, 5, 10, 11, 13-27 and 29 are anticipated or rendered obvious by Fraiture in combination with the APAgene Manual and several additional references. Paragraphs 304-376.

**a. Claim 1[b]: A Plurality of Different Primers that Share a Common Sequence that Is 5′ to Different Hybridization Sequences**

331. Step (b) of claim 1 requires "contacting a second nucleic acid template comprising a sequence of a second strand that is complementary to the sequence of the first strand of the double-stranded target nucleic acid with a plurality of different primers that share a common sequence that is 5′ to different hybridization sequences, under conditions to promote

template-specific hybridization and extension of at least one of the plurality of different primers."

332. Dr. Metzker contends that the DRT primers in Fraiture constitute the plurality of different primers. Paragraph 307 [mis-numbered as 103]. Fraiture does not disclose the DRT primer sequences, and therefore fails to disclose that the DRT primers share a common sequence that is 5′ to different hybridization sequences, as the '597 claims require.

333. Dr. Metzker contends that the APAgene Manual discloses the sequences of the DRT primers described in Fraiture but offers no evidence that the DRT primer sequences disclosed in the APAgene Manual were the same sequences in the kit described in Fraiture. There are differences between the APAgene Manual and the APAgene kit described in Fraiture. For example, the APAgene Manual bears the title "APAgene™ Gold-RT Genome Walking Kits" with "Cat. # BT901-RT" whereas the kit described in Fraiture does not include "RT" in the title and a catalog number is not provided. Dr. Metzker fails to cite any evidence that the APAgene™ Gold-RT Genome Walking Kits described in the APAgene Manual were available at the time Fraiture et al performed their research (which information is not disclosed in Fraiture). Dr. Metzker provides no evidence regarding the provenance of the APAgene Manual, provides no explanation of the Japanese characters on the title page, and provides no evidence that the APAgene Manual was obtained from the same company (BIO S&T) that Fraiture identfies in connection with the product.

334. There are differences between the primer sequences in the APAgene Manual and the sequences and schematic disclosed in Fraiture. Dr. Metzker uses yellow highlighting to identify the 3′ sequence in UAP-N1 that he contends anneals to the sequence highlighted yellow on the 5′ end of the DRT primers of APAgene Manual.

# EXHIBIT 2

Bio S&T Inc., 5020 Fairway Street, Suite 220, Montreal (Quebec) H8T 1B8, Canada

Tel.: +1 514 633-6006 ·FAX: +1 514 633-6011 ·Email: info@biost.com ·Web: http://www.biost.com/

コスモ・バイオ株式会社

# APAgene™ GOLD-RT Genome Walking Kits

**Cat. #** BT901-RT

**Quantity** 10 walks

**Description**

The APAgene™ GOLD Genome Walking Kit can enable rapid isolation of unknown sequences which flank known gene sequences. Examples include:

- Genomic sequences flanking transgenes (including T-DNAs, gene traps, transposons), sequence-tagged sites (STSs) or expressed sequence tags (ESTs);
- Insert ends of large clones such as P1, YAC and BAC DNAs;
- 5' promoter control regions and 3' transcriptional terminators of cDNAs;
- cDNA walking, 5' and 3' RACE from first-strand cDNAs;
- Other localized sequences flanking known sequences from large clones and genomic DNAs.

PCR products can directly be used for sequencing, cloning or as probes.

**Storage**

**References**

A naturally occurring epigenetic mutation in a gene encoding an SBP-box transcription factor inhibits tomato fruit ripening, Kenneth Manning et al., Nature Genetics, Volume: 38, Issue: 8, Date: 2006 07 28, Pages: 948-522

A Na+:H+ Antiporter and a Molybdate Transporter Are Essential for Arsenite Oxidation in Agrobacterium tumefaciens, Journal of Bacteriology, February 2006, p. 1577-1584, Vol. 188, No. 4, Des R. Kashyap et al.

Y chromosome microsatellite isolation from BAC clones in the greater white-toothed shrew (Crocidura russula), Lawson Handley, L.J., Perrin, N., 2006, Molecular Ecology Notes 60, 276-279.

Complex Regulation of Arsenite Oxidation in Agrobacterium tumefaciens, Journal of Bacteriology, February 2006, p. 1081-1088, Vol. 188, No. 3, Des R. Kashyap et al.

Identification and regulatory analysis of rainbow trout tapasin and tapasin-related genes, Immunogenetics 2006 Feb; 58(1) :56-69. Landis ED, Palti Y, Dekoning J, et al.

Detection and Characterization of Amplified Fragment Length Polymorphism Markers for Clinical Mastitis in Canadian Holsteins, J Dairy Sci. 2006 Sep;89 (9):3653-63., B. S. Sharma et al.

Homologs of CD83 from Elasmobranch and Teleost Fish, Yuko Ohta et al., The Journal of Immunology, 2004, 173: 4553-4560.

BIO S&T

# APAgene™ GOLD Genome Walking Kit (RT)

# #BT901-RT (10 walks)

*Order and technical support: Tel.: 1-888-368-8368, 1-514-633-6006 Fax: 1-514-633-6011*
*Email: info@biost.com*

*Bio S&T Inc., 5020 Fairway street, suite 220, Montreal, QC, Canada H8T 1B8*

## Table of contents

1.0 Introduction ____ 2

1.1 Amplification process ____ 2

1.2 Kit components ____ 3

2.0 Genomic Walking Protocol ____ 4

2.1 Prior to beginning ____ 4

2.1.1 Preparing template DNA ____ 4

2.1.2. Designing gene-specific primers ____ 4

2.2 Primary PCR ____ 5

2.2.1 Verifying the specificity of Gene specific Primer ____ 5

2.2.2 Step 1 of Primary PCR ____ 7

2.2.3 Step 2 of Primary PCR ____ 7

2.3 The first Nested PCR ____ 8

2.4 The second Nested PCR ____ 9

3.0 Troubleshooting Guide ____ 11

4.0 Examples for GSP design and walking results ____ 12

4.1 Examples of sequences and GSP primers ____ 12

4.1.1 Sequence for human genome walking and GSP primers ____ 12

4.1.2. Sequence for mouse genome walking and GSP primers ____ 12

4.2 Walking results ____ 12

## 1.0 Introduction

The APAgene™ GOLD Genome Walking Kit can enable rapid isolation of unknown sequences which flank known gene sequences. Examples include:

- Genomic sequences flanking transgenes (including T-DNAs, gene traps, transposons), sequence-tagged sites (STSs) or expressed sequence tags (ESTs);
- Insert ends of large clones such as P1, YAC and BAC DNAs;
- 5' promoter control regions and 3' transcriptional terminators of cDNAs;
- cDNA walking, 5' and 3' RACE from first-strand cDNAs;
- Other localized sequences flanking known sequences from large clones and genomic DNAs.

PCR products can directly be used for sequencing, cloning or as probes.

### 1.1 Amplification process

Our patented technology relies on a combination of our degenerate random tagging primers (DRT) and customer-provided gene-specific primers (GSP). Typically, three nested gene specific primers (GSPa, GSPb, and GSPc) are required in the reaction for the amplification of flanking sequences. DRT primers are universal binding primers consisting of 3 parts: 1) a *degenerate sequence, 2) a random sequence, and 3) a tagging sequence.* All the DRT primers share the same tagging sequence, but have different random sequences.

Three reactions are designed to amplify targeted sequences: a primary PCR, followed by two nested PCR.

1. The primary PCR is a 2-Step PCR that takes place in one tube. In Step 1, single strand DNA (ssDNA) fragments are produced by single primer extension reaction using a customized gene specific primer (GSPa). The reaction is repeated four times in four individual tubes. Step 2 immediately follows in which four different DRT primers, along with a 5X DRT binding mixture, are added individually to the four reaction tubes.

2. During the first nested PCR, a nested gene specific primer (GSPb) in combination with a long universal tagging primer (UAP-N1) are used for the four nested PCRs. UAP-N1 is a hairpin-containing primer, making non-specific amplification much less efficient compared to targeted sequences.

3. The second nested PCR use a nested gene specific primer (GSPc) in combination with a short universal tagging primer (UAP-N2) to increase yield of the specific product for subsequent sequencing or cloning.

The success of the walking reaction relies on the successful binding of the DRT primers to the flanking sequence during the primary PCR. Our patented DRT primers, along with our optimized cycling conditions and PCR buffer, greatly enhance the amplification process.

## 1.2 Kit components

**Important (work on ice):** Immediately upon receiving the kit add TE buffer (10mM Tris-HCl + 1mM EDTA pH8.0) to all the tubes (as indicated in Table A) to dissolve the reagents. Kit can then be stored at -20°C.

**Table A: APAgene™ GOLD Genome Walking Kit components:**

| Components | TE buffer volume to be added: |
|---|---|
| **APAgene™ 2X Premix** | 2 x 500µl |
| **5X DRT binding mixture** | 200ul |
| **DRT Primer A** | 10.0ul |
| **DRT Primer B** | 10.0ul |
| **DRT Primer C** | 10.0ul |
| **DRT Primer D** | 10.0ul |
| UAP-N1 (20pmol/µl) | 16.0ul |
| UAP-N2 (20pmol/µl) | 16.0ul |

APAgene™ 2X Premix contains a PCR buffer, dNTPs and the PCR annealing enhancer (to increase PCR specificity). The 5X DRT binding mixture contains a PCR buffer and the DRT binding enhancer. With the exception of the TE buffer, all the other reagents are in dried-pellet form. An inert red dye has been added to help visualize the pellet (will not have impact on PCR reactions).

Additional components that are required, but not included, are:

- Customer-designed gene-specific primers (GSPa, GSPb, GSPc)
- Template DNA
- Taq DNA polymerase
- Sterilized, Deionized $H_2O$
- 1kb DNA ladder marker

**Important:** APAgene™ GOLD Genome Walking Kit requires the use of high quality Taq DNA polymerases (NOT INCLUDED). Recommended Taq DNA polymerases are:

- Qiagen (Cat# 201203)
- Invitrogen (Cat# 10342)
- Clontech (Cat# 639108)

The sequences of the DRT primers are as follows. Please note that the letter X symbolizes degenerate and/or cleavable nucleotides.

| DRT Primer | Sequences |
|---|---|
| **DRT Primer A:** | 5'-GAACACGCGTCGTTTACCTCCXXXXGXXXXXTAGT-3' |
| **DRT Primer B:** | 5'-GAACACGCGTCGTTTACCTCCXXXXXXXTAGT-3' |
| **DRT Primer C:** | 5'-GAACACGCGTCGTTTACCTCCXXXXXXXTCAT-3' |
| **DRT Primer D:** | 5'-GAACACGCGTCGTTTACCTCCXXXXXGXXXXXCCTG-3' |
| **UAP-N1:** | 5'- AGT CGG GAA GCA GTG GTA TCA ACG CAG AGT GGC CAT TAC GGC C GAA CAC GCG TCG TTT ACC T -3' |
| **UAP-N2:** | 5'- C CUG GAA GCA GTG GTA TCA ACG-3' |

# 2.0 Genomic Walking Protocol

## 2.1 Prior to beginning

**Important:** Thaw all reagents on ice. Should precipitation be observed in the APAgene™ 2X Premix tube, please place tube at room temperature until fully dissolved. All PCR preparations must be done on ice before loading in a pre-warmed PCR machine. Always pre-warm the PCR machine to 95°C before loading the samples in order to reduce non-specific amplification.

### *2.1.1 Preparing template DNA*

DNA template (i.e. genomic DNA, BAC DNA or cDNA) should be highly pure, intact and free from contamination. Avoid a high content of salt, phenol or other DNAs. Please note that the amplification process is extremely sensitive to DNA impurities.

### *2.1.2. Designing gene-specific primers*

Before performing the PCR, you must design gene-specific primers. The accuracy and quality of the gene specific primers are of great importance as they will influence the success of the walking reaction. The gene specific primers anneal to the known sequences, such as transgenes, STSs, ESTs, cDNAs and cloning vector.

Design GSPa to anneal about 150 bp from the end of the known sequence, GSPb can be designed to anneal immediately adjacent to GSPa. It's recommended that GSPc anneal about 70 bp from the end if product is to be used for direct sequencing as this will help verify the junction between the known and the resulted flanking sequences.

The following criteria should be considered for GSP design:

1. Verify the ends of the known sequence. This will determine which part of the known sequences will be used for GSP design.

    - Perform PCR to verify that the template DNA contains the ends of the known sequences (usually 150-200bp long). Occasionally, the transgene insertion may be truncated and will not contain the end sequences. Design primers and perform PCR to amplify the expected amplicons corresponding to the end sequences. If the template DNA does not contain the sequences for GSP design, redesign the primers further away from the end and amplify again.

    - If cDNA is the starting material, but genomic DNA or BAC DNA is used as a template, intron(s) may affect the amplification. GSPs used for walking should not overlap an exon/intron junction.

    - If the known sequence (cDNA or genomic DNA sequence) is obtained from one individual, but DNA extracted from another individual is used as template DNA in PCR walking, you should amplify the known sequences using the second DNA as a template and perform a double-strand sequencing of the amplified products. If there are base differences

between the first and the second sequence, use the second for designing GSPs.

2. Select appropriate direction (5′ or 3′).

- To locate transgenes, select the transgene border flanked by genomic DNA to design GSPs. This is very important to determine the genomic sequences flanking inverted repeats of transgenic insertions. If you can't determine which border you have to select, two sets of GSPs should be designed according to both end sequences and used in two separate reactions.

3. Some import criteria for GPS design.

- Primer sequences should have the following features: 23-28 bases long; 40-60% GC content; Tm of 66-75°C for GSPa and 60-70°C for GSPb and GSPc. Please see appendix for examples.
- Avoid primers with repeated sequences in the template.
- Avoid ambiguous bases in the primer sequence.
- Avoid internal secondary structures such as hairpins.
- Avoid strings of more than 3 identical bases at the 3′ end and more than 7 in the middle of your primer sequence.

## 2.2 Primary PCR

### *2.2.1 Verifying the specificity of GSPa*

Because APAgene™ GOLD Genome Walking Kit relies on the specific amplification of ssDNA with GSPa, verification of the specificity of GSPa is strongly recommended prior to the addition of the DRT primers.

Prepare one 15µl-reaction on ice according to Table 1. Mix gently and briefly spin down in a microcentrifuge. Place in thermocycler (pre-warmed to 95°C) and run Program 1 (Table 2).

**Table 1: Verifying the specificity of GSPa**

| Components | Volume (µl) |
|---|---|
| $H_2O$ | To 15µl |
| GSPa (20pmol/µl) | 0.7 |
| DNA template* | 2.0 |
| Taq DNA polymerase (5u/µl) | 0.2 (not provided) |
| APAgene™ 2X Premix | 7.5 |
| *Total* | ***15*** |

** Final concentration of the DNA template per 15 µl should be: 100ng to 1µg.*

**Table 2: Program 1**

| Step | Number of cycles | Temperature | Hold Time |
|---|---|---|---|
| **1** | 1 | 94°C | 4 minutes |
| **2** | 25 | 94°C<br>65°C<br>67°C | 30 seconds<br>30 seconds<br>4 minutes |
| **3** | 1 | 68°C | 10 minutes |
| **4** | 1 | 4°C | Hold/End |

Run a 10µl PCR mixture on an agarose gel. Check for non-specific amplification derived by GSPa. If one or more distinct bands appear, re-design primer because GSPa has produced a non-specific amplification.

If there are no distinct bands, proceed to the following step.

*2.2.2 Step 1 of Primary PCR:*

This step will amplify single-stranded targeted DNA fragments by linear amplification using GSPa.

Set up four (4) reactions in four (4) individual tubes on ice according to Table 3. Label tubes A1-D1. Mix gently and briefly spin down in a microcentrifuge. Place in thermocycler (pre-warmed to 95°C) and run Program 1 (Table 2). Once PCR is completed, place the tubes on ice and immediately proceed with Step 2 of the Primary PCR.

**Important**: Do not stop at this step, since single-strand DNA is not stable.

**Table 3: Step 1 of Primary PCR**

| Components | Volume (µl) |
|---|---|
| $H_2O$ | To 15µl |
| GSPa (20pmol/µl) | 0.7 |
| DNA template | 1.0-2.0 |
| Taq DNA polymerase (5u/µl) | 0.2 (not provided) |
| APAgene™ 2X Premix | 7.5 |
| *Total* | ***15*** |

*2.2.3 Step 2 of Primary PCR*

This step will anneal the DRT primers to the amplified ssDNA fragments, and then amplify dsDNA.

While working on ice, open the caps of tube A1-D1 carefully. Then, add 4.0µl of DRT binding mixture, 1.0µl of one of the four DRT primers, as well as 1 unit of Taq DNA polymerase to each of the four tubes as indicated in Table 4. Mix gently and briefly spin down in a microcentrifuge. Place in a thermocycler (pre-warmed to 95°C) and run Program 2 (Table 5).

**Table 4: Step 2 of Primary PCR**

| Tube | Add: |
|---|---|
| A1 | 4.0µl of DRT binding mixture + 0.8µl of DRT primer A +0.2µl of Taq DNA polymerase (5u/µl) |
| B1 | 4.0µl of DRT binding mixture + 0.8µl of DRT primer B + 0.2µl of Taq DNA polymerase (5u/µl) |
| C1 | 4.0µl of DRT binding mixture + 0.8µl of DRT primer C + 0.2µl of Taq DNA polymerase (5u/µl) |
| D1 | 4.0µl of DRT binding mixture + 0.8µl of DRT primer D + 0.2µl of Taq DNA polymerase (5u/µl) |

**Table 5: Program 2**

| Step | Number of cycles | Temperature | Hold Time |
|---|---|---|---|
| **1** | 1 | 94°C | 4 minutes |
| **2** | 10 | 42°C<br>67°C | 60 seconds<br>60 seconds |
| **3** | 1 | 67°C | 5 minutes |
| **4** | 7 | 94°C<br>65°C<br>67°C<br>94°C<br>65°C<br>67°C<br>94°C<br>45°C<br>67°C | 30 seconds<br>30 seconds<br>3 minutes<br>30 seconds<br>30 seconds<br>3 minutes<br>30 seconds<br>60 seconds<br>3 minutes |
| **5** | 1 | 68°C | 15 minutes |
| **6** | 1 | 4°C | Hold/End |

## 2.3 First nested PCR

Make a 50x Dilution of the PCR mixture from the primary PCR (Step 2.2.3) using $ddH_2O$. Store undiluted products at -20°C.

Label four tubes A2-D2. As described in Table 6, set up four 15µl-reactions on ice using four diluted PCR products as templates, respectively. Mix gently and briefly spin down in a microcentrifuge. Place in a thermocycler (pre-warmed to 95°C) and run Program 3 (Table 7).

**Table 6: First nested PCR**

| Components | Volume (µl) |
|---|---|
| $H_2O$ | To 15µl |
| GSPb (20pmol/µl) | 0.4 |
| UAP-N1 | 0.3 |
| 50x diluted DNA template | 0.5 |
| APAgene™ 2x Premix | 7.5 |
| Taq DNA polymerase (5u/µl) | 0.2 (not provided) |
| *Total* | ***15*** |

**Table 7: Program 3**

| Step | Number of cycles | Temperature | Hold Time |
|---|---|---|---|
| **1** | 1 | 94°C | 4 minutes |
| **2** | 35 | 94°C<br>62°C<br>67°C | 30 seconds<br>30 seconds<br>3 minutes |
| **3** | 1 | 68°C | 10 minutes |
| **4** | 1 | 4°C | Hold/End |

### 2.4 Second nested PCR

Make a 50x dilution of the PCR mixture from the first nested PCR (Step 2.3) using dd$H_2O$. Store undiluted products at -20°C.

Label tubes A3-D3. As described in Table 8, set up four 15µl-reactions using four diluted PCR products as templates, respectively. Mix gently and briefly spin down in a microcentrifuge. Place in a thermocycler (pre-warmed to 95°C) and run Program 4 (Table 9).

**Table 8: Second nested PCR**

| Components | Volume (µl) |
|---|---|
| $H_2O$ | To 15µl |
| GSPc (20pmol/µl) | 0.4 |
| UAP-N2 | 0.3 |
| 50x diluted DNA template | 0.5 |
| APAgene 2x Premix | 7.5 |
| Taq DNA polymerase (5u/µl) | 0.2 (not provided) |
| *Total* | ***15*** |

**Table 9: Program 4**

| Step | Number of cycles | Temperature | Hold Time |
|---|---|---|---|
| **1** | 1 | 94°C | 4 minutes |
| **2** | 29-32* | 94°C<br>60°C<br>67°C | 30 seconds<br>30 seconds<br>3 minutes |
| **3** | 1 | 68°C | 10 minutes |
| **4** | 1 | 4°C | Hold/End |

**If signal is weak, cycle number may be increased up to a maximum of 32 cycles.*



QIA-00689112

At the end of the third PCR, analyze the PCR results by electrophoresis on a 1% agarose gel in 1x TAE buffer. In most cases, you will observe one or more ranging from 300-4,000bp (Please see appendix for examples). Excise the specific band and purify it using your method of choice. Purified products can then be cloned or directly sequenced using GSPc.

## 3.0 Troubleshooting Guide

If you cannot obtain a clear sequence by directly sequencing the PCR products, it is strongly recommended that the products be cloned prior to sequencing. Because of directional ligation, only specific sequences can be selectively cloned when using this kit. Furthermore, by using sticky-end ligation, it offers much higher cloning efficiency than blunt-end or TA-cloning.

In some cases, the third PCR produces multiple bands. There may be several explanations:

i. There are multiple copies of the starting gene with different flanking sequences, such as contaminated DNA or transgenic DNA with multiple transgene copies in different genomic DNA loci. These fragments are amplified because DRT primers will bind to the different flanking sequences. In this case, noisy signals are observed when directly sequencing without cloning. All these fragments should be cloned and sequenced separately to identify the desired sequence.

ii. If you are certain that there is only one copy of the starting gene, then multiple bands may result from multiple binding of the DRT primer to the same target area. These fragments are of same origin but varying in size. Clear sequences can be obtained by directly sequencing in most cases. However, cloning is required for difficult templates.

iii. The GSPs have binded non-specifically and some fragments are non-specific. In this case, weak or noisy signals are observed when directly sequencing without prior cloning. Re-design your GSPs and re-start the reaction from the primary PCR.

# 4.0 Examples for GSP design and walking results

## 4.1 Examples of sequences and GSP primers

*4.1.1 Sequence for human genome walking and GSP* primers

5'AGAAACCCGACCTACCACGGCTTGCTCCTTCCCTTT**CCTCGCAGAGGTTTTCTCTCCAG C***CCTGGACTCCTGTAGGATCTCA*GCTC3'>>>walking direction

1. GSPa: 5'-AAC CCG ACC TAC CAC GGC TTG CTC CTT-3'
2. GSPb: 5' **CCT CGC AGA GGT TTT CTC TCC AGC**-3'
3. GSPc: 5'-*GCC CTG GAC TCC TGT AGG ATC TCA*-3'

*4.1.2 Sequence for mouse genome walking and GSP primers*

5'AACGTCTGTGTCCGTGTGCATGTTGCATGTATGACAGAAAGGATAAAGCTACCACGGTAG ACATATTCTCAGGGCTGCTGG*AGAA*GAGAATGAAAAAGAGG*TTGTGGAACTGAGGCCACAT TCT*TT3'>>>walking direction

1. GSPa: 5'-TGC ATG TTG CAT GTA TGA CAG AAA GG-3'
2. GSPb: 5'-GGT AGA CAT ATT CTC AGG GCT GCT GG-3'
3. GSpc: 5'-TTG TGG AAC TTG AGG CCA CAT TCT–3'

## 4.2 Walking results

Using 100ng of genomic DNA as starting material in a linear amplification, Figure 1 shows the results of 2nd nested PCR. All fragments labeled with an arrow were confirmed to be specific by sequencing.




*Figure 1: Gel results for two genome walkings (human and mouse) using four DRT walking primers: Lane 1: DRT B (Mouse), Lane 2: DRT B (Human), Lane 3: DRT D (Mouse), Lane 4: DRT D (Human), Lane 5: DRT A (Mouse), Lane 6: DRT A (Human), Lane 7: DRT C (Mouse), Lane 8: DRT C (Human). Arrowed fragments were cloned and sequenced.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ARCHERDX, LLC f/k/a ARCHERDX, INC. and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL, | ) | |
| *Plaintiffs*, | ) | C.A. No. 18-1019-MN |
| v. | ) | |
| QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC., QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V. and JONATHAN ARNOLD, | ) | |
| *Defendants*. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 1 TO PRECLUDE QIAGEN FROM OFFERING CERTAIN TESTIMONY AND/OR EVIDENCE THROUGH ITS EXPERTS**

Plaintiffs Motion *in Limine* No. 1 ("MIL 1") seeks to prevent QIAGEN from offering evidence of what it means for the second adaptor primer to be located 3′ downstream of the first adaptor primer. QIAGEN refers to the specification for a detailed explanation in the context of the second adaptor primer, the very term at issue. Next, Plaintiffs seek to exclude evidence regarding the function of the second target-specific primer. Last, Plaintiffs attempt to exclude reference to a manual that is discussed in a prior art reference.

**A. The Function of The Second Target Specific Primer**

Plaintiffs DOE theory uses an improper function for the allegedly equivalent element. While the "second target-specific primer" does not require it be nested for literal infringement, that does not mean Plaintiffs can rewrite the function of the second target specific primer to ignore that it reduces unwanted product using a nested primer. *See, e.g.*, '810 patent col. 16:39-41. This is a proper use of the specification to determine an element's function. *See, e.g.*, *Genentech, Inc. v. Wellcome Found. Ltd.*, 29 F.3d 1555, 1567-68 (Fed. Cir. 1994) (reversing finding of infringement under the DOE and noting that "[t]he issue of whether the 'way' or 'result' prongs are met is highly dependent upon how broadly one defines the 'function' . . . . The operative definition for purposes of equivalency analysis is the intended function ***as seen in the context of the patent***," including the specification) (emphasis added).

