## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARCHERDX, LLC and THE GENERAL HOSPITAL CORPORATION d/b/a MASSACHUSETTS GENERAL HOSPITAL, <br><br> Plaintiffs, <br><br> v. <br><br> QIAGEN SCIENCES, LLC, QIAGEN LLC f/k/a QIAGEN, INC., QIAGEN BEVERLY, LLC f/k/a QIAGEN BEVERLY, INC., QIAGEN GAITHERSBURG, LLC f/k/a QIAGEN GAITHERSBURG, INC., QIAGEN GMBH, QIAGEN N.V. and JONATHAN ARNOLD, <br><br> Defendants. | ) ) ) ) ) ) ) ) C.A. No. 18-1019-MN ) ) ) ) ) ) ) ) ) ) ) |

### DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, <u>MOTIONS FOR A NEW TRIAL OR ALTERED JUDGMENT</u>

Pursuant to Federal Rule of Civil Procedure 50(b), Defendants Qiagen Sciences, LLC, Qiagen LLC f/k/a Qiagen, Inc., Qiagen Beverly LLC, f/k/a Qiagen Beverly, Inc., Qiagen Gaithersburg LLC, f/k/a Qiagen Gaithersburg, Inc., Qiagen GmbH and Qiagen N.V. (collectively, "QIAGEN") hereby renews their motion for judgment as a matter of law ("JMOL"), or alternatively, for a new trial pursuant to Federal Rules of Civil Procedure 50 and 59 on the on the issues of noninfringement, invalidity and damages.

1.      QIAGEN renews its motion for JMOL that no reasonable jury could find infringement of asserted claims 16, 17 and 19 of U.S. Patent No. 10,017,810 ("the '810 patent"), either literally or under the doctrine of equivalents by the QIAseq Targeted DNA Panels, QIAseq Targeted RNAscan Panels, QIAseq Immune Repertoire RNA Library Kits, and QIAseq Index Kits for the Illumina platform ("the '810 Accused Products"), because multiple elements are not

literally present nor are they present by way of the doctrine of equivalents. Specifically, the only reasonable conclusion supported by the evidence is that the '810 Accused Products do not include a second target-specific primer. Additionally, there is insufficient evidence that the '810 Accused Products include a second target-specific primer comprising a nucleic acid sequence that is identical to the accused second sequencing primer, rather than identical to a portion of the accused second sequencing primer.

2.  QIAGEN renews it motion for JMOL that no reasonable jury could find infringement of asserted claims 16, 17 and 19 of '810 Patent under the doctrine of equivalents because the accused SIP is not equivalent to the claimed second target-specific primer with respect to the requirement that the second target-specific primer anneal to the known target nucleotide sequence given that the accused SIP anneals to common sequence added by the first target specific primer. The SIP does not perform the same function, in the same way, to achieve the same result as the claimed second target-specific primer and it is not insubstantially different from the claimed second target specific primer.

3.  Likewise, no reasonable jury could find infringement of the asserted claims of the '810 Patent because the record is also devoid of evidence that the '810 Accused Products include a universal oligonucleotide tail adaptor comprised of an amplification strand that comprises nucleic acid sequences identical to a first and second sequencing primer. P7 sequence in the universal oligonucleotide tail adaptor is not sequence identical to a sequencing primer because P7 is not sequencing primer sequence. It is used to attach DNA fragments to the flow cell.

4.  Additionally and alternatively, a new trial is appropriate on all the asserted patent claims that include the terms that rely on sequence needing to be present from a sequencing primer because no instruction was provided to the jury regarding what a sequencing primer is,

and a properly instructed jury would have found no infringement. Similarly, a new trial is warranted on all the terms that rely on sequences being identical to other sequences vs identical to portions of other sequences because no instruction was provided to the jury as to the meaning of identical and identical to a portion, and a properly instructed jury would have found no infringement.