Plaintiffs' DOE theory is that the "second target-specific primer" can anneal to ***any*** known sequence, whether or not that sequence is part of "the known target nucleotide sequence." Using this faulty analysis, Plaintiffs then claim that the function of the second target-specific primer is not to exclude unwanted products. Rather, Plaintiffs put the function of limiting amplification to wanted targets on the universal second adaptor primer and the second target specific primer is only used to amplify products generally. *See* D.I. 332, Ex. 7 ¶¶ 242-43.

But those are not the relevant functions the patent describes for the second target-specific primer, which is reducing undesirable amplification products in the second round of amplification by using a second target-specific primer that is nested with respect to the first target-specific primer. *See, e.g.*, '810 patent col. 16:39-41 ("The second target specific primer is nested with respect to the first target specific primer."). Plaintiffs' expert has admitted there is not even a single embodiment where the second target specific primer is not nested. *See, e.g.*, D.I. 332-2, Ex. 8 at 229:4-12.

QIAGEN is offering evidence of the function of an element that Plaintiffs have rewritten in an attempt to ensnare a vastly different product through the doctrine of equivalents. The evidence is relevant to the asserted function and DOE.

### B. QIAGEN Did Not Waive Any Theory During the *Markman* Proceedings

QIAGEN proposed a construction of "nested" during the *Markman* proceedings that was taken directly from the specification. QIAGEN's opening brief noted that the construction of "nested" was one of the two ***consistent*** definitions of that term contained in the specification. *See* D.I. 123 at 49. QIAGEN ultimately offered the shorter definition, but this does not mean QIAGEN is precluded from using other parts of the specification to explain that definition. Plaintiffs do not dispute that QIAGEN's explanation of what it means to be 3′ downstream and in the same direction is what is described in the portions it now seeks to exclude.[1]

Plaintiffs claim this explanation is just an embodiment. QIAGEN always said there were two consistent recitations of what nested meant. D.I. 123 at 49. What QIAGEN is doing by referring to the second definition is explaining that Plaintiffs understanding of what 3′ downstream means is not correct. This explanation should not be excluded.

### C. The APAgene Manual Is Available as a Printed Publication

[1] The second nested primer cannot have all the same nucleotides as the first primer. *See, e.g.*, D.I. 332-1, Ex. 4 at 23:15-17, 38:3-4, 45:21-23; D.I. 330 at 6-9.

Plaintiffs seek to exclude Dr. Metzker's reference to the APAgene Manual, which he used to support his reading of the Fratiure reference. Dr. Metzker used the APAgene Manual to show that the Fraiture reference, which cited the manual, taught the use of degenerate random tagging. Plaintiffs claim the manual should be precluded because there is no showing what date it was publicly available. Plaintiffs ignore the ample, reliable evidence that it was available before the '597 priority date. *See* Fed. R. Evid. 807. The title of the APAgene Manual matches exactly what Fraiture references and lists the same manufacturer. *Compare* MIL, Ex. 2 at QIA-00689102, 04 ("APAgene™ Gold Genome Walking Kits" manufactured by Bio S&T of Montreal, Canada inscribed with the date "September 2010") *with* Ex. A at 65 (Fraiture) ("APAgene™ Gold Genome Walking Kits (BIO S&T, Montreal, Canada)"). Consistent with this ample evidence that the APAgene Manual was available as prior art before the '597 priority date, a copy of the APAgene Manual archived on June 14, 2012 is available at https://webcache.googleusercontent.com/search?q=cache:b1YnUvs1-mUJ:https://search.cosmobio.co.jp/cosmo_search_p/search_gate2/docs/BAT_/BT901RT.20120614.pdf+&cd=1&hl=en&ct=clnk&gl=us.

This evidence of availability is sufficient. *See In re Enhanced Sec. Rsch., LLC*, 739 F.3d 1347, 1354 (Fed. Cir. 2014) (rejecting challenge to prior art status of a user manual because, *inter alia*, it bore an inscription date); *Lucent Techs., Inc. v. Gateway, Inc.*, C.A. No. CIV 02CV2060-B CAB, 2007 WL 1877983, at *3 (S.D. Cal. June 27, 2007) (holding that citation in another publication shows that the document was available as prior art). By contrast, in *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 865 (Fed. Cir. 2010), there was ***no evidence*** that the two publications were ever disseminated to the public.

By: */s/ Stephanie E. O'Byrne*

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendants QIAGEN Sciences, LLC, QIAGEN LLC f/k/a QIAGEN, Inc., QIAGEN Beverly LLC, f/k/a QIAGEN Beverly, Inc., QIAGEN Gaithersburg LLC, f/k/a QIAGEN Gaithersburg, Inc., QIAGEN GmbH, QIAGEN N.V., and Jonathan Arnold*

OF COUNSEL:

David Bilsker
Andrew E. Naravage
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111-4788
(415) 875-6600

Anne S. Toker
James E. Baker
Anastasia M. Fernands
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

Dated: August 3, 2021

# Exhibit A

Food Chemistry 147 (2014) 60–69

Contents lists available at ScienceDirect

Food Chemistry

journal homepage: www.elsevier.com/locate/foodchem

# An innovative and integrated approach based on DNA walking to identify unauthorised GMOs ☆

Marie-Alice Fraiture [a,b,c,d], Philippe Herman [b], Isabel Taverniers [c], Marc De Loose [c], Dieter Deforce [d], Nancy H. Roosens [a,*]

[a] Scientific Institute of Public Health (WIV-ISP), Platform of Biotechnology and Molecular Biology (PBB), J. Wytsmanstraat 14, 1050 Brussels, Belgium
[b] Scientific Institute of Public Health (WIV-ISP), Biosafety and Biotechnology Unit (SBB), J. Wytsmanstraat 14, 1050 Brussels, Belgium
[c] Institute for Agricultural and Fisheries Research (ILVO), Technology and Food Sciences Unit, Burg. Van Gansberghelaan 115, bus 1, 9820 Merelbeke, Belgium
[d] University of Gent (UGent), Faculty of Pharmaceutical Sciences, Laboratory of Pharmaceutical Biotechnology, Harelbekestraat 72, 9000 Ghent, Belgium

ARTICLE INFO

*Article history:*
Received 11 April 2013
Received in revised form 12 July 2013
Accepted 19 September 2013
Available online 29 September 2013

*Keywords:*
Unauthorised GMO
GM Rice
pCAMBIA vector
DNA walking
Transgene flanking region
GMO detection
Quantitative real-time PCR
Integrated approach

ABSTRACT

In the coming years, the frequency of unauthorised genetically modified organisms (GMOs) being present in the European food and feed chain will increase significantly. Therefore, we have developed a strategy to identify unauthorised GMOs containing a pCAMBIA family vector, frequently present in transgenic plants. This integrated approach is performed in two successive steps on Bt rice grains. First, the potential presence of unauthorised GMOs is assessed by the qPCR SYBR®Green technology targeting the terminator 35S pCAMBIA element. Second, its presence is confirmed via the characterisation of the junction between the transgenic cassette and the rice genome. To this end, a DNA walking strategy is applied using a first reverse primer followed by two semi-nested PCR rounds using primers that are each time nested to the previous reverse primer. This approach allows to rapidly identify the transgene flanking region and can easily be implemented by the enforcement laboratories.

© 2013 The Authors. Published by Elsevier Ltd. All rights reserved.

## 1. Introduction

Rice (*Oryza sativa*), one of the most important crops in the world, is a staple food for more than three billion people. In addition, this cereal grain is also used in animal feed. The majority of rice is grown and consumed in Asia, particularly in China (Chen, Shelton, & Ye, 2011; Datta, 2004; James, 2009; Kathuria, Giri, Tyagi, & Tyagi, 2007). On the European (EU) market, most of the rice is currently imported from Asia (Stein & Rodriguez-Cerezo, 2009). In order to provide food to the growing worldwide population (approximately eight billion in 2020), rice production should increase significantly (25–40%). To this end, genetically modified (GM) rices are developed to ensure sufficient rice production in spite of the lack of arable land. According to the scientific literature on GM rice, the research in laboratories mainly target improving biotic (insect, virus, fungi, bacteria) and abiotic (drought, salinity, cold) tolerances (Ahmad et al., 2012; Chen et al., 2011;Datta, 2004; High, Cohen, Shu, & Altosaar, 2004; Kathuria et al., 2007; Yu, Wang, & Wang, 2012). The development of GM rice is highly supported by the Chinese government (Chen et al., 2011; Xia et al., 2011). Since 2009, two insect resistant GM rices (Huahui-1 and Bt Shanyou 63) are cultivated on a large scale for commercialisation in China. In addition, other insect resistant (Tarom molaii) and herbicide tolerant (CL121, CL141, CFX51, IMINTA-1, IMINTA-4, PWC16, LLRICE62, LLRICE06 and LLRICE601) GM rices are nowadays commercialised worldwide (Biosafety scanner; CERA; Chen et al., 2011; Tan, Zhan, & Chen, 2011; Wang, Zhu, Lai, & Fu, 2012; Xia et al., 2011). On the EU market, the introduction and the control of genetically modified organisms (GMOs) in the food and feed chain are submitted to the EU legislation in order to guarantee the freedom of choice to the consumer (Reg. EC no. 1829/2003; Reg. EC no. 1830/2003). However, the continuous enforcement of this legislation is complex for several reasons. First of all, the number (around 30 to 120 GMOs) and the diversity (2 to 15 genes) of commercialised GMOs will increase significantly in the 5 coming years (Stein & Rodriguez-Cerezo, 2009). Moreover, numerous vectors will be used, such as the pBin19, pBI121, pPZP and pCAMBIA families (Komori et al., 2007). Second, in addition to genes conferring insect resistance or herbicide tolerance, a larger range of traits will

☆ This is an open-access article distributed under the terms of the Creative Commons Attribution-NonCommercial-No Derivative Works License, which permits non-commercial use, distribution, and reproduction in any medium, provided the original author and source are credited.

* Corresponding author. Tel.: +32 (0) 2 642 52 58; fax: +32 (0) 642 52 93.
*E-mail address:* nancy.roosens@wiv-isp.be (N.H. Roosens).

0308-8146/$ - see front matter © 2013 The Authors. Published by Elsevier Ltd. All rights reserved.
http://dx.doi.org/10.1016/j.foodchem.2013.09.112

Case 1:18-cv-01019-MN Document 476 Filed 09/09/21 Page 415 of 550 PageID #: 20791



be developed (e.g., abiotic stress tolerance, disease resistance and nutritional allegations). Third, the present commercialised GM crops are principally developed by American and EU companies which have a major interest in being authorised to commercialise their products on the EU market. Nevertheless, in 2015, more and more GMOs intended for local consumption will be developed by Asian technological centres. These GM crops are unlikely to be submitted for EU approval. Thus, it is very likely that the frequency of unauthorised GMOs on the EU market will significantly increase by their accidental (or adventitious) presence in raw materials and processed food or feed (Stein & Rodriguez-Cerezo, 2009). In addition, the possible escape of GMOs from field-trials or during development stages could also be another source of unauthorised GMOs (Holst-Jensen et al., 2012; Zapiola, Campbell, Butler, & Mallory-Smith, 2008). Indeed, although the presence of GM rice is to date not authorised on the EU market, the herbicide tolerant LLRice601, in 2004, and the insect resistant Bt Shanyou 63, in 2006, and KeFeng-6, in 2010, have been detected in food products imported from China (Commission Implementing Decision No 2011/884/EU; Stein & Rodriguez-Cerezo, 2009; Wang, Zhu, Lai, & Fu, 2011). In 2012, more than 50% of the GMOs detected in food/feed matrices, reported in the RAPID Alert System Database, concerned unauthorised GM rices imported from Asia, mainly China (RASFF portal). To address the increasing number of alerts, the EU commission decided to implement "Emergency measures regarding unauthorised genetically modified rice in rice products originating from China and repealing Decision 2008/289/EC" (Commission Implementing Decision no. 2011/884/EU).

To ensure an efficient GMO detection in food and feed products on the EU market, several screening methods have been developed, mainly based on the most common recombinant elements in GM crops like transcription-regulating sequences. These elements are p35S (Cauliflower mosaic virus (CaMV) 35S promoter) and tNOS (*Agrobacterium tumefaciens* nopaline synthase terminator) (Barbau-Piednoir et al., 2010). The majority of these methods have been performed with the SYBR®Green and TaqMan® technologies (Barbau-Piednoir, Botteldoorn, Yde, Mahillon, & Roosens, 2012b; Barbau-Piednoir et al., 2010; Broeders, De Keersmaecker, & Roosens, 2012b; Kluga et al., 2012; Mbongolo Mbella et al., 2011; Reiting, Grohmann, & Mäde, 2010). However, the detection of elements derived from natural organisms (viruses and bacteria) can be misinterpreted. One of the most common examples is a p35S positive signal which could also mean the identification of the host CaMV in *Brassica* species (Broeders, Papazova, Van den Bulcke, &




**Fig. 1.** DNA walking strategy. (A) Designed primer position of t35S pCAMBIA a-R (green), t35S pCAMBIA b-R (blue) and t35S pCAMBIA c-R (orange) to target t35S pCAMBIA sequence (highlighted) from t35S pCAMBIA 1300 sequence. This sequence is identical for all pCAMBIA vectors (1200, 1201, 1281Z, 1291Z, 1301, 1302, 1303, 1304, 1380, 1381Xa, 1381Xb, 1381Xc, 1381Z, 1390, 1391, 1391Xa, 1391Xb, 1391Xc and 1391Z except for 2200, 2201, 2300, 2301 which are lightly shorter at the 3′ end*). (B) Principle of DNA walking approach based on a double semi-nested PCR. Three reactions are carried out to amplify the targeted sequence. First, a two-step PCR taking place in one tube is carried out. In the first step, single strand DNA (ssDNA) fragments are produced by a single primer extension reaction using t35S pCAMBIA a-R primer (green). This reaction is repeated four times in four individual tubes. In the second step, four different DRT primers (A–D) (red) are immediately added individually to the four reaction tubes. Second, the first semi-nested PCR is obtained in combining t35S pCAMBIA b-R primer (blue) and a long universal tagging primer (UAP-N1) (black). Finally, the second semi-nested PCR is carried out by the combination of t35S pCAMBIA c-R primer (orange) and a short universal tagging primer (UAP-N2) (purple) in order to increase the yield of the specific product.

QIA-00689151

Case 1:18-cv-01019-MN Document 476 Filed 09/09/21 Page 416 of 550 PageID #: 20792



Roosens, 2012a, 2012b). Therefore, additional markers have been developed to discriminate the presence of the transgenic crop or the natural organism, such as CRT (targeting the transcriptase gene of CaMV virus) used for routine analysis in-house and CaMV (targeting the ORFIII of CaMV virus) (Broeders et al., 2012a, 2012b, 2012c; Chaouachi et al., 2008).

However, the strategy described above is merely an indirect proof of the potential GMO presence in food matrix. Direct proof can only be supplied by the characterisation of the junction between the transgenic integrated cassette and the plant genome. To get this crucial information, DNA walking methods have been used to identify this unknown nucleotide sequence flanking already known DNA regions in any given genome (Leoni, Volpicella, De Leo, Gallerani, & Ceci, 2011; Volpicella et al., 2012). Classically, three classes of strategies exist: (a) restriction-based methods, involving a preliminary restriction digestion of the genomic DNA (Jones & Winistorfer, 1992; Leoni et al., 2011; Shyamala & Ames, 1989; Theuns et al., 2002; Triglia, Peterson, & Kemp, 1988); (b) extension-based methods, defined by the extension of a sequence-specific primer and subsequent tailing of the resulting single-strand DNA molecule (Hermann et al., 2000; Leoni et al., 2011; Min & Powell, 1998; Mueller & Wold, 1989); and (c) primer-based methods, coupling various combinatorial (random or degenerate) primers to sequence-specific primers (Leoni et al., 2011; Parker, Rabinovitch, & Burmer, 1991). Up to now, some studies have been published about the junction characterisation of transgenic plants such as thale cress (*Arabidopsis thaliana*) (Ruttink et al., 2010; Windels, De Buck, Van Bockstaele, De Loose, & Depicker, 2003b), potato (*Solanum tuberosum*) (Cullen, Harwood, Smedley, Davies, & Taylor, 2011; Côte, Meldrum, Raymond, & Dollard, 2005), rice (*O. sativa*) (KeFeng-6, KeFeng-8, LLRICE62, Bt Shanyou 63 (TT51-1)) (Cao et al., 2011; Spalinskas, Van den Bulcke, Van den Eede, & Milcamps, 2012; Su, Xie, Wang, & Peng, 2011; Wang et al., 2011, 2012), maize (*Zea mays*) (MON810, MON863, MON88017, NK603, LY038, DAS59122-7, T25, 3272, Bt11, BT176, CHB351, GA21) (Collonnier et al., 2005; Holck, Va, Didierjean, & Rudi, 2002; Raymond et al., 2010; Rønning, Vaïtilingom, Berdal, & Holst-Jensen, 2003; Spalinskas et al., 2012; Taverniers et al., 2005; Trinh et al., 2012; Windels et al., 2003a; Yang et al., 2005b), cotton (*Gossypium hirsutum*) (MON1445) (Akritidis, Pasentsis, Tsaftaris, Mylona, & Polidoros, 2008), canola (*Brassica napus*) (GT73) (Taverniers et al., 2005) and soybean (*Glycine max*) (MON89788, GT40-3-2) (Raymond et al., 2010; Trinh et al., 2012; Windels, Taverniers, Depicker, Van Bockstaele, & De Loose, 2001). However, most of the methods in these studies cannot easily be used in routine analysis by the enforcement laboratories: techniques are laborious and complex (finger-

**A**




**B**

**>Chromosome II**

GGAAGCAGTGGTATCAACGCAGAGTGGCCATTACGGCCGAACACGCGTCGTTTACCTTCGGGGCGTCATCCTCGACGACTTCGACGACG
GCGACGCCAAAGTTCCTTCGCCTAGTCGTCAAACGCCAAGGCCAAAACTTACACGCCAAGAAGAGCTAGCAGCAGATCATTAAACAAAA
CGGCACACCTCACCGACAATCCAATACTCCTACGAAATACCGATGCGAGGATTATACTAGATCCCACCGGGCCCACACGTCAGCGACCCT
CGTGCGACCCCAAAGGCGAGGAGCGGAGGCCGCCGCCCTCCGGCGGTGTGCTCTCCTCGGCCTTGCGCGAAAAGAAGATGGCAGGATT
AAAATACTCTAGGATATTCCGGAGCCCCCTTATCCAGTTCTCGTCACTGGCACGTGGGCCCCACCGTGGGCCCCACGGGAGGAAAAGGA
TGGGGGACCGCACGAGTTTTTACACTCTCACCCGTAACATTACACGTAATAAATTTCACATATACCCCTGTGGGGGTTTTTACACGCAGCC
CCCTCTACGGCTCCCCCGCGAGCGTGGCCCGCGCCGCTGACACGTGGGCCCCCAGCCGACTTAATGGCCCAACAACGCCGAATTAATT**CG
GGGGATCTGGATTTTAGTA**

**>Chromosome III**

GGAAGCAGTGGTATCAACGCAGAGTGGCCATTACGGCCGAACACGCGTCGTTTACCTCCGGGGACCCCCTGACATCAAAACAAAAGCAG
CACCAATTTAAATTTTCCCTATTTCAGCCAAGAAATGAAACTGCAATGTTGCAATGCAATGCCATTTGGTATGTGCAGTGTGTGCAGGAG
GAGGAGACACGAGCGGCAGCTATAGCCGGAGATTTAACCTTGATGAAGGTGAGTCACTTACTACAATGCAGTACTTGCTGCTGCGGACG
TAGCTGCTGTGGATGACCTGCACGAACACCGGGTTCCCGGGCTGAACCGGCACGGGGACGCGCGAGATCTCCTCCCTGTCTTCCTCCCTC
AGGTTGTACTCGGCCACCCGTCCGTGCCTGCTGAAGTAGTACTCCCCGTAGCGCCCGCCTTCCGCGGCCGCGACAACATCTTCATCTTCCC
CATCGTTTTCTTTCGCTTCTGCAGGTGGCAGACACGCATATAAGTTACAATGCCGATTTGGGAGCTTTTAGCTGCTGCATATTCTACCACAT
TGTTACCCAGATTCTCCTAATATGTAGTTGTATAATCCAGAAAATAAACTAGAACCAGAAGCTAGAAAACCTAGCTTCTCCAAATTCTTAG
AAGCTGACTTCCAAACAGCGGATTCTCATCTTAAGCTCACCAAACAGGGCCTATTGTGGTGTAAACAAATTGACGCTTAGACAACTTAAT
AACACATTGCGGACGTCTTTAATGTACTGAATTAACGCCGAATTAATT**CGGGGGATCTGGATTTTAGTA**

**Fig. 2.** Characterisation of the junction between the integrated transgenic pCAMBIA cassette and the rice genome. (A) Visualisation of the amplicons obtained with the different DRT mixes (A–D) on a 1% agarose gel. (B) Amplicon sequences presenting the junction between the pCAMBIA 1300 vector (underlined) and the rice genome identified on the chromosome II and the chromosome III, respectively. The t35S pCAMBIA c-R (in bold) and the UAP-N1/UAP-N2 primers are dotted-underlined. These sequences were obtained by classic sequencing of the plasmids.

QIA-00689152

printing by capillary electrophoresis, genomic DNA library via (unpredictable) restriction enzyme) with regard to a method exclusively based upon PCR, require a lengthy procedure with generally multiple steps to get results, or present a lack of specificity, yield or data concerning the compatibility with a low amount of target.

The aim of the present study is to supply an integrated approach to identify unauthorised GMOs: A first real-time PCR screening allows the detection of the terminator 35S (t35S) of the pCAMBIA family vectors to indicate the potential presence of unauthorised GMOs in food matrices (Fig. 3). Then, an appropriate DNA walking method, anchored on the sequence used for the screening followed by two semi-nested PCRs to identify the junction, confirms the GMO presence.

## 2. Materials and methods

### 2.1. Plant material

Grains of transgenic Bt rice (*O. sativa* L. *Japonica cv Ariete*) and its wild-type (WT) were used in this study to develop the methodology (Breitler et al., 2004). This transgenic rice was transformed by *A. tumefaciens* with the binary vector pCAMBIA1300, which contains the synthetic Cry1B gene from *Bacillus thuringiensis* conferring insect resistance. The Certified Reference Materials (CRM) in the form of seeds powders or genomic DNA (gDNA) were obtained from the American Oil Chemists' Society and the Institute for Reference Materials and Measurements and were used to test the specificity (AOCS, Urbana, USA; IRMM, Geel, Belgium). These materials were characterised as previously described (Broeders et al., 2012c). The list of all plant material is shown in Table 1.

### 2.2. DNA extraction, concentration and purity

Bt rice grains were ground to obtain a homogenous powder. DNA was extracted using a CTAB-based procedure (ISO 21571) in combination with the Genomic-tip20/G (QIAGEN, Hilden, Germany). This DNA extraction method, adapted from the EU-RL GMFF validated method, is composed of four main successive steps: (1) Extraction of proteins, polysaccharides and organic components, (2) Precipitation of DNA in presence of C-hexadecyl-Trimethyl-Ammonium-Bromide (CTAB), (3) Purification of DNA using a tip20 column and (4) Precipitation of DNA with isopropa-




**Fig. 3.** Workflow of the present integrated approach.

**Table 1**
Specificity of t35S pCAMBIA marker tested on plant materials observed *in silico* and *in vitro* by qPCR SYBR®Green assay. The positive and the negative signals obtained are indicated by + and –, respectively.

| Species | Plant materials | GMO% (m/m) | *In silico* | *In vitro* |
|---|---|---|---|---|
| Maize (*Zea mays*) | WT[a] | 0 | – | – |
| | MON 810[a,c] | 1 | – | – |
| | MON 89034[a] | 1 | – | – |
| | MON 863[a,c] | 1 | – | – |
| | MON 88017[a,c] | 1 | – | – |
| | Bt176[a,c] | 1 | – | – |
| | 3272[a,c] | 10 | – | – |
| | DAS59122[a,c] | 9.87 | – | – |
| | TC1507[a,c] | 1 | – | – |
| | T25[a,c] | 100 | – | – |
| | Bt11[a,c] | 1 | – | – |
| | GA21[a,c] | 1 | – | – |
| | NK603[a,c] | 1 | – | – |
| | MIR604[a,c] | 1 | – | – |
| | MIR162[a,c] | 1 | – | – |
| | 98140[a] | 1 | – | – |
| Soybean (*Glycine max*) | WT[a] | 0 | – | – |
| | GTS40-3-2[a,c] | 10 | – | – |
| | A2704-12[a,c] | 100 | – | – |
| | A5547-127[a,c] | 100 | – | – |
| | MON 89788[a] | 1 | – | – |
| | 305423[a] | 1 | – | – |
| | 356043[a] | 1 | – | – |
| | MON 87701[a] | 1 | – | – |
| Oilseed rape (*Brassica napus*) | WT[a] | 0 | – | – |
| | RT73[a] | 1 | – | – |
| | MS8[a,c] | 100 | – | – |
| | Rf3[a,c] | 100 | – | – |
| | T45[a,c] | 100 | – | – |
| | Ms1[a,c] | 1 | – | – |
| | Rf1[a,c] | 1 | – | – |
| | Rf2[a,c] | 1 | – | – |
| | Topas 19/2[a,c] | 1 | – | – |
| Cotton (*Gossypium hirsutum*) | WT[a] | 0 | – | – |
| | MON 1445[a,c] | 1 | – | – |
| | MON 15985[a,c] | 100 | – | – |
| | MON 531[a,c] | 100 | – | – |
| | LL25[a,c] | 100 | – | – |
| | GHB614[a] | 100 | – | – |
| | GHB119[a] | 10 | – | – |
| | 281-24-236 x 3006-210-23[a] | 1 | – | – |
| | MON 88913[a] | 1 | – | – |
| Potato (*Solanum tuberosum*) | WT[a] | 0 | – | – |
| | EH92-527-1[a,c] | 1 | – | – |
| Sugar beet (*Beta vulgaris*) | WT[a] | 0 | – | – |
| | H7-1[a] | 100 | – | – |
| Rice (Oryza sativa) | WT[a] | 0 | – | – |
| | LLRICE62[a,c] | 1 | – | – |
| | Bt rice | 100 | + | + |
| Plasmid | Sybricon t35S pCAMBIA[b] | / | + | + |

[a] CRM (Certified Reference Materials).
[b] Plasmid pUC18 containing t35SpCAMBIA amplicon.
[c] GMOs containing the p35S and/or tNOS elements (Barbau-Piednoir et al., 2010).

nol (European Union Reference Laboratory, 2006; International Standard ISO 21571, 2005). DNA concentration was measured by spectrophotometry using the Nanodrop® 2000 (ThermoFisher, DE, USA) device and DNA purity was evaluated by the A260/A280 and A260/A230 ratios. DNA extraction, concentration and purity of CRMs were carried out as previously described (Broeders et al., 2012c).