5. QIAGEN further renews its motion for JMOL that no reasonable jury could find infringement of asserted claims 1, 5 and 19 of U.S. Patent No. 10,450,597 ("the '597 patent") , by the QIAseq Targeted DNA Panels, QIAseq Targeted RNAscan Panels, QIAseq Immune Repertoire RNA Library Kits, and QIAseq Index Kits for the Illumina and Ion Torrent platforms, and GeneRead QIAact Kits ("the '597 Accused Products"). Specifically, the only reasonable conclusion supported by the evidence is that the accused "target-specific primer" Plaintiffs identify in the '597 Accused Products is not a "target-specific primer" as defined by the Court; rather, it is a universal primer. The record is devoid of evidence that the accused "target-specific primer" anneals to and mediates amplification of the target nucleic acid, and will not anneal to or mediate amplification of non-target sequences present in the sample, which is the definition of the target specific primer. Additionally, there is insufficient evidence that the accused "target-specific hybridization sequence" include sequence that has sufficient complementarity with a sequence of the accused double-stranded target nucleic acid to enable hybridization between the accused target-specific primer and a sequence in/of the accused double-stranded target nucleic acid. There is no evidence showing that the alleged target specific primer has sequence that can anneal to any sequence in the double stranded target nucleic acid and it does not satisfy the requirement that it not anneal to non-target sequence present in the sample. The complement of adaptor sequence that the accused target specific primer anneals to is non target sequence that is

not of interest. In addition, there is no evidence that the accused "double-stranded target nucleic acid" is the same molecule throughout the accused method.  Alternatively, a new trial is appropriate with respect to all terms that rely on something annealing to the double stranded target nucleic acid as the jury was not instructed that said structure cannot change throughout the process and it must be something that exists when the process begins.

6. Given the lack of evidence of infringement of the '810 and '597 patents, either directly or under the doctrine of equivalents, QIAGEN further moves for JMOL of no contributory or induced infringement of the '810 and '597 patents.  Additionally, no reasonable jury could find willful infringement of the '810 and '597 patents; the jury's verdict is not supported by substantial evidence.

7. QIAGEN moves for a mistrial and/or a new trial on the issue of willfulness based on Plaintiffs improper, legally incorrect, and un-curable questions and suggestions with respect to opinions of counsel.

8. QIAGEN further renews its motion for JMOL that asserted claims 16, 17 and 19 of the '810 patent are invalid for lack of written description and/or indefiniteness under 35 U.S.C. § 112.  No reasonable jury could find otherwise, and the claims are invalid as a matter of law. Specifically, if the '810 patent claims have been construed so broadly that they encompass non-nested second target specific primer.  A person of ordinary skill in the art ("POSA") reading the '810 patent specification would not understand that the inventors invented such an embodiment.  Nowhere does the '810 patent describe such an embodiment and the inventors specially stated that one should avoid hemi-nested approaches which is what results if non-nested target specific primers are covered by the claims of the '810 patent.  Further the inventors specifically chose not to include non-nested examples in the specification because they could not

make them work.  To the extent that the claims' requirement that the second target-specific primer has a sequence "identical" to a second sequencing primer can be met by a second target-specific primer having a length of 19 nucleotides and a second sequencing primer that is 34 nucleotides long, the asserted claims are indefinite, as no evidence was introduced to support the conclusion that a POSA would know how to determine the metes and bounds of the "identical" limitation.  Similarly, a POSA is not able to tell from the specification what it means for one sequence to be identical to another, whether that means one nucleotide is sufficient, two nucleotides are sufficient, etc.  Alternatively, a new trial is appropriate.

9. QIAGEN renews its motion for JMOL of invalidity of the '810 patent under 35 U.S.C. § 103 on the basis that the Siebert, Amsterdam and/or Kircher prior art references render the asserted claims obvious.

10. QIAGEN further renews its motion for JMOL that asserted claims 1, 5 and 19 of the '597 patent are invalid under 35 U.S.C. § 112.  To the extent the '597 patent covers a method whereby step (b) of claim 1 may precede step (a), the '597 patent is invalid for lack of written description and/or indefiniteness, including for lack of antecedent basis, under 35 U.S.C. § 112.  Further, the '597 patent lacks written description to the extent that a ligated adaptor is allowed to substitute for and carry out the function of the random degenerate primers described in the '597 patent.  The inventors testified that the improvement of the '597 patent over the '810 patent was the use of random degenerate primers instead of a ligated adaptor.  Nowhere in the '597 specification is there a description of using a ligated adaptor to deal with the unknown portion of the molecule of interest.  A POSA reading the '597 patent would not understand that a ligated adaptor is used to identify the unknown portion of the molecule of interest rather than the use of random primers, which QIAGEN does not use.  Moreover, a POSA reading the '597 patent

would not understand that adaptor sequence is target nucleic acid sequence. Rather they would understand it is non-target nucleic acid sequence. Thus, the '597 patent lacks written description to the extent the adaptor sequence is read to be target nucleic acid sequence rather than common sequence. Alternatively, a new trial is appropriate.