*2.3. Development and assessment of oligonucleotide primers*

The oligonucleotide primers were designed to target the t35S sequence of the pCAMBIA vector (Fig. 1). To get universal oligonucleotide primers detecting all pCAMBIA vectors, all t35S pCAMBIA sequences were compared via the software "ClustalW2". The oligonucleotide primers were thus designed manually on the conserved region of all pCAMBIA vectors. To be convenient for the DNA walking approach, these oligonucleotide primers were chosen at the nearest extremity of the walking direction. Note that the t35S pCAMBIA element is the starting position and the walking direction is defined on the rice genome through the left border of the transgenic cassette (Cambia, Canberra, Australia; ClustalW2). Via a different combination, the same oligonucleotide primers were usable for qPCR assays. The oligonucleotide primers and the obtained amplicon sequences are indicated in Table 2 and Fig. 1. The specificity of oligonucleotide primers was initially evaluated *in silico* using the program "wprimersearch" from the software "wEMBOSS", which mimics PCR amplification (Barbau-Piednoir et al., 2012b; wEMBOSS) (Table 1).

### 2.4. qPCR SYBR®Green technology

As previously described, for all qPCR assays, a standard 25 µl reaction volume was applied containing 1× SYBR®Green PCR Mastermix (Diagenode, Liège, Belgium), 250 nM of each primer and 5 µl of DNA (10 ng/µl). The qPCR cycling program consisted of a single cycle of DNA polymerase activation for 10 min at 95 °C followed by 40 amplification cycles of 15 s at 95 °C (denaturing step) and 1 min at 60 °C (annealing–extension step). The program for melting curve analysis was performed by gradually increasing the temperature from 60 to 95 °C in 20 min (±0.6°/20 s) (Barbau-Piednoir et al., 2010; Broeders et al., 2012c). All runs were performed on an iQ™5 real-time PCR detection system (BioRad, Hemel Hempstead, UK) or an ABI 7300 qPCR system (Applied Biosystems, CA, USA) for the specificity assessment and the rest of the analysis, respectively.

Concerning the qPCR method acceptance parameters, evaluation of specificity, sensitivity and inter-run repeatability was carried out as previously described (Broeders et al., 2012c). In brief, the specificity of the t35S pCAMBIA c-F and the t35S pCAMBIA a-R primers was tested on several WTs, GMOs and LLPs (Low Level Presence) by qPCR SYBR®Green method using $C_t$ and $T_m$ values as criteria (Tables 1 and 2) (Reg. EC no. 619/2011). Sensitivity and repeatability were determined for t35S pCAMBIA primers on Bt rice using the qPCR SYBR®Green method on serial dilutions going from 2000 to 0.1 haploid genome equivalents (HGEs) (Tables 2 and 4). From these serial dilutions, the PCR efficiency and linearity ($R^2$) were estimated.

### 2.5. Cloning, sequencing and plasmid registration

The t35S pCAMBIA amplicon was cloned into a pUC18 plasmid (INVITROGEN, CA, USA) to obtain the t35S pCAMBIA Sybricon as previously described (Barbau-Piednoir et al., 2010; Broeders et al., 2012c; Sambrook & Russell, 2001). Briefly, the t35S pCAMBIA amplicon was first subcloned into the pCR®2.1-TOPO® Vector using the TOPO TA Cloning® Kit (INVITROGEN, CA, USA) according to the manufacturers' instructions. After EcoRI restriction, the correct amplicon was then cloned into the vector pUC18 (INVITROGEN, CA, USA). The plasmid was sequenced via a Genetic Sequencer 3130XL using the Big Dye Terminator Kit v3.1 (Applied Biosystems, CA, USA) and was tested using the qPCR reaction conditions and the specific primers as indicated in point 2.4. The t35S pCAMBIA Sybricon plasmid was registered under "Safe Deposit" at the "Belgian Culture Collection for Micro-organisms" in the "Plasmid and DNA Library Collection" (BCCM/LMBP, Gent, Belgium; BCCM number: LMBP 8352). Authenticity was assessed by the BCCM/LMBP prior to acceptance and certification (Barbau-Piednoir et al., 2010; Broeders et al., 2012c).

### 2.6. DNA walking approach

#### 2.6.1. DNA walking and double semi-nested PCR

The assay was performed using 100 ng of 100% Bt rice DNA (Fig. 1). Degenerated random tagging (DRT) and Universal tagging primers (UAP-N1 and N2) were provided by APAgene™ GOLD Genome Walking Kit (BIO S&T, Montréal, Canada). Recombinant *Taq* DNA Polymerase (10342; INVITROGEN, CA, USA) was used to synthesise DNA. The three gene-specific primers for t35S pCAMBIA were designed as described above (Section 2.3). The t35S pCAMBIA a-R primer was used to perform the DNA walking and then the t35S pCAMBIA b-R and the t35S pCAMBIA c-R primers were applied in the first and the second semi-nested PCR rounds, respectively. PCR mixes and conditions were carried out according to the manufacturers' instructions. The final PCR product was separated by electrophoresis on a 1% agarose gel (INVITROGEN, CA,

**Table 2**
Oligonucleotide sequences used for qPCR assays, DNA walking approach and PCR amplifications. In the purpose of an integrated approach, the same t35S pCAMBIA oligonucleotides are used for the qPCR as well as for the DNA walking. PLD marker (Phopholipase D gene from rice (*Oryza sativa*)) is used as the rice endogene control.

| Method | Oligonucleotide name | Oligonucleotide sequence | Product size (bp) | Reference |
|---|---|---|---|---|
| SYBR®Green qPCR | p35S F<br>p35S R | AAAGCAAGTGGATTGATGTGATA<br>GGGTCTTGCGAAGGATAGTG | 75 | Barbau-Piednoir et al. (2010) |
| SYBR®Green qPCR | tNOS F<br>tNOS R | GATTAGAGTCCCGCAATTATACATTTAA<br>TTATCCTAGKTTGCGCGCTATATT | 69 | Barbau-Piednoir et al. (2010) |
| SYBR®Green qPCR | t35S F<br>t35S R | Data not shown<br>Data not shown | 107 | In-house, Broeders et al. (2012b) |
| SYBR®Green qPCR | PLD F<br>PLD R | GCTTAGGGAACAGGGAAGTAAAGTT<br>CTTAGCATAGTCTGTGCCATCCA | 80 | Mbongolo Mbella et al. (2011) |
| SYBR®Green qPCR | t35S pCAMBIA c-F<br>t35S pCAMBIA a-R | CGGGGGATCTGGATTTTAGTA<br>AGGGTTCCTATAGGGTTTCGCTC | 137 | This study |
| DNA walking | t35S pCAMBIA c-R<br>t35S pCAMBIA b-R<br>t35S pCAMBIA a-R | TACTAAAATCCAGATCCCCCG<br>GTGTTGAGCATATAAGAAACCC<br>AGGGTTCCTATAGGGTTTCGCTC | / | This study |
| PCR | Rice chromosome II-F<br>pCAMBIA-R | CGAAAAGAAGATGGCAGGAT<br>CTGTCGATCGACAAGCTCGAGT | 490 | This study |
| PCR | Rice chromosome III-F<br>pCAMBIA-R | TTTCTTTCGCTTCTGCAGGT<br>CTGTCGATCGACAAGCTCGAGT | 515 | This study |

**Table 3**
Analysis of Bt rice identity *in silico* and *in vitro* by qPCR SYBR®Green assay. The positive and the negative obtained signals are indicated by + and –, respectively.

| | p35S | | tNOS | | t35S | | t35S pCAMBIA | | PLD | |
|---|---|---|---|---|---|---|---|---|---|---|
| | *In silico* | *In vitro* | *In silico* | *In vitro* | *In silico* | *In vitro* | *In silico* | *In vitro* | *In silico* | *In vitro* |
| WT Bt rice | – | – | – | – | – | – | – | – | + | + |
| Bt rice | + | + | + | + | – | – | + | + | + | + |

**Table 4**
$LOD_6$ (Limit Of Detection with 6 repeats) of t35S pCAMBIA screening marker for 100% Bt rice in SYBR®Green qPCR assay obtained at 5 HGEs (Haploid Genome Equivalent) (in bold). The inter-run repeatability is determined as the relative standard deviation of the test results ($RSD_r$ %).

| Dilution | HGE/well | Final DNA concentration (ng/μl) | Final DNA concentration/well (ng) | Dilution factor | $RSD_r$ (%) |
|---|---|---|---|---|---|
| Stock | | 4 | / | | |
| S1 | 2000 | 0.2 | 1 | 20 | 1.5 |
| S2 | 1000 | 0.1 | 0.5 | 2 | 1.7 |
| S3 | 400 | 0.04 | 0.2 | 2,5 | 1.1 |
| S4 | 100 | 0.01 | 0.05 | 4 | 0.9 |
| S5 | 50 | 0.005 | 0.025 | 2 | 1.8 |
| S6 | 20 | 0.002 | 0.01 | 2,5 | 0.9 |
| S7 | 10 | 0.001 | 0.005 | 2 | 2.0 |
| **S8** | **5** | **0.0005** | **0.0025** | **2** | **2.2** |
| S9 | 2 | 0.0002 | 0.001 | 2,5 | |
| S10 | 1 | 0.0001 | 0.0005 | 2 | |
| S11 | 0.1 | 0.00001 | 0.00005 | 10 | |

USA) (100 V, 400 mA, 60 min). The amplicons were retrieved by excising the specific band from the gel and were purified using the QIAEX® Agarose Gel Extraction Kit (QIAGEN, Hilden, Germany).

### 2.6.2. Cloning and sequencing

Two sequencing strategies have been used. On the one hand, the purified amplicons were directly sequenced using the t35S pCAMBIA c-R primer to get information on the sequences including the junction between the transgenic integrated cassette and the plant genome (direct sequencing). On the other hand, each purified amplicon was cloned into the pCR®2.1-TOPO® Vector using the TOPO TA Cloning® Kit (INVITROGEN, CA, USA) according to the manufacturers' instructions. A PCR was carried out on colonies using PCR™2.1-TOPO® and t35S pCAMBIA c-R primers and analysed by electrophoresis on a 1% agarose gel (INVITROGEN, CA, USA) (100 V, 400 mA, 60 min). The colonies possessing a fragment of the correct size were further cultured. The plasmids were extracted, using the QIAprep Spin Miniprep Kit (QIAGEN, Hilden, Germany) according to manufacturers' manual, to be sequenced (classic sequencing). All sequencing reactions were performed on a Genetic Sequencer 3130XL using the Big Dye Terminator Kit v3.1 (Applied Biosystems, CA, USA) (Broeders et al., 2012c; Sambrook & Russell, 2001). The obtained sequences were aligned via the software "ClustalW2" and then analysed using the software "Nucleotide BLAST NCBI" (ClustalW2; Nucleotide BLAST NCBI).

### 2.6.3. Verification of the transgene flanking regions by PCR amplification

The transgene flanking regions identified by DNA walking were verified by PCR amplification. The PCR was carried out using a reverse primer designed in downstream to the t35S pCAMBIA a-R primer on the pCAMBIA construct and a forward primer designed on the rice chromosome II or III (Table 2). These oligonucleotide primers were initially evaluated *in silico* using the program "wprimersearch" from the software "wEMBOSS" (wEMBOSS). A standard 25 μl reaction volume is applied containing 0.625 U of DreamTaq™ DNA Polymerase (Fermentas, CA, USA), 1× DreamTaq™ Buffer (Fermentas, CA, USA), 0.2 mM of dNTPs, 250 nM of each primer and 5 μl of DNA (10 ng/μl). The PCR program consisted of a single cycle of 10 min at 95 °C (initial denaturation) followed by 35 amplification cycles of 30 s at 95 °C (denaturation), 30 s at 60 °C (annealing) and 1 min at 72 °C (extension) and finishing by a single cycle of 10 min at 72 °C (final extension). The run was performed on an iQ™5 real-time PCR detection system (BioRad, Hemel Hempstead, UK). The PCR products were analysed by electrophoresis on a 1% agarose gel (INVITROGEN, CA, USA) (100 V, 400 mA, 60 min). The PCR products were purified using USB® ExoSAP-IT® PCR Product Cleanup (Affymetrix, CA, USA) according to the manufacturers' instructions. All sequencing reactions were performed on a Genetic Sequencer 3130XL using the Big Dye Terminator Kit v3.1 (Applied Biosystems, CA, USA) (Broeders et al., 2012c; Sambrook & Russell, 2001). The obtained sequences were analysed using the software "Nucleotide BLAST NCBI" (ClustalW2; Nucleotide BLAST NCBI).

## 3. Results and discussion

### 3.1. Selection of the t35S pCAMBIA screening marker and development of a qPCR SYBR®Green assay

Considering the high diversity of genetic elements integrated in GM rices, our attention was focused on rice transformation vectors. Because of its presence in 30% of transgenic plants and, more particularly, in 65 and 53 peer reviewed publications on GM rices in 2011 and 2012, respectively, the pCAMBIA family vector was considered as a strategic target to detect a large spectrum of unauthorised GMOs (Ahmad et al., 2012; Kathuria et al., 2007; Komori et al., 2007; Scopus; Yu et al., 2012). The t35S pCAMBIA screening marker was thus developed to identify unauthorised GMOs containing a pCAMBIA family cassette. The t35S pCAMBIA-specific SYBR®Green screening method, generating an amplicon of 137 bp, was performed for integration in to the CoSYPS (Combinatory SYBR®Green qPCR Screening) for GMO detection, composed of 18 SYBR®Green methods (RBCL, LEC, ADH, CRU, PLD, SAD1, GLU3, p35S, tNOS, pFMV, pNOS, t35S, Cry1Ab/Ac, Cry3Bb, pat, bar, epsps and CRT), which is able to run in a single 96-well plate (Barbau-Piednoir et al., 2010; Barbau-Piednoir et al., 2012a; Broeders et al., 2012a, 2012b, 2012c; European Union Reference Laboratory for GMFood & Feed, 2006; Mbongolo Mbella et al., 2011; Van den Bulcke et al., 2010; Vaïtilingom, Pijnenburg, Gendre, & Brignon, 1999; Yang et al., 2005a).

### 3.1.1. Analysis of Bt rice in silico and in vitro

The general structure of pCAMBIA vector is composed notably of p35S, tNOS and t35S elements (Cambia, Canberra, Australia). Bioinformatics studies have shown that the common methods, including those described in the compendium of reference methods for GMO analysis, allow detection of p35S and tNOS (Data not shown, Table 3) (Barbau-Piednoir et al., 2010; Corbisier et al., 2005; Fernandez et al., 2005; Höhne, Santisi, & Meyer, 2002; Joint Research Centre, 2011; Reiting, Broll, Waiblinger, & Grohmann, 2007; Waiblinger, Ernst, Anderson, & Pietsch, 2008). Concerning the t35S element of the pCAMBIA family vectors, its sequence was slightly different at the 5′ end compared to the authorised GMOs and LLPs events containing a t35S element (A2704-12, A5547-127, Bt11, Bt176, DAS59122, GHB119, LLRICE62, T25, TC1507 and Topas-19-2). Therefore, this element was not detected by the t35S SYBR®Green detection method developed previously in-house (Broeders et al., 2012b; Personal

communication). All these bioinformatics data were confirmed *in vitro* by qPCR SYBR®Green assay (Table 3).

### 3.1.2. Development of the t35S pCAMBIA screening marker

In order to discriminate unauthorised GMOs containing pCAMBIA family vectors, the t35S pCAMBIA screening marker was developed. To this end, the sequence of the t35S pCAMBIA element was analysed. The majority of the pCAMBIA vectors (1200, 1201, 1281Z, 1291Z, 1300, 1301, 1302, 1303, 1304, 1380, 1381Xa, 1381Xb, 1381Xc, 1381Z, 1390, 1391, 1391Xa, 1391Xb, 1391Xc, 1391Z, 2200, 2300, 2301), except 0380 and 0390, possessed the t35S element. Its sequence was practically identical (slightly shorter by 5 bp at the 3′ end for 2200, 2201, 2300 and 2301). The t35S pCAMBIA a-R and t35S pCAMBIA c-F primers were designed manually in the conserved region of the pCAMBIA family vector to discriminate exclusively this element (Tables 1 and 2). The specificity of this marker was tested initially *in silico* with the software wEMBOSS.

### 3.1.3. qPCR SYBR®Green assay

To develop the t35S pCAMBIA marker, the specificity of t35S pCAMBIA c-F and a-R primers was tested *in vitro* on all authorised GMOs and LLPs events by the qPCR SYBR®Green assay (Tables 1 and 2). As expected, only the Bt rice, containing a pCAMBIA cassette, was detected after 40 cycles with a $C_t$ value at 22.70 and a $T_m$ value at 73 °C, indicating that the screening marker was specific. All the other WT, GMO and LLP materials tested did not give a signal after 40 cycles. Then, the sensitivity of this marker was determined via the limit of detection with 6 repeats ($LOD_6$). The $LOD_6$ is defined as the amplicon copy number that affords a positive PCR result (expressed as $C_t$-value) upon six-fold measurement of the target sequence in the same DNA sample (Table 4). To this end, DNA from 100% Bt rice was diluted to 4 ng/μl and 4 independent dilution series were prepared (in nuclease-free water) starting from this concentration. The dilution series (from 1 to 0.00005 ng/μl of DNA) were prepared prior to setting up each of the qPCR runs. For each assay, a range from 2000 to 0.1 HGEs was tested in a qPCR SYBR®Green assay. The HGE content of the DNA extracts was calculated according to the size of the rice genome (0.5 pg) (Arumuganathan & Earle, 1991). The $LOD_6$ was obtained at 5 HGEs (corresponding to 0.0025% of unauthorised GMOs) with a mean $C_t$ value of 35.28 Ct and a mean $T_m$ value of 72.52 °C. Because the $LOD_6$ was observed below a HGE of 20, the t35S pCAMBIA screening marker was considered as being sensitive. The experiment was also evaluated as repeatable according to the $RSD_r$ percentage (relative standard deviation, RSD, of the test results). In addition, the PCR efficiency (80%) and the linearity ($R^2 = 0.9954$) were assessed as acceptable.

### 3.2. DNA walking approach

Following a positive signal observed in qPCR SYBR®Green assay, the second step was to characterise the junction between the transgenic cassette and the plant genome to confirm the presence of pCAMBIA unauthorised GMOs in food/feed matrices (Fig. 3). Therefore, a DNA walking approach has been developed.

### 3.2.1. In silico study

In order to supply an integrated approach, an additional oligonucleotide primer, named t35S pCAMBIA b-R, was designed manually, on the conserved region of the t35S pCAMBIA sequence, localised between the t35S pCAMBIA a-R and t35S pCAMBIA c-R primers previously used for the qPCR SYBR®Green assay (Fig. 1 and Table 2). The specificity of this primer was confirmed *in silico* via the software wEMBOSS (data not shown).

### 3.2.2. Characterisation of the junction

The amplicons resulting from the double semi-nested PCR were visualised on a 1% agarose gel. For each kind of DRT primers mixes (A–D), amplicons were observed with an approximate size of 300 bp up to 1000 bp (Fig. 2A). The identity of the amplicons was confirmed by direct sequencing of the purified PCR products. The sequencing of the plasmids containing these amplicons allowed identifying the t35S pCAMBIA c-R and UAP-N1/UAP-N2 primers and determining the exact size of the amplicons (408–944 bp) (Fig. 2). All analysed amplicons presented a sequence including the junction between the pCAMBIA vector and the rice genome. Two transgenic insertions have been detected. For the majority of the amplicons (A2, A3, B1, C2, D1, D2 and D3), the pCAMBIA cassette was integrated on a genomic sequence (OSJNBb0111B07) from the chromosome III of *O. sativa* japonica Group coding for a putative uncharacterised protein. For the three other amplicons (A1, B2 and C1), the transgene flanking region was localised on a genomic sequence (OSJNBa0016G10) from the chromosome II of *O. sativa* japonica Group coding for a putative uncharacterised protein. These transgene flanking regions present a shorter left ends compared to the pCAMBIA cassette situated on the chromosome III. This variability of length could be explained by the fact that a left end integrates less precisely than a right end (Gheysen, Villarroel, & Van Montagu, 1991; Krizkova & Hrouda, 1998). To confirm the two chromosomal insertions, a PCR amplification using primers annealing to the pCAMBIA construct and the rice chromosome II or III was carried out (Table 2). The presence of PCR amplification as well as the sequencing of these amplicons allowed verifying properly the transgene flanking regions (data not shown).

As all the obtained amplicons provided the transgene flanking regions, these results demonstrated the high efficiency, specificity and reliability of the present integrated approach. In addition, it's interesting to note that the two different transgene flanking regions were not identically detected in function of the DRT primers used. Indeed, all the types of DRT primers allowed identifying the junction on the chromosome III while only the A, B and C DRT primers have detected the junction on the chromosome II. This system using four different DRT primers thus presents the advantage to increase the likelihood to detect unauthorised GMOs, independently of the tested matrices.

The proposed strategy is based on the presence of known transgenic elements. Consequently, the success of this integrated approach is limited to the knowledge level of transgenic elements making up unauthorised GMOs. Therefore, in spite of the good performance of this method, the strategy is not appropriate to detect GMOs constituted of only unknown elements. To this end, other technologies are more suitable such as "Next Generation Sequencing" methods. However, this last technique is at the present time not easily implementable in GMO routine analysis due to its high cost and its long time frame for data processing.

## 4. Conclusion

Considering the numerous unauthorised GM rices detected in food/feed matrices on the EU market listed in 2012, as well as their expected increase in the coming years, this study supplies to the enforcement laboratories a strategy to ensure the unauthorised GMO detection in the food and feed chain in semi-routine analysis (RASFF portal; Stein & Rodriguez-Cerezo, 2009).

The proposed integrated approach is composed of two main steps (Fig. 3). On the one hand, the potential presence of unauthorised GMOs, containing a pCAMBIA family vector, in food/feed matrices is detected via the qPCR SYBR®Green technology. The key choice to target the pCAMBIA family vector, via its element t35S, will allow detection of a large spectrum of unauthorised GMOs. The t35S pCAMBIA marker was developed to be specific,

sensitive, efficient, repeatable and to be integrated into the CoSYPS. On the other hand, once this marker is indicated as positive for a given food/feed matrix, the potential presence of unauthorised GMOs, containing a pCAMBIA vector, is demonstrated by the characterisation of the junction between the integrated cassette and the plant genome using a DNA walking method starting from the t35S pCAMBIA a-R primer. This method is then followed by two semi-nested PCR rounds using the t35S pCAMBIA b-R and t35S pCAMBIA c-R primers, respectively. With regard to the previous articles describing methods characterising the junction sequences of GMOs, the present DNA walking approach possesses the substantial advantage to be easily implementable in semi-routine use thanks to the simplicity of a method exclusively based on PCR. In addition, its short time frame to get the results (less than three days including DNA walking method, DNA purification and direct sequencing) and its relatively low cost clearly represent a crucial benefit for the enforcement laboratories.

## Acknowledgements

This research is funded by the Federal Public Service Health, Food Chain Safety and Environment (convention RF 11/6242) through the Project UGMMONITOR. Sequencing is performed at the Platform Biotechnology and Molecular Biology at the Scientific Institute of Public Health. The authors would like also to thank Emmanuel Guiderdoni (from Biotrop and Crop Protection Programmes, Cirad-Amis, France) for his kindness to provide rice grains, Nina Papazova and Sylvia Broeders for their precious help, Maud Delvoye for her technical assistance and Inge Huyghe for the critical review of the manuscript.

## References

Ahmad, P., Ashraf, M., Younis, M., Hu, X., Kumar, A., Akram, N. A., et al. (2012). Role of transgenic plants in agriculture and biopharming. *Biotechnology Advances, 30*, 524–540.

Akritidis, P., Pasentsis, K., Tsaftaris, A. S., Mylona, P. V., & Polidoros, A. N. (2008). Identification of unknown geneticallymodified material admixed in conventional cotton seed and development of an event-specific detection method. *Electronic Journal of Biotechnology, 11*, 76–83.

AOCS (American Oil Chemists' Society), Urbana, USA. URL <http://secure.aocs.org/crm/index.cfm>.

Arumuganathan, K., & Earle, E. D. (1991). Nuclear DNA content of some important plant species. *Plant Molecular Biology Reporter, 9*, 208–218.

Barbau-Piednoir, E., Botteldoorn, N., Yde, M., Mahillon, J., & Roosens, N. H. (2012b). Development and validation of qualitative SYBR®Green real-time PCR for detection and discrimination of *Listeria* spp. and *Listeria monocytogenes*. *Applied Microbiology Biotechnology*. http://dx.doi.org/10.1007/s00253-012-4477-2.

Barbau-Piednoir, E., Lievens, A., Mbongolo-Mbella, G., Roosens, N., Sneyers, M., Leunda-Casi, A., et al. (2010). SYBR®Green qPCR screening methods for the presence of "35S promoter" and "NOS terminator" elements in food and feed products. *European Food Research and Technology, 230*, 383–393.