11. QIAGEN further renews its motion for judgment as a matter of law or new trial regarding the jury's award of damages for foreign use of the accused products. Damages recovered for infringement of method claims cannot extend to the sale or manufacture of products that are used outside of the United States. Moreover, even assuming *arguendo* that *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283 (Fed. Cir. 2015) changed the law with respect to damages related to the foreign use of method claims, which QIAGEN disputes, the record is devoid of evidence of any infringing act by QIAGEN that was a substantial cause of any foreign sales of the accused products. No evidence was presented that the parties in a hypothetical negotiation would have considered paying a royalty on the use of a product outside the United States. Alternatively, a new trial is appropriate. Further in the alternative, QIAGEN seeks an amendment of the judgment to reduce the judgment by the amount of damages awarded for sales to outside the United States, specifically, a reduction of $2,240,303.

12. QIAGEN further renews its motion for judgment as a matter of law or new trial regarding the jury's award of lost profits damages in connection with QIAGEN's sales of its RNA products. The jury's award is not supported by sufficient evidence because the record is devoid any evidence that QIAGEN and Plaintiffs were the only two market participants and/or that there were no acceptable non-infringing substitutes, sufficient to support lost profits. The record is similarly devoid of any evidence of market share analysis and apportionment of the

sales on which Plaintiffs based their lost profits damages.  Alternatively, a new trial is appropriate.

13. QIAGEN further moves for judgment as a matter of law, remittitur, or new trial regarding the jury's grossly excessive and clearly unsupported award of $1,593,762 in purported royalty damages for sales of QIAGEN's Accused Products in the United States.  Remittitur is appropriate because the only evidence presented by Plaintiffs for reasonable royalty damages for sales in the United States was $752,006 in royalty damages if lost profits damages were also awarded, as they were.  Alternatively, if there is no remittitur, a new trial is appropriate.

The grounds for QIAGEN's motion will be set forth fully in QIAGEN's Memorandum in Support of Its Rule 50(b) Motion for Judgment as a Matter of Law or, in the Alternative, Motions for a New Trial or Altered Judgment to be filed on November 1, 2021.  (*See* D.I. 493).

| | |
|---|---|
| OF COUNSEL:<br><br>David Bilsker<br>Andrew Naravage<br>QUINN EMANUEL URQUHART & SULLIVAN LLP<br>50 California Street, 22nd Floor<br>San Francisco, CA  94111<br>Tel:  (415) 875-6600<br><br>Anne Toker<br>James E. Baker<br>Anastasia M. Fernands<br>QUINN EMANUEL URQUHART & SULLIVAN LLP<br>51 Madison Ave., 22nd Floor<br>New York, NY  10010<br>Tel:  (212) 849-7000<br><br>Jeffrey C. Wu<br>QUINN EMANUEL URQUHART & SULLIVAN LLP<br>60 E South Temple, Suite 500<br>Salt Lake City, UT 84111<br>Tel: (801) 515 7300<br><br>Dated:  October 18, 2021<br>7436754/ 45349 | Respectfully submitted,<br><br>POTTER ANDERSON & CORROON LLP<br><br>By:  */s/ Stephanie E. O'Byrne*<br>    David E. Moore (#3983)<br>    Bindu A. Palapura (#5370)<br>    Stephanie E. O'Byrne (#4446)<br>    Hercules Plaza, 6th Floor<br>    1313 N. Market Street<br>    Wilmington, DE  19801<br>    Tel:  (302) 984-6000<br>    dmoore@potteranderson.com<br>    bpalapura@potteranderson.com<br>    sobyrne@potteranderson.com<br><br>*Attorneys for Defendants Qiagen Sciences, LLC, Qiagen LLC f/k/a Qiagen, Inc., Qiagen Beverly LLC, f/k/a Qiagen Beverly, Inc., Qiagen Gaithersburg LLC, f/k/a Qiagen Gaithersburg, Inc., Qiagen GmbH, Qiagen N.V. and Jonathan Arnold* |