Barbau-Piednoir, E., Lievens, A., Vandermassen, E., Mbongolo-Mbella, E. G., Leunda-Casi, A., Roosens, N., et al. (2012a). Four new SYBR Green qPCR screening methods for the detection of Roundup Ready, LibertyLink, and CryIAb traits in genetically modified products. *European Food Research and Technology, 234*, 13–23.

Biosafety scanner – GM crop index. URL <http://en.biosafetyscanner.org/>.

Breitler, J. C., Vassal, J. M., del Mar Catala, M., Meynard, D., Marfa, V., Melé, E., et al. (2004). Bt rice harbouring cry genes controlled by a constitutive or wound-inducible promoter: Protection and transgene expression under Mediterranean field conditions. *Plant Biotechnology Journal, 2*, 417–430.

Broeders, S., Barbau-Piednoir, E., Vandermassen, E., Debode, F., Mazzara, M., & Roosens, N. (2012c). New SYBR®Green methods targeting promoter sequences used for screening of several GM events pending for authorisation in Europe. *European Food Research and Technology, 236*, 537–547.

Broeders, S. R. M., De Keersmaecker, S. C. J., & Roosens, N. H. C. (2012b). How to deal with the upcoming challenges in GMO detection in food and feed. *Journal of Biomedicine and Biotechnology*. http://dx.doi.org/10.1155/2012/402418.

Broeders, S., Papazova, N., Van den Bulcke, M., & Roosens, N. (2012a). Development of a molecular platform for GMO detection in food and feed on the basis of "combinatory qPCR" technology. In P. Hernandez-Rodriguez & A. P. R. Gome (Eds.). *Polymerase chain reaction* (Vol. 1, pp. 363–404). Rijeka, Croatia: InTech.

Cambia, Canberra, Australia. URL <http://www.cambia.org/daisy/bioforge_legacy/3724.html>.

Cao, Y., Wu, G., Wu, Y., Nie, S., Zhang, L., & Lu, C. (2011). Characterisation of the transgenic rice event TT51-1 and construction of a reference plasmid. *Journal of Agricultural and Food Chemistry, 59*, 8550–8559.

CERA (Centre for Environmental Risk Assessment). *Information on GM approved products: Rice. GM crop database*. URL <http://ceragmc.org/index.php?action=gmcrop_database>.

Chaouachi, M., Fortabat, M. N., Geldreich, A., Yot, P., Kerlan, C., Kebdani, N., et al. (2008). An accurate real-time PCR test for the detection and quantification of cauliflower mosaïc virus (CaMV): Applicable in GMO screening. *European Food Research and Technology, 227*, 789–798.

Chen, M., Shelton, A., & Ye, G. Y. (2011). Insect-resistant genetically modified rice in China: From research to commercialisation. *Annual Review of Entomology, 56*, 81–101.

ClustalW2. URL <http://www.ebi.ac.uk/Tools/msa/clustalw2/>.

Collonnier, C., Schattner, A., Berthier, G., Boyer, F., Coué-Philippe, G., Diolez, A., et al. (2005). Characterisation and event specific-detection by quantitative real-time PCR of T25 maize insert. *Journal of AOAC International, 88*, 536–546.

Commission Implementing Decision No 2011/884/EU of 22 December 2011 on emergency measures regarding unauthorised genetically modified rice in rice products originating from China and repealing Decision 2008/289/EC, *Official Journal of the European Union*, L343, 140–148.

Commission Regulation (EC) No. 1830/2003 of the European Parliament and of the Council of 22 September 2003 concerning the traceability and labelling of genetically modified organisms and the traceability of food and feed products produced from genetically modified organisms and amending Directive 2001/18/EC. *Official Journal of the European Union*, L268, 24–28.

Commission Regulation (EC) No. 1829/2003 of the European Parliament and of the Council of 22 September 2003 on genetically modified food and feed. *Official Journal of the European Union*, L268, 1–23.

Commission Regulation (EC) No. 619/2011 of 24 June 2011 laying down the methods of sampling and analysis for the official control of feed as regards presence of genetically modified material for which an authorisation procedure is pending or the authorisation of which has expired. *Official Journal of the European Union*, L166, 9–15.

Corbisier, P., Trapmann, S., Gancberg, D., Hannes, L., Van Iwaarden, P., Berben, G., et al. (2005). Quantitative determination of Roundup Ready soybean (Glycine max) extracted from highly processed flour. *Analytical and Bioanalytical Chemistry, 383*, 282–290.

Côté, M. J., Meldrum, A. J., Raymond, P., & Dollard, C. (2005). Identification of genetically modified potato (*Solanum tuberosum*) cultivars using event specific polymerase chain reaction. *Journal of Agricultural and Food Chemistry, 53*, 6691–6696.

Cullen, D., Harwood, W., Smedley, M., Davies, H., & Taylor, M. (2011). Comparison of DNA walking methods for isolation of transgene-flanking regions in GM potato. *Molecular Biotechnology, 49*, 19–31.

Datta, S. K. (2004). Rice biotechnology: A need for developing countries. *AgBioForum, 7*, 31–35.

European Union Reference Laboratory (2006). Sampling and DNA extraction of cotton seeds. Report from the validation of the "CTAB/Genomic-tip 20" method for DNA extraction from ground cotton seeds. URL <http://gmo-crl.jrc.ec.europa.eu/summaries/281-3006%20Cotton_DNAExtr.pdf>.

European Union Reference Laboratory for GMFood and Feed (2006). Event-specific method for the quantification of sugar beet line H7-1 using real-time PCR: Protocol. Tech. Rep. CRLVL28/04VP.

Fernandez, S., Charles-Delobel, C., Geldreich, A., Berthier, G., Boyer, F., Collonnier, C., et al. (2005). Quantification of the 35S promoter in DNA extracts from genetically modified organisms using real-time polymerase chain reaction and specificity assessment on various genetically modified organisms Part I: Operating procedure. *Journal of AOAC International, 88*, 547–557.

Gheysen, G., Villarroel, R., & Van Montagu, M. (1991). Illegitimate recombination in plants: A model for T-DNA integration. *Genes and Development, 5*, 287–297.

Hermann, S. R., Miller, J. A., O'Neill, S., Tsao, T. T., Harding, R. M., & Dale, J. L. (2000). Single-primer amplification of flanking sequences. *BioTechniques, 29*(1176–1178), 1180.

High, S. M., Cohen, M. B., Shu, Q. Y., & Altosaar, I. (2004). Achieving successful deployment of Bt rice. *Trends in Plant Science, 9*, 286–292.

Höhne, M., Santisi, C. R., & Meyer, R. (2002). Real-time multiplex PCR: An accurate method for the detection and quantification of 35S-CaMV promoter in genetically modified maize containing food. *European Food Research and Technology, 215*, 59–64.

Holck, A., Va, M., Didierjean, L., & Rudi, K. (2002). 5′-Nuclease PCR for quantitative event-specific detection of the genetically modified Mon810 MaisGard maize. *European Food Research and Technology, 214*, 449–453.

International Standard ISO 21571. (2005). *Foodstuffs – Methods of analysis for the detection of genetically modified organisms and derived products – Nucleic acid extraction*. Genève, Switzerland: International Organisation for Standardisation.

Holst-Jensen, A., Bertheau, Y., de Loose, M., Grohmann, L., Hamels, S., Hougs, L., et al. (2012). Detecting un-authorised genetically modified organisms (GMOs) and derived materials. *Biotechnology Advances, 30*, 1318–1335.

IRMM (Institute for Reference Materials and Measurements), Geel, Belgium. URL <http://irmm.jrc.ec.europa.eu/REFERENCE_MATERIALS_CATALOGUE/CATALOGUE/Pages/index.aspx>.

James, C. (2009). *Global status of commercialised biotech/GM crops: 2009, ISAA Brief No. 41*. Ithaca, NY: ISAA. URL <http://www.isaaa.org/resources/publications/briefs/41/executivesummary/default.asp>.

Joint Research Centre (2011). Compendium of reference methods for GMO analysis, Tech. Rep. EUR 24526 EN.

Jones, D. H., & Winistorfer, S. C. (1992). Sequence specific generation of a DNA panhandle permits PCR amplification of unknown flanking DNA. *Nucleic Acids Research, 20*, 595–600.

Kathuria, H., Giri, J., Tyagi, H., & Tyagi, A. K. (2007). Advances in transgenic rice biotechnology. *Critical Reviews in Plant Sciences, 26*, 65–103.

Kluga, L., Folloni, S., Kagkli, D. M., Bogni, A., Foti, N., Savini, C., et al. (2012). Combinatory SYBR®Green real-time PCR screening approach for tracing materials derived from genetically modified rice. *Food Analytical Methods*. http://dx.doi.org/10.1007/s12161-012-9493-4.

Komori, T., Imayama, T., Kato, N., Ishida, Y., Ueki, J., & Komari, T. (2007). Current status of binary vectors and superbinary vectors. *Plant Physiology, 145*, 1155–1160.

Krizkova, L., & Hrouda, M. (1998). Direct repeats of T-DNA integrated in tobacco chromosome: Characterisation of junction regions. *Plant Journal, 16*, 673–680.

Leoni, C., Volpicella, M., De Leo, F., Gallerani, R., & Ceci, L. R. (2011). Genome walking in eukaryotes. *FEBS Journal, 278*, 3953–3977.

Mbongolo Mbella, E. G., Lievens, A., Barbau-Piednoir, E., Sneyers, M., Leunda-Casi, A., Roosens, N., et al. (2011). SYBR Green qPCR methods for detection of endogenous reference genes in commodity crops: A step ahead in combinatory screening of genetically modified crops in food and feed products. *European Food Research and Technology, 232*, 485–496.

Min, G. S., & Powell, J. R. (1998). Long-distance genome walking using the long and accurate polymerase chain reaction. *BioTechniques, 24*, 398–400.

Mueller, P. R., & Wold, B. (1989). *In vivo* footprinting of a muscle specific enhancer by ligation mediated PCR. *Science, 246*, 780–786.

Nucleotide BLAST NCBI. URL <http://blast.ncbi.nlm.nih.gov/Blast.cgi>.

Parker, J. D., Rabinovitch, P. S., & Burmer, G. C. (1991). Targeted gene walking polymerase chain reaction. *Nucleic Acids Research, 19*, 3055–3060.

RASFF portal. URL <https://webgate.ec.europa.eu/rasffwindow/portal/index.cfm?event0searchForm>.

Raymond, P., Gendron, L., Khalf, M., Paul, S., Dibley, K. L., Bhat, S., et al. (2010). Detection and identification of multiple genetically modified events using DNA insert fingerprinting. *Analytical and Bioanalytical Chemistry, 396*, 2091–2102.

Reiting, R., Broll, H., Waiblinger, H. U., & Grohmann, L. (2007). Collaborative study of a T-nos real-time PCR method for screening of genetically modified organisms in food products. *Journal für Verbraucherschutz und Lebensmittelsicherheit, 2*, 116–121.

Reiting, R., Grohmann, L., & Mäde, D. (2010). A testing cascade for the detection of genetically modified rice by real-time PCR in food and its application for detection of an unauthorized rice line similar to KeFeng6. *Journal für Verbraucherschutz und Lebensmittelsicherheit, 5*, 185–188.

Rønning, S. B., Vaïtilingom, M., Berdal, K. G., & Holst-Jensen, A. (2003). Event specific real-time quantitative PCR for genetically modified Bt11 maize (*Zea mays*). *European Food Research and Technology, 216*, 347–354.

Ruttink, T., Demeyer, R., Van Gulck, E., Van Droogenbroeck, B., Querci, M., Taverniers, I., et al. (2010). Molecular toolbox for the identification of unknown genetically modified organisms. *Analytical and Bioanalytical Chemistry, 396*, 2073–2089.

Sambrook, J., & Russell, D. W. (2001). *Molecular cloning, a laboratory manual* (3rd ed.). Cold Spring Harbour Laboratory Press.

Scopus (transgenic rice 2011 and 2012). URL <http://www.scopus.com/home.url>.

Shyamala, V., & Ames, G. F. (1989). Genome walking by single-specific-primer polymerase chain reaction: SSPPCR. *Gene, 84*, 1–8.

Spalinskas, R., Van den Bulcke, M., Van den Eede, G., & Milcamps, A. (2012). LT-RADE: An efficient user-friendly genome walking method applied to the molecular characterisation of the insertion site of genetically modified maize MON810 and rice LLRICE62. *Food Analytical Methods*. http://dx.doi.org/10.1007/s12161-012-9438-y.

Stein, A. J., & Rodriguez-Cerezo, E. (2009). The global pipeline of new GM crops: Implications of asynchronous approval for international trade. *JRC Scientific and Technical Reports*. URL <http://ftp.jrc.es/EURdoc/JRC51799.pdf>.

Su, C., Xie, J., Wang, X., & Peng, Y. (2011). Integrated structure and event-specific real-time detection of transgenic Cry1ac/SCK rice Kefeng6. *European Food Research and Technology, 232*, 351–359.

Tan, T., Zhan, J., & Chen, C. (2011). The impact of commercialisation of GM rice in China. *American–Eurasian Journal of Agricultural & Environmental Sciences, 10*, 296–299.

Taverniers, I., Windels, P., Vatilingom, M., Milcamps, A., Van Bockstaele, E., Van den Eede, G., et al. (2005). Event-specific plasmid standards and real-time PCR methods for transgenic Bt11, Bt176, and GA21 maize and transgenic GT73 canola. *Journal of Agricultural and Food Chemistry, 53*, 3041–3052.

Theuns, I., Windels, P., De Buck, S., Depicker, A., Van Bockstaele, E., & De Loose, M. (2002). Identification and characterisation of T-DNA inserts via T-DNA fingerprinting. *Euphytica, 123*, 75–84.

Triglia, T., Peterson, M. G., & Kemp, D. J. (1988). A procedure for *in vitro* amplification of DNA segments that lie outside the boundaries of known sequences. *Nucleic Acids Research, 16*, 8186.

Trinh, Q., Shi, H., Xu, W., Hao, J., Luo, Y., & Huang, K. (2012). Loop-linker PCR: An advanced PCR technique for genome walking. *IUBMB Life, 64*, 841–845.

Vaïtilingom, M., Pijnenburg, H., Gendre, F., & Brignon, P. (1999). Real-time quantitative PCR detection of genetically modified maximizer maize and roundup ready soybean in some representative foods. *Journal of Agricultural and Food Chemistry, 47*, 5261–5266.

Van den Bulcke, M., Lievens, A., Barbau-Piednoir, E., MbongoloMbella, G., Roosens, N., Sneyers, M., et al. (2010). A theoretical introduction to "combinatory SYBR Green qPCR screening", a matrix-based approach for the detection of materials derived from genetically modified plants. *Analytical and Bioanalytical Chemistry, 396*, 2113–2123.

Volpicella, M., Leoni, C., Fanizza, I., Rius, S., Gallerani, R., & Ceci, L. R. (2012). Genome walking by Klenow polymerase. *Analytical Biochemistry, 430*, 200–202.

Waiblinger, H. U., Ernst, B., Anderson, A., & Pietsch, K. (2008). Validation and collaborative study of a P35S and T-nos duplex real-time PCR screening method to detect genetically modified organisms in food products. *European Food Research and Technology, 226*, 1221–1228.

Wang, W. X., Zhu, T. H., Lai, F. X., & Fu, Q. (2011). Event-specific qualitative and quantitative detection of transgenic rice Kefeng-6 by characterisation of the transgene flanking sequence. *European Food Research and Technology, 232*, 297–305.

Wang, W. X., Zhu, T. H., Lai, F. X., & Fu, Q. (2012). Event-specific qualitative and quantitative detection of transgenic rice Kefeng-8 by characterisation of the transgene flanking sequence. *European Food Research and Technology, 234*, 477–484.

wEMBOSS. URL <https://wemboss.uio.no/wEMBOSS/>.

Windels, P., Bertrand, S., Depicker, A., Moens, W., Bockstaele, E., & De Loose, M. (2003a). Qualitative and event-specific PCR real-time detection methods for StarLink maize. *European Food Research and Technology, 216*, 259–263.

Windels, P., De Buck, S., Van Bockstaele, E., De Loose, M., & Depicker, A. (2003b). T-DNA integration in *Arabidopsis* chromosomes: Presence and origin of filler DNA sequences. *Plant Physiology, 133*, 2061–2068.

Windels, P., Taverniers, I., Depicker, A., Van Bockstaele, E., & De Loose, M. (2001). Characterisation of the Roundup Ready soybean insert. *European Food Research and Technology, 213*, 107–112.

Xia, H., Lu, B. R., Xu, K., Wang, W., Yang, X., Yang, C., et al. (2011). Enhanced yield performance of Bt rice under target-insect attacks: Implications for field insect management. *Transgenic Research, 20*, 655–664.

Yang, L., Chen, J., Huang, C., Liu, Y., Jia, S., Pan, L., et al. (2005a). Validation of a cotton specific gene, Sad1, used as an endogenous reference gene in qualitative and real-time quantitative PCR detection of transgenic cottons. *The Plant Cell Reports, 24*, 237–245.

Yang, L., Xu, S., Pan, A., Yin, C., Zhang, K., Wang, Z., et al. (2005b). Event specific qualitative and quantitative polymerase chain reaction detection of genetically modified MON863 maize based on the 5′-transgene integration sequence. *Journal of Agricultural and Food Chemistry, 53*, 9312–9318.

Yu, S., Wang, W., & Wang, B. (2012). Recent progress of salinity tolerance research in plants. *Russian Journal of Genetics, 48*, 497–505.

Zapiola, M. L., Campbell, C. K., Butler, M. D., & Mallory-Smith, C. A. (2008). Escape and establishment of transgenic glyphosate-resistant creeping bentgrass *Agrostis stolonifera* in Oregon, USA: A 4-year study. *Journal of Applied Ecology, 45*, 486–494.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ARCHERDX, LLC and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL, | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 18-1019-MN |
| QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC., QIAGEN GAITHERSBURG, LLC f/k/a QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V., and JONATHAN ARNOLD, | ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION IN LIMINE NO. 1 TO PRECLUDE QIAGEN FROM OFFERING CERTAIN TESTIMONY AND/OR EVIDENCE THROUGH ITS EXPERTS**

## I. PRECLUDE TESTIMONY INCONSISTENT WITH CLAIM CONSTRUCTION

Qiagen cannot revive claim constructions lost or withdrawn at *Markman*. The Court already rejected a "nesting" requirement. D.I. 146 at 11. Qiagen's citation to *Genetech* does not support redefining claim terms inconsistently with the Court's construction for doctrine of equivalents ("DOE") purposes. DOE is directed to equivalents of the "claimed elements of the patented invention" (*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997)), which the Court has already construed. Qiagen cannot present contrary constructions at trial.

## II. EXCLUDE "APAGENE MANUAL," NOT SHOWN A PRINTED PUBLICATION

Qiagen cannot prove that the "APAgene Manual" is a printed publication. Qiagen has no testimony or other admissible evidence showing that the APAgene Manual was available before January 27, 2014. Instead, Qiagen points to a Google link to an unauthenticated webpage that purports to be an "html version" of a pdf allegedly hosted on a Japanese website with "20120614" in the URL. This unauthenticated webpage is legally insufficient to demonstrate the site was indexed or searchable prior to January 27, 2014. *See Open Text S.A. v. Box, Inc.*, 2015 WL 428365, at *2 (N.D. Cal. Jan. 30, 2015) (unauthenticated webpage printouts insufficient). Moreover, the webpage states that "Google automatically generates html versions of documents as we crawl the web," but nowhere indicates *when* this html was created. The record is devoid of any evidence or testimony on the issue, much less from a witness with personal knowledge. By contrast, in *Enhanced Security*, the CEO of the company that disseminated the disputed user manual submitted a sworn declaration "averring that the version of the Manual before the examiner was available" by a certain date. 739 F.3d 1347, 1354 (Fed. Cir. 2014). Similarly, the defendants in *Lucent* submitted a librarian declaration that "the Micke thesis was shelved in the library as of 1986." 2007 WL 1877983, at *2 (S.D. Cal. June 27, 2007). Qiagen has no such testimony.

Qiagen should be precluded from introducing the "APAgene Manual" at trial.

DATED: August 6, 2021

MCCARTER & ENGLISH, LLP

*/s/ Daniel M. Silver*

Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
405 N. King St., 8th Floor
Wilmington, DE 19801
(302) 984-6331
dsilver@mccarter.com
ajoyce@mccarter.com

John W. Shaw (#3362)
Jeff Castellano (#4837)
Nathan R. Hoeschen (#6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0701
jshaw@shawkeller.com
jcastellano@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Leigh J. Martinson
Keith Toms
Wyley S. Proctor
Quincy L. Kayton
MCCARTER & ENGLISH, LLP
265 Franklin Street
Boston, MA 02110
(617) 449-6500
lmartinson@mccarter.com
ktoms@mccarter.com
wproctor@mccarter.com
qkayton@mccarter.com

Michael A. Albert
Eric J. Rutt
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210-2206
617.646.8240
malbert@wolfgreenfield.com
erutt@wolfgreenfield.com

*Attorneys for Plaintiffs*

Edward R. Reines
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000
edward.reines@weil.com

*Attorney for Plaintiff ArcherDX, LLC*

# Exhibit 10:

# Plaintiffs' Motion in Limine 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARCHERDX, LLC and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL,<br><br>Plaintiffs,<br><br>v.<br><br>QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC., QIAGEN GAITHERSBURG, LLC f/k/a QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V., and JONATHAN ARNOLD,<br><br>Defendants. | ) | C.A. No. 18-1019-MN |

**PLAINTIFFS' MOTION IN LIMINE NO. 2 TO PRECLUDE QIAGEN'S TESTIMONY, EVIDENCE OR ARGUMENT RELATED TO COVID-19**

Plaintiffs ArcherDx, Inc. and the Massachusetts General Hospital ("Plaintiffs") move to preclude Qiagen from offering argument, evidence, or testimony regarding its work related to COVID-19, which is both irrelevant to the issues in dispute and prejudicial, as it is likely to confuse and mislead the jury into thinking that the outcome of this case could impact the global fight against the COVID pandemic.

Given that Qiagen would not agree to refrain from discussing its COVID efforts during the meet-and-confer on this motion, Plaintiffs' expect that Qiagen intends to tout its COVID-related efforts at trial in an effort to sway the jury. Especially given the irrelevance of Qiagen's COVID efforts to the subject matter of this dispute, this would be unfair and prejudicial, and should be prevented.

**BACKGROUND**

This case concerns genetic testing kits that are used to detect mutations that are indicative of cancer. Plaintiffs shall prove at trial that the use of certain Qiagen cancer detection products sold under the QIAseq and QIAact brand names ("Accused Products") infringe Plaintiffs' valuable, patented library preparation methodology.

Since early in the pandemic, Qiagen has been selling a variety of genetic testing supplies to diagnose and study COVID-19. This includes, among others, a kit designed to sequence the COVID genome, which is also marketed under the QIAseq brand name. *See* Ex. 1 (QIAseq DIRECT SARS-Cov-2 Kit). Qiagen's COVID testing products are not at issue in this lawsuit. They have not been accused of infringement and, to the best of Archer's knowledge, they do not practice the patented methodology.

**ARGUMENT**

Qiagen should be precluded from offering testimony, argument, or evidence regarding its COVID testing efforts and products because they are irrelevant to any issue in litigation. *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible"). None of the accused products are used for COVID testing. Moreover, Qiagen's COVID-testing products do not practice the Plaintiffs' patented methodology, and thus have no bearing on whether the Accused Products infringe Plaintiffs' patents.

Testimony regarding COVID testing is also prejudicial to Plaintiffs, as it is likely to create the false impression that a verdict against Qiagen could impair the global fight against the COVID-19 pandemic. *See* Fed. R. Evid. 403 (excluding evidence for danger of prejudice, confusing the issues, and misleading the jury). The risk of jury confusion is especially acute because both Accused Products and non-accused COVID testing products are sold under the QIAseq brand name, so it would be easy for the jury to mistakenly believe that this case could impact COVID testing, when it will not.

Finally, given that the COVID pandemic persists as a prevalent issue in the jurors' everyday lives, any Qiagen testimony regarding its COVID efforts is likely to distract the jury, confuse the issues, and bias the jury against Plaintiffs. Qiagen should not be permitted to interject its COVID work and products into the case to divert the jury's attention and prejudice the jury against finding Qiagen liable for infringing the asserted patents. COVID testing has no probative value to this trial, so the danger of this prejudice and confusion warrants exclusion. *See id.*; *see Pac. Biosciences of CA, Inc. v. Oxford Nanopore Tech., Inc.*, 996 F.3d 1342 (Fed. Cir. 2021) (noting that district court "warned both parties about 'turn[ing] this really into a trial about an ongoing global health crisis that has to be on the minds of the jury,' which would be

"unfair" and "improper" and would "inflame[e] the jury" and "would create a real risk of a verdict" not based on the evidence.").

In sum, because Qiagen's COVID-related efforts and products are not relevant and are likely to confuse, mislead, and prejudice the jury, it should be precluded under Fed. R. Evid. 402 and 403.

DATED: July 29, 2021

MCCARTER & ENGLISH, LLP

*/s/ Daniel M. Silver*

Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
405 N. King St., 8th Floor
Wilmington, DE 19801
(302) 984-6331
dsilver@mccarter.com
ajoyce@mccarter.com

John W. Shaw (#3362)
Jeff Castellano (#4837)
Nathan R. Hoeschen (#6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0701
jshaw@shawkeller.com
jcastellano@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Leigh J. Martinson
Keith Toms
Jill Mello, Ph.D.
Wyley S. Proctor
Quincy L. Kayton
MCCARTER & ENGLISH, LLP
265 Franklin Street
Boston, MA 02110
(617) 449-6500
lmartinson@mccarter.com
ktoms@mccarter.com
jmello@mccarter.com
wproctor@mccarter.com
qkayton@mccarter.com

Michael A. Albert
Eric J. Rutt
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210-2206
617.646.8240
malbert@wolfgreenfield.com
erutt@wolfgreenfield.com

*Attorneys for Plaintiffs*

Edward R. Reines

WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000
edward.reines@weil.com

*Attorney for Plaintiff ArcherDX, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARCHERDX, LLC and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL, | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 18-1019-MN |
| QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC., QIAGEN GAITHERSBURG, LLC f/k/a QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V., and JONATHAN ARNOLD, | ) | |
| Defendants. | ) | |

PROPOSED ORDER

Upon consideration of Plaintiffs' Motion *in Limine* #2 to Preclude Qiagen's Testimony, Evidence, or Argument Related to Covid-19, IT IS HEREBY ORDERED that:

1. Plaintiffs' Motion *in Limine* #2 is GRANTED;

2. Defendants may not introduce evidence, testimony, or argument relating to COVID-19 or Qiagen's COVID-19 related products and services;

3. Defendants and Defendants' witnesses may not discuss COVID before the jury at trial, including any reference to Qiagen's activities in relation to the COVID-19 pandemic or products or services related to COVID-19.

This ____ day of ______________ ________________________________

Honorable Maryellen Noreika



ME1 37063829v.1

# EXHIBIT 1

QIAGEN

Home › Products › Next-Generation Sequencing › RNA Sequencing › QIAseq DIRECT SARS-CoV-2 Kits

# QIAseq DIRECT SARS-CoV-2 Kits

For fast, targeted whole genome library preparation of SARS-CoV-2 for genomic surveillance and variant detection

Features

SHOW MORE

Products Product Details Resources

# Products

QIAseq DIRECT SARS-CoV-2 Kits are intended for molecular biology applications. These products are not intended for the diagnosis, prevention, or treatment of a disease.

QIAGEN



Cat. No. / ID: 333894

Single-box solution containing all materials for reverse transcription and library preparation with 96 Unique Dual Indices (Set D)

$3,840.00

Log in to see your account pricing.

Quantity
1

ADD TO CART

---



## QIAseq DIRECT SARS-CoV-2 Kit A

Cat. No. / ID: 333891

Single-box solution containing all materials for reverse transcription and library preparation with 96 Unique Dual Indices (Set A)

$3,840.00

QIAGEN

Quantity
1
ADD TO CART



## QIAseq DIRECT SARS-CoV-2 Kit B

Cat. No. / ID: 333892

Single-box solution containing all materials for reverse transcription and library preparation with 96 Unique Dual Indices (Set B)

**$3,840.00**

Log in to see your account pricing.

Quantity
1
ADD TO CART



## QIAseq DIRECT SARS-CoV-2 Kit C

Cat. No. / ID: 333893

Single-box solution containing all materials for reverse

QIAGEN

$3,840.00

ⓘ Log in to see your account pricing.

Quantity

1

ADD TO CART



## QIAseq DIRECT SARS-CoV-2 HT (A-D)

Cat. No. / ID: 333898

Single-box solution containing all materials for reverse transcription and library preparation with 384 Unique Dual Indices (Sets A, B, C, D)

$12,300.00

ⓘ Log in to see your account pricing.

Quantity

## Product Details

QIAseq DIRECT SARS-CoV-2 Kits are specially designed to advance research into SARS-CoV-2, which is the causative agent of COVID-19 disease. These kits are single-box solutions for sequencing the entire viral genome. SARS-CoV-2 is encoded by a positive-sense, single-stranded RNA molecule that can be mixed with host RNA during isolation from a sample. The kits include reagents to reverse transcribe the RNA into cDNA, primers to specifically enrich for the viral genome and Unique Dual Indices (UDIs) for sequencing. The panel consists of approximately 550 primers for creating 425 amplicons, covering the entire SARS-CoV-2 viral genome.

.

## Performance

**High-quality, single-box solution**

Target amplification of SARS-CoV-2 requires both reverse transcription and whole genome enrichment of the viral RNA. The QIAseq DIRECT SARS-COV-2 Kit is a single-box solution for generating whole genome libraries that are sequencing-ready and compatible with all Illumina platforms.

**Novel primer design**

QIAseq DIRECT SARS-CoV-2 Kit is designed for optimal performance on short-read sequencing platforms. It generates amplicons that are approximately 250 bp, compared to 400 bp amplicons produced by alternative methods, resulting in shorter amplicons that don't require fragmentation. The kit generates high-yield, similar-sized libraries that lead to performance improvements in sequence uniformity and overall read depth.

**Multiplexing**

**Data analysis**

When paired with QIAGEN CLC Genomics Workbench, the panel delivers data that can be quickly analyzed. Sequence data can be used to identify variants across different samples, as well as to compare with multiple genomes – from consensus reference genomes to one of many genomes that have been uploaded from around the world.

## Principle

Viruses consist of nucleic acid (viral genome) and a limited number of proteins that facilitate entry into a host cell, replication of the genome and production of virions. While viral genomes can be comprised of RNA or DNA, SARS-CoV-2 is encoded by an RNA molecule. The size of the entire SARS-CoV-2 genome is under 30 kb and can be mixed with host RNA when isolating from a human sample, making it challenging to reconstruct the whole viral genome.

Although next-generation sequencing (NGS) has become a vital tool, library preparation remains a key bottleneck in the NGS workflow. The QIAseq DIRECT SARS-CoV-2 Kit is a multiplex PCR primer set for whole genome amplification of SARS-CoV-2. Using amplicons optimized for short-read platforms, the QIAseq DIRECT SARS-CoV-2 Kit uses an overlapping and redundant targeting approach to reduce the risk of drop outs caused by novel viral mutations.

## Procedure

QIAseq DIRECT SARS-CoV-2 utilizes a streamlined, 4-hour workflow for enrichment and library prep of the SARS-CoV-2 virus genome.

required). This reaction is flexible with regard to input RNA; 5 µl viral RNA input is required as a starting volume, regardless of viral titer. Following cDNA synthesis, multiplexed primer pools are used in a high-fidelity multiplex PCR reaction to prepare two pools of approximately 250 bp amplicons. The two enriched pools per sample are then combined into a single tube and purified using a QIAseq Bead cleanup step.

**Library amplification and sample indexing**

Following quantification and normalization, SARS-CoV-2 enriched samples are amplified and sample-indexed using a high-fidelity amplification reaction. During this reaction, Unique Dual Indices (UDIs) are added to the samples. UDIs effectively mitigate the risk of read mis-assignment due to index hopping. This is enabled by filtering mis-assigned reads during the demultiplexing of individual samples, thus generating highly accurate output data. For more information on QIAseq UDIs, please refer to "Appendix A: QIAseq DIRECT Unique Dual Indexes" in the *QIAseq DIRECT SARS-CoV-2 Handbook*.

**Next-generation sequencing**

QIAseq DIRECT SARS-CoV-2 libraries are compatible with Illumina NGS platforms including iSeq 100, MiniSeq, MiSeq, NextSeq 500/550, HiSeq 2500, HiSeq 3000/4000 and NovaSeq 6000.

## Applications

The QIAseq DIRECT SARS-CoV-2 Kit can be used to achieve whole genome coverage of the SARS-CoV-2 viral genome for epidemiological research and genomic surveillance purposes.

With the ability to multiplex up to 384 samples, the panel allows labs to rapidly scale up sequencing capabilities and ramp up SARS-CoV-2 genomic surveillance efforts. Accurate amplification and high SARS-CoV-2 genome coverage enables the detection of new variants with unparalleled precision.

Kit Handbooks (1)

Supplementary Files (3)

Template Files (2)

Country and Language

United States

English

Follow Us

Contact Us

Sample to Insight

© QIAGEN 2013–21. All rights reserved Privacy Policy Sitemap Trademarks & Disclaimers Accessibility

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ARCHERDX, LLC f/k/a ARCHERDX, INC. and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL,<br><br>*Plaintiffs*,<br><br>v.<br><br>QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC., QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V. and JONATHAN ARNOLD,<br><br>*Defendants*. | ) | C.A. No. 18-1019-MN<br><br>**HIGHLY CONFIDENTIAL**<br>**FILED UNDER SEAL** |

**QIAGEN'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 2 TO PRECLUDE QIAGEN'S TESTIMONY, EVIDENCE OR ARGUMENT RELATED TO COVID-19**

Plaintiffs' Motion *in Limine* number 2 seeks to prevent QIAGEN from explaining to the jury who it is and even mentioning certain parts of its business. QIAGEN is a multinational company with many products that span many industries. One aspect of its business, which is an aspect that is accused here, is creating products that help identify diseases. For example, in addition to the accused products, QIAGEN makes products that detect Tuberculosis (TB) and the strains of the human papilloma virus (HPV) that are responsible for cancers. QIAGEN also makes products that are used to detect and study SARS CoV-2/Covid-19.

Plaintiffs want to prevent QIAGEN from mentioning that its business includes the latter products. Plaintiffs' Motion *in Limine* No. 2 at 1. QIAGEN intends to present the jury with a full picture of who it is and what it does. There is no basis to amputate part of QIAGEN's business and make it present only the picture of the business that Plaintiffs want presented.

QIAGEN does not expect that it is a household name with jurors. Accordingly, and as is customary, QIAGEN intends to offer testimony that will allow the jury to understand who QIAGEN is and what QIAGEN does. QIAGEN's business encompasses a variety of areas, and a variety of products used in the biotechnology industry, including tools other biotechnology companies use to create their products and finished products that QIAGEN makes and sells.

There is no reason why a QIAGEN corporate representative should be forced to provide a truncated view of who QIAGEN is and what it does. Certainly, if the Court finds that a line of questioning becomes too concentrated and lacks relevance, an objection can be sustained during testimony. Such an approach is more practical than a wholesale prohibition that prevents QIAGEN from even mentioning parts of its business.

Plaintiffs suggest that allowing any testimony regarding COVID would be prejudicial, contending that it would "create a false impression that a verdict against QIAGEN could impair the global fight against the COVID-19 pandemic," arguing that the risk is "especially acute" because

accused products and non-accused products are sold under the same name.[1] Plaintiffs' Motion *in Limine* No. 2 at 2. Plaintiffs' argument is pure speculation; it requires multiple linked chains of reasoning that are not related and is not a basis for granting their overly broad motion.

Notably, in *Pac. Biosciences of CA, Inc. v. Oxford Nanopore Tech., Inc.,* 996 F.3d 1342 (Fed. Cir. 2021) on which Plaintiffs rely, the opening statements from both parties "acknowledged COVID-19 and the relevance of the DNA-sequencing technology at issue to dealing with this virus and others." *Id.* at 1347.[2] There was nothing improper, prejudicial, or confusing about that acknowledgement in *Pac Biosciences*, and QIAGEN should not be precluded from mentioning that same connection here.

Plaintiffs' citation to the court's warning in *Pac. Biosciences* is misplaced. *See* Plaintiffs' Motion *in Limine* No. 2 at 2. In that case, the court had granted a motion in *limine* preventing Oxford, *inter alia*, "from presenting evidence about the consequences of this litigation." 996 F.3d at 1347. The court's order also stated that "'it would be inappropriate to put before the jury evidence or argument about the potential impact of a verdict in favor of PacBio – such as higher prices or slower medical research – as these issues are not for the jury to decide …." *Id.* Oxford violated that order in its opening statement by discussing sending products to Wuhan, China at the beginning of the outbreak "as part of its references to PacBio seeking to exclude Oxford's products …" *Id.* at 1348. PacBio then sought a curative instruction. *Id.* Before giving that instruction, the court gave the warning that Plaintiffs here cite concerning not turning that trial "into a trial about an ongoing global health crisis …" *Id.* Nothing in *Pac. Biosciences* suggests that QIAGEN should be precluded from fully and accurately describing QIAGEN's business.

---

[1] Other than the fact that QIAGEN sells the products, the names of products are not the same.

[2] Counsel for PacBio, who thought reference to Covid-19 was appropriate in opening statements, is one of Plaintiffs' counsel here.

Telling a jury who a company is and what it does is standard practice. This case should be no different. QIAGEN should be permitted to tell the jury who it is and what it does. Thus, Plaintiffs' motion to hide part of QIAGEN's business from the jury should be denied.

OF COUNSEL:

David Bilsker
Andrew E. Naravage
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111-4788
(415) 875-6600

Anne S. Toker
James E. Baker
Anastasia M. Fernands
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

Dated: August 3, 2021

By: */s/ Stephanie E. O'Byrne*

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendants QIAGEN Sciences, LLC, QIAGEN LLC f/k/a QIAGEN, Inc., QIAGEN Beverly LLC, f/k/a QIAGEN Beverly, Inc., QIAGEN Gaithersburg LLC, f/k/a QIAGEN Gaithersburg, Inc., QIAGEN GmbH, QIAGEN N.V., and Jonathan Arnold*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARCHERDX, LLC and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL, | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 18-1019-MN |
| QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC., QIAGEN GAITHERSBURG, LLC f/k/a QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V., and JONATHAN ARNOLD, | ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF**
**MOTION IN LIMINE NO. 2 TO PRECLUDE QIAGEN'S TESTIMONY, EVIDENCE OR ARGUMENT RELATED TO COVID-19**

Qiagen does argue that its COVID-testing products and COVID-related efforts have any relevance to this case. As such, the significant danger of prejudice outweighs the non-existent probative value of this evidence.

Contrary to Qiagen's arguments, the Federal Rules of Evidence give it no right to present irrelevant evidence to the jury regarding "who it is and what it does." *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible"). This is especially true when the irrelevant evidence creates a substantial danger of biasing the jury, as it relates to a global pandemic that is personally affecting the jurors' lives in profound ways. Particularly in light of the Delta variant's rise, there is a clear danger that jurors would be inherently biased to side with the company working on COVID, despite its lack of relevance to the issues in this case.

Moreover, unlike *Pac. Biosciences of CA, Inc. v. Oxford Nanopore Tech., Inc.*, 996 F.3d 1342 (Fed. Cir. 2021) — where the parties agreed that COVID was at least relevant — Qiagen's COVID-related efforts and products are totally *irrelevant* to this litigation, and thus should be excluded under Fed. R. Evid. 402. Further, the prejudice identified by the *Pac. Bioscience's* court is still pertinent, and thus clearly outweighs the non-existent probative value of this evidence under the balancing test of Fed. R. Evid. 403.

Finally, given that COVID did not exist in 2018 when this case was filed, Qiagen cannot claim prejudiced from having to tell its story without reference to COVID. The proposed Order does not preclude Qiagen from providing the jury with *relevant* background information about "who it is and what it does"; it merely prohibits Qiagen from biasing, distracting, and confusing the jury with talk of its COVID-related efforts and products, which have nothing to do with this case.

DATED: August 6, 2021

MCCARTER & ENGLISH, LLP

*/s/ Daniel M. Silver*

Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
405 N. King St., 8th Floor
Wilmington, DE 19801
(302) 984-6331
dsilver@mccarter.com
ajoyce@mccarter.com

John W. Shaw (#3362)
Jeff Castellano (#4837)
Nathan R. Hoeschen (#6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0701
jshaw@shawkeller.com
jcastellano@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Leigh J. Martinson
Keith Toms
Jill Mello, Ph.D.
Wyley S. Proctor
Quincy L. Kayton
MCCARTER & ENGLISH, LLP
265 Franklin Street
Boston, MA 02110
(617) 449-6500
lmartinson@mccarter.com
ktoms@mccarter.com
jmello@mccarter.com
wproctor@mccarter.com
qkayton@mccarter.com

Michael A. Albert
Eric J. Rutt
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210-2206
617.646.8240
malbert@wolfgreenfield.com
erutt@wolfgreenfield.com

*Attorneys for Plaintiffs*

Edward R. Reines
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000
edward.reines@weil.com

*Attorney for Plaintiff ArcherDX, LLC*

# Exhibit 11:

# Intentionally Left Blank

# Exhibit 12:

# Defendants' Motion in Limine 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ARCHERDX, LLC f/k/a ARCHERDX, INC. and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL, | ) | C.A. No. 18-1019-MN |
| *Plaintiffs*, | ) | **HIGHLY CONFIDENTIAL** **FILED UNDER SEAL** |
| v. | ) | |
| QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC., QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V. and JONATHAN ARNOLD, | ) | |
| *Defendants*. | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION *IN LIMINE* NO. 1 TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING DAMAGES THAT ARE NOT RECOVERABLE AND/OR WERE NOT TIMELY DISCLOSED**

Defendants move this Court to preclude Plaintiffs from presenting evidence or argument at trial concerning damages that are not recoverable under applicable law and/or that were never disclosed during discovery. First, Plaintiffs seek patent infringement damages based on the practice of method claims outside of the United States. In addition, Plaintiff ArcherDX ("Archer") seeks punitive damages in connection with its breach of fiduciary duty claims. These damages are not recoverable under applicable law. To the extent Archer seeks to present evidence of purported damages for breach of fiduciary duty beyond nominal damages, it should be precluded from doing so because no such damages were disclosed, during fact or expert discover or in response to QIAGEN's motion for summary judgement on damages.

## I. DAMAGES ARE NOT AVAILABLE FOR PRACTICE OF A METHOD OUTSIDE THE UNITED STATES

The asserted claims are all method claims. *See* D.I. 130, Exs. 1 and 2. Plaintiffs have alleged direct infringement under only 35 U.S.C. § 271 (a). *See* D.I. 130, ¶¶ 82, 166. Yet, Plaintiffs improperly seek to recover damages for QIAGEN's sales of products to customers who are located outside the United States. $2.2 Million of the total damages ($3.8 million) Plaintiffs seek for their patent infringement claims are for sales of products to customers abroad. *See* Ex. 1, Sims Supplemental Report, ¶ 12 of chart ("$1.6 million relating to accused U.S. sales, $2.2 million relating to accused sales outside the U.S.").

It is axiomatic that, "[m]ethod claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use." *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006). Indeed, a patentee cannot recover "damages (or injunctive relief) based on harm in another country independent of the theory of infringement liability at issue." *Abbott Cardiovascular Sys., Inc. v. Edwards Lifesciences Corp.*, C.A. No. 19-149-MN, 2019 WL 2521305, at *18 (D. Del. June 6, 2019). Remedies under United states patent law are not available for "harm caused by infringement occur[ing] in another country [when] the

patentee asserts infringement only under § 271(a)." *Id.* Accordingly, Plaintiffs cannot recover infringement damages for method claims under 35 U.S.C. § 271(a) based on the sale of products to customers outside the United States.[1]

Evidence of sales to customers outside the U.S. (who use those products outside the U.S.) is not relevant under the law and allowing plaintiffs to present such evidence will likely confuse the jury. Because such evidence has no probative value and will only stand to confuse and mislead the jury it should be precluded. *See* Fed. R. Evid. 402, 403.

## II. ARCHER'S PRESENTATION OF EVIDENCE FOR DAMAGES UNDER ITS BREACH OF FIDUCIARY DUTY CLAIM SHOULD BE LIMITED[2]

### A. Archer May Only Present Evidence of Nominal Damages

QIAGEN served an interrogatory asking Archer to identify all financial remedies it was claiming. With respect to breach of fiduciary duty, Archer's response was that Plaintiffs would provide further analysis "during expert discovery" and that additional discovery was needed. Ex. 2 at 30-31, 35. Archer's expert's report on damages identified no specific damages related to breach of fiduciary duty. *See* D.I. 353, ¶¶ 8-12. QIAGEN moved for summary judgment of no damages on Archer's breach of fiduciary duty claim. D.I. 324, 327. Archer's response was that it is entitled to "nominal damages." D.I. 352 at 4-5. In response to a summary judgment motion, the non-movant must identify the evidence it will present. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Because the only evidence of damage Archer has ever identified for its breach of fiduciary duty claim in the three opportunities it was given to make an

---

1 Un-asserted 35 U.S.C. § 271(f) also would provide no remedy for Plaintiffs. *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1366 (Fed. Cir. 2009) (Section 271(f) does not apply to method claims)

2 As discussed in Defendants' pretrial submissions, the breach of fiduciary duty claim should not be presented to a jury because the parties specifically waived and agreed that it would not be a jury issue. Presenting it to a jury could mislead and unduly influence a jury. *See., e.g,. Enzo Life Sciences, Inc. v. Digene Corp.,* No. CIV.A. 02-212-JJF*,* 2003 WL 21402512, *5 (D. Del. June 10, 2003) (bifurcating claims to prevent jury confusion).

identification, is a claim of "nominal damage" Archer is not entitled to present evidence of any other damage at trial. *See e.g. Becton Dickinson & Co. v. Tyco Healthcare Grp. LP*, C.A. No. 02-1694-GMS, 2006 WL 890995, at *9 (D. Del. Mar. 31, 2006) (ordering new trial where Plaintiff presented new infringement theory at trial different than theory espoused in plaintiff's claim charts, its expert reports regarding infringement, and its motion for summary judgment of infringement).

Because there is no trial by surprise or ambush, Archer presentation of evidence for damages related to its breach of fiduciary duty claim must be limited to "nominal damages only." *Point Prods v. SONY Music Entm't, Inc.*, 2002 WL 31856951 * 5 (S.D.N.Y. 2002) (precluding change to damages theory on eve of trial, and noting that any other result would undermine the philosophy of the Federal Rules under which "trial by ambush" is not acceptable.)

**B. No Punitive Damages Available for Breach of Fiduciary Duty**

In the event that the parties' agreement not to try issues arising from their agreements to a jury is found not to control,[3] Archer should be precluded from presenting any evidence relating to punitive damages for this claim. D.I. 352 at 3-4. Punitive damages are not an available remedy for a breach of fiduciary duty under Delaware law. *See Buchwald v. Renco Group*, 539 B.R. 31, 52-54 (S.D.N.Y. 2015) (no punitive damages in federal court on a Delaware breach of fiduciary duty claim); *see also, Gen. Adams v. Calvarese Farms Maint. Corp., Inc.*, C.A. No. 4262-VCP, 2010 WL 3944961, at *21, n.204 (Del. Ch. Sept. 17, 2010). Any attempt by Archer to introduce testimony or other evidence or argument concerning alleged punitive damages would be irrelevant to any claim or defense in this matter and would serve only to confuse and mislead the jury and prejudice Defendants. *See* Fed. R. Evid. 403.

---

[3] Additionally, fiduciary duty claims carry no right to jury trial pursuant to Delaware law. *See In re Hechinger Inv. Co. of Del.*, 327 B.R. 537, 544 (D. Del. 2005), *aff'd sub nom. In re Hechinger Inv. Co. of Del., Inc.*, 278 F. App'x 125 (3d Cir. 2008) ("Actions for breach of fiduciary duty, historically speaking, are almost uniformly actions 'in equity'—carrying with them no right to trial by jury.").

By: /s/ *Stephanie E. O'Byrne*

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendants QIAGEN Sciences, LLC, QIAGEN LLC f/k/a QIAGEN, Inc., QIAGEN Beverly LLC, f/k/a QIAGEN Beverly, Inc., QIAGEN Gaithersburg LLC, f/k/a QIAGEN Gaithersburg, Inc., QIAGEN GmbH, QIAGEN N.V., and Jonathan Arnold*

OF COUNSEL:

David Bilsker
Andrew E. Naravage
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111-4788
(415) 875-6600

Anne S. Toker
James E. Baker
Anastasia M. Fernands
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

Dated: July 29, 2021

# EXHIBIT 1

# TO DEFENDANTS MIL #1

THIS DOCUMENT HAS

BEEN REDACTED IN ITS

ENTIRETY

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

# EXHIBIT 2

# TO DEFENDANTS MIL #1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARCHERDX, INC., and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL, | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 18-1019-MN |
| QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC., QIAGEN GAITHERSBURG, LLC f/k/a QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V., and JONATHAN ARNOLD, | ) | **CONTAINS CONFIDENTIAL INFORMATION WHERE NOTED** |
| Defendants. | ) | |

**PLAINTIFFS' SUPPLEMENTAL OBJECTIONS AND RESPONSES TO <u>DEFENDANTS' THIRD SET OF INTERROGATORIES (NOS. 13 & 14)</u>**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, and Rule 26.1 of the Local Rules of the United States District Court for the District of Delaware, Plaintiffs ArcherDX, Inc. ("Archer") and The General Hospital Corporation d/b/a Massachusetts General Hospital ("MGH") (together, "Plaintiffs"), hereby supplement their objections and responses to the Defendants' Third Set of Interrogatories (Nos. 7-14) (the "Interrogatories") of QIAGEN Sciences, LLC, QIAGEN LLC (f/k/a QIAGEN, Inc.), QIAGEN Beverly, LLC (f/k/a/ QIAGEN Beverly, Inc.), QIAGEN Gaithersburg, LLC (f/k/a QIAGEN Gaithersburg, Inc.), QIAGEN GmbH, and QIAGEN N.V. (collectively, "QIAGEN"), and Jonathan Arnold ("Arnold," and used collectively with QIAGEN, "Defendants"), as follows:

## PRELIMINARY STATEMENT

Discovery is ongoing. The following responses and objections are based on records and

**INTERROGATORY NO. 14:**

State in complete detail all financial remedies—including any claim for damages in the form of lost profits or sales, exemplary and punitive damages, or a reasonable royalty—to which Plaintiffs contend they are entitled in this case, including without limitation all factual and legal bases for such contention and a detailed description of how such damages have been calculated, including without limitation any profits Plaintiffs contend they lost, the form of royalty Plaintiffs contend is appropriate, any royalty rate Plaintiffs contend should apply and the royalty base Plaintiffs contend it should be applied to, the factors by which Plaintiffs calculated that royalty rate, including Plaintiffs' assessment of the factors set forth in *Georgia Pacific Corp. v. United States Plywood Corp*., 318 F. Supp. 1116 (S.D.N.Y. 1970), the factors by which Plaintiffs determined the royalty base to which the rate should be applied, and the identity of all documents that contain information concerning Plaintiffs' damages contentions and Persons with knowledge concerning Plaintiffs' damages contentions.

**RESPONSE TO INTERROGATORY NO. 14:**

Plaintiffs object to this Interrogatory as seeking premature contentions and/or expert testimony, and as premature to the extent that Plaintiffs' response depends on collection of further discovery from Defendants and others in this case. Plaintiffs object to this Interrogatory as being compound and containing multiple subparts. Plaintiffs object to this Interrogatory on the grounds that it seeks information better sought through document production and depositions in the case.

Subject to and without waiver of the foregoing general and specific objections, Plaintiffs respond as follows:

As to the patent claims, Plaintiffs seek damages in an amount adequate to compensate for the infringement of the '810 Patent, including, but not limited to, lost profits, lost sales and price erosion and/or a reasonable royalty, together with interest and costs fixed by the Court. Plaintiffs also seek damages and attorneys' fees for Defendants' willful patent infringement.

As to the trade secret claims, Plaintiffs seek all damages to which they are entitled under 18 U.S.C. § 1836(b)(3), and related state causes of action including, but not limited to, damages for Archer's losses and Qiagen's unjust enrichment caused by the misappropriation of the trade secrets, and/or a reasonable royalty for the unauthorized disclosure or use of the trade secrets. Archer's damages include, but are not limited to, lost sales, lost contractual opportunities, lost sales

and price erosion, lost competitive advantage, lost research and development costs, and diminution of company value. Unjust enrichment damages include, but are not limited to, disgorgement of Qiagen's profits, avoided research and development costs, and accelerated market entry due to the misappropriation. Plaintiffs also seek exemplary damages and attorneys' fees for Defendants' willful and malicious misappropriation of Archer's trade secrets.

As to the false advertising claims, Plaintiffs seek all damages to which they are entitled for Defendants' false advertisement, including lost profits, disgorgement of profits, attorneys' fees and treble damages as provided in 15 U.S.C. § 1117(a) and (b), and related state causes of action related to unfair competition and deceptive trade practices.

Finally, Plaintiffs seek all damages to which they are entitled for Arnold's breach of fiduciary duties, Qiagen's aiding and abetting Arnold's breach of his fiduciary duties, and Qiagen's tortious interference with prospective business relations. These damages include lost profits, disgorgement of profits, and attorneys' fees and costs incurred as a result of such breaches. Specific damages, costs, fees, and expenses cannot be computed at the present time and depend on a variety of factors. Furthermore, as much of the information necessary to make damages calculations is in the possession of Defendants, Plaintiffs will also require discovery regarding at least Qiagen's customers, sales, revenues, profits, and research and development and related avoided development costs, in order to assess their damages. Moreover, Defendants' unlawful actions are ongoing, and thus the damages to which Plaintiffs are entitled continue to accrue. Accordingly, Plaintiffs will provide a further analysis of their damages during expert discovery.

Plaintiffs are continuing to investigate the subject matter of this Interrogatory and the discovery process is ongoing. If necessary, Plaintiffs will supplement their response and/or produce documents from which information responsive to this Interrogatory may be derived or ascertained as additional information is located and/or acquired.

**<u>First Supplemental Response to Interrogatory No. 14 (January 16, 2020)</u>**

Subject to its originally stated general and specific objections, and in addition to the responses provided above, Plaintiffs further state as follows:

The detail in Plaintiffs' responses to this interrogatory concerning patent infringement applies equally to both the '810 Patent and the '597 Patent.

As it relates to Qiagen's infringement of the Asserted Patents, Plaintiffs will pursue a claim for damages based on the profits lost (as a result of lost sales and price erosion) and/or a reasonable royalty for damages as a result of Qiagen's infringement.

Qiagen's infringement caused Plaintiffs to lose sales and profits. Details concerning such lost sales and profits are included above in response to Interrogatory No. 13, which is incorporated by reference herein. Archer should be awarded lost profits on at least a portion of Qiagen's accused product sales because but for Qiagen's infringement, Archer would arguably have made those sales. This conclusion is supported by at least the following reasons:

1. Archer and Qiagen are direct competitors and target the same markets and customers.

2. There is strong demand for the patented products, including Archer's products that are covered by the Asserted Patents and Qiagen's Accused Products. The actual sales of the products covered by the Asserted Patents demonstrate strong demand for the patented invention. Plaintiffs incorporate by reference herein Plaintiffs' Responses to Interrogatory Nos. 12, 18, and 19.

3. There are no non-infringing, acceptable, and available substitutes to the patented technology.

4. Plaintiffs had sufficient manufacturing and marketing capabilities to have made the claimed additional sales lost due to Qiagen's alleged infringement.

As it relates to price erosion, damages owed to Plaintiffs equals the difference between the pre-erosion price (or any increased prices Archer might have enacted during the period of

infringement) and the reduced price as a result of Qiagen's infringement. [redacted]

To the extent that the jury decides that lost profits damages are not an appropriate remedy for some portion of Qiagen's infringing sales, Plaintiffs are entitled to a reasonable royalty for those infringing sales.

A reasonable royalty is the rate that a willing licensor (the patentee / exclusive licensee) and a willing licensee (the infringer) would have agreed upon for use of the Asserted Patents. The agreement is often characterized as arising from a "hypothetical negotiation" between the parties on the eve of the infringement, or about the time the infringement began. The hypothetical negotiation for the Asserted Patents would have been conducted between Archer (the exclusive licensee of the Asserted Patents in the relevant fields, and co-owner of the '597 Patent) and Qiagen (the accused infringer).

In order to determine the reasonable royalty rate(s) for use of the Asserted Patents, the parties would evaluate (among other things) the factors set forth in the *Georgia-Pacific* case. The *Georgia-Pacific* case reflects commonly-used guidelines set forth by the courts for determining a reasonable royalty in a litigation context. The following is a discussion of some of the *Georgia-Pacific* factors potentially impacting a reasonable royalty in this case:

1. Factors 1, 2 and 12 relate to license agreements and royalties paid and received for the use of the Asserted Patents or comparable technology/patents. As noted above, Archer is the only entity licensed to practice the Asserted Patents in the relevant markets (and co-owns the '597 Patent) – neither MGH nor Archer have licensed the Asserted Patents to other entities enabling competition with Archer in the relevant markets.

2. Factor 3 relates to nature and scope of the hypothetical license. Because Archer has exclusive rights to the technology and Qiagen is a competitor, any "hypothetical" license would have granted Qiagen very limited non-exclusive rights to use the Asserted Patents at a rate

sufficient to compensate Archer for its lost profits.

3. Factor 4 relates to the licensor's established policy relating to licensing the Asserted Patents. [redacted] As discussed with respect to Factor 1 above, neither Archer nor MGH have licensed or offered to license the Asserted Patents to anyone else in the relevant markets. Instead, Archer has maintained exclusivity with regard to the Asserted Patents in the relevant markets. Furthermore, the technology covered by the Asserted Patents, and which Archer uses in its own products, are fundamental to Archer in selling those products. If Archer were to enter a license with a direct competitor like Qiagen, Archer would understand that it would be allowing Qiagen to market and sell a product in direct competition with the Archer products. Thus, when negotiating a license with Qiagen, Archer would demand a reasonable royalty rate which would compensate it for the potential economic exposure it may face as a result of entering the license.

4. Factor 5 relates to whether or not the licensor and licensee are competitors. Archer and Qiagen are direct competitors. At the hypothetical negotiation, the parties would recognize this and the agreed upon royalty rate would need to compensate Archer for the economic exposure it would experience if it entered a license with a direct competitor.

5. Factor 6 relates to the effect that selling the patented product has on the sale of other non-patented products. If discovery reveals an impact of selling the Accused Products on sales of other Qiagen products, such sales may impact the reasonable royalty rate that would have been agreed to by the parties.

6. Factor 7 relates to the duration of the hypothetical license. The term of the hypothetical license between Archer and Qiagen would begin on the date of the hypothetical negotiation. Given that both Asserted Patents issued recently, the long life remaining on the patents would be taken into account by the parties in arriving at a reasonable royalty.

7. Factors 8 and 11 relate to the established profitability and commercial success of the patented products and the use made by the infringer. As discussed above relating to lost profits, Archer and Qiagen's revenue from sales of the patented products reflect strong demand.

8. Factors 9, 10 and 13 relate to the advantages and benefits of using the patented technology, and the portion of the profits for accused sales should be credited to the patented invention. The use of the Asserted Patents provides significant benefits, and Plaintiffs' hereby incorporate by reference responses to Interrogatories 12, 18, and 19.

As to Archer's trade secret claims, the scope and extent of Qiagen's use of Archer's trade secrets, and the resulting unfair advantages conferred on Qiagen as a result of such acts, is the subject of ongoing discovery. Similarly, Archer is taking further discovery concerning its false advertising, breach of fiduciary duty, and other business tort claims.

A non-exhaustive list of beginning Bates numbers of documents potentially relevant to the information sought by this interrogatory follow: ADX–000014016, ADX-000014351, ADX-000015532, ADX-000021261, ADX-000022525, ADX-000022529, ADX-000022530-33, ADX-000022534, ADX-000022534-46, ADX-000022535-38, ADX-000022541-46, ADX-000022549-51, ADX-000022553, ADX-00002255862, ADX-000022566, ADX-000022567-68, ADX-000022578, ADX-000024667, ADX-000025124, ADX-000025246, ADX-000025385, ADX-000027741, ADX-000028711, ADX-000028830, ADX-000028847, ADX-00002886465, ADX-000030859, ADX-000032389, ADX-000033388, ADX-000035002, ADX-000035636, ADX-000037374, ADX-000037476, ADX-000037552, ADX-000037558, ADX-000038304, ADX-000039102, ADX-000042419, ADX-000042420, ADX-000042422, ADX-000042438, ADX-000043845, ADX-000044234, ADX-000044819, ADX-000045860, ADX-000046999, ADX-000048214, ADX-000048364, ADX-000048832, ADX-000052500, ADX-000053376, ADX-000053557, ADX-00005366264, ADX-000053679, ADX-000054662, ADX-000054664, ADX-000054715, ADX-000054931, ADX-000055198, ADX-000055216, ADX-000055224, ADX-

000055226, ADX-000055228, ADX-000055230, ADX-000057018, ADX-000070845, ADX-000072462, ADX-000073482, ADX-000073486, ADX-000073493, ADX-000073532, ADX-000073558, ADX-000073623, ADX-000077747, ADX-000079137, ADX-000080783, ADX-000083383, ADX-000084033, ADX-000084078, ADX-000084393, ADX-000088721, ADX-000090516, ADX-000090747, ADX-000091485, ADX-000097505, ADX-000097810, ADX-000099456, ADX-000099658, ADX-000099951, ADX-000100039, ADX-000100045, ADX-000101501, ADX-000101592, ADX-000103689, ADX-000103695, ADX-000103729, ADX-000103741, ADX-000103744, ADX-000103747, ADX-000104760, ADX-000104837, ADX-000104880, ADX-000106003-04, ADX-000107672, ADX-000107710, ADX-000107715, ADX-000108003, ADX-000108623, ADX-000109242, ADX-000109559, ADX-000111684, ADX-000111689, ADX-000111694, ADX-000111970, ADX-000112041, ADX-000113662, ADX-000116912, ADX-000117535, ADX-000119928, ADX-000120706, ADX-000121765-66, ADX-000121908, ADX-000122147, ADX-000124617, ADX-000124690, ADX-000125370, ADX-000125728, ADX-000126257, ADX-000126366, ADX-000159157, ADX-000159239, ADX-000159509, ADX-000159635, ADX-000159640, ADX-000160416, ADX-000160566, ADX-000162153, ADX-000162303, ADX-000162639, ADX-000165452, ADX-000165499, ADX-000166638, ADX-000166748, ADX-000167597-98, ADX-000169018, ADX-000170335, ADX-000170545, ADX-000171429, ADX-000172247, ADX-000172809, ADX-000172880, ADX-000173106, ADX-000232379, ADX-000234364, ADX-000234375, ADX-000235840, ADX-000235883, ADX-000235884, ADX-000236661, ADX-000237429, ADX-000237929, ADX-000242902, ADX-000243059, ADX-000243214, ADX-000243216, ADX-000243218, ADX-000243601, ADX-000245864, ADX-000250248, ADX-000251912, ADX-000252102, ADX-000252144, ADX-000252237, ADX-000252690, ADX-000253759, ADX-000255161, ADX-000256813, ADX-000257218, ADX-000257237, ADX-000257564, ADX-000258006, ADX-000258020, ADX-000258133, ADX-000258135, ADX-000259303, ADX-000260456, ADX-

000260497, ADX-000260624, ADX-000262647, ADX-000262753, ADX-000262811, ADX-000262815, ADX-000266787, ADX-000266924, ADX-000266998, ADX-000267135, ADX-000267159, ADX-000267372, ADX-000267919, ADX-000268064, ADX-000269285, ADX-000269287, ADX-000269363, ADX-000273367, ADX-000273374, ADX-000273950, ADX-000273960, ADX-000273962, ADX-000275047, ADX-000277000, ADX-000277035, ADX-000277223, ADX-000278598, ADX-000279635-36, ADX-000281149, ADX-000281151, ADX-000281159, ADX-000281996, ADX-000282001-02, ADX-000282006-07, ADX-000282352, ADX-000282843, ADX-000282870, ADX-000284894, ADX-000286932, ADX-000286943-44, ADX-000321433, ADX-000322202, ADX-000323017, ADX-000324121, ADX-000324663, ADX-000327020, ADX-000328495, ADX-000333705, ADX-000335727, ADX-000340216, ADX-000340613, ADX-000340878, ADX-000342714, ADX–000356466, ADX-000357316, ADX-000357503, ADX-000387583, ADX–000389985, ADX-000395801, ADX-000396403, ADX-000406662, ADX-000406955, ADX-000410968, ADX-000412562, ADX-000412951, ADX-000418257, ADX-000419247, ADX-000420809, ADX-000423725, ADX-000424494, ADX-000436713, ADX-000438379, ADX-000472155, ADX-000472272, ADX-000472568, ADX-000473315, ADX-000473652, QIA-00001011, QIA-00065915, QIA-00065919, QIA-00066777, QIA-00067279, QIA-00074250, QIA-00074853, QIA-00075762, QIA-00077029-31, QIA-00077032, QIA-00077033-113, QIA-00077079, QIA-00077115, QIA-00077117, QIA-00077118, QIA-00077119-127, QIA-00077128, QIA-00077129-134, QIA-00077206, QIA-00077213, QIA-00079330, QIA-00114840, QIA-00118584, QIA-00129851, QIA-00140439, QIA-00143256, QIA-00154672, QIA-00154711, QIA–00219149, QIA-00251036, QIA-00261840, QIA-00269934, QIA-00302845, QIA-00343186, QIA-00388564, QIA-00390720, QIA-00456436, QIA-00457170, QIA-00481635, QIA-00482248, QIA-00581784.

*/s/ Kimberly A. Mottley*
Steven M. Bauer
Kimberly A. Mottley
Christopher J. Deck
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110
(617) 526-9600

Tara R. Melillo
PROSKAUER ROSE LLP
Eleven Time Square
New York, NY 10036
(212) 969-5426

John W. Shaw (No. 3362)
Jeff Castellano (No.4837)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0701
jshaw@shawkeller.com
jcastellano@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiffs ArcherDX, Inc. and The General Hospital Corporation d/b/a Massachusetts General Hospital*

Dated: January 16, 2020

**CERTIFICATE OF SERVICE**

I, Jeff Castellano, hereby certify that on January 16, 2020, the foregoing document was served on the persons listed below in the manner indicated:

**BY EMAIL**

David E. Moore
Bindu A. Palapura
Stephanie E. O'Byrne
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

Anne S. Toker
James E. Baker
Anastasia M. Fernands
QUINN EMANUEL URQUHART
& SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
annetoker@quinnemanuel.com
jamesbaker@quinnemanuel.com
anastasiafernands@quinnemanuel.com

David Bilsker
Andrew E. Naravage
QUINN EMANUEL URQUHART
& SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
davidbilsker@quinnemanuel.com
andrewnaravage@quinnemanuel.com

*/s/ Jeff Castellano*
John W. Shaw (No. 3362)
Jeff Castellano (No. 4837)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0701
jshaw@shawkeller.com
jcastellano@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiffs ArcherDX, Inc. and The General Hospital Corporation d/b/a Massachusetts General Hospital*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ARCHERDX, LLC and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL,<br><br>Plaintiffs,<br><br>v.<br><br>QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC., QIAGEN GAITHERSBURG, LLC f/k/a QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V., and JONATHAN ARNOLD,<br><br>Defendants. | ) | C.A. No. 18-1019-MN<br><br>**HIGHLY CONFIDENTIAL – FILED UNDER SEAL** |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION *IN LIMINE* NO. 1 TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING DAMAGES**



ME1 37132872v.3

# I. INTRODUCTION

Defendants' Motion in Limine No. 1 ("Mot.") depends on their mistaken assumption that a patentee can never receive damages on a method patent claim for products used abroad. The governing law is to the contrary. Under *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.* 807 F.3d 1283, 1306 (Fed. Cir. 2015), Plaintiffs can recover damages based on Qiagen's products used to practice the claimed methods, including those accused products made in the U.S. and sold to customers who use them abroad. Plaintiffs, of course, should be permitted to submit evidence on these damages to the jury. Defendants never identify how highly probative damages evidence could possibly "confuse and mislead the jury." Mot. 2. There is no danger from allowing this evidence at trial; precluding this evidence, on the other hand, is legal error.

# II. ARGUMENT

## A. Plaintiffs are Eligible for Damages on the Accused Products at Issue

Plaintiffs can recover damages on Accused Products made and/or sold within the United States, even when those products are used by customers outside the United States. Where, as here, "a physical product is being employed to measure damages for the infringing use of patented methods," the patentee can recover damages on that physical product, even when the product is used outside of the United States. *See Carnegie*, 807 F.3d at 1305-06. In *Carnegie*, the Federal Circuit applied a two-step analysis. As a threshold matter, the patentee must establish infringement of the method claims in the United States under § 271(a) with a causal relationship to the accused infringers' sales. *See id.* at 1294-97; 1307. In *Carnegie*, the Federal Circuit concluded that causation to domestic infringing uses was established because the design, simulation, and testing of the chips in California involved infringing uses and caused the worldwide sales. *Id.* at 1307 ("all of Marvell's sales are strongly enough tied to its domestic infringement as a causation matter"). The Federal Circuit concluded, however, that causation of worldwide sales by domestic

infringing uses is not enough alone to recover for worldwide sales. If the plaintiff wants to recover for sales of products used by customers abroad, the Federal Circuit fashioned a rule that such products must also be made, used or sold in the United States.

Here, the threshold causation test is met. Plaintiffs will prove that Qiagen infringes Plaintiffs' asserted patents when it uses the patented methods as part of its design, development, marketing, and testing of the Accused Products—all within the United States.[1] For example, Qiagen's global marketing strategy depends on Qiagen's testing (*i.e.*, performance of the infringing methods) in the United States to generate the data used to market the Accused Products worldwide. *See, e.g.*, Ex. A, QIA-00200691; Ex. B, QIA-0045311; Ex. C, QIA-00058743-45; Ex. D, Samara Tr. 29:18-21, 129:16-20, 130:7-15, 160-176, 201:19-204:3, 260-270. Qiagen frequently and routinely practices the patented methods in the United States in order to assess and confirm the Accused Products' "performance after the sequencing." *See, e.g.*, Ex. E, QIA-00149451. Indeed, even in performing its own quality control procedures on the Accused Products, all made in the United States, Qiagen practices the patented methods. *See, e.g.* Ex. D, Samara Tr., 131:5-12; Ex. F, QIA-00030288; Ex. G, Huang Tr., 71:19-72:11 These and other U.S.-based infringing activities are causally related to Qiagen's sales of the Accused Products, including to customers who use the products outside the United States.

To satisfy the second step of the *Carnegie* test, Archer will prove that at least the products used abroad are further tied to the United States by ***one*** of making, using, or selling in the United States, or importing into the United States. Here, this requirement is easily met. All of the Accused Products are ***made*** in the U.S. *See, e.g.*, Ex. D, Samara Tr. at 131:5-12 (Qiagen's Associate Dir.

[1] Had Qiagen raised this issue on summary judgment, Plaintiffs would have had space to address these factual issues in a more developed way. Plaintiffs offer to submit a more specific factual showing if the Court believes that is warranted.

of Global Product Management admitting that the Accused Products—"all of them"—are "made in Frederick, Maryland"); *see also id*. at 15:12-17; 12:13-19. Thus, establishing territoriality here is much simpler than in *Carnegie*. There, the products at issue were "manufactured, sold, and used abroad without ever having entered the United States." *Carnegie*, 807 F.3d at 1307-08. As a result, the question of territoriality hinged on whether the products were "sold" in the United States and the *Carnegie* court vacated the damages award for "the portion of the damages award … which apply the royalty rate to chips ***not made*** or used in, or imported into, the United States" and ordered "[a] new trial … to determine whether those chips were sold in the United States." *Id.* at 1311 (emphasis added). By contrast, all of the Accused Products in this case are made in the United States, and territoriality is established. *See* Ex. D, Samara Tr. at 131:5-12. Moreover, there is ample evidence that Qiagen sells the Accused Products in the U.S.[2] The *Carnegie* test is readily satisfied.[3]

**B. Defendants Have Identified No Basis for Excluding this Probative Evidence Under FRE 403**

Defendants fail to establish that the probative value of Plaintiffs' damages case outlined above (even if contested factually) is "substantially outweighed" by a danger of confusing or misleading the jury, which is all Qiagen argues. Mot. 2. There is nothing confusing or misleading about Plaintiffs' damages evidence. Insofar as some potential "confusion" arises, the Court is capable of managing that with trial rulings and any necessary jury instruction.

---

[2] For example, Plaintiffs will prove that Qiagen conducts a substantial level of sales activities for the Accused Products within the United States, including for those Accused Products sold to customers for use outside the U.S. *See, e.g.*, Ex. D, Samara Tr. 160-64; Ex. B, QIA-0045311.

[3] Defendants' cited cases are beside the point: neither *Ormco* nor *Abbott Cardiovascular* concerns monetary damages. *See Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006) (infringement); *Abbott Cardiovascular Sys., Inc. v. Edwards Lifesciences Corp*. (No. 19-149 (MN), 2019 WL 2521305, at *18 (D. Del. June 6, 2019) (injunction).

DATED: August 3, 2021

MCCARTER & ENGLISH, LLP

*/s/ Daniel M. Silver*

Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
405 N. King St., 8th Floor
Wilmington, DE 19801
(302) 984-6331
dsilver@mccarter.com
ajoyce@mccarter.com

John W. Shaw (#3362)
Jeff Castellano (#4837)
Nathan R. Hoeschen (#6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0701
jshaw@shawkeller.com
jcastellano@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Leigh J. Martinson
Keith Toms
Jill Mello, Ph.D.
Wyley S. Proctor
James J. Thomson
Quincy L. Kayton
MCCARTER & ENGLISH, LLP
265 Franklin Street
Boston, MA 02110
(617) 449-6500
lmartinson@mccarter.com
ktoms@mccarter.com
jmello@mccarter.com
wproctor@mccarter.com
jthomson@mccarter.com
qkayton@mccarter.com

Michael A. Albert
Eric J. Rutt
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210-2206
617.646.8240
malbert@wolfgreenfield.com
erutt@wolfgreenfield.com

*Attorneys for Plaintiffs*

Edward R. Reines
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000
edward.reines@weil.com

*Attorney for Plaintiff ArcherDX, LLC*

# EXHIBIT A

Bates No. QIA-00200691

# THIS DOCUMENT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT B

Bates No. QIA-0045311

THIS DOCUMENT HAS

BEEN REDACTED IN ITS

ENTIRETY

# EXHIBIT C

# THIS DOCUMENT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT D

THIS DOCUMENT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT E

# THIS DOCUMENT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT F

# THIS DOCUMENT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT G

# THIS DOCUMENT HAS BEEN REDACTED IN ITS ENTIRETY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ARCHERDX, LLC f/k/a ARCHERDX, INC. and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL, | ) | |
| *Plaintiffs*, | ) | C.A. No. 18-1019-MN |
| v. | ) | **HIGHLY CONFIDENTIAL** **FILED UNDER SEAL** |
| QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC., QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V. and JONATHAN ARNOLD, | ) | |
| *Defendants*. | ) | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION *IN LIMINE* NO. 1 TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING DAMAGES THAT ARE NOT RECOVERABLE AND/OR WERE NOT TIMELY DISCLOSED**

A method claim is ***not*** infringed by the sale or manufacture of a product that is capable of performing the method. *See, e.g., Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1313 (Fed. Cir. 2003) ("The sale or manufacture of equipment to perform a claimed method is not direct infringement within the meaning of 35 U.S.C. § 271(a)."). "The law is unequivocal that the sale of equipment to perform a process is not a sale of the process within the meaning of 271(a)." *Joy Techs. Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993); *see also Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, 2018 WL 6629709, at *2 (D. Del. Dec. 19, 2018)(same); *Cf. Cardiac Pacemakers, Inc. v. St Jude Med., Inc.* 576 F.3d 1348, 1364 (Fed. Cir. 2009) (*en banc*) (the "components of the process are the steps of the process," and "supplying an intangible step is a physical impossibility.").

The Federal Circuit has vacated a damages award because, *inter alia*, one of the sales on which damages were based was to a foreign customer, but the patent claimed only a method. *Standard Havens Products, Inc. v. Gencor Indus. Inc.*, 953 F.2d 1360, 1374 (Fed. Cir. 1991). U.S. patent laws operate only domestically, and do not extend to foreign activities. *Meyer Intellectual Properties Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1371 (Fed. Cir. 2012) (infringement of a method requires performance of each step within the United States.). Plaintiffs admit they are seeking damages for products ***made but not used,*** in the U.S., even though making the products is not itself infringement, and the cases above show such damages are not available. Thus, Plaintiffs' interpretation of *Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.*, 807 F.3d 1283 (Fed. Cir. 2015) to allow damages for the practice of a method outside the U.S. because a product was sold in the U.S. is contrary to law. For these reasons, QIAGEN's motion should be granted.

By: /s/ *Stephanie E. O'Byrne*

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendants QIAGEN Sciences, LLC, QIAGEN LLC f/k/a QIAGEN, Inc., QIAGEN Beverly LLC, f/k/a QIAGEN Beverly, Inc., QIAGEN Gaithersburg LLC, f/k/a QIAGEN Gaithersburg, Inc., QIAGEN GmbH, QIAGEN N.V., and Jonathan Arnold*

OF COUNSEL:

David Bilsker
Andrew E. Naravage
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111-4788
(415) 875-6600

Anne S. Toker
James E. Baker
Anastasia M. Fernands
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

Dated: August 6, 2021

# Exhibit 13:

# Defendants' Motion in Limine 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ARCHERDX, LLC f/k/a ARCHERDX, INC. and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL, | ) | |
| *Plaintiffs*, | ) | C.A. No. 18-1019-MN |
| v. | ) | **HIGHLY CONFIDENTIAL** **FILED UNDER SEAL** |
| QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC., QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V. and JONATHAN ARNOLD, | ) | |
| *Defendants*. | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION *IN LIMINE* NO. 2 TO PRECLUDE IMPROPER COMPARISON OF DEFENDANTS' ACCUSED PRODUCTS WITH ARCHER'S PRODUCTS**

Defendants move this Court to preclude Plaintiffs from relying on or presenting arguments, evidence, or opinions which compare QIAGEN products to ArcherDX, LLC's ("Archer") products pursuant to Federal Rule of Evidence 403. Such a comparison is contrary to the law and will only confuse the issues and mislead and distract the jury from the legal test for infringement: a comparison of the accused products and the asserted claims. Thus, even if there were any limited probative value to such a comparison, it is substantially outweighed by unfair prejudice to QIAGEN, confusion of the issues, and the potential to mislead the jury.

## I. COMPARISON BETWEEN A PATENTEE'S PRODUCTS AND THE ACCUSED PRODUCTS IS IRRELEVANT TO INFRINGEMENT

Infringement requires comparison of the accused product to the asserted claims. *See Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1381 (Fed. Cir. 1998) ("[A] court may not predicate an infringement determination on a comparison of an accused product with a patentee's commercial embodiment of his claimed invention."). Thus, the only relevant issue for infringement is whether the accused product contains every limitation of the asserted claims. Plaintiffs disregard this law and appear ready to present evidence focusing instead on purported similarities between Archer's commercial products and the QIAGEN accused products. But infringement cannot be determined by a comparison between the accused product and the patentee's commercial products. *See, e.g.*, *AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1327 (Fed. Cir. 2007) ("Infringement, either literally or under the doctrine of equivalents, does not arise by comparing the accused product . . . with a commercialized embodiment of the patentee.") (quoting *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002)).

In particular, in their pretrial disclosures, Plaintiffs have included as trial exhibits documents that purport to compare Archer's commercial products and the QIAGEN accused products. For example, in Plaintiffs' trial exhibits attached hereto as Exhibits 5-7, certain comparisons are made between Archer's panels and QIAGEN's technology. By way of additional

example, another trial exhibit (Exhibit 4) includes a comparison of the QIAGEN and Archer workflow. These comparisons and similar comparisons made between QIAGEN's and Archer's products are irrelevant to any claims in this case and will only confuse and mislead the jury.

Regardless of these comparisons, the only relevant issue for the jury to decide regarding infringement is whether the accused products practice each and every limitation of the asserted claims, either literally or under the doctrine of equivalents. Plaintiffs should not be able to confuse the infringement issue by presenting comparisons with Archer's commercial products, which is contrary to the law regarding infringement and which would be prejudicial to QIAGEN.

## II. PLAINTIFFS PRESENTED NO OPINION THAT ARCHER'S COMMERCIAL PRODUCTS PRACTICE EVERY LIMITATION OF ANY ASSERTED CLAIM

Additionally, none of Plaintiffs' experts have provided any analysis that the Archer covered products practice each and every limitation of any claims of the asserted patents. Under certain limited circumstances, the Federal Circuit has allowed a comparison between a commercial embodiment and the accused products for certain purposes but a prerequisite to that comparison is particularized evidence that the commercial embodiment meets all limitations of the relevant claim. *See Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1288 (Fed. Cir. 2010) (noting the Court has "accepted the comparison of an accused product to a commercial embodiment ***where the commercial embodiment met all of the claim limitations***") (emphasis added). Here, Dr. Lennon, Plaintiffs' technical expert, performed no detailed analysis of Archer's products in relation to the claims, and certainly did not perform the limitation-by-limitation analysis required to present any comparison of Archer and QIAGEN's products. Dr. Lennon's opinions were limited to two paragraphs—one summarizing a conversation with Mr. Stahl, Archer's CSO, and the other relying on Dr. Zamanian's analysis of a single limitation in the '597 patent—and states in conclusory fashion that "Archer's AMP technology practices at least claim

16 of the ’810 patent and at least claim 1 of the ’597 patent.” Ex. 1, *Expert Report of Niall Lennon* ¶¶ 533-35 (Oct. 7, 2020). Mr. Sims, Plaintiffs’ purported financial expert, stated in conclusory fashion that he “understand[s] that all of Archer’s products are covered by the Patents-in-Suit.” Ex. 2, *Expert Report of Raymond S. Sims Regarding the Commercial Success of U.S. Patent Nos. 10,017,810 and 10,450,597* ¶ 10 (Nov. 20, 2011). But Mr. Sims, who has no technical background,[1] is not qualified to offer an opinion about use of the asserted claims. Thus, Plaintiffs have no way of presenting an opinion to the jury that the Archer commercial products practice the asserted claims.[2] Therefore, any general presentation to the jury of similarity between Archer’s products and QIAGEN’s accused products would be a waste of time, would confuse the infringement issues, and would mislead the jury. *See ICU Med., Inc. v. RyMed Techs., Inc.*, 752 F. Supp. 2d 486, 496 (D. Del. 2010) (excluding comparison between products even as to copying because there is “minimal relevance” that is “greatly outweighed by the implicit invitation that the jury decide which of the competing products it likes better”).

Finally, Plaintiffs cannot claim that comparisons between QIAGEN’s and Archer’s products are relevant to any other issue in this case. As discussed above, Plaintiffs have no evidence showing that the Archer commercial products practice every limitation of any asserted claim. Purported “copying” of Archer’s products is therefore irrelevant to any patent findings, including alleged willful infringement and copying of the patent as it relates to the obviousness analysis. *See Alarm.com, Inc. v. SecureNet Techs. LLC*, C.A. No. CV 15-807-RGA, 2019 WL 133228, at *4 (D. Del. Jan. 8, 2019) (“[T]he replicated product must be shown to be an embodiment of the claims.”).

---

[1] *See* Ex. 3, *Expert Report of Raymond S. Sims* ¶¶ 4-8 (Oct. 7, 2020).

[2] Plaintiffs cannot offer a lay witness to opine on the issue of whether its products practice any of the asserted claims. Even if Plaintiffs’ witness were qualified to do so, Plaintiffs would have had to present a report disclosing the analysis. *See Innogenetics, N.V. v. Abbott Lab’ys*, 512 F.3d 1363, 1375 (Fed. Cir. 2008) (District Court properly precluded named inventor from giving opinion testimony because he had not submitted an expert report); Fed. R. Evid. 702.

OF COUNSEL:

David Bilsker
Andrew E. Naravage
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111-4788
(415) 875-6600

Anne S. Toker
James E. Baker
Anastasia M. Fernands
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

Dated: July 29, 2021

By: /s/ Stephanie E. O'Byrne
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendants QIAGEN Sciences, LLC, QIAGEN LLC f/k/a QIAGEN, Inc., QIAGEN Beverly LLC, f/k/a QIAGEN Beverly, Inc., QIAGEN Gaithersburg LLC, f/k/a QIAGEN Gaithersburg, Inc., QIAGEN GmbH, QIAGEN N.V., and Jonathan Arnold*

# EXHIBIT 1

CONTAINS HIGHLY CONFIDENTIAL MATERIAL
SUBJECT TO PROTECTIVE ORDER

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARCHERDX, INC. and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL, | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 18-1019-MN |
| QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC., QIAGEN GAITHERSBURG, LLC f/k/a QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V., and JONATHAN ARNOLD, | ) | |
| Defendants. | ) | |

**EXPERT REPORT OF NIALL LENNON**

**Table of Contents**

I. Introduction .......... 1
II. Qualifications .......... 2
III. Summary of Opinion .......... 4
IV. Legal Standard for Infringement .......... 4
A. Direct Infringement .......... 4
B. Indirect Infringement .......... 6
C. Burden of Proof .......... 7
V. Claim Constructions .......... 8
VI. Materials Reviewed and Methodology .......... 9
VII. Technical Background .......... 9
VIII. Summary of the Asserted Patents .......... 19
A. ’810 Patent .......... 19
B. ’597 Patent .......... 21
IX. Overview of the Products Accused of Patent Infringement .......... 24
A. QIAseq Targeted DNA Panels and Index Kits .......... 25
1. Fragmentation .......... 34
2. Library construction with UMI and sample indexing .......... 34
a. QIAseq Illumina Adapters .......... 35
b. QIAseq Ion Torrent Adapters .......... 41
3. Target enrichment by Single Primer Extension .......... 43
a. GSPs in QIAseq Catalog and Custom Panels .......... 44
b. QIAseq Illumina Forward Primer .......... 48
c. QIAseq Ion Torrent Forward Primer .......... 49
4. Sample indexing and amplification .......... 50
a. QIAseq Illumina Universal Primer and Sample Index Primer .......... 50
b. QIAseq Ion Torrent Universal Primer and Sample Index Primer .......... 53
5. Sequencing-ready library .......... 54
B. QIAseq Targeted RNAscan Panels and Index Kits .......... 54
C. QIAseq Immune Repertoire RNA Library Kits and Index Kits .......... 59
D. GeneRead QIAact Kits .......... 62
X. Infringement Analysis: U.S. Patent No. 10,017,810 .......... 64
A. Use of the Accused Products Practices Each Step of the Asserted Claims of the ’810 Patent 64

1. Claim 16 ..... 64
a. Overview ..... 64
b. Preamble ..... 66
c. Step (i): Ligating ..... 68
(1) QIAseq Targeted DNA Panels and Index Kits ..... 68
(2) QIAseq Targeted RNAscan Panels and Index Kits ..... 84
(3) QIAseq Immune Repertoire RNA Library Kits and Index Kits ..... 85
(4) GeneRead QIAact Kits ..... 86
d. Step (ii): First Amplification ..... 87
(1) QIAseq Targeted DNA Panels and Index Kits ..... 87
(2) QIAseq Targeted RNAscan Panels and Index Kits ..... 91
(3) QIAseq Immune Repertoire RNA Library Kits and Index Kits ..... 91
(4) GeneReader QIAact Kits ..... 92
e. Step (iii): Second Amplification ..... 92
(1) QIAseq Targeted DNA Panels and Index Kits ..... 93
(2) QIAseq Targeted RNAscan Panels and Index Kits ..... 112
(3) QIAseq Immune Repertoire RNA Library Kits and Index Kits ..... 113
(4) GeneRead QIAact Kits ..... 113
2. Claim 17 ..... 114
3. Claim 18 ..... 115
4. Claim 19 ..... 115
5. Claim 20 ..... 116
B. Qiagen Customers Use the Accused Products in a Manner that Practices Each Step of the Asserted Claims of the ’810 Patent ..... 116
C. Qiagen Encourages its Customers to Use the Accused Products in a Manner that Practices Each Step of the Asserted Claims of the ’810 Patent. ..... 120
D. The Accused Products Are Especially Made or Especially Adapted to Infringe the Asserted Claims of the ’810 Patent and Are Not a Staple Article or Commodity of Commerce Suitable for Substantial Non-Infringing Use ..... 120
E. Qiagen’s Proposed Non-infringing Alternatives for the ’810 Patent Would Not Be Commercially Acceptable. ..... 121
XI. Infringement Analysis: U.S. Patent No. 10,450,597 ..... 125
A. Use of the Accused Products Practices Each Step of the Asserted Claims of the ’597 Patent 125
1. Claim 1 ..... 125

a. Order of Steps ..... 125
b. Overview ..... 127
c. Preamble ..... 129
d. Limitation 1[a]: Step (a), Contacting a First Nucleic Acid Template ..... 131
(1) Detailed depiction of QIAseq workflow ..... 132
(2) Double-Stranded Target Nucleic Acid ..... 135
(3) Ordinary meaning of "5′ tail" encompasses Qiagen's adapter-ligated DNA fragments 140
(4) Contacting a double-stranded target nucleic acid with a target-specific primer ..... 144
e. Limitation 1[b]: Step (b), Contacting A Second Nucleic Acid Template ..... 148
f. Limitation 1[c]: Wherein Clauses Regarding Step (b) ..... 153
g. Limitation 1[d]: Extension Product Following Steps (a) and (b) ..... 154
h. Limitation 1[e]: Step (c), Successive Rounds of Polymerase Extension ..... 157
(1) Step c(i): The SIP is the tail primer ..... 157
(2) Step c(ii): The UP is the primer ..... 160
2. Claim 3 ..... 161
3. Claim 4 ..... 162
4. Claim 5 ..... 162
5. Claim 10 ..... 163
6. Claim 11 ..... 164
7. Claim 13 ..... 164
8. Claim 17 ..... 165
9. Claim 18 ..... 165
10. Claim 19 ..... 167
11. Claim 20 ..... 167
12. Claim 21 ..... 168
13. Claim 22 ..... 169
14. Claim 23 ..... 169
15. Claim 24 ..... 169
16. Claim 27 ..... 170
17. Claim 29 ..... 171
B. Qiagen Customers Use the Accused Products in a Manner that Practices Each Step of the Asserted Claims of the '597 Patent ..... 171
C. Qiagen Encourages its Customers to Use the Accused Products in a Manner that Practices Each Step of the Asserted Claims of the '597 Patent ..... 174

D. The Accused Products Are Especially Made or Especially Adapted to Infringe the Asserted Claims of the '597 Patent and Are Not a Staple Article or Commodity of Commerce Suitable for Substantial Non-Infringing Use ..... 174

E. Qiagen's Proposed Non-infringing Alternatives for the '597 Patent Are Not Commercially Acceptable..... 175

XII. The Value of the Patented Technology..... 178

A. Single Primer Extension Improved Upon Existing Target Enrichment Techniques ... 178

B. Benefits of Archer's Patented Single Primer Extension Technique ..... 180

1. Detecting Fusions with Unknown Fusion Partners ..... 181

2. Reducing PCR Bias and Errors ..... 185

3. Small input amount..... 187

4. Barcoding..... 188

5. Efficiency and Cost ..... 188

6. Detecting Cancer with Degraded Input Material..... 188

C. Archer's AMP Technology Practices the Claimed Inventions ..... 189

XIII. TRADE SECRET MIsappropriation..... 191

A. INTRODUCTION..... 191

XIV. LEGAL STANDARD FOR TRADE SECRET MISAPPROPRIATION ..... 193

XV. TECHNOLOGICAL BACKGROUND..... 196

A. Development of Fragmentation/End Repair/A-Tailing Mix by Archer/Enzymatics ... 202

B. Continuation of Development of Archer Fragmentation-ER/A Mix by Qiagen..... 209

C. Use of Archer Fragmentation-ER/A Mix in Accused Targeted DNA Products..... 213

D. Fragmentation-ER/A Mixture TS1 (XXII(1))..... 215

1. The Fragmentation-ER/A Mixture TS1 Is a Trade Secret..... 216

2. Qiagen Uses TS1 in the QIAseq Targeted DNA Product Line ..... 221

E. Fragmentation Mixture TS2 (XXII(5)) ..... 226

1. The Fragmentation Mixture TS2 Is a Trade Secret ..... 227

2. Qiagen Uses TS2 in the QIAseq Targeted DNA Product Line ..... 228

F. Archer VariantPlex Fragmentation Mixture TS3 (XXIV)..... 232

1. The VariantPlex Fragmentation-ER/A Mix TS3 Is a Trade Secret..... 233

2. Qiagen Had Access to and Misappropriated the VariantPlex Fragmentation-ER/A Mix TS3 ..... 234

XVII. FUSIONPLEX TRADE SECRET MISAPPROPRIATION ..... 237

A. Archer's FusionPlex Chemistry ..... 237

B. Access by Qiagen to the FusionPlex Trade Secrets ..... 240

C. Misappropriation of FusionPlex ER/A Mix in Accused Targeted RNAscan Products 246

1. The FusionPlex ER/A Mix Is a Trade Secret ... 247

2. Qiagen Had Access to and Misappropriated the FusionPlex ER/A Mix TS4 ... 250

paraffin embedding) routinely induces degradation of the genetic material. This degradation means that some of the molecules in the sample are already fragmented into small sizes. In traditional PCR methods these fragments may be too short to span both opposing priming sites resulting in loss of the molecule and decreased sensitivity.

### C. Archer's AMP Technology Practices the Claimed Inventions

533. Through conversations with Joshua Stahl, Archer's Chief Scientific Officer, I understand that Archer's AMP technology involves ligating an adapter containing a molecular barcode and a sample index to double-stranded nucleic acid fragments. The adapter-ligated fragments are subjected to two rounds of PCR. The first PCR involves a first set of gene-specific primers and a first primer that targets the ligated adapter. These primers amplify the adapter-ligated fragments. The second PCR involves a second set of gene-specific primers and a second primer that targets the ligated adapter. The second primer that targets the adapter includes all of the sequence of the primer from the first PCR that targets the adapter, and also includes several additional bases in the 3′ direction, making the second primer nested with respect to the first primer that targets the adapter.

534. I have reviewed the Opening Report of Professor Mostafa Zamanian and agree with his analysis and conclusion that Archer's FusionPlex practices the limitation of claim 1 of the '597 patent requiring "wherein the different hybridization sequences have different 3' ends, and wherein each primer of the plurality of different primers does not anneal to the same sequence of the double-stranded target nucleic acid as any other primer of the plurality of different primers." Professor Zamanian's analysis is consistent with my understanding, based on conversations with Mr. Stahl, that Archer designs its gene-specific primers in such a way as to avoid any two primers annealing to the same sequence of the sample fragments in the PCR reactions.

535. Based on this information, my experience and familiarity with NGS technology, and the materials cited below, including ADX-000054502, ADX-000018480, ADX-000225156, I conclude that Archer's AMP technology practices at least claim 16 of the '810 patent and at least claim 1 of the '597 patent.

Dated**: October 7, 2020**

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ARCHERDX, INC. and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 18-1019-MN |
| QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC. QIAGEN GAITHERSBURG, LLC f/k/a QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V. and JONATHAN ARNOLD | ) | |
| Defendants. | ) | |

**EXPERT REPORT OF RAYMOND S. SIMS REGARDING**
**THE COMMERCIAL SUCCESS OF U.S. PATENT NOS. 10,017,810 AND 10,450,597**

**November 20, 2020**

## Table of Contents


1 EXPERT WITNESS DISCLOSURE ........ 1

2 BACKGROUND AND QUALIFICATIONS ........ 2

3 INFORMATION RELIED UPON ........ 2

4 FACTS AND BACKGROUND ........ 3

4.1 Patents-in-Suit ........ 3

4.2 Archer's Covered Products ........ 3

4.3 Qiagen's Accused Products ........ 5

5 COMMERCIAL SUCCESS ANALYSIS ........ 5

5.1 There is Strong Demand for Archer's and Qiagen's Products that are Covered by, or Allegedly Infringe, the Patents-in-Suit ........ 6

5.2 Using Only Its Products that are Covered by the Patents-in-Suit, and its Underlying AMP Technology, and Despite Significant Barriers to Entry, Archer has Created a Global Market Footprint in NGS CDx ........ 11

5.3 Archer's and Qiagen's Products that are Covered by, or Allegedly Infringe, the Patents-in-Suit Form the Basis of Competition for a Subset of Valuable CDx Opportunities ........ 13

5.4 Invitae Paid a Substantial Amount of Money to Acquire Archer in Order to Gain Access to Archer's Products and Technology that are Covered by the Patents-in-Suit and, through them, Access to Valuable CDx Market Opportunities. ........ 14

5.5 The Success of Archer's and Qiagen's Products that are Covered by, or Allegedly Infringe, the Patents-in-Suit is not due to Discounted Pricing or Excessive Marketing and Promotion ........ 18

5.6 Conclusion ........ 21

# 1 EXPERT WITNESS DISCLOSURE

1. I am the same Raymond S. Sims who submitted the Expert Report of Raymond S. Sims dated October 7, 2020 (my "Initial Expert Report") on behalf of ArcherDX ("Archer") and The General Hospital Corporation d/b/a Massachusetts General Hospital ("MGH") (collectively, "Plaintiffs"). The following report contains my expected expert testimony regarding the commercial success of products that embody the subject matter claimed in U.S. Patents Nos. 10,017,810 ("the '810 Patent") and 10,450,597 ("the '597 Patent") (collectively, the "Patents-in-Suit").

2. I understand that Qiagen has claimed that the Patents-in-Suit are invalid. I understand that the commercial success of a product embodying the invention(s) of a patent can be used as an "objective indicia" in demonstrating the non-obviousness of the underlying patented inventions. The reason commercial success is an indicator of non-obviousness is because, if a product is successful in the marketplace, as demonstrated by objective factors, including substantial sales and market share in a relevant market segment, there are reasons to infer that such market success would have provided an incentive for other hypothetical inventors to pursue the patented inventions if they had been obvious. That is, other third parties would have been motivated to develop and commercialize the products to capitalize on their market success had the inventions underlying those products been obvious.

3. As part of Archer's response, I have been asked by counsel for Archer to offer my opinions, based on my knowledge, experience, and analysis of information available in this case, about whether products in this matter, which are covered by, or allegedly infringe, the Patents-in-Suit, have achieved commercial success. In this report, all references to Archer's sales that are "covered by," or to Qiagen's sales that "allegedly infringe," the Patents-in-Suit are not meant to

imply legal conclusions. Rather, they are meant to reflect my understanding that these products practice, or allegedly practice, the methods described by the Patents-in-Suit and, therefore, are relevant to my evaluation of commercial success.

4. This report is based upon information currently known to me. I reserve the right to rely upon any additional information that becomes available to me after the date of this report, as well as to amend or modify this report to reflect such information or if further research or analysis warrants. I also reserve the right to offer rebuttal testimony to any evidence or argument advanced by the Defendants[1] regarding issues of commercial success and to prepare demonstrative exhibits to help explain my opinions at trial. Attached to this report are schedules summarizing and/or supporting my opinions.

## 2 BACKGROUND AND QUALIFICATIONS

5. My background and qualifications are presented in my Initial Expert Report.

## 3 INFORMATION RELIED UPON

6. In forming my opinions in this matter, my staff and I reviewed and/or relied upon the various analyses, documents, and information referenced and/or contained in the text, footnotes, attachments, and Schedule 3.0 of my Initial Expert Report, including discussions with Archer's technical expert, Dr. Niall Lennon, and Dr. Lennon's expert report dated October 7, 2020[2] (the "Lennon Report"), and discussions with Archer's market expert, Dr. Maria Fe Paz, and Dr. Paz's expert report dated October 7, 2020[3] (the "Paz Report").

---

[1] Qiagen Sciences, LLC; Qiagen LLC f/k/a Qiagen, Inc.; Qiagen Beverly, LLC f/k/a Qiagen Beverly, Inc.; Qiagen Gaithersburg, LLC f/k/a Qiagen Gaithersburg, Inc.; Qiagen GMBH; Qiagen N.V. (collectively, "Qiagen"); and Jonathan Arnold ("Mr. Arnold" and collectively with Qiagen, "Defendants")

[2] Expert Report of Niall Lennon, 10/7/20 ("Lennon Report").

[3] Expert Report of Maria Fe Paz, M.D., Ph.D., M.B.A., 10/7/20 ("Paz Report").

7. In addition, my staff and I reviewed and/or relied upon the various analyses, documents, and information referenced and/or contained in the text, footnotes, attachments, and Schedule 3.0CS of this report, including discussions with Dr. Lennon and Dr. Lennon's rebuttal expert report dated November 19, 2020[4] (the "Lennon Rebuttal Report").

8. I reserve the right to supplement and/or amend my report to reflect information made available to me after issuance of this report or as the legal proceedings otherwise warrant. To the extent this information may be relevant to my opinions and conclusions, I reserve the right to supplement and/or amend my report in light of any such information.

# 4 FACTS AND BACKGROUND

## 4.1 Patents-in-Suit

9. I understand that both the '810 Patent and '597 Patent relate to, and enable multiple potential embodiments of, inventions that enable library preparation methodologies that utilize single-primer extension ("SPE") and allow users to analyze an adjacent unknown sequence next to a known sequence in a multiplex manner (the "Archer-Patented SPE Technology").[5] I also understand that both Archer's proprietary Anchored Multiplex PCR enrichment chemistry (the "AMP technology") and Qiagen's allegedly infringing chemistry (the "SPE technology") are two such embodiments.[6]

## 4.2 Archer's Covered Products

10. Archer utilizes its proprietary AMP technology at the core of its precision oncology solution, which has enabled Archer to develop industry-leading products and services that

[4] Rebuttal Expert Report of Niall Lennon, 11/19/20 (the "Lennon Rebuttal Report").
[5] Lennon Report, Sections IX and XII.A-XII.B; Discussion with Dr. Lennon.
[6] Lennon Report, Sections IX and XII.B; Discussion with Dr. Lennon.

optimize therapy and monitor cancer.[7] As such, I understand that all of Archer's products are covered by the Patents-in-Suit and all of its CDx development activities are undertaken either directly, using these products, or indirectly, using the patented AMP technology.

11. Archer sells Research Use Only ("RUO") products for therapy optimization and cancer monitoring, consisting of its VariantPlex, FusionPlex, LiquidPlex and Immunoverse (collectively, "ArcherPlex") products and is developing its Personalized Cancer Monitoring ("PCM") in vitro diagnostic ("IVD") products.[8] If granted regulatory approval, Archer's PCM products are intended as IVD's to non-invasively and quantitatively measure cancer recurrence or progression, as well as therapeutic efficacy, to determine a treatment regimen and refine therapy, with the expectation that this will improve patient outcomes across multiple clinical applications as a prognostic device for predicting recurrence of primary cancer after initial treatment.[9] Archer has also developed its STRATAFIDE IVD product, which has the potential to be the first-line tumor profiling companion diagnostic ("CDx") test for any patient with a late-stage solid tumor.[10] Archer intends to submit STRATAFIDE in 2020, and PCM in the future, for FDA approval in the U.S.[11] STRATAFIDE and PCM have both received "Breakthrough Device" designations from the FDA, which offers priority review for certain medical devices that provide for more effective treatment or diagnosis of life-threatening or irreversibly debilitating human diseases or conditions for which no approved or cleared treatment exists, or that offer significant advantages over existing, approved or cleared, alternatives.[12] This designation and

---

[7] ADX-000499791-500067 at 499900.
[8] ADX-000499791-500067 at 499900.
[9] ADX-000499791-500067 at 499903.
[10] ADX-000499791-500067 at 499903.
[11] ADX-000499791-500067 at 499900.
[12] ADX-000499791-500067 at 499900.

Executed on November 20, 2020

Raymond S. Sims
Vice President
Charles River Associates

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ARCHERDX, INC. and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL,<br><br>Plaintiffs,<br><br>v.<br><br>QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC. QIAGEN GAITHERSBURG, LLC f/k/a QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V. and JONATHAN ARNOLD<br><br>Defendants. | ) | Civil Action No. 18-1019-MN |

**EXPERT REPORT OF RAYMOND S. SIMS**
**October 7, 2020**

# Table of Contents


1 EXPERT WITNESS DISCLOSURE .....1

2 BACKGROUND AND QUALIFICATIONS .....2

3 INFORMATION RELIED UPON .....3

4 SUMMARY OF OPINIONS .....3

5 FACTS AND BACKGROUND .....5

5.1 Overview .....5

5.2 Parties .....10

5.2.1 Archer .....10

5.2.2 MGH .....15

5.2.3 Qiagen .....15

5.2.4 Mr. Arnold .....17

5.3 History of the Parties and Archer's Proprietary AMP Technology .....18

5.3.1 Development Efforts Related to Archer's Proprietary AMP Technology .....18

5.3.2 Archer Successfully Developed its Proprietary AMP Technology .....19

5.3.2.1 Patents-in-Suit .....19

5.3.2.1.1 '810 Patent .....19

5.3.2.1.2 '597 Patent .....20

5.3.2.2 The Benefits of the Archer-Patented SPE Technology .....20

5.3.3 Post-Development Events Related to Archer's Proprietary AMP Technology .....25

5.4 Qiagen's SPE Technology and Accused Products Allegedly Infringe the Patents-in-Suit .....27

5.4.1.1 QIAseq .....28

5.4.1.2 GeneRead QIAact .....30

5.4.1.3 Custom Panels .....30

5.5 NGS Diagnostics Market .....31

5.5.1 Overview .....31

5.5.2 Competition Between Qiagen and Archer .....32

5.6 Non-Patent Claims .....42

5.6.1 Qiagen Allegedly Misappropriated Archer's Trade Secrets to Develop its SPE Technology and Accused Products .....42

5.6.2 Mr. Arnold Allegedly Breached his Fiduciary Duties of Care and Loyalty to Archer .....42

6 DAMAGES ANALYSES AND CONCLUSIONS .....43

6.1 Qiagen's Accused Products Financial Data Assumptions and Limitations .....43

6.2 Patent Infringement Damages .....44

6.2.1 Overview .....44

6.2.2 Lost Profits .....45

6.2.2.1 There is a Strong Demand for Products Covered by the Patents-in-Suit .....45

6.2.2.2 The Absence of Acceptable, Non-Infringing Alternatives .....47

6.2.2.3 Manufacturing and Marketing Capacity to Exploit Demand ....49
6.2.2.4 Quantification of Lost Profits....51
6.2.2.4.1 Lost Net Revenue....51
6.2.2.4.2 Lost Profits....56
6.2.3 Reasonable Royalty....60
6.2.3.1 Hypothetical Negotiation....60
6.2.3.2 Market Approach....62
6.2.3.2.1 Licenses Involving the Patents-in-Suit....62
6.2.3.2.2 Licenses Involving Technologies with Varying Degrees of Technological Comparability to the Patents-in-Suit....71
6.2.3.2.3 Royalty Reports Without Accompanying License Agreements....80
6.2.3.2.4 Conclusion....81
6.2.3.3 *Georgia-Pacific* Analysis....82
6.2.3.3.1 *Georgia-Pacific* Factor 1: The royalties received by the patentee for the licensing of the patents-in-suit, proving or tending to prove an established royalty....82
6.2.3.3.2 *Georgia-Pacific* Factor 2: The rates paid by the licensee for the use of other patents comparable to the patents-in-suit....82
6.2.3.3.3 *Georgia-Pacific* Factor 3: The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold....82
6.2.3.3.4 *Georgia-Pacific* Factor 4: The licensor's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly....83
6.2.3.3.5 *Georgia-Pacific* Factor 5: The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter....83
6.2.3.3.6 *Georgia-Pacific* Factor 6: The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales....84
6.2.3.3.7 *Georgia-Pacific* Factor 7: The duration of the patent and the term of the license....85
6.2.3.3.8 *Georgia-Pacific* Factor 8: The established profitability of the product made under the patent; its commercial success; and its current popularity. *Georgia-Pacific* Factor 11: The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use....86
6.2.3.3.9 *Georgia-Pacific* Factors 9 and 10: The utility and advantages of the patent property over older modes or devices, if any, that had been used for working out similar results; the nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention....88
6.2.3.3.10 *Georgia-Pacific* Factor 12: The portion of the profit or the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions....89
6.2.3.3.11 *Georgia-Pacific* Factor 13: The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer....90
6.2.3.3.12 *Georgia-Pacific* Factor 14: The opinion testimony of qualified experts....92

6.2.3.3.13 *Georgia-Pacific* Factor 15: The amount that a licensor and a licensee would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement. 92

6.2.3.4 The Proper Royalty Base ....94

6.2.3.4.1 The Accused Products Kits are the Smallest Salable Patent-Practicing Unit ....96

6.2.3.4.2 The Entire Market Value Rule is Satisfied Because the Inventions of the Patents-in-Suit Drive Customer Demand for, and Substantially Create, the Value of the Accused Products....96

6.2.3.4.3 My Royalty Base Conclusions are Supported by the Licensing History of Archer and Qiagen, Including the Fact that my Starting Point for the License Negotiation was Based on Rates that Were Applied to the Value of the Entire End Product....97

6.2.3.5 Reasonable Royalties ....98

6.2.3.6 Reasonable Royalty Damages Conclusion....101

6.2.4 Archer's Total Patent Infringement Damages ....101

6.3 Non-Patent Claims Damages – Qiagen's Unjust Enrichment ....102

6.3.1 Revenue ....104

6.3.2 Expenses ....104

6.3.3 Profit ....106

7 ANALYSIS AND CONCLUSIONS CONCERNING IRREPARABLE HARM....107

7.1 Analytical Framework....107

7.2 Evidence of Archer's Irreparable Harm ....107

7.2.1 Archer is Likely to Lose Substantial CDx Sales and Market Share to Qiagen in the Future....107

7.2.2 Archer is Likely to Lose Additional Non-CDx Sales and Market Share to Qiagen in the Future ....112

7.2.3 Archer's Forced Competition with Products that Incorporate the Patents-in-Suit....115

7.2.4 Limitations of Traditional Damages Measures....115

7.2.4.1 Harm to Reputation and Goodwill ....115

7.2.4.2 Lost Profits....117

7.2.4.2.1 Price Erosion ....117

7.2.4.2.2 Lost Market Share Benefits of Early Entrance....122

7.2.4.3 Reasonable Royalties ....123

7.3 Conclusion....124

## 1 EXPERT WITNESS DISCLOSURE

1. I have been retained as an expert in this case by counsel for ArcherDX ("Archer") and The General Hospital Corporation d/b/a Massachusetts General Hospital ("MGH") (collectively, "Plaintiffs"). This report contains my opinions as to:

- the amount of damages suffered by Plaintiffs due to the actions of Qiagen Sciences, LLC; Qiagen LLC f/k/a Qiagen, Inc.; Qiagen Beverly, LLC f/k/a Qiagen Beverly, Inc.; Qiagen Gaithersburg, LLC f/k/a Qiagen Gaithersburg, Inc.; Qiagen GMBH; Qiagen N.V. (collectively, "Qiagen"); and Jonathan Arnold ("Mr. Arnold" and collectively with Qiagen, "Defendants"). These actions include Defendants' alleged misappropriation of trade secrets, breach of fiduciary duties, other common law claims (collectively, the "non-patent claims"), and patent infringement (patent infringement, together with the non-patent claims, collectively, the "alleged unlawful actions"); and
- Plaintiffs' request for a permanent injunction and other forms of relief in connection with claims of irreparable harm due to Defendants' alleged unlawful actions.

2. As it relates to the claims of patent infringement, I understand that the patents Qiagen is accused of infringing are U.S. Patents Nos. 10,017,810 ("the '810 Patent") and 10,450,597 ("the '597 Patent) (collectively, the "Patents-in-Suit").

3. Attached to this report are schedules that support my opinions and on which I may base exhibits to be used at trial.

## 2 BACKGROUND AND QUALIFICATIONS

4. I am a Vice President of Charles River Associates ("CRA") in its Chicago office. CRA is an international business and economic consulting firm focusing on, among other things, intellectual property matters in the context of strategy, licensing, valuation and litigation consulting. CRA is a leading provider of expert damage analysis and testimony for complex intellectual property litigation matters.

5. I was awarded a Bachelor of Commerce degree, with concentrations in accounting and finance, from the University of Calgary, in Alberta, Canada. Thereafter, I was awarded a Master of Management degree, with concentrations in accounting information systems and quantitative analysis, from Northwestern University's J.L. Kellogg Graduate School of Management.

6. I have served as a consultant to a wide variety of business and industrial clients and governmental agencies on matters involving financial and statistical analysis and modeling for the purpose of interpreting and projecting data and evaluating the economic impact of business decisions, transactions and economic events. I have served as an expert witness or consultant in a wide range of litigation matters, including patent infringement, trade secret misappropriation, breach of contract, breach of fiduciary duty and antitrust litigation. Although the issues have varied from case to case, most included an analysis and evaluation of financial data for the purpose of determining the extent of financial damages. I have also advised clients on strategic and valuation issues relating to intellectual property and license negotiations.

7. My curriculum vitae, which includes all publications and presentations I have authored is attached hereto at Tab 1. A list of the cases in which I have testified in the last five years is attached hereto at Tab 2.

8. CRA is being compensated on a rate times hours basis for the work my staff and I perform. The rate for my time is $625 per hour. The rates of other staff assigned to this project

range from $340 to $625 per hour. CRA's compensation does not depend in any way on the outcome of this litigation.

## 3 INFORMATION RELIED UPON

9. In forming my opinions in this matter, my staff and I reviewed and/or relied upon documents produced by Archer and Qiagen; interrogatory responses; deposition transcripts and exhibits; legal filings generated in this matter; as well as publicly-available information. In addition, I and/or my staff have had discussions with Archer employees, Archer's technical expert, Dr. Niall Lennon, and Archer's market expert, Dr. Maria Fe Paz. I have also reviewed Dr. Lennon's expert report[1] (the "Lennon Report") and Dr. Paz's expert report[2] (the "Paz Report"). A list of the documents and information reviewed by me and/or those under my direction is attached as Schedule 3.0 or referenced in the text, footnotes, and attached schedules of this report.

10. I reserve the right to supplement and/or amend my report to reflect information made available to me after issuance of this report or as the legal proceedings otherwise warrant. To the extent this information may be relevant to my opinions and conclusions, I reserve the right to supplement and/or amend my report in light of any such information.

## 4 SUMMARY OF OPINIONS

11. Archer has made various claims alleging that the Defendants have engaged in unlawful actions that have both harmed Archer and unjustly enriched Qiagen.

12. With respect to Archer's claim that Qiagen has infringed the Patents-in-Suit, based on the my analysis of the evidence currently available and discussed in this report, I concluded that,

---

[1] Expert Report of Niall Lennon, 10/7/20 ("Lennon Report").
[2] Expert Report of Maria Fe Paz, M.D., Ph.D., M.B.A., 10/7/20 ("Paz Report").

Executed on October 7, 2020

Raymond S. Sims
Vice President
Charles River Associates

# EXHIBIT 4

THIS DOCUMENT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 5

# THIS DOCUMENT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 6

# THIS DOCUMENT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 7

THIS DOCUMENT HAS

BEEN REDACTED IN ITS

ENTIRETY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARCHERDX, LLC and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL, | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 18-1019-MN |
| QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC., QIAGEN GAITHERSBURG, LLC f/k/a QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V., and JONATHAN ARNOLD, | ) | **HIGHLY CONFIDENTIAL – FILED UNDER SEAL** |
| Defendants. | ) | |

**PLAINTIFFS' OPPOSITION TO QIAGEN'S MOTION IN LIMINE NO. 2**

# I. DR. LENNON'S COMMERCIAL EMBODIMENT OPINION

## A. Qiagen Cannot Challenge the Sufficiency of Evidence Supporting Dr. Lennon's Opinions in a Motion in Limine

In its motion in limine, Qiagen argues that the evidence Dr. Lennon cites in support of his opinion that Archer's products practice the asserted claims is insufficient. Br. at 2 (challenging sufficiency of Ex. 1, Lennon Opening Report, at ¶¶ 533-35). As an initial matter, this is procedurally improper; "while argument regarding the sufficiency of the evidence might be a proper argument for summary judgment or for judgment as a matter of law, it is not a proper basis for a motion to exclude evidence prior to trial." *Meyer Intell. Properties v. Bodum*, 690 F.3d 1354, 1378 (Fed. Cir. 2012) (internal quotations omitted); *see also Wasica Fin. GmbH v. Schrader Int'l*, No. CV 13-1353-LPS, 2020 WL 509182, at *1 (D. Del. Jan. 31, 2020) (denying motion in limine: "Defendants' motion is essentially a motion for summary judgment, which is not a proper basis for a MIL."). Qiagen's motion should be denied for this reason alone.

## B. Dr. Lennon's Unrebutted Commercial Embodiment Opinion Is Admissible

Qiagen contends that Dr. Lennon "did not perform the limitation-by-limitation analysis required to present any comparison of Archer and QIAGEN's products." Br. at 2. But none of the five cases that Qiagen cites supports the proposition that a limitation-by-limitation analysis is required to render admissible an expert's opinion that a patentee's product embodies the asserted claims. None of the five cases—*Spectrum*, *AquaTex*, *Adams*, *ICU Medical*, and *Alarm.com*—even discusses whether the patentee presented evidence that its product practiced the asserted patent, much less address an alleged required level of detail. At most, Qiagen's argument goes to weight, not admissibility. Even if it were appropriate to weigh evidence to resolve a MIL—it is not—Dr. Lennon's commercial embodiment analysis stands unrebutted: Qiagen's expert never disputed Dr. Lennon's analysis and Qiagen never asked Dr. Lennon about it at his deposition.

## II. PRODUCT-TO-PRODUCT COMPARISONS ARE PROBATIVE OF AT LEAST COPYING, WILLFULNESS, OBVIOUSNESS, AND COMPETITION.

Qiagen seeks to exclude highly probative evidence relating to comparisons between Archer's patented products and Qiagen's accused products. Qiagen cites *ICU Medical* as supporting the exclusion of a "comparison between products even as to copying because there is 'minimal relevance.'" Br. at 3. Not true. In *ICU Medical*, the parties *agreed* that "evidence comparing the [accused product] to ICU's [commercial embodiment] as part of its willfulness and obviousness contentions" is admissible. *ICU Medical, Inc. v. RyMed Techs., Inc.*, 752 F. Supp. 2d 486, 491 (D. Del. 2010). Moreover, the *ICU* court observed that "'substantial similarity to, the patented product (as opposed to the patent)' is a relevant factor in assessing 'copying.'" *Id.* (quoting *Iron Grip, Inc. v. USA Sports*, 392 F.3d 1317, 1325 (Fed. Cir. 2004)). Here, as in *ICU*, comparisons of the patented and accused products are relevant to willfulness, obviousness, and copying.

Comparisons between Qiagen's accused products and Archer's commercial embodiment are also probative of competition between the parties, which is relevant to Plaintiffs' patent-related remedies. For example, Qiagen's damages expert, Mr. Martinez, contests the extent and nature of competition between the parties. Ex. A, Martinez Opening Report, ¶¶ 176-196 (reasonable royalty); ¶ 256-258 (lost profits); ¶¶ 274-275 (irreparable harm). Mr. Martinez bases his opinions in part on alleged differences and similarities between Archer's products and the Accused Products, including purported deficiencies of Archer's customized kits, customer decisions to use QIAGEN's products versus Archer's products, and an alleged market definition based on whether products are detecting "known fusions" versus "unknown fusions." *Id.* at ¶¶ 180, 193-96. Qiagen has affirmatively made relevant the comparisons it now tries to exclude.

Archer will not suggest that a product-to-product comparison is relevant to infringement.

The Court will instruct the jury that infringement requires a comparison of the patent claims to the accused product and there is no reasonable basis to believe the jury will not understand this.

## III. THE FOUR DOCUMENTS THAT QIAGEN SEEKS TO EXCLUDE ARE RELEVANT TO DISPUTED ISSUES.

Qiagen also attempts to exclude four specific documents (Br., Exs. 4-7). However, each of these documents is admissible and does not implicate any overriding FRE 403 concerns. Three of Qiagen's cited documents include product comparisons as part of "competitive landscape" or "market landscape" analyses and are patently relevant to competition between the parties. Ex. 5, §1.4; Ex. 6, §1.4; Ex. 7, p. 4). In the fourth document, Qiagen personnel lament that [redacted]. Ex. 4, p. 4. As a result, a Qiagen scientist, Eric Lader, asks a scientist who developed the accused RNAscan product, to "provide an honest comparison of the two workflows so we can understand what they are speaking of?" Ex. 4, p. 3. Dr. Lader explained that this customer [redacted] who was [redacted] Ex. B, Lader Dep. Tr. 288:3-12. Evidence that customers sought to play Archer and Qiagen off each other to secure lower prices is relevant to competition; the fact that "[t]here is no difference from workflow steps" (Ex. 4, p. 2) highlights the risk of each party losing sales to the other, rather than to some other alleged competitor.

Finally, product comparisons are also relevant to secondary considerations. Indeed, when disputing Dr. Lennon's analysis of industry praise, Qiagen's own technical expert cites a document that Qiagen now seeks to exclude (Ex. 7). Ex. C, Metzker Reply Report, ¶ 177 n.335 (citing QIA-00276982 [Ex. 7]). Such evidence is, at minimum, relevant to obviousness.

* * *

For the foregoing reasons, Qiagen's motion in *limine* should be denied.

DATED: August 3, 2021

MCCARTER & ENGLISH, LLP

*/s/*

Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
405 N. King St., 8th Floor
Wilmington, DE 19801
(302) 984-6331
dsilver@mccarter.com
ajoyce@mccarter.com

John W. Shaw (#3362)
Jeff Castellano (#4837)
Nathan R. Hoeschen (#6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0701
jshaw@shawkeller.com
jcastellano@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Leigh J. Martinson
Keith Toms
Jill Mello, Ph.D.
Wyley S. Proctor
James J. Thomson
Quincy L. Kayton
MCCARTER & ENGLISH, LLP
265 Franklin Street
Boston, MA 02110
(617) 449-6500
lmartinson@mccarter.com
ktoms@mccarter.com
jmello@mccarter.com
wproctor@mccarter.com
jthomson@mccarter.com
qkayton@mccarter.com

Michael A. Albert
Eric J. Rutt
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210-2206
617.646.8240
malbert@wolfgreenfield.com
erutt@wolfgreenfield.com

*Attorneys for Plaintiffs*

Edward R. Reines
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000
edward.reines@weil.com

*Attorney for Plaintiff ArcherDX, LLC*

# EXHIBIT A

# THIS DOCUMENT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT B

THIS DOCUMENT HAS

BEEN REDACTED IN ITS

ENTIRETY

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ARCHERDX, INC. and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 18-cv-01019-MN-CJB |
| QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, INC., QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V., and JONATHAN ARNOLD, | ) | **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY** |
| Defendants. | ) | |

**REPLY EXPERT REPORT OF DR. MICHAEL METZKER REGARDING THE INVALIDITY OF U.S. PATENT NOS. 10,017,810 AND 10,450,597**

175. Dr. Lennon also relies on QIAGEN's sales of the Accused Products to attempt to demonstrate the commercial succes of the '810 and '597 Patents.[332] I disagree that this is evidence of non-obviousness for at least two reasons. First, as detailed in my Rebuttal Report,[333] QIAGEN's Accused Products do not practice any claim of the '810 or '597 Patents. Second, Dr. Lennon has not provided any evidence that there is a nexus between the commercial success of QIAGEN's Accused Products and the purported inventions of the '810 or '597 Patents. The commercial success of QIAGEN's Accused Products could be attributed to QIAGEN's market position, marketing, existing relationships with customers in the field, features that were in the prior art, or any other unclaimed features.

176. For these reasons, I disagree with Dr. Lennon that the purported commercial success is attributable to the inventions of the '810 or '597 Patents.

**B. Industry Praise**

177. Dr. Lennon relies on various QIAGEN documents to show purported industry praise of the inventions of the '810 and '597 Patents.[334] But these documents only support the conclusion that various technologies have tradeoffs,[335] and in any event this praise is not linked to the purported inventions of the '810 or '597 Patents.[336] Dr. Lennon's reliance on annother QIAGEN document only shows that the Archer FusionPlex Heme v2 Panel can cover many

---

[332] *See id.* ¶ 437.

[333] *See* Metzker Rebuttal Report ¶¶ 141-514.

[334] *See* Lennon Rebuttal Report ¶¶ 440-43.

[335] *See id.* ¶ 440 (citing Wang Dep. Ex. 4, QIA-00276982 at QIA-00276985).

[336] *See id.* ¶¶ 441-42 (citing Lader Dep. Ex. 31, QIA-00689470 at QIA-00689472).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ARCHERDX, LLC f/k/a ARCHERDX, INC. and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL, | ) | |
| *Plaintiffs*, | ) | C.A. No. 18-1019-MN |
| v. | ) | |
| QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC., QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V. and JONATHAN ARNOLD, | ) | |
| *Defendants*. | ) | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION *IN LIMINE* NO. 2 TO PRECLUDE IMPROPER COMPARISON OF DEFENDANTS' ACCUSED PRODUCTS WITH ARCHER'S PRODUCTS**

Plaintiffs' procedural argument should be rejected as QIAGEN's MIL does not seek de facto summary judgment and is not dispositive of any issue. In both cases cited by Plaintiffs, the motion addressed dispositive issues. *See Meyer Intellectual Properties Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1378 (Fed. Cir. 2012); *Wasica Finance GmbH v. Schrader International, Inc.*, C.A. No. 13-1353-LPS, 2020 WL 509182, at *1 (D. Del. Jan. 31, 2020).

Plaintiffs do not dispute that their experts only provided conclusory statements that the Archer products practice any asserted claim. Evidence on issues where an expert has offered only conclusory statements is routinely excluded. *See, e.g.*, *Align Tech., Inc. v. 3Shape A/S*, C.A. No. 17-1646-LPS, 2020 WL 4926164, at *10 (D. Del. Aug. 14, 2020). The patentee must produce evidence that the allegedly embodying products are "coextensive with" the claims of the asserted patents in order for them to be legally relevant. *See Leapfrog Enterprises, Inc. v. Fisher-Price, Inc.*, C.A. No. 03-927-GMS, 2005 WL 1331216, at *2 (D. Del. June 6, 2005) ) (precluding evidence where patentee had no evidence that the commercial product practiced each limitation of any asserted claim). Because Plaintiffs offer no evidence that the Archer products practice any asserted claim, product comparisons should be excluded. *See Masimo Corp. v. Philips Elec. N. Am. Corp.*, C.A. No. 09-80-LPS, 2014 WL 4652333, at *1 (D. Del. Sept. 12, 2014) (precluding evidence of copying unless patentee can prove nexus).

Regarding purported relevance to competition, Plaintiffs can offer evidence regarding the market and the competitive effect that the QIAGEN products have on this market without providing a feature-by-feature, product-to-product comparison.

Finally, QIAGEN's MIL does not seek to entirely exclude the documents attached as Exhibits 4-7. Instead, it provided these as examples of where Plaintiffs may seek to draw unfairly prejudicial comparisons between QIAGEN's products and Archer's products. The Court should preclude Plaintiffs from using these exhibits to offer a product-to-product comparison.

By: /s/ *Stephanie E. O'Byrne*

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendants QIAGEN Sciences, LLC, QIAGEN LLC f/k/a QIAGEN, Inc., QIAGEN Beverly LLC, f/k/a QIAGEN Beverly, Inc., QIAGEN Gaithersburg LLC, f/k/a QIAGEN Gaithersburg, Inc., QIAGEN GmbH, QIAGEN N.V., and Jonathan Arnold*

OF COUNSEL:

David Bilsker
Andrew E. Naravage
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111-4788
(415) 875-6600

Anne S. Toker
James E. Baker
Anastasia M. Fernands
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

Dated: August 6, 2021

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that true and correct copies of the foregoing document were caused to be served on August 9, 2021 on the following counsel in the manner indicated:

**VIA EMAIL:**

David E. Moore
Bindu A. Palapura
Stephanie E. O'Byrne
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

Anne S. Toker
Anastasia M. Fernands
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
annetoker@quinnemanuel.com
anastasiafernands@quinnemanuel.com

David Bilsker
Andrew E. Naravage
QUINN EMANUEL URQUHART & SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
davidbilsker@quinnemanuel.com
andrewnaravage@quinnemanuel.com

Jeffrey C. Wu
QUINN EMANUEL URQUHART & SULLIVAN LLP
60 E. South Temple, Suite 500
Salt Lake City, UT 84111
(801) 515-7300
jwu@quinnemanuel.com

Dated: August 9, 2021

/s/ *Daniel M. Silver*
Daniel M. Silver (#4758)